

STAYED,APPEAL,NO EXTENSION - MOTION

# U.S. District Court [LIVE AREA]
## Middle District of Georgia (Macon)
## CIVIL DOCKET FOR CASE #: 5:19-cv-00392-MTT

LANGE v. HOUSTON COUNTY, GEORGIA et al
Assigned to: CHIEF DISTRICT JUDGE MARC T TREADWELL
Case in other court:  US Court of Appeals, 22-13626-DD
Cause: 42:1983 Civil Rights (Employment Discrimination)

Date Filed: 10/02/2019
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**ANNA LANGE**                                    represented by    **KENNETH E BARTON , III**
170 COLLEGE ST
MACON, GA 31201
478-841-9007
Fax: 4788419002
Email: keb@cooperbarton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ALEJANDRA CARABALLO**
520 8TH AVE
STE 2204
NEW YORK, NY 10018
646-993-1676
Fax: 646-993-1686
Email: acaraballo@transgenderlegal.org
*TERMINATED: 08/16/2021*

**AMANDA MARIE PAYNE**
787 7TH AVE
NEW YORK, NY 10019
212-728-3781
Email: apayne@willkie.com
*ATTORNEY TO BE NOTICED*

**CATHERINE FATA**
787 SEVENTH AVE
NEW YORK, NY 10019-6099
212-728-8563
Email: cfata@willkie.com
*ATTORNEY TO BE NOTICED*

**DAVID BROWN**
520 8TH AVE
STE 2204
NEW YORK, NY 10018
646-862-9396
Email: dbrown@transgenderlegal.org
*ATTORNEY TO BE NOTICED*

**JILL K GRANT**
787 SEVENTH AVENUE
NEW YORK, NY 10019-6099
212-728-8774
Email: jgrant@willkie.com
*ATTORNEY TO BE NOTICED*

**KEVIN BARRY**
275 MT CARMEL AVE
HAMDEN, CT 06518
203-582-3238
Email: legalclinic@quinnipiac.edu
*ATTORNEY TO BE NOTICED*

**MARY EATON**
601 LEXINGTON AVE
STE 31ST FL
NEW YORK, NY 10022
212-277-4000
Email: mary.eaton@freshfields.com
*TERMINATED: 08/15/2022*
*ATTORNEY TO BE NOTICED*

**MICHAEL DEVLIN COOPER**
170 COLLEGE ST
MACON, GA 31201
478-841-9007
Fax: 478-841-9002
Email: mdc@cooperbarton.com
*ATTORNEY TO BE NOTICED*

**NOAH E LEWIS**
223-241 WEST 38TH STREET
PO BOX 1094
NEW YORK, NY 10018
(646) 862-9396
Fax: (646) 930-5654
Email: nlewis@transgenderlegal.org
*TERMINATED: 08/31/2021*
*ATTORNEY TO BE NOTICED*

**NOAH ETHAN LEWIS**
520 8TH AVE
STE 2204
NEW YORK, NY 10018
646-862-9396
Fax: 646-993-1686
Email: nlewis@transgenderlegal.org
*TERMINATED: 08/31/2021*
*ATTORNEY TO BE NOTICED*

**SARAH MATLACK WASTLER**
1875 K ST NW
WASHINGTON, DC 20006-1238
202-303-1257

Fax: 202-303-2257
Email: swastler@willkie.com
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**WESLEY POWELL**
787 SEVENTH AVE
NEW YORK, NY 10019
212-728-8264
Email: wpowell@willkie.com
*ATTORNEY TO BE NOTICED*

**Z GABRIEL ARKLES**
520 8TH AVE
STE 2204
NEW YORK, NY 10004
646-993-1688
Email: garkles@transgenderlegal.org
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**HOUSTON COUNTY GEORGIA**                represented by
**SHARON P MORGAN**
229 PEACHTREE ST NE STE 800
ATLANTA, GA 30303
404-659-6700
Email: morgan@elarbeethompson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
229 PEACHTREE ST NE
800 INTERNATIONAL TOWER
ATLANTA, GA 30303
404-582-8428
Fax: 404-222-9718
Email: lail@elarbeethompson.com
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
Elarbee, Thompson LLP
229 Peachtree Street, N.E.
800 International Tower
Atlanta, GA 30303
404-659-6700
Fax: (404) 222-9718
Email: gignilli@elarbeethompson.com
*ATTORNEY TO BE NOTICED*

**WILLIAM DRUMMOND DEVENEY**
229 Peachtree Street, N.E.
800 International Tower
Atlanta, GA 30303
404-659-6700

Email: deveney@elarbeethompson.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**HOUSTON COUNTY BOARD OF COMMISSIONERS**
*TERMINATED: 08/20/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Commissioner TOMMY STALNAKER**
*Houston County, In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**H. JAY WALKER, III**
*In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GAIL ROBINSON**
*In her individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LARRY THOMSON**
*In his individual capacity*
*TERMINATED: 10/30/2020*

represented by  **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TOM MCMICHAEL**
*In his individual capacity*
*TERMINATED: 10/30/2020*

represented by  **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BARRY HOLLAND**
*In his individual capacity*
*TERMINATED: 10/30/2020*

represented by  **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROBBIE DUNBAR**
*In his official and individual capacity*
*TERMINATED: 04/13/2020*

represented by  **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**KENNETH CARTER**
*Director of Personnel at Houston County, In his individual capacity*
*TERMINATED: 10/30/2020*

represented by  **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Sheriff CULLEN TALTON**
*in his Official Capacity*

represented by  **PATRICK L LAIL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**SHARON P MORGAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**WILLIAM DRUMMOND DEVENEY**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC**

represented by  **JAMES MITCHELL FUCETOLA , IV**
30 IVAN ALLEN JR BLVD NW
STE 700
ATLANTA, GA 30308
404-962-3511
Fax: 404-261-3556
Email: mfucetola@balch.com
*ATTORNEY TO BE NOTICED*

**T JOSHUA ARCHER**
30 IVAN ALLEN JR BLVD NW STE 700
ATLANTA, GA 30308-3036
404-261-6020
Email: jarcher@balch.com
*ATTORNEY TO BE NOTICED*

**TYLER P BISHOP**
3414 PEACHTREE RD NE
STE 1500
ATLANTA, GA 30326
404-589-3410
Email: tbishop@bakerdonelson.com
*TERMINATED: 09/12/2022*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/02/2019 | 1 | **COMPLAINT** against All Defendants Fee paid: Receipt # AGAMDC-3277783, $400 filed by All Plaintiffs (Attachments: # 1 Exhibit Ex. A EEOC Right to Sue, # 2 Civil Cover Sheet Civil Cover Sheet, # 3 Summons Houston County Summons, # 4 Summons Board of Commissioners Summons, # 5 Summons Stalnaker Summons, # 6 Summons Walker Summons, # 7 Summons Robinson Summons, # 8 Summons Thomson Summons, # 9 Summons McMichael Summons, # 10 Summons Holland Summons, # 11 Summons Dunbar Summons, # 12 Summons Carter Summons)(BARTON, KENNETH) (Entered: 10/02/2019) |
| 10/02/2019 | | NOTICE TO COUNSEL WESLEY POWELL, MARY EATON, JILL K GRANT, DAVID BROWN, NOAH E LEWIS, KEVIN M BARRY - Counsel is notified that they do not show in the court records that they meet the required attorney admissions policies of this court. If within 14 days of this notice all requirements, including the payment of Pro Hac Vice or admissions fees, have not been met, a show cause hearing will be scheduled. (vs) (Entered: 10/02/2019) |
| 10/02/2019 | 2 | Summons Issued as to KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III. (Attachments: # 1 Summons Robbie Dunbar, # 2 Summons Barry Holland, # 3 Summons Tom McMichael, # 4 Summons Larry Thomson, # 5 Summons Gail Robinson, # 6 Summons H. Jay Walker, # 7 Summons Tommy Stalnaker, # 8 Summons Houston County, Georgia, # 9 Summons Houston County Board of Commissioners)(vs) (Entered: 10/02/2019) |
| 10/02/2019 | 3 | Consent Form (28 USC 636(c)(1)) sent to ANNA LANGE (vs) (Entered: 10/02/2019) |
| 10/09/2019 | 4 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3283244, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing SDNY Cert. Good Standing) (LEWIS, NOAH) (Entered: 10/09/2019) |
| 10/09/2019 | 5 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by NOAH E LEWIS (nop) (Entered: 10/09/2019) |
| 10/14/2019 | 6 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3286675, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III; State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(EATON, MARY) (Entered: 10/14/2019) |
| 10/14/2019 | 7 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3286679, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III; State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(GRANT, JILL) (Entered: 10/14/2019) |
| 10/15/2019 | 8 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3287156, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State |

| | | |
|---|---|---|
| | | Bar No. 301171. (Attachments: # 1 Certificate of Good Standing D.Conn. Cert. Good Standing) (BARRY, KEVIN) (Entered: 10/15/2019) |
| 10/15/2019 | 9 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3287634, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III; State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(POWELL, WESLEY) (Entered: 10/15/2019) |
| 10/16/2019 | 10 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by MARY EATON (ans) (Entered: 10/16/2019) |
| 10/16/2019 | 11 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by JILL K GRANT (ans) (Entered: 10/16/2019) |
| 10/16/2019 | 12 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by KEVIN BARRY (ans) (Entered: 10/16/2019) |
| 10/16/2019 | 13 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by WESLEY POWELL (ans) (Entered: 10/16/2019) |
| 10/28/2019 | 14 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3299956, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III, Ga. State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing District of North Dakota) (BROWN, DAVID) (Entered: 10/28/2019) |
| 10/30/2019 | 15 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by DAVID BROWN (nop) (Entered: 10/30/2019) |
| 11/01/2019 | 16 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to TOM MCMICHAEL (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 17 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to KENNETH CARTER (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 18 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to TOMMY STALNAKER (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 19 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to GAIL ROBINSON (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 20 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to H. JAY WALKER, III (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 21 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to ROBBIE DUNBAR (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 22 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to LARRY THOMPSON (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 23 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to BARRY HOLLAND (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 24 | STIPULATION *AND ACKNOWLEDGMENT OF SERVICE OF PROCESS* by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III (MORGAN, SHARON) (Entered: 11/01/2019) |
| 11/01/2019 | 25 | NOTICE of Attorney Appearance by Patrick L. Lail on behalf of All Defendants Attorney Patrick L. Lail added to party KENNETH CARTER(pty:dft), Attorney Patrick L. Lail added to party ROBBIE DUNBAR(pty:dft), Attorney Patrick L. Lail added to party BARRY |

| | | |
|---|---|---|
| | | HOLLAND(pty:dft), Attorney Patrick L. Lail added to party HOUSTON COUNTY BOARD OF COMMISSIONERS(pty:dft), Attorney Patrick L. Lail added to party HOUSTON COUNTY, GEORGIA(pty:dft), Attorney Patrick L. Lail added to party TOM MCMICHAEL(pty:dft), Attorney Patrick L. Lail added to party GAIL ROBINSON(pty:dft), Attorney Patrick L. Lail added to party TOMMY STALNAKER(pty:dft), Attorney Patrick L. Lail added to party LARRY THOMPSON(pty:dft), Attorney Patrick L. Lail added to party H. JAY WALKER, III(pty:dft) (Lail, Patrick) (Entered: 11/01/2019) |
| 11/01/2019 | 26 | NOTICE of Attorney Appearance by RICHARD READ GIGNILLIAT on behalf of All Defendants Attorney RICHARD READ GIGNILLIAT added to party KENNETH CARTER(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party ROBBIE DUNBAR(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party BARRY HOLLAND(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party HOUSTON COUNTY BOARD OF COMMISSIONERS(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party HOUSTON COUNTY, GEORGIA(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party TOM MCMICHAEL(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party GAIL ROBINSON(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party TOMMY STALNAKER(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party LARRY THOMPSON(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party H. JAY WALKER, III(pty:dft) (GIGNILLIAT, RICHARD) (Entered: 11/01/2019) |
| 11/01/2019 | 27 | NOTICE of Attorney Appearance by SHARON P MORGAN on behalf of All Defendants Attorney SHARON P MORGAN added to party KENNETH CARTER(pty:dft), Attorney SHARON P MORGAN added to party ROBBIE DUNBAR(pty:dft), Attorney SHARON P MORGAN added to party BARRY HOLLAND(pty:dft), Attorney SHARON P MORGAN added to party HOUSTON COUNTY BOARD OF COMMISSIONERS(pty:dft), Attorney SHARON P MORGAN added to party HOUSTON COUNTY, GEORGIA(pty:dft), Attorney SHARON P MORGAN added to party TOM MCMICHAEL(pty:dft), Attorney SHARON P MORGAN added to party GAIL ROBINSON(pty:dft), Attorney SHARON P MORGAN added to party TOMMY STALNAKER(pty:dft), Attorney SHARON P MORGAN added to party LARRY THOMPSON(pty:dft), Attorney SHARON P MORGAN added to party H. JAY WALKER, III(pty:dft) (MORGAN, SHARON) (Entered: 11/01/2019) |
| 11/22/2019 | 28 | MOTION for Preliminary Injunction by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Brief in Supp. of Motion for Injunction, # 2 Exhibit Lange Declaration, # 3 Exhibit Bluebond-Langner Declaration, # 4 Exhibit Lewis Declaration, # 5 Exhibit Schechter Declaration)(BARTON, KENNETH) (Entered: 11/22/2019) |
| 11/26/2019 | | NOTICE OF **SETTING** TELEPHONE CONFERENCE: Telephone Conference set for 12/5/2019 at 10:00 AM in Macon before US DISTRICT JUDGE MARC THOMAS TREADWELL. Call-in instructions emailed to the parties. (kat) (Entered: 11/26/2019) |
| 12/03/2019 | 29 | MOTION to Dismiss Complaint re 1 Complaint by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III filed by SHARON P MORGAN. (Attachments: # 1 Memorandum in Support) (MORGAN, SHARON) Modified on 12/4/2019 to edit docket text (vs). (Entered: 12/03/2019) |
| 12/03/2019 | 30 | ANSWER to Complaint by HOUSTON COUNTY, GEORGIA. (Attachments: # 1 Exhibit A - 2019 POS Plan, # 2 Exhibit B - EEOC FOIA File)(MORGAN, SHARON) Modified on 12/4/2019 to edit docket text (vs). (Entered: 12/03/2019) |
| 12/03/2019 | 31 | MOTION for Judgment on the Pleadings by HOUSTON COUNTY, GEORGIA filed by SHARON P MORGAN. (Attachments: # 1 Memorandum in Support)(MORGAN, SHARON) (Entered: 12/03/2019) |
| 12/05/2019 | 32 | Minute Entry for proceedings held before US DISTRICT JUDGE MARC THOMAS TREADWELL: Telephone Conference held on 12/5/2019. Court Reporter: Darlene Fuller. (kat) |

| | | (Entered: 12/05/2019) |
|---|---|---|
| 12/11/2019 | 33 | Letter regarding Request of 7-day extension to file Defendants' Response to Plaintiff's Motion for Preliminary Injunction re 28 MOTION for Preliminary Injunction (MORGAN, SHARON) (Entered: 12/11/2019) |
| 12/12/2019 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 28 MOTION for Preliminary Injunction filed by ANNA LANGE (vs) (Entered: 12/12/2019) |
| 12/14/2019 | 34 | UNOPPOSED MOTION for Extension of Time to File RESPONSE as to 31 MOTION for Judgment on the Pleadings, 29 MOTION to Dismiss Complaint re 1 Complaint,, :MOTION to Dismiss Complaint, 28 MOTION for Preliminary Injunction by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 12/14/2019) |
| 12/17/2019 | 35 | **ORDER** GRANTING 34 Motion for Extension of Time to File Reply for 34 Plaintiff's motion for preliminary injunction, Response for 29 Defendants' motion to dismiss complaint, and Response for 31 Defendant's motion for judgment on the pleadings. Plaintiff shall have until January 14, 2020 to file the briefs. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 12/17/2019. (kat) (Entered: 12/17/2019) |
| 12/20/2019 | 36 | RESPONSE filed by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III re 28 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit 1 - Declaration of Kenneth Carter)(GIGNILLIAT, RICHARD) (Entered: 12/20/2019) |
| 01/06/2020 | 37 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3354423, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(WASTLER, SARAH) (Entered: 01/06/2020) |
| 01/06/2020 | 38 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by SARAH MATLACK WASTLER (nop) (Entered: 01/06/2020) |
| 01/09/2020 | 39 | UNOPPOSED MOTION for Leave to File Excess Pages for Motions to Dismiss and for Judgment on the Pleadings by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 01/09/2020) |
| 01/10/2020 | 40 | This is a text only entry; no document issued. **ORDER** GRANTING 39 Motion for Leave to File Omnibus Response and to Extend Page Limits. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 1/10/2020. (wbm) (Entered: 01/10/2020) |
| 01/14/2020 | 41 | RESPONSE filed by ANNA LANGE re 31 MOTION for Judgment on the Pleadings, 29 MOTION to Dismiss Complaint re 1 Complaint,, :MOTION to Dismiss Complaint (BARTON, KENNETH) (Entered: 01/14/2020) |
| 01/14/2020 | 42 | REPLY to Response filed by ANNA LANGE re 28 MOTION for Preliminary Injunction (BARTON, KENNETH) (Entered: 01/14/2020) |
| 01/21/2020 | 43 | TRANSCRIPT of Telephone Conference held on 12/05/2019, before Judge Marc T. Treadwell. Court Reporter Darlene D. Fuller. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (ddf) (Entered: 01/21/2020) |
| 01/23/2020 | 44 | Letter regarding Request of 14-day extension to file Defendants' Reply in Support of their Motion to Dismiss and Defendant Houston County's Reply in Support of its Motion for Judgment on the Pleadings re 31 MOTION for Judgment on the Pleadings, 29 MOTION to |

| | | |
|---|---|---|
| | | Dismiss Complaint re <u>1</u> Complaint,, :MOTION to Dismiss Complaint (MORGAN, SHARON) (Entered: 01/23/2020) |
| 01/23/2020 | <u>45</u> | MOTION for Hearing re Motion for Preliminary Injunction re <u>36</u> Response to Motion, <u>43</u> Transcript of Proceedings, <u>28</u> MOTION for Preliminary Injunction (COOPER, MICHAEL) Modified on 1/24/2020 to change event type (vs). (Entered: 01/23/2020) |
| 01/24/2020 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: <u>31</u> MOTION for Judgment on the Pleadings filed by HOUSTON COUNTY, GEORGIA (vs) (Entered: 01/24/2020) |
| 01/30/2020 | <u>46</u> | Letter from Judge Treadwell regarding pending motions. (kat) (Entered: 01/30/2020) |
| 02/06/2020 | <u>47</u> | UNOPPOSED MOTION for Leave to File Excess Pages for Defendants' Reply in Support of their Motion to Dismiss and Defendants' Reply in Support of their Motion for Judgment on the Pleadings by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III filed by SHARON P MORGAN.(MORGAN, SHARON) (Entered: 02/06/2020) |
| 02/07/2020 | 48 | This is a text only entry; no document issued. **ORDER** GRANTING <u>47</u> Motion for Leave to File Excess Pages. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 2/7/2020. (wbm) (Entered: 02/07/2020) |
| 02/11/2020 | <u>49</u> | REPLY to Response filed by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, TOM MCMICHAEL, GAIL ROBINSON re <u>29</u> MOTION to Dismiss Complaint re <u>1</u> Complaint,, :MOTION to Dismiss Complaint (MORGAN, SHARON) (Entered: 02/11/2020) |
| 02/11/2020 | <u>50</u> | REPLY to Response filed by HOUSTON COUNTY, GEORGIA re <u>31</u> MOTION for Judgment on the Pleadings (MORGAN, SHARON) (Entered: 02/11/2020) |
| 02/12/2020 | <u>51</u> | Letter regarding Intention to File Motion for Leave to Amend Complaint (POWELL, WESLEY) (Entered: 02/12/2020) |
| 02/26/2020 | <u>52</u> | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by All Plaintiffs Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3401421, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III 301171. (Attachments: # <u>1</u> Certificate of Good Standing)(CARABALLO, ALEJANDRA) (Entered: 02/26/2020) |
| 02/27/2020 | <u>53</u> | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by ALEJANDRA CARABALLO (nop) (Entered: 02/27/2020) |
| 03/23/2020 | <u>54</u> | **ORDER** STAYING pending motions <u>28</u> MOTION for Preliminary Injunction; <u>29</u> MOTION to Dismiss Complaint; <u>31</u> MOTION for Judgment on the Pleadings, and <u>45</u> MOTION for Hearing until the Plaintiff's motion to amend is resolved. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 3/23/2020. (kat) (Entered: 03/23/2020) |
| 04/10/2020 | <u>55</u> | STIPULATION *Regarding Amended Complaint, Motion for Preliminary Injunction and Dispositive Motions* re <u>29</u> MOTION to Dismiss Complaint re <u>1</u> Complaint,, :MOTION to Dismiss Complaint, <u>28</u> MOTION for Preliminary Injunction by ANNA LANGE (BARTON, KENNETH) (Entered: 04/10/2020) |
| 04/10/2020 | <u>56</u> | AMENDED <u>1</u> Complaint,, against All Defendants by ANNA LANGE (BARTON, KENNETH) (Entered: 04/10/2020) |
| 04/10/2020 | <u>57</u> | MOTION for Preliminary Injunction by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # <u>1</u> Memorandum in Support Brief in Support of Motion, # <u>2</u> Exhibit Lange Declaration, # <u>3</u> Exhibit Lewis Declaration, # <u>4</u> Exhibit Schechter Declaration, # <u>5</u> Exhibit Bluebond-Langer Declaration)(BARTON, KENNETH) (Entered: 04/10/2020) |

| 04/28/2020 | [58](#) | Letter regarding extension of time to file Defendants' Response to Plaintiff's Superseding Motion for Preliminary Injunction re [57](#) MOTION for Preliminary Injunction (MORGAN, SHARON) (Entered: 04/28/2020) |
|---|---|---|
| 04/28/2020 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: [57](#) MOTION for Preliminary Injunction filed by ANNA LANGE (vs) (Entered: 04/28/2020) |
| 05/06/2020 | [59](#) | UNOPPOSED MOTION for Leave to File Excess Pages for Defendants' Brief in Support of their Motion to Dismiss by KENNETH CARTER, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III filed by SHARON P MORGAN.(MORGAN, SHARON) (Entered: 05/06/2020) |
| 05/08/2020 | 60 | This is a text only entry; no document issued. **ORDER** GRANTING [59](#) Motion for Leave to File Excess Pages. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 5/8/2020. (wbm) (Entered: 05/08/2020) |
| 05/11/2020 | [61](#) | MOTION to Dismiss for Lack of Jurisdiction by CULLEN TALTON filed by SHARON P MORGAN. (Attachments: # [1](#) Memorandum in Support)(MORGAN, SHARON) (Entered: 05/11/2020) |
| 05/11/2020 | [62](#) | MOTION to Dismiss Complaint re [56](#) Amended Complaint/Petition : by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III filed by SHARON P MORGAN. (Attachments: # [1](#) Memorandum in Support, # [2](#) Exhibit A - 2019 POS Plan)(MORGAN, SHARON) (Entered: 05/11/2020) |
| 05/15/2020 | [63](#) | RESPONSE filed by KENNETH CARTER, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III re [57](#) MOTION for Preliminary Injunction (Attachments: # [1](#) Exhibit 1 - Declaration of Kenneth Carter)(MORGAN, SHARON) (Entered: 05/15/2020) |
| 05/22/2020 | [64](#) | UNOPPOSED MOTION to Amend/Correct [57](#) MOTION for Preliminary Injunction by ANNA LANGE filed by DAVID BROWN. (Attachments: # [1](#) Affidavit Corrected Declaration of Sgt. Lange)(BROWN, DAVID) (Entered: 05/22/2020) |
| 05/26/2020 | 65 | This is a text only entry; no document issued. **ORDER** GRANTING [64](#) Motion to Amend/Correct. The Defendants shall have 7 days to file an amended response brief. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 5/26/2020. (wbm) (Entered: 05/26/2020) |
| 05/26/2020 | [66](#) | EXHIBIT(S) *Corrected Declaration with Exhibits* by ANNA LANGE re 65 Order on Motion to Amend/Correct, (BARTON, KENNETH) (Entered: 05/26/2020) |
| 05/26/2020 | [67](#) | Letter regarding Request of 14-day extension to file Plaintiffs Responses re [62](#) MOTION to Dismiss Complaint re [56](#) Amended Complaint/Petition :, [61](#) MOTION to Dismiss for Lack of Jurisdiction (WASTLER, SARAH) (Entered: 05/26/2020) |
| 05/27/2020 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: [62](#) MOTION to Dismiss Complaint re [56](#) Amended Complaint/Petition : filed by HOUSTON COUNTY BOARD OF COMMISSIONERS, BARRY HOLLAND, TOM MCMICHAEL, KENNETH CARTER, LARRY THOMSON, H. JAY WALKER, III, GAIL ROBINSON, ROBBIE DUNBAR, HOUSTON COUNTY, GEORGIA, TOMMY STALNAKER, CULLEN TALTON, [61](#) MOTION to Dismiss for Lack of Jurisdiction filed by CULLEN TALTON (vs) (Entered: 05/27/2020) |
| 06/02/2020 | [68](#) | DEFENDANTS' AMENDED RESPONSE in Opposition to Plaintiff's Superseding Motion for a Preliminary Injunction filed by KENNETH CARTER, BARRY HOLLAND, HOUSTON |

| | | |
|---|---|---|
| | | COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III re 57 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit 1 - Declaration of Kenneth Carter)(MORGAN, SHARON) Modified on 6/3/2020 to add docket text(vs). (Entered: 06/02/2020) |
| 06/10/2020 | 69 | UNOPPOSED MOTION for Leave to File Excess Pages for Response to Defendants' Motions to Dismiss by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 06/10/2020) |
| 06/10/2020 | | NOTICE OF SETTING HEARING ON MOTION re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition, and 61 MOTION to Dismiss for Lack of Jurisdiction: Motion Hearing set for 8/10/2020 at 2:00 PM in Macon before CHIEF US DISTRICT JUDGE MARC THOMAS TREADWELL. Hearing will occur via **VIDEOCONFERENCE** . Counsel will receive connection information by separate email. Interested parties may obtain dial information by emailing macon.ecf@gamd.uscourts.gov. (kat) Text modified on 7/28/2020 to include videoconference language(kat). (Entered: 06/10/2020) |
| 06/11/2020 | 70 | This is a text only entry; no document issued. **ORDER** GRANTING 69 Motion for Leave to File Excess Pages. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 6/11/2020. (wbm) (Entered: 06/11/2020) |
| 06/15/2020 | 71 | EMERGENCY MOTION for Extension of Time to File RESPONSE as to 57 MOTION for Preliminary Injunction, 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition :, 61 MOTION to Dismiss for Lack of Jurisdiction by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 06/15/2020) |
| 06/15/2020 | 72 | This is a text only entry; no document issued. **ORDER** GRANTING 71 Emergency Unopposed Motion for Extension of Time to File RESPONSE re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition, 57 MOTION for Preliminary Injunction, and 61 MOTION to Dismiss for Lack of Jurisdiction. Plaintiff shall have through and including 6/18/2020 to respond. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 6/15/2020. (kat) (Entered: 06/15/2020) |
| 06/18/2020 | 73 | REPLY to Response filed by ANNA LANGE re 57 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit Ex 1 EEOC Interim Enforcement Guidance on application of ADA, # 2 Exhibit Ex 2 Notice of Claim Sheriff Talton)(BARTON, KENNETH) (Entered: 06/18/2020) |
| 06/18/2020 | 74 | RESPONSE filed by ANNA LANGE re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition :, 61 MOTION to Dismiss for Lack of Jurisdiction (Attachments: # 1 Exhibit Ex. A Demonstrative Chart)(BARTON, KENNETH) (Entered: 06/18/2020) |
| 06/25/2020 | 75 | Letter regarding Request of 14-day extension to file Defendant Talton's' Reply in Support of his Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Defendants' Reply in Support of their Motion to Dismiss Amended Complaint re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition :, 61 MOTION to Dismiss for Lack of Jurisdiction (MORGAN, SHARON) (Entered: 06/25/2020) |
| 06/25/2020 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 75 Letter, 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition : filed by HOUSTON COUNTY BOARD OF COMMISSIONERS, BARRY HOLLAND, TOM MCMICHAEL, KENNETH CARTER, LARRY THOMSON, H. JAY WALKER, III, GAIL ROBINSON, ROBBIE DUNBAR, HOUSTON COUNTY, GEORGIA, TOMMY STALNAKER, CULLEN TALTON, 61 MOTION to Dismiss for Lack of Jurisdiction filed by CULLEN TALTON () (tam) (Entered: 06/25/2020) |
| 07/10/2020 | 76 | UNOPPOSED MOTION for Leave to File Excess Pages for Defendants' Reply Brief of their Rule 12(b)(6) Motion to Dismiss and Defendant Talton's Reply Brief in Support of his Rule 12(b)(1) Motion to Dismiss by KENNETH CARTER, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM |

| | | |
|---|---|---|
| | | MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III filed by SHARON P MORGAN.(MORGAN, SHARON) (Entered: 07/10/2020) |
| 07/13/2020 | 77 | This is a text only entry; no document issued. **ORDER** GRANTING <u>76</u> Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 7/13/2020. (wbm) (Entered: 07/13/2020) |
| 07/16/2020 | <u>78</u> | Motion for hearing/Letter regarding oral argument for PI motion (WASTLER, SARAH) Modified on 7/17/2020 to edit docket text(vs). (Entered: 07/16/2020) |
| 07/16/2020 | <u>79</u> | REPLY to Response filed by KENNETH CARTER, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III re <u>62</u> MOTION to Dismiss Complaint re <u>56</u> Amended Complaint/Petition : (MORGAN, SHARON) (Entered: 07/16/2020) |
| 07/16/2020 | <u>80</u> | REPLY to Response filed by CULLEN TALTON re <u>61</u> MOTION to Dismiss for Lack of Jurisdiction (MORGAN, SHARON) (Entered: 07/16/2020) |
| 08/05/2020 | | AMENDED NOTICE OF **RESETTING** HEARING ON MOTION re <u>62</u> MOTION to Dismiss Complaint re <u>56</u> Amended Complaint/Petition, <u>61</u> MOTION to Dismiss for Lack of Jurisdiction. Motion Hearing PREVIOUSLY set for 8/10/2020 is RESET for 8/19/2020 at 2:00 PM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will be convened in court. Counsel shall appear via **VIDEOCONFERENCE**. Counsel will receive connection information by separate email. For telephonic access, contact macon.ecf@gamd.uscourts.gov.(kat) Text modified on 8/10/2020 (kat). (Entered: 08/05/2020) |
| 08/11/2020 | <u>81</u> | UNOPPOSED MOTION for Leave to File Surreply by ANNA LANGE filed by DAVID BROWN.(BROWN, DAVID) (Entered: 08/11/2020) |
| 08/11/2020 | 82 | This is a text only entry; no document issued. **ORDER** GRANTING <u>81</u> Motion for Leave to File Surreply. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/11/2020. (wbm) (Entered: 08/11/2020) |
| 08/14/2020 | <u>83</u> | SURREPLY filed by ANNA LANGE re <u>62</u> MOTION to Dismiss Complaint re <u>56</u> Amended Complaint/Petition :, <u>61</u> MOTION to Dismiss for Lack of Jurisdiction (BROWN, DAVID) (Entered: 08/14/2020) |
| 08/20/2020 | <u>84</u> | **ORDER**. The official-capacity claims against Defendants Stalnaker, Walker, Robinson, Thomson, McMichael, Holland, Carter, and the Houston County Board of Commissioners, are DISMISSED without prejudice as redundant of the claims against the County. If discovery reveals that any of those claims are not redundant, Plaintiff may amend her complaint to add the claims back in. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/20/2020. (kat) (Entered: 08/20/2020) |
| 08/21/2020 | <u>85</u> | NOTICE of Statement of Authorities by ANNA LANGE re <u>74</u> Response to Motion (WASTLER, SARAH) (Entered: 08/21/2020) |
| 08/26/2020 | <u>86</u> | NOTICE Defendants' Statement of Additional Authorities by KENNETH CARTER, BARRY HOLLAND, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III re <u>62</u> MOTION to Dismiss Complaint re <u>56</u> Amended Complaint/Petition : (Attachments: # <u>1</u> Exhibit 1 Childs v Macon-Bibb County Ind'l Auth., # <u>2</u> Exhibit 2 Zimmerman v. Cherokee County)(MORGAN, SHARON) (Entered: 08/26/2020) |
| 08/28/2020 | <u>87</u> | Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Motion Hearing held on 8/19/2020 re <u>61</u> MOTION to Dismiss for Lack of Jurisdiction filed by CULLEN TALTON; and <u>62</u> MOTION to Dismiss Complaint re <u>56</u> Amended Complaint/Petition filed by HOUSTON COUNTY BOARD |

| | | |
|---|---|---|
| | | OF COMMISSIONERS, BARRY HOLLAND, TOM MCMICHAEL, KENNETH CARTER, LARRY THOMSON, H. JAY WALKER, III, GAIL ROBINSON, ROBBIE DUNBAR, HOUSTON COUNTY, GEORGIA, TOMMY STALNAKER, CULLEN TALTON. Court Reporter: Darlene Fuller. (kat) (Entered: 08/28/2020) |
| 09/02/2020 | 88 | TRANSCRIPT of Motion to Dismiss held on 08/19/2020, before Judge Marc T. Treadwell. Court Reporter Darlene D. Fuller. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (ddf) (Entered: 09/02/2020) |
| 10/30/2020 | 89 | **ORDER** DENYING 61 Motion to Dismiss for Lack of Jurisdiction; and GRANTING in part and DENYING in part 62 Motion to Dismiss Complaint. The remaining claims are (1) ADA Title I claims against the County and the Sheriff in his official capacity, (2) Title VII claims against the County and the Sheriff in his official capacity, and (3) federal equal protection claims against the County and the Sheriff in his official capacity. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/30/2020. (kat) (Entered: 10/30/2020) |
| 10/30/2020 | 90 | ***RE-FILED AT 91 ***Letter regarding Request for Oral Argument re 57 MOTION for Preliminary Injunction (BARTON, KENNETH) Modified on 11/2/2020 to add docket text (vs). (Entered: 10/30/2020) |
| 11/02/2020 | | Notice of Deficiency (related document(s): 90 Letter ); Document must be re-filed using correct event - MOTION FOR HEARING(vs) (Entered: 11/02/2020) |
| 11/02/2020 | 91 | MOTION for Hearing re 57 MOTION for Preliminary Injunction by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 11/02/2020) |
| 11/13/2020 | 92 | ANSWER to 56 Amended Complaint/Petition by HOUSTON COUNTY, GEORGIA. Related document: 56 Amended Complaint/Petition filed by ANNA LANGE.(MORGAN, SHARON) (Entered: 11/13/2020) |
| 11/13/2020 | 93 | DISREGARD - WRONG DOCUMENT ATTACHED - REFILED AT TAB 96. ANSWER to 56 Amended Complaint/Petition by CULLEN TALTON. Related document: 56 Amended Complaint/Petition filed by ANNA LANGE.(MORGAN, SHARON) Modified on 11/16/2020 (ggs). (Entered: 11/13/2020) |
| 11/13/2020 | 94 | MOTION for Reconsideration re 89 Order on Motion to Dismiss/Lack of Jurisdiction,,, Order on Motion to Dismiss Complaint,, by HOUSTON COUNTY, GEORGIA filed by SHARON P MORGAN.(MORGAN, SHARON) (Entered: 11/13/2020) |
| 11/13/2020 | 95 | DISREGARD - WRONG DOCUMENT ATTACHED - REFILED AT TAB 96. ANSWER to 56 Amended Complaint/Petition by CULLEN TALTON. Related document: 56 Amended Complaint/Petition filed by ANNA LANGE.(MORGAN, SHARON) Modified on 11/16/2020 (ggs). (Entered: 11/13/2020) |
| 11/13/2020 | 96 | ANSWER to 56 Amended Complaint/Petition by CULLEN TALTON. Related document: 56 Amended Complaint/Petition filed by ANNA LANGE.(MORGAN, SHARON) (Entered: 11/13/2020) |
| 11/16/2020 | | Notice of Deficiency (related document(s): 95 Answer to Amended Complaint filed by CULLEN TALTON, 93 Answer to Amended Complaint filed by CULLEN TALTON: Wrong document attached. No action necessary, correctly filed at Tab 96. (ggs) (Entered: 11/16/2020) |
| 11/19/2020 | 97 | UNOPPOSED MOTION for Extension of Time to File RESPONSE as to 94 MOTION for Reconsideration re 89 Order on Motion to Dismiss/Lack of Jurisdiction,,, Order on Motion to Dismiss Complaint,, by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 11/19/2020) |
| 11/19/2020 | 98 | UNOPPOSED MOTION for Discovery by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Memorandum in Support of Unopposed Motion |

| | | |
|---|---|---|
| | | for Expedited Discovery, # 2 Proposed Order Proposed Consent Order for Expedited Discovery) (BARTON, KENNETH) (Entered: 11/19/2020) |
| 11/20/2020 | 99 | This is a text only entry; no document issued. **ORDER** GRANTING 97 Motion for Extension of Time to File RESPONSE re 94 MOTION for Reconsideration. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/20/2020. (wbm) (Entered: 11/20/2020) |
| 11/20/2020 | 100 | **CONSENT ORDER FOR EXPEDITED DISCOVERY**. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/20/2020. (kat) (Entered: 11/20/2020) |
| 11/30/2020 | 101 | RESPONSE filed by ANNA LANGE re 94 MOTION for Reconsideration re 89 Order on Motion to Dismiss/Lack of Jurisdiction,,, Order on Motion to Dismiss Complaint,, (Attachments: # 1 Exhibit Declaration of David Brown)(BARTON, KENNETH) (Entered: 11/30/2020) |
| 12/22/2020 | 102 | **ORDER** DENYING 94 Motion for Reconsideration. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 12/22/2020. (kat) (Entered: 12/22/2020) |
| 01/07/2021 | 103 | JOINT MOTION for Protective Order by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Proposed Order Prosposed Consent Protective and Confidentiality Order) (BARTON, KENNETH) (Entered: 01/07/2021) |
| 01/08/2021 | 104 | **CONSENT PROTECTIVE AND CONFIDENTIALITY ORDER**. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 1/8/2021. (kat) (Entered: 01/08/2021) |
| 02/10/2021 | 105 | JOINT MOTION for Consent Order Extending Expedited Discovery Period re 100 Order on Motion for Discovery by HOUSTON COUNTY, GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Proposed Order)(LAIL, PATRICK) (Entered: 02/10/2021) |
| 02/10/2021 | 106 | **ORDER** GRANTING 105 JOINT MOTION for Consent Order Extending Expedited Discovery Period re 100 Consent Order for Expedited Discovery. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 2/10/2021. (kat) (Entered: 02/10/2021) |
| 03/10/2021 | 107 | UNOPPOSED MOTION for Second Consent Order Extending Expedited Discovery Period re 98 MOTION for Discovery by HOUSTON COUNTY, GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Proposed Order Text of Order)(LAIL, PATRICK) (Entered: 03/10/2021) |
| 03/11/2021 | 108 | This is a text only entry; no document issued. **ORDER** GRANTING 107 Unopposed Motion for Second Consent Order Extending Expedited Discovery Period. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 3/11/2021. (wbm) (Entered: 03/11/2021) |
| 03/15/2021 | 109 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3741013, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III, 301171. (Attachments: # 1 Certificate of Good Standing SDNY COGS)(ARKLES, Z) (Entered: 03/15/2021) |
| 03/16/2021 | 110 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by Z GABRIEL ARKLES (nop) (Entered: 03/16/2021) |
| 05/19/2021 | 111 | MOTION to Withdraw Document 57 Motion for Preliminary Injunction, by ANNA LANGE filed by SARAH MATLACK WASTLER.(WASTLER, SARAH) Modified on 5/26/2021 to edit text(vs). (Entered: 05/19/2021) |
| 05/26/2021 | 112 | **ORDER**. Discovery SHALL be completed by August 19, 2021, and dispositive and Daubert motions are due by September 2, 2021. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 5/26/2021. (kat) (Entered: 05/26/2021) |
| 08/06/2021 | 113 | UNOPPOSED MOTION for Extension of Time to File. by HOUSTON COUNTY, GEORGIA filed by PATRICK L LAIL. (Attachments: # 1 Proposed Order)(LAIL, PATRICK) (Entered: |

| | | 08/06/2021) |
|---|---|---|
| 08/09/2021 | 114 | This is a text only entry; no document issued. **ORDER** GRANTING 113 Motion for Extension of Time. Discovery to be complete by 9/20/2021. Dispositive and *Daubert* motions due by 10/20/2021. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/9/2021. (wbm) (Entered: 08/09/2021) |
| 08/16/2021 | 115 | MOTION to Withdraw as Attorney by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Proposed Order Proposed Order on Motion to Withdraw)(BARTON, KENNETH) (Entered: 08/16/2021) |
| 08/30/2021 | 116 | MOTION to Withdraw as Attorney by ANNA LANGE filed by NOAH ETHAN LEWIS. (Attachments: # 1 Proposed Order Proposed Order Proposed Order on Motion to Withdraw) (LEWIS, NOAH) (Entered: 08/30/2021) |
| 10/04/2021 | 117 | UNOPPOSED MOTION re 114 Order on Motion for Extension of Time (Misc), by HOUSTON COUNTY BOARD OF COMMISSIONERS, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Proposed Order)(LAIL, PATRICK) (Entered: 10/04/2021) |
| 10/04/2021 | 118 | This is a text only entry; no document issued. **ORDER** GRANTING 117 Motion for Extension of Time. Dispositive and *Daubert* motions due by 11/3/2021. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/4/21 (bwr) (Entered: 10/04/2021) |
| 10/18/2021 | 119 | MOTION to Withdraw as Attorney by ANNA LANGE filed by SARAH MATLACK WASTLER. (Attachments: # 1 Exhibit A: Notice of Withdrawal of Counsel, # 2 Proposed Order)(WASTLER, SARAH) (Entered: 10/18/2021) |
| 10/27/2021 | 120 | CONSENT MOTION to Seal Document(s) by BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC filed by TYLER P BISHOP. (Attachments: # 1 Exhibit A - Subpoena, # 2 Exhibit B - Declaration of D. Smead, # 3 Exhibit C - Proposed Order)(BISHOP, TYLER) (Entered: 10/27/2021) |
| 10/27/2021 | 121 | UNOPPOSED MOTION to Seal Document(s) 104 Order on Motion for Protective Order by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Proposed Order Proposed Order)(BARTON, KENNETH) (Entered: 10/27/2021) |
| 10/28/2021 | 122 | **ORDER** GRANTING 120 CONSENT MOTION to Seal Document(s) by BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/28/2021. (kat) (Entered: 10/28/2021) |
| 10/28/2021 | 123 | **ORDER** GRANTING 121 UNOPPOSED MOTION to Seal Document(s). Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/28/2021. (kat) (Entered: 10/28/2021) |
| 10/28/2021 | 124 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # CGAMDC-3935413, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(FATA, CATHERINE) (Entered: 10/28/2021) |
| 10/28/2021 | 125 | UNOPPOSED MOTION for Leave to File Excess Pages for Motions for Summary Judgment by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by SHARON P MORGAN. (MORGAN, SHARON) (Entered: 10/28/2021) |
| 10/28/2021 | 126 | UNOPPOSED MOTION for Leave to File Excess Pages for Motion for Summary Judgment by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 10/28/2021) |
| 10/29/2021 | | Notice of Deficiency (related document(s): 124 Petition to the Clerk for Admission to Plead and Practice Pro Hac Vice, filed by ANNA LANGE ); Other - If you are not a member of the State Bar of Georgia and do not maintain an office in Georgia, you must obtain a Certificate of Good Standing from a US District Court where you are admitted to practice. (The Certificate must be |

| | | |
|---|---|---|
| | | issued within 30 days of petition for admission.) State court certificates are NOT accepted. (mdm) (Entered: 10/29/2021) |
| 11/01/2021 | 127 | This is a text only entry; no document issued. **ORDER** GRANTING <u>125</u> Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/1/2021. (bwr) (Entered: 11/01/2021) |
| 11/01/2021 | 128 | This is a text only entry; no document issued. **ORDER** GRANTING <u>126</u> Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/1/2021. (bwr) (Entered: 11/01/2021) |
| 11/03/2021 | <u>129</u> | MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit 1 Plaintiff's Expert Witness Identifications, # <u>3</u> Exhibit 2 Expert Report of Paisley Currah, # <u>4</u> Exhibit 3 2015 U.S. Transgender Survey GA State Report)(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | <u>130</u> | MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit 1 Plaintiff's Expert Witness Identifications, # <u>3</u> Exhibit 2 Expert Report for Chanel Haley, # <u>4</u> Exhibit 3 2015 U.S. Transgender Survey GA State Report)(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | <u>131</u> | Request to ANNA LANGE to file original discovery document(s) by CULLEN TALTON, HOUSTON COUNTY GEORGIA.(MORGAN, SHARON) (Entered: 11/03/2021) |
| 11/03/2021 | <u>132</u> | MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit 1 Plaintiff's Expert Witness Identification, # <u>3</u> Exhibit 2 Expert Report of Loren S. Schechter, M.D., # <u>4</u> Exhibit 3 Societal Implications of Health Coverage for Medically Necessary Services in the U.S. Transgender Population, # <u>5</u> Exhibit 4 The implications of Allowing Transgender Personnel to Serve Openly in the U.S. Military, # <u>6</u> Exhibit 5 Declaration of Kenneth Carter)(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | <u>133</u> | MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit 1 Plaintiff's Expert Witness Identifications, # <u>3</u> Exhibit 2 Expert Report of Joan Barrett, FSA, MAAA, # <u>4</u> Exhibit 3 Joan Barret Deposition Excerpt Pages, # <u>5</u> Exhibit 4 Actuarial Standard of Practice No. 1, # <u>6</u> Exhibit 5 Actuarial Standard of Practice No. 41, # <u>7</u> Exhibit 6 Expert Report of James P. Galasso (8-12-21), # <u>8</u> Exhibit 7 Declaration of Kenneth Carter, # <u>9</u> Exhibit 8 Expert Report of Joan C Barrett and Elaine T. Corrough Submitted On Behalf of the Plaintiffs (3/22/19))(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | <u>134</u> | ***Refiled at <u>142</u> *** MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit 1 Plaintiff's Expert Witness Identifications, # <u>3</u> Exhibit 2 Plaintiff's Disclosure of Expert Witness Pursuant to Fed.R.Civ.P26(A)(2)(C), # <u>4</u> Exhibit 3 Health Insurance Coverage of Gender-Affirming Top Surgery in the United States, # <u>5</u> Exhibit 4 Anna Lange 4/2/21 Deposition Excerpt Pages, # <u>6</u> Exhibit 5 Declaration of Kenneth Carter, # <u>7</u> Exhibit 6 Declaration of Joan C Barrett, # <u>8</u> Exhibit 7 Expert Report of Joan C. Barrett and Elaine T. Corrough Submitted on Behalf of the Plaintiffs) (LAIL, PATRICK) Modified on 11/4/2021 to add docket text(vs). (Entered: 11/03/2021) |
| 11/03/2021 | <u>135</u> | ***Refiled at <u>140</u> *** MOTION for Summary Judgment by ANNA LANGE filed by WESLEY POWELL.(POWELL, WESLEY) Modified on 11/4/2021 to add docket text(vs). (Entered: 11/03/2021) |
| 11/03/2021 | <u>136</u> | MOTION for Summary Judgment by CULLEN TALTON filed by SHARON P MORGAN. (Attachments: # <u>1</u> Statement of Material Facts, # <u>2</u> Declaration of Donna Clark, # <u>3</u> Declaration of Tommy Stalnaker, # <u>4</u> Declaration of Barry Holland, # <u>5</u> Declaration of Ken Carter, # <u>6</u> |

| | | |
|---|---|---|
| | | Declaration of William Rape, # 7 Declaration of Gail Robinson, # 8 Declaration of Jay Walker, # 9 Memorandum in Support)(MORGAN, SHARON) (Entered: 11/03/2021) |
| 11/03/2021 | 137 | MOTION for Summary Judgment by HOUSTON COUNTY GEORGIA filed by PATRICK L LAIL. (Attachments: # 1 Stmt of Material Facts Resp, # 2 Memorandum in Support, # 3 Plaintiff Anna Lange 4/2/21 Deposition and Exhibits, # 4 Declaration of Donna Clark, # 5 Declaration of Kenneth Carter, # 6 Declaration of Barry Holland, # 7 Declaration of Tommy Stalnaker, # 8 Declaration of Gail Robinson, # 9 Declaration of H. Jay Walker, # 10 Declaration of William H. Rape, # 11 August 24, 2021 Deposition of Joan Barrett, # 12 September 9, 2021 Deposition of Tom Galasso)(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | 138 | Certificate of Need to File Discovery by HOUSTON COUNTY GEORGIA, CULLEN TALTON. Related document: 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON. (MORGAN, SHARON) (Entered: 11/03/2021) |
| 11/03/2021 | 139 | ***Disregard refiled at 140 *** MEMORANDUM in Support filed by ANNA LANGE re: 135 MOTION for Summary Judgment (POWELL, WESLEY) Modified on 11/4/2021 to add docket text(vs). (Entered: 11/03/2021) |
| 11/04/2021 | 140 | MOTION for Summary Judgment by ANNA LANGE filed by WESLEY POWELL. (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts, # 3 Declaration of Jill K. Grant, # 4 Declaration of Sgt. Anna Lange, # 5 Declaration of Loren S. Schechter, # 6 Declaration of Joan Barrett, # 7 Declaration of Rachel Bluebond-Langner, # 8 Declaration of Chanel Haley, # 9 Declaration of Paisley Currah)(POWELL, WESLEY) (Entered: 11/04/2021) |
| 11/04/2021 | | Notice of Deficiency (related document(s): 139 Memorandum in Support filed by ANNA LANGE ); Other - Wrong document attached. (vs) (Entered: 11/04/2021) |
| 11/04/2021 | 141 | **SEALED DOCUMENT** (Attachments: # 1 Exhibit, # 2 Exhibit)(vs) (Entered: 11/04/2021) |
| 11/04/2021 | 142 | MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 Plaintiff's Disclosure of Expert Witness Pursuant to Fed.R.Civ.P26(A)(2)(C), # 4 Exhibit 3 Health Insurance Coverage of Gender-Affirming Top Surgery in the United States, # 5 Exhibit 4 Anna Lange 4-2-21 Deposition Excerpt Pages, # 6 Exhibit 5 Declaration of Kenneth Carter, # 7 Exhibit 6 Declaration of Joan C Barret (Boyden v State of Wisconsin Dept of Employee Trust Funds), # 8 Exhibit Expert Report of Joan C. Barrett and Elaine T. Corrough Submitted on Behalf of the Plaintiffs)(LAIL, PATRICK) (Entered: 11/04/2021) |
| 11/04/2021 | 143 | EXHIBIT(S) *Declaration of Joan Barrett* by ANNA LANGE re 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Report of Barrett)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 144 | EXHIBIT(S) *Declaration of Bluebond-Langner* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Declaration, # 2 Exhibit Expert Disclosure)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 145 | EXHIBIT(S) *Declaration of Currah* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Report)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 146 | EXHIBIT(S) *Declaration of Haley* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Witness Report)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 147 | EXHIBIT(S) *Declaration of Sgt. Lange* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (BARTON, |

| | | |
|---|---|---|
| | | KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 148 | EXHIBIT(S) *Declaration of Schecter* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Report, # 2 Exhibit Declaration)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 149 | EXHIBIT(S) *Declaration of Jill Grant (without exhibits, errors preventing filing)* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/05/2021 | 150 | EXHIBIT(S) *Declaration of Grant (Exhibits Part 1 of 2)* by ANNA LANGE re 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment, 139 Memorandum in Support, 149 Exhibit(s) (Attachments: # 1 Exhibit Deposition of Carter Part 1 of 5, # 2 Exhibit Deposition of Carter Part 2 of 5, # 3 Exhibit Deposition of Carter Part 3 of 5, # 4 Exhibit Deposition of Carter Part 4 of 5, # 5 Exhibit Deposition of Carter Part 5 of 5, # 6 Exhibit Deposition of Sheriff Part 1 of 2, # 7 Exhibit Deposition of Sheriff Part 2 of 2, # 8 Exhibit Deposition of Lange Part 1 of 2, # 9 Exhibit Deposition of Lange Part 2 of 2, # 10 Exhibit Deposition of Holland, # 11 Exhibit Deposition of Rape Part 1 of 2, # 12 Exhibit Deposition of Rape Part 2 of 2, # 13 Exhibit Deposition of Clark, # 14 Exhibit Deposition of Carter, # 15 Exhibit Deposition of Holland, # 16 Exhibit Deposition of Barrett, # 17 Exhibit Deposition of Galasso, # 18 Exhibit Deposition of Lange, # 19 Exhibit Deposition of Carter, # 20 Exhibit Defendants Responses to First RFAs, # 21 Exhibit Houston County Responses to Third Rogs, # 22 Exhibit Sheriff Responses to Second RFAs, # 23 Exhibit Sheriff Responses to First Rogs, # 24 Exhibit Zhao Report, # 25 Exhibit Anthems Clinical Guideline for Gender Affirming Surgery, # 26 Exhibit Carters November 4, 2019 Memo, # 27 Exhibit Anthems January 29, 2019 Denial, # 28 Exhibit Langes Fiscal Year 2020 Total Compensation Statement, # 29 Exhibit Houston County Responses to First Rogs, # 30 Exhibit Pope and Clark Email, # 31 Exhibit Hall and Lewis Email, # 32 Exhibit Lewis and Hall Email)(BARTON, KENNETH) (Entered: 11/05/2021) |
| 11/05/2021 | 151 | EXHIBIT(S) *Declaration of Grant (Exhibits Part 2 of 2)* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 149 Exhibit(s), 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Clark and Clark Email, # 2 Exhibit Clark and Pope Email, # 3 Exhibit Clark and Carter Email, # 4 Exhibit November 19, 2019 Houston County Board of Commissioners Meet Minutes, # 5 Exhibit January 16, 2019 letter from Lewis to County Attorney, # 6 Exhibit Clark and Carter Email, # 7 Exhibit BCBS000351, # 8 Exhibit Open Records Request, # 9 Exhibit Lange and Holland Email, # 10 Exhibit Anthem data re: 2018 Total Health Conditions by Paid Amount, # 11 Exhibit Anthem data re: 2019 Total Medical Conditions by Paid Amount, # 12 Exhibit Langes Petition to Change Name)(BARTON, KENNETH) (Entered: 11/05/2021) |
| 11/05/2021 | 152 | **SEALED DOCUMENT** (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(vs) (Entered: 11/05/2021) |
| 11/10/2021 | 153 | Request for Rule Local 6.2 Clerk's Extension re 137 MOTION for Summary Judgment, 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, 134 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D., 136 MOTION for Summary Judgment, 130 MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley, 129 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. by ANNA LANGE (BARTON, KENNETH) (Entered: 11/10/2021) |
| 11/10/2021 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 130 MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D. filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett filed by CULLEN TALTON, HOUSTON |

| | | |
|---|---|---|
| | | COUNTY GEORGIA, [129](#) MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [132](#) MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA (vs) (Entered: 11/10/2021) |
| 11/12/2021 | [154](#) | Certificate of Need to File Discovery *Deposition of Ken Carter 02/23/2021* by ANNA LANGE. Related document: [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [155](#) | DEPOSITION of Kenneth Carter taken on 02/23/2021 filed by ANNA LANGE. Related document: [154](#) Certificate of Need to File Discovery, filed by ANNA LANGE, [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE. (Attachments: # [1](#) Exhibit Ex. 1 Medical Benefit Booklet, # [2](#) Exhibit Ex. 2 Clinical UM Guideline, # [3](#) Exhibit Ex. 3 HBCS Approval of Changes, # [4](#) Exhibit Ex. 4 2017 Medical Plan Changes, # [5](#) Exhibit Ex. 5 Carter Email to Clark, # [6](#) Exhibit Ex. 6 Clark Email to Carter, # [7](#) Exhibit Ex. 7 Carter Email to Clark, # [8](#) Exhibit Ex. 8 Hall Email to Carter, # [9](#) Exhibit Ex. 9 Lewis Letter to HCBC, # [10](#) Exhibit Ex. 10 Transcend Legal Memo, # [11](#) Exhibit Ex. 11 Carter Email to Kissell, # [12](#) Exhibit Ex. 12 Carter Email to Clark, # [13](#) Exhibit Ex. 13 HCBC Meeting 02192019, # [14](#) Exhibit Ex. 14 Powell Letter to HCBC, # [15](#) Exhibit Ex. 15 Hall Letter to Powell, # [16](#) Exhibit Ex. 16 Clark Email to Carter, # [17](#) Exhibit Ex. 17 Memo to HCBC Health Plan Changes, # [18](#) Exhibit Ex. 18 Memo to HCBC Health Insurance Considerations, # [19](#) Exhibit Ex. 21 Carter Text 08122018, # [20](#) Exhibit Ex. 22 Carter Text 11042018, # [21](#) Exhibit Ex. 23 Carter Text 03302019, # [22](#) Exhibit Ex. 24 Carter Text 07042020)(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [156](#) | Certificate of Need to File Discovery *Sheriff Cullen Talton 03/25/2021* by ANNA LANGE. Related document: [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [157](#) | DEPOSITION of Sheriff Cullen Talton taken on 03/25/2021 filed by ANNA LANGE. Related document: [156](#) Certificate of Need to File Discovery, filed by ANNA LANGE, [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [158](#) | Certificate of Need to File Discovery *Houston County 30(b)(6)* by ANNA LANGE. Related document: [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [159](#) | DEPOSITION of Houston County 30(b)(6) (Holland and Carter) taken on 04/15/2021 filed by ANNA LANGE. Related document: [158](#) Certificate of Need to File Discovery, filed by ANNA LANGE, [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE. (Attachments: # [1](#) Exhibit Deposition of Ken Carter 04/15/2021)(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [160](#) | Certificate of Need to File Discovery *Houston County 30(b)(6) Ken Carter 09/16/2021* by ANNA LANGE. Related document: [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [161](#) | DEPOSITION of Houston County 30(b)(6) (Carter) taken on 09/16/2021 filed by ANNA LANGE. Related document: [160](#) Certificate of Need to File Discovery, filed by ANNA LANGE, |

| | | |
|---|---|---|
| | | [137](link) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](link) MOTION for Summary Judgment filed by CULLEN TALTON, [140](link) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [162](link) | Certificate of Need to File Discovery *Deposition of Donna Clark 04/13/2021* by ANNA LANGE. Related document: [137](link) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](link) MOTION for Summary Judgment filed by CULLEN TALTON, [140](link) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [163](link) | DEPOSITION of Donna Clark taken on 04/13/2021 filed by ANNA LANGE. Related document: [162](link) Certificate of Need to File Discovery, filed by ANNA LANGE, [137](link) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](link) MOTION for Summary Judgment filed by CULLEN TALTON, [140](link) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/15/2021 | [164](link) | Certificate of Need to File Discovery *Sheriff's Office 30(b)(6)* by ANNA LANGE. Related document: [137](link) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](link) MOTION for Summary Judgment filed by CULLEN TALTON, [140](link) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/15/2021) |
| 11/15/2021 | [165](link) | DEPOSITION of Houston County Sheriff's Office 30(b)(6) (Rape and Holland) taken on 04/13/2021 filed by ANNA LANGE. Related document: [164](link) Certificate of Need to File Discovery, filed by ANNA LANGE, [137](link) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [140](link) MOTION for Summary Judgment filed by ANNA LANGE. (Attachments: # [1](link) Exhibit Deposition of HCSO 30(b)(6) J. Holland)(BARTON, KENNETH) (Entered: 11/15/2021) |
| 11/15/2021 | [166](link) | Certificate of Need to File Discovery *Deposition of Tom Galasso* by ANNA LANGE. Related document: [137](link) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](link) MOTION for Summary Judgment filed by CULLEN TALTON, [140](link) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/15/2021) |
| 11/15/2021 | [167](link) | DEPOSITION of Tom Galasso taken on 09/09/2021 filed by ANNA LANGE. Related document: [166](link) Certificate of Need to File Discovery, filed by ANNA LANGE, [137](link) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](link) MOTION for Summary Judgment filed by CULLEN TALTON, [140](link) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/15/2021) |
| 11/17/2021 | [168](link) | Request for Rule Local 6.2 Clerk's Extension re [140](link) MOTION for Summary Judgment by HOUSTON COUNTY GEORGIA, CULLEN TALTON (MORGAN, SHARON) (Entered: 11/17/2021) |
| 11/17/2021 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: [140](link) MOTION for Summary Judgment filed by ANNA LANGE (vs) (Entered: 11/17/2021) |
| 11/18/2021 | [169](link) | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3952412, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State Bar No. 301171. (Attachments: # [1](link) Certificate of Good Standing)(FATA, CATHERINE) (Entered: 11/18/2021) |
| 11/19/2021 | [170](link) | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by CATHERINE FATA. (mdm) (Entered: 11/19/2021) |
| 12/02/2021 | [172](link) | JOINT MOTION for Extension of Time to File RESPONSE as to [137](link) MOTION for Summary Judgment, [133](link) MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, [136](link) MOTION for Summary Judgment, [130](link) MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley, [142](link) MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., [129](link) MOTION for Summary Judgment, [129](link) MOTION To Exclude Plaintiff's Expert Testimony: |

| | | |
|---|---|---|
| | | Paisley Currah, [132] MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 12/02/2021) |
| 12/03/2021 | 173 | This is a text only entry; no document issued. **ORDER** GRANTING [172] Motion for Extension of Time to File RESPONSE and REPLY briefs. The parties shall file responses to all Motions for Summary Judgment and *Daubert* motions by December 22, 2021 and file reply briefs by January 26, 2022. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 12/3/21. (bwr) (Entered: 12/03/2021) |
| 12/03/2021 | | Notice of Deficiency (related document(s): 171 Notice (Other) filed by ANNA LANGE ); The PACER login ID and password used to electronically file a document constitutes the Participants electronic signature for all purposes under the Federal Rules. Document must be re-filed using the user credentials of the name of the attorney in the signature block. See CM/ECF Administrative Procedures, page 7.(vs) (Entered: 12/03/2021) |
| 12/15/2021 | [175] | JOINT MOTION for Leave to File Excess Pages for Motions for Summary Judgment by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by SHARON P MORGAN. (MORGAN, SHARON) (Entered: 12/15/2021) |
| 12/15/2021 | 176 | This is a text only entry; no document issued. **ORDER** GRANTING [175] Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 12/15/21. (bwr) (Entered: 12/15/2021) |
| 12/22/2021 | [177] | RESPONSE filed by ANNA LANGE re [142] MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., [133] MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, [134] MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D., [130] MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley, [129] MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah, [132] MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. (BARTON, KENNETH) (Entered: 12/22/2021) |
| 12/22/2021 | [178] | RESPONSE filed by ANNA LANGE re [137] MOTION for Summary Judgment, [136] MOTION for Summary Judgment (Attachments: # [1] Stmt of Material Facts Resp Ex A Plaintiff's Response to Defendant Houston County's Statement of Undisputed Facts, # [2] Stmt of Material Facts Resp Ex B Plaintiff's Response to Defendant Sheriff Talton's Statement of Undisputed Facts) (BARTON, KENNETH) (Entered: 12/22/2021) |
| 12/22/2021 | [179] | RESPONSE filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [140] MOTION for Summary Judgment (Attachments: # [1] Exhibit A - Declaration of Kenneth Carter, # [2] Statement of Material Facts, # [3] Stmt of Material Facts Resp)(LAIL, PATRICK) (Entered: 12/22/2021) |
| 12/23/2021 | [180] | **SEALED DOCUMENT** re [179] (vs) (Entered: 12/23/2021) |
| 12/23/2021 | [181] | **SEALED DOCUMENT** re [177] (vs) Modified on 12/27/2021 to link to motion. (ggs). (Entered: 12/23/2021) |
| 01/20/2022 | [182] | JOINT MOTION for Leave to File Excess Pages for Reply Briefs in Support of Motions for Summary Judgment by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 01/20/2022) |
| 01/20/2022 | 183 | This is a text only entry; no document issued. **ORDER** GRANTING [182] Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 1/20/22. (bwr) (Entered: 01/20/2022) |
| 01/21/2022 | | NOTICE OF SETTING HEARING ON MOTION re [142] MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., [133] MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, [132] MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D., [140] MOTION for Summary Judgment, [130] MOTION To Exclude Plaintiff's Expert Testimony - Chanel Haley, [129] MOTION To Exclude Plaintiff's Expert Testimony - |

| | | Paisley Currah, [137] MOTION for Summary Judgment, [136] MOTION for Summary Judgment. Motion Hearing set for 2/24/2022 at 2:00 PM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will occur **IN-PERSON**. Counsel, parties, and members of the public and press should review Standing Order 2021-08, available on the court's website, regarding courthouse entrance procedures due to COVID-19. Interested parties may obtain dial information by emailing macon.ecf@gamd.uscourts.gov. (kat) (Entered: 01/21/2022) |
|---|---|---|
| 01/26/2022 | [184] | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [142] MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., [132] MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. (Attachments: # [1] Exhibit A - Commentary on Gender Surgery Beyond Chest & Genitals - Current Insurance Landscape)(LAIL, PATRICK) (Entered: 01/26/2022) |
| 01/26/2022 | [185] | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [130] MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley, [129] MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah (LAIL, PATRICK) (Entered: 01/26/2022) |
| 01/26/2022 | [186] | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [133] MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett (LAIL, PATRICK) (Entered: 01/26/2022) |
| 01/26/2022 | [187] | REPLY to Response filed by ANNA LANGE re [140] MOTION for Summary Judgment (Attachments: # [1] Exhibit Order in Vasquez v. Iowa Dep't of Human Servs.)(BARTON, KENNETH) (Entered: 01/26/2022) |
| 01/26/2022 | [188] | REPLY to Response filed by ANNA LANGE re [140] MOTION for Summary Judgment (Attachments: # [1] Exhibit Exhibit 1 Anthem BCBS Claims Summary)(BARTON, KENNETH) (Entered: 01/26/2022) |
| 01/26/2022 | [189] | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [137] MOTION for Summary Judgment (Attachments: # [1] Exhibit 1 - Civil Docket for Henderson et al v Bodine Aluminum et al 4 95-cv-01051-CAS)(LAIL, PATRICK) (Entered: 01/26/2022) |
| 01/26/2022 | [190] | REPLY to Response filed by CULLEN TALTON re [136] MOTION for Summary Judgment (Attachments: # [1] Exhibit 1 - Civil Docket for Henderson et al v Bodine Aluminum et al 4 95-cv-01051-CAS)(LAIL, PATRICK) (Entered: 01/26/2022) |
| 02/01/2022 | [191] | NOTICE of Attorney Appearance by WILLIAM DRUMMOND DEVENEY on behalf of HOUSTON COUNTY GEORGIA, CULLEN TALTON Attorney WILLIAM DRUMMOND DEVENEY added to party HOUSTON COUNTY GEORGIA(pty:dft), Attorney WILLIAM DRUMMOND DEVENEY added to party CULLEN TALTON(pty:dft)(DEVENEY, WILLIAM) (Entered: 02/01/2022) |
| 02/17/2022 | [192] | UNOPPOSED MOTION to Seal Document(s) 174 Notice (Other), 171 Notice (Other),, MOTION for Leave to File Redacted Statement of Facts by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 02/17/2022) |
| 02/18/2022 | 193 | This is a text only entry; no document issued. **ORDER** GRANTING [192] Motion to Seal Document(s) 171 and 174 NOTICE Amended Local Rule 56 Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment with access restricted to court users and case parties. **ORDER** GRANTING [192] Motion for Leave to File Redacted Version of 174 NOTICE Amended Local Rule 56 Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 2/18/2022. (kat) (Entered: 02/18/2022) |
| 02/18/2022 | [194] | ***REFILED AT [195] *** NOTICE Amended Local Rule 56 Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment by ANNA LANGE re 171 Notice (Other), (BARTON, KENNETH) Text modified on 2/22/2022 (kat). (Entered: 02/18/2022) |

| | | |
|---|---|---|
| 02/18/2022 | 195 | NOTICE Amended Local Rule 56 Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment by ANNA LANGE re 174 Notice (Other) - *REDACTED* (BARTON, KENNETH) Text modified on 2/22/2022 (kat). (Entered: 02/18/2022) |
| 02/22/2022 | | *** TIME CHANGE ONLY*** NOTICE OF RESETTING HEARING ON MOTION re 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D., 140 MOTION for Summary Judgment, 130 MOTION To Exclude Plaintiff's Expert Testimony - Chanel Haley, 129 MOTION To Exclude Plaintiff's Expert Testimony - Paisley Currah, 137 MOTION for Summary Judgment, 136 MOTION for Summary Judgment. Motion Hearing RESET for 2/24/2022 at 1:30 PM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will occur IN-PERSON. Counsel, parties, and members of the public and press should review Standing Order 2022-02, available on the court's website, regarding courthouse entrance procedures due to COVID-19. Interested parties may obtain dial information by emailing macon.ecf@gamd.uscourts.gov. (kat) (Entered: 02/22/2022) |
| 02/24/2022 | 196 | Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Motion Hearing held on 2/24/2022 re 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D. filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE, 130 MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 129 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA. Court Reporter: Darlene Fuller. Time in Court: 1 hour / 44 minutes. (kat) (Entered: 02/24/2022) |
| 03/03/2022 | 197 | TRANSCRIPT of hearing on Motions for Summary Judgment held on 02/24/2022, before Judge Marc T. Treadwell. Court Reporter Darlene D. Fuller. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (ddf) (Entered: 03/03/2022) |
| 03/18/2022 | 198 | RESPONSE to Court Order filed by ANNA LANGE re 197 Transcript of Proceedings, (BARTON, KENNETH) (Entered: 03/18/2022) |
| 03/18/2022 | 199 | RESPONSE to Court Order filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re 197 Transcript of Proceedings, (LAIL, PATRICK) (Entered: 03/18/2022) |
| 03/29/2022 | 200 | Letter from Judge Treadwell. (kat) (Entered: 03/29/2022) |
| 04/08/2022 | 201 | RESPONSE to Court Order filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re 200 Letter (LAIL, PATRICK) (Entered: 04/08/2022) |
| 04/08/2022 | 202 | RESPONSE to Court Order filed by ANNA LANGE re 200 Letter (BARTON, KENNETH) (Entered: 04/08/2022) |
| 04/28/2022 | 203 | NOTICE of New Authority by HOUSTON COUNTY GEORGIA, CULLEN TALTON (LAIL, PATRICK) (Entered: 04/28/2022) |
| 05/17/2022 | 204 | NOTICE Supplemental Authority by ANNA LANGE re 140 MOTION for Summary Judgment (Attachments: # 1 Exhibit Eknes-Tucker v. Marshall Order)(BARTON, KENNETH) (Entered: 05/17/2022) |
| 06/02/2022 | 205 | **ORDER** DENYING without prejudice 129 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah; DENYING without prejudice 130 MOTION To Exclude Plaintiff's Expert |

| | | Testimony: Chanel Haley; DENYING without prejudice [132](#) MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. ; DENYING without prejudice [133](#) MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett; GRANTING in part and DENYING in part [136](#) Motion for Summary Judgment; GRANTING in part and DENYING in part [137](#) Motion for Summary Judgment; GRANTING in part and DENYING in part [140](#) Motion for Summary Judgment; DENYING without prejudice [142](#) MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 6/2/2022. (kat) (Entered: 06/02/2022) |
|---|---|---|
| 06/16/2022 | [206](#) | MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # [1](#) Memorandum in Support, # [2](#) Proposed Order)(LAIL, PATRICK) (Entered: 06/16/2022) |
| 07/01/2022 | [207](#) | Letter regarding Request for Status Conference to Set Trial Date re [206](#) MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review (BARTON, KENNETH) (Entered: 07/01/2022) |
| 07/07/2022 | [208](#) | RESPONSE filed by ANNA LANGE re [206](#) MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review (BARTON, KENNETH) (Entered: 07/07/2022) |
| 07/13/2022 | | NOTICE OF **SETTING** STATUS CONFERENCE. Status Conference re [207](#) Letter set for 7/28/2022 at 10:00 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. The parties shall also be prepared to discuss [206](#) MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review. Hearing will occur **IN-PERSON**. Counsel, parties, and members of the public and press should review Standing Order 2022-03, available on the court's website, regarding courthouse entrance procedures due to COVID-19. (kat) (Entered: 07/13/2022) |
| 07/19/2022 | [209](#) | Letter regarding rescheduling status conference (POWELL, WESLEY) (Entered: 07/19/2022) |
| 07/20/2022 | | Notice of Deficiency (related document(s): [209](#) Letter filed by ANNA LANGE ); Document must be re-filed using correct event which is - Motion to Continue. (vs) (Entered: 07/20/2022) |
| 07/20/2022 | [210](#) | MOTION to Continue *Status Conference* by ANNA LANGE filed by WESLEY POWELL. (POWELL, WESLEY) (Entered: 07/20/2022) |
| 07/20/2022 | 211 | This is a text only entry; no document issued. **ORDER** GRANTING [210](#) Motion to Continue Status Conference. Status Conference PREVIOUSLY set for 7/28/2022 is RESET for 8/11/2022 at 10:00 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 7/20/2022. (kat) (Entered: 07/20/2022) |
| 07/21/2022 | | Notice of Deficiency (related document(s): [210](#) Motion to Continue filed by ANNA LANGE ); The signature block does not include the e mail address of the filer. Please do not re-file, for future reference only. See Fed.R.Civ.P 11.(rlw) (Entered: 07/21/2022) |
| 07/21/2022 | [212](#) | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [206](#) MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review (LAIL, PATRICK) (Entered: 07/21/2022) |
| 08/08/2022 | [213](#) | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # CGAMDC-4153272, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III 301171. (Attachments: # [1](#) Certificate of Good Standing)(PAYNE, AMANDA) (Entered: 08/08/2022) |
| 08/10/2022 | [214](#) | NOTICE Supplemental Authority by ANNA LANGE re [208](#) Response to Motion (Attachments: # [1](#) Exhibit Supplemental Authority)(BROWN, DAVID) (Entered: 08/10/2022) |
| 08/11/2022 | [215](#) | NOTICE of Attorney Withdrawal by MARY EATON on behalf of ANNA LANGE(EATON, MARY) (Entered: 08/11/2022) |

| 08/11/2022 | 216 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by AMANDA MARIE PAYNE. (mdm) (Entered: 08/11/2022) |
|---|---|---|
| 08/11/2022 | 217 | **ORDER** SETTING PRETRIAL CONFERENCE AND TRIAL (*re Title VII damages*): Pretrial Conference set for 9/8/2022 at 9:30 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Proposed Pretrial Order due by 9/1/2022. This case is set for jury trial during the trial term scheduled to begin on 9/19/2022 at 9:00 a.m. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/11/2022. (Attachments: # 1 Required Form) (kat) Modified on 9/1/2022 (kat). (Entered: 08/11/2022) |
| 08/11/2022 | 218 | NOTICE Clarification of Answer to Court's Question by HOUSTON COUNTY GEORGIA, CULLEN TALTON (DEVENEY, WILLIAM) (Entered: 08/11/2022) |
| 08/11/2022 | 219 | Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Status Conference / Motion Hearing held on 8/11/2022. Court Reporter: Tammy DiRocco. Time in Court: 1 hour / 26 minutes. (kat) Modified on 8/15/2022 to change filing date (vs). (Entered: 08/12/2022) |
| 08/18/2022 | 220 | **ORDER** DENYING 206 Motion to Certify Court's Order for Interlocutory Review. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/18/2022. (kat) (Entered: 08/18/2022) |
| 08/31/2022 | 221 | TRANSCRIPT of Proceedings held on 8-11-22, before Judge Treadwell. Court Reporter Tammy W. DiRocco. Volume Number: 1 of 1. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (Tammy W. DiRocco) (Entered: 08/31/2022) |
| 09/01/2022 | 222 | FIRST MOTION in Limine regarding Plaintiff's claims for future emotional distress damages by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support)(LAIL, PATRICK) (Entered: 09/01/2022) |
| 09/01/2022 | 223 | SECOND MOTION in Limine regarding Plaintiff's failure to make Rule 26 Disclosures by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A - Plaintiff's Initial Disclosures, # 3 Exhibit B - Defendant Houston County's Second Interrogatories to Plaintiff, # 4 Exhibit C - Plaintiff's Responses and Objections to Defendant Houston County's Second Set of Interrogatories)(LAIL, PATRICK) (Entered: 09/01/2022) |
| 09/01/2022 | 224 | THIRD MOTION in Limine regarding Rachel Bluebond-Langner, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A - Plaintiff's Initial Disclosures, # 3 Exhibit B - Expert Declaration of Rachel Bluebond-Langner, M.D. in Support of Plaintiff's Motion for Preliminary Injunction)(LAIL, PATRICK) (Entered: 09/01/2022) |
| 09/01/2022 | 225 | TRIAL BRIEF by HOUSTON COUNTY GEORGIA, CULLEN TALTON (Attachments: # 1 Exhibit A - Plaintiff's Response and Objections to Defendant Houston County's Second Set of Interrogatories)(LAIL, PATRICK) (Entered: 09/01/2022) |
| 09/01/2022 | 226 | TRIAL BRIEF by ANNA LANGE(BARTON, KENNETH) (Entered: 09/01/2022) |
| 09/01/2022 | 227 | ***DISREGARD REFILED AT 231 *** MOTION in Limine regarding Expert Testimony of Dr. Soety by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) Modified on 9/6/2022 to add docket text(vs). (Entered: 09/01/2022) |
| 09/01/2022 | 228 | ***DISREGARD, REFILED AT 230 *** MOTION in Limine regarding Arguments and Evidence Concerning Defendants' Liability by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) Modified on 9/6/2022 to add docket text(vs). (Entered: 09/01/2022) |

| | | |
|---|---|---|
| 09/01/2022 | 229 | ***DISREGARD REFILED AT 232 *** MOTION in Limine regarding Evidence of Plaintiff's Disciplinary Record by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) Modified on 9/6/2022 to add docket text(vs). (Entered: 09/01/2022) |
| 09/02/2022 | | ***TIME CHANGE ONLY*** NOTICE OF **RESETTING** PRETRIAL CONFERENCE. Pretrial Conference RESET for 9/8/2022 at 1:00 PM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will occur **IN-PERSON**. Counsel, parties, and members of the public and press should review Standing Order 2022-03, available on the courts website, regarding courthouse entrance procedures due to COVID-19. (kat) (Entered: 09/02/2022) |
| 09/02/2022 | | Notice of Deficiency (related document(s): 227 Motion in Limine filed by ANNA LANGE, 229 Motion in Limine filed by ANNA LANGE, 228 Motion in Limine filed by ANNA LANGE ); Document must refiled. The Motion has not been filed. The Memorandum must be filed as an exhibit to the Motion. (vs) (Entered: 09/02/2022) |
| 09/02/2022 | 230 | MOTION in Limine regarding Arguments and Evidence Concerning Defendants' Liability by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Memorandum in Support of First Motion in Limine)(BARTON, KENNETH) (Entered: 09/02/2022) |
| 09/02/2022 | 231 | MOTION in Limine regarding Expert Testimony of Dr. Soety by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Memorandum in Support of Second Motion in Limine)(BARTON, KENNETH) (Entered: 09/02/2022) |
| 09/02/2022 | 232 | MOTION in Limine regarding Evidence of Plaintiff's Disciplinary Record by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Memorandum in Support of Third Motion in Limine)(BARTON, KENNETH) (Entered: 09/02/2022) |
| 09/06/2022 | 233 | **ORDER** SETTING PRETRIAL CONFERENCE AND TRIAL (*re equal protection clause claim*): Pretrial Conference set for 2/2/2023 at 9:30 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Proposed Pretrial Order due by 1/12/2023. This case is specially set for jury trial to begin on February 27, 2023 at 9:00 a.m. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 9/6/2022. (Attachments: # 1 Required Form) (kat) (Entered: 09/06/2022) |
| 09/08/2022 | 234 | NOTICE of Filing Corrected Exhibit B in Support of Defendants' Third Motion in Limine by HOUSTON COUNTY GEORGIA, CULLEN TALTON re 224 MOTION in Limine regarding Rachel Bluebond-Langner, M.D. (Attachments: # 1 Exhibit B - Plaintiff's Disclosure of Expert Witness Pursuant to Fed.R.Civ.P.26(A)(2)(C))(LAIL, PATRICK) (Entered: 09/08/2022) |
| 09/08/2022 | 237 | MINUTE ORDER FOR FINAL PRETRIAL CONFERENCE held 9/8/2022 before CHIEF DISTRICT JUDGE MARC T TREADWELL. The Court ruled as follows: 222 Defendants' First Motion in Limine re: Plaintiff's Claims for Future Emotional Distress Damages is WITHDRAWN; 223 Defendants' Second Motion in Limine re: limitations on economic loss evidence - no ruling is required; 224 Defendants' Third Motion in Limine re: Dr. Bluebond-Langner is GRANTED in part and DENIED in part; 230 Plaintiff's First Motion in Limine re: Argument and Evidence Concerning Defendants' Liability is GRANTED subject to Plaintiff opening the door; 231 Plaintiff's Second Motion in Limine to Exclude Expert Testimony of Dr. Soety is WITHDRAWN; 232 Plaintiff's Third Motion in Limine re: Evidence of Plaintiff's Disciplinary Record is WITHDRAWN. FTR Gold START and STOP Times 1:00 - 2:48 pm. (Court Reporter Tammy DiRocco). (kat) (Entered: 09/15/2022) |
| 09/12/2022 | 235 | NOTICE of Attorney Appearance by JAMES MITCHELL FUCETOLA, IV on behalf of BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC Attorney JAMES MITCHELL FUCETOLA, IV added to party BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC(pty:dft)(FUCETOLA, JAMES) (Entered: 09/12/2022) |

| 09/12/2022 | [236](#) | NOTICE of Attorney Withdrawal by T JOSHUA ARCHER on behalf of BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC(ARCHER, T) (Entered: 09/12/2022) |
|---|---|---|
| 09/15/2022 | | NOTICE OF **SETTING** ATTORNEY COURTROOM TECHNOLOGY TESTING. ATTORNEY COURTROOM TECHNOLOGY TESTING (defendants' counsel) set for 9/16/2022 at 11:00 AM in Macon with Courtroom Deputy. ***Please have Court Security notify Chambers upon arrival.*** (kat) (Entered: 09/15/2022) |
| 09/16/2022 | [238](#) | TRANSCRIPT of Proceedings held on 9-8-22, before Judge Treadwell. Court Reporter Tammy W. DiRocco. Volume Number: 1 of 1. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (Tammy W. DiRocco) (Entered: 09/16/2022) |
| 09/16/2022 | [239](#) | NOTICE of Attorney Appearance by T JOSHUA ARCHER on behalf of BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC Attorney T JOSHUA ARCHER added to party BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC(pty:dft) (ARCHER, T) (Entered: 09/16/2022) |
| 09/19/2022 | 240 | INITIAL NOTIFICATION OF ELECTRONIC AVAILABILITY OF JUROR QUESTIONNAIRES. In order to obtain access to the attached juror questionnaires, you must docket CERTIFICATION RE: JUROR QUESTIONNAIRES. (hdw) (Entered: 09/19/2022) |
| 09/19/2022 | | Counsel for HOUSTON COUNTY GEORGIA, CULLEN TALTON hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(MORGAN, SHARON) (Entered: 09/19/2022) |
| 09/19/2022 | | Counsel for HOUSTON COUNTY GEORGIA, CULLEN TALTON hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(DEVENEY, WILLIAM) (Entered: 09/19/2022) |
| 09/19/2022 | | Counsel for ANNA LANGE hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(BARTON, KENNETH) (Entered: 09/19/2022) |
| 09/20/2022 | | Counsel for ANNA LANGE hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will |

| | | |
|---|---|---|
| | | destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(POWELL, WESLEY) (Entered: 09/20/2022) |
| 09/20/2022 | | Counsel for ANNA LANGE hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(BROWN, DAVID) (Entered: 09/20/2022) |
| 09/20/2022 | | NOTICE OF **SETTING** ATTORNEY COURTROOM TECHNOLOGY TESTING. Attorney Courtroom Technology Testing (plaintiff's counsel) set for 9/23/2022 at 10:00 AM in Macon with Courtroom Deputy. ***Please have Court Security notify Chambers upon arrival.*** (kat) (Entered: 09/20/2022) |
| 09/20/2022 | 241 | Letter from Judge Treadwell to all counsel of record. (kat) (Entered: 09/20/2022) |
| 09/22/2022 | | NOTICE OF **RESETTING** JURY TRIAL. Jury Trial PREVIOUSLY set for 9/19/2022 has been **RESET for 9/26/2022 at 9:00 AM in Macon** before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will occur **IN-PERSON**. Counsel, parties, and members of the public and press should review Standing Order 2022-03, available on the court's website, regarding courthouse entrance procedures due to COVID-19. (kat) (Entered: 09/22/2022) |
| 09/22/2022 | 242 | Letter regarding Judge Treadwell's Letter to All Counsel of Record dated 9/20/22 re 241 Letter (POWELL, WESLEY) (Entered: 09/22/2022) |
| 09/23/2022 | 243 | SUPPLEMENTAL NOTIFICATION OF AVAILABILITY OF JUROR QUESTIONNAIRES. If you have already entered a CERTIFICATION RE: JUROR QUESTIONNAIRES, it is not necessary to enter another Certification. If you have not entered a CERTIFICATION RE: JUROR QUESTIONNAIRES, you must do so in order to obtain access. (hdw) (Entered: 09/23/2022) |
| 09/23/2022 | 244 | Letter regarding the Court's trial documents (POWELL, WESLEY) (Entered: 09/23/2022) |
| 09/23/2022 | 245 | TRIAL BRIEF by ANNA LANGE (Attachments: # 1 Proposed Order Proposed Order) (BARTON, KENNETH) (Entered: 09/23/2022) |
| 09/24/2022 | 246 | Letter regarding Judge Treadwell's Letter re 241 Letter (DEVENEY, WILLIAM) (Entered: 09/24/2022) |
| 09/25/2022 | 247 | Letter regarding Plaintiff's Second Letter and Proposed Revision to Trial Documents re 244 Letter (LAIL, PATRICK) (Entered: 09/25/2022) |
| 09/25/2022 | 248 | TRIAL BRIEF by HOUSTON COUNTY GEORGIA, CULLEN TALTON(LAIL, PATRICK) (Entered: 09/25/2022) |
| 09/26/2022 | 249 | **COURT'S RULINGS** on Deposition Objections as to Dr. Rachel Bluebond-Langner. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 9/26/2022. (kat) (Entered: 09/28/2022) |
| 09/26/2022 | 250 | TEXT ONLY Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Pretrial Conference held on 9/26/2022. FTR Gold START and STOP Times 8:59AM - 9:14AM. Court Reporter: Darlene Fuller.Time in Court: 15 minutes. (ans) Modified to change hearing date to 09/26/2022 on 9/28/2022 (ans). (Entered: 09/28/2022) |

| | | |
|---|---|---|
| 09/26/2022 | [251](#) | Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Jury Trial Day 1 and Day 2 held on 9/26/2022 - 9/27/2022 Court Reporter: Darlene Fuller. (vs) (Entered: 09/28/2022) |
| 09/27/2022 | [252](#) | PLAINTIFF'S TRIAL EXHIBIT by ANNA LANGE (Attachments: # [1](#) Exhibit P3 - Surgery Denial Letter, dated 11/26/2018 (Lange - HC001951-54))(vs) (Entered: 09/28/2022) |
| 09/27/2022 | [253](#) | DEFENDANTS' TRIAL EXHIBITS by HOUSTON COUNTY, GA and CULLEN TALTON (Attachments: # [1](#) Exhibit D5 - Letter dated 10/11 /18 from Dr. Soety to Dr. Bluebond-Langner [Lange 2443-24441], # [2](#) Exhibit D8 - 11/13/18 Consult notes of Dr. Bluebond-Langner [Lange 2417-2421], # [3](#) Exhibit D9 - 11/13/18 Consult notes of Dr. Lee Zhao [Lange 2422-2427])(vs) Text modified on 9/29/2022 (kat). (Entered: 09/28/2022) |
| 09/27/2022 | [254](#) | Jury Instructions (Attachments: # [1](#) Burden of Proof)(vs) (Entered: 09/28/2022) |
| 09/27/2022 | [255](#) | Jury Notes/Questions(vs) (Entered: 09/28/2022) |
| 09/27/2022 | [256](#) | JURY VERDICT for ANNA LANGE(vs) (Entered: 09/28/2022) |
| 09/27/2022 | [257](#) | Jury Verdict signature page (Un-redacted) Related document: [256](#) JURY VERDICT.(vs) (Entered: 09/28/2022) |
| 10/03/2022 | [258](#) | **ORDER** FOR PERMANENT INJUNCTIVE AND DECLARATORY RELIEF. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/3/2022. (kat) (Entered: 10/03/2022) |
| 10/17/2022 | [259](#) | TRANSCRIPT of Jury Trial held on 09/26/2022 and 09/27/2022, before Chief Judge Marc T. Treadwell. Court Reporter Darlene D. Fuller. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (ddf) Text modified on 10/17/2022 (kat). (Entered: 10/17/2022) |
| 10/17/2022 | [260](#) | MOTION to Stay re [258](#) Order by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by RICHARD READ GIGNILLIAT. (Attachments: # [1](#) Memorandum in Support, # [2](#) Exhibit A - The New York Times Article 05/10/2022)(GIGNILLIAT, RICHARD) Modified on 10/18/2022 to edit docket text(vs). (Entered: 10/17/2022) |
| 10/19/2022 | [261](#) | **PRETRIAL ORDER** (*as to Title VII Damages*). Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/19/2022. (Attachments: # [1](#) Exhibit - PTO Attachment A, # [2](#) Exhibit - PTO Attachment B, # [3](#) Exhibit - PTO Attachment C, # [4](#) Exhibit - PTO Attachment D, # [5](#) Exhibit - PTO Attachment E, # [6](#) Exhibit - PTO Attachment F, # [7](#) Exhibit - PTO Attachment G). (kat) (Entered: 10/19/2022) |
| 10/21/2022 | [262](#) | NOTICE OF APPEAL as to [258](#) Order by HOUSTON COUNTY GEORGIA, CULLEN TALTON. Filing fee $ 505, Receipt No.: AGAMDC-4212594. (Attachments: # [1](#) Exhibit A - Docket 258 ORDER for Permanent Injunctive and Declaratory Relief)(MORGAN, SHARON) (Entered: 10/21/2022) |
| 10/21/2022 | | Appeal Instructions re [262](#) Notice of Appeal,. The Transcript Information Form and instructions are available on the District Court website under Forms & Guides. **PLEASE NOTE** Separate forms must be filed for each court reporter. Transcript Order Form due by 11/7/2022 (vs) (Entered: 10/21/2022) |
| 10/21/2022 | [263](#) | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re: [262](#) Notice of Appeal, [258](#) Order Judge Appealed: Marc T. Treadwell. Court Reporter: Darlene Fuller. Fee: Paid. (vs) (Entered: 10/21/2022) |
| 10/27/2022 | [264](#) | Request for Local Rule 6.2 Clerks Extension re [260](#) MOTION to Stay Pending Appeal re [258](#) Order by ANNA LANGE (POWELL, WESLEY) (Entered: 10/27/2022) |
| 10/28/2022 | | Notice of Clerk's Granting of Extension Pursuant to re: [260](#) MOTION to Stay Pending Appeal re [258](#) Order filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA (vs) (Entered: |

| | | |
|---|---|---|
| | | 10/28/2022) |
| 10/31/2022 | 265 | This is a text only entry; no document issued. **ORDER**. The Court's October 3, 2022, order [258] is **STAYED** pending resolution of the defendants' motion for stay pending appeal [260] . Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/31/2022. (bwr) (Entered: 10/31/2022) |
| 10/31/2022 | [266] | USCA Case Number 22-13626-DD re [262] Notice of Appeal, filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA. (vs) (Entered: 10/31/2022) |
| 10/31/2022 | [267] | MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # [1] Memorandum in Support, # [2] Exhibit 1 - Plaintiff's Expert Witness Identifications, # [3] Exhibit 2 - Expert Report of Joan Barrett, FSA, MAAA, # [4] Exhibit 3 - Deposition of Joan Barrett 8-24-21, # [5] Exhibit 4 - Actuarial Standard of Practice No. 1, # [6] Exhibit 5 - Actuarial Standard of Practice No. 41, # [7] Exhibit 6 - Expert Report of James P. Galasso, # [8] Exhibit 7 - Declaration of Kenneth Carter, # [9] Exhibit 8 - Expert Report of Joan C Barrett and Elaine T Corrough Submitted on Behalf of the Plaintiffs)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | [268] | MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # [1] Memorandum in Support, # [2] Exhibit 1 - Plaintiff's Expert Witness Identifications, # [3] Exhibit 2 - Plaintiff's Disclosure of Expert Witness Pursuant to Fed.R.Civ.P26(A)(2)(C), # [4] Exhibit 3 - Health Insurance Coverage of Gender-Affirming Top Surgery in the United States, # [5] Exhibit 4 - Anna Lange 4-2-21 Deposition Excerpt Pages, # [6] Exhibit 5 - Declaration of Kenneth Carter, # [7] Exhibit 6 - Declaration of Joan C. Barrett, # [8] Exhibit 7 - Expert Report of Joan C. Barrett and Elaine T. Corrough Submitted on Behalf of the Plaintiffs)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | [269] | MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # [1] Memorandum in Support, # [2] Exhibit 1 - Plaintiff's Expert Witness Identifications, # [3] Exhibit 2 - Expert Report of Paisley Currah, # [4] Exhibit 3 - 2015 - U.S. Transgender Survey - GA State Report)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | [270] | MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # [1] Memorandum in Support, # [2] Exhibit 1 - Plaintiff's Expert Witness Identifications, # [3] Exhibit 2 - Expert Report of Loren S. Schechter, M.D., # [4] Exhibit 3 - Societal Implications of Health Coverage for Medically Necessary Services in the U.S. Transgender Population, # [5] Exhibit 4 - The implications of Allowing Transgender Personnel to Serve Openly in the U.S. Military, # [6] Exhibit 5 - Declaration of Kenneth Carter)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | [271] | MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # [1] Memorandum in Support, # [2] Exhibit 1 - Plaintiff's Expert Witness Identifications, # [3] Exhibit 2 - Plaintiff's Expert Witness Report for Chanel Haley, # [4] Exhibit 3 - 2015 U.S. Transgender Survey GA State Report)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | [272] | MOTION to Continue *of Jury Trial Set for February 27, 2023* by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by WILLIAM DRUMMOND DEVENEY. (Attachments: # [1] Memorandum in Support)(DEVENEY, WILLIAM) (Entered: 10/31/2022) |
| 11/01/2022 | 273 | This is a text only entry; no document issued. **ORDER** FOR RESPONSE TO MOTION re: [272] MOTION to Continue *Jury Trial Set for February 27, 2023* filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA. Lange shall respond to [272] defendants' motion for continuance by November 11, 2022. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/1/2022. (kat) (Entered: 11/01/2022) |

| | | |
|---|---|---|
| 11/04/2022 | 274 | USCA Case Number 22-13626-DD re 262 Notice of Appeal, filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA. (vs) (Entered: 11/04/2022) |
| 11/04/2022 | 275 | TRANSCRIPT INFORMATION FORM by HOUSTON COUNTY GEORGIA, CULLEN TALTON. re 262 Notice of Appeal, *Tammy DiRocco* (GIGNILLIAT, RICHARD) (Entered: 11/04/2022) |
| 11/04/2022 | 276 | TRANSCRIPT INFORMATION FORM by HOUSTON COUNTY GEORGIA, CULLEN TALTON. re 262 Notice of Appeal, *Darlene D. Fuller* (GIGNILLIAT, RICHARD) (Entered: 11/04/2022) |
| 11/07/2022 | 277 | Notice of Filing Official Transcript to all parties re 221 Transcript of Proceedings, 238 Transcript of Proceedings,.(Tammy W. DiRocco) (Entered: 11/07/2022) |
| 11/08/2022 | 278 | ***Refiled at 279 *** Letter regarding Proposed Consent Order for Continuance of Jury Trial Set for February 27, 2023 re 272 MOTION to Continue *of Jury Trial Set for February 27, 2023*, 273 Order for Response to Motion, (Attachments: # 1 Proposed Order)(POWELL, WESLEY) Modified on 11/10/2022 to add docket text(vs). (Entered: 11/08/2022) |
| 11/09/2022 | | Notice of Deficiency (related document(s): 278 Letter, filed by ANNA LANGE); Document is a response to a motion, which is not in the proper format, and does not contain the filer's e-mail address in the signature block. The response must be re-filed using correct event which is "Response to Motion."(ggs) (Entered: 11/09/2022) |
| 11/09/2022 | 279 | RESPONSE filed by ANNA LANGE re 272 MOTION to Continue *of Jury Trial Set for February 27, 2023* (Attachments: # 1 Proposed Order)(POWELL, WESLEY) (Entered: 11/09/2022) |
| 11/11/2022 | 280 | RESPONSE filed by ANNA LANGE re 260 MOTION to Stay Pending Appeal re 258 Order (Attachments: # 1 Exhibit A - Defendants' Attorneys' Fees)(POWELL, WESLEY) (Entered: 11/11/2022) |
| 11/17/2022 | 281 | **ORDER** TERMINATING 267 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett ; TERMINATING 268 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D. ; TERMINATING 269 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah ; TERMINATING 270 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D.; TERMINATING 271 MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley ; and GRANTING 272 MOTION to Continue of Jury Trial Set for February 27, 2023. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/17/2022. (kat) (Entered: 11/17/2022) |
| 11/18/2022 | | NOTICE OF **CANCELLATION** OF PRETRIAL CONFERENCE. Pretrial Conference previously scheduled for 2/2/2023 is CANCELLED. (kat) (Entered: 11/18/2022) |
| 11/21/2022 | 282 | Request for Local Rule 6.2 Clerks Extension re 260 MOTION to Stay Pending Appeal re 258 Order by HOUSTON COUNTY GEORGIA, CULLEN TALTON (DEVENEY, WILLIAM) (Entered: 11/21/2022) |
| 11/21/2022 | | Notice of Clerk's Granting of Extension Pursuant to re: Defendants Reply Brief to Plaintiffs Response to Defendants Motion to Stay Pending Appeal 280 and 260 Motion.(ksl) Modified on 11/22/2022 to add link (ggs). (Entered: 11/21/2022) |
| 12/09/2022 | 283 | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re 260 MOTION to Stay Pending Appeal re 258 Order (LAIL, PATRICK) (Entered: 12/09/2022) |
| 12/12/2022 | 284 | MOTION for Extension of Time to File her Motions for Attorneys' Fees and Costs. by ANNA LANGE filed by WESLEY POWELL.(POWELL, WESLEY) (Entered: 12/12/2022) |
| 12/14/2022 | 285 | This is a text only entry; no document issued. **ORDER** GRANTING 284 Motion for Extension of Time. The Plaintiff shall file her Motions for Attorneys' Fees and Costs within thirty (30) days of the expiration of the time for any party to seek reconsideration or to obtain a grant of |

| | | |
|---|---|---|
| | | certiorari from the United States Supreme Court of the Court of Appeals' opinion on Defendants' pending appeal. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 12/14/2022. (bwr) (Entered: 12/14/2022) |
| 12/20/2022 | | Pursuant to F.R.A.P 11(c) the Clerk of the District Court for the Middle District of Georgia certifies that the record is complete for purposes of this appeal re: 262 Notice of Appeal,. The entire record on appeal is available electronically (vs) (Entered: 12/20/2022) |
| 01/09/2023 | 286 | **ORDER** FOR RESPONSE. The parties shall supplement their briefs to address what effect, if any, Adams has on the defendants' 260 motion to stay injunctive relief pending appeal by January 23, 2023. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 1/9/2023. (kat) (Entered: 01/09/2023) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 01/20/2023 09:56:57 | | |
| **PACER Login:** | et0016 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:19-cv-00392-MTT |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

---

ANNA LANGE,

    Plaintiff;

v.

HOUSTON COUNTY, GEORGIA;
HOUSTON COUNTY BOARD OF
COMMISSIONERS; Houston
County Commissioners TOMMY
STALNAKER, H. JAY WALKER
III, GAIL ROBINSON, LARRY
THOMSON, TOM MCMICHAEL,
BARRY HOLLAND, and ROBBIE
DUNBAR, in their official and
individual capacities; and Houston
County Director of Personnel
KENNETH CARTER, in his official
and individual capacity;

    Defendants.

Civil Action: 5:19-CV-00392

**JURY TRIAL DEMANDED**

---

## COMPLAINT

---

Plaintiff Anna Lange, by and through her attorneys, files this Complaint against

Defendants Houston County, Georgia; the Houston County Board of Commissioners; Houston

County Commissioners Tommy Stalnaker, H. Jay Walker III, Gail Robinson, Larry Thomson,

Tom McMichael, Barry Holland, and Robbie Dunbar, in their official and individual capacities;

and Houston County Director of Personnel Kenneth Carter, in his official and individual

capacity; and respectfully states as follows:

## INTRODUCTION

1.    This case is about the denial of equal benefits for equal work.

2.    Sergeant Anna Lange, a twenty-two-year veteran of law enforcement, is a Deputy Sheriff in the Houston County Sheriff's Office, where she has worked since 2006.

3.    Sgt. Lange is also a transgender woman who requires doctor-recommended gender-transition treatment for a medical condition: gender dysphoria.

4.    Under the Houston County employee health plan (the "Health Plan"), employees generally receive coverage for their medically-necessary care. In contrast, Sgt. Lange is being denied medically-necessary care under the plan because Houston County (the "County") has expressly and deliberately excluded the care she needs. The Health Plan specifically provides that the medical treatments that Sgt. Lange's physicians have prescribed for her—which it calls "[d]rugs for sex change surgery," and "[s]ervices and supplies for a sex change"—will not be covered (the "Exclusion").[1]

5.    The County hasn't adopted the Exclusion because the excluded care isn't medically necessary or widely recognized as effective, but simply because the County seeks to discriminate against employees like Sgt. Lange. Houston County's creation of the Exclusion deliberately discriminates for three reasons, each of which is unlawful: first, to injure Sgt. Lange and others like her, for engaging in conduct—seeking a gender transition—that changes physical sex characteristics from male to female and transgresses gender stereotypes; second, to deprive Sgt. Lange and all other Houston County employees of coverage for the only treatment known to

---

[1] The term "sex change surgery" is not used in the medical community, which instead refers to these procedures as gender reassignment surgery or gender confirmation surgery. These terms reflect the contemporary medical and psychological understanding that gender-transition medical treatments make visible, but do not "change," an individual's sex, by bringing primary and secondary sex characteristics into alignment with the person's sense of gender.

be effective for a stigmatized medical condition, gender dysphoria, because Defendants disfavor "sex change[s];" and third, to target Sgt. Lange and other transgender employees for inferior treatment compared to their co-workers.

6.      As a result of the County's Exclusion, Sgt. Lange has been forced to forego some medically necessary gender-transition care because she cannot afford to pay for it out of pocket; and has incurred out-of-pocket costs to obtain other medically-necessary care without the financial protections afforded by the Health Plan.

7.      She also suffers distress, humiliation, and a loss of dignity because of this targeted discrimination and Defendants' categorical denigration of her and her medical needs.

8.      Sgt. Lange has repeatedly asked Houston County to remove the Exclusion from the Health Plan, including in correspondence and through testimony at a public meeting of the Houston County Board of Commissioners (the "Board") in February 2019.

9.      In response to her requests, Defendants have doubled down on their discrimination. After Sgt. Lange sent her initial letter requesting a removal of the Exclusion in January 2019, Houston County's Director of Personnel, Kenneth Carter, wrote to the Health Plan's claims administrator, Anthem Blue Cross and Blue Shield ("Anthem"), reaffirming that the County would retain the Exclusion, and agreeing to be responsible for any penalties incurred as a result of the County's unlawful discrimination. Subsequently, the County's County Attorney, Tom Hall, directed the Board and its staff not to speak to anyone about the Exclusion; and has not responded to further communication.

10.     Sgt. Lange thus brings this action seeking declaratory and injunctive relief and an award of damages caused by Defendants' discriminatory denial of health care coverage and their failure to accommodate her disability.

## JURISDICTION AND VENUE

11.     This action arises under the equal protection guarantees of the Fourteenth

Amendment of the United States Constitution (pursuant to 42 U.S.C. § 1983) and of Article I, §

1, ¶¶ II and XXV of the Georgia Constitution; Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, *et seq.* ("Title VII"); and Titles I and II of the Americans with Disabilities Act of

1990, 42 U.S.C. § 12101 *et seq.* ("ADA").

12.     The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367(a); and

42 U.S.C. § 2000e-5(f)(3).

13.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C.

§§ 2201 and 2202 and 42 U.S.C. § 1983.

14.     Under 28 U.S.C. § 1391, venue is proper in the Middle District of Georgia

because Defendants reside and are subject to personal jurisdiction in the District and a substantial

part of the events or omissions giving rise to the claim occurred in Houston County, Georgia.

15.     This action arises in the Macon Division because the events or omissions that give

rise to the claim occurred in Houston County, Georgia.

## PARTIES

16.     Plaintiff Anna Lange resides in Houston County, Georgia. She is employed as a

sheriff's deputy in Houston County.

17.     Defendant Houston County, Georgia is a political subdivision of the State of

Georgia. Its office is located at 200 Carl Vinson Parkway, Warner Robins, Georgia. Houston

County has 15 or more employees and is engaged in the business of government, which affects

commerce.

18.     Defendant Houston County Board of Commissioners is the governing authority for Houston County. Its office is located at 200 Carl Vinson Parkway, Warner Robins, Georgia. The Board has authority to set the terms of and administer the Health Plan.

19.     The Board's members are Defendants Tommy Stalnaker, H. Jay Walker III, Gail Robinson, Larry Thomson, Tom McMichael, Barry Holland, and Robbie Dunbar. Commissioner Stalnaker is Chairman of the Board; in that capacity, he serves as the County's chief executive officer. The Board has delegated to Commissioner Walker the role of developing and maintaining appropriate personnel policies and fringe benefits for Houston County employees.

20.     Defendant Kenneth Carter is Houston County's Director of Personnel. He administers the County's selection of the Health Plan's terms, including the Exclusion.

21.     The individual defendants are sued in both their official and personal capacities.

## EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

22.     On May 20, 2019, Plaintiff timely filed a charge with the Equal Employment Opportunity Commission against Houston County for sex and disability discrimination in violation of Title VII and the ADA, respectively.

23.     The EEOC did not undertake any conciliation efforts and issued a right-to-sue letter, dated July 8, 2019, which was received on July 11, 2019.

24.     A true and accurate copy of the right-to-sue letter is attached hereto as Exhibit A.

## FACTUAL BACKGROUND

### Houston County Deputy Sheriff Sgt. Anna Lange's Career in Law Enforcement

25.     Sgt. Lange, a Georgia native, has worked in Georgia law enforcement for twenty-two years.

26.     In September 2006, the Sheriff's Office hired Sgt. Lange to serve as Patrol Deputy. As a result of her exemplary performance, she has been promoted twice, first in 2012 to

the rank of Corporal and, subsequently in 2014, to her current rank of Sergeant in the Criminal

Investigation Division of the Sheriff's Office.

27.     Sgt. Lange also brings specialized training to the job. She has been a Field

Training Officer since 2001 and helps to train new officers. In 2008, she graduated from the

Georgia Bureau of Investigations' Georgia Terrorism and Intelligence Project program. She has

an At-Risk Adult Crime Tactics (ACT) Specialist certification and is the County's primary

investigator for elder-abuse cases. She is also currently a member of the Middle District of

Georgia's Human Trafficking Network and works to aid prosecutions of those crimes.

28.     In her current position, Sgt. Lange is tasked with investigating Houston County's

most serious crimes, and she routinely risks her life to serve and protect the County's citizens.

She has been trained to work on cases involving homicide, sexual assault, financial crimes, and

theft. Sgt. Lange serves throughout the county, carries a firearm, and makes arrests. In 2014, she

led a homicide investigation that resulted in the conviction of two men—Devasko Lewis, who

had hired a hitman to kill his former business partner; and the hitman, Jamarcus Clark, who

mistakenly murdered the intended victim's nephew. Her six-hour interrogation of Mr. Clark

yielded his confession.

29.     From the time she joined the Sheriff's Office until early 2017, Sgt. Lange wore

typical men's clothing at work, went by her male birth name, and responded to male pronouns.

As detailed further below, by early 2017, Sgt. Lange had begun the process commonly known as

"gender transition," through which she took steps to align her outward—previously male—

appearance with her internal experience of being female. This required her to inform her

employer that she would begin wearing typical women's clothing, using her female name, Anna,

going by female pronouns, and otherwise being openly female at work. Thus, in April 2017, she

informed Defendant Carter and Sheriff Cullen Talton of her transition plans during an in-person meeting. With Sheriff Talton's unspoken support, she told her other work colleagues at a meeting the following day.

30.    While, as discussed further below, Sgt. Lange has experienced significant distress as a consequence of gender dysphoria, her transition has positively impacted her job performance and experience. She has found being able to live and work as female—openly and with the acceptance of her colleagues—to be a blessing, and she has continued to perform her work successfully.

31.    The "essential functions" of the position of Deputy Sheriff are presently listed on the County's website.[2] Sgt. Lange has been consistently able to perform these functions, despite never receiving an accommodation from the County, as discussed further below. However, she remains the only openly transgender employee out of over three hundred in the Sheriff's Office, and, indeed, one of only a very small number of openly transgender law enforcement officers in the nation.

32.    As part of her overall employment compensation as a Deputy Sheriff, Sgt. Lange receives health care benefits offered and administered by Houston County under the Health Plan. As with other Health Plan participants, she currently contributes $10 of her compensation per pay-period for health care benefits.

### Transgender Status, Gender Dysphoria, and Transition-Related Health Care

33.    A transgender person is someone whose sex assigned at birth, as determined by the appearance of external sex characteristics, does not match that person's innate, internal sense

---

[2] Houston County, *Personnel, Deputy Sheriff*, https://www.houstoncountyga.org/jobs.cms/110/Sheriff%20Department/Deputy%20Sheriff (last accessed Oct. 1, 2019).

of being male, female, or some other category (often referred to as "gender identity"). Most of

the time, people born with male external characteristics experience themselves as male, and

those with female external characteristics experience themselves as female. However, for a

transgender person, their external characteristics and their internal perception of sex do not

match.

34.     Being transgender bears no relation to ability to perform or contribute to society.

People who are transgender have no impairment in judgment, stability, reliability, or general

social or vocational capabilities solely because of their transgender status.

35.     "A person is defined as transgender precisely because of the perception that his

or her behavior transgresses gender stereotypes . . . . There is thus a congruence between

discriminating against transgender and transsexual individuals and discrimination on the basis of

gender-based behavioral norms." *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011).

36.     Transgender people face stigma and discrimination across all areas of life, from

employment, to housing, to health care and public accommodations. The 2015 U.S. Transgender

Survey Georgia State Report illuminates the issues facing transgender Georgians.[3] One out of

five report losing a job due to their gender identity or expression. Of those who are employed, a

third reported being fired, not hired, or denied a promotion for being transgender; and large

percentages reported other forms of mistreatment, including being denied appropriate restrooms,

told they had to hide their transgender status at work, verbally harassed, or physically or sexually

assaulted. This widespread discrimination leads transgender Georgians to have unemployment

and poverty rates of over twice the national average.

---

[3] National Center for Transgender Equality, *2015 U.S. Transgender Survey: Georgia State Report* (2017), http://www.transequality.org/sites/default/files/docs/usts/GA-State-Report-FINAL.pdf.

37.     Nearly one in three transgender Georgians have experienced homelessness at some point in their lives and more than one in four have been denied housing because of being transgender. Over half have avoided using public restrooms out of fear. One in three report negative experiences with health care providers, including being refused treatment; and one in four did not see a doctor when they needed to due to fear of being mistreated. Onerous bureaucratic requirements prevent most transgender Georgians from obtaining ID documents that correctly reflect their name and gender. This creates a public health and safety hazard: one in three transgender Georgians who have shown such an ID to another have experienced verbal harassment, denial of service, or assault as a result.

38.     Nationwide and in Georgia transgender people lack political power and have been unable to translate public support into laws to protect themselves from discrimination. On average, public support for explicit protections in statewide employment nondiscrimination laws must reach 81% before such laws can be passed, reflecting a "democratic deficit" when it comes to transgender people.[4]

39.     Transgender people commonly experience gender dysphoria. Gender dysphoria is a rare but serious medical condition that is defined in the American Psychiatric Association's authoritative treatise, the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-V"), as a condition characterized by a marked incongruence between one's gender assigned at birth and one's internal sense or experience of gender, which results in clinically significant distress.[5] Gender dysphoria derives from an atypical interaction of the endocrine and

---

[4] Andrew R. Flores et al., *Transgender inclusion in state non-discrimination policies: The democratic deficit and political powerlessness*, RESEARCH AND POLITICS 1, 1 (2015), https://journals.sagepub.com/doi/pdf/10.1177/2053168015612246.
[5] AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 451 (5th ed. 2013).

neurological systems, which results in a person being born with external sex characteristics and hormones that are inconsistent with the person's gender perception.

40.     Individuals suffering from untreated gender dysphoria often experience severe psychological harm and suffering, including anxiety, depression, thoughts of suicide, and other mental health issues.

41.     Individuals suffering from gender dysphoria are inherently transgender. Nevertheless, unlike the outdated diagnosis of "gender identity disorder," the hallmark or presenting feature of gender dysphoria is not a person's gender identity per se, but rather the clinically diagnosable distress they experience as a consequence of the incongruence of their assigned and experienced genders.

42.     In addition to the negative health conditions directly attributable to gender dysphoria, people with gender dysphoria (as with transgender people generally) are frequently subjected to discrimination in multiple areas of their lives, including health care, housing, employment, school, and interactions with police and other government officials, which exacerbates these negative health outcomes.

43.     Like many other medical conditions, gender dysphoria is highly treatable. It is a well-established medical consensus that transition-related medical care, which includes hormonal and surgical treatment to align external sex characteristics with a person's internal sense of sex, is successful in alleviating gender dysphoria.[6]

---

[6] *See, e.g.*, WORLD PROF'L ASS'N FOR TRANSGENDER HEALTH, STANDARDS OF CARE 8 (7th ed. 2012) https://s3.amazonaws.com/amo_hub_content/Association140/files/Standards of Care V7 - 2011 WPATH (2)(1).pdf ("[H]ormone therapy and surgery have been found to be medically necessary to alleviate gender dysphoria in many people."); DSM-V at 51 ("[M]any are distressed *if* the desired physical interventions by means of hormones and/or surgery are not available.") (emphasis added); *see also O'Donnabhain v. C.I.R.*, 134 T.C. 34, 69 (U.S. Tax Ct. 2010) (holding that the costs of transition-related care are tax deductible, and stating that "[t]he

44.     The World Professional Association for Transgender Health ("WPATH"), an interdisciplinary professional and educational organization devoted to transgender health, has established internationally accepted Standards of Care ("SOC") for the treatment of people with gender dysphoria. Major medical and mental health organizations, including the American Medical Association, the Endocrine Society, the American Psychiatric Association, and the American Psychological Association, have endorsed the SOC as the authoritative standards of care.

45.     The treatment for gender dysphoria, as recommended by WPATH, is to assist the person in undergoing a gender transition that will alleviate the distress caused by gender dysphoria and allow the person to live in alignment with their affirmed sex. The transition process has three main components—social, pharmacological, and surgical:

a.      Social transition involves bringing a person's gender expression and social sex role into alignment with their affirmed sex. It may include wearing clothes, using a new name and pronouns, and interacting with peers and one's social environment in a manner that matches the person's affirmed sex.

b.      A physician may also prescribe medications that change the hormone balance in their bodies to be consistent with the person's affirmed sex. For example, a transgender woman would be prescribed medications that reduce testosterone and replace those hormones with estrogen, which will feminize that person's sex characteristics.

c.      Lastly, a transgender person may pursue surgical treatment to alleviate dysphoria caused by having incongruent primary and secondary sex characteristics.

_____

evidence is clear that a substantial segment of the psychiatric profession has been persuaded of the advisability and efficacy of hormone therapy and sex reassignment surgery as treatment for [gender dysphoria], as have many courts").

46.     The precise medical treatments required to alleviate a particular individual's gender dysphoria may vary based on the person's individualized medical needs.

### *Sgt. Lange's Gender Dysphoria and Gender Transition*

47.     Sgt. Lange is a transgender woman. Although she was assigned the sex of male at birth based on external physical sex characteristics, Sgt. Lange is female.

48.     As a child, Sgt. Lange experienced significant distress, but she did not understand its source. As a teenager, she would sometimes buy traditionally female articles of clothing to try on in private—only to throw them away later in shame.

49.     As a younger adult, she considered the possibility of "coming out" as a woman. She sought talk therapy, and briefly attempted seeking hormone replacement therapy in 2004. She ultimately decided not to transition at that time because of concern that her marriage and family relationships could suffer, her young child could face discrimination, or she would be forced out of a career that she loved.

50.     Sgt. Lange's gender dysphoria, left untreated, caused her to experience stress, anxiety, depression, and distress, making it difficult to think, concentrate, and interact with others, including her spouse, child, and coworkers.

51.     In 2017, she was diagnosed by her health care provider with gender dysphoria and began sustained treatment. As a part of her treatment for gender dysphoria, Sgt. Lange underwent gender transition. Specifically, Sgt. Lange now lives fully and consistently with her female identity: she "came out" as transgender to her family, friends, and her employers; she exclusively uses a female name and female pronouns; and she wears typical women's clothing.

52.     Sgt. Lange has been consistently taking hormone replacement therapy, which includes estrogen and a testosterone blocker, under the care of an endocrinologist since March

2017. The therapy has feminized her appearance over time and has reduced the gender dysphoria caused by her male secondary sex characteristics.

53.     Hormone therapy helps to alleviate gender dysphoria in transgender women by changing the predominant sex hormone in the body from testosterone to estrogen. This results in mental health benefits as well as physical changes, including the development and maintenance of female sex characteristics. Common effects include body fat redistribution, decreased muscle mass and strength, softening and decreased oiliness of skin, decreased libido and sperm production, male sexual dysfunction, variable breast growth, and thinning and slowed growth of body and facial hair.

54.     In December 2017, Sgt. Lange legally changed her name, and the name and sex designation on her Georgia driver's license. She also took steps to legally change the sex on her birth certificate but was ultimately prevented from doing so because Georgia law requires that she first certify that she has had gender reassignment surgery. She also attempted to update the sex designation on her officer records with the Georgia Peace Officer Standards and Training Council, which informed her that it would need to wait until she corrected her birth certificate.

55.     In April 2018, Sgt. Lange had feminizing chest surgery (also known as "top surgery"). Due to the Exclusion, Sgt. Lange paid $6,866 out of pocket for it.

56.     Since her top surgery, Sgt. Lange continues to experience distress regarding her remaining male external sex characteristics. Although the medical treatment she has received thus far has been therapeutic, Sgt. Lange requires additional treatment to fully resolve her gender dysphoria. She continues to experience stress, anxiety, depression, and distress, which she handles as best as she can, but has continued to limit her ability to function socially and

professionally. Her reproductive,[7] neurological and endocrine functions remain impaired.[8] She

remains a qualified individual with a disability, she has a record of a disability, and she is

regarded as having a disability.

57.     She also fears for her safety, given the incongruence between her increasingly

feminized appearance and those characteristics.

58.     To alleviate her gender dysphoria, Sgt. Lange has decided, upon the

recommendation of her endocrinologist, two psychologists, and a surgeon, that genital surgery

(also known as "bottom surgery") is the next step in her treatment.

### *Defendants' Discriminatory Health Plan*

59.     Defendants operate the Health Plan for the benefit of participating employees.

60.     As an employee, Sgt. Lange is qualified to and does participate in the Health Plan.

61.     Defendants and the Sheriff's Office have entered into an arrangement under

which the Sheriff's Office has delegated to Defendants the obligation to provide its employees

with fringe benefits and other essential employer functions.

62.     Consistent with this delegation of employer functions, Defendant Carter oversees

the compensation and health benefits of Sheriff's Office employees, just as he does for other

employees of Houston County. The County includes Sheriff's Office employees within its

payroll system and within the Health Plan. The County adds and removes from the Health Plan

each employee that the Sheriff's Office directs it to.

---

[7] *See* SOC at 36-38 (discussing decreased sperm production in people taking feminizing hormones).

[8] *See also generally* 29 C.F.R. § 1630.2(j)(4)(ii) ("[T]he *non*-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity.") (emphasis added).

63.    Defendants have exclusive control over setting the terms of, administering, and financing the Health Plan.

64.    The Sheriff's Office has no control over setting the terms of, administering, or financing the Health Plan. The Sheriff's Office offers no health plans to its employees directly and relies exclusively on Defendants to provide it.

65.    Defendants have contracted with Anthem as the third-party administrator of the Health Plan. The Health Plan is funded by the county and administered by Anthem, which provides administrative services for the Health Plan, including the preparation of template benefits plans, customized plan design consultation, and claims processing. Defendants have final say over the terms of the plan, including which services are covered and which are excluded. The Health Plan recites that the Board, as the sponsor of the plan, is "[t]he legal entity that has adopted the [Health] Plan and has authority regarding its operation, amendment and termination."

66.    The Health Plan covers medically necessary services including "office visits and doctor services," "diagnostic laboratory" services, "prescription drugs," "surgical supplies," "inpatient hospital care," and "inpatient professional services" including "surgery" and "general anesthesia."

67.    However, the Health Plan excludes coverage of these same services for treating one condition: gender dysphoria.

68.    Specifically, the Health Plan excludes the following services: "Sex Change – Services and supplies for a sex change and/or the reversal of a sex change," and "Sex Change Drugs – Drugs for sex change surgery." But for these exclusions, gender transition-related care would be covered under the Health Plan on the same terms as other medically necessary care.

69.     The Health Plan covers medically necessary hormone replacement therapy, medically necessary genital surgery, and medically necessary breast surgery as treatment for various other health conditions, but it expressly excludes coverage of such treatments when prescribed "for a sex change."

70.     Excluding "sex change" treatments is, by definition, an exclusion of gender-transition treatments.  Only services undertaken for the exclusive purpose of changing external sex characteristics from male to female and vice versa are excluded. Thus, the Exclusion targets employees like Sgt. Lange because they are transgender.

71.     The Exclusion deliberately excludes treatments for gender dysphoria. The only recognized effective treatment for gender dysphoria is gender transition. No other diagnosis other than gender dysphoria uses gender-transition as a treatment. That is, no one without gender dysphoria undergoes gender transition. Thus, the Exclusion targets employees like Sgt. Lange because they need gender dysphoria treatments.

72.     The Health Plan contains a generic exclusion for "Non-Medically Necessary Services," that is, services that are not undertaken to treat a diagnosed condition. Thus "sex change" services that were undertaken for non-therapeutic reasons by persons not diagnosed with gender dysphoria would never be covered under the Health Plan.

73.     Similarly, absent the Exclusion, only medically necessary treatments for gender dysphoria could be covered.

74.     Most people with gender dysphoria undergo gender transition treatment. Excluding treatments because they change sex characteristics therefore also disproportionately affects people who need access to treatments for gender transition for the purpose of treating gender dysphoria.

16

75.    As administrator of the Health Plan, Anthem uses corporate medical policies to make medical necessity determinations when evaluating claims. Since at least 2006, Anthem has generally recognized the medical necessity of sex reassignment surgeries in its medical policy on Sex Reassignment Surgery,[9] which outlines the clinical criteria for when it considers such care to be medically necessary. Accordingly, gender transition care meets the Health Plan's definition of medical necessity.

76.    Sgt. Lange has met all of the clinical criteria outlined in Anthem's policy to qualify for surgical treatment for gender dysphoria, including, *inter alia*, the capacity to make fully informed decisions and consent to treatment; a diagnosis of gender dysphoria; undergoing hormone therapy for over a year; documentation of having lived openly as female for over a year; not having any other significant medical or mental health issues present; and two referrals from qualified mental health professionals.

77.    The specific procedures that have been prescribed for Sgt. Lange and for which she seeks coverage would be covered as medically necessary under the Health Plan but for Defendants' specific decision to deny coverage pursuant to the Exclusion.

### *Defendants' Denial of Sgt. Lange's Requests to Stop Discriminating*

78.    Defendants knowingly and intentionally chose to adopt and maintain the Exclusion. Sgt. Lange has repeatedly and unsuccessfully requested that Defendants remove or waive it.

79.    In preparation for bottom surgery, Sgt. Lange called Anthem to inquire as to whether this surgery was covered under the Health Plan. Anthem's agent informed Sgt. Lange

---

[9] Anthem, *Clinical UM Guideline, Sex Reassignment Surgery* (Jan. 31, 2019), https://www.bcbsga.com/medicalpolicies/guidelines/gl_pw_a051166.htm (last accessed Oct. 1, 2019).

that she did not see an exclusion and that the surgery would be covered. Skeptical, Sgt. Lange asked her surgeon's office to inquire as well, and they, too, were told that the surgery would be covered under the Health Plan.

80.     Based upon these assurances, Sgt. Lange flew out-of-state for a surgical consultation in November 2018. After the consultation, the surgery was scheduled, and Sgt. Lange's surgeon applied to Anthem for preauthorization.

81.     Notwithstanding its prior assurances, in a letter dated November 26, 2018, Anthem denied preauthorization, citing the Exclusion. Sgt. Lange submitted an appeal to Anthem on December 11, 2018, which Anthem denied on January 29, 2019, again citing the Exclusion. Sgt. Lange submitted a voluntary second-level appeal on March 28, 2019. Anthem did not issue a response.

82.     The Health Plan provides that the Board "may change the benefits described in this Benefit Booklet and the Member will be informed of such changes as required by law. This Benefit Booklet shall be subject to amendment, modification, and termination in accordance with any of its provisions by the Employer, or by mutual agreement between the Claims Administrator and the Employer without the consent or concurrence of any Member."

83.     The Exclusion must be renewed annually as part of Houston County's renewal of its Administrative Services Agreement with Anthem and its update of the Health Plan's terms. Anthem's plan selection documents include a box to check that indicates whether the Exclusion should be renewed. The most recent version of Anthem's checkbox form recites that the Exclusion is unlawful but will be preserved if the box is checked.

18

84.     Signing the Administrative Services Agreement and checking the box renewing the Exclusion are among the responsibilities of Defendant Carter. Defendant Carter most recently checked the Exclusion box and signed the checkbox form on December 12, 2018.

85.     As Defendants are responsible for Exclusion, Sgt. Lange has sought to have them rescind it.

86.     In a January 16, 2019, letter from her attorney to the Board, Sgt. Lange explained that she is transgender, requires care excluded by the Exclusion, and asked to engage in a dialogue about modifying or eliminating the Exclusion.

87.     In response, Defendants reaffirmed their commitment to discriminate against Sgt. Lange because she is a transgender woman seeking transition-related healthcare as treatment for her gender dysphoria. On February 13, 2019, Defendant Carter sent a letter to Anthem, reaffirming Houston County's decision to adopt the Exclusion and agreeing to be responsible for any legal consequences of that decision.[10]

88.     At a February 19, 2019, public meeting of the Board, Sgt. Lange spoke on the record about her transition, her gender dysphoria, and her need for care excluded by the Exclusion, and asked for a modification. The Board responded that it would not change the Exclusion. County Attorney Tom Hall directed the Board and its staff not to explain their reason for the denial and not to speak about it with anyone.[11]

---

[10] Upon information and belief, this letter was solicited by Anthem as a condition of agreeing to retain the Exclusion.

[11] The following colloquy occurred at the meeting between the Board and Sgt. Lange's counsel Noah Lewis:

Chairman Stalnaker: "I'm gonna call on County Attorney Tom Hall to tell the County's position on this particular issue. Mr. Hall."

Mr. Hall: "Thank you Mr. Chairman. The information that you sent on the 19th of January, we did receive, and had an answer to that prepared, and then your client asked for an audience here at the meeting. So, we determined that we weren't going to send you an

89.     On April 19, 2019, Defendant Carter signed the annual renewal and amendment of the Administrative Services Agreement on the Board's behalf.

90.     In a September 20, 2019, email from her attorneys to Mr. Hall, Sgt. Lange renewed her request for a rescission of the Exclusion, clarifying that she was also seeking it not be applied to her, as a disability accommodation. The Board did not make any response other than a request by Mr. Hall for further time to respond.

91.     Upon information and belief, Chairman Stalnaker and Commissioner Walker have the authority to direct Defendant Carter to rescind the Exclusion and have not done so.

92.     Defendants have never offered a reason for the Exclusion. The Board has never publicly voted or debated on it. There is no medical or cost basis for it. It also has no relation to any employee's job function.

93.     Defendants have elected to maintain the Exclusion notwithstanding that a valued employee requested it be eliminated and in the teeth of an express warning of illegality from Anthem, which requires Defendants to assume responsibility for any penalties incurred.

94.     Saving money is not a legitimate basis for discrimination on the grounds of sex, disability, or transgender status.

95.     Even if it were, there is no actuarially sound reason to single out and price gender transition coverage separately from all other procedures. The Health Plan covers other medical

---

answer—that we would, at this meeting, as you present yours, we would also tell you our answer.
What you requested, as you know, is not covered by the County health insurance. The Board is not considering any changes to the plan at this time. I'll let everyone know that I have advised the Commission and the staff not to discuss this matter due to the potential for litigation. So, if you do ask them about it, they're not going to answer you about it. So, that is, in a nutshell, that's our answer. And we appreciate your time."
Mr. Lewis: "Can you offer a reason for the…"
Chairman Stalnaker: "No, thanks. Your time's up. Thank you very much."

conditions that are more widespread and costlier to treat. Gender transition care is not uniquely costly as compared to other forms of healthcare.

96.     The cost of removing an exclusion of medically-necessary treatments for gender dysphoria from a health care plan is insignificant. *See, e.g., Flack v. Wisconsin Dep't of Health Servs.*, No. 18-CV-309-WMC, 2019 WL 3858297, at \*5 (W.D. Wis. Aug. 16, 2019) ("[D]efendants estimate that removing the Challenged Exclusion and covering gender-confirming surgeries would cost between $300,000 and $1.2 million annually. There is no dispute that these amounts are actuarially immaterial as they are equal to approximately 0.008% to 0.03% of the State's $3.9 billion share of Wisconsin Medicaid's $9.7 billion annual budget."); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 1000 (W.D. Wis. 2018) ("From an actuarial perspective, there appears to be no dispute that the cost of coverage is immaterial at 0.1% to 0.2% of the total cost of providing health insurance to state employees, even adopting defendants' cost estimation.").

97.     The cost of the care covered by the Exclusion is in line with other medical treatments. This care also has a low utilization rate, given that transgender people comprise a very small percentage of the population.

98.     The cost of care covered by the Exclusion is also offset by the treatment expenses and morbidities associated with inadequately treated gender dysphoria, including anxiety, depression, substance abuse, HIV incidence, depression, and suicide attempts.

99.     Upon information and belief, the County engaged in no actuarial or other analysis of its likely costs absent the Exclusion.

100.    Rescinding the Exclusion would not impair or threaten the Health Plan's solvency.

21

101.   Actuarial data supports a conclusion that rescinding the Exclusion would not even require the Health Plan to raise employee or employer contribution rates in order to pay for the care.

102.   Defendants maintain stop-loss insurance that allows it to pay for any claims that are unusually high.

103.   Given the Exclusion, Sgt. Lange is unable to equally access the fringe benefits offered under the Health Plan without a reasonable accommodation for her disability. Sgt. Lange's proposed accommodation is coverage of her medically necessary care.

104.   A one-time exception from the Exclusion for Sgt. Lange would be an expense on par with comparable forms of healthcare, and would not unduly burden the Health Plan, nor affect its solvency.

105.   Lacking any justified or justifiable reason, the only conceivable purpose of the Exclusion is its effect: to single out transgender people undergoing a gender transition for inferior compensation as compared to their colleagues, and to unlawfully seek to avoid paying for a stigmatized form of health care.

106.   Most transgender people do seek at least some transition-related health care, commonly including a lifelong course of hormone replacement therapy. And only transgender people seek transition-related medical care. Thus, the Exclusion affects only transgender people and, by definition, it affects only those people who seek a gender transition. It also, by definition, excludes the only medically-accepted medical and pharmaceutical treatments for gender dysphoria.

107.   The Exclusion's singling out of people who seek gender dysphoria treatment not only harms their health and their finances, it deepens the stigma attached to being transgender,

suffering from gender dysphoria, and seeking a gender transition. It communicates to them and

to the public that their local government deems them unworthy of being treated equally and of

obtaining the same coverage for medically-necessary healthcare that all other employees receive

in exchange for their work.

108. The discrimination against Sgt. Lange remains ongoing as long as the Exclusion

remains in the Health Plan.

109. Because the Exclusion prohibits all treatments for gender transition, Sgt. Lange

has been forced to incur out-of-pocket costs for medically-necessary healthcare.

110. She has also been forced to forego medically-necessary care because she cannot

afford it, leaving her gender dysphoria inadequately treated.

111. The discrimination she has suffered as a result of the Exclusion has caused her

financial hardship, distress, anguish, stress, and humiliation.

<div align="center">

**FIRST CAUSE OF ACTION**
*Violation of 42 U.S.C. § 1983 Caused by Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution on the Basis of Sex and Transgender Status*

</div>

112. The Fourteenth Amendment to the United States Constitution provides that "[n]o

State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the

equal protection of the laws."

113. 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute,

ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any

. . . person within the jurisdiction [of the United States] to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured

in an action at law, suit in equity, or other proper proceeding for redress . . . ."

<div align="center">23</div>

114.    Defendants' adoption of the Exclusion has denied and continues to deny Sgt. Lange equal protection of the laws, by discriminating against her on the basis of sex and transgender status.

## SECOND CAUSE OF ACTION
### *Violation of the Georgia Equal Protection Guarantee on the Basis of Sex and Transgender Status*

115.    Georgia's Equal Protection Clause states as follows: "Protection to person and property is the paramount duty of government and shall be impartial and complete. No person shall be denied the equal protection of the laws." Ga. Const. Art. I, § 1, ¶ II.

116.    Ga. Const. Art. I, § 1, ¶ XXV provides further that, "The social status of a citizen shall never be the subject of legislation."

117.    Defendants' adoption of the Exclusion has denied and continues to deny Sgt. Lange equal protection of the laws by discriminating against her on the basis of sex and transgender status.

## THIRD CAUSE OF ACTION
### *Unlawful Discrimination on the Basis of Sex in Violation of Title VII of the Civil Rights Act of 1964*

118.    Title VII of the Civil Rights Act of 1964 provides that an employer or agent thereof may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

119.    Defendants' adoption of the Exclusion violates Title VII by intentionally providing lesser terms of compensation to employees, including Sgt. Lange, who are seeking a gender transition.

**FOURTH CAUSE OF ACTION**
*Unlawful Discrimination on the Basis of Disability in Violation of*
*Title I of the Americans with Disabilities Act*

120.    Title I of the Americans with Disabilities Act ("ADA") provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

121.    Title I of the ADA prohibits disparate treatment of a qualified individual with a disability, including: (i) "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee"; (ii) "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs)"; and (iii) "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(1)-(2), (4); *see also* 29 C.F.R. §§ 1630.4 - 1630.8.

122.    Title I of the ADA prohibits conduct that has a disparate impact on a qualified individual with a disability, including: (i) "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability"; and (ii) "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related

25

for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b)(3),

(6); *see also* 29 C.F.R. §§ 1630.7, 1630.10.

123.    Defendants' adoption of the Exclusion violates Title I of the ADA by

discriminating against Sgt. Lange on the basis of her gender dysphoria.

124.    Defendants' adoption of the Exclusion also violates Title I of the ADA because it

has the effect of discriminating against employees, including Sgt. Lange, on the basis of gender

dysphoria.

<div align="center">

**FIFTH CAUSE OF ACTION**
*Failure to Make a Reasonable Accommodation in Violation of*
*Title I of the Americans with Disabilities Act*

</div>

125.    Title I of the ADA prohibits "not making reasonable accommodations to the

known physical or mental limitations of an otherwise qualified individual with a disability who is

an applicant or employee, unless such covered entity can demonstrate that the accommodation

would impose an undue hardship on the operation of the business of such covered entity; or . . .

denying employment opportunities to a job applicant or employee who is an otherwise qualified

individual with a disability, if such denial is based on the need of such covered entity to make

reasonable accommodation to the physical or mental impairments of the employee or applicant."

42 U.S.C. § 12112(b)(5); *see also* 29 C.F.R. § 1630.9.

126.    29 C.F.R. § 1630.2(o)(1)(iii) requires "[m]odifications or adjustments that enable

a covered entity's employee with a disability to enjoy equal benefits and privileges of

employment as are enjoyed by its other similarly situated employees without disabilities."

127.    Employees enrolled in the Health Plan who do not have gender dysphoria are able

to access medically necessary services under the plan without limitation due to disability.

128.    Employees enrolled in the Health Plan who do not have gender dysphoria can get coverage under the Health Plan for hormone therapy, mastectomies, breast implants, and other surgical modifications of their body for the purpose of treating an illness or disease.

129.    Sgt. Lange is not able to access medically necessary services under the Health Plan because of her gender dysphoria, meaning Sgt. Lange has been unable to enjoy equal benefits and privileges of employment.

130.    Sgt. Lange informed Defendants of her need for a reasonable accommodation necessary for her to enjoy equal benefits and privileges of employment offered by Houston County, namely a waiver or revocation of the exclusion for "sex change" services.

131.    Defendants did not engage in a dialogue about what would constitute a reasonable accommodation or grant her proposed accommodation in the form of making a one-time exception to the general rule that the plan excludes "sex change" services.

132.    Making a one-time exception would not financially or otherwise unduly burden the operation of the Health Plan.

133.    Defendants' refusal to grant Sgt. Lange the requested accommodation of rescinding or waiving the Exclusion violates Title I of the ADA by discriminating against Sgt. Lange on the basis of her gender dysphoria.

### SIXTH CAUSE OF ACTION
*Unlawful Discrimination on the Basis of Disability in Violation of*
*Title II of the Americans with Disabilities Act*

134.    Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132, including "[a]fford[ing] a qualified individual with a disability

27

an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii).

135.    Title II of the ADA also requires a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

136.    Defendants' adoption of the Exclusion violates Title II of the ADA by discriminating against Sgt. Lange on the basis of her gender dysphoria.

137.    Defendants' adoption of the Exclusion also violates Title II of the ADA because it has the effect of discriminating against employees, including Sgt. Lange, on the basis of gender dysphoria.

138.    Defendants' failure to modify the Health Plan to waive or rescind the Exclusion also violates Title II of the ADA because the Exclusion relegates Sgt. Lange to using a benefit or service that is not equal to that afforded to Health Plan enrollees without gender dysphoria.

139.    Eliminating the Exclusion would not fundamentally alter the nature of the Health Plan as the Health Plan is designed to provide coverage for medically necessary services and treatments for gender dysphoria are medically necessary.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Sgt. Anna Lange respectfully requests that this Court:

A.  Declare that the Defendants' adoption of the Exclusion violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Georgia Constitution's equal protection guarantee, Title VII of the Civil Rights Act, Title I of the ADA, and Title II of the ADA;

B.  Enjoin Defendants from any further enforcement or application of the Exclusion, and from enforcing or applying the Health Plan or any future health plan in any discriminatory or unlawful manner against transgender individuals, individuals with gender dysphoria, or individuals seeking transition-related health care;

C.  Award Plaintiff compensatory, consequential, and punitive damages in an amount to be determined at trial;

D.  Award pre-judgment and post-judgment interest at the highest lawful rate;

E.  Award Plaintiff her reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988 or other applicable statutes; and

F.  Award Plaintiff such other and further relief as the Court may deem just and proper.

Respectfully submitted this 2nd day of October, 2019.

/s/ Kenneth E. Barton III
Kenneth E. Barton III
Ga. State Bar No. 301171
M. Devlin Cooper
Ga. State Bar No. 142447
COOPER, BARTON & COOPER
170 College Street
Macon, GA 31201
(478) 841-9007 tel.
(478) 841-9002 fax
keb@cooperbarton.com
mdc@cooperbarton.com

Wesley Powell*
Mary Eaton*
Jill K. Grant*
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 tel.
(212) 728-8111 fax
wpowell@willkie.com
meaton@willkie.com
jgrant@willkie.com

David Brown*
Noah E. Lewis*
TRANSGENDER LEGAL DEFENSE
 EDUCATION FUND, INC.
223-241 West 38th Street
P.O. Box 1094
New York, NY 10018
(646) 862-9396 tel.
(646) 930-5654 fax
dbrown@transgenderlegal.org
nlewis@transgenderlegal.org

Kevin M. Barry*
QUINNIPIAC UNIVERSITY SCHOOL OF
 LAW LEGAL CLINIC
275 Mount Carmel Ave.
Hamden, CT 06518
(203) 582-3238 tel.
(203) 582-3237 fax
legalclinic@quinnipiac.edu

*Attorneys for Plaintiff*

* *Pro hac vice* applications to follow.

EEOC Form 161-B (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Anna H. Lange | From: Atlanta District Office |
|---|---|
| ███████ | 100 Alabama Street, S.W. |
| | Suite 4R30 |
| | Atlanta, GA 30303 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 410-2019-05498 | Deidra A. Stephens, Investigator Support Asst | (404) 562-6868 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*signature*

**Darrell E. Graham,**
District Director

JUL 0 8 2019
*(Date Mailed)*

Enclosures(s)

cc:
Tom Hall
County Attorney
HOUSTON COUNTY
200 Carl Vinson Parkway
Warner Robins, GA 31088

Kenneth E. Barton
COOPER, BARTON & COOPER
The Rosewood
170 College Street
Macon, GA 31201

**RECEIVED KEB**

JUL 11 2019

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than** <u>2 years (3 years)</u> before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 — *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request** <u>within 6 months</u> of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➤ **Only one** major life activity need be substantially limited.

➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**the Genetic Information Nondiscrimination Act (GINA), or the Age**
**Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice.** Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

U.S.POSTAGE >> PITNEY BOWES

ZIP 30303 $ 000.50⁰
02 4W
0000361535 JUL 09 2019

Atlanta District Office
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
100 Alabama Street, S.W.
Suite 4R30
Atlanta, GA 30303

OFFICIAL BUSINESS
Penalty for Private Use, $300

Kenneth E. Barton
COOPER, BARTON & COOPER
The Rosewood
170 College Street
Macon, GA 31201

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ANNA LANGE

**(b)** County of Residence of First Listed Plaintiff     HOUSTON
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kenneth E. Barton III & M. Devlin Cooper; Cooper, Barton & Cooper, LLP; 170 College Street; Macon, Georgia 31201; 478-841-9007; et al.

## DEFENDANTS

HOUSTON COUNTY, GEORGIA; HOUSTON COUNTY BOARD OF COMMISSIONERS, et al.

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
K. Thomas Hall; Houston County Georgia; 200 Carl Vinson Parkway; Warner Robins, Georgia 31088; 478-542-2012

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT

- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY

- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS

- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### FORFEITURE/PENALTY

- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR

- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### PRISONER PETITIONS

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION

- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY

- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS

- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY

- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS

- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES

- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983; 42 U.S.C. § 12112; 42 U.S.C. § 12132; 42 U.S.C. § 2000e

Brief description of cause:
Violation of Equal Protection (Section 1983) & Discrimination in violation of ADA, and Title VII

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
10/02/2019

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Middle District of Georgia

| | |
|---|---|
| ANNA LANGE | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) |
| HOUSTON COUNTY, GEORGIA; HOUSTON | ) |
| COUNTY BOARD OF COMMISSIONERS; Houston | ) |
| County Commissioners TOMMY STALNAKER, H. | ) |
| JAY WALKER III, GAIL ROBINSON; et al. | ) |
| *Defendant(s)* | ) |

Civil Action No.  5:19-CV-00392

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  HOUSTON COUNTY, GEORGIA
200 Carl Vinson Parkway
Warner Robins, Georgia 31088

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kenneth E. Barton III
Cooper, Barton & Cooper, LLP
170 College Street
Macon, Georgia 31201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Georgia

| | |
|---|---|
| ANNA LANGE | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| | ) |
| HOUSTON COUNTY, GEORGIA; HOUSTON | ) |
| COUNTY BOARD OF COMMISSIONERS; Houston | ) |
| County Commissioners TOMMY STALNAKER, H. | ) |
| JAY WALKER III, GAIL ROBINSON; et al. | ) |
| _Defendant(s)_ | ) |

Civil Action No.  5:19-CV-00392

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  HOUSTON COUNTY BOARD OF COMMISSIONERS
200 Carl Vinson Parkway
Warner Robins, Georgia 31088

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Kenneth E. Barton III
Cooper, Barton & Cooper, LLP
170 College Street
Macon, Georgia 31201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____          _____

_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Georgia

| | |
|---|---|
| ANNA LANGE | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| HOUSTON COUNTY, GEORGIA; HOUSTON | ) |
| COUNTY BOARD OF COMMISSIONERS; Houston | ) |
| County Commissioners TOMMY STALNAKER, H. | ) |
| JAY WALKER III, GAIL ROBINSON; et al. | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.  5:19-CV-00392

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Commissioner Tommy Stalnaker
200 Carl Vinson Parkway
Warner Robins, Georgia 31088

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kenneth E. Barton III
Cooper, Barton & Cooper, LLP
170 College Street
Macon, Georgia 31201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Georgia

| | |
|---|---|
| ANNA LANGE | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| HOUSTON COUNTY, GEORGIA; HOUSTON | ) |
| COUNTY BOARD OF COMMISSIONERS; Houston | ) |
| County Commissioners TOMMY STALNAKER, H. | ) |
| JAY WALKER III, GAIL ROBINSON; et al. | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.  5:19-CV-00392

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  COMMISSIONER H. JAY WALKER
200 Carl Vinson Parkway
Warner Robins, Georgia 31088

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kenneth E. Barton III
Cooper, Barton & Cooper, LLP
170 College Street
Macon, Georgia 31201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Middle District of Georgia

| | |
|---|---|
| ANNA LANGE<br><br>*Plaintiff(s)*<br><br>v.<br><br>HOUSTON COUNTY, GEORGIA; HOUSTON COUNTY BOARD OF COMMISSIONERS; Houston County Commissioners TOMMY STALNAKER, H. JAY WALKER III, GAIL ROBINSON; et al.<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)   Civil Action No.  5:19-CV-00392<br>)<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   COMMISSIONER GAIL ROBINSON
200 Carl Vinson Parkway
Warner Robins, Georgia 31088

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kenneth E. Barton III
Cooper, Barton & Cooper, LLP
170 College Street
Macon, Georgia 31201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Georgia

| | |
|---|---|
| ANNA LANGE | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| HOUSTON COUNTY, GEORGIA; HOUSTON | ) |
| COUNTY BOARD OF COMMISSIONERS; Houston | ) |
| County Commissioners TOMMY STALNAKER, H. | ) |
| JAY WALKER III, GAIL ROBINSON; et al. | ) |
| *Defendant(s)* | ) |

Civil Action No.  5:19-CV-00392

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  COMMISSIONER LARRY THOMSON
200 Carl Vinson Parkway
Warner Robins, Georgia 31088

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kenneth E. Barton III
Cooper, Barton & Cooper, LLP
170 College Street
Macon, Georgia 31201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Georgia

| | |
|---|---|
| ANNA LANGE | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) Civil Action No.  5:19-CV-00392 |
| HOUSTON COUNTY, GEORGIA; HOUSTON COUNTY BOARD OF COMMISSIONERS; Houston County Commissioners TOMMY STALNAKER, H. JAY WALKER III, GAIL ROBINSON; et al. | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  COMMISSIONER TOM MCMICHAEL
200 Carl Vinson Parkway
Warner Robins, Georgia 31088

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kenneth E. Barton III
Cooper, Barton & Cooper, LLP
170 College Street
Macon, Georgia 31201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____          _____

_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Georgia

| | |
|---|---|
| ANNA LANGE | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| HOUSTON COUNTY, GEORGIA; HOUSTON | ) |
| COUNTY BOARD OF COMMISSIONERS; Houston | ) |
| County Commissioners TOMMY STALNAKER, H. | ) |
| JAY WALKER III, GAIL ROBINSON; et al. | ) |
| *Defendant(s)* | ) |

Civil Action No.  5:19-CV-00392

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  COMMISSIONER BARRY HOLLAND
200 Carl Vinson Parkway
Warner Robins, Georgia 31088

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Kenneth E. Barton III
Cooper, Barton & Cooper, LLP
170 College Street
Macon, Georgia 31201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____
*Signature of Clerk or Deputy Clerk*

# UNITED STATES DISTRICT COURT

### for the

### Middle District of Georgia

|  |  |  |
|---|---|---|
| ANNA LANGE | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No.  5:19-CV-00392 |
| HOUSTON COUNTY, GEORGIA; HOUSTON | ) | |
| COUNTY BOARD OF COMMISSIONERS; Houston | ) | |
| County Commissioners TOMMY STALNAKER, H. | ) | |
| JAY WALKER III, GAIL ROBINSON; et al. | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  COMMISSIONER ROBBIE DUNBAR
200 Carl Vinson Parkway
Warner Robins, Georgia 31088

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kenneth E. Barton III
Cooper, Barton & Cooper, LLP
170 College Street
Macon, Georgia 31201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Georgia

| | | |
|---|---|---|
| ANNA LANGE | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | Civil Action No.  5:19-CV-00392 |
| v. | ) | |
| HOUSTON COUNTY, GEORGIA; HOUSTON | ) | |
| COUNTY BOARD OF COMMISSIONERS; Houston | ) | |
| County Commissioners TOMMY STALNAKER, H. | ) | |
| JAY WALKER III, GAIL ROBINSON; et al. | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  DIRECTOR KENNETH CARTER
200 Carl Vinson Parkway
Warner Robins, Georgia 31088

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kenneth E. Barton III
Cooper, Barton & Cooper, LLP
170 College Street
Macon, Georgia 31201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____         _____
                                                                          *Signature of Clerk or Deputy Clerk*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:19-CV-00392-MTT |
| HOUSTON COUNTY, GEORGIA; | ) | |
| HOUSTON COUNTY BOARD OF | ) | |
| COMMISSIONERS; Houston County | ) | |
| Commissioners TOMMY STALNAKER, | ) | |
| H. JAY WALKER, III, GAIL | ) | |
| ROBINSON, LARRY THOMSON, TOM | ) | |
| MCMICHAEL, BARRY HOLLAND, and | ) | |
| ROBBIE DUNBAR, in their official and | ) | |
| individual capacities; and Houston County | ) | |
| Director of Personnel KENNETH | ) | |
| CARTER, in his official and individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT HOUSTON COUNTY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant Houston County, Georgia ("the County") files its Answer and Affirmative Defenses pursuant to Rules 8(c) and 12(a) of the Federal Rules of Civil Procedure, responding as follows to the allegations of Plaintiff's Complaint.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that she failed to file her civil action within the applicable statute of limitations and/or to the extent that Plaintiff failed to satisfy all conditions precedent and/or statutory prerequisites to a suit required under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Americans with Disabilities Act as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and/or other applicable law.[1]

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of consent, waiver, estoppel, justification, license, laches, unclean hands, after-acquired evidence, and/or additional defenses that may arise during the proceedings.

## FOURTH AFFIRMATIVE DEFENSE

Any action taken by the County with regard to Plaintiff or her employment was for legitimate, non-discriminatory and non-retaliatory reasons, and, as such, did not violate any legal right possessed by Plaintiff.

## FIFTH AFFIRMATIVE DEFENSE

The County has at all times acted in accord with and in good faith compliance with federal and state law.  The County has neither intentionally nor willfully violated Plaintiff's rights in any manner nor acted maliciously or with reckless disregard with respect to Plaintiff

---

[1]   The County asserts it is not, and has never been, Plaintiff's employer as defined by Title VII and the ADA.  Nevertheless, it raises this defense and certain other defenses applicable to employers in response to Plaintiff's allegations and in an abundance of caution.

or any aspect of her employment, and at no time has the County acted with any intent to injure Plaintiff.

### SIXTH AFFIRMATIVE DEFENSE

The County has fulfilled all obligations imposed on it by law.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any of the relief – equitable, declaratory, legal or attorneys' fees – requested against the County; however, to the extent she is entitled to any damages or other relief, which she is not, any such damages or relief are limited to the relief allowable against the County under the applicable provisions of Title VII, the ADA, and other applicable law.  Specifically, Plaintiff's claims for damages and other monetary relief under Title VII and the ADA are subject to the limitations imposed by 42 U.S.C. §§ 1981a(a)(1) and (b)(3).

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is required to mitigate her alleged damages as required by law.

### NINTH AFFIRMATIVE DEFENSE

Any damages that Plaintiff suffered were the direct and proximate result of her own actions or inactions, including, but not limited to, assumption of the relevant risks.

### TENTH AFFIRMATIVE DEFENSE

Any damages that Plaintiff suffered resulted from the acts or omissions of others for whom the County is not liable.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that accommodation of her disability, if any, would have caused undue hardship to the County.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's state law claims in whole or in part are barred due to her failure to comply with the ante litem notice requirements of O.C.G.A. § 36-11-1.

## THIRTEENTH AFFIRMATIVE DEFENSE

Any act or failure to act towards Plaintiff was not the result of any willful, malicious, reckless, or bad faith conduct on the part of the County such as to give rise to the imposition of compensatory, consequential, or punitive damages and/or any of the statutory penalties requested in the Complaint. The County has at all times acted in good faith and had objectively reasonable grounds to believe that any act or omission taken with respect to Plaintiff was in compliance with all federal laws.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks to recover punitive damages in this action, she cannot recover punitive damages from the County as a matter of law.

## FIFTEENTH AFFIRMATIVE DEFENSE

There is no private right of action for damages under the Georgia Constitution.

## SIXTEENTH AFFIRMATIVE DEFENSE

Any action taken by the County was reasonable and necessary to serve an important government purpose.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Certain of Plaintiff's claims are or may be barred, in whole or in part, by sovereign immunity.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff lacks standing to assert her Section 1983 claim against the County.

## NINETEENTH AFFIRMATIVE DEFENSE

One or more of the claims asserted by Plaintiff must be dismissed insofar as the County is not subject to suit under applicable law.

## TWENTIETH AFFIRMATIVE DEFENSE

The County hereby reserves the right to seek leave to amend this Answer or add additional defenses, or to withdraw defenses, as deemed warranted after reasonable opportunity for appropriate discovery.

## RESPONSE TO NUMBERED ALLEGATIONS

The County responds to the numbered allegations of the Complaint as follows:

## INTRODUCTION

1.

The County denies the allegations in Paragraph 1 of the Complaint.

2.

Answering Paragraph 2 of the Complaint, the County admits Plaintiff Anna Lange ("Plaintiff") is a Deputy Sheriff with the rank of Sergeant in the Houston County Sheriff's Office, where she has worked since 2006.  Except as specifically admitted herein, the County denies the allegations in Paragraph 2 of the Complaint.

3.

Answering Paragraph 3 of the Complaint, the County admits Plaintiff is a transgender woman. Except as specifically admitted herein, the County denies the allegations in Paragraph 3 of the Complaint.

4.

Answering Paragraph 4 of the Complaint, the County admits the BlueChoice Option POS Plan in which Plaintiff participates (the POS Plan) covers health care costs, subject to the terms, conditions, and limitations of the POS Plan, including its 68 medical exclusions and 29 pharmacy exclusions. Answering further, a true and correct copy of the POS Plan is attached as Exhibit 1. Except as specifically admitted herein, the County denies the allegations in Paragraph 4 (including its footnote 1) of the Complaint.

5.

The County denies the allegations in Paragraph 5 of the Complaint.

6.

Answering Paragraph 6 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 6 and, therefore, denies the same. Except as specifically answered herein, the County denies the allegations in Paragraph 6 of the Complaint.

7.

The County denies the allegations in Paragraph 7 of the Complaint.

8.

Answering Paragraph 8 of the Complaint, the County admits Plaintiff has sent two letters and appeared at one meeting of the Houston County Board of Commissioners ("Board of Commissioners") regarding certain POS Plan exclusions.  Except as specifically admitted herein, the County denies the allegations in Paragraph 8 of the Complaint.

9.

Answering Paragraph 9 of the Complaint, the County admits Plaintiff sent a letter to a Commissioner and the County Attorney about certain exclusions in January 2019; and Kenneth Carter provided a requested letter to Anthem Blue Cross Blue Shield ("Anthem") about certain exclusions in February 2019.  Answering further, the County avers that Anthem (or its predecessor) has requested confirmation of certain exclusions previously, and Carter's February 2019 letter to Anthem was merely part of the annual renewal process and not in response to Plaintiff's situation.  Except as specifically admitted herein, the County denies the allegations in Paragraph 9 of the Complaint.

10.

Answering Paragraph 10 of the Complaint, the County admits Plaintiff seeks declaratory and injunctive relief, and damages, but denies she is entitled to any such relief. Except as specifically admitted herein, the County denies the allegations in Paragraph 10 of the Complaint.

## JURISDICTION AND VENUE

### 11.

Answering Paragraph 11 of the Complaint, the County admits Plaintiff raises claims under the listed constitutional provisions and statutes, but denies she is entitled to relief under them.  Except as specifically admitted herein, the County denies the allegations in Paragraph 11 of the Complaint.

### 12.

Answering Paragraph 12 of the Complaint, the County admits this Court has jurisdiction over this matter.  Except as specifically admitted herein, the County denies the allegations in Paragraph 12 of the Complaint.

### 13.

The County admits the allegations in Paragraph 13 of the Complaint.

### 14.

Answering Paragraph 14 of the Complaint, the County admits venue is proper in this district.  Except as specifically admitted herein, the County denies the allegations in Paragraph 14 of the Complaint.

### 15.

Answering Paragraph 15 of the Complaint, the County admits venue is proper in this division.  Except as specifically admitted herein, the County denies the allegations in Paragraph 15 of the Complaint.

## PARTIES

16.

Answering Paragraph 16 of the Complaint, the County admits Plaintiff is employed as a Sheriff's Deputy.  Answering further, the County admits Plaintiff resides in Houston County.  Answering further still, the County admits Plaintiff performs the bulk of her duties and responsibilities within the borders of Houston County, but specifically denies that she is an employee of the County. Answering further, the County avers Plaintiff is employed exclusively by the Houston County Sheriff's Office. Answering further, the County avers that the Sheriff's Office – and not the County – is solely authorized to hire its employees (as it hired Plaintiff), promote its employees (as it promoted Plaintiff on two occasions), direct the manner and means of its employees' work, set its employees' work schedules, issue discipline and commendations to its employees, provide internal/departmental training and external training opportunities for its employees, and determine its employees' compensation and benefits – including the source of such benefits.  In contrast, as a common administrative courtesy, the County merely processes the Sheriff's Office's payroll according to instructions from the Sheriff's Office, and allows employees of the Sheriff's Office to participate in the County's benefit offerings pursuant to a long-term, informal intergovernmental agreement between the two governmental entities.  Except as specifically admitted herein, the County denies the allegations in Paragraph 16 of the Complaint.

17.

The County admits the allegations in Paragraph 17 of the Complaint.  Answering further, the County avers that, while Defendant Houston County employs 15 or more employees, its employees do not include Plaintiff.

18.

The County admits the allegations in Paragraph 18 of the Complaint.

19.

Answering Paragraph 19 of the Complaint, the County admits members of the Board of Commissioners are Defendants Stalnaker, Walker, Robinson, Thomson, and McMichael; and Defendant Stalnaker is the Chairman of the Board of Commissioners, in which capacity he is the County's chief executive officer.  Except as specifically admitted herein, the County denies the allegations in Paragraph 19 of the Complaint.

20.

Answering Paragraph 20 of the Complaint, the County admits Defendant Carter is the County's Personnel Director and has responsibility for the day-to-day administration of the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 20 of the Complaint.

21.

Answering Paragraph 21 of the Complaint, the County admits Plaintiff sues the individual defendants in their official and individual capacities.  Except as specifically admitted herein, the County denies the allegations in Paragraph 21 of the Complaint.

## ALLEGED EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

22.

The County admits the allegations in Paragraph 22 of the Complaint.  Answering further, the County avers Plaintiff filed the charge with the Equal Employment Opportunity Commission (EEOC) against Houston County, but not her employer, the Sheriff's Office.  A true and correct copy of the EEOC's file on Plaintiff's Charge (obtained through a Freedom of Information Act request) is attached as Exhibit 2.

23.

Answering Paragraph 23 of the Complaint, the County admits the EEOC issued a Notice of Right to Sue dated July 8, 2019.  Answering further, the County admits, upon information and belief, that the EEOC failed to investigate, reach a determination, or conciliate Plaintiff's Charge.  Except as specifically admitted herein, the County denies the allegations in Paragraph 23 of the Complaint.  Except as specifically admitted herein, the County denies the allegations in Paragraph 23 of the Complaint.

24.

The County admits the allegations in Paragraph 24 of the Complaint.

## ALLEGED FACTUAL BACKGROUND

### 25.

Answering Paragraph 25 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 25 and, therefore, denies the same. Except as specifically answered herein, the County denies the allegations in Paragraph 25 of the Complaint.

### 26.

Answering Paragraph 26 of the Complaint, the County admits the Sheriff's Office hired Plaintiff in 2006, promoted her to Corporal in 2012, and promoted her to Sergeant in 2014. Except as specifically admitted herein, the County denies the allegations in Paragraph 26 of the Complaint.

### 27.

Answering Paragraph 27 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 27 and, therefore, denies the same. Except as specifically answered herein, the County denies the allegations in Paragraph 27 of the Complaint.

### 28.

Answering Paragraph 28 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 28 and, therefore, denies the same. Except as specifically answered herein, the County denies the allegations in Paragraph 28 of the Complaint.

29.

Answering Paragraph 29 of the Complaint, the County admits, until early 2017, Plaintiff wore typical men's clothing at work, went by her male birth name, and responded to male pronouns.  Answering further, the County admits, by early 2017, Plaintiff began wearing typical women's clothing, using her female name, Anna, going by female pronouns, and otherwise being openly female at work.  Answering further, the County admits Plaintiff informed Carter and the Sheriff of her transition plans.  Except as specifically admitted herein, the County denies the allegations in Paragraph 29 of the Complaint.

30.

Answering Paragraph 30 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 30 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 30 of the Complaint.

31.

Answering Paragraph 31 of the Complaint, the County admits a job description for Deputy Sheriff is accessible on the website identified in Paragraph 31, n. 2.  The County is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 31 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 31 of the Complaint.

32.

Answering Paragraph 32 of the Complaint, the County admits Plaintiff receives health care benefits under the POS Plan, pursuant to an intergovernmental agreement between the

County and the Sheriff's Office.  Answering further, the County admits the plan is administered by Houston County and Plaintiff currently pays a premium of $10 per pay period for single coverage under the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 32 of the Complaint.

33.

Answering Paragraph 33 of the Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 33 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 33 of the Complaint.

34.

Answering Paragraph 34 of the Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 34 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 34 of the Complaint.

35.

Answering Paragraph 35 of the Complaint, the County avers that Paragraph 35 contains assertions of law to which no responsive pleading can or should be framed.  The Glenn v. Brumby decision speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 35 of the Complaint.

36.

Answering Paragraph 36 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 36 (including its footnote 3) and, therefore, denies the same. Except as specifically answered herein, the County denies the allegations in Paragraph 36 of the Complaint.

37.

Answering Paragraph 37 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 37 and, therefore, denies the same. Except as specifically answered herein, the County denies the allegations in Paragraph 37 of the Complaint.

38.

Answering Paragraph 38 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 38 (including its footnote 4) and, therefore, denies the same. Except as specifically answered herein, the County denies the allegations in Paragraph 38 of the Complaint.

39.

Answering Paragraph 39 of the Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 39 (including its footnote 5) and, therefore, denies the same. Except as specifically answered herein, the County denies the allegations in Paragraph 39 of the Complaint.

40.

Answering Paragraph 40 of the Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 40 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 40 of the Complaint.

41.

Answering Paragraph 41 of the Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 41 and, therefore, denies the same.  Answering further, the County avers that Paragraph 41 contains assertions of law to which no responsive pleading can or should be framed.  The language of the Americans with Disabilities Act, including "gender identity disorder," speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 41 of the Complaint.

42.

Answering Paragraph 42 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 42 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 42 of the Complaint.

43.

Answering Paragraph 43 of the Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 43 (including its footnote 6) and, therefore, denies the same.  Answering further, the County

avers that Paragraph 43 contains assertions of law to which no responsive pleading can or should be framed.  The language of the O'Donnabhain v. C.I.R. decision speaks for itself. To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 43 of the Complaint.

44.

Answering Paragraph 44 of the Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 44 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 44 of the Complaint.

45.

Answering Paragraph 45 of the Complaint, including its subparagraphs a. through c., the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 45 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 45 of the Complaint.

46.

Answering Paragraph 46 of the Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 46 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 46 of the Complaint.

47.

The County admits, upon information and belief, the allegations in Paragraph 47 of the Complaint.

48.

Answering Paragraph 48 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 48 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 48 of the Complaint.

49.

Answering Paragraph 49 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 49 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 49 of the Complaint.

50.

Answering Paragraph 50 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 50 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 50 of the Complaint.

51.

Answering Paragraph 51 of the Complaint, the County admits, upon information and belief, that Plaintiff now lives as a female, "came out" to her employer (the Sheriff), exclusively uses a female name and female pronouns, and wears typical women's clothing.

Except as specifically admitted herein, the County denies the allegations in Paragraph 51 of the Complaint.

<div align="center">52.</div>

Answering Paragraph 52 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 52 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 52 of the Complaint.

<div align="center">53.</div>

Answering Paragraph 53 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 53 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 53 of the Complaint.

<div align="center">54.</div>

Answering Paragraph 54 of the Complaint, the County admits Plaintiff legally changed her name, and the name and sex designation on her Georgia driver's license, in December 2017.   Answering further, the County is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 54 and, therefore, denies the same.  Except as specifically admitted herein, the County denies the allegations in Paragraph 54 of the Complaint.

<div align="center">55.</div>

Answering Paragraph 55 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 55 and, therefore,

<div align="center">-19-</div>

denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 55 of the Complaint.

56.

Answering Paragraph 56 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in all but the last sentence of Paragraph 56 (including its footnote 7) and, therefore, denies the same.  Answering further, the last sentence of Paragraph 56, as well as footnote 8, contains assertions of law to which no responsive pleading can or should be framed.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 56 of the Complaint.

57.

Answering Paragraph 57 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 57 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 57 of the Complaint.

58.

Answering Paragraph 58 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 58 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 58 of the Complaint.

59.

Answering Paragraph 59 of the Complaint, the County admits it operates the POS Plan for the benefit of its employees.  Answering further, the County admits that, pursuant to an intergovernmental agreement with the Sheriff's Office, employees of the Sheriff's Office, including Plaintiff, are permitted to participate in the plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 59 of the Complaint.

60.

Answering Paragraph 60 of the Complaint, the County admits Plaintiff is eligible for and participates in the POS Plan, which is available to her through an intergovernmental agreement between the Sheriff and the County.  Except as specifically admitted herein, the County denies the allegations in Paragraph 60 of the Complaint.

61.

Answering Paragraph 61 of the Complaint, the County admits it has agreed – through an intergovernmental agreement – to allow employees of the Sheriff's Office to participate in either of the County's health plans.  Answering further, the County denies that this intergovernmental agreement was the product of any obligation on the part of the Sheriff's Office to provide its employees with fringe benefits and denies that the Sheriff's Office delegated – or is legally authorized to delegate – any such obligations or "essential employer functions" to the County.  Except as specifically admitted herein, the County denies the allegations in Paragraph 61 of the Complaint.

62.

Answering Paragraph 62 of the Complaint, the County admits the County administers payroll for the Sheriff, as directed by the Sheriff, and permits the Sheriff's employees to participate in the POS Plan, based on information and direction from the Sheriff's Office and pursuant to an intergovernmental agreement. Except as specifically admitted herein, the County denies the allegations in Paragraph 62 of the Complaint.

63.

Answering Paragraph 63 of the Complaint, the County admits the County funds the POS Plan, along with contributions by plan participants, and a per capita charge to the Sheriff for his employees' participation. Except as specifically admitted herein, the County denies the allegations in Paragraph 63 of the Complaint.

64.

Answering Paragraph 64 of the Complaint, the County admits the County funds the POS Plan, along with contributions by plan participants, and a per capita charge to the Sheriff for his employees' participation. On information and belief, the Sheriff's Office has chosen not to offer any health insurance option to its employees except the County's health plans, which are available to Sheriff's Office employees pursuant to an intergovernmental agreement with the County. Answering further, the County denies any inference or suggestion that the Sheriff's Office is required to "rely exclusively" on the County to make health insurance benefits available to its employees. Except as specifically admitted herein, the County denies the allegations in Paragraph 64 of the Complaint.

65.

Answering Paragraph 65 of the Complaint, the County admits Anthem is the third-party administrator of the POS Plan.  Answering further, the County admits the County funds the POS Plan, along with contributions by plan participants, and a per capita charge to the Sheriff for his employees' participation.  Except as specifically admitted herein, the County denies the allegations in Paragraph 65 of the Complaint.

66.

Answering Paragraph 66 of the Complaint, the County admits the POS Plan covers the services listed in Paragraph 66, subject to the terms, conditions, and limitations in the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 66 of the Complaint.

67.

Answering Paragraph 67 of the Complaint, the County admits the POS Plan lists 68 medical exclusions, one of which deals with services and supplies for a "sex change," and 29 pharmacy exclusions, one of which deals with drugs for "sex change surgery."   Except as specifically admitted herein, the County denies the allegations in Paragraph 67 of the Complaint.

68.

Answering Paragraph 68 of the Complaint, the County admits the POS Plan excludes services and supplies for a "sex change" and drugs for "sex change surgery."  Except as specifically admitted herein, the County denies the allegations in Paragraph 68 of the Complaint.

69.

Answering Paragraph 69 of the Complaint, the County admits the POS Plan covers certain hormone deficiency services and certain breast surgery, subject to the terms, conditions, and limitations in the POS Plan.  Answering further, the County admits the POS Plan excludes services and supplies for a "sex change."  Except as specifically admitted herein, the County denies the allegations in Paragraph 69 of the Complaint.

70.

Answering Paragraph 70 of the Complaint, the County admits the POS Plan excludes services and supplies for a "sex change."  Answering further, the County specifically denies the POS Plan "targets" plan participants like Plaintiff – rather, it excludes 68 categories of services that may impact a broad number of plan participants at one time or another.  Except as specifically admitted herein, the County denies the allegations in Paragraph 70 of the Complaint.

71.

Answering Paragraph 71 of the Complaint, the County admits the POS Plan excludes services and supplies for a "sex change."  Except as specifically admitted herein, the County denies the allegations in Paragraph 71 of the Complaint.

72.

Answering Paragraph 72 of the Complaint, the County admits the POS Plan excludes non-medically necessary services.  Except as specifically admitted herein, the County denies the allegations in Paragraph 72 of the Complaint.

73.

The County denies the allegations in Paragraph 73 of the Complaint.

74.

The County denies the allegations in Paragraph 74 of the Complaint.

75.

Answering Paragraph 75 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 75 (including its footnote 9) and, therefore, denies the same. Except as specifically answered herein, the County denies the allegations in Paragraph 75 of the Complaint.

76.

Answering Paragraph 76 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 76 and, therefore, denies the same. Except as specifically answered herein, the County denies the allegations in Paragraph 76 of the Complaint.

77.

Answering Paragraph 77 of the Complaint, the County admits the POS Plan excludes services and supplies for a "sex change." Except as specifically admitted herein, the County denies the allegations in Paragraph 77 of the Complaint.

78.

Answering Paragraph 78 of the Complaint, the County admits the POS Plan has retained the exclusion of services and supplies for a "sex change." Answering further, the County admits Plaintiff requested that the County remove or waive the exclusion via a

-25-

January 2019 letter and her appearance at a Board of Commissioners meeting in February 2019.  Except as specifically admitted herein, the County denies the allegations in Paragraph 78 of the Complaint.

79.

Answering Paragraph 79 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 79 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 79 of the Complaint.

80.

Answering Paragraph 80 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 80 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 80 of the Complaint.

81.

Answering Paragraph 81 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 81 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 81 of the Complaint.

82.

Answering Paragraph 82 of the Complaint, the County admits the POS Plan contains the language quoted in Paragraph 82.  Answering further, the County admits the POS Plan continues, "By electing medical and Hospital benefits under the Plan or accepting the Plan

benefits, all Members legally capable of contracting, and the legal representatives of all Members incapable of contracting, agree to all terms, conditions, and provisions hereof." Except as specifically admitted herein, the County denies the allegations in Paragraph 82 of the Complaint.

83.

Answering Paragraph 83 of the Complaint, the County admits Anthem, or its predecessor Blue Cross Blue Shield, has previously required elections to retain certain exclusions.  Answering further, the County specifically denies Anthem's form contends the exclusions are unlawful.  Except as specifically admitted herein, the County denies the allegations in Paragraph 83 of the Complaint.

84.

Answering Paragraph 84 of the Complaint, the County admits Carter signed the Anthem form renewing certain exclusions for the 2019 plan year.  Except as specifically admitted herein, the County denies the allegations in Paragraph 84 of the Complaint.

85.

Answering Paragraph 85 of the Complaint, the County admits Plaintiff requested that the County remove or waive the exclusion via a January 2019 letter and her appearance at a Board of Commissioners meeting in February 2019.  Except as specifically admitted herein, the County denies the allegations in Paragraph 85 of the Complaint.

86.

Answering Paragraph 86 of the Complaint, the County admits Plaintiff's attorney sent a letter dated January 16, 2019, which requested that the County remove or waive the

exclusion.  Except as specifically admitted herein, the County denies the allegations in Paragraph 86 of the Complaint.

87.

Answering Paragraph 87 of the Complaint, the County admits Carter sent a letter to Anthem dated February 13, 2019, in response to a specific request by Anthem.  Except as specifically admitted herein, the County denies the allegations in Paragraph 87 (including its footnote 10) of the Complaint.

88.

Answering Paragraph 88 of the Complaint, the County admits Plaintiff requested that the County remove or waive the exclusion via her appearance at a Board of Commissioners meeting in February 2019, and the Board responded it was not considering changes to the POS Plan at that time.  Except as specifically admitted herein, the County denies the allegations in Paragraph 88 (including its footnote 11) of the Complaint.

89.

Answering Paragraph 89 of the Complaint, the County admits Carter signed an amendment to the Administrative Services Agreement on April 19, 2019.  Except as specifically admitted herein, the County denies the allegations in Paragraph 89 of the Complaint.

90.

Answering Paragraph 90 of the Complaint, the County admits Plaintiff's attorney sent an e-mail to County Attorney Tom Hall on September 20, 2019.  Except as specifically admitted herein, the County denies the allegations in Paragraph 90 of the Complaint.

91.

The County denies the allegations in Paragraph 91 of the Complaint.

92.

The County denies the allegations in Paragraph 92 of the Complaint.

93.

Answering Paragraph 93 of the Complaint, the County admits the POS Plan has retained the exclusion of services and supplies for a "sex change."  Except as specifically admitted herein, the County denies the allegations in Paragraph 93 of the Complaint.

94.

Answering Paragraph 94 of the Complaint, the County avers that Paragraph 94 contains assertions of law to which no responsive pleading can or should be framed.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 94 of the Complaint.

95.

The County denies the allegations in Paragraph 95 of the Complaint.

96.

Answering Paragraph 96 of the Complaint, the County avers that Paragraph 96 contains assertions of law to which no responsive pleading can or should be framed.  The Flack v. Wisconsin Dep't of Health Servs.  and Boyden v. Conlin decisions speak for themselves.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 96 of the Complaint.

97.

The County denies the allegations in Paragraph 97 of the Complaint.

98.

The County denies the allegations in Paragraph 98 of the Complaint.

99.

The County denies the allegations in Paragraph 99 of the Complaint.

100.

The County denies the allegations in Paragraph 100 of the Complaint.

101.

The County denies the allegations in Paragraph 101 of the Complaint.

102.

Answering Paragraph 102 of the Complaint, the County admits the County has stop-loss insurance.  Except as specifically admitted herein, the County denies the allegations in Paragraph 102 of the Complaint.

103.

The County denies the allegations in Paragraph 103 of the Complaint.  Answering further, the County specifically denies that Plaintiff lacks access to the POS Plan – in fact, she has access to the same POS Plan as other Sheriff's Office employees and, for that matter, County employees, and is a participant in the POS Plan.

104.

The County denies the allegations in Paragraph 104 of the Complaint.

105.

The County denies the allegations in Paragraph 105 of the Complaint.

106.

Answering Paragraph 106 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 106 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 106 of the Complaint.

107.

The County denies the allegations in Paragraph 107 of the Complaint.

108.

The County denies the allegations in Paragraph 108 of the Complaint.

109.

The County denies the allegations in Paragraph 109 of the Complaint.

110.

Answering Paragraph 110 of the Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 110 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 110 of the Complaint.

111.

The County denies the allegations in Paragraph 111 of the Complaint.

## FIRST CAUSE OF ACTION

***Alleged Violation of 42 U.S.C. § 1983 Caused by Alleged Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution on the Basis of Sex and Transgender Status***

112.

Answering Paragraph 112 of the Complaint, the County avers that Paragraph 112 contains assertions of law to which no responsive pleading can or should be framed. The United States Constitution speaks for itself. To the extent a response is required, except as specifically stated  herein, the County denies the allegations in Paragraph 112 of the Complaint.

113.

Answering Paragraph 113 of the Complaint, the County avers that Paragraph 113 contains assertions of law to which no responsive pleading can or should be framed. The statute at 42 U.S.C. § 1983 speaks for itself. To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 113 of the Complaint.

114.

The County denies the allegations in Paragraph 114 of the Complaint.

## SECOND CAUSE OF ACTION

### *Alleged Violation of the Georgia Equal Protection Guarantee on the Basis of Sex and Transgender Status*

### 115.

Answering Paragraph 115 of the Complaint, the County avers that Paragraph 115 contains assertions of law to which no responsive pleading can or should be framed.  The Georgia Constitution speaks for itself.  To the extent a response is required, except as specifically stated  herein, the County denies the allegations in Paragraph 115 of the Complaint.

### 116.

Answering Paragraph 116 of the Complaint, the County avers that Paragraph 116 contains assertions of law to which no responsive pleading can or should be framed.  The Georgia Constitution speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 116 of the Complaint.

### 117.

The County denies the allegations in Paragraph 117 of the Complaint.

## THIRD CAUSE OF ACTION

### *Alleged Unlawful Discrimination on the Basis of Sex in Violation of Title VII of the Civil Rights Act of 1964*

### 118.

Answering Paragraph 118 of the Complaint, the County avers that Paragraph 118 contains assertions of law to which no responsive pleading can or should be framed.  Title

VII of the Civil Rights Act of 1964 speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 118 of the Complaint.

<div align="center">119.</div>

The County denies the allegations in Paragraph 119 of the Complaint.

<div align="center">

**FOURTH CAUSE OF ACTION**

</div>

<div align="center">

***Alleged Unlawful Discrimination on the Basis of Disability in Violation of
Title I of the Americans with Disabilities Act***

</div>

<div align="center">120.</div>

Answering Paragraph 120 of the Complaint, the County avers that Paragraph 120 contains assertions of law to which no responsive pleading can or should be framed.  Title I of the ADA speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 120 of the Complaint.

<div align="center">121.</div>

Answering Paragraph 121 of the Complaint, the County avers that Paragraph 121 contains assertions of law to which no responsive pleading can or should be framed.  Title I of the ADA (including regulations interpreting it) speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 121 of the Complaint.

<div align="center">122.</div>

Answering Paragraph 122 of the Complaint, the County avers that Paragraph 122 contains assertions of law to which no responsive pleading can or should be framed.  Title I

<div align="center">-34-</div>

of the ADA (including regulations interpreting it) speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 122 of the Complaint.

<div align="center">123.</div>

The County denies the allegations in Paragraph 123 of the Complaint.

<div align="center">124.</div>

The County denies the allegations in Paragraph 124 of the Complaint.

<div align="center"><b><u>FIFTH CAUSE OF ACTION</u></b></div>

<div align="center">***Alleged Failure to Make a Reasonable Accommodation in Violation of Title I of the Americans with Disabilities Act***</div>

<div align="center">125.</div>

Answering Paragraph 125 of the Complaint, the County avers that Paragraph 125 contains assertions of law to which no responsive pleading can or should be framed.  Title I of the ADA (including regulations interpreting it) speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 125 of the Complaint.

<div align="center">126.</div>

Answering Paragraph 126 of the Complaint, the County avers that Paragraph 126 contains assertions of law to which no responsive pleading can or should be framed.  The ADA regulations speak for themselves.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 126 of the Complaint.

<div align="center">-35-</div>

127.

Answering Paragraph 127 of the Complaint, the County admits that participants in the POS Plan are able to access services subject to the terms, conditions, and limitation of the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 127 of the Complaint.

128.

Answering Paragraph 128 of the Complaint, the County admits that participants in the POS Plan are able to access services subject to the terms, conditions, and limitation of the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 128 of the Complaint.

129.

Answering Paragraph 129 of the Complaint, the County admits that Plaintiff is able to access services subject to the terms, conditions, and limitation of the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 129 of the Complaint.

130.

Answering Paragraph 130 of the Complaint, the County admits Plaintiff requested a waiver or change to the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 130 of the Complaint.

131.

The County denies the allegations in Paragraph 131 of the Complaint.

132.

The County denies the allegations in Paragraph 132 of the Complaint.

133.

The County denies the allegations in Paragraph 133 of the Complaint.

## SIXTH CAUSE OF ACTION

### *Alleged Unlawful Discrimination on the Basis of Disability in Violation of Title II of the Americans with Disabilities Act*

134.

Answering Paragraph 134 of the Complaint, the County avers that Paragraph 134 contains assertions of law to which no responsive pleading can or should be framed.  Title II of the ADA (including regulations interpreting it) speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 134 of the Complaint.

135.

Answering Paragraph 135 of the Complaint, the County avers that Paragraph 135 contains assertions of law to which no responsive pleading can or should be framed.  Title II of the ADA (including regulations interpreting it) speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 135 of the Complaint.

136.

The County denies the allegations in Paragraph 136 of the Complaint.

137.

The County denies the allegations in Paragraph 137 of the Complaint.

138.

The County denies the allegations in Paragraph 138 of the Complaint.

139.

The County denies the allegations in Paragraph 139 of the Complaint.

## JURY DEMAND

The County denies the allegations in unnumbered Jury Demand of the Complaint.

## REQUEST FOR RELIEF

Answering the allegations contained in the unnumbered ad damnum clause following Paragraph 139 of the Complaint and set forth under the heading "REQUEST FOR RELIEF" (including subparagraphs "A." through "F." thereof), the County denies that Plaintiff is entitled to the relief requested or to any relief whatsoever.

Except as specifically admitted hereinabove in response to the numbered and unnumbered paragraphs of the Complaint, the County denies any and all other claims or allegations which are raised or may have been raised by or in the Complaint.

WHEREFORE, having fully answered the allegations in Plaintiff's Complaint, the County respectfully requests that the Court enter an order dismissing the Complaint in its entirety, with prejudice; award the County its costs and expenses, including reasonable attorneys' fees; and award the County any other such relief as this Court deems just and proper.

Respectfully submitted, this 3rd day of December, 2019.

*/s/ Sharon P. Morgan*
R. Read Gignilliat
Georgia Bar No. 293390
Sharon P. Morgan
Georgia Bar No. 522955
Patrick L. Lail
Georgia Bar No. 431101

ELARBEE, THOMPSON, SAPP &
WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 659-6700
(404) 222-9718 (facsimile)
gignilliat@elarbeethompson.com
morgan@elarbeethompson.com
lail@elarbeethompson.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

|  |  |  |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:19-CV-00392-MTT |
| HOUSTON   COUNTY,   GEORGIA; | ) | |
| HOUSTON   COUNTY   BOARD   OF | ) | |
| COMMISSIONERS; Houston County | ) | |
| Commissioners TOMMY STALNAKER, | ) | |
| H.   JAY   WALKER,   III,   GAIL | ) | |
| ROBINSON, LARRY THOMSON, TOM | ) | |
| MCMICHAEL, BARRY HOLLAND, and | ) | |
| ROBBIE DUNBAR, in their official and | ) | |
| individual capacities; and Houston County | ) | |
| Director   of   Personnel   KENNETH | ) | |
| CARTER, in his official and individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed a true and correct copy of **DEFENDANT HOUSTON   COUNTY'S   ANSWER   AND   AFFIRMATIVE   DEFENSES   TO PLAINTIFF'S COMPLAINT** with the Clerk of Court using the CM/EMF system which will automatically send email notification of such filing, constituting service, to the following attorneys of record:

Kenneth E. Barton, III                      Wesley Powell
M. Devlin Cooper                            Mary Eaton
                                            Jill K. Grant

David Brown                               Kevin M. Barry
Noah E. Lewis

Respectfully submitted, this 3rd day of December, 2019.

/s/ Sharon P. Morgan
Sharon P. Morgan
Georgia Bar No. 522955

ELARBEE, THOMPSON, SAPP &
  WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
(404) 659-6700
(404) 222-9718 (facsimile)
morgan@elarbeethompson.com

*Attorneys for Defendants*

-2-

Anna Lange v. Houston County, Georgia, et al.
Civil Action No.: 5:19-CV-00392-MTT

Defendant Houston County's Answer and Affirmative Defenses to Plaintiff's
Complaint

# EXHIBIT A – POS Plan



# MEDICAL BENEFIT BOOKLET

FOR

## HOUSTON COUNTY BOC

**Administered By**



**Anthem Blue Cross and Blue Shield is the trade name of Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.  Independent licensee of the Blue Cross and Blue Shield Association.  ANTHEM is a registered trademark of Anthem Insurance Companies, Inc.**

**Si necesita ayuda en español para entender este documento, puede solicitarla sin costo adicional, llamando al número de servicio al cliente.**

If you need Spanish-language assistance to understand this document, you may request it at no additional cost by calling Member Services at the number on the back of your Identification Card.

**Effective 01/01/2019**

ASO.POS-01.01.19

# Federal Patient Protection and Affordable Care Act Notices

## Choice of Primary Care Physician

The Plan generally allows the designation of a Primary Care Physician (PCP). You have the right to designate any PCP who participates in the Claims Administrator's network and who is available to accept you or your family members. For information on how to select a PCP, and for a list of PCPs, contact the telephone number on the back of your Identification Card or refer to the Claims Administrator's website, www.anthem.com. For children, you may designate a pediatrician as the PCP.

## Access to Obstetrical and Gynecological (ObGyn) Care

You do not need prior authorization from the Plan or from any other person (including a PCP) in order to obtain access to obstetrical or gynecological care from a health care professional in the Claims Administrator's network who specializes in obstetrics or gynecology.   The health care professional, however, may be required to comply with certain procedures, including obtaining prior authorization for certain services or following a pre-approved treatment plan.   For a list of participating health care professionals who specialize in obstetrics or gynecology, contact the telephone number on the back of your Identification Card or refer to the Claims Administrator's website, www.anthem.com.

# Additional Federal Notices

## Statement of Rights under the Newborns' and Mother's Health Protection Act

Group health plans and health insurance issuers generally may not, under Federal law, restrict benefits for any Hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a cesarean section. However, Federal law generally does not prohibit the mother's or newborn's attending Provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 hours (or 96 hours as applicable). In any case, plans and issuers may not, under Federal law, require that a provider obtain authorization from the Plan or the insurance issuer for prescribing a length of stay not in excess of 48 hours (or 96 hours).

## Mental Health Parity and Addiction Equity Act

The Mental Health Parity and Addiction Equity Act provides for parity in the application of aggregate treatment limitations (day or visit limits) on mental health and substance abuse benefits with dollar limits or day/visit limits on medical/surgical benefits. In general, group health plans offering mental health and substance abuse benefits cannot set day/visit limits on mental health or substance abuse benefits that are lower than any such day or visit limits for medical and surgical benefits. A plan that does not impose day or visit limits on medical and surgical benefits may not impose such day or visit limits on mental health and substance abuse benefits offered under the Plan.  Also, the Plan may not impose Deductibles, Copayment, Coinsurance, and out of pocket expenses on mental health and substance abuse benefits that are more restrictive than Deductibles, Copayment, Coinsurance, and out of pocket expenses applicable to other medical and surgical benefits.  Medical Necessity criteria are available upon request.

## Coverage for a Child Due to a Qualified Medical Support Order ("QMCSO")

If you or your spouse are required, due to a QMCSO, to provide coverage for your child(ren), you may ask your Employer or Plan Administrator to provide you, without charge, a written statement outlining the procedures for getting coverage for such child(ren).

## Statement of Rights Under the Women's Cancer Rights Act of 1998

If you have had or are going to have a mastectomy, you may be entitled to certain benefits under the Women's Health and Cancer Rights Act of 1998 (WHCRA). For individuals receiving mastectomy-related benefits, coverage will be provided in a manner determined in consultation with the attending Physician and the patient, for:
- All stages of reconstruction of the breast on which the mastectomy was performed;
- Surgery and reconstruction of the other breast to produce a symmetrical appearance;
- Prostheses; and
- Treatment of physical complications of the mastectomy, including lymphedema.

These benefits will be provided subject to the same Deductibles and Coinsurance applicable to other medical and surgical benefits provided under this Plan.  (See the "Schedule of Benefits" for details.) If you would like more information on WHCRA benefits, call the number on the back of your Identification Card.

# Special Enrollment Notice

If you are declining enrollment for yourself or your Dependents (including your spouse) because of other health insurance coverage, you may in the future be able to enroll yourself or your Dependents in this Plan, if you or your Dependents lose eligibility for that other coverage (or if the employer stops contributing towards your or your Dependents' other coverage). However, you must request enrollment within 31 days after your or your Dependents' other coverage ends (or after the employer stops contributing toward the other coverage).

In addition, if you have a new Dependent as a result of marriage, birth, adoption, or placement for adoption, you may be able to enroll yourself and your Dependents. However, you must request enrollment within 31 days after the marriage, birth, adoption, or placement for adoption.

Eligible Subscribers and Dependents may also enroll under two additional circumstances:

- The Subscriber's or Dependent's Medicaid or Children's Health Insurance Program (CHIP) coverage is terminated as a result of loss of eligibility; or
- The Subscriber or Dependent becomes eligible for a subsidy (state premium assistance program).

The Subscriber or Dependent must request Special Enrollment within 60 days of the loss of Medicaid/CHIP or of the eligibility determination.

To request special enrollment or obtain more information, call the Member Services telephone number on your Identification Card, or contact your Employer.

# Introduction

This Benefit Booklet gives you a description of your benefits while you are enrolled under the health care plan (the "Plan") offered by your Employer.  You should read this Benefit Booklet carefully to get to know the Plan's main provisions and keep it handy for reference.  A thorough understanding of your coverage will allow you to use your benefits wisely.  If you have any questions about the benefits shown in this Benefit Booklet, please call your Employer's Health Plan Administrator or the Member Services number on the back of your Identification Card.

The Plan benefits described in this Benefit Booklet are for eligible Members only.  The health care services are subject to the limitations and Exclusions, Copayments, Deductible, and Coinsurance rules given in this Benefit Booklet.  Any group plan or certificate which you received before will be replaced by this Benefit Booklet.

Your Employer has agreed to be subject to the terms and conditions of Anthem's Provider agreements which may include precertification and utilization management requirements, timely filing limits, and other requirements to administer the benefits under this Plan.

Many words used in the Benefit Booklet have special meanings (e.g., Employer, Covered Services, and Medical Necessity).  These words are capitalized and are defined in the "Definitions" section.  See these definitions for the best understanding of what is being stated.  Throughout this Benefit Booklet you will also see references to "we", "us", "our", "you", and "your".  The words "we", "us", and "our" mean the Claims Administrator.  The words "you" and "your" mean the Member, Subscriber and each covered Dependent.

If you have any questions about your Plan, please be sure to call Member Services at the number on the back of your Identification Card.  Also be sure to check the Claims Administrator's website, www.anthem.com for details on how to find a Provider, get answers to questions, and access valuable health and wellness tips.

Important:  This is not an insured benefit Plan.  The benefits described in this Benefit Booklet or any rider or amendments attached hereto are funded by the Employer who is responsible for their payment.  Anthem provides administrative claims payment services only and does not assume any financial risk or obligation with respect to claims.

Anthem is an independent corporation operating under a license from the Blue Cross and Blue Shield Association, permitting Anthem to use the Blue Cross and Blue Shield Service Marks in the State of Georgia.  Although Anthem is the Claims Administrator and is licensed in Georgia you will have access to providers participating in the Blue Cross and Blue Shield Association BlueCard network across the country.  Anthem has entered into a contract with the Employer on its own behalf and not as the agent of the Association.

## How to Get Language Assistance

The Plan is committed to communicating with Members about the health Plan, no matter what their language is.  The Claims Administrator employs a language line interpretation service for use by all their Member Services call centers.  Simply call the Member Services phone number on the back of your Identification Card and a representative will be able to help you. Translation of written materials about your benefits can also be asked for by contacting Member Services.  TTY/TDD services also are available by dialing 711.  A special operator will get in touch with us to help with your needs.

## Identity Protection Services

Identity protection services are available your Employer's Anthem health plans. To learn more about these services, please visit www.anthem.com/resources.

# Table of Contents

**Federal Patient Protection and Affordable Care Act Notices** .................................................... 1
  Choice of Primary Care Physician ............................................................................................. 1
  Access to Obstetrical and Gynecological (ObGyn) Care .......................................................... 1
**Additional Federal Notices** ............................................................................................................ 2
  Statement of Rights under the Newborns' and Mother's Health Protection Act ........................ 2
  Mental Health Parity and Addiction Equity Act .......................................................................... 2
  Coverage for a Child Due to a Qualified Medical Support Order ("QMCSO") ........................... 2
  Statement of Rights Under the Women's Cancer Rights Act of 1998 ........................................ 2
  Special Enrollment Notice .......................................................................................................... 3
**Introduction** ................................................................................................................................... 4
  How to Get Language Assistance .............................................................................................. 4
  Identity Protection Services ....................................................................................................... 4
**Table of Contents** ......................................................................................................................... 5
**Schedule of Benefits** ................................................................................................................. 10
**How Your Plan Works** ................................................................................................................ 26
  Introduction .............................................................................................................................. 26
  In-Network Services ................................................................................................................. 26
    After Hours Care ................................................................................................................... 27
  Out-of-Network Services .......................................................................................................... 27
  How to Find a Provider in the Network .................................................................................... 28
  Your Cost-Shares ..................................................................................................................... 28
  The BlueCard Program ............................................................................................................ 28
  Identification Card .................................................................................................................... 28
**Getting Approval for Benefits** ................................................................................................... 29
  Reviewing Where Services Are Provided ................................................................................ 29
  Types of Reviews ..................................................................................................................... 29
  How Decisions are Made .......................................................................................................... 31
  Decision and Notice Requirements .......................................................................................... 31
  Important Information ................................................................................................................ 32
  Health Plan Individual Case Management ............................................................................... 32
**What's Covered** ........................................................................................................................... 34
  Allergy Services ....................................................................................................................... 34
  Ambulance Services ................................................................................................................. 34
    Important Notes on Air Ambulance Benefits ......................................................................... 35
      Hospital to Hospital Transport ............................................................................................ 35
  Autism Services ........................................................................................................................ 35
  Behavioral Health Services ...................................................................................................... 36
  Cardiac Rehabilitation .............................................................................................................. 36
  Chemotherapy .......................................................................................................................... 36
  Chiropractic Services ............................................................................................................... 36
  Clinical Trials ............................................................................................................................ 36
    Cancer Clinical Trial Programs for Children .......................................................................... 37
  Dental Services (All Members / All Ages) ................................................................................ 37
    Preparing the Mouth for Medical Treatments ....................................................................... 37
    Treatment of Accidental Injury .............................................................................................. 38
    Other Dental Services ........................................................................................................... 38
  Diabetes Equipment, Education, and Supplies ........................................................................ 38
  Diagnostic Services .................................................................................................................. 38
    Diagnostic Laboratory and Pathology Services .................................................................... 38
    Diagnostic Imaging Services and Electronic Diagnostic Tests ............................................. 39

Advanced Imaging Services.................................................................................39
Dialysis / Hemodialysis.......................................................................................39
Durable Medical Equipment and Medical Devices, Orthotics, Prosthetics, and Medical and Surgical
Supplies...............................................................................................................39
    Durable Medical Equipment and Medical Devices............................................39
    Hearing Aids.....................................................................................................40
    Orthotics............................................................................................................40
    Prosthetics........................................................................................................40
    Medical and Surgical Supplies.........................................................................41
    Blood and Blood Products.................................................................................41
Emergency Care Services...................................................................................41
    Emergency Services.........................................................................................41
Habilitative Services.............................................................................................42
Home Care Services.............................................................................................42
Home Infusion Therapy........................................................................................42
Hospice Care........................................................................................................43
Human Organ and Tissue Transplant (Bone Marrow / Stem Cell) Services.........43
    Prior Approval and Precertification....................................................................44
Infertility Services.................................................................................................45
Inpatient Services.................................................................................................45
    Inpatient Hospital Care.....................................................................................45
    Inpatient Professional Services.........................................................................46
Maternity and Reproductive Health Services.......................................................46
    Maternity Services............................................................................................46
    Contraceptive Benefits.....................................................................................47
    Sterilization Services.........................................................................................47
    Infertility Services.............................................................................................47
Mental Health and Substance Abuse Services.....................................................47
Nutritional Counseling.........................................................................................48
Occupational Therapy..........................................................................................48
Office Visits and Doctor Services.........................................................................48
Orthotics...............................................................................................................49
Outpatient Facility Services.................................................................................49
Physical Therapy..................................................................................................49
Preventive Care....................................................................................................49
Private Duty Nursing............................................................................................51
Prosthetics............................................................................................................51
Pulmonary Therapy..............................................................................................51
Radiation Therapy................................................................................................52
Rehabilitation Services.........................................................................................52
Respiratory Therapy.............................................................................................52
Skilled Nursing Facility........................................................................................52
Smoking Cessation...............................................................................................52
Speech Therapy....................................................................................................52
Surgery.................................................................................................................52
    Oral Surgery.....................................................................................................52
    Reconstructive Surgery.....................................................................................53
        Mastectomy Notice.....................................................................................53
Telemedicine........................................................................................................53
Therapy Services..................................................................................................53
    Physical Medicine Therapy Services.................................................................53
    Early Intervention Services...............................................................................55
    Other Therapy Services....................................................................................55
Transplant Services..............................................................................................56
Urgent Care Services...........................................................................................56
Vision Services (All Members / All Ages).............................................................56

**Prescription Drugs Administered by a Medical Provider**..................................................**57**
  Important Details About Prescription Drug Coverage......................................................57
  Covered Prescription Drugs.............................................................................................57
**Prescription Drug Benefit at a Retail or Home Delivery (Mail Order) Pharmacy**.............**59**
  Prescription Drug Benefits...............................................................................................59
    Covered Prescription Drugs..........................................................................................59
      Off-Label Drugs.........................................................................................................60
    Where You Can Get Prescription Drugs........................................................................61
      In-Network Pharmacy................................................................................................61
      Specialty Pharmacy...................................................................................................61
      Home Delivery Pharmacy..........................................................................................61
      Out-of-Network Pharmacy.........................................................................................61
    What You Pay for Prescription Drugs............................................................................62
      Tiers...........................................................................................................................62
      Prescription Drug List................................................................................................63
      Exception Request for a Drug not on the Prescription Drug List...............................63
      Additional Information about the Prescription Drug Formulary..................................63
    Additional Features of Your Prescription Drug Pharmacy Benefit..................................64
      Step Therapy..............................................................................................................64
      Day Supply and Refill Limits.....................................................................................64
**What's Not Covered**.............................................................................................................**66**
  What's Not Covered Under Your Prescription Drug Retail or Home Delivery (Mail Order) Pharmacy
  Benefit.............................................................................................................................72
**Claims Payment**...................................................................................................................**74**
  Maximum Allowed Amount...............................................................................................74
    General..........................................................................................................................74
      Provider Network Status............................................................................................75
      Member Cost Share....................................................................................................76
      Authorized Services...................................................................................................77
  Claims Review..................................................................................................................77
  Notice of Claim & Proof of Loss.......................................................................................77
  Claim Forms.....................................................................................................................77
  Member's Cooperation.....................................................................................................78
  Payment of Benefits.........................................................................................................78
  **Inter-Plan Arrangements**...............................................................................................**78**
    **Out-of-Area Services**..................................................................................................**78**
      **Overview**..................................................................................................................**78**
**Coordination of Benefits When Members Are Insured Under More Than One Plan**........**81**
  Order of Benefit Determination Rules...............................................................................82
  Effect on the Benefits of This Plan...................................................................................83
  Right to Receive and Release Needed Information..........................................................83
  Facility of Payment...........................................................................................................83
  Right of Reimbursement...................................................................................................83
**Subrogation and Reimbursement**.....................................................................................**84**
**Member Rights and Responsibilities**.................................................................................**86**
**Your Right To Appeal**..........................................................................................................**88**
**Eligibility and Enrollment – Adding Members**..................................................................**92**
  Who is Eligible for Coverage............................................................................................92
    The Subscriber..............................................................................................................92
    Dependents....................................................................................................................92
    Types of Coverage........................................................................................................93
  When You Can Enroll.......................................................................................................93

Initial Enrollment..................................................................................................................93
Open Enrollment..................................................................................................................93
Special Enrollment Periods ................................................................................................93
     Important Notes about Special Enrollment: ...................................................................94
Medicaid and Children's Health Insurance Program Special Enrollment ...........................94
Late Enrollees .....................................................................................................................94
Members Covered Under the Employer's Prior Plan ...........................................................94
Enrolling Dependent Children .................................................................................................94
Newborn Children ................................................................................................................94
Adopted Children.................................................................................................................94
Adding a Child due to Award of Legal Custody or Guardianship ........................................95
Qualified Medical Child Support Order ...............................................................................95
Updating Coverage and/or Removing Dependents .................................................................95
Nondiscrimination ...................................................................................................................95
Statements and Forms .............................................................................................................95
**Termination and Continuation of Coverage ............................................................................96**
Termination of Coverage (Individual) ......................................................................................96
Continuation of Coverage Under Federal Law (COBRA)........................................................96
Qualifying events for Continuation Coverage under Federal Law (COBRA) ......................96
Second qualifying event.......................................................................................................97
Notification Requirements ...................................................................................................97
Disability extension of 18-month period of continuation coverage .....................................98
Trade Adjustment Act Eligible Individual ...........................................................................98
When COBRA Coverage Ends .............................................................................................98
Other Coverage Options Besides COBRA Continuation Coverage......................................98
Continuation of Coverage Due To Military Service .................................................................99
Family and Medical Leave Act of 1993 ...................................................................................99
For More Information .........................................................................................................100
**General Provisions .................................................................................................................101**
Verification of Benefits .........................................................................................................101
Care Coordination ..................................................................................................................101
Clerical Error..........................................................................................................................101
Confidentiality and Release of Information.............................................................................101
Conformity with Law .............................................................................................................102
Continuity of Care ..................................................................................................................102
Entire Agreement ....................................................................................................................102
Form or Content of Benefit Booklet........................................................................................102
Circumstances Beyond the Control of the Plan ......................................................................103
Government Programs .............................................................................................................103
Medical Policy and Technology Assessment ..........................................................................103
Medicare..................................................................................................................................103
Governmental Health Care Programs ......................................................................................104
Modifications...........................................................................................................................104
Not Liable for Provider Acts or Omissions.............................................................................104
Payment Innovation Programs ................................................................................................104
Policies and Procedures...........................................................................................................104
Program Incentives..................................................................................................................105
Relationship of Parties (Employer-Member Claims Administrator) .......................................105
Anthem Blue Cross and Blue Shield Note...............................................................................105
Employer's Sole Discretion.....................................................................................................105
Reservation of Discretionary Authority ..................................................................................106
Right of Recovery and Adjustment .........................................................................................106
Unauthorized Use of Identification Card ................................................................................106
Fraud .......................................................................................................................................106
Value-Added Programs............................................................................................................106

Value of Covered Services ....................................................................................... 107
Voluntary Clinical Quality Programs ....................................................................... 107
Waiver ....................................................................................................................... 107
Worker's Compensation ........................................................................................... 107
Acts Beyond Reasonable Control (Force Majeure) ................................................. 107

**Definitions**..................................................................................................................**108**

# Schedule of Benefits

In this section you will find an outline of the benefits included in your Plan and a summary of any Deductibles, Coinsurance, and Copayments that you must pay.  Also listed are any Benefit Period Maximums or limits that apply.  Please read the "What's Covered" and Prescription Drugs section(s) for more details on the Plan's Covered Services.  Read the "What's Not Covered" section for details on Excluded Services.

All Covered Services are subject to the conditions, Exclusions, limitations, and terms of this Benefit Booklet including any endorsements, amendments, or riders.

**To get the highest benefits at the lowest out-of-pocket cost, you must get Covered Services from an In-Network Provider.**  Benefits for Covered Services are based on the Maximum Allowed Amount, which is the most the Claims Administrator will allow for a Covered Service.  When you use an Out-of-Network Provider you may have to pay the difference between the Out-of-Network Provider's billed charge and the Maximum Allowed Amount in addition to any Coinsurance, Copayments, Deductibles, and non-covered charges.  This amount can be substantial. Please read the "Claims Payment" section for more details.

Deductibles, Coinsurance, and Benefit Period Maximums are calculated based upon the Maximum Allowed Amount, not the Provider's billed charges.

| | |
|---|---|
| **Benefit Period** | Calendar Year |
| **Dependent Age Limit** | To the end of the month in which the child attains age 26 |
| | Please see the "Eligibility and Enrollment – Adding Members" section for further details. |

| Deductible | In-Network | Out-of-Network |
|---|---|---|
| Individual | $350 | $350 |
| No more than one individual Deductible per Member | In- and Out-of-Network combined | |
| Per Family | $1,050 | $1,050 |
| All other eligible Members combined | In- and Out-of-Network combined | |

Note: The Family Deductible is an aggregate Deductible.  This means any combination of amounts paid by family Members toward Covered Services can be used to satisfy the Family Deductible.

The In-Network and Out-of-Network Deductibles are combined. Amounts you pay toward the In-Network Deductible will apply toward the Out-of-Network Deductible and amounts you pay toward the Out-of-Network Deductible will apply toward the In-Network Deductible.

When the Deductible applies, you must pay it before benefits begin.  See the sections below to find out when the Deductible applies.

Copayments and Coinsurance are separate from and do not apply to the Deductible.

Any amounts applied to the Deductible for costs you pay during the last three months of the Benefit Period will also apply to the next Benefit Period's Deductible.

| Coinsurance | In-Network | Out-of-Network |
|---|---|---|
| Plan Pays (unless otherwise noted) | 80% | 60% |
| Member Pays (unless otherwise noted) | 20% | 40% |

Reminder: Your Coinsurance will be based on the Maximum Allowed Amount.  If you use an Out-of-Network Provider, you may have to pay Coinsurance plus the difference between the Out-of-Network Provider's billed charge and the Maximum Allowed Amount.

Note: The Coinsurance listed above may not apply to all benefits, and some benefits may have a different Coinsurance.  Please see the rest of this Schedule for details.

| Out-of-Pocket Limit | In-Network | Out-of-Network |
|---|---|---|
| Individual | $2,000 | $4,500 |
| No more than one individual Out-of-Pocket Limit  per Member | In- and Out-of-Network not combined | |
| Per Family | $6,000 | $10,500 |
| All other eligible Members combined | In- and Out-of-Network not combined | |

The Out-of-Pocket Limit includes all Deductibles, Coinsurance, and Copayments you pay during a Benefit Period unless otherwise indicated.

**The Out-of-Pocket Limit does not include amounts you pay for the following benefits:**
• Charges over the Maximum Allowed Amount,
• Penalties for not getting required pre-authorization / Precertification of services,
• Copayments paid toward Prescription Drugs,
• Amounts you pay for non-Covered Services.

Once the Out-of- Pocket Limit is satisfied, you will not have to pay any additional Deductibles, Coinsurance, or Copayments for the rest of the Benefit Period, except for the services listed above.

The In-Network and Out-of-Network Out-of-Pocket Limits apply toward each other. Amounts paid toward the In-Network Out-of-Pocket Limit will not apply toward the Out-of-Network Out-of-Pocket Limit and amounts paid toward the Out-of-Network Out-of-Pocket Limit will apply toward the In-Network Out-of-Pocket Limit.

The Out-of-Pocket Limit does not include any fourth quarter Deductible amounts carried over from the previous Benefit Period.

**Important Notice about Your Cost Shares**

In certain cases, if a Provider is paid amounts that are your responsibility, such as Deductibles, Copayments or Coinsurance, such amounts may be collected directly from you. You agree that the Claims Administrator, on behalf of the Plan, has the right to collect such amounts from you.

The tables below outline the Plan's Covered Services and the cost share(s) you must pay.  In many spots you will see the statement, "Benefits are based on the setting in which Covered Services are received".  In these cases you should determine where you will receive the service (i.e., in a Doctor's office, at an outpatient Hospital facility, etc.) and look up that location to find out which cost share will apply.  For example, you might get physical therapy in a Doctor's office, an outpatient Hospital facility, or during an Inpatient Hospital stay.  For services in the office, look up "Office Visits".  For services in the outpatient department of a Hospital, look up "Outpatient Facility Services".  For services during an Inpatient stay, look up "Inpatient Services".

| Benefits | In-Network | Out-of-Network |
|---|---|---|
| | | |
| **Allergy Services** | Benefits are based on the setting in which Covered Services are received. | |
| | | |
| **Ambulance Services (Air and Water)** | 20% Coinsurance no Deductible | |
| Out-of-Network Providers may also bill you for any charges that exceed the Plan's Maximum Allowed Amount.<br><br>**Important Note:**  Air ambulance services for non-Emergency Hospital to Hospital transfers must be approved through precertification.  Please see "Getting Approval for Benefits" for details. | | |
| | | |
| **Ambulance Services (Ground)** | 20% Coinsurance no Deductible | |
| Out-of-Network Providers may also bill you for any charges that exceed the Plan's Maximum Allowed Amount.<br><br>**Important Note:** All scheduled ground ambulance services for non-Emergency transfers, except transfers from one acute Facility to another, must be approved through precertification.  Please see "Getting Approval for Benefits" for details. | | |
| | | |
| **Autism Services** | | |
| • Applied Behavior Analysis **for Members through age six.** | Benefits are based on the setting in which Covered Services are received. | |
| • All other Covered Services for autism | Benefits are based on the setting in which Covered Services are received. | |
| | | |
| **Behavioral Health Services** | See "Mental Health and Substance Abuse Services." | |
| | | |
| **Cardiac Rehabilitation** | Benefits are based on the setting in which Covered Services are received. | |
| | | |

| Benefits | In-Network | Out-of-Network |
|---|---|---|
| **Chemotherapy** | Benefits are based on the setting in which Covered Services are received. | |
| **Chiropractic Services / Manipulation Therapy** | Benefits are based on the setting in which Covered Services are received. Also see "Therapy Services". | |
| **Clinical Trials / Cancer Clinical Trial Programs for Children** | Benefits are based on the setting in which Covered Services are received. | |
| **Dental Services All Members / All Ages** | Benefits are based on the setting in which Covered Services are received. | |
| **Diabetes Education** | Benefits are based on the setting in which Covered Services are received. | |
| **Diabetes Equipment and Supplies**<br><br>Screenings for gestational diabetes are covered under "Preventive Care." | Benefits are based on the setting in which Covered Services are received. | |
| **Diagnostic Services** | Benefits are based on the setting in which Covered Services are received. | |
| **Dialysis / Hemodialysis** | Benefits are based on the setting in which Covered Services are received. | |
| **Durable Medical Equipment (DME) and Medical Devices, Orthotics, Prosthetics, Medical and Surgical Supplies** (Received from a Supplier) | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| The cost-shares listed above only apply when you get the equipment or supplies from a third-party supplier.  If you receive the equipment or supplies as part of an office or outpatient visit, or during a Hospital stay, benefits will be based on the setting in which the covered equipment or supplies are received. | | |
| • Wigs | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| **Emergency Services**<br><br>Emergency Room | | |
| • Emergency Room Facility Charge | $250 Copayment per visit then 0% Coinsurance no Deductible. Copayment waived if admitted | |

| Benefits | In-Network | Out-of-Network |
|---|---|---|
| • Emergency Room Doctor Charge | 0% No Copayment, Deductible, or Coinsurance | |
| • Other Facility Charges (including diagnostic x-ray and lab services, medical supplies) | 0% No Copayment, Deductible, or Coinsurance | |
| • Advanced Diagnostic Imaging (including MRIs, CAT scans) | 0% No Copayment, Deductible, or Coinsurance | |
| • Non-emergency use of Emergency Room Services | $250 Copayment per visit, then 20% Coinsurance, after Deductible | |
| Out-of-Network Providers may also bill you for any charges over the Plan's Maximum Allowed Amount. | | |
| | | |
| **Foot Care: Care and removal of corns and calluses** | Benefits are based on the setting in which Covered Services are received. | |
| | | |
| **Habilitative Services** | Benefits are based on the setting in which Covered Services are received. See "Therapy Services" for details on Benefit Maximums. | |
| | | |
| **Hearing Aids for Members 18 years of age and under** | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| **Hearing Aid benefit maximum** | Limited to $3,000 per hearing aid per hearing impaired ear every 48 months In-and Out-of-Network combined | |
| | | |
| **Home Care** | | |
| • Home Care Visits | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Home Dialysis / Hemodialysis | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Home Infusion Therapy | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Other Home Care Services / Supplies | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| Home Care Benefit Maximum | 120 visits per Benefit Period In- and Out-of-Network combined The limit does not apply to Home Infusion Therapy or Home Dialysis / Hemodialysis. | |
| | | |
| **Home Infusion Therapy** | See "Home Care." | |
| | | |

| Benefits | In-Network | Out-of-Network |
|---|---|---|
| **Hospice Care** | | |
| • Home Care<br>• Respite Hospital Stays | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| Out-of-Network Providers may also bill you for any charges over the Plan's Maximum Allowed Amount. | | |
| | | |
| **Human Organ and Tissue Transplant (Bone Marrow / Stem Cell) Services** | Please see the separate summary later in this section. | |
| | | |
| **Infertility Services** | See "Maternity and Reproductive Health Services." | |
| | | |
| **Inpatient Facility Services** | | |
| Facility Room & Board Charge: | | |
| • Hospital / Acute Care Facility | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Skilled Nursing Facility | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
|    Skilled Nursing Facility / Rehabilitation Services (Includes Services in an Outpatient Day Rehabilitation Program) Benefit Maximum | 30 days per Benefit Period<br>In- and Out-of-Network combined | |
| • Other Facility Services / Supplies (including diagnostic lab/x-ray, medical supplies, therapies, anesthesia) | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| Doctor Services for: | | |
| • General Medical Care / Evaluation and Management (E&M) (Professional services billed separately from Hospital charges) | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Surgery (Professional services billed separately from Hospital charges) | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| | | |
| **Maternity and Reproductive Health Services** | | |
| • Maternity Services (Global fee for the ObGyn's prenatal, postnatal, and delivery services)<br><br>If you change Doctors during your pregnancy, the prenatal and postnatal fees will be billed separately. | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Primary Care Physician / Provider (PCP) | $15 Copayment no Deductible | 40% Coinsurance after Deductible |
| • Specialty Care Physician / Provider (SCP) | $25 Copayment no Deductible | 40% Coinsurance after Deductible |

15

| Benefits | In-Network | Out-of-Network |
|---|---|---|
| • Inpatient Facility Services | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |

**Newborn / Maternity Stays:** If the newborn needs services other than routine nursery care or stays in the Hospital after the mother is discharged (sent home), benefits for the newborn will be treated as a separate admission.

| | | |
|---|---|---|
| • **Infertility** <br> Limited to diagnostic services and treatment | Benefits are based on the setting in which Covered Services are received. | |

| | | |
|---|---|---|
| **Mental Health and Substance Abuse Services** | | |
| • Inpatient Facility Services | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Residential Treatment Center Services | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Inpatient Provider  Services (e.g., Doctor and other professional Providers) billed separately from Hospital charges | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Outpatient Facility Services | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Outpatient Provider  Services in an Outpatient Facility (e.g., Doctor and other professional Providers) | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Partial Hospitalization Program / Intensive Outpatient Program Services – Facility Services | 0% No Copayment, Deductible, or Coinsurance | 30% Coinsurance after Deductible |
| • Partial Hospitalization Program / Intensive Outpatient Program Services – Provider Services (e.g., Doctor and other professional Providers) | 0% No Copayment, Deductible, or Coinsurance | 30% Coinsurance after Deductible |
| • Office Visits (including Online Visits and Intensive In-Home Behavioral Health Programs when available in your area) | $15 Copayment no Deductible | 40% Coinsurance after Deductible |

Mental Health and Substance Abuse Services will be covered as required by law.  Please see "Mental Health Parity and Addiction Equity Act" in the "Additional Federal Notices" section for details.

| | | |
|---|---|---|
| **Occupational Therapy** | Benefits are based on the setting in which Covered Services are received. Also see "Therapy Services". | |

| | | |
|---|---|---|
| **Office Visits and Physician Services** | | |
| • Primary Care Physician / Provider (PCP) | $15 Copayment no Deductible | 40% Coinsurance after Deductible |
| • Specialty Care Physician / Provider (SCP) | $25 Copayment no Deductible | 40% Coinsurance after Deductible |

| Benefits | In-Network | Out-of-Network |
|---|---|---|
| • Retail Health Clinic Visit | $15 Copayment no Deductible | 40% Coinsurance after Deductible |
| • Online Visit (Other than Mental Health & Substance Abuse; see "Mental Health & Substance Abuse Services" section for that benefit | 0% No Copayment, Deductible, or Coinsurance for the 3 visits, then $10 Copayment no Deductible | 40% Coinsurance after Deductible |
| • Counseling (including family planning) | Covered in PCP / SCP Copayment | 40% Coinsurance after Deductible |
| • Nutritional Counseling | 0% No Copayment, Deductible, or Coinsurance | 40% Coinsurance after Deductible |
|     o Nutritional Counseling – Benefit Maximum | 4 visits per Benefit Period | |
|     o Nutritional Counseling for Diabetes – Benefit Maximum | Unlimited | |
|     o Nutritional Counseling for Eating Disorders – Benefit Maximum | Unlimited | |
| • Allergy Testing | 20% Coinsurance no Deductible | 40% Coinsurance after Deductible |
| • Allergy Shots / Injections | 20% Coinsurance no Deductible | 40% Coinsurance after Deductible |
| • Allergy Serum | 20% Coinsurance no Deductible | 40% Coinsurance after Deductible |
| • Diagnostic Labs (non-preventive) (i.e., reference labs) | 0% No Copayment, Deductible, or Coinsurance | |
| • Diagnostic X-ray (non-preventive) | Covered in PCP / SCP Copayment | 40% Coinsurance after Deductible |
| • Diagnostic Tests (non-preventive; including hearing and EKG) | Covered in PCP / SCP Copayment | 40% Coinsurance after Deductible |
| • Advanced Diagnostic Imaging (including MRIs, CAT scans) | Covered in PCP / SCP Copayment | 40% Coinsurance after Deductible |
| • Office Surgery | Covered in PCP / SCP Copayment | 40% Coinsurance after Deductible |
| Therapy Services: | | |
| • Chiropractic Care / Manipulation Therapy | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Physical & Occupational Therapy | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Speech Therapy | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Respiratory and Pulmonary | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |

| Benefits | In-Network | Out-of-Network |
|---|---|---|
| • Cardiac Rehabilitation | Covered in PCP / SCP Copayment | 40% Coinsurance after Deductible |
| • Dialysis / Hemodialysis | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Radiation / Chemotherapy / Non-Preventive Infusion & Injection | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Non-Preventive Infusion & Injection | Covered in PCP / SCP Copayment | 40% Coinsurance after Deductible |
| See "Therapy Services" for details on Benefit Maximums. | | |
| • Prescription Drugs Administered in the Office | Covered in PCP / SCP Copayment | 40% Coinsurance after Deductible |
| | | |
| **Orthotics** | See "Durable Medical Equipment (DME) and Medical Devices, Orthotics, Prosthetics, Medical and Surgical Supplies" | |
| | | |
| **Outpatient Facility Services** | | |
| • Facility Surgery Charge | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Other Facility Surgery Charges (including diagnostic x-ray and lab services, medical supplies) | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Doctor Surgery Charges | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Other Doctor Charges (including Anesthesiologist, Pathologist, Radiologist, Surgical Assistant) | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Other Facility Charges (for procedure rooms or other ancillary services) | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Diagnostic Lab | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Diagnostic X-ray | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Diagnostic Tests: Hearing, EKG, etc. (Non-Preventive) | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Advanced Diagnostic Imaging (including MRIs, CAT scans) | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |

| Benefits | In-Network | Out-of-Network |
|---|---|---|
| Therapy Services: | | |
| • Chiropractic Care / Manipulation Therapy | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Physical & Occupational Therapy | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Speech Therapy | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Respiratory and Pulmonary | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Cardiac Rehabilitation | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Dialysis / Hemodialysis | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| • Radiation / Chemotherapy / Non-Preventive Infusion & Injection | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| See "Therapy Services" for details on Benefit Maximums. | | |
| • Prescription Drugs Administered in an Outpatient Facility | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| | | |
| **Physical Therapy** | Benefits are based on the setting in which Covered Services are received. Also see "Therapy Services". | |
| | | |
| **Preventive Care** | 0% No Copayment, Deductible, or Coinsurance | 30% Coinsurance after Deductible |
| No In-Network or Out-of-Network Deductible for preventive care services through age 5. | | |
| | | |
| **Private Duty Nursing (RN or LPN)** | 20% Coinsurance after Deductible | 40% Coinsurance after Deductible |
| | | |
| **Prosthetics** | See Prosthetics" under "Durable Medical Equipment (DME) and Medical Devices, Orthotics, Prosthetics, Medical and Surgical Supplies" | |
| | | |
| **Pulmonary Therapy** | Benefits are based on the setting in which Covered Services are received. Also see "Therapy Services". | |
| | | |
| **Radiation Therapy** | Benefits are based on the setting in which Covered Services are received. | |

| Benefits | In-Network | Out-of-Network |
|---|---|---|
| | | |
| **Rehabilitation Services** | Benefits are based on the setting in which Covered Services are received. Also see "Therapy Services". | |
| | | |
| **Respiratory Therapy** | Benefits are based on the setting in which Covered Services are received. Also see "Therapy Services". | |
| | | |
| **Skilled Nursing Facility** | See "Inpatient Services". | |
| | | |
| **Speech Therapy** | Benefits are based on the setting in which Covered Services are received. Also see "Therapy Services". | |
| | | |
| **Surgery** | Benefits are based on the setting in which Covered Services are received. | |
| | | |
| **Telemedicine** | | |
| • Primary Care Physician / Provider (PCP) | $15 Copayment no Deductible | 40% Coinsurance after Deductible |
| • Specialist Care Physician / Provider (SCP) | $25 Copayment no Deductible | 40% Coinsurance after Deductible |
| | | |
| **Therapy Services** | Benefits are based on the setting in which Covered Services are received. | |
| Benefit Maximum(s): | Benefit Maximum(s) are for In- and Out-of-Network visits combined, and for office and outpatient visits combined. | |
| • Physical & Occupational Therapy | 30 visits per Benefit Period | |
| • Speech Therapy | 30 visits per Benefit Period | |
| • Chiropractic Care / Manipulation Therapy | 30 visits per Benefit Period | |
| • Respiratory Therapy | 30 visits per Benefit Period | |
| **Notes:** The limits for physical, occupational, and speech therapy will not apply if you get that care as part of the Hospice Care or the Inpatient Facility Services benefit.<br><br>When physical, occupational, speech therapy or pulmonary rehabilitation is rendered in the home, the Home Care Visit limit will apply instead of the Therapy Services limits listed above.<br><br>Therapy visit limits do not apply to autism services. | | |

| Benefits | In-Network | Out-of-Network |
|---|---|---|
| **Transplant Services** | Please see "Human Organ and Tissue Transplant (Bone Marrow / Stem Cell) Services" summary later in this section. | |
| | | |
| **Urgent Care Services**<br><br>If you get urgent care at a Hospital or other outpatient Facility, please refer to "Outpatient Facility Services" for details on what you will pay. | $15 Copayment no Deductible | 40% Coinsurance after Deductible |
| | | |
| **Vision Services (All Members / All Ages)** (For medical and surgical treatment of injuries and/or diseases of the eye)<br><br>Certain vision screenings required by Federal law are covered under the "Preventive Care" benefit. | Benefits are based on the setting in which Covered Services are received. | |
| | | |
| **Wigs** | See "Durable Medical Equipment (DME) and Medical Devices, Orthotics, Prosthetics, Medical and Surgical Supplies" | |
| | | |

| Benefits | In-Network | Out-of-Network |
|---|---|---|

**Human Organ and Tissue Transplant (Bone Marrow / Stem Cell) Services**

**Please call the Claims Administrator's Transplant Department as soon as you think you may need a transplant to talk about your benefit options. You must do this *before* you have an evaluation and/or work-up for a transplant.  To get the most benefits under the Plan, you must get certain human organ and tissue transplant services from an In-Network Transplant Provider.**  Even if a Hospital is an In-Network Provider for other services, it may not be an In-Network Transplant Provider for certain transplant services. Please call the Claims Administrator to find out which Hospitals are In-Network Transplant Providers.  (When calling Member Services, ask for the Transplant Case Manager for further details.)

**The requirements described below do not apply to the following:**

- Cornea transplants, which are covered as any other surgery; and
- Any Covered Services related to a Covered Transplant Procedure that you get before or after the Transplant Benefit Period.  Please note that the initial evaluation, any added tests to determine your eligibility as a candidate for a transplant by your Provider, and the collection and storage of bone marrow/stem cells is included in the Covered Transplant Procedure benefit regardless of the date of service.

Benefits for Covered Services that are not part of the Human Organ and Tissue Transplant benefit will be based on the setting in which Covered Services are received.  Please see the "What's Covered" section for additional details.

| Transplant Benefit Period | In-Network Transplant Provider | Out-of-Network Transplant Provider |
|---|---|---|
| | Starts one day before a Covered Transplant Procedure and lasts for the applicable case rate / global time period.  The number of days will vary depending on the type of transplant received and the In-Network Transplant Provider agreement.  Call the Case Manager for specific In-Network Transplant Provider information for services received at or coordinated by an In-Network Transplant Provider Facility. | Starts one day before a Covered Transplant Procedure and continues to the date of discharge at an Out-of- Network Transplant Provider Facility. |

| Benefits | In-Network | Out-of-Network |
|---|---|---|
| **Covered Transplant Procedure during the Transplant Benefit Period** | **In-Network Transplant Provider Facility / In-Network Transplant Provider Professional and Ancillary (non-Hospital) Providers** | **Out-of-Network Transplant Provider Facility / Out-of-Network Transplant Provider Professional and Ancillary (non-Hospital) Providers** |
| **Precertification required** | Before and after the Transplant Benefit Period, Covered Services will be covered as Inpatient Services, Outpatient Services, Home Visits, or Office Visits depending where the service is performed. | If the Provider is also an In-Network Provider for this Plan (for services other than Covered Transplant Procedures), then you will **not** have to pay for Covered Transplant Procedure charges over the Maximum Allowed Amount.

If the Provider is an Out-of-Network Provider for this Plan, you **will** have to pay for Covered Transplant Procedure charges over the Maximum Allowed Amount.

Prior to and after the Transplant Benefit Period, Covered Services will be covered as Inpatient Services, Outpatient Services, Home Visits, or Office Visits depending where the service is performed. |
| **Transportation and Lodging** | | |
| • **Transportation and Lodging Limit** | Covered, as approved by us, up to $10,000 per transplant In- and Out-of-Network combined | |
| **Unrelated donor searches from an authorized, licensed registry for bone marrow/stem cell transplants for a Covered Transplant Procedure** | | |
| • **Donor Search Limit** | Covered, as approved by us, up to $30,000 per transplant In- and Out-of-Network combined | |

| Prescription Drug Retail Pharmacy and Home Delivery (Mail Order) Benefits | In-Network | Out-of-Network |
|---|---|---|
| Each Prescription Drug will be subject to a cost share (e.g., Copayment / Coinsurance) as described below.  If your Prescription Order includes more than one Prescription Drug, a separate cost share will apply to each covered drug. You will be required to pay the lesser of your scheduled cost share or the Maximum Allowed Amount. | | |
| | | |
| **Prescription Drug Out of Pocket Limit** | | |
| Per Member | $4,000 | $4,000 |
| | In- and Out-of-Network combined | |
| Per Family | $8,000 | $8,000 |
| All other eligible Members combined | In- and Out-of-Network combined | |
| Note: The Prescription Drug Out of Pocket Limit is separate and does not apply toward any other Out of Pocket Limit for Covered Services in this Plan. It includes all Copayments you pay for Prescription Drugs from a Retail or Home Delivery (Mail Order) Pharmacy during a Benefit Period. It does not include charges over the Maximum Allowed Amount or amounts you pay for non-Covered Services.

Once the Out-of- Pocket Limit is satisfied, you will not have to pay any additional Copayments for Prescription Drugs from a Retail or Home Delivery (Mail Order) Pharmacy for the rest of the Benefit Period. | | |
| | | |
| **Day Supply Limitations –** Prescription Drugs will be subject to various day supply and quantity limits.  Certain Prescription Drugs may have a lower day-supply limit than the amount shown below due to other Plan requirements such as Prior Authorization, quantity limits, and/or age limits and utilization guidelines.  No day supply or quantity limits apply to prescriptions for inhalants to treat asthma. | | |
| Retail Pharmacy (In-Network and Out-of-Network) | 30 days | |
| Home Delivery (Mail Order) Pharmacy | 90 days | |
| Specialty Pharmacy (In-Network and Out-of-Network) | 30 days*
*See additional information in the "Specialty Drug Copayments / Coinsurance" section below. | |

| Prescription Drug Retail Pharmacy and Home Delivery (Mail Order) Benefits | In-Network | Out-of-Network |
|---|---|---|
| **Retail Pharmacy / Specialty Pharmacy:** | | |
| Tier 1 Prescription Drugs | $10 Copayment no Deductible | |
| Tier 2 Prescription Drugs | $35 Copayment no Deductible | |
| Tier 3 Prescription Drugs | $75 Copayment no Deductible | |
| Tier 4 Prescription Drugs | 20% Coinsurance no Deductible up to a maximum of $400 per Prescription Drug, per Member | |
| | | |
| **Home Delivery Pharmacy (Maintenance Drugs Only) / Specialty Pharmacy:** | | |
| Tier 1 Prescription Drugs | $15 Copayment no Deductible | |
| Tier 2 Prescription Drugs | $53 Copayment no Deductible | |
| Tier 3 Prescription Drugs | $113 Copayment no Deductible | |
| Tier 4 Prescription Drugs | $20% Coinsurance no Deductible up to a maximum of $400 per Prescription Drug, per Member | |
| | | |
| **Specialty Drug (Includes Specialty Home Delivery):** | | |
| Please note that certain Specialty Drugs are only available from an In-Network Specialty Pharmacy and you will not be able to get them at a Retail Pharmacy or through the Home Delivery (Mail Order) Pharmacy.  Please see "Specialty Pharmacy" in the section "Prescription Drug Benefit at a Retail or Home Delivery (Mail Order) Pharmacy" for further details.  When you get Specialty Drugs from a Specialty Pharmacy, you will have to pay the same Copayments / Coinsurance you pay for a 30-day supply at a Retail Pharmacy. | | |
| | | |
| **Notes:**  Prescription Drugs will always be dispensed as ordered by your Doctor. | | |
| | | |

# How Your Plan Works

## Introduction

If you have any questions about this Certificate, please call the member service number located on the back of your Identification (ID) Card.

Your Plan is a POS plan.  The Plan has two sets of benefits:  In-Network and Out-of-Network.  If you choose an In-Network Provider, you will pay less in out-of-pocket costs, such as Copayments, Deductibles, and Coinsurance.  If you use an Out-of-Network Provider, you will have to pay more in out-of-pocket costs.

## In-Network Services

A Member has access to primary and specialty care directly from any In-Network Physician.  A Primary Care Physician / Provider (PCP) Referral is not needed.

**Selecting a Primary Care Physician**

Your Plan requires you to select a Primary Care Physician from the network, or the Claims Administrator will assign one.  The Claims Administrator will notify you of the PCP that was assigned.  You may then use that PCP or choose another PCP from the Claims Administrator's Provider Directory.  Please see "How to Find a Provider in the Network" for more details.

PCPs include general practitioners, internists, family practitioners, pediatricians, and geriatricians.  Each member of a family may select a different Primary Care Physician; for example, an internist or general practitioner may be chosen for adults and a pediatrician may be selected for children.  If you want to change your PCP, contact the Claims Administrator or refer to the website, www.anthem.com.

**The First Thing To Do – Make an Appointment With Your PCP**

Your PCP's job is to help you stay healthy, not just treat you when you are sick.  After you choose a PCP, make an appointment with your PCP.  During this appointment, get to know your PCP and help your PCP get to know you.  At your first appointment, talk to your PCP about:

- Personal health history.
- Family health history.
- Lifestyle.
- Any health concerns you have.

It is important to note, if you have not established a relationship with your PCP, they may not be able to effectively treat you. To see a Doctor, call their office:

- Tell them you are an Anthem Member,
- Have your Member Identification Card handy.  The Doctor's office may ask you for your group or Member ID number.
- Tell them the reason for your visit.

When you go to the office, be sure to bring your Member Identification Card with you.

If you need to see a Specialist, you can visit any In-Network Specialist including a behavioral health Provider, gynecologist, obstetrician, dermatologist and an optometrist or ophthalmologist for medical conditions only.  You do not have to get a Referral.

When you use an In-Network Provider or get care as part of an Authorized Service, Covered Services will be covered at the In-Network level.  Regardless of Medical Necessity, benefits will be denied for care that is not a Covered Service.  The Claims Administrator has final authority to decide the Medical Necessity of the service.

**In-Network Providers** include Primary Care Physicians / Providers (PCPs), Specialists (Specialty Care Physicians / Providers - SCPs, other professional Providers, Hospitals, and other Facilities who contract with the Claims Administrator to care for you.   Referrals are never needed to visit an In-Network Specialist, including behavioral health Providers.

To see a Doctor, call their office:

- Tell them you are an Anthem Member,
- Have your Member Identification Card handy.  The Doctor's office may ask you for your group or Member ID number.
- Tell them the reason for your visit.

When you go to the office, be sure to bring your Member Identification Card with you.

For services from In-Network Providers:

1. You will not be required to file any claims.  In-Network Providers will file claims for Covered Services for you.  (You will still need to pay any Coinsurance, Copayments, and/or Deductibles that apply.)  You may be billed by your In-Network Provider(s) for any non-Covered Services you get or when you have not followed the terms of this Benefit Booklet.

2. Precertification will be done by the In-Network Provider.  (See the "Getting Approval for Benefits" section for further details.)

Please refer to the "Claims Payment" section for additional information on Authorized Services.

## After Hours Care

If you need care after normal business hours, your Doctor may have several options for you.  You should call your Doctor's office for instructions if you need care in the evenings, on weekends, or during a holiday and cannot wait until the office reopens.  If you have an Emergency, call 911 or go to the nearest Emergency Room.

## Out-of-Network Services

When you do not use an In-Network Provider or get care as part of an Authorized Service, Covered Services are covered at the Out-of-Network level, unless otherwise indicated in this Benefit Booklet.

For services from an Out-of-Network Provider:

1. The Out-of-Network Provider can charge you the difference between their bill and the Plan's Maximum Allowed Amount plus any Deductible and/or Coinsurance/Copayments;

2. You may have higher cost sharing amounts (i.e., Deductibles, Coinsurance, and/or Copayments);

3. You will have to pay for services that are not Medically Necessary;

4. You will have to pay for non-Covered Services;

5. You may have to file claims; and

6. You must make sure any necessary Precertification is done.  (Please see "Getting Approval for Benefits" for more details.)

## How to Find a Provider in the Network

There are three ways you can find out if a Provider or Facility is in the network for this Plan.  You can also find out where they are located and details about their license or training.

- See your Plan's directory of In-Network Providers at www.anthem.com, which lists the Doctors, Providers, and Facilities that participate in this Plan's network.
- Call Member Services to ask for a list of Doctors and Providers that participate in this Plan's network, based on specialty and geographic area.
- Check with your Doctor or Provider.

Please note that not all In-Network Providers offer all services.  For example, some Hospital-based labs are not part of our Reference Lab Network.  In those cases you will have to go to a lab in the Reference Lab Network to get In-Network benefits.  Please call Member Services before you get services for more information.

If you need details about a Provider's license or training, or help choosing a Doctor who is right for you, call the Member Services number on the back of your Member Identification Card.  TTY/TDD services also are available by dialing 711.  A special operator will get in touch with the Claims Administrator to help with your needs.

Please note that Anthem has several networks, and that a Provider that is In-Network for one plan may not be In-Network for another. Be sure to check your Identification Card or call Member Services to find out which network this Plan uses.

## Your Cost-Shares

Your Plan may involve Copayments, Deductibles, and/or Coinsurance, which are charges that you must pay when receiving Covered Services.  Your Plan may also have an Out-of-Pocket Limit, which limits the cost-shares you must pay.  Please read the "Schedule of Benefits" for details on your cost-shares.   Also read the "Definitions" section for a better understanding of each type of cost share.

## The BlueCard Program

Like all Blue Cross & Blue Shield plans throughout the country, we participate in a program called "BlueCard" which provides services to you when you are outside our Service Area.  For more details on this program, please see "Inter-Plan Arrangements" in the "Claims Payment" section.

## Identification Card

The Claims Administrator will give an Identification Card to each Member enrolled in the Plan.  When you get care, you must show your Identification Card.  Only covered Members have the right to receive services under this Plan.  If anyone gets services or benefits to which they are not entitled to under the terms of this Benefit Booklet, he/she must pay for the actual cost of the services.

# Getting Approval for Benefits

Your Plan includes the process of Utilization Review to decide when services are Medically Necessary or Experimental/Investigative as those terms are defined in this Benefit Booklet.  Utilization Review aids the delivery of cost-effective health care by reviewing the use of treatments and, when proper, level of care and/or the setting or place of service that they are performed.

## Reviewing Where Services Are Provided

A service must be Medically Necessary to be a Covered Service.  When level of care, setting or place of service is reviewed, services that can be safely given to you in a lower level of care or lower cost setting/place of care, will not be Medically Necessary if they are given in a higher level of care, or higher cost setting/place of care.  This means that a request for a service may be denied because it is not Medically Necessary for the service to be provided where it is being requested. When this happens the service can be requested again in another place and will be reviewed again for Medical Necessity. At times a different Provider or Facility may need to be used in order for the service to be considered Medically Necessary.  Examples include, but are not limited to:

- A service may be denied on an inpatient basis at a Hospital but may be approvable if provided on an outpatient basis at a Hospital.
- A service may be denied on an outpatient basis at a Hospital but may be approvable at a free standing imaging center, infusion center, Ambulatory Surgery Center, or in a Physician's office.
- A service may be denied at a Skilled Nursing Facility but may be approvable in a home setting.

Utilization Review criteria will be based on many sources including medical policy and clinical guidelines. It may be decided that a treatment that was asked for is not Medically Necessary if a clinically equivalent treatment that is more cost effective is available and appropriate.   "Clinically equivalent" means treatments that for most Members, will give you similar results for a disease or condition.

If you have any questions about the Utilization Review process, the medical policies, or clinical guidelines, you may call the Member Services phone number on the back of your Identification Card.

**Coverage for or payment of the service or treatment reviewed is not guaranteed even if the Plan decides Your services are Medically Necessary.  For benefits to be covered, on the date You get service**:

1. You must be eligible for benefits;
2. Fees must be paid for the time period that services are given;
3. The service or supply must be a Covered Service under Your Plan;
4. The service cannot be subject to an Exclusion under Your Plan; and
5. You must not have exceeded any applicable limits under Your Plan.

## Types of Reviews

- **Pre-service Review** – A review of a service, treatment or admission for a benefit coverage determination which is done before the service or treatment begins or admission date.

- **Precertification** – A required Pre-service Review for a benefit coverage determination for a service or treatment.  Certain services require Precertification in order for you to get benefits. The benefit coverage review will include a review to decide whether the service meets the definition of Medical Necessity or is Experimental/Investigative as those terms are defined in this Benefit Booklet.

For admissions following Emergency Care, you, your authorized representative or Doctor must tell the Claims Administrator within 48 hours of the admission or as soon as possible within a reasonable period of time.  For childbirth admissions, Precertification is not needed unless there is a problem and/or the mother and baby are not sent home at the same time.  Precertification is not required for the first 48 hours for a vaginal delivery or 96 hours for a cesarean section.  Admissions longer than 48/96 hours require precertification.

- **Continued Stay/Concurrent Review** - A Utilization Review of a service, treatment or admission for a benefit coverage determination which must be done during an ongoing stay in a facility or course of treatment.

Both Pre-Service and Continued Stay/Concurrent Reviews may be considered urgent when, in the view of the treating Provider or any Doctor with knowledge of your medical condition, without such care or treatment, your life or health or your ability to regain maximum function could be seriously threatened or you could be subjected to severe pain that cannot be adequately managed without such care or treatment.  Urgent reviews are conducted under a shorter timeframe than standard reviews.

- **Post-service Review –** A review of a service, treatment or admission for a benefit coverage that is conducted after the service has been provided.  Post-service reviews are performed when a service, treatment or admission did not need a Precertification, or when a needed Precertification was not obtained.  Post-service reviews are done for a service, treatment or admission in which the Claims Administrator has a related clinical coverage guideline and are typically initiated by the Claims Administrator.

The Provider, facility or attending Physician should contact the Claims Administrator to request a Precertification or Predetermination review.  The Claims Administrator will work directly with the requesting Provider for the Precertification request.  However, you may designate an authorized representative to act on your behalf for a specific request.  The authorized representative can be anyone who is 18 years of age or older.

## Who is Responsible for Precertification?

Typically, Network Providers know which services need Precertification and will get any Precertification when needed.  your Primary Care Physician and other Network Providers have been given detailed information about these procedures and are responsible for meeting these requirements.  Generally, the ordering Provider, facility or attending Doctor ("requesting Provider") will get in touch with the Claims Administrator to ask for a Precertification.  However, you may request a Precertification or you may choose an authorized representative to act on your behalf for a specific request.  The authorized representative can be anyone who is 18 years of age or older.  The table below outlines who is responsible for Precertification and under what circumstances.

| Provider Network Status | Responsibility to Get Precertification | Comments |
|---|---|---|
| In Network | Provider | - The Provider must get Precertification when required |
| Out-of- Network/ Non-Participating | Member | - Member must get Precertification when required. (Call Member Services.)<br>- Member may be financially responsible for charges/costs related to the service and/or setting in whole or in part if the service and or setting is found to not be Medically Necessary. |

| Provider Network Status | Responsibility to Get Precertification | Comments |
|---|---|---|
| Blue Card Provider | Member (Except for Inpatient Admissions) | • Member must get Precertification when required. (Call Member Services.)<br>• Member may be financially responsible for charges/costs related to the service and/or setting in whole or in part if the service and or setting is found to not be Medically Necessary.<br>• **Blue Card Providers must obtain precertification for all Inpatient Admissions.** |

**NOTE:  For an Emergency Care admission, precertification is not required.  However, you, your authorized representative or Doctor must tell the Claims Administrator within 24 hours of the admission or as soon as possible within a reasonable period of time.**

## How Decisions are Made

The Claims Administrator will utilize its clinical coverage guidelines, such as medical policy, clinical guidelines, and other applicable policies and procedures to help make Medical Necessity decisions.  This includes decisions about Prescription Drugs as detailed in the section "Prescription Drugs Administered by a Medical Provider".   Medical policies and clinical guidelines reflect the standards of practice and medical interventions identified as proper medical practice.   The Claims Administrator reserves the right to review and update these clinical coverage guidelines from time to time.

You are entitled to ask for and get, free of charge, reasonable access to any records concerning your request.   To ask for this information, call the Precertification phone number on the back of your Identification Card.

If you are not satisfied with the Plan's decision under this section of your benefits, please refer to the "Your Right To Appeal" section to see what rights may be available to you.

## Decision and Notice Requirements

The Claims Administrator will review requests for benefits according to the timeframes listed below.  Timeframes and requirements listed are based on Federal laws.  You may call the telephone number on your Identification Card for additional information.

| Request Category | Timeframe Requirement for Decision and Notification |
|---|---|
| Prospective Urgent | 72 hours from the receipt of request |
| Prospective Non-Urgent | 15 calendar days from the receipt of the request |
| Urgent Continued Stay / Concurrent Review when request is received more than 24 hours before the expiration of the previous authorization | 24 hours from the receipt of the request |
| Urgent Continued Stay / Concurrent Review when request is received less than 24 hours before the expiration of the previous authorization or no previous authorization exists | 72 hours from the receipt of the request |

| Non-urgent Continued Stay / Concurrent Review for ongoing outpatient treatment | 15 calendar days from the receipt of the request |
|---|---|
| Post-Service Review | 30 calendar days from the receipt of the request |

If more information is needed to make a decision, the Claims Administrator will tell the requesting Provider and send written notice to you or your authorized representative of the specific information needed to finish the review.  If the Claims Administrator does not get the specific information needed or if the information is not complete by the timeframe identified in the written notice, a decision will be made based upon the information received.

The Claims Administrator will give notice of its decision as required by Federal law.  Notice may be given by one or more of the following methods: verbal, written, and/or electronic.

## Important Information

From time to time certain medical management processes (including utilization management, case management, and disease management) may be waived, enhanced, changed or ended.  An alternate benefit may be offered if in the Plan's sole discretion, such change furthers the provision of cost effective, value based and/or quality services.

Certain qualifying Providers may be selected to take part in a program or a Provider arrangement that exempts them from certain procedural or medical management processes that would otherwise apply.  Your claim may also be exempted from medical review if certain conditions apply.

Just because a process, Provider or Claim is exempted from the standards which otherwise would apply, it does not mean that this will occur in the future, or will do so in the future for any other Provider, claim or Member.  The Plan may stop or change any such exemption with or without advance notice.

You may find out whether a Provider is taking part in certain programs or a Provider arrangement by contacting the Member Services number on the back of your Identification Card.

The Claims Administrator also may identify certain Providers to review for potential fraud, waste, abuse or other inappropriate activity if the claims data suggests there may be inappropriate billing practices.  If a Provider is selected under this program, then the Claims Administrator may use one or more clinical utilization management guidelines in the review of claims submitted by this Provider, even if those guidelines are not used for all Providers delivering services to this Plan's Members.

## Health Plan Individual Case Management

The Claims Administrator's health plan individual case management programs (Case Management) help coordinate services for Members with health care needs due to serious, complex, and/or chronic health conditions.  The Claims Administrator's programs coordinate benefits and educate Members who agree to take part in the Case Management program to help meet their health-related needs.

Case Management programs are confidential and voluntary and are made available at no extra cost to you.  These programs are provided by, or on behalf of and at the request of, your health plan case management staff.  These Case Management programs are separate from any Covered Services you are receiving.

If you meet program criteria and agree to take part in, the Claims Administrator will help you meet your identified health care needs.  This is reached through contact and team work with you and/or your chosen authorized representative, treating Doctor(s), and other Providers.

In addition, the Claims Administrator may assist with coordinating care with existing community-based programs and services to meet your needs. This may include giving you information about external agencies and community-based programs and services.

In certain cases of severe or chronic illness or injury, the Plan may provide benefits for alternate care that is not listed as a Covered Service. The Plan may also extend Covered Services beyond the Benefit Period Maximums of this Plan. The Claims Administrator will make its decision case-by-case, if in the Claims Administrator's discretion the alternate or extended benefit is in the best interest of you and the Plan and You or Your authorized representative agree to the alternate or extended benefit in writing. A decision to provide extended benefits or approve alternate care in one case does not obligate the Plan to provide the same benefits again to you or to any other Member. The Plan reserves the right, at any time, to alter or stop providing extended benefits or approving alternate care. In such case, the Claims Administrator will notify you or your representative in writing.

# What's Covered

This section describes the Covered Services available under your Plan.  Your Covered Services are subject to all the terms and conditions listed in this Benefit Booklet, including, but not limited to, Benefit Maximums, Deductibles, Copayments, Coinsurance, Exclusions and Medical Necessity requirements. Please read the "Schedule of Benefits" section for details on the amounts you must pay for Covered Services and for details on any Benefit Maximums.  Also be sure to read the "How Your Plan Works" section for more information on your Plan's rules.  Read the "What's Not Covered" section for important details on Excluded Services.

Your benefits are described below.  Benefits are listed alphabetically to make them easy to find.  Please note that several sections may apply to your claims. For example, if you have a surgery, benefits for your Hospital stay will be described under "Inpatient Hospital Care" and benefits for your Doctor's services will be described under "Inpatient Professional Service".   As a result, you should read all the sections that might apply to your claims.

You should also know that many of the Covered Services can be received in several settings, including a Doctor's office, an Urgent Care Facility, an Outpatient Facility, or an Inpatient Facility.  Benefits will often vary depending on where you choose to get Covered Services, and this can result in a change in the amount you will need to pay.  Please see the "Schedule of Benefits" section for more details on how benefits vary in each setting.

## Allergy Services

Your Plan includes benefits for Medically Necessary allergy testing and treatment, including allergy serum and allergy shots.

## Ambulance Services

Medically Necessary ambulance services are a Covered Service when:

- You are transported by a state licensed vehicle that is designed, equipped, and used only to transport the sick and injured and staffed by Emergency Medical Technicians (EMT), paramedics, or other certified medical professionals. This includes ground, water, fixed wing, and rotary wing air transportation.

And one or more of the following criteria are met:

- For ground ambulance, you are taken:
    – From your home, the scene of accident or medical Emergency to a Hospital;
    – Between Hospitals, including when the Claims Administrator requires you to move from an Out-of-Network Hospital to an In-Network Hospital
    – Between a Hospital and Skilled Nursing Facility or other approved Facility.

- For air or water ambulance, you are taken:
    – From the scene of an accident or medical Emergency to a Hospital;
    – Between Hospitals, including when the Claims Administrator requires you to move from an Out-of-Network Hospital to an In-Network Hospital
    – Between a Hospital and an approved Facility.

Ambulance services are subject to Medical Necessity reviews.  Emergency ground ambulance services do not require precertification and are allowed regardless of whether the Provider is an In-Network or Out-of-Network Provider.

Non-Emergency ambulance services are subject to Medical Necessity reviews.  When using an air ambulance for non-Emergency transportation, the Claims Administrator reserves the right to select the air ambulance Provider.  If you do not use the air ambulance Provider selected, no benefits will be available. Please note that an Out-of-Network Provider may bill you for any charges that exceed the Maximum Allowed Amount.

You must be taken to the nearest Facility that can give care for your condition.  In certain cases the Claims Administrator may approve benefits for transportation to a Facility that is not the nearest Facility.

Benefits also include Medically Necessary treatment of a sickness or injury by medical professionals from an ambulance service, even if you are not taken to a Facility.

Ambulance services are not covered when another type of transportation can be used without endangering your health.  Ambulance services for your convenience or the convenience of your family or Doctor are not a Covered Service.

Other non-covered ambulance services include, but are not limited to, trips to:

a) A Doctor's office or clinic;
b) A morgue or funeral home.

### Important Notes on Air Ambulance Benefits

Benefits are only available for air ambulance when it is not appropriate to use a ground or water ambulance.  For example, if using a ground ambulance would endanger your health and your medical condition requires a more rapid transport to a Facility than the ground ambulance can provide, the Plan will cover the air ambulance. Air ambulance will also be covered if you are in an area that a ground or water ambulance cannot reach.

Air ambulance will not be covered if you are taken to a Hospital that is not an acute care Hospital (such as a Skilled Nursing Facility or a rehabilitation facility), or if you are taken to a Physician's office or your home.

### Hospital to Hospital Transport

If you are moving from one Hospital to another, air ambulance will only be covered if using a ground ambulance would endanger your health and if the Hospital that first treats cannot give you the medical services you need. Certain specialized services are not available at all Hospitals.  For example, burn care, cardiac care, trauma care, and critical care are only available at certain Hospitals. To be covered, you must be taken to the closest Hospital that can treat you. **Coverage is not available for air ambulance transfers simply because you, your family, or your Provider prefers a specific Hospital or Physician.**

## Autism Services

Your Plan includes coverage for the treatment of neurological deficit disorders, including autism.  Your Plan also covers certain treatments associated with autism spectrum disorder (ASD) for dependents through age five.  Coverage for ASD includes but is not limited to the following:
- Diagnosis of autism spectrum disorder;
- Treatment of autism spectrum disorder;
- Pharmacy care;
- Psychiatric care;
- Psychological care; and
- Therapeutic care.

Treatment for ASD includes Habilitative or rehabilitative services including Applied Behavior Analysis when provided or supervised by a person professionally certified by a national board of behavior analysts, or performed under the supervision of a person professionally certified by a national board of behavior analysts.

## Behavioral Health Services

See "Mental Health and Substance Abuse Services" later in this section.

## Cardiac Rehabilitation

Please see "Therapy Services" later in this section.

## Chemotherapy

Please see "Therapy Services" later in this section.

## Chiropractic Services

Benefits are available for chiropractic treatments provided by a Doctor of Chiropractic medicine when rendered within the scope of the chiropractic license.  Covered Services include diagnostic testing, manipulations, and treatment.

Benefits do not include the following:

1. Maintenance therapy, which is treatment given when no additional progress is apparent or expected to occur.  Maintenance therapy includes treatment that preserves your present level of functioning and prevents loss of that functioning, but which does not result in any additional improvement.
2. Nutritional or dietary supplements, including vitamins.
3. Cervical pillows.
4. Spinal decompression devices.  This includes, but is not limited to, Vertebral Axial Decompression (Vax-D) and DRX9000.

## Clinical Trials

Benefits include coverage for services, such as routine patient care costs, given to you as a participant in an approved clinical trial if the services are Covered Services under this Plan. An "approved clinical trial" means a phase I, phase II, phase III, or phase IV clinical trial that studies the prevention, detection, or treatment of cancer or other life-threatening conditions. The term life-threatening condition means any disease or condition from which death is likely unless the disease or condition is treated.

Benefits are limited to the following trials:

1. Federally funded trials approved or funded by one of the following:

    a. The National Institutes of Health.

    b. The Centers for Disease Control and Prevention.

    c. The Agency for Health Care Research and Quality.

    d. The Centers for Medicare & Medicaid Services.

    e. Cooperative group or center of any of the entities described in (a) through (d) or the Department of Defense or the Department of Veterans Affairs.

f.   A qualified non-governmental research entity identified in the guidelines issued by the National Institutes of Health for center support grants.

g.   Any of the following in i-iii below if the study or investigation has been reviewed and approved through a system of peer review that the Secretary of Health and Human Services determines 1) to be comparable to the system of peer review of studies and investigations used by the National Institutes of Health, and 2) assures unbiased review of the highest scientific standards by qualified individuals who have no interest in the outcome of the review.

  i.   The Department of Veterans Affairs.

  ii.  The Department of Defense.

  iii. The Department of Energy.

2.  Studies or investigations done as part of an investigational new drug application reviewed by the Food and Drug Administration;

3.  Studies or investigations done for drug trials which are exempt from the investigational new drug application.

Your Plan may require you to use an In-Network Provider to maximize your benefits.

Routine patient care costs include items, services, and drugs provided to you in connection with an approved clinical trial that would otherwise be covered by this Plan.

All requests for clinical trials services including services that are not part of approved clinical trials will be reviewed according to the Claims Administrator's Clinical Coverage Guidelines, related policies and procedures.

Your Plan is not required to provide benefits for the following services and reserves the right to exclude any of the following services:

i.   The Investigational item, device, or service; or
ii.  Items and services that are given only to satisfy data collection and analysis needs and that are not used in the direct clinical management of the patient; or
iii. A service that is clearly inconsistent with widely accepted and established standards of care for a particular diagnosis;
iv.  Any item or service that is paid for, or should have been paid for, by the sponsor of the trial.

## Cancer Clinical Trial Programs for Children

Covered Services include routine patient care costs incurred in connection with the provision of goods, services, and benefits to Members who are dependent children in connection with approved clinical trial programs for the treatment of children's cancer.  Routine patient care costs mean those Medically Necessary costs as provided in Georgia law (OCGA 33-24-59.1).

# Dental Services (All Members / All Ages)

## Preparing the Mouth for Medical Treatments

Your Plan includes coverage for dental services to prepare the mouth for medical services and treatments such as radiation therapy to treat cancer and prepare for transplants.  Covered Services include:

- Evaluation
- Dental x-rays
- Extractions, including surgical extractions
- Anesthesia

## Treatment of Accidental Injury

Benefits are also available for dental work needed to treat injuries to the jaw, sound natural teeth, mouth or face as a result of an accident.  An injury that results from chewing or biting is not considered an Accidental Injury under this Plan, unless the chewing or biting results from a medical or mental condition.

Treatment must begin within 12 months of the injury, or as soon after that as possible to be a Covered Service under this Plan.

## Other Dental Services

Hospital or Facility charges and anesthesia needed for dental care are covered if the Member meets any of the following conditions:

- The Member is under the age of 7;
- The Member has a chronic disability that is attributable to a mental and/ or physical impairment which results in substantial functional limitation in an area of the Member's major life activity, and the disability is likely to continue indefinitely; or
- The Member has a medical condition that requires hospitalization or general anesthesia for dental care.

# Diabetes Equipment, Education, and Supplies

Benefits are provided for medical supplies, services, and equipment used in the treatment of diabetes, including diabetes self-management education programs.

Diabetes self management training is covered for an individual with insulin dependent diabetes, non-insulin dependent diabetes, or elevated blood glucose levels induced by pregnancy or another medical condition when:

- Medically Necessary;
- Ordered in writing by a Physician or a podiatrist; and
- Provided by a health care professional who is licensed, registered, or certified under state law.

For the purposes of this provision, a "health care professional" means the Physician or podiatrist ordering the training or a Provider who has obtained certification in diabetes education by the American Diabetes Association.

For information on equipment and supplies, please refer to the "Medical Supplies, Durable Medical Equipment, and Appliances" provision in this section.  For information on Prescription Drug coverage, please refer to the "Prescription Drugs" section in this Benefit Booklet.

# Diagnostic Services

Your Plan includes benefits for tests or procedures to find or check a condition when specific symptoms exist.  Tests must be ordered by a Provider and include diagnostic services ordered before a surgery or Hospital admission.  Benefits include the following services:

## Diagnostic Laboratory and Pathology Services

- Laboratory and pathology tests, such as blood tests.
- Genetic tests, when allowed.

**Diagnostic Imaging Services and Electronic Diagnostic Tests**

- X-rays / regular imaging services
- Ultrasound
- Electrocardiograms (EKG)
- Electroencephalography (EEG)
- Echocardiograms
- Hearing and vision tests for a medical condition or injury (not for screenings or preventive care)
- Tests ordered before a surgery or admission.

**Advanced Imaging Services**

Benefits are also available for advanced imaging services, which include but are not limited to:

- CT scan
- CTA scan
- Magnetic Resonance Imaging (MRI)
- Magnetic Resonance Angiography (MRA)
- Magnetic Resonance Spectroscopy (MRS)
- Nuclear Cardiology
- PET scans
- PET/CT Fusion scans
- QTC Bone Densitometry
- Diagnostic CT Colonography

The list of advanced imaging services may change as medical technologies change.

# Dialysis / Hemodialysis

See "Therapy Services" later in this section.

# Durable Medical Equipment and Medical Devices, Orthotics, Prosthetics, and Medical and Surgical Supplies

## Durable Medical Equipment and Medical Devices

Your Plan includes benefits for durable medical equipment and medical devices when the equipment meets the following criteria:

- Is meant for repeated use and is not disposable.
- Is used for a medical purpose and is of no further use when medical need ends.
- Is meant for use outside a medical Facility.
- Is only for use of the patient.
- Is made to serve a medical use.
- Is ordered by a Provider.

Benefits include purchase-only equipment and devices (e.g., crutches and customized equipment), purchase or rent-to-purchase equipment and devices (e.g., Hospital beds and wheelchairs), and continuous rental equipment and devices (e.g., oxygen concentrator, ventilator, and negative pressure wound therapy devices). Continuous rental equipment must be approved by the Claims Administrator. The Plan may limit the amount of coverage for ongoing rental of equipment. The Plan may not cover more in rental costs than the cost of simply purchasing the equipment).

Benefits include repair and replacement costs as well as supplies and equipment needed for the use of the equipment or device, for example, a battery for a powered wheelchair.

Oxygen and equipment for its administration are also Covered Services.  Benefits are also available for cochlear implants.

Your Plan includes benefits for prosthetics and durable medical equipment and medical supplies for the treatment of diabetes.  Your plan also includes benefits for breast pumps as described in the "Preventive Care" section.

## Hearing Aids

Benefits are provided for the following Medically Necessary hearing aids and related services for children 18 year of age and under:

- The initial hearing aid evaluation, fitting, dispensing and programming;
- Servicing, repairs, follow-up maintenance and adjustments;
- Ear molds and ear mold impressions;
- Auditory training; and
- Probe microphone measurements to ensure appropriate gain and output.

Coverage provides for the replacement of one hearing aid per hearing impaired ear every 48 months.

Benefits are limited.  Please see the "Schedule of Benefits" to see any Deductible, Coinsurance, Copayment or other benefit limitations that may apply.

## Orthotics

Benefits are available for certain types of orthotics (braces, boots, splints).  Covered Services include the initial purchase, fitting, and repair of a custom made rigid or semi-rigid supportive device used to support, align, prevent, or correct deformities or to improve the function of movable parts of the body, or which limits or stops motion of a weak or diseased body part.

## Prosthetics

Your Plan also includes benefits for prosthetics, which are artificial substitutes for body parts for functional or therapeutic purposes, when they are Medically Necessary for activities of daily living.

Benefits include the purchase, fitting, adjustments, repairs and replacements. Covered Services may include, but are not limited to:

- Artificial limbs and accessories;

- One pair of glasses or contact lenses used after surgical removal of the lens(es) of the eyes;

- Breast prosthesis (whether internal or external) after a mastectomy, as required by the Women's Health and Cancer Rights Act.

- Colostomy and other ostomy (surgical construction of an artificial opening) supplies directly related to ostomy care.

- Restoration prosthesis (composite facial prosthesis).

- Wigs needed after cancer treatment.

## Medical and Surgical Supplies

Your Plan includes coverage for medical and surgical supplies that serve only a medical purpose, are used once, and are purchased (not rented).  Covered supplies include syringes, needles, surgical dressings, splints, and other similar items that serve only a medical purpose.  Covered Services do not include items often stocked in the home for general use like Band-Aids, thermometers, and petroleum jelly.

## Blood and Blood Products

Your Plan also includes coverage for the administration of blood products unless they are received from a community source, such as blood donated through a blood bank.

# Emergency Care Services

## Emergency Services

If you are experiencing an Emergency please call 911 or visit the nearest Hospital for treatment.

Benefits are available in a Hospital Emergency Room for services and supplies to treat the onset of symptoms for an Emergency, which is defined below.

## Emergency (Emergency Medical Condition)

"Emergency," or "Emergency Medical Condition" means a medical or behavioral health condition of recent onset and sufficient severity, including but not limited to, severe pain, that would lead a prudent layperson, possessing an average knowledge of medicine and health, to believe that his or her condition, sickness, or injury is of such a nature that  not getting immediate medical care could result in: (a) placing the patient's mental or physical health or the health of another person in serious danger or, for a pregnant woman, placing the woman's health or the health of her unborn child in serious danger; (b) serious impairment to bodily functions; or (c) serious dysfunction of any bodily organ or part.  Such conditions include but are not limited to, chest pain, stroke, poisoning, serious breathing problems, unconsciousness, severe burns or cuts, uncontrolled bleeding, or seizures and such other acute conditions as may be determined to be Emergencies by the Claims Administrator.

## Emergency Care

"Emergency Care" means a medical or behavioral health exam done in the Emergency Department of a Hospital, and includes services routinely available in the Emergency Department to evaluate an Emergency Condition.  It includes any further medical or behavioral health exams and treatment required to stabilize the patient.

Medically Necessary services will be covered whether you get care from an In-Network or Out-of-Network Provider.  Emergency Care you get from an Out-of-Network Provider will be covered as an In-Network service, but you may have to pay the difference between the Out-of-Network Provider's charge and the Maximum Allowed Amount, as well as any applicable Coinsurance, Copayment or Deductible.

The Maximum Allowed Amount for Emergency Care from an Out-of-Network Provider will be the greatest of the following:

1. The amount negotiated with In-Network Providers for the Emergency service;
2. The amount for the Emergency service calculated using the same method the Claims Administrator generally uses to determine payments for Out-of-Network services but substituting the In-Network cost-sharing for the Out-of-Network cost-sharing provisions; or
3. The amount that would be paid under Medicare for the Emergency service.

If you are admitted to the Hospital from the Emergency Room, be sure that you or your Doctor calls the Claims Administrator as soon as possible.  The Claims Administrator will review your care to decide if a Hospital stay is needed and how many days you should stay.  See "Getting Approval for Benefits" for more details.  If you or your Doctor fails to call the Claims Administrator, you may have to pay for services that are determined to be not Medically Necessary.

Treatment you get after your condition has stabilized is not Emergency Care.  If you continue to get care from an Out-of-Network Provider, Covered Services will be covered at the Out-of-Network level unless the Claims Administrator agrees to cover them as an Authorized Service.

## Habilitative Services

Benefits also include habilitative health care services and devices that help you keep, learn or improve skills and functioning for daily living. Examples include therapy for a child who isn't walking or talking at the expected age. These services may include physical and occupational therapy, speech-language pathology and other services for people with disabilities in a variety of inpatient and/or outpatient settings.

## Home Care Services

When available in your area, benefits are available for Covered Services performed by a Home Health Care Agency or other Provider in your home.  To be eligible for benefits, you must essentially be confined to the home, as an alternative to  a Hospital stay, and be physically unable to get needed medical services on an outpatient basis.  Services must be prescribed by a Doctor and the services must be so inherently complex that they can be safely and effectively performed only by qualified, technical, or professional health staff.

Covered Services include but are not limited to:

- Intermittent skilled nursing services by an R.N. or L.P.N.
- Medical / social services
- Diagnostic services
- Nutritional guidance
- Training of the patient and/or family/caregiver
- Home health aide services. You must be receiving skilled nursing or therapy. Services must be given by appropriately trained staff working for the home health care Provider.  Other organizations may give services only when approved by the Claims Administrator, and their duties must be assigned and supervised by a professional nurse on the staff of the home health care Provider or other Provider as approved.
- Therapy Services (except for Manipulation Therapy which will not be covered when given in the home)
- Medical supplies
- Durable medical equipment

Benefits are also available for Intensive In-home Behavioral Health Services.  These do not require confinement to the home.  These services are described in the "Mental Health and Substance Abuse Services" section below.

## Home Infusion Therapy

See "Therapy Services" later in this section.

## Hospice Care

You are eligible for hospice care if your Doctor and the Hospice medical director certify that you are terminally ill and likely have less than twelve (12) months to live. You may access hospice care while participating in a clinical trial or continuing disease modifying therapy, as ordered by your treating Provider. Disease modifying therapy treats the underlying terminal illness.

The services and supplies listed below are Covered Services when given by a Hospice for the palliative care of pain and other symptoms that are part of a terminal disease.  Palliative care means care that controls pain and relieves symptoms, but is not meant to cure a terminal illness.   Covered Services include:

1. Care from an interdisciplinary team with the development and maintenance of an appropriate plan of care.
2. Short-term Inpatient Hospital care when needed in periods of crisis or as respite care.
3. Skilled nursing services, home health aide services, and homemaker services given by or under the supervision of a registered nurse.
4. Social services and counseling services from a licensed social worker.
5. Nutritional support, such as intravenous feeding and feeding tubes
6. Physical therapy, occupational therapy, speech therapy, and respiratory therapy given by a licensed therapist.
7. Pharmaceuticals, medical equipment, and supplies needed for the palliative care of your condition, including oxygen and related respiratory therapy supplies.
8. Bereavement (grief) services, including a review of the needs of the bereaved family and the development of a care plan to meet those needs, both before and after the Member's death. Bereavement services are available to surviving members of the immediate family for one year after the Member's death. Immediate family means your spouse, children, stepchildren, parents, brothers and sisters.

Your Doctor must agree to care by the Hospice and must be consulted in the development of the treatment plan. The Hospice must keep a written care plan on file and give it to the Claims Administrator upon request.

Benefits for services beyond those listed above that are given for disease modification or palliation, such as but not limited to chemotherapy and radiation therapy, are available to a Member in Hospice.  These services are covered under other parts of this Plan.

## Human Organ and Tissue Transplant (Bone Marrow / Stem Cell) Services

Your Plan includes coverage for Medically Necessary human organ and tissue transplants.  Certain transplants (e.g., cornea and kidney) are covered like any other surgery, under the regular inpatient and outpatient benefits described elsewhere in this Benefit Booklet.

This section describes benefits for certain Covered Transplant Procedures that you get during the Transplant Benefit Period.  Any Covered Services related to a Covered Transplant Procedure, received before or after the Transplant Benefit Period, are covered under the regular Inpatient and outpatient benefits described elsewhere in this Booklet.

In this section, you will see some key terms which are defined below:

## Covered Transplant Procedure

As decided by the Claims Administrator, any Medically Necessary human organ, tissue, and stem cell / bone marrow transplants and infusions including necessary acquisition procedures, mobilization, collection and storage.  It also, includes Medically Necessary myeloablative or reduced intensity preparative chemotherapy, radiation therapy, or a combination of these therapies.

## In-Network Transplant Provider

A Provider that we have chosen as a Center of Excellence and/or a Provider selected to take part as an In-Network Transplant Provider by the Blue Cross and Blue Shield Association.  The Provider has entered into a Transplant Provider Agreement to give Covered Transplant Procedures to you and take care of certain administrative duties for the transplant network.   A Provider may be an In-Network Transplant Provider for:

- Certain Covered Transplant Procedures; or
- All Covered Transplant Procedures.

## Out-of-Network Transplant Provider

Any Provider that has **NOT** been chosen as a Center of Excellence by us or has not been selected to take part as an In-Network Transplant Provider by the Blue Cross and Blue Shield Association.

## Transplant Benefit Period

At an In-Network Transplant Provider Facility, the Transplant Benefit Period starts one day before a Covered Transplant Procedure and lasts for the applicable case rate / global time period.  The number of days will vary depending on the type of transplant received and the In-Network Transplant Provider agreement.   Call the Case Manager for specific In-Network Transplant Provider details for services received at or coordinated by an In-Network Transplant Provider Facility.

At an Out-of-Network Transplant Provider Facility, the Transplant Benefit Period starts one day before a Covered Transplant Procedure and lasts until the date of discharge.

## Prior Approval and Precertification

**To maximize your benefits, you should call the Claims Administrator's Transplant Department as soon as you think you may need a transplant to talk about your benefit options.  You must do this before you have an evaluation and/or work-up for a transplant.**  They will help you maximize your benefits by giving you coverage information, including details on what is covered and if any clinical coverage guidelines, medical policies, In-Network Transplant Provider rules, or Exclusions apply.  Call the Member Services phone number on the back of your Identification Card and ask for the transplant coordinator.  Even if you are given a prior approval for the Covered Transplant Procedure, you or your Provider must call the Transplant Department for Precertification prior to the transplant whether this is performed in an Inpatient or Outpatient setting.

Precertification is required before the Plan will cover benefits for a transplant.  Your Doctor must certify, and the Claims Administrator must agree, that the transplant is Medically Necessary.  Your Doctor should send a written request for Precertification to the Claims Administrator as soon as possible to start this process.  Not getting Precertification will result in a denial of benefits.

Please note that there are cases where your Provider asks for approval for HLA testing, donor searches and/or a collection and storage of stem cells prior to the final decision as to what transplant procedure will be needed.  In these cases, the HLA testing and donor search charges are covered as routine diagnostic testing.  The collection and storage request will be reviewed for Medical Necessity and may be approved.  However, such an approval for HLA testing, donor search and/or collection and storage is NOT an approval for the later transplant.  A separate Medical Necessity decision will be needed for the transplant.

## Transportation and Lodging

The Plan will cover the cost of reasonable and necessary travel costs when you get prior approval and need to travel more than 75 miles from your permanent home to reach the Facility where the Covered Transplant Procedure will be performed.  Assistance with travel costs includes transportation to and from the Facility, and lodging for the patient and one companion.  Travel costs for the donor are generally not covered, unless the Claims Administrator makes an exception and approve them in advance of the procedure.  If the Member receiving care is a minor, then reasonable and necessary costs for transportation and lodging may be allowed for two companions.  You must send itemized receipts for transportation and lodging costs in a form satisfactory to the Claims Administrator when claims are filed. Call the Claims Administrator for complete information.

For lodging and ground transportation benefits, the Plan will cover costs up to the current limits set forth in the Internal Revenue Code.

Non-Covered Services for transportation and lodging include, but are not limited to:

1.  Child care,
2.  Mileage within the medical transplant Facility city,
3.  Rental cars, buses, taxis, or shuttle service, except as specifically approved by the Claims Administrator,
4.  Frequent Flyer miles,
5.  Coupons, Vouchers, or Travel tickets,
6.  Prepayments or deposits,
7.  Services for a condition that is not directly related, or a direct result, of the transplant,
8.  Phone calls,
9.  Laundry,
10. Postage,
11. Entertainment,
12. Travel costs for donor companion/caregiver,
13. Return visits for the donor for a treatment of an illness found during the evaluation.
14. Meals.

# Infertility Services

Please see "Maternity and Reproductive Health Services" later in this section.

# Inpatient Services

## Inpatient Hospital Care

Covered Services include acute care in a Hospital setting.

Benefits for room, board, and nursing services include:

- A room with two or more beds.
- A private room. The most the Plan will cover for a private room is the Hospital's average semi-private room rate unless it is Medically Necessary that you use a private room for isolation and no isolation facilities are available.
- A room in a special care unit approved by the Claims Administrator. The unit must have facilities, equipment, and supportive services for intensive care or critically ill patients.

- Routine nursery care for newborns during the mother's normal Hospital stay.
- Meals, special diets.
- General nursing services.

Benefits for ancillary services include:

- Operating, childbirth, and treatment rooms and equipment.
- Prescribed Drugs.
- Anesthesia, anesthesia supplies and services given by the Hospital or other Provider.
- Medical and surgical dressings and supplies, casts, and splints.
- Diagnostic services.
- Therapy services, including infusion therapy services.

## Inpatient Professional Services

Covered Services include:

1. Medical care visits.
2. Intensive medical care when your condition requires it.
3. Treatment for a health problem by a Doctor who is not your surgeon while you are in the Hospital for surgery. Benefits include treatment by two or more Doctors during one Hospital stay when the nature or severity of your health problem calls for the skill of separate Doctors.
4. A personal bedside exam by a Doctor when asked for by your Doctor. Benefits are not available for staff consultations required by the Hospital, consultations asked for by the patient, routine consultations, phone consultations, or EKG transmittals by phone.
5. Surgery and general anesthesia.
6. Newborn exam. A Doctor other than the one who delivered the child must do the exam.
7. Professional charges to interpret diagnostic tests such as imaging, pathology reports, and cardiology.

# Maternity and Reproductive Health Services

## Maternity Services

Covered Services include services needed during a normal or complicated pregnancy and for services needed for a miscarriage. Covered maternity services include:

- Professional and Facility services for childbirth in a Facility or the home including the services of an appropriately licensed nurse midwife;
- Routine nursery care for the newborn during the mother's normal Hospital stay,  including circumcision of a covered male Dependent;
- Prenatal, postnatal, and postpartum services; and
- Medically Necessary fetal screenings, which are genetic or chromosomal tests of the fetus, as allowed.

Benefits are only available to the Subscriber and the spouse.  Benefits are not available for Dependent daughters.

If you are pregnant on your Effective Date and in the first trimester of the pregnancy, you must change to an In-Network Provider to have Covered Services covered at the In-Network level. If you are pregnant on your Effective Date and in your second or third trimester of pregnancy (13 weeks or later) as of the Effective Date, benefits for obstetrical care will be available at the In-Network level even if an Out-of-Network Provider is used if you fill out a Continuation of Care Request Form and send it to the Claims Administrator.   Covered Services will include the obstetrical care given by that Provider through the end of the pregnancy and the immediate post-partum period.

46

**Important Note About Maternity Admissions:** Under federal law, the Plan may not limit benefits for any Hospital length of stay for childbirth for the mother or newborn to less than 48 hours after vaginal birth, or less than 96 hours after a cesarean section (C-section).  However, federal law as a rule does not stop the mother's or newborn's attending Provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 hours, or 96 hours, as applicable.  In any case, as provided by federal law, the Plan may not require a Provider to get authorization before prescribing a length of stay which is not more than 48 hours for a vaginal birth or 96 hours after a C-section.

## Contraceptive Benefits

Benefits include prescription oral contraceptive drugs, injectable contraceptive drugs and patches. Benefits also include contraceptive devices such as diaphragms, intra uterine devices (IUDs), and implants.  Certain contraceptives are covered under the "Preventive Care" benefit.  Please see that section for further details.

## Sterilization Services

Benefits include sterilization services and services to reverse a non-elective sterilization that resulted from an illness or injury.  Reversals of elective sterilizations are not covered. Sterilizations for women are covered under the "Preventive Care" benefit.

## Infertility Services

**Important Note:** Although this Plan offers limited coverage of certain infertility services, it does not cover all forms of infertility treatment.  Benefits do not include assisted reproductive technologies (ART) or the diagnostic tests and Prescription Drugs to support it.  Examples of ART include artificial insemination, in-vitro fertilization, zygote intrafallopian transfer (ZIFT), or gamete intrafallopian transfer (GIFT).

Covered Services include diagnostic tests to find the cause of infertility, such as diagnostic laparoscopy, endometrial biopsy, and semen analysis.  Benefits also include services to treat the underlying medical conditions that cause infertility (e.g., endometriosis, obstructed fallopian tubes, and hormone deficiency). Fertility treatments such as artificial insemination and in-vitro fertilization are not a Covered Service.

# Mental Health and Substance Abuse Services

Covered Services include the following:

- **Inpatient Services** in a Hospital or any Facility that must be covered by law.  Inpatient benefits include psychotherapy, psychological testing, electroconvulsive therapy, and detoxification or outpatient Facility, such as partial hospitalization programs and intensive outpatient programs.

- **Online Visits** when available in your area. Covered Services include a medical visit with the Doctor using the internet by a webcam, chat or voice. Online visits do not include reporting normal lab or other test results, requesting office visits, getting answers to billing, insurance coverage or payment questions, asking for referrals to doctors outside the online care panel, benefit precertification, or Doctor to Doctor discussions.

- **Residential Treatment** which is specialized 24-hour treatment in a licensed Residential Treatment Center. It offers individualized and intensive treatment and includes:

  - Observation and assessment by a physician weekly or more often,
  - Rehabilitation, therapy, and education.

- **Outpatient Services** including office visits, therapy and treatment, Partial Hospitalization/Day Treatment Programs, Intensive Outpatient Programs and Intensive In-Home Behavioral Health Services.

Examples of Providers from whom you can get Covered Services include:

- Psychiatrist,
- Psychologist,
- Neuropsychologist,
- Licensed clinical social worker (L.C.S.W.),
- Mental health clinical nurse specialist,
- Licensed marriage and family therapist (L.M.F.T.),
- Licensed professional counselor (L.P.C) or
- Any agency licensed to give these services, when they must be covered by law.

## Nutritional Counseling

Covered Services include nutritional counseling visits when referred by your Doctor as indicated in the Schedule of Benefits.

## Occupational Therapy

Please see "Therapy Services" later in this section.

## Office Visits and Doctor Services

Covered Services include:

**Office Visits** for medical care (including second surgical opinion) to examine, diagnose, and treat an illness or injury.

**Home Visits** for medical care to examine, diagnose, and treat an illness or injury. Please note that Doctor visits in the home are different than the "Home Care Services" benefit described earlier in this Benefit Booklet.

**Retail Health Clinic Care** for limited basic health care services to Members on a "walk-in" basis. These clinics are normally found in major pharmacies or retail stores. Health care services are typically given by Physician's Assistants or nurse practitioners. Services are limited to routine care and the treatment of common illnesses for adults and children.

**Walk-In Doctor's Office** for services limited to routine care and the treatment of common illnesses for adults and children. You do not have to be an existing patient or have an appointment to use a walk-in Doctor's office.

**Urgent Care** as described in the "Urgent Care Services" later in this section.

**Online Visits** when available in your area.  Covered Services include a medical visit with the Doctor using the internet by a webcam, chat or voice.  Online visits do not include reporting normal lab or other test results, requesting office visits, getting answers to billing, insurance coverage or payment questions, asking for referrals to Doctors outside the online care panel, benefit precertification, or Doctor to Doctor discussions.  For Mental Health and Substance Abuse online Visits, see the "Mental Health and Substance Abuse" section.

**Prescription Drugs Administered in the Office**

## Orthotics

See "Durable Medical Equipment (DME) and Medical Devices, Orthotics, Prosthetics, Medical and Surgical Supplies" earlier in this section.

## Outpatient Facility Services

Your Plan includes Covered Services in an:

- Outpatient Hospital,
- Freestanding Ambulatory Surgical Facility,
- Mental Health / Substance Abuse Facility, or
- Other Facilities approved by the Claims Administrator.

Benefits include Facility and related (ancillary) charges, when proper, such as:

- Surgical rooms and equipment,
- Prescription Drugs including Specialty Drugs,
- Anesthesia and anesthesia supplies and services given by the Hospital or other Facility,
- Medical and surgical dressings and supplies, casts, and splints,
- Diagnostic services,
- Therapy services.

## Physical Therapy

Please see "Therapy Services" later in this section.

## Preventive Care

Preventive care includes screenings and other services for adults and children.  All recommended preventive services will be covered as required by the Affordable Care Act (ACA) and applicable state law.  This means many preventive care services are covered with no Deductible, Copayments or Coinsurance when you use an In-Network Provider.

Certain benefits for Members who have current symptoms or a diagnosed health problem may be covered under the "Diagnostic Services" benefit instead of this benefit, if the coverage does not fall within the state or ACA-recommended preventive services.

Covered Services fall under the following broad groups:

1.  Services with an "A" or "B" rating from the United States Preventive Services Task Force.  Examples include screenings for:

    a.  Breast cancer,
    b.  Cervical cancer,
    c.  Colorectal cancer,
    d.  High blood pressure,
    e.  Type 2 Diabetes Mellitus,
    f.  Cholesterol,
    g.  Child and adult obesity.

2.  Immunizations for children, adolescents, and adults recommended by the Advisory Committee on Immunization Practices of the Centers for Disease Control and Prevention;

3.  Preventive care and screenings for infants, children and adolescents as listed in the guidelines supported by the Health Resources and Services Administration; and

4.  Preventive care and screening for women as listed in the guidelines supported by the Health Resources and Services Administration, including:

    a.  Women's contraceptives, sterilization treatments, and counseling. This includes Generic and single-source Brand Drugs as well as injectable contraceptives and patches.  Contraceptive devices such as diaphragms, intra uterine devices (IUDs), and implants are also covered. Multi-source Brand Drugs will be covered under the "Prescription Drug Benefit at a Retail or Home Delivery (Mail Order) Pharmacy".

    b.  Breastfeeding support, supplies, and counseling. Benefits for breast pumps are limited to one pump per Benefit Period.

    c.  Gestational diabetes screening.

5.  Preventive care services for tobacco cessation for members age 18 and older as recommended by the United States Preventive Services Task Force including:
    a)  Counseling
    b)  Prescription Drugs
    c)  Nicotine replacement therapy products when prescribed by a Provider, including over the counter (OTC) nicotine gum, lozenges and patches.

6.  Prescription Drugs and OTC items identified as an A or B recommendation by the United States Preventive Services Task Force when prescribed by a Provider including:
    a)  Aspirin
    b)  Folic acid supplement
    c)  Vitamin D supplement
    d)  Bowel preparations

Please note that certain age and gender and quantity limitations apply.

You may call Member Services at the number on your Identification Card for more details about these services or view the federal government's web sites, https://www.healthcare.gov/what-are-my-preventive-care-benefits, http://www.ahrq.gov, and http://www.cdc.gov/vaccines/acip/index.html.

Covered Services also include the following services required by state and federal law:

- Lead poisoning screening for children.
- Routine mammograms.
- Appropriate and necessary childhood immunizations that meet the standards approved by the U.S. public health service for such biological products against at least all of the following:
  - Diphtheria,
  - Pertussis,
  - Tetanus,
  - Polio,
  - Measles,
  - Mumps,
  - Rubella,
  - Hemophilus influenza b (Hib),
  - Hepatitis B,
  - Varicella.

(Additional immunizations will be covered per federal law, as indicated earlier in this section.)

- Routine colorectal cancer examination and related laboratory tests.
- Chlamydia screening.
- Ovarian surveillance testing.
- Pap smear.
- Prostate screening.

# Private Duty Nursing

Precertification of Medical Necessity is required from the Doctor and must be confirmed by Anthem.

**Limitations for both Inpatient and Outpatient RN and LPN**
- Covered Services rendered by an RN or LPN, whether on an Inpatient or outpatient basis, are limited to the Benefit Period maximum per Member as shown in the **Schedule of Benefits**.
- Inpatient care is covered only when [no intensive or cardiac care unit is available, and the care needed is beyond the capabilities of the Hospital's floor nurses.  Services may be performed by either an In-Network or Out-of-Network Provider.
- Covered Services do not include services when:
  - requested by, or for the convenience of, the patient or the patient's family;
  - services consist primarily of bathing, feeding, exercising, homemaking, moving the patient, giving oral medication, or acting as a companion or sitter;
  - the private duty nurse is a relative by blood or marriage or member of the household of the Member; Inpatient services could have been rendered by the Hospital's general nursing staff; or outpatient services could be safely rendered by an individual other that a RN or LPN.

# Prosthetics

See "Durable Medical Equipment (DME) and Medical Devices, Orthotics, Prosthetics, Medical and Surgical Supplies" earlier in this section.

# Pulmonary Therapy

Please see "Therapy Services" later in this section.

# Radiation Therapy

Please see "Therapy Services" later in this section.

# Rehabilitation Services

Benefits include services in a Hospital, free-standing Facility, Skilled Nursing Facility, or in an outpatient day rehabilitation program.

Covered Services involve a coordinated team approach and several types of treatment, including skilled nursing care, physical, occupational, and speech therapy, and services of a social worker or psychologist.

To be Covered Services, rehabilitation services must involve goals you can reach in a reasonable period of time.  Benefits will end when treatment is no longer Medically Necessary and you stop progressing toward those goals.

# Respiratory Therapy

Please see "Therapy Services" later in this section.

# Skilled Nursing Facility

When you require Inpatient skilled nursing and related services for convalescent and rehabilitative care, Covered Services are available if the Facility is licensed or certified under state law as a Skilled Nursing Facility.  Custodial Care is not a Covered Service.

# Smoking Cessation

Please see the "Preventive Care" section in this Benefit Booklet.

# Speech Therapy

Please see "Therapy Services" later in this section.

# Surgery

Your Plan covers surgical services on an Inpatient or outpatient basis, including office surgeries. Covered Services include:

1) Accepted operative and cutting procedures;
2) Other invasive procedures, such as angiogram, arteriogram, amniocentesis, tap or puncture of brain or spine;
3) Endoscopic exams, such as arthroscopy, bronchoscopy, colonoscopy, laparoscopy;
4) Treatment of fractures and dislocations;
5) Anesthesia and surgical support when Medically Necessary;
6) Medically Necessary pre-operative and post-operative care.

## Oral Surgery

**Important Note:** Although this Plan provides coverage for certain oral surgeries, many types of oral surgery procedures are not covered by this medical Plan.

Benefits are also limited to certain oral surgeries including:

- Treatment of medically diagnosed cleft lip, cleft palate, or ectodermal dysplasia;
- Orthognathic surgery for a physical abnormality that prevents normal function of the upper and/or lower jaw and is Medically Necessary to attain functional capacity of the affected part.
- Oral / surgical correction of accidental injuries as indicated in the "Dental Services" section.
- Treatment of non-dental lesions, such as removal of tumors and biopsies.
- Incision and drainage of infection of soft tissue not including odontogenic cysts or abscesses.
- Removal of wisdom teeth.

## Reconstructive Surgery

Benefits include reconstructive surgery performed to correct significant deformities caused by congenital or developmental abnormalities, illness, injury, or an earlier treatment in order to create a more normal appearance. Benefits include surgery performed to restore symmetry after a mastectomy. Reconstructive services needed as a result of an earlier treatment are covered only if the first treatment would have been a Covered Service under this Plan.

**Note:** This section does not apply to orthognathic surgery. See the "Oral Surgery" section above for that benefit.

**Mastectomy Notice**

A Member who is getting benefits for a mastectomy or for follow-up care for a mastectomy and who chooses breast reconstruction, will also get coverage for:

- Reconstruction of the breast on which the mastectomy has been performed;
- Surgery and reconstruction of the other breast to give a symmetrical appearance; and
- Prostheses and treatment of physical problems of all stages of mastectomy, including lymphedemas.

# Telemedicine

Your coverage also includes telemedicine services provided by a duly licensed Doctor or healthcare Provider by means of audio, video, or data communications (to include secured electronic mail).

The use of standard phone, facsimile transmissions, unsecured electronic mail, or a combination thereof does not constitute telemedicine service and is not a covered benefit.

The use of telemedicine may substitute for a face-to-face "hands on" encounter for consultation.

To be eligible for payment, interactive audio and video telecommunications must be used, permitting real-time communications between the distant Doctor or Provider and the Member / patient. As a condition of payment, the patient (Member) must be present and participating.

# Therapy Services

## Physical Medicine Therapy Services

Your Plan includes coverage for the therapy services described below. To be a Covered Service, the therapy must improve your level of function within a reasonable period of time. Covered Services include:

- **Physical therapy** – The treatment by physical means to ease pain, restore health, and to avoid disability after an illness, injury, or loss of an arm or leg. It includes hydrotherapy, heat, physical agents, bio-mechanical and neuro-physiological principles and devices. It does not include massage therapy services at spas or health clubs.

- **Speech therapy and speech-language pathology (SLP) services** – Services to identify, assess, and treat speech, language, and swallowing disorders in children and adults.  Therapy will develop or treat communication or swallowing skills to correct a speech impairment.
- **Occupational therapy** – Treatment to restore a physically disabled person's ability to do activities of daily living, such as walking, eating, drinking, dressing, using the toilet, moving from a wheelchair to bed, and bathing.  It also includes therapy for tasks needed for the person's job. Occupational therapy does not include recreational or vocational therapies, such as hobbies, arts and crafts.

- **Chiropractic / Osteopathic / Manipulation therapy** – Includes therapy to treat problems of the bones, joints, and the back.  The two therapies are similar, but chiropractic therapy focuses on the joints of the spine and the nervous system, while osteopathic therapy also focuses on the joints and surrounding muscles, tendons and ligaments.

## Early Intervention Services

### Physical, Occupational and Speech Therapy

Benefits are available for the care and treatment of congenital defects and birth abnormalities for covered children without regard to whether the condition is acute or chronic and without regard to whether the purpose of the therapy is to maintain or improve functional capacity. From the Member's birth until the Member's third (3rd) birthday, these early intervention services shall be provided only to the extent required by law. From the Member's birth until the Member's sixth (6th) birthday, benefits are allowed up to the maximum visits listed in the "Schedule of Benefits" for physical, speech and occupational therapies.

For all other Members (e.g. those six (6) and older, or who not qualify for the benefits above), benefits are provided only if the physical, speech or occupational therapy will result in a practical improvement in the level of functioning within a reasonable period of time and the physical, speech or occupational therapy must be Medically Necessary. Benefits for physical, speech or occupational are allowed up to the maximum visits listed in the "Schedule of Benefits".

## Other Therapy Services

Benefits are also available for:

- **Cardiac Rehabilitation** – Medical evaluation, training, supervised exercise, and psychosocial support to care for you after a cardiac event (heart problem).  Benefits do not include home programs, on-going conditioning, or maintenance care.
- **Chemotherapy** – Treatment of an illness by chemical or biological antineoplastic agents.  See the section "Prescription Drugs Administered by a Medical Provider" for more details.
- **Dialysis / Hemodialysis** – Services for acute renal failure and chronic (end-stage) renal disease, including hemodialysis, home intermittent peritoneal dialysis (IPD), home continuous cycling peritoneal dialysis (CCPD), and home continuous ambulatory peritoneal dialysis (CAPD).  Covered Services include dialysis / hemodialysis treatments in an outpatient dialysis / hemodialysis Facility. Covered Services also include home dialysis / hemodialysis  and training for you and the person who will help you with home self-dialysis.
- **Infusion Therapy** – Nursing, durable medical equipment and Prescription Drug services that are delivered and administered to you through an I.V. in your home. Also includes: Total Parenteral Nutrition (TPN), enteral nutrition therapy, antibiotic therapy, pain care and chemotherapy. May include injections (intra-muscular, subcutaneous, continuous subcutaneous).  See the section "Prescription Drugs Administered by a Medical Provider" for more details.
- **Pulmonary Rehabilitation** – Includes outpatient short-term respiratory care to restore your health after an illness or injury.
- **Radiation Therapy** – Treatment of an illness by x-ray, radium, or radioactive isotopes. Covered Services include treatment (teletherapy, brachytherapy and intraoperative radiation, photon or high energy particle sources), materials and supplies needed, and treatment planning.
- **Respiratory Therapy** – Includes the use of dry or moist gases in the lungs, nonpressurized inhalation treatment; intermittent positive pressure breathing treatment, air or oxygen, with or without nebulized medication, continuous positive pressure ventilation (CPAP); continuous negative pressure ventilation (CNP); chest percussion; therapeutic use of medical gases or Prescription Drugs in the form of aerosols, and equipment such as resuscitators, oxygen tents, and incentive spirometers; broncho-pulmonary drainage and breathing exercises.

## Transplant Services

See "Human Organ and Tissue Transplant" earlier in this section.

## Urgent Care Services

Often an urgent rather than an Emergency health problem exists.  An urgent health problem is an unexpected illness or injury that calls for care that cannot wait until a regularly scheduled office visit. Urgent health problems are not life threatening and do not call for the use of an Emergency Room. Urgent health problems include earache, sore throat, and fever (not above 104 degrees).

Benefits for urgent care include:

- X-ray services;
- Care for broken bones;
- Tests such as flu, urinalysis, pregnancy test, rapid strep;
- Lab services;
- Stitches for simple cuts; and
- Draining an abscess.

## Vision Services (All Members / All Ages)

Benefits include medical and surgical treatment of injuries and illnesses of the eye. Certain vision screenings required by Federal law are covered under the "Preventive Care" benefit.

Benefits do not include glasses and contact lenses except as listed in the "Prosthetics" benefit.

# Prescription Drugs Administered by a Medical Provider

Your Plan covers Prescription Drugs including Specialty Drugs that must be administered to you as part of a Doctor's visit, home care visit, or at an outpatient Facility when they are Covered Services.  This may include drugs for infusion therapy, chemotherapy, blood products, certain injectables, and any drug that must be administered by a Provider.   This section applies when a Provider orders the drug and a medical provider administers it to you in a medical setting.  Benefits for drugs that you inject or get through your Pharmacy benefits (i.e., self-administered drugs) are not covered under this section. Benefits for those drugs are described in the "Prescription Drug Benefit at a Retail or Home Delivery (Mail Order) Pharmacy" section.

Benefits for other Prescription Drugs that you get from a Retail or Mail Order Pharmacy are described in the "Prescription Drug Benefit at a Retail or Home Delivery (Mail Order) Pharmacy" section.

## Important Details About Prescription Drug Coverage

Your Plan includes certain features to determine when Prescription Drugs should be covered, which are described below.  As part of these features, your prescribing Doctor may be asked to give more details before the Claims Administrator can decide if the drug is eligible for coverage.  In order to determine if the Prescription Drug is eligible for coverage, we have established criteria.

The criteria, which are called drug edits, may include requirements regarding one or more of the following:

- Quantity, dose, and frequency of administration,

- Specific clinical criteria including, but not limited to, requirements regarding age, test result requirements, and/or presence of a specific condition or disease,

- Specific Provider qualifications including, but not limited to, REMS certification (Risk, Evaluation and Mitigation Strategies),

- Step therapy requiring one drug, drug regimen, or treatment be used prior to use of another drug or drug regimen, or treatment for safety and/or cost-effectiveness when clinically similar results may be anticipated,

- Use of a Prescription Drug List (a formulary developed by us) which is a list of FDA-approved Drugs that have been reviewed and recommended for use based on their quality and cost effectiveness.

## Covered Prescription Drugs

To be a Covered Service, Prescription Drugs must be approved by the Food and Drug Administration (FDA) and, under federal law, require a Prescription.  Prescription Drugs must be prescribed by a licensed Provider and Controlled Substances must be prescribed by a licensed Provider with an active DEA license.

Compound drugs are a Covered Service when a commercially available dosage form of a Medically Necessary medication is not available, all the ingredients of the compound drug are FDA approved as designated in the FDA's Orange Book: *Approved Drug Products with Therapeutic Equivalence Evaluations*, require a prescription to dispense, and are not essentially the same as an FDA approved product from a drug manufacturer. Non-FDA approved, non-proprietary, multisource ingredients that are vehicles essential for compound administration may be covered.

**Designated Pharmacy Provider**

Anthem in its sole discretion, may establish one or more Designated Pharmacy Provider programs which provide specific pharmacy services (including shipment of Prescription Drugs) to Members.  An In-Network Provider is not necessarily a Designated Pharmacy Provider.  To be a Designated Pharmacy Provider, the In-Network Provider must have signed a Designated Pharmacy Provider Agreement with the Claims Administrator.  You or your Provider can contact Member Services to learn which Pharmacy or Pharmacies are part of a Designated Pharmacy Provider program.

For Prescription Drugs that are shipped to you or your Provider and administered in your Provider's office, you and your Provider are required to order from a Designated Pharmacy Provider.  A Patient Care coordinator will work with you and your Provider to obtain Precertification and to assist shipment to your Provider's office.

The Claims Administrator may also require you to use a Designated Pharmacy Provider to obtain Prescription Drugs for treatment of certain clinical conditions such as Hemophilia.  The Claims Administrator reserves the right to modify the list of Prescription Drugs as well as the setting and/or level of care in which the care is provided to you.  The Claims Administrator may, from time to time, change with or without advance notice, the Designated Pharmacy Provider for a Drug, if in the Claims Administrator's discretion, such change can help provide cost effective, value based and/or quality services.

If you are required to use a Designated Pharmacy Provider and you choose not to obtain your Prescription Drug from a Designated Pharmacy Provider, you will not have coverage for that Prescription Drug.

You can get the list of the Prescription Drugs covered under this section by calling Member Services at the phone number on the back of your Identification Card or check the website at www.anthem.com.

# Prescription Drug Benefit at a Retail or Home Delivery (Mail Order) Pharmacy

Your Plan also includes benefits for Prescription Drugs you get at a Retail or Mail Order Pharmacy as outlined in the "Schedule of Benefits". The Claims Administrator uses a Pharmacy Benefits Manager (PBM) to manage these benefits. The PBM has a network of Retail Pharmacies, a Home Delivery (Mail Order) Pharmacy, and a Specialty Pharmacy. The PBM works to make sure Prescription Drugs are used properly. This includes checking that Prescription Drugs are based on recognized and appropriate doses and checking for drug interactions or pregnancy concerns.

**Please note:** Benefits for Prescription Drugs, including Specialty Drugs, which are administered to you by a medical Provider in a medical setting (e.g., doctor's office visit, home care visit, or outpatient Facility) are covered under the "Prescription Drugs Administered by a Medical Provider" benefit. Please read that section for important details.

## Prescription Drug Benefits

### Covered Prescription Drugs

To be a Covered Service, Prescription Drugs must be approved by the Food and Drug Administration (FDA) and, under federal law, require a Prescription. Prescription Drugs must be prescribed by a licensed Provider and you must get them from a licensed Pharmacy. Controlled Substances must be prescribed by a licensed Provider with an active DEA license.

Benefits are available for the following:

- Prescription Legend Drugs from either a Retail Pharmacy or the PBM's Home Delivery Pharmacy;
- Specialty Drugs;
- Self-administered drugs. These are Drugs that do not need administration or monitoring by a Provider in an office or Facility. Injectables and infused Drugs that need Provider administration and/or supervision are covered under the "Prescription Drugs Administered by a Medical Provider" benefit;
- Self-injectable insulin and supplies and equipment used to administration insulin;
- Self administered contraceptives, including oral contraceptive drugs, self-injectable contraceptive drugs, contraceptive rings, and contraceptive patches. Certain contraceptives are covered under the "Preventive Care" benefits. Please see that section for further details.
- Special food products or supplements when prescribed by a Doctor if the Claims Administrator agrees they are Medically Necessary.
- Flu Shots (including administration). These will be covered under the "Preventive Care" benefit.
- Immunizations (including administration) required by the "Preventive Care" benefit.
- Prescription Drugs that help you stop smoking or reduce your dependence on tobacco products. These Drugs will be covered under the "Preventive Care" benefit.
- FDA-approved smoking cessation products, including over the counter nicotine replacement products, when obtained with a Prescription for a Member age 18 or older. These products will be covered under the "Preventive Care" benefit.
- Compound drugs when a commercially available dosage form of a Medically Necessary medication is not available, all the ingredients of the compound drug are FDA approved as designated in the FDA's Orange Book: *Approved Drug Products with Therapeutic Equivalence Evaluations,* require a prescription to dispense, and are not essentially the same as an FDA approved product from a drug manufacturer. Non-FDA approved, non-proprietary, multisource ingredients that are vehicles essential for compound administration may be covered.

59

**Off-Label Drugs**

When prescribed to a Member with a life-threatening or chronic and disabling condition or disease, benefits are provided for the following:

- Off-label Drugs
- Medically Necessary services associated with the administration of such a drug.

An off-label drug is a drug prescribed for a use that is different from the use for which it was originally approved for marketing by the federal Food and Drug Administration.

## Where You Can Get Prescription Drugs

**In-Network Pharmacy**

You can visit one of the local Retail Pharmacies in the network.  Give the Pharmacy the prescription from your Doctor and your Identification Card and they will file your claim for you.  You will need to pay any Copayment, Coinsurance, and/or Deductible that applies when you get the drug.  If you do not have your Identification Card, the Pharmacy will charge you the full retail price of the Prescription Drug and will not be able to file the claim for you.  You will need to ask the Pharmacy for a detailed receipt and send it to the Claims Administrator with a written request for payment.

**Important Note:** If it is determined that you may be using Prescription Drugs in a harmful or abusive manner, or with harmful frequency, your selection of In-Network Pharmacies may be limited.  If this happens, the Claims Administrator may require you to select a single In-Network Pharmacy that will provide and coordinate all future pharmacy services.  Benefits will only be paid if you use the single In-Network Pharmacy.  The Claims Administrator will contact you if it is determined that use of a single In-Network Pharmacy is needed and give you options as to which In-Network Pharmacy you may use.  If you do not select one of the In-Network Pharmacies the Claims Administrator offers within 31 days, a single In-Network Pharmacy will be selected for you.  If you disagree with the Claims Administrators decision, you may ask for it to be reconsidered as outlined in the "Your Right To Appeal" section of this Booklet.

**Specialty Pharmacy**

The Claims Administrator keeps a list of Specialty Drugs that may be covered based upon clinical findings from the Pharmacy and Therapeutics (P&T) Process, and where appropriate, certain clinical economic reasons.  The list of Specialty Drugs will change from time to time.  The Claims Administrator may require you or your doctor to order certain Specialty Drugs from the PBM's Specialty Pharmacy.

When you use the PBM's Specialty Pharmacy its patient care coordinator will work with you and your Doctor to get prior authorization and to ship your Specialty Drugs to your home or your preferred address.  Your patient care coordinator will also tell you when it is time to refill your prescription.

You can get the list of covered Network Specialty Pharmacies and/or Specialty Drugs by calling Member Services at the phone number on the back of your Identification Card or check the Claims Administrator's website at www.anthem.com.

**Home Delivery Pharmacy**

The PBM also has a Home Delivery Pharmacy which lets you get certain drugs by mail if you take them on a regular basis.  You will need to contact the PBM to sign up when you first use the service.  You can mail written prescriptions from your Doctor or have your Doctor send the prescription to the Home Delivery Pharmacy.  Your Doctor may also call the Home Delivery Pharmacy.  You will need to send in any Copayments, Deductible, or Coinsurance amounts that apply when you ask for a prescription or refill.

A Maintenance Medication is a drug you take on a regular basis to treat or control a chronic illness such as heart disease, high blood pressure, epilepsy, or diabetes. If you are not sure if the Prescription Drug you are taking is a Maintenance Medication, please call Member Services at the number on the back of your Identification Card or check the Claims Administrator's website at www.anthem.com for more details.

**Out-of-Network Pharmacy**

You may also use a Pharmacy that is not in the network.  You will be charged the full retail price of the Prescription Drug and you will have to submit your claim for the Prescription Drug to the Claims Administrator.  (Out-of-Network Pharmacies won't file the claim for you.)  You can obtain a claims form from the Claims Administrator or the PBM.  You must fill in the top section of the form and ask the Out-of-

Network Pharmacy to fill in the bottom section.  If the bottom section of this form cannot be completed by the pharmacist, you must attach an itemized detailed receipt to the claim form. The receipt must show:

- Name and address of the Out-of-Network Pharmacy;
- Patient's name;
- Prescription number;
- Date the prescription was filled;
- Name of the Prescription Drug;
- Cost of the Prescription Drug;
- Quantity (amount) of each covered Prescription Drug or refill dispensed.

You must pay the amount shown in the "Schedule of Benefits".  This is based on the Maximum Allowed Amount as determined by the Claims Administrator's normal or average contracted rate with network pharmacies on or near the date of service.

## What You Pay for Prescription Drugs

### Tiers

Your share of the cost for Prescription Drugs may vary based on the tier the drug is in as outlined in the "Schedule of Benefits".

- Tier 1 Drugs have the lowest Coinsurance or Copayment.  This tier contains low cost and preferred drugs that may be Generic, single source Brand Drugs, or multi-source Brand Drugs, Biosimilars, Interchangeable Biologic Products.

- Tier 2 Drugs have a higher Coinsurance or Copayment than those in Tier 1.  This tier may contain preferred drugs that may be Generic, single source, Brand Drugs, Biosimilars, Interchangeable Biologic Products,or multi-source Brand Drugs.

- Tier 3 Drugs have a higher Coinsurance or Copayment than those in Tier 2.  This tier may contain higher cost, preferred and non-preferred drugs that may be Generic, single source Brand Drugs, Biosimilars, Interchangeable Biologic Products, or multi-source Brand Drugs.

- Tier 4 Drugs will have a higher Coinsurance or Copayment than those in Tier 3.  This tier may contain higher cost, preferred, and non-preferred Drugs that may be Generic, single source Brand Drugs, Biosimilars, Interchangeable Biologic Products or multi-source Brand Drugs.

The tiers are assigned based on clinical findings from the Pharmacy and Therapeutics (P&T) Process. The Claims Administrator retains the right, in its discretion, to decide coverage for doses and administration (i.e., oral, injection, topical, or inhaled).  The Claims Administrator may cover one form of administration instead of another, or put other forms of administration in a different tier.

You may request a copy of the covered Prescription Drug list by calling the Member Services telephone number on the back of your Identification Card or visiting our website at www.anthem.com. The covered Prescription Drug list is subject to periodic review and amendment. Inclusion of a Drug or related item on the covered Prescription Drug list is not a guarantee of coverage.

**Prescription Drug List**

The Plan follows a Prescription Drug List, (a formulary), which is a list of FDA-approved Drugs that have been reviewed and recommended for use based on their quality and cost effectiveness. Benefits may not be covered for certain Drugs if they are not on the Prescription Drug List.

The Drug List (Formulary) is developed based upon clinical findings, and where proper, the cost of the Drug relative to other Drugs in its therapeutic class or used to treat the same or similar condition. It is also based on the availability of over the counter medicines, Generic Drugs, the use of one Drug over another, and where proper, certain clinical economic reasons.

The Claims Administrator retains the right, at its discretion, to decide coverage for doses and administration methods (i.e., oral, injections, topical, or inhaled) and may cover one form of administration instead of another as Medically Necessary.

**Exception Request for a Drug not on the Prescription Drug List**

If you or your Doctor believes you need a Prescription Drug that is not on the Prescription Drug List, please have your Doctor or pharmacist get in touch with the Claims Administrator. The other Prescription Drug will be covered only if it is agreed to be Medically Necessary and appropriate over the other drugs that are on the List. The Claims Administrator will make a coverage decision within 72 hours of receiving your request. If the Claims Administrator approves the coverage of the drug, coverage of the drug will be provided for the duration of your prescription, including refills. If the Claims Administrator denies coverage of the drug, you have the right to request an external review by an Independent Review Organization (IRO). The IRO will make a coverage decision within 72 hours of receiving your request. If the IRO approves the coverage of the drug, coverage of the drug will be provided for the duration of your prescription, including refills.

You or your Doctor may also submit a request for a Prescription Drug that is not on the Prescription Drug List based on exigent circumstances. Exigent circumstances exist if you are suffering from a health condition that may seriously jeopardize your life, health, or ability to regain maximum function, or if you are undergoing a current course of treatment using a drug not covered by the Plan. The Claims Administrator will make a coverage decision within 24 hours of receiving your request. If the Claims Administrator approves the coverage of the drug, coverage of the drug will be provided for the duration of the exigency. If the Claims Administrator denies coverage of the drug, you have the right to request an external review by an IRO. The IRO will make a coverage decision within 24 hours of receiving your request. If the IRO approves the coverage of the drug, coverage of the drug will be provided for the duration of the exigency.

Coverage of a drug approved as a result of your request or your Doctor's request for an exception will only be provided if you are a Member enrolled under the Plan.

**Additional Information about the Prescription Drug Formulary**

You may request a copy of the covered Prescription Drug list (Formulary) by calling the Member Services telephone number on the back of your Identification Card or by visiting our website at www.anthem.com. The covered Prescription Drug list is subject to periodic review and amendment. Inclusion of a drug or related item on the covered Prescription Drug list is not a guarantee of coverage.

The Claims Administrator may only modify the Formulary for the following reasons:

- Additions of new drugs, including Generic Drugs, as they become available.
- Removal of drugs from the marketplace based on either FDA guidance or the manufacturer's decision.
- Re-classification of drugs from "formulary preferred" to "formulary non-preferred" or vice versa.  All drug reclassifications are overseen by an independent Physician review committee.  Changes can occur:
  - Based on new clinical studies indicating additional or new evidence that can either benefit the patient's outcome or that identifies potential harm to the patient.
  - When multiple Similar Drugs are available, such as other drugs within a specific drug class (for example anti-inflammatory drugs, anti-depressants or corticosteroid asthma inhalers);
  - When a Brand Name Drug loses its patent and Generic Drugs become available; or
  - When Brand Name Drugs become available over the counter.
  - Re-classification of drugs to non-formulary status when Therapeutic / Clinically Equivalent Drugs are available including over the counter drugs.

**Similar Drugs** mean drugs within the same drug class or type, such as insomnia drugs, oral contraceptives, seizure drugs, etc.

**Therapeutic / Clinically Equivalent Drugs** are drugs that, for the majority of Members, can be expected to produce similar therapeutic outcomes for a disease or condition.  Therapeutic / Clinically Equivalent determinations are based on industry standards and reviewed by such organizations as The Agency for Healthcare Research and Quality (AHRQ), a division of the U.S. Department of Health and Human Services.

You will be notified in writing of drugs changing to non-formulary status at least 30 days prior to the effective date of the change if you have had a prescription for the drug within the previous 12 months of coverage under this Plan.  Drugs considered for non-formulary status are only those with Therapeutic / Clinically Equivalent alternatives.

You may request a non-formulary drug using the prior authorization process described later in this section.  If your request is denied, you may file an appeal.  For information regarding the prior authorization or the appeals process, please call the Member Services number on your Identification Card.

## Additional Features of Your Prescription Drug Pharmacy Benefit

### Step Therapy

Step therapy is a process in which you may need to use one type of drug before the Plan will cover another.  The Claims Administrator checks certain Prescription Drugs to make sure that proper prescribing guidelines are followed.  These guidelines help you get high quality and cost effective Prescription Drugs. If a Doctor decides that a certain drug is needed, the prior authorization will apply.

### Day Supply and Refill Limits

Certain day supply limits apply to Prescription Drugs as listed in the "Schedule of Benefits".  In most cases, you must use a certain amount of your prescription before it can be refilled. In some cases you may be able to get an early refill.  For example, you may refill your prescription early if it is decided that you need a larger dose.  The Claims Administrator will work with the Pharmacy to decide when this should happen.

If you are going on vacation and you need more than the day supply allowed, you should ask your pharmacist to call the PBM and ask for an override for one early refill.  If you need more than one extra refill, please call Member Services at the number on the back of your Identification Card.

**Important Note**:  Prescriptions for inhalants prescribed to enable breathing in patients with asthma or other life-threatening bronchial ailments are not restricted by day supply limits and will be filled as ordered or prescribed by the treating Doctor.

**Drug Cost Share Assistance Programs**

If you participate in certain drug cost share assistance programs offered by drug manufacturers or other third parties to reduce the cost share (Copayment, Coinsurance) you pay for certain Specialty Drugs, the reduced amount you pay may be the amount applied to your Deductible and/or Out-of-Pocket Limit when the Prescription Drug is provided by an In-Network Provider.   Your eligibility to participate in such programs is dependent on the programs' applicable terms and conditions, which may be subject to change from time to time.   These programs may be discontinued at any given time upon appropriate advance notice.

# What's Not Covered

In this section you will find a review of items that are not covered by your Plan. Excluded items will not be covered even if the service, supply, or equipment is Medically Necessary. This section is only meant to be an aid to point out certain items that may be misunderstood as Covered Services. This section is not meant to be a complete list of all the items that are excluded by your Plan.

1. **Abortion** Services, supplies, Prescription Drugs, and other care provided for elective (voluntary abortions and/or fetal reduction surgery.

   This exclusion does not apply to therapeutic abortions, which are abortions performed to save the life or health of the mother, as a result of incest or rape, or as recommended by a Doctor.

2. **Acts of War, Disasters, or Nuclear Accidents** In the event of a major disaster, epidemic, war, or other event beyond the Claims Administrator's control, the Claims Administrator will make a good faith effort to give you Covered Services. The Claims Administrator will not be responsible for any delay or failure to give services due to lack of available Facilities or staff.

   Benefits will not be given for any illness or injury that is a result of war, service in the armed forces, a nuclear explosion, nuclear accident, release of nuclear energy, a riot, or civil disobedience. This exclusion does not apply to acts of terrorism.

3. **Administrative Charges**

   a) Charges for the completion of claim forms,

   b) Charges to get medical records or reports,

   c) Membership, administrative, or access fees charged by Doctors or other Providers. Examples include, but are not limited to, fees for educational brochures or calling you to give you test results.

4. **Alternative / Complementary Medicine** Services or supplies for alternative or complementary medicine. This includes, but is not limited to:

   a) Acupuncture,

   b) Holistic medicine,

   c) Homeopathic medicine,

   d) Hypnosis,

   e) Aroma therapy,

   f) Reiki therapy,

   g) Herbal, vitamin or dietary products or therapies,

   h) Naturopathy,

   i) Thermography,

   j) Orthomolecular therapy,

   k) Contact reflex analysis,

   l) Bioenergial synchronization technique (BEST),

   m) Iridology-study of the iris,

   n) Auditory integration therapy (AIT),

   o) Colonic irrigation,

   p) Magnetic innervation therapy,

   q) Electromagnetic therapy,

   r) Neurofeedback / Biofeedback.

5. **Applied Behavioral Treatment** (including, but not limited to Applied Behavior Analysis and Intensive Behavior Interventions) for all indications except as described under Autism Services in the "What's Covered" section unless otherwise required by law.

6. **Before Effective Date or After Termination Date** Charges for care you get before your Effective Date or after your coverage ends, except as written in this Plan.

7. **Certain Providers** Services you get from Providers that are not licensed by law to provide Covered Services as defined in this Booklet.  Examples include, but are not limited to, masseurs or masseuses (massage therapists), physical therapist technicians, and athletic trainers.

8. **Charges Over the Maximum Allowed Amount** Charges over the Maximum Allowed Amount for Covered Services.

9. **Charges Not Supported by Medical Records** Charges for services not described in your medical records.

10. **Clinically Equivalent Alternatives** Certain Prescription Drugs may not be covered if you could use a clinically equivalent drug, unless required by law.  "Clinically equivalent" means drugs that for most Members, will give you similar results for a disease or condition.  If you have questions about whether a certain drug is covered and which drugs fall into this group, please call the number on the back of your Identification Card, or visit our website at www.anthem.com.

    If you or your Doctor believes you need to use a different Prescription Drug, please have your Doctor or pharmacist get in touch with the Claims Administrator.  The Claims Administrator will cover the other Prescription Drug only if it agrees that it is Medically Necessary and appropriate over the clinically equivalent drug.  The Claims Administrator will review benefits for the Prescription Drug from time to time to make sure the drug is still Medically Necessary**.**

11. **Complications of/or Services Related to Non-Covered Services** Services, supplies, or treatment related to or,  for problems directly related to a service that is not covered by this Plan. Directly related means that the care took place as a direct result of the non-Covered Service and would not have taken place without the non-Covered Service.  This Exclusion does not apply to problems resulting from pregnancy.

12. **Compound Drugs** Compound Drugs unless all of the ingredients are FDA-approved as designated in the FDA's Orange Book: *Approved Drug Products with Therapeutic Equivalence Evaluations,* require a prescription to dispense, and the compound medication is not essentially the same as an FDA-approved product from a drug manufacturer. Exceptions to non-FDA approved compound ingredients may include multi-source, non-proprietary vehicles and/or pharmaceutical adjuvants.

13. **Contraceptives** Non-prescription contraceptive devices unless required by law.

14. **Cosmetic Services** Treatments, services, Prescription Drugs, equipment, or supplies given for cosmetic services.  Cosmetic services are meant to preserve, change, or improve how you look or are given for social reasons.  No benefits are available for surgery or treatments to change the texture or look of your skin or to change the size, shape or look of facial or body features (such as your nose, eyes, ears, cheeks, chin, chest or breasts).

    This Exclusion does not apply to reconstructive surgery for breast symmetry after a mastectomy, surgery to correct birth defects and birth abnormalities, or surgery to restore function of any body area that has been altered by illness or trauma.

15. **Court Ordered Testing** Court ordered testing or care unless Medically Necessary.

16. **Crime** Treatment of injury or illness that results from a crime you committed, or tried to commit.  This Exclusion does not apply if your involvement in the crime was solely the result of a medical or mental condition, or where you were the victim of a crime, including domestic violence.

17. **Custodial Care** Custodial Care, convalescent care or rest cures.  This Exclusion does not apply to Hospice services.

18. **Delivery Charges** Charges for delivery of Prescription Drugs.

19. **Dental Treatment**

Excluded dental treatment includes but is not limited to preventive care and fluoride treatments; dental x-rays, supplies, appliances and all associated expenses; and diagnosis and treatment for the teeth, jaw or gums such as:

- Removing, restoring, or replacing teeth;
- Medical care or surgery for dental problems (unless listed as a Covered Service in this Benefit Booklet);
- Services to help dental clinical outcomes.

Dental treatment for injuries that are a result of biting or chewing is also excluded, unless the chewing or biting results from a medical or mental condition.

This exclusion does not apply to services that must be covered by law.

20. **Dental Services –** Dental services not described as Covered Services in this Benefit Booklet.

21. **Drugs Contrary to Approved Medical and Professional Standards** Drugs given to you or prescribed in a way that is against approved medical and professional standards of practice.

22. **Drugs Over Quantity or Age Limits** Drugs which are over any quantity or age limits set by the Plan. Quantity limits do not apply to prescriptions for inhalants to treat asthma.

23. **Drugs Prescribed by Providers Lacking Qualifications/Registrations/Certifications** Prescription Drugs prescribed by a Provider that does not have the necessary qualifications, registrations, and/or certifications, as determined by the Claims Administrator.

24. **Drugs That Do Not Need a Prescription** Drugs that do not need a prescription by federal law (including Drugs that need a prescription by state law, but not by federal law), except for injectable insulin.

25. **Educational Services** Services or supplies for teaching, vocational, or self training purposes, including Applied Behavior Analysis (ABA), except as listed in this Benefit Booklet.

26. **Experimental or Investigational Services** Services or supplies that are found to be Experimental / Investigational. This also applies to services related to Experimental / Investigational services, whether you get them before, during, or after you get the Experimental / Investigational service or supply.

The fact that a service or supply is the only available treatment for a condition will not make it eligible for coverage if the Claims Administrator deems it to be Experimental / Investigative.

27. **Eyeglasses and Contact Lenses** Eyeglasses and contact lenses to correct your eyesight. This Exclusion does not apply to lenses needed after a covered eye surgery.

28. **Eye Exercises** Orthoptics and vision therapy.

29. **Eye Surgery** Eye surgery to fix errors of refraction, such as near-sightedness. This includes, but is not limited to, LASIK, radial keratotomy or keratomileusis, and excimer laser refractive keratectomy.

30. **Family Members** Services prescribed, ordered, referred by or given by a member of your immediate family, including your spouse, child, brother, sister, parent, in-law, or self.

31. **Foot Care** Routine foot care unless Medically Necessary. This Exclusion applies to trimming nails; cleaning and preventive foot care, including but not limited to:

a) Cleaning and soaking the feet.

b) Applying skin creams to care for skin tone.

c) Other services that are given when there is not an illness, injury or symptom involving the foot.

32. **Foot Orthotics** Foot orthotics, orthopedic shoes or footwear or support items unless used for a systemic illness affecting the lower limbs, such as severe diabetes.

33. **Foot Surgery** Surgical treatment of flat feet; subluxation of the foot; weak, strained, unstable feet; tarsalgia; metatarsalgia; hyperkeratoses.

34. **Free Care** Services you would not have to pay for if you didn't have this Plan.  This includes, but is not limited to government programs, services during a jail or prison sentence, services you get from Workers Compensation, and services from free clinics.

    If Worker's Compensation benefits are not available to you, this Exclusion does not apply.  This Exclusion will apply if you get the benefits in whole or in part.  This Exclusion also applies whether or not you claim the benefits or compensation, and whether or not you get payments from any third party.

35. **Gene Therapy** Gene therapy as well as any Drugs, procedures, health care services related to it that introduce or is related to the introduction of genetic material into a person intended to replace or correct faulty or missing genetic material.

36. **Hearing Aids** Hearing aids or exams to prescribe or fit hearing aids for Members over 18 years of age, unless listed as covered in this Benefit Booklet.  This Exclusion does not apply to cochlear implants.  This Exclusion does not apply to hearing aids to correct degenerative hearing loss.

37. **Health Club Memberships and Fitness Services** Health club memberships, workout equipment, charges from a physical fitness  or personal trainer, or any other charges for activities, equipment, or facilities used for physical fitness, even if ordered by a Doctor.  This Exclusion also applies to health spas.

38. **Home Care**

    a) Services given by registered nurses and other health workers who are not employees of or working under an approved arrangement with a home health care Provider.

    b) Food, housing, homemaker services and home delivered meals.

39. **Infertility Treatment** Testing or treatment related to infertility except for diagnostic services and procedures to correct an underlying medical condition. Infertility procedures not specified in this Benefit Booklet.

40. **Lost or Stolen Drugs** Refills of lost or stolen Drugs.

41. **Maintenance Therapy** Rehabilitative treatment given when no further gains are clear or likely to occur.  Maintenance therapy includes care that helps you keep your current level of function and prevents loss of that function, but does not result in any change for the better.  This Exclusion does not apply to "Habilitative Services" as described in the "What's Covered" section.

42. **Medical Equipment Devices and Supplies**

    a) Replacement or repair of purchased or rental equipment because of misuse, abuse, or loss/theft.

    b) Surgical supports, corsets, or articles of clothing unless needed to recover from surgery or injury.

    c) Non-Medically Necessary enhancements to standard equipment and devices.

    d) Supplies, equipment and appliances that include comfort, luxury, or convenience items or features that exceed what is Medically Necessary in your situation.  Reimbursement will be based on the Maximum Allowable Amount for a standard item that is a Covered Service, serves the same purpose, and is Medically Necessary.  Any expense that exceeds the Maximum Allowable Amount for the standard item which is a Covered Service is your responsibility.

43. **Medicare** Services for which benefits are payable under Medicare Parts A or B, or would have been payable if you had applied for Parts A or B, except, as listed in this Benefit Booklet or as required by federal law, as described in the section titled "Medicare" in the "General Provisions" section.  If you do not enroll in Medicare Part B, the Claims Administrator will calculate benefits as if you had enrolled. You should sign up for Medicare Part B as soon as possible to avoid large out of pocket costs.  If you are covered under an active group policy this may not apply to you.

44. **Missed or Cancelled Appointments** Charges for missed or cancelled appointments.

45. **Non-approved Drugs** Drugs not approved by the FDA.

46. **Non-Medically Necessary Services** Services the Claims Administrator concludes are not Medically Necessary.  This includes services that do not meet medical policy, clinical coverage, or benefit policy guidelines.

47. **Nutritional or Dietary Supplements** Nutritional and/or dietary supplements, except as described in this Benefit Booklet or that must be covered by law. This Exclusion includes, but is not limited to, nutritional formulas and dietary supplements that you can buy over the counter and those you can get without a written prescription or from a licensed pharmacist.

48. **Office Services** Office Services except those listed as Covered Services in this Booklet unless required by law.

49. **Oral Surgery** Extraction of teeth, and other oral surgeries to treat the teeth or bones and gums directly supporting the teeth, except as listed in this Benefit Booklet.

50. **Out-of-Network Care** Services from a Provider that is not in our network.  This does not apply to Emergency Care, Urgent Care, or Authorized Services.

51. **Personal Care and Convenience**

    a) Items for personal comfort, convenience, protective, or cleanliness such as air conditioners, humidifiers, water purifiers, sports helmets, raised toilet seats, and shower chairs;

    b) First aid supplies and other items kept in the home for general use (bandages, cotton-tipped applicators, thermometers, petroleum jelly, tape, non-sterile gloves, heating pads);

    c) Home workout or therapy equipment, including treadmills and home gyms;

    d) Pools, whirlpools, spas, or hydrotherapy equipment;

    e) Hypo-allergenic pillows, mattresses, or waterbeds; or

    f) Residential, auto, or place of business structural changes (ramps, lifts, elevator chairs, escalators, elevators, stair glides, emergency alert equipment, handrails).

52. **Prosthetics** Prosthetics for sports or cosmetic purposes.

53. **Residential Accommodations** Residential Accommodations to treat medical or behavioral health conditions, except when provided in a Hospital, Hospice, Skilled Nursing Facility, or Residential Treatment Center.   This Exclusion includes procedures, equipment, service, supplies or charges for the following:

    a) Domiciliary care provided in a residential institution, treatment center, halfway house, or school because a Member's own home arrangements are not available or are unsuitable, and consisting chiefly of room and board, even if therapy is included.

    b) Care provided or billed by a hotel, health resort, convalescent home, rest home, nursing home or other extended care facility home for the aged, infirmary, school infirmary, institution providing education in special environments, supervised living or halfway house, or any similar facility or institution.

    c) Services or care provided or billed by a school, Custodial Care center for the developmentally disabled, or outward bound programs, even is psychotherapy is included.

    d) Wilderness camps.

54. **Routine Physicals and Immunizations** Physical exams and immunizations required for travel, enrollment in any insurance program, as a condition of employment, for licensing, sports programs, or for other purposes, which are not required by law under the "Preventive Care" benefit.

55. **Sanctioned or Excluded Providers** Any service, Drug, Drug regimen, treatment, or supply, furnished, ordered, or prescribed by a Provider identified as an excluded individual or entity on

the U.S. Department of Health and Human Services Office of Inspector General List of Excluded Individuals/Entities (OIG List), the General Services Administration System for Award Management (GSA List), State Medicaid exclusion lists or other exclusion/sanctioned lists as published by Federal or State regulatory agencies.  This exclusion does not apply to Emergency Care.

56. **Services Received Outside of the United States** Services rendered by Providers located outside of the United States, unless the services are for Emergency Care, Urgent Care, and Emergency Ambulance.

57. **Sex Change** Services and supplies for a sex change and/or the reversal of a sex change.

58. **Sexual Dysfunction** Services or supplies for male or female sexual problems.

59. **Stand-By Charges** Stand-by charges of a Doctor or other Provider.

60. **Sterilization** Reversals of elective sterilizations are not covered. This does not apply to sterilizations for women, which will be covered under the "Preventive Care" benefit.  Please see that section for further details.

61. **Surrogate Mother Services** Services or supplies for a person not covered under this Plan for a surrogate pregnancy (including, but not limited to, the bearing of a child by another woman for an infertile couple).

62. **Temporomandibular Joint Treatment** Fixed or removable appliances which move or reposition the teeth, fillings, or prosthetics (crowns, bridges, dentures).

63. **Travel Costs** Mileage, lodging, meals, and other Member-related travel costs except as described in this Plan.

64. **Vein Treatment** Treatment of varicose veins or telangiectatic dermal veins (spider veins) by any method (including sclerotherapy or other surgeries) for cosmetic purposes.

65. **Vision Services** Vision services not described as Covered Services in this Benefit Booklet.

66. **Waived Cost-shares Out-of-Network** For any service for which you are responsible under the terms of this Plan to pay a Copayment, Coinsurance or Deductible, and the Copayment, Coinsurance or Deductible is waived by an Out-of-Network Provider.

67. **Weight Loss Programs** Programs, whether or not under medical supervision, unless listed as covered in this Benefit Booklet.

This Exclusion includes, but is not limited to, commercial weight loss programs (Weight Watchers, Jenny Craig, LA Weight Loss) and fasting programs.

68. **Weight Loss Surgery** Bariatric surgery.  This includes but is not limited to Roux-en-Y (RNY), laparoscopic gastric bypass surgery or other gastric bypass surgery (surgeries to lower stomach capacity and divert partially digested food from the duodenum to the jejunum, the section of the small intestine extending from the duodenum), or gastroplasty, (surgeries that reduce stomach size), or gastric banding procedures.

## What's Not Covered Under Your Prescription Drug Retail or Home Delivery (Mail Order) Pharmacy Benefit

In addition to the above Exclusions, certain items are not covered under the Prescription Drug Retail or Home Delivery (Mail Order) Pharmacy benefit:

1. **Administration Charges** Charges for the administration of any drug except for covered immunizations as approved.

2. **Charges Not Supported by Medical Records** Charges for pharmacy services not related to conditions, diagnoses, and/or recommended medications described in your medical records.

3. **Clinically-Equivalent Alternatives** Certain Prescription Drugs may not be covered if you could use a clinically equivalent Prescription Drug, unless required by law. "Clinically equivalent" means Prescription Drugs that for most Members, will give you similar results for a disease or condition. If you have questions about whether a certain Prescription Drug is covered and which Prescription Drugs fall into this group, please call the number on the back of your Identification Card, or visit the Claims Administrator's website at www.anthem.com.  If you or your Doctor believes you need to use a different Prescription Drug, please have your Doctor or pharmacist get in touch with the Claims Administrator. The other Prescription Drug will be covered only if it is Medically Necessary and appropriate over the clinically equivalent Prescription Drug.  Benefits for the Prescription Drug will be reviewed from time to time to make sure the Prescription Drug is still Medically Necessary.

4. **Compound Drugs** Compound Drugs unless all of the ingredients are FDA-approved as designated in the FDA's Orange Book: *Approved Drug Products with Therapeutic Equivalence Evaluations,* requires a prescription to dispense, and the compound medication is not essentially the same as an FDA-approved product from a drug manufacturer. Exceptions to non-FDA approved compound ingredients may include multi-source, non-proprietary vehicles and/or pharmaceutical adjuvants.

5. **Contrary to Approved Medical and Professional Standards** Drugs given to you or prescribed in a way that is against approved medical and professional standards of practice.

6. **Delivery Charges** Charges for delivery of Prescription Drugs.

7. **Drugs Given at the Provider's Office / Facility** Drugs you take at the time and place where you are given them or where the Prescription Order is issued.  This includes samples given by a Doctor.  This Exclusion does not apply to Prescription Drugs used with a diagnostic service, Prescription Drugs given during chemotherapy in the office as described in the "Prescription Drugs Administered by a Medical Provider" section, or Prescription Drugs  covered under the "Medical and Surgical Supplies" benefit – they are Covered Services.

8. **Drugs Not on the Prescription Drug List (a Formulary)** You can get a copy of the list by calling the Claims Administrator or visiting the website at www.anthem.com.  If you or your Doctor believes you need a certain Prescription Drug not on the list, please refer to "Prescription Drug List" in the section "Prescription Drug Benefit at a Retail or Home Delivery (Mail Order) Pharmacy" for details on requesting an exception.

9. **Drugs Over Quantity or Age Limits** Drugs which are over any quantity or age limits set by the Claims Administrator.  Quantity limits do not apply to prescriptions for inhalants to treat asthma.

10. **Drugs Over the Quantity Prescribed or Refills After One Year** Prescription Drugs in amounts over the quantity prescribed, or for any refill given more than one year after the date of the original Prescription Order.

11. **Drugs Prescribed by Providers Lacking Qualifications/Registrations/Certifications** Prescription Drugs prescribed by a Provider that does not have the necessary qualifications, registrations and/or certifications, as determined by Anthem.

12. **Drugs That Do Not Need a Prescription** Drugs that do not need a prescription by federal law (including drugs that need a prescription by state law, but not by federal law), except for injectable insulin.

13. **Family Members** Services prescribed, ordered, referred by or given by a member or your immediate family, including your spouse, child, brother, sister, parent, in-law, or self.

14. **Gene Therapy** Gene therapy as well as any drugs, procedures, health care services related to it that introduce or is related to the introduction of genetic material into a person intended to replace or correct faulty or missing genetic material.

15. **Infertility Drugs** Drugs used in assisted reproductive technology procedures to achieve conception (e.g., IVF, ZIFT, GIFT.)

16. **Items Covered as Durable Medical Equipment (DME)** Therapeutic DME, devices and supplies except peak flow meters, spacers, blood glucose monitors, and contraceptive devices.  Items not covered under the "Prescription Drug Benefit at a Retail or home Delivery (Mail Order) Pharmacy" benefit may be covered under the "Durable Medical Equipment and Medical Devices, Orthotic, Prosthetics, and Medical and Surgical Supplies" benefit.  Please see that section for details.

17. **Items Covered Under the "Allergy Services" Benefit** Allergy desensitization products or allergy serum. While not covered under the "Prescription Drug Benefit at a Home Delivery (Mail Order) Pharmacy" benefit, these items may be covered under the "Allergy Services" benefit.  Please see that section for details.

18. **Lost or Stolen Drugs** Refills of lost or stolen drugs.

19. **Non-approved Drugs** Drugs not approved by the FDA.

20. **Non-formulary Drugs** Non-formulary drugs except as described in this "Prescription Drugs Benefit at a Home Delivery (Mail Order) Pharmacy" section.

21. **Non-Medically Necessary Services** Services the Claims Administrator concludes to be not Medically Necessary.  This includes services that do not meet the Claims Administrator's medical policy, clinical coverage, or benefit policy guidelines.

22. **Nutritional or Dietary Supplements** Nutritional and/or dietary supplements, except as described in this Booklet or that must be covered by law.  This Exclusion includes, but is not limited to nutritional formulas and dietary supplements that you can buy over the counter and those you can get without a written Prescription or from a licensed pharmacist.

23. **Onychomycosis Drugs** Drugs for Onychomycosis (toenail fungus) except when allowed to treat Members who are immunocompromised or diabetic.

24. **Over the Counter Items** Drugs, devices and products, or Prescription Legend Drugs with over the counter equivalents and any drugs, devices or products that are therapeutically comparable to an over the counter drug, device, or product may not be covered even written as a Prescription. This includes Prescription Legend Drugs when any version or strength becomes available over the counter.  This Exclusion does not apply to over the counter products that must be covered as a "Preventive Care" benefit under Federal law with a Prescription.

25. **Sanctioned or Excluded Providers** Any Drug, Drug regimen, treatment, or supply that is furnished, ordered or prescribed by a Provider identified as an excluded individual or entity on the U.S. Department of Health and Human Services Office of Inspector General List of Excluded Individuals/Entities (OIG List), the General Services Administration System for Award Management (GSA List), State Medicaid exclusion lists or other exclusion/sanctioned lists as published by Federal or State regulatory agencies.

26. **Sex Change Drugs** Drugs for sex change surgery.

27. **Sexual Dysfunction Drugs** Drugs to treat sexual or erectile problems.

28. **Syringes** Hypodermic syringes except when given for use with insulin and other covered self-injectable drugs and medicine.

29. **Weight Loss Drugs** Any drug mainly used for weight loss.

# Claims Payment

This section describes how the Claims Administrator reimburses claims and what information is needed when you submit a claim.  When you receive care from an In-Network Provider, you do not need to file a claim because the In-Network Provider will do this for you.  If you receive care from an Out-of-Network Provider, you will need to make sure a claim is filed.  Many Out-of-Network Hospitals, Doctors and other Providers will still submit your claim for you, although they are not required to do so.  If you file the claim, use a claim form as described later in this section.

In order to assist you in understanding the Maximum Allowed Amount language as described below, please refer to the definition of In-Network Provider and Out-of-Network contained in the Definitions section of this Benefit Booklet.

## Maximum Allowed Amount

### General

This section describes how the Claims Administrator determines the amount of reimbursement for Covered Services.  Reimbursement for services rendered by In-Network and Out-of-network Providers is based on this/your Plan's Maximum Allowed Amount for the Covered Service that you receive.  Please see "Inter-Plan Arrangements" later in this section for additional information.

The Maximum Allowed Amount is the maximum amount of reimbursement this Plan will allow for services and supplies:

- That meet the definition of Covered Services, to the extent such services and supplies are covered under your Plan and are not excluded;
- That are Medically Necessary; and
- That are provided in accordance with all applicable preauthorization, utilization management or other requirements set forth in your plan.

You will be required to pay a portion of the Maximum Allowed Amount to the extent you have not met your Deductible or have a Copayment or Coinsurance.  In addition, when you receive Covered Services from an Out-of-network Provider, you will be responsible for paying any difference between the Maximum Allowed Amount and the Provider's actual charges.  This amount can be significant.

When you receive Covered Services from an eligible Provider, the Claims Administrator will, to the extent applicable, apply claim processing rules to the claim submitted for those Covered Services.  These rules evaluate the claim information and, among other things, determine the accuracy and appropriateness of the procedure and diagnosis codes included in the claim.   Applying these rules may affect the determination of the Maximum Allowed Amount.  The application of these rules does not mean that the Covered Services you received were not Medically Necessary.  It means the Claims Administrator has determined that the claim was submitted inconsistent with procedure coding rules and/or reimbursement policies.  For example, your Provider may have submitted the claim using several procedure codes when there is a single procedure code that includes all of the procedures that were performed.  When this occurs, the Maximum Allowed Amount will be based on the single procedure code rather than a separate Maximum Allowed Amount for each billed code.

Likewise, when multiple procedures are performed on the same day by the same Doctor or other healthcare professional, the Maximum Allowed Amounts may be reduced for those secondary and subsequent procedures because reimbursement at 100% of the Maximum Allowed Amount for those procedures would represent duplicative payment for components of the primary procedure that may be considered incidental or inclusive.

**Provider Network Status**

The Maximum Allowed Amount may vary depending upon whether the Provider is an In-Network or an Out-of-network Provider.

An In-Network Provider is a Provider who is in the managed network for this specific Plan or in a special Center of Excellence/or other closely managed specialty network.  For Covered Services performed by an In-Network Provider, the Maximum Allowed Amount for this/your Plan is the rate the Provider has agreed to accept as reimbursement for the Covered Services.  Because In-Network Providers have agreed to accept the Maximum Allowed Amount as payment in full for those Covered Services, they should not send you a bill or collect for amounts above the Maximum Allowed Amount.  However, you may receive a bill or be asked to pay all or a portion of the Maximum Allowed Amount to the extent you have not met your Deductible or have a Copayment or Coinsurance.  Please call Member Services for help in finding an In-Network Provider or visit www.anthem.com.

Providers who have not signed any contract with the Claims Administrator and are not in any of the Claims Administrator's networks are Out-of-network Providers, subject to Blue Cross Blue Shield Association rules governing claims filed by certain ancillary providers.

For Covered Services you receive from an Out-of-network Provider, the Maximum Allowed Amount for this Plan will be one of the following as determined by the Claims Administrator:

1. An amount based on the Claims Administrator Out-of-network fee schedule/rate, which the Claims Administrator has established in its' discretion, and which the Claims Administrator reserves the right to modify from time to time, after considering one or more of the following:  reimbursement amounts accepted by like/similar providers contracted with the Claims Administrator, reimbursement amounts paid by the Centers for Medicare and Medicaid Services for the same services or supplies, and other industry cost, reimbursement and utilization data; or

2. An amount based on reimbursement or cost information from the Centers for Medicare and Medicaid Services ("CMS").  When basing the Maximum Allowed Amount upon the level or method of reimbursement used by CMS, the Claims Administrator will update such information, which is unadjusted for geographic locality, no less than annually; or

3. An amount based on information provided by a third party vendor, which may reflect one or more of the following factors:  (1) the complexity or severity of treatment; (2) level of skill and experience required for the treatment; or (3) comparable Providers' fees and costs to deliver care; or

4. An amount negotiated by the Claims Administrator or a third party vendor which has been agreed to by the Provider.  This may include rates for services coordinated through case management; or

5. An amount equal to the total charges billed by the Provider, but only if such charges are <u>less than</u> the Maximum Allowed Amount calculated by using one of the methods described above.


**Important Note:  Effective <u>January 1, 2019</u>, the Claims Administrator will no longer have "Non-preferred" providers because the network supporting the indemnity product will no longer be available. The following paragraph will no longer apply:**

**Providers who are not contracted for this product, but are contracted for the Claims Administrator's indemnity product are considered Non-Preferred.   For this/your plan, the Maximum Allowed Amount for services from these Providers will be one of the five methods shown above unless the contract between the Claims Administrator and that Provider specifies a different amount.  In this case Non-Preferred Providers may not send you a bill and collect for the amount of the Non-Preferred Provider's charge that exceeds the Maximum Allowed Amount for Covered Services.**

For Covered Services rendered outside Anthem's Service Area by Out-of-Network Providers, claims may be priced using the local Blue Cross Blue Shield plan's non-participating provider fee schedule / rate or the pricing arrangements required by applicable state or federal law. In certain situations, the Maximum Allowed Amount for out of area claims may be based on billed charges, the pricing the Claims Administrator would use if the healthcare services had been obtained within the Anthem Service Area, or a special negotiated price.

Unlike In-Network Providers, Out-of-Network Providers may send you a bill and collect for the amount of the Provider's charge that exceeds the Maximum Allowed Amount. You are responsible for paying the difference between the Maximum Allowed Amount and the amount the Provider charges. This amount can be significant. Choosing an In-Network provider will likely result in lower out of pocket costs to you. Please call Member Services for help in finding an In-Network Provider or visit www.Anthem.com.

Member Services is also available to assist you in determining this/your Plan's Maximum Allowed Amount for a particular service from an Out-of-Network Provider. In order to assist you, you will need to obtain from your Provider the specific procedure code(s) and diagnosis code(s) for the services the Provider will render. You will also need to know the Provider's charges to calculate your out of pocket responsibility. Although Member Services can assist you with this pre-service information, the final Maximum Allowed Amount for your claim will be based on the actual claim submitted by the Provider.

For Prescription Drugs, the Maximum Allowed Amount is the amount determined by the Claims Administrator using Prescription Drug cost information provided by the Pharmacy Benefits Manager.

**Member Cost Share**

For certain Covered Services, you may be required to pay a part of the Maximum Allowed Amount as your cost share amount (for example, Deductible, Copayment, and/or Coinsurance).

Your cost share amount and Out-of-Pocket Limits may vary depending on whether you received services from an In-Network or Out-of-network Provider. Specifically, you may be required to pay higher cost sharing amounts or may have limits on your benefits when using Out-of-Network or Non-Preferred Providers. Please see the "Schedule of Benefits" section in this Benefit Booklet for your cost share responsibilities and limitations, or call Member Services to learn how this Plan's benefits or cost share amounts may vary by the type of Provider you use.

The Plan will not provide any reimbursement for non-covered services. You may be responsible for the total amount billed by your Provider for non-covered services, regardless of whether such services are performed by an In-Network or Out-of-Network Provider. Non-covered services include services specifically excluded from coverage by the terms of your Plan and services received after benefits have been exhausted. Benefits may be exhausted by exceeding, for example, your Lifetime Maximum, benefit caps or day/visit limits.

In some instances you may only be asked to pay the lower In-Network cost sharing amount when you use an Out-of-Network Provider. For example, if you go to an In-Network Hospital or Provider Facility and receive Covered Services from an Out-of-Network Provider such as a radiologist, anesthesiologist or pathologist who is employed by or contracted with an In-Network Hospital or Facility, you will pay the In-Network cost share amounts for those Covered Services. However, you also may be liable for the difference between the Maximum Allowed Amount and the Out-of-Network Provider's charge.

The Claims Administrator and/or our designated pharmacy benefits manager may receive discounts, rebates, or other funds from drug manufacturers, wholesalers, distributors, and/or similar vendors, which may be related to certain Prescription Drug purchases under this Booklet and which positively impact the cost effectiveness of Covered Services. These amounts are retained by the Claims Administrator. These amounts will not be applied to your Deductible, if any, or taken into account in determining your Copayment or Coinsurance.

**Authorized Services**

In some circumstances, such as where there is no In-Network Provider available for the Covered Service, the Plan may authorize the In-Network cost share amounts (Deductible, Copayment, and/or Coinsurance) to apply to a claim for a Covered Service you receive from an Out-of-Network Provider.  In such circumstance, you must contact the Claims Administrator in advance of obtaining the Covered Service.  The Plan also may authorize the In-Network cost share amounts to apply to a claim for Covered Services if you receive Emergency services from an Out-of-Network Provider and are not able to contact the Claims Administrator until after the Covered Service is rendered.  If the Plan authorizes an In-Network cost share amount to apply to a Covered Service received from an, Out-of-Network Provider, you also may still be liable for the difference between the Maximum Allowed Amount and the Out-of-Network Provider's charge.  Please contact Member Services for Authorized Services information or to request authorization.

# Claims Review

The Claims Administrator has processes to review claims before and after payment to detect fraud, waste, abuse and other inappropriate activity.  Members seeking services from Out-of-Network Providers could be balanced billed by the Out-of-Network Provider for those services that are determined to be not payable as a result of these review processes.  A claim may also be determined to be not payable due to a Provider's failure to submit medical records with the claims that are under review in these processes.

# Notice of Claim & Proof of Loss

After you get Covered Services, the Claims Administrator must receive written notice of your claim within 15 months in order for benefits to be paid.  The claim must have the information needed to determine benefits.  If the claim does not include enough information, the Claims Administrator will ask for more details and it must be sent in order for benefits to be paid, except as  required by law.  Payment of claims will be made as soon as possible following receipt of the claim, unless more time is required because of incomplete or missing information.

In certain cases, you may have some extra time to file a claim. If the Claims Administrator did not get your claim within 90 days, but it is sent in as soon as reasonably possible and within one year after the 90-day period ends (i.e., within 15 months), you may still be able to get benefits.  **However, any claims, or additional information on claims, sent in more than 15 months after you get Covered Services will be denied.**

# Claim Forms

Claim forms will usually be available from most Providers.  If forms are not available, contact your local Human Resources Department or Member Services and ask for a claim form to be sent to you.  If you do not receive the claim form, written notice of services rendered may be submitted without the claim form. The same information that would be given on the claim form must be included in the written notice of claim.  This includes:

- Name of patient.
- Patient's relationship with the Subscriber.
- Identification number.
- Date, type, and place of service.
- Your signature and the Provider's signature.

## Member's Cooperation

You will be expected to complete and submit to the Plan all such authorizations, consents, releases, assignments and other documents that may be needed in order to obtain or assure reimbursement under Medicare, Workers' Compensation or any other governmental program.  If you fail to cooperate (including if you fail to enroll under Part B of the Medicare program where Medicare is the responsible payer), you will be responsible for any charge for services.

## Payment of Benefits

The Claims Administrator may make benefit payments directly to In-Network Providers for Covered Services.  If you use an Out-of-Network Provider, however, the Claims Administrator may make benefit payments to you or the Out-of-Network Provider, at our discretion.  Payments may also be made to, and notice regarding the receipt and/or adjudication of claims sent to, an Alternate Recipient (any child of a Subscriber who is recognized, under a Qualified Medical Child Support Order (QMSCO), as having a right to enrollment under the Plan), or that person's custodial parent or designated representative.  Any benefit payments made will discharge the Plan's obligation to pay for Covered Services.  You cannot assign your right to benefits to anyone, except as required by a Qualified Medical Child Support Order as defined by ERISA or any applicable state law.

Once a Provider performs a Covered Service, the Claims Administrator will not honor a request to withhold payment of the claims submitted.

## Inter-Plan Arrangements

### Out-of-Area Services

#### Overview

Anthem has a variety of relationships with other Blue Cross and/or Blue Shield Licensees. Generally, these relationships are called "Inter-Plan Arrangements."  These Inter-Plan Arrangements work based on rules and procedures issued by the Blue Cross Blue Shield Association ("Association").  Whenever you access healthcare services outside the geographic area the Claims Administrator serves (the "Anthem Service Area"), the claim for those services may be processed through one of these Inter-Plan Arrangements. The Inter-Plan Arrangements are described below.

When you receive care outside of the Anthem Service Area, you will receive it from one of two kinds of Providers. Most Providers ("participating providers") contract with the local Blue Cross and/or Blue Shield Plan in that geographic area ("Host Blue").  Some Providers ("nonparticipating providers") don't contract with the Host Blue.  Explained below is how both kinds of Providers are paid.

#### Inter-Plan Arrangements Eligibility – Claim Types

Most claim types are eligible to be processed through Inter-Plan Arrangements, as described above. Examples of claims that are not included are Prescription Drugs that you obtain from a Pharmacy and most dental or vision benefits.

#### A. BlueCard® Program

Under the BlueCard® Program, when you receive Covered Services within the geographic area served by a Host Blue, the Claims Administrator will still fulfill our contractual obligations.  But, the Host Blue is responsible for: (a) contracting with its Providers; and (b) handling its interactions with those Providers.

When you receive Covered Services outside the Anthem Service Area and the claim is processed through the BlueCard Program, the amount you pay is calculated based on the lower of:

- The billed charges for Covered Services; or
- The negotiated price that the Host Blue makes available to the Claims Administrator.

Often, this "negotiated price" will be a simple discount that reflects an actual price that the Host Blue pays to the Provider.  Sometimes, it is an estimated price that takes into account special arrangements with that Provider.  Sometimes, such an arrangement may be an average price, based on a discount that results in expected average savings for services provided by similar types of Providers.  Estimated and average pricing arrangements may also involve types of settlements, incentive payments and/or other credits or charges.

Estimated pricing and average pricing also take into account adjustments to correct for over- or underestimation of past pricing of claims, as noted above.  However, such adjustments will not affect the price the Plan used for your claim because they will not be applied after a claim has already been paid.

**B. Special Cases: Value-Based Programs**

*BlueCard® Program*

If you receive Covered Services under a Value-Based Program inside a Host Blue's Service Area, you will not be responsible for paying any of the Provider Incentives, risk-sharing, and/or Care Coordinator Fees that are a part of such an arrangement, except when a Host Blue passes these fees to Anthem through average pricing or fee schedule adjustments.  Additional information is available upon request.

**C. Inter-Plan Programs: Federal/State Taxes/Surcharges/Fees**

Federal or state laws or regulations may require a surcharge, tax or other fee.  If applicable, the Plan will include any such surcharge, tax or other fee as part of the claim charge passed on to you.

**D. Nonparticipating Providers Outside Our Service Area**

**1.    Allowed Amounts and Member Liability Calculation**

When Covered Services are provided outside of Anthem Service Area by non-participating providers, the Plan may determine benefits and make payment based on pricing from either the Host Blue or the pricing arrangements required by applicable state or federal law.  In these situations, the amount you pay for such services as Deductible, Copayment or Coinsurance will be based on that allowed amount.  Also, you may be responsible for the difference between the amount that the non-participating provider bills and the payment the Plan will make for the Covered Services as set forth in this paragraph.  Federal or state law, as applicable, will govern payments for out-of-network Emergency services.

2.    **Exceptions**

In certain situations, the Plan may use other pricing methods, such as billed charges or the pricing we would use if the healthcare services had been obtained within the Anthem Service Area, or a special negotiated price to determine the amount the Plan will pay for services provided by nonparticipating providers.  In these situations, you may be liable for the difference between the amount that the nonparticipating provider bills and the payment the Plan makes for the Covered Services as set forth in this paragraph.

**E. Blue Cross Blue Shield Global Core® Program**

If you plan to travel outside the United States, call Member Services to find out your Blue Cross Blue Shield Global Core benefits.  Benefits for services received outside of the United States may be different from services received in the United States.

When you are traveling abroad and need medical care, you can call the Blue Cross Blue Shield Global Core Service Center any time.  They are available 24 hours a day, seven days a week.  The toll free number is 800-810-2583.  Or you can call them collect at 804-673-1177.

If you need inpatient hospital care, you or someone on your behalf, should contact us for preauthorization.  Keep in mind, if you need Emergency medical care, go to the nearest hospital.  There is no need to call before you receive care.

Please refer to the "Getting Approval for Benefits" section in this Booklet for further information.  You can learn how to get preauthorization when you need to be admitted to the hospital for Emergency or non-emergency care.

**How Claims are Paid with Blue Cross Blue Shield Global Core**

In most cases, when you arrange inpatient hospital care with Blue Cross Blue Shield Global Core, claims will be filed for you.  The only amounts that you may need to pay up front are any Copayment, Coinsurance or Deductible amounts that may apply.

You will typically need to pay for the following services up front:

- Doctors services;
- Inpatient hospital care not arranged through Blue Cross Blue Shield Global Core; and
- Outpatient services.

You will need to file a claim form for any payments made up front.

When you need Blue Cross Blue Shield Global Core claim forms you can get international claims forms in the following ways:

- Call the Blue Cross Blue Shield Global Core Service Center at the numbers above; or
- Online at www.bcbsglobalcore.com.

You will find the address for mailing the claim on the form.

## Assignment

You authorize the Claims Administrator, on behalf of the Employer, to make payments directly to Providers for Covered Services.  The Claims Administrator also reserves the right to make payments directly to you.  Payments may also be made to, and notice regarding the receipt and/or adjudication of claims, an alternate recipient, or that person's custodial parent or designated representative.  Any payments made by the Claims Administrator will discharge the Employer's obligation to pay for Covered Services.  You cannot assign your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support Order" as defined by ERISA or any applicable Federal law.

# Coordination of Benefits When Members Are Insured Under More Than One Plan

If you, your spouse, or your Dependents have duplicate coverage under another program, any other group medical expense coverage, or any local, state or governmental program (except school accident insurance coverage and Medicaid), then benefits payable under This Plan will be coordinated with the benefits payable under the other program.  This Plan's liability in coordinating will not be more than 100% of the Allowable Expense or the contracted amount.

Allowable Expense means any necessary, reasonable and customary expense at least a portion of which is covered under at least one of the programs covering the person for whom the claim is made.  The claim determination period is the Benefit Period.

Please note that several terms specific to this section are listed below.  Some of these terms have different meanings in other parts of the Benefit Booklet, e.g., Plan.  For this provision only, your plan is referred to as "This Plan" and any other insurance plan as "Plan".  In the rest of the Benefit Booklet, Plan has the meaning listed in the "Definitions" section.

**Claim Determination Period** means a Benefit Period Year.  However, it does not include any part of a year during which you have no coverage under This Plan or any part of a year before the date this COB provision or a similar provision takes effect.

**Plan** means any of the following that provides benefits or services for, or because of, medical or dental care or treatment:

- Group insurance or group-type coverage, whether insured or uninsured, that includes continuous twenty-four (24) hour coverage.  This includes prepayment, group practice, or individual practice coverage.  It also includes coverage other than school accident-type coverage.

- Coverage under a governmental Plan or coverage that is required or provided by law.  This does not include a state Plan under Medicaid (Title XIX, Grants to States for Medical Assistance Programs, of the United States Social Security Act as amended from time to time).  It also does not include any Plan whose benefits, by law, are excess to those of any private insurance program or other non-governmental program.

- "No-fault" and group or group-type "fault" automobile insurance policies or contracts.

Each contract or other arrangement for coverage under 1 or 2 above is a separate Plan. If an arrangement has two parts and these rules apply only to one of the two, each of the parts is a separate Plan.

**Primary Plan/Secondary Plan** means the "Order of Benefit Determination Rules" section states whether This Plan is a Primary Plan or Secondary Plan in relationship to another Plan covering you.  When This Plan is a Secondary Plan, its benefits are determined after those of the other Plan and may be reduced because of the other Plan's benefits.

When This Plan is a Primary Plan, its benefits are determined before those of the other Plan and without considering the other Plan's benefits.

When there are more than two Plans covering you, This Plan may be a Primary Plan in relationship to one or more other Plans and may be a Secondary Plan in relationship to a different Plan or Plans.

**This Plan** means the part of this Plan that provides benefits for health care expenses.

# Order of Benefit Determination Rules

When you have duplicate coverage, claims will be paid as follows:

- Automobile Insurance

  Medical benefits available through automobile insurance coverage will be determined before this Plan.

- Non-Dependent/Dependent

  The benefits of the program which covers the person as an Employee (other than as a Dependent) are determined before those of the program which covers the person as a Dependent.

- Dependent Child/Parents Not Separated or Divorced

  Except as stated below, when this program and another program cover the same child as a Dependent of different persons, called "parents":

  - The benefits of the program of the parent whose birthday falls earlier in a year are determined before those of the program of the parent whose birthday falls later in that year.
  - If both parents have the same birthday, the benefits of the program which covered the parent longer are determined before those of the program which covered the other parent for a shorter period of time.

    However, if the other program does not have the rule described above, but instead has a rule based on the gender of the parent, and if, as a result, the programs do not agree on the order of benefits, the rule in the other program will determine the order of benefits.

- Dependent Child/Parents Separated or Divorced

  If two or more programs cover a person as a Dependent child of divorced or separated parents, benefits for the child are determined in this order:

  - first, the program of the parent with custody of the child;
  - then, the program of the spouse of the parent with  custody of the child; and
  - finally, the program of the parent not having custody of the child.

    However, if the specific terms of a court decree state that one of the parents is responsible for the child's health care expenses, and the company obligated to pay or provide the benefits of the program of that parent has actual knowledge of those terms, the benefits of that program are determined first.  This paragraph does not apply with respect to any claim determination period or program year during which any benefits are actually paid or provided before the company has that actual knowledge.

- Joint Custody

  If the specific terms of a court decree state that the parents shall have joint custody, without stating that one of the parents is responsible for the health care expenses of the child, the programs covering the child shall follow the order of benefit determination rules outlined above for "Dependent Child/Parents not Separated or Divorced."

- Active/Inactive Employee

  The benefits of a program that covers a person as an Employee who is neither laid off nor retired (or as that Employee's Dependent) are determined before those of a program that covers that person as a laid-off or retired Employee (or as that Employee's Dependent).  If the other program does not have this rule, and if, as a result, the programs do not agree on the order of benefits, this rule is ignored.

- Longer/Shorter Length of Coverage

  If none of the above rules determine the order of benefits, the benefits of the program which covered an Employee or Member longer are determined before those of the program that covered that person for the shorter time.

## Effect on the Benefits of This Plan

This section applies when, in accordance with the Order of Benefit Determination Rules, this program is a secondary program to one or more other programs.  In that event the benefits of this program may be reduced under this section. Such other program or programs are referred to as "the other programs" below.

Reduction in this program's benefits
The benefits of this program will be reduced when the sum of:
- the benefits that would be payable for the Allowable Expenses under this program in the absence of this provision; and
- the benefits that would be payable for the Allowable Expenses under the other programs, in the absence of provisions with a purpose like that of this provision, whether or not claim is made, exceed those Allowable Expenses in a claim determination period.  In that case, the benefits of this program will be reduced so that they and the benefits payable under the other programs do not total more than those Allowable Expenses.

When the benefits of this program are reduced as described above, each benefit is reduced in proportion. It is then charged against any applicable benefit limit of this program.

## Right to Receive and Release Needed Information

Certain facts are needed to apply these rules.  The Claims Administrator has the right to decide which facts it needs.   The Claims Administrator may get needed facts from or give them to any other organization or person as necessary to coordinate benefits.  The Claims Administrator need not tell, or get the consent of, any person to do this.  Each person claiming benefits under This Plan must provide any facts needed to pay the claim.

## Facility of Payment

A payment made under another program may include an amount which should have been paid under This Plan.  If it does, the Claims Administrator may pay that amount to the organization which made that payment.  That amount will then be treated as though it were a benefit paid under this program.  This Plan will not have to pay that amount again.

## Right of Reimbursement

If the amount of the payment made by This Plan is more than it should have paid under this provision, the Claims Administrator may recover the excess from one or more of:
- the persons it has paid or for whom it has paid,
- insurance companies, or
- other organizations.

# Subrogation and Reimbursement

These provisions apply when the Plan pays benefits as a result of injuries or illnesses you sustained and you have a right to a Recovery or have received a Recovery from any source.

## Recovery

A "Recovery" includes, but is not limited to, monies received from any person or party, any person's or party's liability insurance, uninsured/underinsured motorist proceeds, worker's compensation insurance or fund, "no-fault" insurance and/or automobile medical payments coverage, whether by lawsuit, settlement or otherwise.  Regardless of how you or your representative or any agreements characterize the money you receive as a Recovery, it shall be subject to these provisions.

## Subrogation

The Plan has the right to recover payments it makes on your behalf from any party responsible for compensating you for your illnesses or injuries.  The following apply:

- The Plan has first priority from any Recovery for the full amount of benefits it has paid regardless of whether you are fully compensated, and regardless of whether the payments you receive make you whole for your losses, illnesses and/or injuries.
- You and your legal representative must do whatever is necessary to enable the Plan to exercise the Plan's rights and do nothing to prejudice those rights.
- In the event that you or your legal representative fail to do whatever is necessary to enable the Plan to exercise its subrogation rights, the Plan shall be entitled to deduct the amount the Plan paid from any future benefits under the Plan.
- The Plan has the right to take whatever legal action it sees fit against any person, party or entity to recover the benefits paid under the Plan.
- To the extent that the total assets from which a Recovery is available are insufficient to satisfy in full the Plan's subrogation claim and any claim held by you, the Plan's subrogation claim shall be first satisfied before any part of a Recovery is applied to your claim, your attorney fees, other expenses or costs.
- The Plan is not responsible for any attorney fees, attorney liens, other expenses or costs you incur without the Plan's prior written consent. The "common fund" doctrine does not apply to any funds recovered by any attorney you hire regardless of whether funds recovered are used to repay benefits paid by the Plan.

## Reimbursement

If you obtain a Recovery and the Plan has not been repaid for the benefits the Plan paid on your behalf, the Plan shall have a right to be repaid from the Recovery in the amount of the benefits paid on your behalf and the following provisions will apply:

- You must reimburse the Plan from any Recovery to the extent of benefits the Plan paid on your behalf regardless of whether the payments you receive make you whole for your losses, illnesses and/or injuries.
- Notwithstanding any allocation or designation of your Recovery (e.g., pain and suffering) made in a settlement agreement or court order, the Plan shall have a right of full recovery, in first priority, against any Recovery.  Further, the Plan's rights will not be reduced due to your negligence.
- You and your legal representative must hold in trust for the Plan the proceeds of the gross Recovery (*i.e.*, the total amount of your Recovery before attorney fees, other expenses or costs) to be paid to the Plan immediately upon your receipt of the Recovery.  You must reimburse the Plan, in first priority and without any set-off or reduction for attorney fees, other expenses or costs. The "common fund" doctrine does not apply to any funds recovered by any attorney you hire regardless of whether funds recovered are used to repay benefits paid by the Plan.
- If You fail to repay the Plan, the Plan shall be entitled to deduct any of the unsatisfied portion of the amount of benefits the Plan has paid or the amount of your Recovery whichever is less, from any future benefit under the Plan if:
  1. the amount the Plan paid on your behalf is not repaid or otherwise recovered by the Plan; or
  2. you fail to cooperate.

- In the event that you fail to disclose the amount of your settlement to the Plan, the Plan shall be entitled to deduct the amount of the Plan's lien from any future benefit under the Plan.
- The Plan shall also be entitled to recover any of the unsatisfied portions of the amount the Plan has paid or the amount of your Recovery, whichever is less, directly from the Providers to whom the Plan has made payments on your behalf. In such a circumstance, it may then be your obligation to pay the Provider the full billed amount, and the Plan will not have any obligation to pay the Provider or reimburse you.
- The Plan is entitled to reimbursement from any Recovery, in first priority, even if the Recovery does not fully satisfy the judgment, settlement or underlying claim for damages or fully compensate you or make you whole.

**Your Duties**
- You must notify the Plan promptly of how, when and where an accident or incident resulting in personal Injury or illness to you occurred and all information regarding the parties involved.
- You must cooperate with the Plan in the investigation, settlement and protection of the Plan's rights. In the event that you or your legal representative fail to do whatever is necessary to enable the Plan to exercise its subrogation or reimbursement rights, the Plan shall be entitled to deduct the amount the Plan paid from any future benefits under the Plan.
- You must not do anything to prejudice the Plan's rights.
- You must send the Plan copies of all police reports, notices or other papers received in connection with the accident or incident resulting in personal Injury or illness to you.
- You must promptly notify the Plan if you retain an attorney or if a lawsuit is filed on your behalf.

The Plan Sponsor has sole discretion to interpret the terms of the Subrogation and Reimbursement provision of this Plan in its entirety and reserves the right to make changes as it deems necessary.

If the covered person is a minor, any amount recovered by the minor, the minor's trustee, guardian, parent, or other representative, shall be subject to this provision.  Likewise, if the covered person's relatives, heirs, and/or assignees make any Recovery because of injuries sustained by the covered person, that Recovery shall be subject to this provision.

The Plan shall be secondary in coverage to any medical payments provision, no-fault automobile insurance policy or personal Injury protection policy regardless of any election made by you to the contrary.  The Plan shall also be secondary to any excess insurance policy, including, but not limited to, school and/or athletic policies.

The Plan is entitled to recover its attorney's fees and costs incurred in enforcing this provision.

85

# Member Rights and Responsibilities

As a Member you have rights and responsibilities when receiving health care.  As your health care partner, the Claims Administrator wants to make sure your rights are respected while providing your health benefits. That means giving you access to the Claims Administrator's Network health care Providers and the information you need to make the best decisions.  As a Member, you should also take an active role in your care.

**These are your rights and responsibilities:**

**You have the right to:**
- Speak freely and privately with your health care Providers about all health care options and treatment needed for your condition no matter what the cost or whether it is covered under your Plan.
- Work with your doctors to make choices about your health care.
- Be treated with respect and dignity.
- Expect us to keep your personal health information private by following our privacy policies and Federal laws.
- Get the information you need to help make sure you get the most from your Health Plan, and share your feedback. This includes information on:
  - The Claims Administrator's company and services.
  - The Claims Administrator's network of health care providers.
  - Your rights and responsibilities.
  - The rules of your health Plan.
  - The way your Health Plan works.
- Make a complaint or file an appeal about:
  - Your health Plan and
  - any care you get.
  - Any Covered Service or benefit decision that your health Plan makes.
- Say no to care, for any condition, sickness or disease, without having an effect on any care you may get in the future. This includes asking your Doctor to tell you how that may affect your health now and in the future.
- Get the most up-to-date information from a health care provider about the cause of your illness, your treatment and what may result from it.  You can ask for help if you do not understand this information.

**You have the responsibility to:**
- Read all information about your health benefits and ask for help if you have questions.
- Follow all health Plan rules and policies.
- Choose a Network Primary Care Physician, also called a PCP, if your health plan requires it.
- Treat all doctors, health care Providers and staff with respect.
- Keep all scheduled appointments. Call your health care Provider's office if you may be late or need to cancel.
- Understand your health problems as well as you can and work with your health care Providers to make a treatment plan that you all agree on.
- Inform your health care Providers if you don't understand any type of care you're getting or what they want you to do as part of your care plan.
- Follow the health care plan that you have agreed on with your health care Providers.
- Give the Claims Administrator, your doctors and other health care Providers the information needed to help you get the best possible care and all the benefits you are eligible for under your health Plan.

This may include information about other health insurance benefits you have along with your coverage with the Plan.

▪ Inform Member Services if you have any changes to your name, address or family members covered under your Plan.

**The Claims Administrator is committed to providing quality benefits and customer service to its Members. Benefits and coverage for services provided under the benefit program are governed by the Plan and not by this Member Rights and Responsibilities statement.**

**If you need more information or would like to contact the Claims Administrator, please go to anthem.com and select Customer Support > Contact us. Or call the Member Services number on your ID card.**

# Your Right To Appeal

The Plan wants your experience to be as positive as possible.  There may be times, however, when you have a complaint, problem, or question about your Plan or a service you have received.  In those cases, please contact Member Services by calling the number on the back of your Identification Card.  The Claims Administrator will try to resolve your complaint informally by talking to your Provider or reviewing your claim.  If you are not satisfied with the resolution of your complaint, you have the right to file an appeal, which is defined as follows:

For purposes of these Appeal provisions, "claim for benefits" means a request for benefits under the plan. The term includes both pre-service and post-service claims.

- A pre-service claim is a claim for benefits under the plan for which you have not received the benefit or for which you may need to obtain approval in advance.
- A post-service claim is any other claim for benefits under the plan for which you have received the service.

If your claim is denied or if your coverage is rescinded:
- You will be provided with a written notice of the denial or rescission; and
- You are entitled to a full and fair review of the denial or rescission.

The procedure the Claims Administrator will follow will satisfy the requirements for a full and fair review under applicable federal regulations.

**Notice of Adverse Benefit Determination**
If your claim is denied, the Claims Administrator's notice of the adverse benefit determination (denial) will include:
- information sufficient to identify the claim involved;
- the specific reason(s) for the denial;
- a reference to the specific plan provision(s) on which the Claims Administrator's determination is based;
- a description of any additional material or information needed to perfect your claim;
- an explanation of why the additional material or information is needed;
- a description of the plan's review procedures and the time limits that apply to them, including a statement of your right to bring a civil action under ERISA if you appeal and the claim denial is upheld;
- information about any internal rule, guideline, protocol, or other similar criterion relied upon in making the claim determination and about your right to request a copy of it free of charge, along with a discussion of the claims denial decision; and
- information about the scientific or clinical judgment for any determination based on medical necessity or experimental treatment, or about your right to request this explanation free of charge, along with a discussion of the claims denial decision.
- the availability of, and contact information for, any applicable office of health insurance consumer assistance or ombudsman who may assist you

For claims involving urgent/concurrent care:
- the Claims Administrator's notice will also include a description of the applicable urgent/concurrent review process; and
- the Claims Administrator may notify you or your authorized representative within 72 hours orally and then furnish a written notification.

**Appeals (Grievances)**

You have the right to appeal an adverse benefit determination (claim denial or rescission of coverage). You or your authorized representative must file your appeal within 180 calendar days after you are notified of the denial or rescission. You will have the opportunity to submit written comments, documents, records, and other information supporting your claim. The Claims Administrator's review of your claim will take into account all information you submit, regardless of whether it was submitted or considered in the initial benefit determination.

- The Claims Administrator shall offer a single mandatory level of appeal and an additional voluntary second level of appeal which may be a panel review, independent review, or other process consistent with the entity reviewing the appeal. The time frame allowed for the Claims Administrator to complete its review is dependent upon the type of review involved (e.g., pre-service, concurrent, post-service, urgent, etc.).

**For pre-service claims involving urgent/concurrent care**, you may obtain an expedited appeal. You or your authorized representative may request it orally or in writing. All necessary information, including the Claims Administrator's decision, can be sent between the Claims Administrator and you by telephone, facsimile or other similar method. To file an appeal for a claim involving urgent/concurrent care, you or your authorized representative must contact the Claims Administrator at the number shown on your identification card and provide at least the following information:
- the identity of the claimant;
- the date(s) of the medical service;
- the specific medical condition or symptom;
- the provider's name;
- the service or supply for which approval of benefits was sought; and
- any reasons why the appeal should be processed on a more expedited basis.

**All other requests for Appeals (Grievances)** should be submitted in writing by the *Member* or the *Member's authorized representative*, except where the acceptance of oral *Appeals (Grievances)* is otherwise required by the nature of the *appeal* (e.g., urgent care). You or your authorized representative must submit a request for review to:

Anthem, ATTN: Appeals, P.O. Box 54159, Los Angeles, CA 90054

**You must include your Member Identification Number when submitting an appeal.**

Upon request, the Claims Administrator will provide, without charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim. "Relevant" means that the document, record, or other information:
- was relied on in making the benefit determination; or
- was submitted, considered, or produced in the course of making the benefit determination; or
- demonstrates compliance with processes and safeguards to ensure that claim determinations are made in accordance with the terms of the plan, applied consistently for similarly-situated claimants; or
- is a statement of the plan's policy or guidance about the treatment or benefit relative to your diagnosis.

The Claims Administrator will also provide you, free of charge, with any new or additional evidence considered, relied upon, or generated in connection with your claim. In addition, before you receive an adverse benefit determination on review based on a new or additional rationale, the Claims Administrator will provide you, free of charge, with the rationale.

**For Out of State Appeals (Grievances)** You have to file Provider Appeals with the Host Plan. This means Providers must file Appeals with the same plan to which the claim was filed.

**How Your Appeal will be Decided**

When the Claims Administrator considers your appeal, the Claims Administrator will not rely upon the initial benefit determination or, for voluntary second-level Appeals, to the earlier appeal determination. The review will be conducted by an appropriate reviewer who did not make the initial determination and who does not work for the person who made the initial determination. A voluntary second-level review will be conducted by an appropriate reviewer who did not make the initial determination or the first-level appeal determination and who does not work for the person who made the initial determination or first-level appeal determination.

If the denial was based in whole or in part on a medical judgment, including whether the treatment is experimental, investigational, or not medically necessary, the reviewer will consult with a health care professional who has the appropriate training and experience in the medical field involved in making the judgment.  This health care professional will not be one who was consulted in making an earlier determination or who works for one who was consulted in making an earlier determination.

**Notification of the Outcome of the Appeal**

**If you appeal a claim involving urgent/concurrent care**, the Claims Administrator will notify you of the outcome of the appeal as soon as possible, but not later than 72 hours after receipt of your request for appeal.

**If you appeal any other pre-service claim**, the Claims Administrator will notify you of the outcome of the appeal within 30 days after receipt of your request for appeal.

**If you appeal a post-service claim**, the Claims Administrator will notify you of the outcome of the appeal within 60 days after receipt of your request for appeal.

**Appeal Denial**

If your appeal is denied, that denial will be considered an adverse benefit determination. The notification from the Claims Administrator will include all of the information set forth in the above section entitled "Notice of Adverse Benefit Determination."

If, after the Plan's denial, the Claims Administrator considers, relies on or generates any new or additional evidence in connection with your claim, the Claims Administrator will provide you with that new or additional evidence, free of charge. The Claims Administrator will not base its appeal decision on a new or additional rationale without first providing you (free of charge) with, and a reasonable opportunity to respond to, any such new or additional rationale. If the Claims Administrator fails to follow the Appeal procedures outlined under this section the Appeals process may be deemed exhausted. However, the Appeals process will not be deemed exhausted due to minor violations that do not cause, and are not likely to cause, prejudice or harm so long as the error was for good cause or due to matters beyond the Claims Administrator's control.

**Voluntary Second Level Appeals (Grievances)**

If you are dissatisfied with the Plan's mandatory first level appeal decision, a voluntary second level appeal may be available.   If you would like to initiate a second level appeal, please write to the address listed above.  Voluntary Appeals (Grievances) must be submitted within 60 calendar days of the denial of the first level appeal.   You are not required to complete a voluntary second level appeal prior to submitting a request for an independent External Review.

**External Review**

If the outcome of the mandatory first level appeal is adverse to you and it was based on medical judgment, you may be eligible for an independent External Review pursuant to federal law.

You must submit your request for External Review to the Claims Administrator within four (4) months of the notice of your final internal adverse determination.

A request for an External Review must be in writing unless the Claims Administrator determines that it is not reasonable to require a written statement.  You do not have to re-send the information that you submitted for internal appeal.  However, you are encouraged to submit any additional information that you think is important for review.

For pre-service claims involving urgent/concurrent care, you may proceed with an Expedited External Review without filing an internal appeal or while simultaneously pursuing an expedited appeal through the Claims Administrator's internal appeal process. You or your authorized representative may request it orally or in writing.  All necessary information, including the Claims Administrator's decision, can be sent between the Claims Administrator and you by telephone, facsimile or other similar method.  To proceed with an Expedited External Review, you or your authorized representative must contact the Claims Administrator at the number shown on your identification card and provide at least the following information:

- the identity of the claimant;
- the date(s) of the medical service;
- the specific medical condition or symptom;
- the provider's name;
- the service or supply for which approval of benefits was sought; and
- any reasons why the appeal should be processed on a more expedited basis.

All other requests for External Review should be submitted in writing unless the Claims Administrator determines that it is not reasonable to require a written statement.  Such requests should be submitted by you or your authorized representative to:

Anthem, ATTN: Appeals, P.O. Box 54159, Los Angeles, CA 90054

**You must include your Member Identification Number when submitting an appeal.**

This is not an additional step that you must take in order to fulfill your appeal procedure obligations described above. Your decision to seek External Review will not affect your rights to any other benefits under this health care plan.  There is no charge for you to initiate an independent External Review. The External Review decision is final and binding on all parties except for any relief available through applicable state laws or ERISA.

**Requirement to file an Appeal before filing a lawsuit**
No lawsuit or legal action of any kind related to a benefit decision may be filed by you in a court of law or in any other forum, unless it is commenced within three years of the Plan's final decision on the claim or other request for benefits.  If the Plan decides an appeal is untimely, the Plan's latest decision on the merits of the underlying claim or benefit request is the final decision date.  You must exhaust the Plan's internal Appeals Procedure but not including any voluntary level of appeal, before filing a lawsuit or taking other legal action of any kind against the Plan.  If your health benefit plan is sponsored by your Employer and subject to the Employee Retirement Income Security Act of 1974 (ERISA) and your appeal as described above results in an adverse benefit determination, you have a right to bring a civil action under Section 502(a) of ERISA.

**The Claims Administrator reserves the right to modify the policies, procedures and timeframes in this section upon further clarification from Department of Health and Human Services and Department of Labor.**

# Eligibility and Enrollment – Adding Members

In this section you will find information on who is eligible for coverage under this Plan and when Members can be added to your coverage.  Eligibility requirements are described in general terms below.  For more specific information, please see your Human Resources or Benefits Department.

## Who is Eligible for Coverage

### The Subscriber

To be eligible to enroll as a Subscriber, the individual must be an Employee entitled to participate in the benefit Plan.

### Dependents

To be eligible to enroll as a Dependent, you must be listed on the enrollment form completed by the Subscriber, meet all Dependent eligibility criteria established by the Plan, and be one of the following:

- The Subscriber's spouse.  For information on spousal eligibility please contact your Employer.  If spouses are not eligible under this Plan, any references to spouses in the "Eligibility and Enrollment – Adding Members" and "Termination and Continuation of Coverage" sections of this Booklet do not apply.

- The Subscriber's Domestic Partner, if Domestic Partner coverage is allowed under the Group's Plan.  Please contact the Group to determine if Domestic Partners are eligible under this Plan.  Domestic Partner, or Domestic Partnership means a person of the same or opposite sex who has signed the Domestic Partner Affidavit certifying that he or she is the Subscriber's sole Domestic Partner and has been for 12 months or more; he or she is mentally competent; he or she is not related to the Subscriber by blood closer than permitted by state law for marriage; he or she is not married to anyone else; and he or she is financially interdependent with the Subscriber.

  For purposes of this Plan, a Domestic Partner shall be treated the same as a spouse, and a Domestic Partner's child, adopted child, or child for whom a Domestic Partner has legal guardianship shall be treated the same as any other child.

  Any federal or state law that applies to a Member who is a spouse or child under this Plan shall also apply to a Domestic Partner or a Domestic Partner's child who is a Member under this Plan.  This includes but is not limited to, COBRA, FMLA, and COB.  A Domestic Partner's or a Domestic Partner's child's coverage ends on the date of dissolution of the Domestic Partnership.

  To apply for coverage as Domestic Partners, both the Subscriber and the Domestic Partner must complete and sign the Affidavit of Domestic Partnership in addition to the Enrollment Application, and must meet all criteria stated in the Affidavit.  Signatures must be witnessed and notarized by a notary public.  The Plan reserves the right to make the ultimate decision in determining eligibility of the Domestic Partner.

- The Subscriber's or the Subscriber's spouse's children, including natural children, stepchildren, newborn and legally adopted children and children who the Plan has determined are covered under a Qualified Medical Child Support Order as defined by ERISA or any applicable state law.

- Children for whom the Subscriber or the Subscriber's spouse is a legal guardian or as otherwise required by law.

All enrolled eligible children will continue to be covered until the age limit listed in the Schedule of Benefits. Coverage may be continued past the age limit in the following circumstances:

- Your Dependent children through the end of the month in which they attain age 26, legally adopted children from the date you assume legal responsibility, children for whom you assume legal guardianship and stepchildren.  Also included are your children (or children of your spouse or Domestic Partner) for whom you have legal responsibility resulting from a valid court decree.

- Children who are mentally or physically handicapped and totally dependent on you for support, regardless of age, with the exception of incapacitated children age 26 or older.  To be eligible for coverage as an incapacitated Dependent, the Dependent must have been covered under this Plan or prior creditable coverage prior to reaching age 26.  Certification of the handicap is required within 31 days of attainment of age 26.  A certification form is available from your Employer or from the Claims Administrator and may be required periodically but not more frequently than annually after the two year period following the child's attainment of the limiting age.

The Plan may require you to give proof of continued eligibility for any enrolled child.  Your failure to give this information could result in termination of a child's coverage.

To obtain coverage for children, the Plan may require you to give the Claims Administrator a copy of any legal documents awarding guardianship of such child(ren) to you.

## Types of Coverage

The types of coverage available to the Employee are indicated at the time of enrollment through the Employer.

# When You Can Enroll

### Initial Enrollment

Your Employer will offer an initial enrollment period to new Subscribers and their Dependents when the Subscriber is first eligible for coverage.  Coverage will be effective based on any applicable waiting period, and will not exceed 90 days.

If you did not enroll yourself and/or your Dependents during the initial enrollment period you will only be able to enroll during an Open Enrollment period or during a Special Enrollment period, as described in this section.

### Open Enrollment

Open Enrollment refers to a period of time, usually 60 days, during which eligible Subscribers and Dependents can apply for or change coverage.  Open Enrollment occurs only once per year.  Your Employer will notify you when Open Enrollment is available.

### Special Enrollment Periods

If a Subscriber or Dependent does not apply for coverage when they were first eligible, they may be able to join the Plan prior to Open Enrollment if they qualify for Special Enrollment.  Except as noted otherwise below, the Subscriber or Dependent must request Special Enrollment within 60 days of a qualifying event.

Special Enrollment is available for eligible individuals who:

- Lost eligibility under a prior health plan for reasons other than non-payment of premium or due to fraud or intentional misrepresentation of a material fact.
- Exhausted COBRA benefits or Employer contributions toward coverage were terminated.
- Lost employer contributions towards the cost of the other coverage.
- Are now eligible for coverage due to marriage, birth, adoption, or placement for adoption.

**Important Notes about Special Enrollment:**

- Members who enroll during Special Enrollment are **not** considered Late Enrollees.
- Individuals must request coverage within 31 days of a qualifying event (i.e., marriage, exhaustion of COBRA, etc.).

## Medicaid and Children's Health Insurance Program Special Enrollment

Eligible Subscribers and Dependents may also enroll under two additional circumstances:

- The Subscriber's or Dependent's Medicaid or Children's Health Insurance Program (CHIP) coverage is terminated as a result of loss of eligibility; or
- The Subscriber or Dependent becomes eligible for a subsidy (state premium assistance program)

The Subscriber or Dependent must request Special Enrollment within 60 days of the above events.

## Late Enrollees

If the Subscriber does not enroll themselves and/or their Dependents when first eligible or during a Special Enrollment period, they will not be eligible to enroll until the next Open Enrollment Period.

## Members Covered Under the Employer's Prior Plan

Members who were previously enrolled under another plan offered by the Employer that is being replaced by this Plan are eligible for coverage on the Effective Date of this coverage.

# Enrolling Dependent Children

## Newborn Children

Newborn children are covered automatically for 31 days from the moment of birth.  You must notify us of the birth within 60 days or the newborn's coverage will terminate.  If you have Family Coverage, no additional premium is required.

You should submit an application / change form to the Group to add the newborn to your Plan to make sure we have accurate records and are able to cover your claims.

## Adopted Children

A child will be considered adopted from the earlier of: (1) the moment of placement in your home; or (2) the date of an entry of an order granting custody of the child to you.  The child will continue to be considered adopted unless the child is removed from your home prior to issuance of a legal decree of adoption.

Your Dependent's Effective Date will be the date of the adoption or placement for adoption if you send the Plan the completed application / change form within 31 days of the event.  If, however, additional premium is required for the adopted Dependent, your Dependent's Effective Date will be the date of the adoption or placement for adoption, only if you notify the Plan of the adoption and pay any required additional premium within 31 days of the adoption.

## Adding a Child due to Award of Legal Custody or Guardianship

If you or your spouse is awarded legal custody or guardianship for a child, an application must be submitted within 31 days of the date legal custody or guardianship is awarded by the court.  Coverage will be effective on the date the court granted legal custody or guardianship.

## Qualified Medical Child Support Order

If you are required by a qualified medical child support order or court order, as defined by ERISA and/or applicable state or federal law, to enroll your child in this Plan, the Claims Administrator will permit the child to enroll at any time without regard to any Open Enrollment limits and will provide the benefits of this Plan in accordance to the applicable requirements of such order.  However, a child's coverage will not extend beyond any Dependent Age Limit listed in the "Schedule of Benefits".

# Updating Coverage and/or Removing Dependents

You are required to notify the Plan Administrator of any changes that affect your eligibility or the eligibility of your Dependents for this Plan.  When any of the following occurs, contact the Plan Administrator and complete the appropriate forms:

- Changes in address;
- Marriage or divorce;
- Death of an enrolled family member (a different type of coverage may be necessary);
- Enrollment in another health plan or in Medicare;
- Eligibility for Medicare;
- Dependent child reaching the Dependent Age Limit (see "Termination and Continuation of Coverage");
- Enrolled Dependent child either becomes totally or permanently disabled, or is no longer disabled.

Failure to notify the Plan Administrator of individuals no longer eligible for services will not obligate the Plan to cover such services, even if premium is received for those individuals.  All notifications must be in writing and on approved forms.

# Nondiscrimination

No person who is eligible to enroll will be refused enrollment based on health status, health care needs, genetic information, previous medical information, disability, sexual orientation or identity, gender, or age.

# Statements and Forms

All Members must complete and submit applications or other forms or statements that the Plan may reasonably request.

Any rights to benefits under this Plan are subject to the condition that all such information is true, correct, and complete.  Any material misrepresentation by you may result in termination of coverage as provided in the "Termination and Continuation of Coverage" section.  The Plan will not use a statement made by you to void your coverage after that coverage has been in effect for two years.  This does not apply, however, to fraudulent misstatements.

# Termination and Continuation of Coverage

## Termination of Coverage (Individual)

Membership for you and your enrolled family members may be continued as long as you are employed by the Employer and meet eligibility requirements.  It ceases if your employment ends, if you no longer meet eligibility requirements, if the Plan ceases, or if you fail to make any required contribution toward the cost of your coverage.  In any case, your coverage would end at the expiration of the period covered by your last contribution.

Coverage of an enrolled child ceases automatically at the end of the month when the child attains the age limit shown in the Eligibility section.  Coverage of a disabled child over age 26 ceases if the child is found to be no longer totally or permanently disabled.

Should you or any family Members be receiving covered care in the Hospital at the time your membership terminates for reasons other than your Employer's cancellation of this Plan, or failure to pay the required premiums, benefits for Hospital Inpatient care will be provided until the date you are discharged from the Hospital.

## Continuation of Coverage Under Federal Law (COBRA)

If your coverage ends under the Plan, you may be entitled to elect continuation coverage in accordance with federal law. If your Employer normally employs 20 or more people, and your employment is terminated for any reason other than gross misconduct you may elect from 18-36 months of continuation benefits. you should contact your Employer if you have any questions about your COBRA rights.

### Qualifying events for Continuation Coverage under Federal Law (COBRA)

COBRA continuation coverage is available when your group coverage would otherwise end because of certain "qualifying events".  After a qualifying event, COBRA continuation coverage must be offered to each person who is a "qualified beneficiary".  You, your Spouse and your Dependent children could become qualified beneficiaries if covered on the day before the qualifying event and group coverage would be lost because of the qualifying event.  Qualified beneficiaries who elect COBRA must pay for this COBRA continuation coverage.

This benefit entitles each member of your family who is enrolled in the company's Employee welfare benefit plan to elect continuation independently.  Each qualified beneficiary has the right to make independent benefit elections at the time of annual enrollment.  Covered Subscribers may elect COBRA continuation coverage on behalf of their Spouses, and parents or legal guardians may elect COBRA continuation coverage on behalf of their children.  A child born to, or placed for adoption with, a covered Subscriber during the period of continuation coverage is also eligible for election of continuation coverage.

| Qualifying Event | Length of Availability of Coverage |
| --- | --- |
| **For Employees:**<br>Voluntary or Involuntary Termination (other than gross misconduct) or Loss of Coverage Under an Employer's Health Plan Due to Reduction In Hours Worked | 18 months |

| Qualifying Event | Length of Availability of Coverage |
|---|---|
| **For Spouses/ Dependents:**<br>A Covered Employee's Voluntary or Involuntary Termination (other than gross misconduct) or Loss of Coverage Under an Employer's Health Plan Due to Reduction In Hours Worked | 18 months |
| Covered Employee's Entitlement to Medicare | 36 months |
| Divorce or Legal Separation | 36 months |
| Death of a Covered Employee | 36 months |
| **For Dependents:**<br>Loss of Dependent Child Status | 36 months |

Continuation coverage stops before the end of the maximum continuation period if the Member becomes entitled to Medicare benefits. If a continuing beneficiary becomes entitled to Medicare benefits, then a qualified beneficiary – other than the Medicare beneficiary – is entitled to continuation coverage for no more than a total of 36 months. (For example, if you become entitled to Medicare prior to termination of employment or reduction in hours, COBRA continuation coverage for your Spouse and children can last up to 36 months after the date of Medicare entitlement.)

If you are a retiree under this Plan, filing a proceeding in bankruptcy under Title 11 of the United States Code may be a qualifying event. If a proceeding in bankruptcy is filed with respect to your Employer, and that bankruptcy results in the loss of coverage, you will become a qualified beneficiary with respect to the bankruptcy. Your surviving Spouse and Dependent children will also become qualified beneficiaries if bankruptcy results in the loss of their coverage under this Plan. If COBRA coverage becomes available to a retiree and his or her covered family members as a result of a bankruptcy filing, the retiree may continue coverage for life. His or her Spouse and Dependents may continue coverage for a maximum period of up to 36 months following the date of the retiree's death.

## Second qualifying event

If your family has another qualifying event (such as a legal separation, divorce, etc.) during the initial 18 months of COBRA continuation coverage, your Dependents can receive up to 18 additional months of COBRA continuation coverage, for a maximum of 36 months from the original qualifying event. Such additional coverage is only available if the second qualifying event would have caused your Dependents to lose coverage under the Plan had the first qualifying event not occurred. A qualified beneficiary must give timely notice to the Plan Administrator in such a situation.

## Notification Requirements

In the event of your termination, lay-off, reduction in work hours or Medicare entitlement, your Employer must notify the company's benefit Plan Administrator within 30 days. You must notify the company's benefit Plan Administrator within 60 days of your divorce, legal separation or the failure of your enrolled Dependents to meet the program's definition of Dependent. This notice must be provided in writing to the Plan Administrator. Thereafter, the Plan Administrator will notify qualified beneficiaries of their rights within 14 days.

**Electing COBRA Continuation Coverage**

To continue enrollment, you or an eligible family member must make an election within 60 days of the date your coverage would otherwise end, or the date the company's benefit Plan Administrator notifies you or your family member of this right, whichever is later.  You must pay the total premium appropriate for the type of benefit coverage you choose to continue.  If the premium rate changes for active associates, your monthly premium will also change.  The premium you must pay cannot be more than 102% of the premium charged for Employees with similar coverage, and it must be paid to the company's benefit Plan Administrator within 30 days of the date due, except that the initial premium payment must be made before 45 days after the initial election for continuation coverage, or your continuation rights will be forfeited.

## Disability extension of 18-month period of continuation coverage

For Employees who are determined, at the time of the qualifying event, to be disabled under Title II (OASDI) or Title XVI (SSI) of the Social Security Act, and Employees who become disabled during the first 60 days of COBRA continuation coverage, coverage may continue from 18 to 29 months.  These Employees' Dependents are also eligible for the 18 to 29-month disability extension.  (This provision also applies if any covered family member is found to be disabled.)  This provision would only apply if the qualified beneficiary provides notice of disability status within 60 days of the disabling determination.  In these cases, the Employer can charge 150% of premium for months 19 through 29.  This would allow health coverage to be provided in the period between the end of 18 months and the time that Medicare begins coverage for the disabled at 29 months. (If a qualified beneficiary is determined by the Social Security Administration to no longer be disabled, such qualified beneficiary must notify the Plan Administrator of that fact in writing within 30 days after the Social Security Administration's determination.)

## Trade Adjustment Act Eligible Individual

If you don't initially elect COBRA coverage and later become eligible for trade adjustment assistance under the U.S. Trade Act of 1974 due to the same event which caused you to be eligible initially for COBRA coverage under this Plan, you will be entitled to another 60-day period in which to elect COBRA coverage.  This second 60-day period will commence on the first day of the month on which you become eligible for trade adjustment assistance. COBRA coverage elected during this second election period will be effective on the first day of the election period.

## When COBRA Coverage Ends

COBRA benefits are available without proof of insurability and coverage will end on the earliest of the following:

- A covered individual reaches the end of the maximum coverage period;
- A covered individual fails to pay a required premium on time;
- A covered individual becomes covered under any other group health plan after electing COBRA;
- A covered individual becomes entitled to Medicare after electing COBRA; or
- The Group terminates all of its group welfare benefit plans.

## Other Coverage Options Besides COBRA Continuation Coverage

Instead of enrolling in COBRA continuation coverage, there may be other coverage options for you and your family through the Health Insurance Marketplace, Medicaid, or other group health plan coverage options (such as a spouse's plan) through what is called a "special enrollment period.  Some of these options may cost less than COBRA continuation coverage.  You can learn more about many of these options at www.healthcare.gov.

## Continuation of Coverage Due To Military Service

Under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), the Member may have a right to continuation of benefits subject to the conditions described below.

Under USERRA, if the Employee (or his or her Dependents) is covered under this Plan, and if the Employee becomes absent from employment by reason of military leave, the Employee (or his or her Dependents) may have the right to elect to continue health coverage under the plan.  In order to be eligible for coverage during the period that the Employee is gone on military leave, the Employee must give reasonable notice to the Employer of his or her military leave and the Employee will be entitled to COBRA-like rights with respect to his or her medical benefits in that the Employee and his or her Dependents can elect to continue coverage under the plan for a period of 24 months from the date the military leave commences or, if sooner, the period ending on the day after the deadline for the Employee to apply for or return to work with the Employer.  During military leave the Employee is required to pay the Employer for the entire cost of such coverage, including any elected Dependents' coverage.  However, if the Employee's absence is less than 31 days, the Employer must continue to pay its portion of the premiums and the Employee is only required to pay his or her share of the premiums without the COBRA-type 2% administrative surcharge.

Also, when the Employee returns to work, if the Employee meets the requirements specified below, USERRA states that the Employer must waive any exclusions and waiting periods, even if the Employee did not elect COBRA continuation.  These requirements are (i) the Employee gave reasonable notice to his or her Employer of military leave, (ii) the military leave cannot exceed a prescribed period (which is generally five (5) years, except in unusual or extraordinary circumstances) and the Employee must have received no less than an honorable discharge (or, in the case of an officer, not been sentenced to a correctional institution), and (iii) the Employee must apply for reemployment or return to work in a timely manner upon expiration of the military leave (ranging from a single day up to 90 days, depending upon the period that he or she was gone).  The Employee may also have to provide documentation to the Employer upon reemployment that would confirm eligibility.  This protection applies to the Employee upon reemployment, as well as to any Dependent who has become covered under the Plan by reason of the Employee's reinstatement of coverage.

## Family and Medical Leave Act of 1993

An Employee may continue membership in the Plan as provided by the Family and Medical Leave Act. An Employee who has been employed at least one year, within the previous 12 months is eligible to choose to continue coverage for up to 12 weeks of unpaid leave for the following reasons:

- The birth of the Employee's child.
- The placement of a child with the Employee for the purpose of adoption or foster care.
- To care for a seriously ill Spouse, child or parent.
- A serious health condition rendering the Employee unable to perform his or her job.

If the Employee chooses to continue coverage during the leave, the Employee will be given the same health care benefits that would have been provided if the Employee were working, with the same premium contribution ratio. If the Employee's premium for continued membership in the Plan is more than 30 days late, the *Employer* will send written notice to the Employee. It will tell the Employee that his or her membership will be terminated and what the date of the termination will be if payment is not received by that date. This notice will be mailed at least 15 days before the termination date.

If membership in the Plan is discontinued for non-payment of premium, the Employee's coverage will be restored to the same level of benefits as those the Employee would have had if the leave had not been taken and the premium payment(s) had not been missed. This includes coverage for eligible dependents. The Employee will not be required to meet any qualification requirements imposed by the Plan when he or she returns to work. This includes: new or additional waiting periods; waiting for an open enrollment period; or passing a medical exam to reinstate coverage.

Please contact your Human Resources Department for state specific Family and Medical Leave Act information.

## For More Information

This notice does not fully describe the continuation coverage or other rights under the Plan.  More information about continuation coverage and your rights under this Plan is available from the Plan Administrator.

If you have any questions concerning the information in this notice or your rights to coverage, you should contact your Employer.

For more information about your rights under ERISA, including COBRA, the Health Insurance Portability and Accountability Act (HIPAA), and other laws affecting group health plans, contact the U.S Department of Labor's Employee Benefits Security Administration (EBSA) in your area, or visit the EBSA website at *www.dol.gov/ebsa*.

# General Provisions

## Verification of Benefits

Verification of Benefits is available for Members or authorized healthcare Providers on behalf of Members.  You may call Member Services with a benefits inquiry or Verification of Benefits during normal business hours (7:00 a.m. to 9:00 p.m. eastern time).   Please remember that a benefits inquiry or Verification of Benefits is NOT a Verification of Coverage of a specific medical procedure.

- Verification of Benefits is NOT a guarantee of payment.
- If the verified service requires Precertification, please call the Member Services number listed on your Identification Card.

## Care Coordination

The Plan will pay In-Network Providers in various ways to provide Covered Services to you.  For example, sometimes the Plan may pay In-Network Providers a separate amount for each Covered Service they provide.   The Plan may also pay them one amount for all Covered Services related to treatment of a medical condition.   Other times, the Plan may pay a periodic, fixed pre-determined amount to cover the costs of Covered Services. In addition, the Plan may pay In-Network Providers financial incentives or other amounts to help improve quality of care and/or promote the delivery of health care services in a cost-efficient manner, or compensate In-Network Providers for coordination of Member care.  In some instances, In-Network Providers may be required to make payment to the Plan because they did not meet certain standards.  You do not share in any payments made by In-Network Providers to the Plan under these programs.

## Clerical Error

A clerical error will never disturb or affect your coverage, as long as your coverage is valid under the rules of the Plan.  This rule applies to any clerical error, regardless of whether it was the fault of the Plan or the Claims Administrator.

## Confidentiality and Release of Information

The Claims Administrator will use reasonable efforts, and take the same care to preserve the confidentiality of your medical information. Data collected in the course of providing services hereunder may be used for statistical evaluation and research. If such data is ever released to a third party, it shall be released only in aggregate statistical form without identifying you. Medical information may be released only with your written consent or as required by law. It must be signed, dated and must specify the nature of the information and to which persons and organizations it may be disclosed. You may access your own medical records.

Your medical information may be released to professional peer review organizations and for purposes of reporting claims experience or conducting an audit of the Claims Administrator operations, provided the information disclosed is reasonably necessary to conduct the review or audit.

A statement describing the Plan's policies and procedures for preserving the confidentiality of medical records is available and will be furnished to you upon request.

# Conformity with Law

Any term of the Plan which is in conflict with federal laws, will hereby be automatically amended to conform with the minimum requirements of such laws.

# Continuity of Care

If an In-Network Provider who has provided Covered Services to you terminates his or her agreement with the Claims Administrator, please call the Member Services number listed on your Identification Card. The Claims Administrator has procedures in place that will allow you to continue to see that Provider for a limited time. The Claims Administrator can also assist you in selecting another In-Network Provider to provide your care.

If your In-Network Provider leaves the Claims Administrator's network because the Claims Administrator has terminated their contract without cause, and you are in active treatment, you may be able to continue seeing that Provider for a limited period of time and still get In-Network benefits. "Active treatment" includes:

1) An ongoing course of treatment for a life-threatening condition;
2) An ongoing course of treatment for a serious acute condition (e.g., chemotherapy, radiation therapy and post-operative visits);
3) The second or third trimester of pregnancy and through the postpartum period; or
4) An ongoing course of treatment for a health condition for which the Physician or health care Provider attests that discontinuing care by the current Physician or Provider would worsen your condition or interfere with anticipated outcomes.

An "ongoing course of treatment" includes treatments for mental health and substance use disorders.

In these cases, you may be able to continue seeing that Provider until treatment is complete, or for 90 days, whichever is shorter. If you wish to continue seeing the same Provider, you or your Doctor should contact Member Services for details. Any decision by the Claims Administer regarding a request for Continuity of Care is subject to the appeals process.

# Entire Agreement

This Benefit Booklet, the Administrative Services Agreement, the Employer's application, any Riders, Endorsements or attachments, and the individual applications of the Subscribers and Members, if any, constitute the entire agreement between the Claims Administrator and the Employer and as of the Effective Date, supersede all other agreements between the parties. Any and all statements made to the Claims Administrator by the Employer, and any and all statements made to the Employer by the Claims Administrator, are representations and not warranties, and no such statement unless it is contained in a written application for coverage under the Plan, shall be used in defense to a claim under the Plan.

# Form or Content of Benefit Booklet

No agent or employee of the Claims Administrator is authorized to change the form or content of this Benefit Booklet. Such changes can be made only through an endorsement authorized and signed by an officer of the Employer.

## Circumstances Beyond the Control of the Plan

The Claims Administrator shall make a good-faith effort to arrange for an alternative method of administering benefits.  In the event of circumstances not within the control of the Claims Administrator or Employer, including but not limited to: a major disaster, epidemic, the complete or partial destruction of facilities, riot, civil insurrection, labor disputes not within the control of the Claims Administrator, disability of a significant part of a Network Provider's personnel or similar causes, or the rendering of health care services provided by the Plan is delayed or rendered impractical the Claims Administrator shall make a good-faith effort to arrange for an alternative method of administering benefits.  In such event, the Claims Administrator and Network Providers shall administer and render services under the Plan insofar as practical, and according to their best judgment; but the Claims Administrator and Network Providers shall incur no liability or obligation for delay, or failure to administer or arrange for services if such failure or delay is caused by such an event.

## Government Programs

The benefits under this Plan shall not duplicate any benefits that you are entitled to, or eligible for, under any other governmental program.  This does not apply if any particular laws require the Plan to be the primary payer.  If duplication of such benefits occurs, all money paid by such programs to you for services you have or are receiving, shall be returned by or on your behalf to the Plan.

## Medical Policy and Technology Assessment

The Claims Administrator reviews and evaluates new technology according to its technology evaluation criteria developed by its medical directors. Technology assessment criteria are used to determine the Experimental / Investigational status or Medical Necessity of new technology. Guidance and external validation of the Claims Administrator's medical policy is provided by the Medical Policy and Technology Assessment Committee (MPTAC) which consists of approximately 20 Doctors from various medical specialties including the Claims Administrator's medical directors, Doctors in academic medicine and Doctors in private practice.

Conclusions made are incorporated into medical policy used to establish decision protocols for particular diseases or treatments and applied to Medical Necessity criteria used to determine whether a procedure, service, supply or equipment is covered.

## Medicare

Any benefits covered under both this Plan and Medicare will be covered according to Medicare Secondary Payer legislation, regulations, and Centers for Medicare & Medicaid Services guidelines, subject to federal court decisions.  Federal law controls whenever there is a conflict among state law, Benefit Booklet terms, and federal law.

Except when federal law requires the Plan to be the primary payer, the benefits under this Plan for Members age 65 and older, or Members otherwise eligible for Medicare, do not duplicate any benefit for which Members are entitled under Medicare, including Part B.  Where Medicare is the responsible payer, all sums payable by Medicare for services provided to you shall be reimbursed by or on your behalf to the Plan, to the extent that payment was made for such services.  For the purposes of the calculation of benefits, if you have not enrolled in Medicare Part B the Claims Administrator will calculate benefits as if you had enrolled.  **You should enroll in Medicare Part B as soon as possible to avoid potential liability.**  If you are covered under an active group policy this may not apply to you.

## Governmental Health Care Programs

Under federal law, for groups with 20 or more Employees, all active Employees (regardless of age) can remain on the Group's Health Plan and receive group benefits as primary coverage. Also, spouses (regardless of age) of active Employees can remain on the Group's Health Plan and receive group benefits as primary coverage. Direct any questions about Medicare eligibility and enrollment to your local Social Security Administration office.

## Modifications

The Plan Sponsor may change the benefits described in this Benefit Booklet and the Member will be informed of such changes as required by law. This Benefit Booklet shall be subject to amendment, modification, and termination in accordance with any of its provisions by the Employer, or by mutual agreement between the Claims Administrator and the Employer without the consent or concurrence of any Member. By electing medical and Hospital benefits under the Plan or accepting the Plan benefits, all Members legally capable of contracting, and the legal representatives of all Members incapable of contracting, agree to all terms, conditions, and provisions hereof.

## Not Liable for Provider Acts or Omissions

The Claims Administrator is not responsible for the actual care you receive from any person. This Benefit Booklet does not give anyone any claim, right, or cause of action against the Claims Administrator based on the actions of a Provider of health care, services, or supplies.

## Payment Innovation Programs

The Claims Administrator contracts with In-Network Providers through various types of contractual arrangements. Some of these arrangements – Payment Innovation Programs (Program(s)) – may include financial incentives to help improve quality of care and promote the delivery of health care services in a cost-efficient manner.

These Programs may vary in methodology and subject area of focus and may be modified by the Claims Administrator from time to time, but they will be generally designed to tie a certain portion of an In-Network Provider's total compensation to pre-defined quality, cost, efficiency or service standards or metrics. In some instances, In-Network Providers may be required to make payment to the Claims Administrator under the Program as a consequence of failing to meet these pre-defined standards.

The Programs are not intended to affect your access to health care. The Program payments are not made as payment for specific Covered Services provided to you, but instead, are based on the In-Network Provider's achievement of these pre-defined standards. You are not responsible for any Copayment or Coinsurance amounts related to payments made under the Program(s), and you do not share in any payments made by Network Providers to the Claims Administrator under the Program(s).

## Policies and Procedures

The Claims Administrator, on behalf of the Employer, may adopt reasonable policies, procedures, rules and interpretations to promote the orderly and efficient administration of the Plan with which a Member shall comply.

Under the terms of the Administrative Service Agreement with your Employer, the Claims Administrator has the authority, in its discretion, to institute from time to time, utilization management, care management, disease management or wellness pilot initiatives in certain designated geographic areas. These pilot initiatives are part of the Claims Administrator's ongoing effort to find innovative ways to make available high quality and more affordable healthcare. A pilot initiative may affect some, but not all Members under the Plan. These programs will not result in the payment of benefits which are not provided in the Employer's Group Health Plan, unless otherwise agreed to by the Employer. The Claim's Administrator reserves the right to discontinue a pilot initiative at any time without advance notice to Employer.

## Program Incentives

The Claims Administrator may offer incentives from time to time, at its discretion, in order to introduce you to covered programs and services available under this Plan. The purpose of these incentives include, but is not limited to, making you aware of cost effective benefit options or services, helping you achieve your best health, and encouraging you to update member-related information. These incentives may be offered in various forms such as retailer coupons, gift cards, health related merchandise, and discounts on fees or Member cost shares. Acceptance of these incentives is voluntary as long as Anthem offers the incentives program. The Claims Administrator may discontinue an incentive for a particular covered program or service at any time. If you have any questions about whether receipt of an incentive or retailer coupon results in taxable income to you, we recommend that you consult your tax advisor.

## Relationship of Parties (Employer-Member Claims Administrator)

Neither the Employer nor any Member is the agent or representative of the Claims Administrator.

The Employer is fiduciary agent of the Member. The Claims Administrator's notice to the Employer will constitute effective notice to the Member. It is the Employer's duty to notify the Claims Administrator of eligibility data in a timely manner. The Claims Administrator is not responsible for payment of Covered Services of Members if the Employer fails to provide the Claims Administrator with timely notification of Member enrollments or terminations.

## Anthem Blue Cross and Blue Shield Note

The Employer, on behalf of itself and its Members, hereby expressly acknowledges its understanding that the Administrative Services Agreement (which includes this Benefit Booklet) constitutes a contract solely between the Employer and Anthem Blue Cross and Blue Shield. (Anthem), and that Anthem is an independent corporation licensed to use the Blue Cross and Blue Shield names and marks in the State of Georgia. The Blue Cross and Blue Shield marks are registered by the Blue Cross and Blue Shield Association, an association of independently licensed Blue Cross and Blue Shield plans, with the U.S. Patent and Trademark Office in Washington, D.C. and in other countries. Further, Anthem is not contracting as the agent of the Blue Cross and Blue Shield Association or any other Blue Cross and/or Blue Shield Plan or licensee. This paragraph shall not create any additional obligations whatsoever on the part of Anthem other than those obligations created under other provisions of the Administrative Services Agreement or this Benefit Booklet.

## Employer's Sole Discretion

The Employer may, in its sole discretion, cover services and supplies not specifically covered by the Plan. This applies if the Employer, with advice from the Claims Administrator, determines such services and supplies are in lieu of more expensive services and supplies which would otherwise be required for the care and treatment of a Member.

## Reservation of Discretionary Authority

The Claims Administrator shall have all the powers necessary or appropriate to enable it to carry out its duties in connection with the operation of the Plan and interpretation of the Benefit Booklet.  This includes, without limitation, the power to construe the Administrative Services Agreement, to determine all questions arising under the Plan, to resolve Member Appeals and to make, establish and amend the rules, regulations and procedures with regard to the interpretation of the Benefit Booklet of the Plan. A specific limitation or exclusion will override more general benefit language.  Anthem has complete discretion to interpret the Benefit Booklet.  The Claims Administrator's determination shall be final and conclusive and may include, without limitation, determination of whether the services, treatment, or supplies are Medically Necessary, Experimental/Investigative, whether surgery is cosmetic, and whether charges are consistent with the Plan's  Maximum Allowed Amount.   A Member may utilize all applicable Appeals procedures.

## Right of Recovery and Adjustment

Whenever payment has been made in error, the Plan will have the right to recover such payment from you or, if applicable, the Provider or otherwise make appropriate adjustment to claims.  In most instances such recovery or adjustment activity shall be limited to the calendar year in which the error is discovered.  The Claims Administrator has oversight responsibility for compliance with Provider and vendor contracts.  The Contract Administrator may enter into a settlement or compromise regarding enforcement of these contracts and may retain any recoveries made from a Provider or vendor resulting from these audits if the return of the overpayment is not feasible.   Additionally, the Contract Administrator has established recovery and adjustment policies to determine which recoveries and adjustments are to be pursued, when to incur costs and expenses and settle or compromise recovery or adjustment amounts.   The Claims Administrator will not pursue recoveries for overpayments or adjustments for underpayments if the cost of the activity exceeds the overpayment or underpayment amount.

## Unauthorized Use of Identification Card

If you permit your Identification Card to be used by someone else or if you use the card before coverage is in effect or after coverage has ended, you will be liable for payment of any expenses incurred resulting from the unauthorized use.  Fraudulent misuse could also result in termination of the coverage.

## Fraud

Fraudulent statements on Plan enrollment forms or on electronic submissions will invalidate any payment or claims for services and be grounds for voiding the Member's coverage.

## Value-Added Programs

The Claims Administrator may offer health or fitness related programs to Members, through which you may access discounted rates from certain vendors for products and services available to the general public.  Products and services available under this program are not Covered Services under your Plan but are in addition to Plan benefits. As such, program features are not guaranteed under your health Plan Contract and could be discontinued at any time. The Claims Administrator does not endorse any vendor, product or service associated with this program.  Program vendors are solely responsible for the products and services you receive.

## Value of Covered Services

For purposes of subrogation, reimbursement of excess benefits, or reimbursement under any Worker's Compensation or Employer Liability Law, the value of Covered Services shall be the amount paid for the Covered Services.

## Voluntary Clinical Quality Programs

The Claims Administrator may offer additional opportunities to assist you in obtaining certain covered preventive or other care (e.g., well child check-ups or certain laboratory screening tests) that you have not received in the recommended timeframe. These opportunities are called voluntary clinical quality programs. They are designed to encourage you to get certain care when you need it and are separate from Covered Services under your Plan. These programs are not guaranteed and could be discontinued at any time. The Claims Administrator will give you the choice and if you choose to participate in one of these programs, and obtain the recommended care within the program's timeframe, you may receive incentives such as gift cards or retailer coupons, which the Claims Administrator encourages you to use for health and wellness related activities or items. Under other clinical quality programs, you may receive a home test kit that allows you to collect the specimen for certain covered laboratory tests at home and mail it to the laboratory for processing. You may also be offered a home visit appointment to collect such specimens and complete biometric screenings. You may need to pay any cost shares that normally apply to such covered laboratory tests (e.g., those applicable to the laboratory processing fee) but will not need to pay for the home test kit or the home visit. If you have any questions about whether receipt of a gift card or retailer coupon results in taxable income to you, please consult tax advisor.

## Waiver

No agent or other person, except an authorized officer of the Employer, is able to disregard any conditions or restrictions contained in this Booklet, to extend the amount of time for making a payment to the Plan, or to bind the Plan by making any promise or representation or by giving or receiving any information.

## Worker's Compensation

The benefits under this Plan are not designed to duplicate benefits that you are eligible for under Worker's Compensation Law. All money paid or owed by Worker's Compensation for services provided to you shall be paid back by, or on your behalf to the Plan if it has made payment for the services received. It is understood that coverage under this Plan does not replace or affect any Worker's Compensation coverage requirements.

## Acts Beyond Reasonable Control (Force Majeure)

Should the performance of any act required by this coverage be prevented or delayed by reason of any act of God, strike, lock-out, labor troubles, restrictive government laws or regulations, or any other cause beyond a party's control, the time for the performance of the act will be extended for a period equivalent to the period of delay, and non-performance of the act during the period of delay will be excused. In such an event, however, all parties shall use reasonable efforts to perform their respective obligations.

The Claims Administrator will adhere to the Plan Sponsor's instructions and allow the Plan Sponsor to meet all of the Plan Sponsor's responsibilities under applicable state and federal law. It is the Plan Sponsor's responsibility to adhere to all applicable state and federal laws and the Claims Administrator does not assume any responsibility for compliance.

# Definitions

If a word or phrase in this Benefit Booklet has a special meaning, such as Medical Necessity or Experimental / Investigational, it will start with a capital letter, and be defined below.  If you have questions on any of these definitions, please call Member Services at the number on the back of your Identification Card.

## Accidental Injury

An unexpected Injury for which you need Covered Services while enrolled in this Plan.  It does not include injuries that you get benefits for under any Workers' Compensation, Employer's liability or similar law.

## Administrative Services Agreement

The agreement between the Claims Administrator and the Employer regarding the administration of certain elements of the health care benefits of the Employer's Group Health Plan.

## Ambulatory Surgical Facility

A Facility, with a staff of Doctors, that:

1. Is licensed where required;
2. Has permanent facilities and equipment to perform surgical procedures on an Outpatient basis;
3. Gives treatment by or under the supervision of Doctors and nursing services when the patient is in the Facility;
4. Does not have Inpatient accommodations; and
5. Is not, other than incidentally, used as an office or clinic for the private practice of a Doctor or other professional Provider.

## Appeals (Grievance)

Please see the "Your Right To Appeal" section.

## Applied Behavior Analysis

The design, implementation, and evaluation of environmental modifications, using behavioral stimuli and consequences to produce socially significant improvement in human behavior, including the use of direct observation, measurement, and functional analysis of the relationship between environment and behavior.

## Authorized Service(s)

A Covered Service you get from an Out-of-Network Provider that the Claims Administrator has agreed to cover at the In-Network level.  You will have to pay any In-Network Deductible, Coinsurance, and/or Copayment(s) that apply, and may also have to pay the difference between the Maximum Allowed Amount and the Out-of-Network Provider's charge.  Please see "Claims Payment" for more details.

## Benefit Booklet

This document.  The Benefit Booklet provides you with a description of your benefits while you are enrolled under the Plan.

## Benefit Period

The length of time that the Plan will cover benefits for Covered Services.  For Calendar Year plans, the Benefit Period starts on January 1st and ends on December 31st.  For Plan Year plans, the Benefit Period begins on your Plan's effective or renewal date and lasts for 12 months.  The "Schedule of Benefits" shows if your Plan's Benefit Period is a Calendar Year or a Plan Year.  If your coverage ends before the end of the year, then your Benefit Period also ends.

## Benefit Period Maximum

The maximum amount that the Plan will pay for specific Covered Services during a Benefit Period.

## Biosimilar/Biosimilars

A type of biological product that is licensed (approved) by FDA because it is highly similar to an already FDA-approved biological product, known as the biological reference product (reference product), and has been shown to have no clinically meaningful differences from the reference product.

## Brand Name Drug

Prescription Drugs that the Claims Administrator classifies as Brand Name Drugs or that the PBM has classified as Brand Name Drugs through use of an independent proprietary industry database.

## Centers of Excellence (COE) Network

A network of health care facilities, which have been selected to give specific services to Members based on their experience, outcomes, efficiency, and effectiveness.   An In-Network Provider under this Plan is not necessarily a COE.  To be a COE, the Provider must have a Center of Excellence Agreement with the Claims Administrator.

## Claims Administrator

The company the Plan Sponsor chose to administer its health benefits.  Anthem Blue Cross and Blue Shield was chosen to administer this Plan.  The Claims Administrator provides administrative claims payment services only and does not assume any financial risk or obligation with respect to claims.

## Coinsurance

Your share of the cost for Covered Services, which is a percent of the Maximum Allowed Amount.  You normally pay Coinsurance after you meet your Deductible.  For example, if your Plan lists 20% Coinsurance on office visits, and the Maximum Allowed Amount is $100, your Coinsurance would be $20 after you meet the Deductible.  The Plan would then cover the rest of the Maximum Allowed Amount.  See the "Schedule of Benefits" for details.   Your Coinsurance will not be reduced by any refunds, rebates, or any other form of negotiated post-payment adjustments.

## Complications of Pregnancy

Complications of Pregnancy result from conditions requiring Hospital confinement when the pregnancy is not terminated.  The diagnoses of the complications are distinct from pregnancy but adversely affected or caused by pregnancy.

Such conditions include acute nephritis, nephrosis, cardiac decompensation, missed or threatened abortion, preeclampsia, intrauterine fetal growth retardation and similar medical and surgical conditions of comparable severity.  An ectopic pregnancy which is terminated is also considered a Complication of Pregnancy.

Complications of Pregnancy shall not include false labor, caesarean section, occasional spotting, Doctor prescribed rest during the period of pregnancy, morning sickness, hyperemesis gravidarum and similar conditions associated with the management of a difficult pregnancy which are not diagnosed distinctly as Complications of Pregnancy.

## Controlled Substances

Drugs and other substances that are considered controlled substances under the Controlled Substances Act (CSA) which are divided into five schedules.

## Copayment

A fixed amount you pay toward a Covered Service.   You normally have to pay the Copayment when you get health care.   The amount can vary by the type of Covered Service you get.  For example, you may have to pay a $15 Copayment for an office visit, but a $150 Copayment for Emergency Room Services. See the "Schedule of Benefits" for details.  Your Copayment will be the lesser of the amount shown in the "Schedule of Benefits" or the Maximum Allowed Amount.

## Covered Services

Health care services, supplies, or treatment described in this Benefit Booklet that are given to you by a Provider.  To be a Covered Service the service, supply or treatment must be:

- Medically Necessary or specifically included as a benefit under this Benefit Booklet.
- Within the scope of the Provider's license.
- Given while you are covered under the Plan.
- Not Experimental / Investigative, excluded, or limited by this Benefit Booklet, or by any amendment or rider to this Benefit Booklet.
- Approved by the Claims Administrator before you get the service if prior authorization is needed.

A charge for a Covered Service will only apply on the date the service, supply, or treatment was given to you.

The date for applying Deductible and other cost shares for an Inpatient stay is the date you enter the Facility except as described in the "Termination and Continuation of Coverage" section.

Covered Services do not include services or supplies not described in the Provider records.

## Covered Transplant Procedure

Please see the "What's Covered" section for details.

## Custodial Care

Any type of care, including room and board, that (a) does not require the skills of professional or technical workers;  (b) is not given to you or supervised by such workers or does not meet the rules for post-Hospital Skilled Nursing Facility care; (c) is given when you have already reached the greatest level of physical or mental health and are not likely to improve further.

Custodial Care includes any type of care meant to help you with activities of daily living that does not require the skill of trained medical or paramedical workers.  Examples of Custodial Care include:

1. Help in walking, getting in and out of bed, bathing, dressing, eating, or using the toilet,
2. Changing dressings of non-infected wounds, after surgery or chronic conditions,
3. Preparing meals and/or special diets,
4. Feeding by utensil, tube, or gastrostomy,
5. Common skin and nail care,

6. Supervising medicine that you can take yourself,
7. Catheter care, general colostomy or ileostomy care,
8. Routine services which the Plan decides can be safely done by you or a non-medical person without the help of trained medical and paramedical workers,
9. Residential care and adult day care,
10. Protective and supportive care, including education,
11. Rest and convalescent care.

Care can be Custodial even if it is recommended by a professional or performed in a Facility, such as in a Hospital or Skilled Nursing Facility, or at home.

## Deductible

The amount you must pay for Covered Services before benefits begin under this Plan.  For example, if your Deductible is $1,000, your Plan won't cover anything until you meet the $1,000 Deductible.  The Deductible may not apply to all Covered Services.  Please see the "Schedule of Benefits" for details.

## Dependent

A Member of the Subscriber's family who meets the rules listed in the "Eligibility and Enrollment – Adding Members" section of this Benefit Booklet and who has enrolled in the Plan.  Eligible Dependents are also referred to as Members.

## Designated Pharmacy Provider

An In-Network Pharmacy that has executed a Designated Pharmacy Provider Agreement with the Claims Administrator or an In-Network Provider that is designated to provide Prescription Drugs, including Specialty Drugs, to treat certain conditions.

## Doctor

See the definition of "Physician."

## Domestic Partner

Domestic Partner means your Domestic Partner who meets all the requirements on a Declaration of Domestic Partnership Form.  You and your Domestic Partner must submit an accurate and completed Declaration of Partnership Form, and meet all the requirements listed on this form.  Continued eligibility of your Domestic Partner depends upon the continuing accuracy of this form.  Domestic Partner eligibility ends on the date a Domestic Partner no longer meets all the requirements listed on this form.  Please see the "Eligibility and Enrollment – Adding Members" section.

## Effective Date

The date your coverage begins under this Plan.

## Emergency (Emergency Medical Condition)

Please see the "What's Covered" section.

## Emergency Care

Please see the "What's Covered" section.

## Employee

A person who is engaged in active employment with the Employer and is eligible for Plan coverage under the employment regulations of the Employer.  The Employee is also called the Subscriber.

## Employer

An Employer who has allowed its Employees to participate in the Plan by acting as the Plan Sponsor or adopting the Plan as a participating Employer by executing a formal document that so provides.

## Enrollment Date

The first day you are covered under the Plan or, if the Plan imposes a waiting period, the first day of your waiting period.

## Excluded Services (Exclusion)

Health care services your Plan doesn't cover.

## Experimental or Investigational

Services which are considered Experimental or Investigational include services which (1) have not been approved by the Federal Food and Drug Administration or (2) for which medical and scientific evidence does not demonstrate that the expected benefits of the proposed treatment would be greater than the benefits of any available standard treatment and that adverse risks of the proposed treatment will not be substantially increased over those standard treatments.  Such determination must result from prudent professional practices and be supported by at least two documents of medical and scientific evidence. Medical and scientific evidence means:

- Peer-reviewed scientific studies published in or accepted for publication by medical journals that meet nationally recognized requirements for scientific manuscripts and that submit most of their published articles for review by experts who are not part of the editorial staff;
- Peer-reviewed literature, biomedical compendia, and other medical literature that meet the criteria of the National Institutes of Health's National Library of Medicine for indexing in Index Medicus, Excerpta Medikcus (EMBASE), Medline, and MEDLARS data base or Health Services Technology Assessment Research (HSTAR);
- Medical journals recognized by the United States Secretary of Health and Human Services, under Section 18961 (t)(2) of the Social Security Act;
- The following standard reference compendia: the American Hospital Formulary Service-Drug Information, the American Medical Association Drug Evaluation, the American Dental Association Accepted Dental Therapeutics, and the United States Pharmacopoeia-Drug Information;
- Findings, studies, or research conducted by or under the auspices of federal government agencies and nationally recognized federal research institutes including the Federal Agency for Health Care Policy and Research, National Institutes of Health, National Cancer Institute, National Academy of Sciences, Health Care Financing Administration, and any national board recognized by the National Institutes of Health for the purpose of evaluating the medical value of health services; or
- It meets the following five technology assessment criteria:
  - The technology must have final approval from the appropriate government regulatory bodies.
  - The scientific evidence must permit conclusions concerning the effect of the technology of health outcomes.
  - The technology must improve the net health outcome.
  - The technology must be as beneficial as any established alternative.
  - The technology must be beneficial in practice.

## Facility

A facility including but not limited to, a Hospital, freestanding Ambulatory Surgical Facility, Chemical Dependency Treatment Facility, Residential Treatment Center, Skilled Nursing Facility, Home Health Care Agency or mental health facility, as defined in this Benefit Booklet.  The Facility must be licensed, accredited, registered or approved by the Joint Commission or the Commission on Accreditation of Rehabilitation Facilities (CARF), as applicable or meet specific rules set by the Claims Administrator.

## Formulary (Drug List)

Documents setting forth certain rules relating to the coverage of Prescription Drugs and prescription vision products by the Claims Administrator that may include but not be limited to (1) a listing of preferred and non-preferred prescription medications and vision products that are covered and/or prioritized in order of preference by the Claims Administrator, and are dispensed to you through pharmacies or vision care suppliers that are In-Network Providers, and (2) pre-certification rules.  This list is subject to periodic review and modification by the Claims Administrator, at its sole discretion.  Charges for medications or vision products may not be Covered Services, in whole or in part, if you select a medication or vision product not included in the Formulary.

## Generic Drugs

Prescription Drugs that the Claims Administrator classifies as Generic Drugs or that the PBM has classified as Generic Drugs through use of an independent proprietary industry database  Generic Drugs have the same active ingredients, must meet the same FDA rules for safety, purity and potency, and must be dispensed in the same dosage form (tablet, capsule, cream) as the Brand Name Drug.

## Health Plan or Plan

An Employee welfare benefit plan as defined in Section 3(1) of ERISA, established by the Employer, in effect as of the Effective Date.

## Home Health Care Agency

A Facility, licensed in the state in which it is located, that:

1)  Gives skilled nursing and other services on a visiting basis in your home; and
2)  Supervises the delivery of such services under a plan prescribed and approved in writing by the attending Doctor.

## Hospice

A Provider that gives care to terminally ill patients and their families, either directly or on a consulting basis with the patient's Doctor.  It must be licensed by the appropriate agency.

## Hospital

A Provider licensed and operated as required by law which has:

1.  Room, board and nursing care;
2.  A staff with one or more Doctors on hand at all times;
3.  24 hour nursing service;
4.  All the facilities on site are needed to diagnose, care, and treat an illness or injury; and
5.  Is fully accredited by the Joint Commission.

The term Hospital does not include a Provider, or that part of a Provider, used mainly for:

1.  Nursing care
2.  Rest care
3.  Convalescent care
4.  Care of the aged
5.  Custodial Care
6.  Educational care
7.  Subacute care

## Identification Card

The latest card given to you showing your identification and group numbers, the type of coverage you have and the date coverage became effective.

## In-Network Provider

A Provider that has a contract, either directly or indirectly, with the Claims Administrator, or another organization, to give Covered Services to Members through negotiated payment arrangements.   A Provider that is In-Network for one plan may not be In-Network for another. Please see "How to Find a Provider in the Network" in the section "How Your Plan Works" for more information on how to find an In-Network Provider for this Plan.

## In-Network Transplant Provider

Please see the "What's Covered" section for details.

## Inpatient

A Member who is treated as a registered bed patient in a Hospital and for whom a room and board charge is made.

## Intensive In-Home Behavioral Health Program

A range of therapy services provided in the home to address symptoms and behaviors that, as the result of a mental disorder or substance use disorder, put the Members and others at risk of harm.

## Intensive Outpatient Program

Structured, multidisciplinary behavioral health treatment that provides a combination of individual, group and family therapy in a program that operates no less than 3 hours per day, 3 days per week.

## Interchangeable Biologic Product

A type of biological product that is licensed (approved) by FDA because it is highly similar to an already FDA-approved biological product, known as the biological reference product (reference product), and has been shown to have no clinically meaningful differences from the reference product.   In addition to meeting the biosimilarity standard, it is expected to produce the same clinical result as the reference product in any given patient.

## Late Enrollees

Employees or Dependents who enroll in the Plan after the initial enrollment period.  A person will not be considered a Late Enrollee if he or she enrolls during a Special Enrollment period.  Please see the "Eligibility and Enrollment – Adding Members" section for further details.

## Maintenance Medications

Please refer to the "Prescription Drug at a Retail or Home Delivery (Mail Order) Pharmacy" section for details.

## Maintenance Pharmacy

An In-Network Retail Pharmacy that is contracted with the Claims Administrator's PBM to dispense a 90 day supply of Maintenance Medication.

## Maximum Allowed Amount

The maximum payment that the Claims Administrator will allow for Covered Services.  For more information, see the "Claims Payment" section.

## Medical Necessity (Medically Necessary)

The Claims Administrator reserves the right to determine whether a service or supply is Medically Necessary.  The fact that a Doctor has prescribed, ordered, recommended or approved a service or supply does not, in itself, make it Medically Necessary.  The Claims Administrator considers a service Medically Necessary if it is:

- appropriate and consistent with the diagnosis and the omission of which could adversely affect or fail to improve the patient's condition;
- compatible with the standards of acceptable medical practice in the United States;
- not provided solely for your convenience or the convenience of the Doctor, health care provider or Hospital;
- not primarily Custodial Care;
- provided in a safe and appropriate setting given the nature of the diagnosis and the severity of the symptoms.  For example, a Hospital stay is necessary when treatment cannot be safely provided on an outpatient basis;  and
- cost-effective compared to alternative interventions, including no intervention.  Cost effective does not always mean lowest cost.  It does mean that as to the diagnosis or treatment of the Member's illness, injury or disease, the service is:  (1) not more costly than an alternative service or sequence of services that is medically appropriate, or (2) the service is performed in the least costly setting that is medically appropriate.

## Member

People, including the Subscriber and his or her Dependents, who have met the eligibility rules, applied for coverage, and enrolled in the Plan.  Members are called "you" and "your" in this Benefit Booklet.

## Mental Health and Substance Abuse

A condition that is listed in the current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) as a mental health or substance abuse condition.

## Non-Preferred Provider

A Hospital, Freestanding Ambulatory Facility (Surgical Center), Doctor, Skilled Nursing Facility, Hospice, Home Health Care Agency, other medical practitioner or Provider of medical services or supplies, that does not have a Point of Service Contract with Contract with the Claims Administrator but is contracted with the Claims Administrator's indemnity network.

**Out-of-Network benefits apply when Covered Services are rendered by a Non-Preferred Provider. Please see the "Important Note" in the Claims Payment section of this Booklet concerning Non-Preferred Providers effective January 1, 2019.**

## Open Enrollment

A period of time in which eligible people or their dependents can enroll without penalty after the initial enrollment. See the "Eligibility and Enrollment – Adding Members" section for more details.

## Out-of-Network Provider

A Provider that does not have an agreement or contract with the Claims, or the Claims Administrator's subcontractor(s), to give services to Members under this Plan.

You will often get a lower level of benefits when you use Out-of-Network Providers.

## Out-of-Pocket Limit

The most you pay in Copayments, Deductibles, and Coinsurance during a Benefit Period for Covered Services.  The Out-of-Pocket limit does not include your premium, amounts over the Maximum Allowed Amount, or charges for health care that your Plan doesn't cover.  Please see the "Schedule of Benefits" for details.

## Partial Hospitalization Program

Structured, multidisciplinary behavioral health treatment that offers nursing care and active individual, group and family treatment in a program that operates no less than 6 hours per day, 5 days per week.

## Pharmacy

A place licensed by state law where you can get Prescription Drugs and other medicines from a licensed pharmacist when you have a prescription from your Doctor.

## Pharmacy and Therapeutics (P&T) Process

A process to make clinically based recommendations that will help you access quality, low cost medicines within your Plan.  The process includes health care professionals such as nurses, pharmacists, and Doctors.  The committees of the National Pharmacy and Therapeutics Process meet regularly to talk about and find the clinical and financial value of medicines for Members. This process first evaluates the clinical evidence of each product under review.  The clinical review is then combined with an in-depth review of the market dynamics, Member impact and financial value to make choices for the formulary. Programs may include, but are not limited to, Prescription Drug utilization programs, prior authorization criteria, therapeutic conversion programs, cross-branded initiatives, and Prescription Drug profiling initiatives.

## Pharmacy Benefits Manager (PBM)

A Pharmacy benefits management company that manages Pharmacy benefits on the Claims Administrator's behalf.  The Claims Administrator's PBM has a nationwide network of Retail Pharmacies, a Home Delivery Pharmacy, and clinical services that include Prescription Drug List management.

The management and other services the PBM provides include, but are not limited to: managing a network of Retail Pharmacies and operating a mail service Pharmacy.  The Claims Administrator's PBM, in consultation with the Claims Administrator, also provides services to promote and assist Members in the appropriate use of Pharmacy benefits, such as review for possible excessive use, proper dosage, drug interactions or drug/pregnancy concerns.

## Physician (Doctor)

Includes the following when licensed by law:

- Doctor of Medicine (M.D.), legally entitled to practice medicine and perform surgery,
- Doctor of Osteopathy (D.O.), legally licensed to perform the duties of a D.O.,
- Doctor of Chiropractic (D.C.), legally licensed to perform the duties of a chiropractor;
- Doctor of Podiatric Medicine (D.P.M.), legally entitled to practice podiatry, and
- Doctor of Dental Medicine (D.D.M.), Doctor of Dental Surgery (D.D.S.), legally entitled to provide dental services.

Optometrists, Clinical Psychologists (PhD), and surgical chiropodists are also Providers when legally licensed and giving Covered Services within the scope of their licenses.

## Plan

The arrangement chosen by the Plan Sponsor to fund and provide for delivery of the Employer's health benefits.

## Plan Administrator

The person or entity named by the Plan Sponsor to manage the Plan and answer questions about Plan details. ***The Plan Administrator is not the Claims Administrator.***

## Plan Sponsor

The legal entity that has adopted the Plan and has authority regarding its operation, amendment and termination. ***The Plan Sponsor is not the Claims Administrator.***

## Precertification

Please see the section "Getting Approval for Benefits" for details.

## Predetermination

Please see the section "Getting Approval for Benefits" for details.

## Prescription Drug (Drug) (Also referred to as Legend Drug)

A medicine that is approved by the Food & Drug Administration to treat illness or injury.  Under the Federal Food, Drug & Cosmetic Act, such substances must bear a message on its original packing label that says, "Caution: Federal law prohibits dispensing without a prescription."  This includes the following:

1) Compounded (combination) medications, when all of the ingredients are FDA-approved, as designated in the FDA's Orange Book: *Approved Drug Products with Therapeutic Equivalence Evaluations,* require a prescription to dispense, and are not essentially the same as an FDA-approved product from a drug manufacturer.
2) Insulin, diabetic supplies, and syringes.

## Prescription Order

A written request by a Provider, as permitted by law, for a Prescription Drug or medication, and each authorized refill.

## Primary Care Physician ("PCP")

A Physician who gives or directs health care services for you.   The Physician may work in family practice, general practice, internal medicine, pediatrics, geriatrics or any other practice allowed by the Plan.

## Primary Care Provider

A Physician, nurse practitioner, clinical nurse specialist, physician assistant, or any other Provider licensed by law and allowed under the Plan, who gives, directs, or helps you get a range of health care services.

## Prior Authorization

Please see the "Getting Approval for Benefits", "Prescription Drug Benefit at a Retail or Home Delivery (Mail Order) Pharmacy", and "Prescription Drugs Administered by a Medical Provider" sections for details.

## Provider

A professional or Facility licensed by law that gives health care services within the scope of that license and is approved by the Claims Administrator.  Providers that deliver Covered Services are described throughout this Booklet.  If you have a question about a Provider not described in this Benefit Booklet please call the number on the back of your Identification Card.

## Recovery

Please see the "Subrogation and Reimbursement" section for details.

## Referral

Please see the "How Your Plan Works" section for details.

## Residential Treatment Center / Facility:

A Provider licensed and operated as required by law, which includes:

1. Room, board and skilled nursing care (either an RN or LVN/LPN) available on-site at least eight hours daily with 24 hour availability;
2. A staff with one or more Doctors available at all times.
3. Residential treatment takes place in a structured facility-based setting.
4. The resources and programming to adequately diagnose, care and treat a psychiatric and/or substance use disorder.
5. Facilities are designated residential, subacute, or intermediate care and may occur in care systems that provide multiple levels of care.
6. Is fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA)

The term Residential Treatment Center/Facility does not include a Provider, or that part of a Provider, used mainly for:

1. Nursing care
2. Rest care
3. Convalescent care
4. Care of the aged
5. Custodial Care
6. Educational care

## Retail Health Clinic

A Facility that gives limited basic health care services to Members on a "walk-in" basis.  These clinics are often found in major pharmacies or retail stores.  Medical services are typically given by Physician Assistants and nurse practitioners.

## Skilled Nursing Facility

A Facility operated alone or with a Hospital that cares for you after a Hospital stay when you have a condition that needs more care than can get at home.  It must be licensed by the appropriate agency and accredited by the Joint Commission or the Bureau of Hospitals of the American Osteopathic Association, or otherwise approved by the Claims Administrator.  A Skilled Nursing Facility gives the following:

1. Inpatient care and treatment for people who are recovering from an illness or injury;
2. Care supervised by a Doctor;
3. 24 hour per day nursing care supervised by a full-time registered nurse.

A Skilled Nursing Facility is not a place mainly for care of the aged, Custodial Care or domiciliary care, treatment of alcohol or drug dependency; or a place for rest, educational, or similar services.

## Special Enrollment

A period of time in which eligible people or their dependents can enroll after the initial enrollment, typically due to an event such as marriage, birth, adoption, etc.  See the "Eligibility and Enrollment – Adding Members" section for more details.

## Specialist (Specialty Care Physician / Provider or SCP)

A Specialist is a Doctor who focuses on a specific area of medicine or group of patients to diagnose, manage, prevent, or treat certain types of symptoms and conditions.  A non-Physician Specialist is a Provider who has added training in a specific area of health care.

## Specialty Drugs

Drugs that typically need close supervision and checking of their effect on the patient by a medical professional.  These drugs often need special handling, such as temperature-controlled packaging and overnight delivery, and are often not available at retail pharmacies.  They may be administered in many forms including, but not limited to, injectable, infused, oral and inhaled.

## Subscriber

A person who is engaged in active employment with the Employer (the Employee) and is eligible for Plan coverage under the employment regulations of the Employer.

## Telemedicine Medical Service

A health care medical service initiated by a Doctor or provided by a health care professional, the diagnosis, treatment or consultation by a Doctor, or the transfer of medical data that requires the use of advanced communications technology, other than by phone or fax including:

- Compressed digital interactive video, audio, or data transmission.

- Clinical data transmission using computer imaging by way of still-image capture; and,

- Other technology that facilitates access to healthcare services or medical specialty expertise.

Neither a telephone conversation nor an electronic mail message between a healthcare practitioner and a patient is telemedicine.

## Transplant Benefit Period

Please see the "What's Covered" section for details.

## Transplant Providers

**Network Transplant Provider** - A Provider that has been designated as a "Center of Excellence" for Transplants by the Claims Administrator and/or a Provider selected to participate as a Network Transplant Provider by the Blue Cross and Blue Shield Association.  Such Provider has entered into a transplant provider agreement to render Covered Transplant Procedures and certain administrative functions to you for the transplant network.  A Provider may be a Network Transplant Provider with respect to:
- certain Covered Transplant Procedures; or
- all Covered Transplant Procedures.

**Out-of-Network Transplant Provider** - Any Provider that has NOT been designated as a "Center of Excellence" for Transplants by the Claims Administrator nor has not been selected to participate as a Network Transplant Provider by the Blue Cross and Blue Shield Association.

**Blue Distinction Center (BDC) Facility:** Blue Distinction facilities have met or exceeded national quality standards for care delivery (quality only).

**Blue Distinction Center+ (BDC+) Facility:** Blue Distinction+ facilities have met or exceeded national quality standards for care delivery AND have demonstrated that they operate more efficiently (quality and cost).

**Designated Transplant Provider**: A provider who has achieved designation as a Blue Distinction Center+ or Blue Distinction Center for Transplant Procedures.

**In-Network Transplant Provider:** Hospitals participating in the network but are NOT designated as either Blue Distinction Center+ or Blue Distinction Center).

**Out-of-Network Transplant Provider:** Any Provider that does <u>not</u> hold a contractual agreement with the Claims Administrator to provide Transplant services.

## Urgent Care Center

A licensed health care Facility that is separate from a Hospital and whose main purpose is giving immediate, short-term medical care, without an appointment, for urgent care.

## Utilization Review

Evaluation of the necessity, quality, effectiveness, or efficiency of medical or behavioral health services, Prescription Drugs (as set forth in the section Prescription Drugs Administered by a Medical Provider), procedures, and/or facilities.

# Anthem POS

Administered by **Anthem Blue Cross and Blue Shield is the trade name of Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.  Independent licensee of the Blue Cross and Blue Shield Association.  ANTHEM is a registered trademark of Anthem Insurance Companies, Inc.**

**GA6706M001JR01012019**

Anna Lange v. Houston County, Georgia, et al.
Civil Action No.: 5:19-CV-00392-MTT

Defendant Houston County's Answer and Affirmative Defenses to Plaintiff's
Complaint


# EXHIBIT B – FOIA File

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  **Anna H. Lange**
█████████████████████

From: **Atlanta District Office**
**100 Alabama Street, S.W.**
**Suite 4R30**
**Atlanta, GA 30303**

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Deidra A. Stephens,** | |
| **410-2019-05498** | **Investigator Support Asst** | **(404) 562-6868** |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Darrell E. Graham,**
**District Director**

**JUL 0 8 2019**

*(Date Mailed)*

Enclosures(s)

cc:
**Tom Hall**
**County Attorney**
**HOUSTON COUNTY**
**200 Carl Vinson Parkway**
**Warner Robins, GA 31088**

**Kenneth E. Barton**
**COOPER, BARTON & COOPER**
**The Rosewood**
**170 College Street**
**Macon, GA 31201**

Enclosure with EEOC
Form 161-B (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS  --  Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS  --  Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION  --  Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE  --  All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"  now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 410-2019-05498 |

| Georgia Commission on Equal Opportunity | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Anna Lange** | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | MAY 2 2 2019 |

RECEIVED
EEOC-ATDO

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Houston County** | More than 20 | (478) 542-201 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **200 Carl Vinson Parkway** | **Warner Robins, Georgia 31088** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. d/b/a Anthem Blue Cross and Blue Shield** | More than 20 | (317) 488-6000 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **120 Monument Circle, Suite 200** | **Indianapolis, IN 46204-4906** | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **11/26/2018**   Latest:

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Additional parties that I believe discriminated against include:

Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield
120 Monument Circle, Suite 200, Indianapolis, IN 46204-4906 More than 20 employees, (317) 532-6000

*Please see the attached statement describing discriminatory employment practices and hostile work environment on the basis of sex, transgender status, gender identity, and disability, in violation of the Americans With Disabilities Act, the Georgia Equal Employment for Persons with Disabilities Code, the Georgia Fair Employment Practices Act, and Title VII of the Civil Rights Act.*

**I understand my rights and I wish to file a civil action at this time, and I request that the EEOC issue a Right to Sue Letter to me upon receipt of this Charge.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 5-20-19   *Anna Lange*<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

**ATTACHED STATEMENT**
EEOC Charge of Discrimination
Charging Party Anna Lange

Background

1. I am a 46-year-old transgender female, and I am a resident of Perry, Houston County, Georgia.

2. I have worked in law enforcement for approximately 22 years.

3. I was hired by the Houston County, Georgia Sheriff's Office, Georgia (hereinafter, "Sheriff's Office") as a Patrol Deputy in September 2006. Since that time, I remained employed with the Sheriff's Office and, at all times, my performance has been exemplary. Specifically, among other accolades and recognitions, I have been promoted to the rank of Corporal and, after subsequent promotion, I currently serve as a Sergeant in the Criminal Investigation's Division.

4. As an employee of Houston County, Georgia, I participate in the Houston County Board of Commissioners employee health plan (hereinafter, "Health Plan"), which is administered by Anthem Blue Cross Blue Shield[1] (hereinafter, "Anthem"). The Health Plan is governed by the Houston County Board of Commissioners (hereinafter, "Board of Commissioners") and the Health Plan and its benefits are funded by my employer.

5. I receive, as a part of my overall compensation, health care benefits, and I also contribute my share of $10 of my compensation per pay-period to my Health Plan.

6. As an agent of my employer, Anthem provides administrative services for the Health Plan, including, among other things, claims processing.

---

[1] Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. and Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross Blue Shield.

7. As administrator of the Health Plan, Anthem uses corporate medical policies to make medical necessity determinations when evaluating claims. Since at least 2006, Anthem has generally recognized the medical necessity of sex reassignment surgeries in its medical policy on Sex Reassignment Surgery,[2] which outlines the clinical criteria for when it considers such care to be medically necessary.

8. The Health plan covers, among other things, prescription drugs, laboratory testing, mental health treatment, surgeries, and physician services.

9. However, the Health Plan has explicit exclusions for "**Sex Change** Services and supplies for a sex change and/or reversal of a sex change" and "**Sex Change Drugs** Drugs for sex change surgery" (emphasis in original).

10. Despite contributing the same amount from each paycheck as my co-workers, I receive unequal health care benefits in return, and, therefore, lesser compensation and benefits, because the Health Plan explicitly excludes all treatments related to individuals who are transgender, specifically, "sex change surgery," also commonly known as gender reassignment surgery or gender confirmation surgery, and "sex change drugs."

11. The Health Plan has no legitimate, nondiscriminatory basis to single-out transgender-related care for exclusion.

12. As outlined below, the Health Plan's discriminatory exclusion has subjected me to discrimination based on sex and disability by denying me access to medically-necessary care specifically due to my sex, transgender status, gender identity, and disability.

---

[2] https://www.bcbsga.com/medicalpolicies/guidelines/gl_pw_a051166.htm.

## Gender Dysphoria

13. I have a serious medical condition called gender dysphoria, which arises when the sex of the brain develops on a divergent path from the external sex characteristics of the body.

14. Gender dysphoria results from a physical impairment – namely, the inconsistency between a person's brain sex and the sex of their chromosomes, sex hormones, and primary and secondary sex characteristics.

15. This well-established medical condition is typically alleviated by hormonal and surgical treatment to align external sex characteristics with the brain. When left untreated, gender dysphoria may result in serious psychological debilitation, including, but not limited to, depression, anxiety, suicidality, and other mental health issues. Therefore, such medically necessary treatments are widely covered under health insurance plans.

16. As a part of my treatment for gender dysphoria, I began taking hormone therapy in October 2016, which feminized my appearance. In April 2018, I paid out-of-pocket for chest reassignment surgery. As the rest of my body has feminized, it has caused me more distress to have male external sex characteristics. This has also caused a safety issue to be otherwise visibly-female, but still have such male external sex characteristics.

17. I have been diagnosed with gender dysphoria, and I have a lifelong history of the medical condition. I experienced anguish as a child, but did not understand why I was sad. As a teenager, I would sometimes buy traditionally-female articles of clothing to try on in private, only to throw said articles away in shame.

18. I have since "come out" as transgender to my family, friends, and my employer. In December 2017, I took steps to legally change my name, and I now exclusively use my preferred name and female pronouns whenever possible. However, I am prevented from

legally changing my sex on my birth certificate under Georgia law, without first being able to certify that my sex has been changed by the surgical procedure described herein.

19. I need the one-time surgery, as described herein, to treat my gender dysphoria.

20. My gender dysphoria substantially limits one or more major life activities including, but not limited to, my ability to care for myself, eating, sleeping, learning, concentrating, thinking, communicating, interacting with others, and reproducing. Gender dysphoria also substantially limits the operation of major bodily functions including, but not limited to, neurological function, and brain function.

21. I have a record of gender dysphoria. My employer is aware of my gender dysphoria and I am therefore regarded as having an impairment that substantially limits one or more major life activities.

Denial of Coverage Based on My Sex, Transgender Status, Gender Identity, and Disability

22. After my chest reassignment surgery in April 2018, I agreed, along with my endocrinologist, my two psychologists, and my surgeon, that gender reassignment surgery was the next step in my treatment for gender dysphoria.

23. I called Anthem to inquire as to whether this surgery was covered under the Health Plan, and the agent informed me that she did not see an exclusion and that it would be covered.

24. Because I was skeptical, I asked my surgeon's office to inquire as well, and they were told that the surgery would be covered under the Health Plan.

25. As a result, I flew out-of-state for a surgical consultation in November 2018. After the consultation, the surgery was scheduled and my surgeon applied to Anthem for preauthorization.

26. In a letter dated November 26, 2018, Anthem denied preauthorization, citing an exclusion for sex reassignment surgery in the Certificate of Coverage.

27. I submitted an appeal to Anthem on December 11, 2018, which it denied on January 29, 2019.

28. Indeed, the Health Plan explicitly excludes "sex change surgery" and "sex change drugs."

29. The exclusion for these treatments of gender dysphoria singles-out transgender employees. By definition, it is only necessary for transgender people to access "sex change surgeries" and "sex change drugs."

30. Because I am unable to fully-enjoy my benefits of employment, I have received lesser compensation than other, non-transgender, employees.

31. While the Health Plan is administered by Anthem, the Board of Commissioners has the authority to make any and all changes to the Health Plan and its exclusions.

32. On several occasions, I requested that my employer change this policy exclusion in the Health Plan including through a January 16, 2019 letter from my attorney and on the record at a February 19, 2019 public meeting of the Board of Commissioners,

33. My employer ignored several of my requests and ultimately stated at the aforementioned public meeting that it is refusing to change the Health Plan.

<div align="center">Waiver</div>

34. I am aware that it is not the practice of the Equal Employment Opportunity Commission to include any descriptive details regarding a charging party's disability or the name of the charging party's disability on the face of the Charge of Discrimination under the Americans With Disabilities Amendment Act of 2008.

35. I hereby waive any right to this protection and authorize the Equal Employment Opportunity Commission to include information regarding my disability or the name of my disability on the face of my Charge of Discrimination under the Americans With Disabilities Amendments Act of 2008.

36. I have had the opportunity to discuss this waiver with my attorneys, and I fully understand the provisions of this waiver.

<u>Charge</u>

37. Accordingly, for the above and foregoing reasons, I believe that my employer, Houston County, Georgia and its representatives, agents, employees, and Board of Commissioners, as well as its agent administering my Health Plan, Anthem Blue Cross Blue Shield, have participated in <u>discriminatory employment or public accommodation practices on the basis of disability</u>, by singling-out for exclusion, coverage for gender dysphoria treatments and failing to reasonably accommodate me by approving my claims or modifying the Health Plan to include treatment for gender dysphoria, in violation of the Americans with Disabilities Act, the Georgia Equal Employment for Persons With Disabilities Code, and the Georgia Fair Employment Practices Act of 1978.

38. I believe that my employer, Houston County, Georgia and its representatives, agents, employees, and Board of Commissioners, as well as its agent administering my Health Plan, Anthem Blue Cross Blue Shield, have participated in discriminatory employment or public accommodation practices by creating <u>a hostile work environment based on disability for employees with gender dysphoria</u>, in violation of the Americans with Disabilities Act, the Georgia Equal Employment for Persons With Disabilities Code, and the Georgia Fair Employment Practices Act of 1978.

39. I believe that my employer, Houston County, Georgia and its representatives, agents, employees, and Board of Commissioners, as well as its agent administering my Health Plan, Anthem Blue Cross Blue Shield, have participated in <u>discriminatory employment or public accommodation practices with respect to compensation, terms, conditions, or privileges of my employment on the basis of sex</u>, by offering or adopting a plan with a gender dysphoria exclusion, treating transgender employees worse by providing lesser compensation and benefits that non-transgender employees, in violation of Title VII of the Civil Rights Act and the Georgia Fair Employment Practices Act of 1978.

40. I believe that my employer, Houston County, Georgia and its representatives, agents, employees, and Board of Commissioners, as well as its agent administering my Health Plan, Anthem Blue Cross Blue Shield, have participated in discriminatory employment or public accommodation practices by creating <u>a hostile work environment on the basis of sex for transgender employees</u>, in violation of Title VII of the Civil Rights Act and the Georgia Fair Employment Practices Act of 1978.

41. As a direct result of the discrimination and hostile work environment based on sex, transgender status, gender identity, and disability, as described above, I have suffered damages including, but not limited to, lost compensation, benefits, healthcare, emotional distress, and mental anguish, as well as attorney's fees and costs of litigation.

42. I file this on my behalf and on behalf of other persons similarly situated who have been adversely affected by the discriminatory practices described herein.

It is my desire to file a civil action and I request that the Equal Employment Opportunity Commission issue a Right to Sue Letter to me upon receipt of this Charge of Discrimination.

This _20th_ day of May, 2019.

Timothy Paul Leonard
Notary Public
Houston County, Georgia
My Commission Expires
June 19, 2020

Sworn and subscribed before me,
this _20th_ day of May, 2019.

*Notary Public, State of Georgia*
My Commission Expires: _6-19-20_

_Anna Lange_
ANNA LANGE
*Charging Party*

KENNETH E. BARTON III
M. DEVLIN COOPER

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
mdc@cooperbarton.com

NOAH E. LEWIS
EXECUTIVE DIRECTOR

TRANSCEND LEGAL
3553 82ND STREET #6D
JACKSON HEIGHTS, NY 11372-5148
(347) 612-4312 OFFICE
(347) 990-1781 FAX
NLEWIS@TRANSCENDLEGAL.ORG

*Attorneys for Charging Party*

EEOC FORM 131 (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|

**Anna H. Lange**

Mr. Tom Hall
County Attorney
HOUSTON COUTY
200 Carl Vinson Parkway
Warner Robins, GA 31088

THIS PERSON *(check one or both)*

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.
**410-2019-05498**

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)    [ ] The Equal Pay Act (EPA)    [X] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)    [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by  a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below.  Your response will be placed in the file and considered as we investigate the charge.  A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by  to the enclosed request for information and send your response to the EEOC Representative listed below.  Your response will be placed in the file and considered as we investigate the charge.  A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources.  If you would like to participate, please say so on the enclosed form and respond by
to
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above.  Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Deneen M. Hodges,
Supervisor

*EEOC Representative*

*Telephone*    **(404) 562-6821**

**Atlanta District Office**
**100 Alabama Street, S.W.**
**Suite 4R30**
**Atlanta, GA 30303**
**Fax: (404) 562-6910**

Enclosure(s): [ ]    Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] Race  [ ] Color  [X] Sex  [ ] Religion  [ ] National Origin  [ ] Age  [X] Disability  [ ] Retaliation  [ ] Genetic Information  [ ] Other

ISSUES: Benefits-Insurance, Exclusion, Accommodation

DATE(S) (on or about):  EARLIEST: 11-26-2018   LATEST: 11-26-2018   And Continuing

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| June 19, 2019 | Darrel! E. Graham, Acting District Director | |



*Enclosure with EEOC*
*Form 131 (11/09)*

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge -- the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14   Preservation of records made or kept.**  . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 207(f) of GINA, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

Cooper, Barton & Cooper, LLI
170 College Street
Macon, Georgia 31201

**CERTIFIED MAIL**

7013 3020 0001 7752 6547

Equal Employment Opportunity Com.,
Atlanta District Office
100 Alabama Street, S.W., Suite 4R30
Atlanta GA 30303-8704

RECEIVED

MAY 22 2019

EEOC-ATDO

$6.950
US POSTAGE
FIRST-CLASS
FROM 31201
MAY 20 2019
stamps
endicia





The Rosewood        (478) 841-9007 tel
170 College Street  (478) 841-9002 fax
Macon, Georgia 31201  cooperbarton.com

KENNETH E. BARTON
KEB@COOPERBARTON.COM

May 20, 2019

**VIA CERTIFIED MAIL &**
**VIA FACSIMILE: (404) 562-6909**
Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama Street, S.W., Suite 4R30
Atlanta, Georgia 30303

> Re:   **Charge of Discrimination**
>       *Anna Lange v. Houston County, Georgia*
>       Equal Employment Opportunity Commission (Charge No. TBD)
>       *Cooper, Barton & Cooper File No.: 15888.0001*

To Whom It May Concern:

Our law firm has been retained to represent Sgt. Anna Lange, and we wish to file a Charge of Discrimination on her behalf. Enclosed, please find the Charge, which has been completed on an EEOC Form 5 Charge of Discrimination, and Sgt. Lange's Attached Statement, which should be considered part of her Charge.

Please do not hesitate to reach out to us if you have any questions or concerns, and we appreciate your time and attention to this matter.

Sincerely yours,

KENNETH E. BARTON

KEB/nagm
Enclosures
cc:       Sgt. Anna Lange (via email)
          M. Devlin Cooper, Esq. (via email)
          Noah E. Lewis, Esq. (via email)
158880001.L03.EEOC Charge

## DEIDRA STEPHENS

| | |
|---|---|
| **From:** | DEIDRA STEPHENS |
| **Sent:** | Thursday, June 13, 2019 2:06 PM |
| **To:** | Ken Barton |
| **Subject:** | RE: Anna Lange |

Thank you.

**From:** Ken Barton <keb@cooperbarton.com>
**Sent:** Thursday, June 13, 2019 2:01 PM
**To:** DEIDRA STEPHENS <DEIDRA.STEPHENS@EEOC.GOV>
**Subject:** RE: Anna Lange

Ms. Stephens,

I apologize for my delay in getting back to you.  Houston County can be contacted through its County Attorney:

Tom Hall, County Attorney
(478) 542-2012
200 Carl Vinson Parkway, Warner Robins, Georgia 31088
Fax (478) 542-2124
thall@houstoncountyga.org

I hope that this helps.

Ken

KENNETH E. BARTON | COOPER, BARTON & COOPER, LLP
170 College Street | Macon, Georgia 31201 | 478.841.9007 ext. 206 (phone) | 478.841.9002 (fax) |
keb@cooperbarton.com | www.cooperbarton.com | www.linkedin.com/in/kenebarton

CONFIDENTIALITY NOTICE
This message is being sent by, on behalf of, or under the direction of an attorney. It is intended exclusively for the individual or entity to which it is addressed. This
communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee,
you are not authorized to read, print, retain, copy, or disseminate this message or any part of it. In the event you have received this message in error, please delete
all copies of this message immediately and notify the sender by calling (478) 841-9007 or by replying to this message.

**From:** DEIDRA STEPHENS <DEIDRA.STEPHENS@EEOC.GOV>
**Sent:** Thursday, June 13, 2019 1:28 PM
**To:** Ken Barton <keb@cooperbarton.com>
**Subject:** Anna Lange

Good afternoon,

We've ben unable to find contact information for Houston County, if you have been in contact with a accompany
representative, please provide their contact information including their email address so that we can continue
processing this case.

1

## DEIDRA STEPHENS

**From:** Ken Barton <keb@cooperbarton.com>
**Sent:** Friday, June 07, 2019 10:33 AM
**To:** DEIDRA STEPHENS
**Cc:** Devlin Cooper; Noah Lewis
**Subject:** Charge of Discrimination/Anna Lange

Ms. Stephens,

Thank you for reaching out to me earlier this week. It is my understanding that there is some flexibility on how different EEOC offices handle multi-party charges. I think that the safest thing to do would be to open three different charges and numbers for each the three parties named in the Form 5 that we prepared:

- Houston County, Georgia  *410 - 2019 - 05498*
- Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. d/b/a Anthem Blue Cross and Blue Shield
- Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield

Additionally, we would appreciate if the EEOC can issue Right to Sue letters for all three of these Charges at the earliest possible moment.

Please let me know if you have any additional questions.

Ken

**KENNETH E. BARTON | COOPER, BARTON & COOPER, LLP**
170 College Street | Macon, Georgia 31201 | 478.841.9007 ext. 206 (phone) | 478.841.9002 (fax) |
keb@cooperbarton.com | www.cooperbarton.com | www.linkedin.com/in/kenebarton

CONFIDENTIALITY NOTICE
This message is being sent by, on behalf of, or under the direction of an attorney. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy, or disseminate this message or any part of it. In the event you have received this message in error, please delete all copies of this message immediately and notify the sender by calling (478) 841-9007 or by replying to this message.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Atlanta District Office**

<u>KEEP THIS FORM ATTACHED TO OUTSIDE OF FILE</u>

DATE        : _____

FROM       :  Elma ☐        Marcia ☐        Deidra ☑        Garcia ☐        Other:

EEOC Charge No.:  410-2019-05498

Charging Party: Anna Lange _____ v. Respondent: Houston County _____

(b)(5)

> Documents Investigator's Recommendation for closure, along with closure
> codes; this information is both pre-decisional and deliberative and reflects the
> investigator's analysis.
> Documents reflecting the agency's charge processing codes; both general and
> specific to the charge.
> This information represents the investigator's pre-decisional thoughts and
> analysis regarding the processing of the charge.

| CASE LOG | | | |
|---|---|---|---|
| **CHARGE NO**<br><br><br>410-2019-05498 | | Lange, Anna | |
| | Houston County | | |
| | ACTION | Entered By | Reviewed/ Approved |
| 6-12-2019 | Assigned D. Stephens | DAS | |
| | Form 5 Drafted and Approved by Supervisor:    Yes  or  No | | |
| 6-19-2019 | **Charge served to Respondent (hard copy)** | DAS | |
| 6-19- 2019 | **Submitted for review** | DAS | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |