

# U.S. District Court [LIVE AREA]
## Middle District of Georgia (Macon)
## CIVIL DOCKET FOR CASE #: 5:19-cv-00392-MTT

LANGE v. HOUSTON COUNTY, GEORGIA et al
Assigned to: CHIEF DISTRICT JUDGE MARC T TREADWELL
Case in other court:  US Court of Appeals, 22-13626-DD
Cause: 42:1983 Civil Rights (Employment Discrimination)

Date Filed: 10/02/2019
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**ANNA LANGE**                                  represented by   **KENNETH E BARTON , III**
170 COLLEGE ST
MACON, GA 31201
478-841-9007
Fax: 4788419002
Email: keb@cooperbarton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ALEJANDRA CARABALLO**
520 8TH AVE
STE 2204
NEW YORK, NY 10018
646-993-1676
Fax: 646-993-1686
Email: acaraballo@transgenderlegal.org
*TERMINATED: 08/16/2021*

**AMANDA MARIE PAYNE**
787 7TH AVE
NEW YORK, NY 10019
212-728-3781
Email: apayne@willkie.com
*ATTORNEY TO BE NOTICED*

**CATHERINE FATA**
787 SEVENTH AVE
NEW YORK, NY 10019-6099
212-728-8563
Email: cfata@willkie.com
*ATTORNEY TO BE NOTICED*

**DAVID BROWN**
520 8TH AVE
STE 2204
NEW YORK, NY 10018
646-862-9396
Email: dbrown@transgenderlegal.org
*ATTORNEY TO BE NOTICED*

**JILL K GRANT**
787 SEVENTH AVENUE
NEW YORK, NY 10019-6099
212-728-8774
Email: jgrant@willkie.com
*ATTORNEY TO BE NOTICED*

**KEVIN BARRY**
275 MT CARMEL AVE
HAMDEN, CT 06518
203-582-3238
Email: legalclinic@quinnipiac.edu
*ATTORNEY TO BE NOTICED*

**MARY EATON**
601 LEXINGTON AVE
STE 31ST FL
NEW YORK, NY 10022
212-277-4000
Email: mary.eaton@freshfields.com
*TERMINATED: 08/15/2022*
*ATTORNEY TO BE NOTICED*

**MICHAEL DEVLIN COOPER**
170 COLLEGE ST
MACON, GA 31201
478-841-9007
Fax: 478-841-9002
Email: mdc@cooperbarton.com
*ATTORNEY TO BE NOTICED*

**NOAH E LEWIS**
223-241 WEST 38TH STREET
PO BOX 1094
NEW YORK, NY 10018
(646) 862-9396
Fax: (646) 930-5654
Email: nlewis@transgenderlegal.org
*TERMINATED: 08/31/2021*
*ATTORNEY TO BE NOTICED*

**NOAH ETHAN LEWIS**
520 8TH AVE
STE 2204
NEW YORK, NY 10018
646-862-9396
Fax: 646-993-1686
Email: nlewis@transgenderlegal.org
*TERMINATED: 08/31/2021*
*ATTORNEY TO BE NOTICED*

**SARAH MATLACK WASTLER**
1875 K ST NW
WASHINGTON, DC 20006-1238
202-303-1257

Fax: 202-303-2257
Email: swastler@willkie.com
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**WESLEY POWELL**
787 SEVENTH AVE
NEW YORK, NY 10019
212-728-8264
Email: wpowell@willkie.com
*ATTORNEY TO BE NOTICED*

**Z GABRIEL ARKLES**
520 8TH AVE
STE 2204
NEW YORK, NY 10004
646-993-1688
Email: garkles@transgenderlegal.org
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**HOUSTON COUNTY GEORGIA**                    represented by
**SHARON P MORGAN**
229 PEACHTREE ST NE STE 800
ATLANTA, GA 30303
404-659-6700
Email: morgan@elarbeethompson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
229 PEACHTREE ST NE
800 INTERNATIONAL TOWER
ATLANTA, GA 30303
404-582-8428
Fax: 404-222-9718
Email: lail@elarbeethompson.com
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
Elarbee, Thompson LLP
229 Peachtree Street, N.E.
800 International Tower
Atlanta, GA 30303
404-659-6700
Fax: (404) 222-9718
Email: gignilli@elarbeethompson.com
*ATTORNEY TO BE NOTICED*

**WILLIAM DRUMMOND DEVENEY**
229 Peachtree Street, N.E.
800 International Tower
Atlanta, GA 30303
404-659-6700

Email: deveney@elarbeethompson.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**HOUSTON COUNTY BOARD OF COMMISSIONERS**
*TERMINATED: 08/20/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Commissioner TOMMY STALNAKER**
*Houston County, In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**H. JAY WALKER, III**
*In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GAIL ROBINSON**
*In her individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LARRY THOMSON**
*In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TOM MCMICHAEL**
*In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BARRY HOLLAND**
*In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROBBIE DUNBAR**
*In his official and individual capacity*
*TERMINATED: 04/13/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**KENNETH CARTER**
*Director of Personnel at Houston County, In
his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sheriff CULLEN TALTON**
*in his Official Capacity*

represented by **PATRICK L LAIL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**SHARON P MORGAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**WILLIAM DRUMMOND DEVENEY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BLUE CROSS BLUE SHIELD
HEALTHCARE PLAN OF GEORGIA INC**

represented by **JAMES MITCHELL FUCETOLA , IV**
30 IVAN ALLEN JR BLVD NW
STE 700
ATLANTA, GA 30308
404-962-3511
Fax: 404-261-3556
Email: mfucetola@balch.com
*ATTORNEY TO BE NOTICED*

**T JOSHUA ARCHER**
30 IVAN ALLEN JR BLVD NW STE 700
ATLANTA, GA 30308-3036
404-261-6020
Email: jarcher@balch.com
*ATTORNEY TO BE NOTICED*

**TYLER P BISHOP**
3414 PEACHTREE RD NE
STE 1500
ATLANTA, GA 30326
404-589-3410
Email: tbishop@bakerdonelson.com
*TERMINATED: 09/12/2022*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/02/2019 | 1 | **COMPLAINT** against All Defendants Fee paid: Receipt # AGAMDC-3277783, $400 filed by All Plaintiffs (Attachments: # 1 Exhibit Ex. A EEOC Right to Sue, # 2 Civil Cover Sheet Civil Cover Sheet, # 3 Summons Houston County Summons, # 4 Summons Board of Commissioners Summons, # 5 Summons Stalnaker Summons, # 6 Summons Walker Summons, # 7 Summons Robinson Summons, # 8 Summons Thomson Summons, # 9 Summons McMichael Summons, # 10 Summons Holland Summons, # 11 Summons Dunbar Summons, # 12 Summons Carter Summons)(BARTON, KENNETH) (Entered: 10/02/2019) |
| 10/02/2019 | | NOTICE TO COUNSEL WESLEY POWELL, MARY EATON, JILL K GRANT, DAVID BROWN, NOAH E LEWIS, KEVIN M BARRY - Counsel is notified that they do not show in the court records that they meet the required attorney admissions policies of this court. If within 14 days of this notice all requirements, including the payment of Pro Hac Vice or admissions fees, have not been met, a show cause hearing will be scheduled. (vs) (Entered: 10/02/2019) |
| 10/02/2019 | 2 | Summons Issued as to KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III. (Attachments: # 1 Summons Robbie Dunbar, # 2 Summons Barry Holland, # 3 Summons Tom McMichael, # 4 Summons Larry Thomson, # 5 Summons Gail Robinson, # 6 Summons H. Jay Walker, # 7 Summons Tommy Stalnaker, # 8 Summons Houston County, Georgia, # 9 Summons Houston County Board of Commissioners)(vs) (Entered: 10/02/2019) |
| 10/02/2019 | 3 | Consent Form (28 USC 636(c)(1)) sent to ANNA LANGE (vs) (Entered: 10/02/2019) |
| 10/09/2019 | 4 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3283244, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing SDNY Cert. Good Standing) (LEWIS, NOAH) (Entered: 10/09/2019) |
| 10/09/2019 | 5 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by NOAH E LEWIS (nop) (Entered: 10/09/2019) |
| 10/14/2019 | 6 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3286675, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III; State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(EATON, MARY) (Entered: 10/14/2019) |
| 10/14/2019 | 7 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3286679, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III; State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(GRANT, JILL) (Entered: 10/14/2019) |
| 10/15/2019 | 8 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3287156, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State |

| | | Bar No. 301171. (Attachments: # 1 Certificate of Good Standing D.Conn. Cert. Good Standing) (BARRY, KEVIN) (Entered: 10/15/2019) |
|---|---|---|
| 10/15/2019 | 9 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3287634, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III; State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(POWELL, WESLEY) (Entered: 10/15/2019) |
| 10/16/2019 | 10 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by MARY EATON (ans) (Entered: 10/16/2019) |
| 10/16/2019 | 11 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by JILL K GRANT (ans) (Entered: 10/16/2019) |
| 10/16/2019 | 12 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by KEVIN BARRY (ans) (Entered: 10/16/2019) |
| 10/16/2019 | 13 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by WESLEY POWELL (ans) (Entered: 10/16/2019) |
| 10/28/2019 | 14 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3299956, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III, Ga. State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing District of North Dakota) (BROWN, DAVID) (Entered: 10/28/2019) |
| 10/30/2019 | 15 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by DAVID BROWN (nop) (Entered: 10/30/2019) |
| 11/01/2019 | 16 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to TOM MCMICHAEL (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 17 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to KENNETH CARTER (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 18 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to TOMMY STALNAKER (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 19 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to GAIL ROBINSON (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 20 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to H. JAY WALKER, III (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 21 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to ROBBIE DUNBAR (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 22 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to LARRY THOMPSON (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 23 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to BARRY HOLLAND (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 24 | STIPULATION *AND ACKNOWLEDGMENT OF SERVICE OF PROCESS* by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III (MORGAN, SHARON) (Entered: 11/01/2019) |
| 11/01/2019 | 25 | NOTICE of Attorney Appearance by Patrick L. Lail on behalf of All Defendants Attorney Patrick L. Lail added to party KENNETH CARTER(pty:dft), Attorney Patrick L. Lail added to party ROBBIE DUNBAR(pty:dft), Attorney Patrick L. Lail added to party BARRY |

| | | |
|---|---|---|
| | | HOLLAND(pty:dft), Attorney Patrick L. Lail added to party HOUSTON COUNTY BOARD OF COMMISSIONERS(pty:dft), Attorney Patrick L. Lail added to party HOUSTON COUNTY, GEORGIA(pty:dft), Attorney Patrick L. Lail added to party TOM MCMICHAEL(pty:dft), Attorney Patrick L. Lail added to party GAIL ROBINSON(pty:dft), Attorney Patrick L. Lail added to party TOMMY STALNAKER(pty:dft), Attorney Patrick L. Lail added to party LARRY THOMPSON(pty:dft), Attorney Patrick L. Lail added to party H. JAY WALKER, III(pty:dft) (Lail, Patrick) (Entered: 11/01/2019) |
| 11/01/2019 | 26 | NOTICE of Attorney Appearance by RICHARD READ GIGNILLIAT on behalf of All Defendants Attorney RICHARD READ GIGNILLIAT added to party KENNETH CARTER(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party ROBBIE DUNBAR(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party BARRY HOLLAND(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party HOUSTON COUNTY BOARD OF COMMISSIONERS(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party HOUSTON COUNTY, GEORGIA(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party TOM MCMICHAEL(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party GAIL ROBINSON(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party TOMMY STALNAKER(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party LARRY THOMPSON(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party H. JAY WALKER, III(pty:dft) (GIGNILLIAT, RICHARD) (Entered: 11/01/2019) |
| 11/01/2019 | 27 | NOTICE of Attorney Appearance by SHARON P MORGAN on behalf of All Defendants Attorney SHARON P MORGAN added to party KENNETH CARTER(pty:dft), Attorney SHARON P MORGAN added to party ROBBIE DUNBAR(pty:dft), Attorney SHARON P MORGAN added to party BARRY HOLLAND(pty:dft), Attorney SHARON P MORGAN added to party HOUSTON COUNTY BOARD OF COMMISSIONERS(pty:dft), Attorney SHARON P MORGAN added to party HOUSTON COUNTY, GEORGIA(pty:dft), Attorney SHARON P MORGAN added to party TOM MCMICHAEL(pty:dft), Attorney SHARON P MORGAN added to party GAIL ROBINSON(pty:dft), Attorney SHARON P MORGAN added to party TOMMY STALNAKER(pty:dft), Attorney SHARON P MORGAN added to party LARRY THOMPSON(pty:dft), Attorney SHARON P MORGAN added to party H. JAY WALKER, III(pty:dft) (MORGAN, SHARON) (Entered: 11/01/2019) |
| 11/22/2019 | 28 | MOTION for Preliminary Injunction by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Brief in Supp. of Motion for Injunction, # 2 Exhibit Lange Declaration, # 3 Exhibit Bluebond-Langner Declaration, # 4 Exhibit Lewis Declaration, # 5 Exhibit Schechter Declaration)(BARTON, KENNETH) (Entered: 11/22/2019) |
| 11/26/2019 | | NOTICE OF **SETTING** TELEPHONE CONFERENCE: Telephone Conference set for 12/5/2019 at 10:00 AM in Macon before US DISTRICT JUDGE MARC THOMAS TREADWELL. Call-in instructions emailed to the parties. (kat) (Entered: 11/26/2019) |
| 12/03/2019 | 29 | MOTION to Dismiss Complaint re 1 Complaint by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III filed by SHARON P MORGAN. (Attachments: # 1 Memorandum in Support) (MORGAN, SHARON) Modified on 12/4/2019 to edit docket text (vs). (Entered: 12/03/2019) |
| 12/03/2019 | 30 | ANSWER to Complaint by HOUSTON COUNTY, GEORGIA. (Attachments: # 1 Exhibit A - 2019 POS Plan, # 2 Exhibit B - EEOC FOIA File)(MORGAN, SHARON) Modified on 12/4/2019 to edit docket text (vs). (Entered: 12/03/2019) |
| 12/03/2019 | 31 | MOTION for Judgment on the Pleadings by HOUSTON COUNTY, GEORGIA filed by SHARON P MORGAN. (Attachments: # 1 Memorandum in Support)(MORGAN, SHARON) (Entered: 12/03/2019) |
| 12/05/2019 | 32 | Minute Entry for proceedings held before US DISTRICT JUDGE MARC THOMAS TREADWELL: Telephone Conference held on 12/5/2019. Court Reporter: Darlene Fuller. (kat) |

| | | |
|---|---|---|
| | | (Entered: 12/05/2019) |
| 12/11/2019 | 33 | Letter regarding Request of 7-day extension to file Defendants' Response to Plaintiff's Motion for Preliminary Injunction re 28 MOTION for Preliminary Injunction (MORGAN, SHARON) (Entered: 12/11/2019) |
| 12/12/2019 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 28 MOTION for Preliminary Injunction filed by ANNA LANGE (vs) (Entered: 12/12/2019) |
| 12/14/2019 | 34 | UNOPPOSED MOTION for Extension of Time to File RESPONSE as to 31 MOTION for Judgment on the Pleadings, 29 MOTION to Dismiss Complaint re 1 Complaint,, :MOTION to Dismiss Complaint, 28 MOTION for Preliminary Injunction by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 12/14/2019) |
| 12/17/2019 | 35 | **ORDER** GRANTING 34 Motion for Extension of Time to File Reply for 34 Plaintiff's motion for preliminary injunction, Response for 29 Defendants' motion to dismiss complaint, and Response for 31 Defendant's motion for judgment on the pleadings. Plaintiff shall have until January 14, 2020 to file the briefs. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 12/17/2019. (kat) (Entered: 12/17/2019) |
| 12/20/2019 | 36 | RESPONSE filed by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III re 28 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit 1 - Declaration of Kenneth Carter)(GIGNILLIAT, RICHARD) (Entered: 12/20/2019) |
| 01/06/2020 | 37 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3354423, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(WASTLER, SARAH) (Entered: 01/06/2020) |
| 01/06/2020 | 38 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by SARAH MATLACK WASTLER (nop) (Entered: 01/06/2020) |
| 01/09/2020 | 39 | UNOPPOSED MOTION for Leave to File Excess Pages for Motions to Dismiss and for Judgment on the Pleadings by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 01/09/2020) |
| 01/10/2020 | 40 | This is a text only entry; no document issued. **ORDER** GRANTING 39 Motion for Leave to File Omnibus Response and to Extend Page Limits. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 1/10/2020. (wbm) (Entered: 01/10/2020) |
| 01/14/2020 | 41 | RESPONSE filed by ANNA LANGE re 31 MOTION for Judgment on the Pleadings, 29 MOTION to Dismiss Complaint re 1 Complaint,, :MOTION to Dismiss Complaint (BARTON, KENNETH) (Entered: 01/14/2020) |
| 01/14/2020 | 42 | REPLY to Response filed by ANNA LANGE re 28 MOTION for Preliminary Injunction (BARTON, KENNETH) (Entered: 01/14/2020) |
| 01/21/2020 | 43 | TRANSCRIPT of Telephone Conference held on 12/05/2019, before Judge Marc T. Treadwell. Court Reporter Darlene D. Fuller. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (ddf) (Entered: 01/21/2020) |
| 01/23/2020 | 44 | Letter regarding Request of 14-day extension to file Defendants' Reply in Support of their Motion to Dismiss and Defendant Houston County's Reply in Support of its Motion for Judgment on the Pleadings re 31 MOTION for Judgment on the Pleadings, 29 MOTION to |

| | | |
|---|---|---|
| | | Dismiss Complaint re 1 Complaint,, :MOTION to Dismiss Complaint (MORGAN, SHARON) (Entered: 01/23/2020) |
| 01/23/2020 | 45 | MOTION for Hearing re Motion for Preliminary Injunction re 36 Response to Motion, 43 Transcript of Proceedings, 28 MOTION for Preliminary Injunction (COOPER, MICHAEL) Modified on 1/24/2020 to change event type (vs). (Entered: 01/23/2020) |
| 01/24/2020 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 31 MOTION for Judgment on the Pleadings filed by HOUSTON COUNTY, GEORGIA (vs) (Entered: 01/24/2020) |
| 01/30/2020 | 46 | Letter from Judge Treadwell regarding pending motions. (kat) (Entered: 01/30/2020) |
| 02/06/2020 | 47 | UNOPPOSED MOTION for Leave to File Excess Pages for Defendants' Reply in Support of their Motion to Dismiss and Defendants' Reply in Support of their Motion for Judgment on the Pleadings by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III filed by SHARON P MORGAN.(MORGAN, SHARON) (Entered: 02/06/2020) |
| 02/07/2020 | 48 | This is a text only entry; no document issued. **ORDER** GRANTING 47 Motion for Leave to File Excess Pages. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 2/7/2020. (wbm) (Entered: 02/07/2020) |
| 02/11/2020 | 49 | REPLY to Response filed by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, TOM MCMICHAEL, GAIL ROBINSON re 29 MOTION to Dismiss Complaint re 1 Complaint,, :MOTION to Dismiss Complaint (MORGAN, SHARON) (Entered: 02/11/2020) |
| 02/11/2020 | 50 | REPLY to Response filed by HOUSTON COUNTY, GEORGIA re 31 MOTION for Judgment on the Pleadings (MORGAN, SHARON) (Entered: 02/11/2020) |
| 02/12/2020 | 51 | Letter regarding Intention to File Motion for Leave to Amend Complaint (POWELL, WESLEY) (Entered: 02/12/2020) |
| 02/26/2020 | 52 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by All Plaintiffs Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3401421, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III 301171. (Attachments: # 1 Certificate of Good Standing)(CARABALLO, ALEJANDRA) (Entered: 02/26/2020) |
| 02/27/2020 | 53 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by ALEJANDRA CARABALLO (nop) (Entered: 02/27/2020) |
| 03/23/2020 | 54 | **ORDER** STAYING pending motions 28 MOTION for Preliminary Injunction; 29 MOTION to Dismiss Complaint; 31 MOTION for Judgment on the Pleadings, and 45 MOTION for Hearing until the Plaintiff's motion to amend is resolved. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 3/23/2020. (kat) (Entered: 03/23/2020) |
| 04/10/2020 | 55 | STIPULATION *Regarding Amended Complaint, Motion for Preliminary Injunction and Dispositive Motions* re 29 MOTION to Dismiss Complaint re 1 Complaint,, :MOTION to Dismiss Complaint, 28 MOTION for Preliminary Injunction by ANNA LANGE (BARTON, KENNETH) (Entered: 04/10/2020) |
| 04/10/2020 | 56 | AMENDED 1 Complaint,, against All Defendants by ANNA LANGE (BARTON, KENNETH) (Entered: 04/10/2020) |
| 04/10/2020 | 57 | MOTION for Preliminary Injunction by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Brief in Support of Motion, # 2 Exhibit Lange Declaration, # 3 Exhibit Lewis Declaration, # 4 Exhibit Schechter Declaration, # 5 Exhibit Bluebond-Langer Declaration)(BARTON, KENNETH) (Entered: 04/10/2020) |

| | | |
|---|---|---|
| 04/28/2020 | 58 | Letter regarding extension of time to file Defendants' Response to Plaintiff's Superseding Motion for Preliminary Injunction re 57 MOTION for Preliminary Injunction (MORGAN, SHARON) (Entered: 04/28/2020) |
| 04/28/2020 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 57 MOTION for Preliminary Injunction filed by ANNA LANGE (vs) (Entered: 04/28/2020) |
| 05/06/2020 | 59 | UNOPPOSED MOTION for Leave to File Excess Pages for Defendants' Brief in Support of their Motion to Dismiss by KENNETH CARTER, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III filed by SHARON P MORGAN.(MORGAN, SHARON) (Entered: 05/06/2020) |
| 05/08/2020 | 60 | This is a text only entry; no document issued. **ORDER** GRANTING 59 Motion for Leave to File Excess Pages. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 5/8/2020. (wbm) (Entered: 05/08/2020) |
| 05/11/2020 | 61 | MOTION to Dismiss for Lack of Jurisdiction by CULLEN TALTON filed by SHARON P MORGAN. (Attachments: # 1 Memorandum in Support)(MORGAN, SHARON) (Entered: 05/11/2020) |
| 05/11/2020 | 62 | MOTION to Dismiss Complaint re 56 Amended Complaint/Petition : by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III filed by SHARON P MORGAN. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A - 2019 POS Plan)(MORGAN, SHARON) (Entered: 05/11/2020) |
| 05/15/2020 | 63 | RESPONSE filed by KENNETH CARTER, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III re 57 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit 1 - Declaration of Kenneth Carter)(MORGAN, SHARON) (Entered: 05/15/2020) |
| 05/22/2020 | 64 | UNOPPOSED MOTION to Amend/Correct 57 MOTION for Preliminary Injunction by ANNA LANGE filed by DAVID BROWN. (Attachments: # 1 Affidavit Corrected Declaration of Sgt. Lange)(BROWN, DAVID) (Entered: 05/22/2020) |
| 05/26/2020 | 65 | This is a text only entry; no document issued. **ORDER** GRANTING 64 Motion to Amend/Correct. The Defendants shall have 7 days to file an amended response brief. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 5/26/2020. (wbm) (Entered: 05/26/2020) |
| 05/26/2020 | 66 | EXHIBIT(S) *Corrected Declaration with Exhibits* by ANNA LANGE re 65 Order on Motion to Amend/Correct, (BARTON, KENNETH) (Entered: 05/26/2020) |
| 05/26/2020 | 67 | Letter regarding Request of 14-day extension to file Plaintiffs Responses re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition :, 61 MOTION to Dismiss for Lack of Jurisdiction (WASTLER, SARAH) (Entered: 05/26/2020) |
| 05/27/2020 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition : filed by HOUSTON COUNTY BOARD OF COMMISSIONERS, BARRY HOLLAND, TOM MCMICHAEL, KENNETH CARTER, LARRY THOMSON, H. JAY WALKER, III, GAIL ROBINSON, ROBBIE DUNBAR, HOUSTON COUNTY, GEORGIA, TOMMY STALNAKER, CULLEN TALTON, 61 MOTION to Dismiss for Lack of Jurisdiction filed by CULLEN TALTON (vs) (Entered: 05/27/2020) |
| 06/02/2020 | 68 | DEFENDANTS' AMENDED RESPONSE in Opposition to Plaintiff's Superseding Motion for a Preliminary Injunction filed by KENNETH CARTER, BARRY HOLLAND, HOUSTON |

| | | |
|---|---|---|
| | | COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III re 57 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit 1 - Declaration of Kenneth Carter)(MORGAN, SHARON) Modified on 6/3/2020 to add docket text(vs). (Entered: 06/02/2020) |
| 06/10/2020 | 69 | UNOPPOSED MOTION for Leave to File Excess Pages for Response to Defendants' Motions to Dismiss by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 06/10/2020) |
| 06/10/2020 | | NOTICE OF SETTING HEARING ON MOTION re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition, and 61 MOTION to Dismiss for Lack of Jurisdiction: Motion Hearing set for 8/10/2020 at 2:00 PM in Macon before CHIEF US DISTRICT JUDGE MARC THOMAS TREADWELL. Hearing will occur via **VIDEOCONFERENCE** . Counsel will receive connection information by separate email. Interested parties may obtain dial information by emailing macon.ecf@gamd.uscourts.gov. (kat) Text modified on 7/28/2020 to include videoconference language(kat). (Entered: 06/10/2020) |
| 06/11/2020 | 70 | This is a text only entry; no document issued. **ORDER** GRANTING 69 Motion for Leave to File Excess Pages. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 6/11/2020. (wbm) (Entered: 06/11/2020) |
| 06/15/2020 | 71 | EMERGENCY MOTION for Extension of Time to File RESPONSE as to 57 MOTION for Preliminary Injunction, 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition :, 61 MOTION to Dismiss for Lack of Jurisdiction by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 06/15/2020) |
| 06/15/2020 | 72 | This is a text only entry; no document issued. **ORDER** GRANTING 71 Emergency Unopposed Motion for Extension of Time to File RESPONSE re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition, 57 MOTION for Preliminary Injunction, and 61 MOTION to Dismiss for Lack of Jurisdiction. Plaintiff shall have through and including 6/18/2020 to respond. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 6/15/2020. (kat) (Entered: 06/15/2020) |
| 06/18/2020 | 73 | REPLY to Response filed by ANNA LANGE re 57 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit Ex 1 EEOC Interim Enforcement Guidance on application of ADA, # 2 Exhibit Ex 2 Notice of Claim Sheriff Talton)(BARTON, KENNETH) (Entered: 06/18/2020) |
| 06/18/2020 | 74 | RESPONSE filed by ANNA LANGE re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition :, 61 MOTION to Dismiss for Lack of Jurisdiction (Attachments: # 1 Exhibit Ex. A Demonstrative Chart)(BARTON, KENNETH) (Entered: 06/18/2020) |
| 06/25/2020 | 75 | Letter regarding Request of 14-day extension to file Defendant Talton's' Reply in Support of his Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Defendants' Reply in Support of their Motion to Dismiss Amended Complaint re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition :, 61 MOTION to Dismiss for Lack of Jurisdiction (MORGAN, SHARON) (Entered: 06/25/2020) |
| 06/25/2020 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 75 Letter, 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition : filed by HOUSTON COUNTY BOARD OF COMMISSIONERS, BARRY HOLLAND, TOM MCMICHAEL, KENNETH CARTER, LARRY THOMSON, H. JAY WALKER, III, GAIL ROBINSON, ROBBIE DUNBAR, HOUSTON COUNTY, GEORGIA, TOMMY STALNAKER, CULLEN TALTON, 61 MOTION to Dismiss for Lack of Jurisdiction filed by CULLEN TALTON () (tam) (Entered: 06/25/2020) |
| 07/10/2020 | 76 | UNOPPOSED MOTION for Leave to File Excess Pages for Defendants' Reply Brief of their Rule 12(b)(6) Motion to Dismiss and Defendant Talton's Reply Brief in Support of his Rule 12(b)(1) Motion to Dismiss by KENNETH CARTER, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM |

| | | MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III filed by SHARON P MORGAN.(MORGAN, SHARON) (Entered: 07/10/2020) |
|---|---|---|
| 07/13/2020 | 77 | This is a text only entry; no document issued. **ORDER** GRANTING 76 Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 7/13/2020. (wbm) (Entered: 07/13/2020) |
| 07/16/2020 | 78 | Motion for hearing/Letter regarding oral argument for PI motion (WASTLER, SARAH) Modified on 7/17/2020 to edit docket text(vs). (Entered: 07/16/2020) |
| 07/16/2020 | 79 | REPLY to Response filed by KENNETH CARTER, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition : (MORGAN, SHARON) (Entered: 07/16/2020) |
| 07/16/2020 | 80 | REPLY to Response filed by CULLEN TALTON re 61 MOTION to Dismiss for Lack of Jurisdiction (MORGAN, SHARON) (Entered: 07/16/2020) |
| 08/05/2020 | | AMENDED NOTICE OF **RESETTING** HEARING ON MOTION re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition, 61 MOTION to Dismiss for Lack of Jurisdiction. Motion Hearing PREVIOUSLY set for 8/10/2020 is RESET for 8/19/2020 at 2:00 PM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will be convened in court. Counsel shall appear via **VIDEOCONFERENCE**. Counsel will receive connection information by separate email. For telephonic access, contact macon.ecf@gamd.uscourts.gov.(kat) Text modified on 8/10/2020 (kat). (Entered: 08/05/2020) |
| 08/11/2020 | 81 | UNOPPOSED MOTION for Leave to File Surreply by ANNA LANGE filed by DAVID BROWN.(BROWN, DAVID) (Entered: 08/11/2020) |
| 08/11/2020 | 82 | This is a text only entry; no document issued. **ORDER** GRANTING 81 Motion for Leave to File Surreply. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/11/2020. (wbm) (Entered: 08/11/2020) |
| 08/14/2020 | 83 | SURREPLY filed by ANNA LANGE re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition :, 61 MOTION to Dismiss for Lack of Jurisdiction (BROWN, DAVID) (Entered: 08/14/2020) |
| 08/20/2020 | 84 | **ORDER**. The official-capacity claims against Defendants Stalnaker, Walker, Robinson, Thomson, McMichael, Holland, Carter, and the Houston County Board of Commissioners, are DISMISSED without prejudice as redundant of the claims against the County. If discovery reveals that any of those claims are not redundant, Plaintiff may amend her complaint to add the claims back in. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/20/2020. (kat) (Entered: 08/20/2020) |
| 08/21/2020 | 85 | NOTICE of Statement of Authorities by ANNA LANGE re 74 Response to Motion (WASTLER, SARAH) (Entered: 08/21/2020) |
| 08/26/2020 | 86 | NOTICE Defendants' Statement of Additional Authorities by KENNETH CARTER, BARRY HOLLAND, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition : (Attachments: # 1 Exhibit 1 Childs v Macon-Bibb County Ind'l Auth., # 2 Exhibit 2 Zimmerman v. Cherokee County)(MORGAN, SHARON) (Entered: 08/26/2020) |
| 08/28/2020 | 87 | Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Motion Hearing held on 8/19/2020 re 61 MOTION to Dismiss for Lack of Jurisdiction filed by CULLEN TALTON; and 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition filed by HOUSTON COUNTY BOARD |

| | | OF COMMISSIONERS, BARRY HOLLAND, TOM MCMICHAEL, KENNETH CARTER, LARRY THOMSON, H. JAY WALKER, III, GAIL ROBINSON, ROBBIE DUNBAR, HOUSTON COUNTY, GEORGIA, TOMMY STALNAKER, CULLEN TALTON. Court Reporter: Darlene Fuller. (kat) (Entered: 08/28/2020) |
|---|---|---|
| 09/02/2020 | 88 | TRANSCRIPT of Motion to Dismiss held on 08/19/2020, before Judge Marc T. Treadwell. Court Reporter Darlene D. Fuller. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (ddf) (Entered: 09/02/2020) |
| 10/30/2020 | 89 | **ORDER** DENYING 61 Motion to Dismiss for Lack of Jurisdiction; and GRANTING in part and DENYING in part 62 Motion to Dismiss Complaint. The remaining claims are (1) ADA Title I claims against the County and the Sheriff in his official capacity, (2) Title VII claims against the County and the Sheriff in his official capacity, and (3) federal equal protection claims against the County and the Sheriff in his official capacity. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/30/2020. (kat) (Entered: 10/30/2020) |
| 10/30/2020 | 90 | ***RE-FILED AT 91 ***Letter regarding Request for Oral Argument re 57 MOTION for Preliminary Injunction (BARTON, KENNETH) Modified on 11/2/2020 to add docket text (vs). (Entered: 10/30/2020) |
| 11/02/2020 | | Notice of Deficiency (related document(s): 90 Letter ); Document must be re-filed using correct event - MOTION FOR HEARING(vs) (Entered: 11/02/2020) |
| 11/02/2020 | 91 | MOTION for Hearing re 57 MOTION for Preliminary Injunction by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 11/02/2020) |
| 11/13/2020 | 92 | ANSWER to 56 Amended Complaint/Petition by HOUSTON COUNTY, GEORGIA. Related document: 56 Amended Complaint/Petition filed by ANNA LANGE.(MORGAN, SHARON) (Entered: 11/13/2020) |
| 11/13/2020 | 93 | DISREGARD - WRONG DOCUMENT ATTACHED - REFILED AT TAB 96. ANSWER to 56 Amended Complaint/Petition by CULLEN TALTON. Related document: 56 Amended Complaint/Petition filed by ANNA LANGE.(MORGAN, SHARON) Modified on 11/16/2020 (ggs). (Entered: 11/13/2020) |
| 11/13/2020 | 94 | MOTION for Reconsideration re 89 Order on Motion to Dismiss/Lack of Jurisdiction,,, Order on Motion to Dismiss Complaint,, by HOUSTON COUNTY, GEORGIA filed by SHARON P MORGAN.(MORGAN, SHARON) (Entered: 11/13/2020) |
| 11/13/2020 | 95 | DISREGARD - WRONG DOCUMENT ATTACHED - REFILED AT TAB 96. ANSWER to 56 Amended Complaint/Petition by CULLEN TALTON. Related document: 56 Amended Complaint/Petition filed by ANNA LANGE.(MORGAN, SHARON) Modified on 11/16/2020 (ggs). (Entered: 11/13/2020) |
| 11/13/2020 | 96 | ANSWER to 56 Amended Complaint/Petition by CULLEN TALTON. Related document: 56 Amended Complaint/Petition filed by ANNA LANGE.(MORGAN, SHARON) (Entered: 11/13/2020) |
| 11/16/2020 | | Notice of Deficiency (related document(s): 95 Answer to Amended Complaint filed by CULLEN TALTON, 93 Answer to Amended Complaint filed by CULLEN TALTON: Wrong document attached. No action necessary, correctly filed at Tab 96. (ggs) (Entered: 11/16/2020) |
| 11/19/2020 | 97 | UNOPPOSED MOTION for Extension of Time to File RESPONSE as to 94 MOTION for Reconsideration re 89 Order on Motion to Dismiss/Lack of Jurisdiction,,, Order on Motion to Dismiss Complaint,, by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 11/19/2020) |
| 11/19/2020 | 98 | UNOPPOSED MOTION for Discovery by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Memorandum in Support of Unopposed Motion |

| | | |
|---|---|---|
| | | for Expedited Discovery, # 2 Proposed Order Proposed Consent Order for Expedited Discovery) (BARTON, KENNETH) (Entered: 11/19/2020) |
| 11/20/2020 | 99 | This is a text only entry; no document issued. **ORDER** GRANTING 97 Motion for Extension of Time to File RESPONSE re 94 MOTION for Reconsideration. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/20/2020. (wbm) (Entered: 11/20/2020) |
| 11/20/2020 | 100 | **CONSENT ORDER FOR EXPEDITED DISCOVERY**. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/20/2020. (kat) (Entered: 11/20/2020) |
| 11/30/2020 | 101 | RESPONSE filed by ANNA LANGE re 94 MOTION for Reconsideration re 89 Order on Motion to Dismiss/Lack of Jurisdiction,,, Order on Motion to Dismiss Complaint,, (Attachments: # 1 Exhibit Declaration of David Brown)(BARTON, KENNETH) (Entered: 11/30/2020) |
| 12/22/2020 | 102 | **ORDER** DENYING 94 Motion for Reconsideration. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 12/22/2020. (kat) (Entered: 12/22/2020) |
| 01/07/2021 | 103 | JOINT MOTION for Protective Order by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Proposed Order Prosposed Consent Protective and Confidentiality Order) (BARTON, KENNETH) (Entered: 01/07/2021) |
| 01/08/2021 | 104 | **CONSENT PROTECTIVE AND CONFIDENTIALITY ORDER**. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 1/8/2021. (kat) (Entered: 01/08/2021) |
| 02/10/2021 | 105 | JOINT MOTION for Consent Order Extending Expedited Discovery Period re 100 Order on Motion for Discovery by HOUSTON COUNTY, GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Proposed Order)(LAIL, PATRICK) (Entered: 02/10/2021) |
| 02/10/2021 | 106 | **ORDER** GRANTING 105 JOINT MOTION for Consent Order Extending Expedited Discovery Period re 100 Consent Order for Expedited Discovery. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 2/10/2021. (kat) (Entered: 02/10/2021) |
| 03/10/2021 | 107 | UNOPPOSED MOTION for Second Consent Order Extending Expedited Discovery Period re 98 MOTION for Discovery by HOUSTON COUNTY, GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Proposed Order Text of Order)(LAIL, PATRICK) (Entered: 03/10/2021) |
| 03/11/2021 | 108 | This is a text only entry; no document issued. **ORDER** GRANTING 107 Unopposed Motion for Second Consent Order Extending Expedited Discovery Period. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 3/11/2021. (wbm) (Entered: 03/11/2021) |
| 03/15/2021 | 109 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3741013, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III, 301171. (Attachments: # 1 Certificate of Good Standing SDNY COGS)(ARKLES, Z) (Entered: 03/15/2021) |
| 03/16/2021 | 110 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by Z GABRIEL ARKLES (nop) (Entered: 03/16/2021) |
| 05/19/2021 | 111 | MOTION to Withdraw Document 57 Motion for Preliminary Injunction, by ANNA LANGE filed by SARAH MATLACK WASTLER.(WASTLER, SARAH) Modified on 5/26/2021 to edit text(vs). (Entered: 05/19/2021) |
| 05/26/2021 | 112 | **ORDER**. Discovery SHALL be completed by August 19, 2021, and dispositive and Daubert motions are due by September 2, 2021. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 5/26/2021. (kat) (Entered: 05/26/2021) |
| 08/06/2021 | 113 | UNOPPOSED MOTION for Extension of Time to File. by HOUSTON COUNTY, GEORGIA filed by PATRICK L LAIL. (Attachments: # 1 Proposed Order)(LAIL, PATRICK) (Entered: |

| | | |
|---|---|---|
| | | 08/06/2021) |
| 08/09/2021 | 114 | This is a text only entry; no document issued. **ORDER** GRANTING 113 Motion for Extension of Time. Discovery to be complete by 9/20/2021. Dispositive and *Daubert* motions due by 10/20/2021. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/9/2021. (wbm) (Entered: 08/09/2021) |
| 08/16/2021 | 115 | MOTION to Withdraw as Attorney by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Proposed Order Proposed Order on Motion to Withdraw)(BARTON, KENNETH) (Entered: 08/16/2021) |
| 08/30/2021 | 116 | MOTION to Withdraw as Attorney by ANNA LANGE filed by NOAH ETHAN LEWIS. (Attachments: # 1 Proposed Order Proposed Order Proposed Order on Motion to Withdraw) (LEWIS, NOAH) (Entered: 08/30/2021) |
| 10/04/2021 | 117 | UNOPPOSED MOTION re 114 Order on Motion for Extension of Time (Misc), by HOUSTON COUNTY BOARD OF COMMISSIONERS, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Proposed Order)(LAIL, PATRICK) (Entered: 10/04/2021) |
| 10/04/2021 | 118 | This is a text only entry; no document issued. **ORDER** GRANTING 117 Motion for Extension of Time. Dispositive and *Daubert* motions due by 11/3/2021. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/4/21 (bwr) (Entered: 10/04/2021) |
| 10/18/2021 | 119 | MOTION to Withdraw as Attorney by ANNA LANGE filed by SARAH MATLACK WASTLER. (Attachments: # 1 Exhibit A: Notice of Withdrawal of Counsel, # 2 Proposed Order)(WASTLER, SARAH) (Entered: 10/18/2021) |
| 10/27/2021 | 120 | CONSENT MOTION to Seal Document(s) by BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC filed by TYLER P BISHOP. (Attachments: # 1 Exhibit A - Subpoena, # 2 Exhibit B - Declaration of D. Smead, # 3 Exhibit C - Proposed Order)(BISHOP, TYLER) (Entered: 10/27/2021) |
| 10/27/2021 | 121 | UNOPPOSED MOTION to Seal Document(s) 104 Order on Motion for Protective Order by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Proposed Order Proposed Order)(BARTON, KENNETH) (Entered: 10/27/2021) |
| 10/28/2021 | 122 | **ORDER** GRANTING 120 CONSENT MOTION to Seal Document(s) by BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/28/2021. (kat) (Entered: 10/28/2021) |
| 10/28/2021 | 123 | **ORDER** GRANTING 121 UNOPPOSED MOTION to Seal Document(s). Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/28/2021. (kat) (Entered: 10/28/2021) |
| 10/28/2021 | 124 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # CGAMDC-3935413, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(FATA, CATHERINE) (Entered: 10/28/2021) |
| 10/28/2021 | 125 | UNOPPOSED MOTION for Leave to File Excess Pages for Motions for Summary Judgment by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by SHARON P MORGAN. (MORGAN, SHARON) (Entered: 10/28/2021) |
| 10/28/2021 | 126 | UNOPPOSED MOTION for Leave to File Excess Pages for Motion for Summary Judgment by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 10/28/2021) |
| 10/29/2021 | | Notice of Deficiency (related document(s): 124 Petition to the Clerk for Admission to Plead and Practice Pro Hac Vice, filed by ANNA LANGE ); Other - If you are not a member of the State Bar of Georgia and do not maintain an office in Georgia, you must obtain a Certificate of Good Standing from a US District Court where you are admitted to practice. (The Certificate must be |

| | | |
|---|---|---|
| | | issued within 30 days of petition for admission.) State court certificates are NOT accepted. (mdm) (Entered: 10/29/2021) |
| 11/01/2021 | 127 | This is a text only entry; no document issued. **ORDER** GRANTING 125 Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/1/2021. (bwr) (Entered: 11/01/2021) |
| 11/01/2021 | 128 | This is a text only entry; no document issued. **ORDER** GRANTING 126 Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/1/2021. (bwr) (Entered: 11/01/2021) |
| 11/03/2021 | 129 | MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 Expert Report of Paisley Currah, # 4 Exhibit 3 2015 U.S. Transgender Survey GA State Report)(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | 130 | MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 Expert Report for Chanel Haley, # 4 Exhibit 3 2015 U.S. Transgender Survey GA State Report)(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | 131 | Request to ANNA LANGE to file original discovery document(s) by CULLEN TALTON, HOUSTON COUNTY GEORGIA.(MORGAN, SHARON) (Entered: 11/03/2021) |
| 11/03/2021 | 132 | MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 Plaintiff's Expert Witness Identification, # 3 Exhibit 2 Expert Report of Loren S. Schechter, M.D., # 4 Exhibit 3 Societal Implications of Health Coverage for Medically Necessary Services in the U.S. Transgender Population, # 5 Exhibit 4 The implications of Allowing Transgender Personnel to Serve Openly in the U.S. Military, # 6 Exhibit 5 Declaration of Kenneth Carter)(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | 133 | MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 Expert Report of Joan Barrett, FSA, MAAA, # 4 Exhibit 3 Joan Barret Deposition Excerpt Pages, # 5 Exhibit 4 Actuarial Standard of Practice No. 1, # 6 Exhibit 5 Actuarial Standard of Practice No. 41, # 7 Exhibit 6 Expert Report of James P. Galasso (8-12-21), # 8 Exhibit 7 Declaration of Kenneth Carter, # 9 Exhibit 8 Expert Report of Joan C Barrett and Elaine T. Corrough Submitted On Behalf of the Plaintiffs (3/22/19))(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | 134 | ***Refiled at 142 *** MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 Plaintiff's Disclosure of Expert Witness Pursuant to Fed.R.Civ.P26(A)(2)(C), # 4 Exhibit 3 Health Insurance Coverage of Gender-Affirming Top Surgery in the United States, # 5 Exhibit 4 Anna Lange 4/2/21 Deposition Excerpt Pages, # 6 Exhibit 5 Declaration of Kenneth Carter, # 7 Exhibit 6 Declaration of Joan C Barrett, # 8 Exhibit 7 Expert Report of Joan C. Barrett and Elaine T. Corrough Submitted on Behalf of the Plaintiffs) (LAIL, PATRICK) Modified on 11/4/2021 to add docket text(vs). (Entered: 11/03/2021) |
| 11/03/2021 | 135 | ***Refiled at 140 *** MOTION for Summary Judgment by ANNA LANGE filed by WESLEY POWELL.(POWELL, WESLEY) Modified on 11/4/2021 to add docket text(vs). (Entered: 11/03/2021) |
| 11/03/2021 | 136 | MOTION for Summary Judgment by CULLEN TALTON filed by SHARON P MORGAN. (Attachments: # 1 Statement of Material Facts, # 2 Declaration of Donna Clark, # 3 Declaration of Tommy Stalnaker, # 4 Declaration of Barry Holland, # 5 Declaration of Ken Carter, # 6 |

| | | |
|---|---|---|
| | | Declaration of William Rape, # 7 Declaration of Gail Robinson, # 8 Declaration of Jay Walker, # 9 Memorandum in Support)(MORGAN, SHARON) (Entered: 11/03/2021) |
| 11/03/2021 | 137 | MOTION for Summary Judgment by HOUSTON COUNTY GEORGIA filed by PATRICK L LAIL. (Attachments: # 1 Stmt of Material Facts Resp, # 2 Memorandum in Support, # 3 Plaintiff Anna Lange 4/2/21 Deposition and Exhibits, # 4 Declaration of Donna Clark, # 5 Declaration of Kenneth Carter, # 6 Declaration of Barry Holland, # 7 Declaration of Tommy Stalnaker, # 8 Declaration of Gail Robinson, # 9 Declaration of H. Jay Walker, # 10 Declaration of William H. Rape, # 11 August 24, 2021 Deposition of Joan Barrett, # 12 September 9, 2021 Deposition of Tom Galasso)(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | 138 | Certificate of Need to File Discovery by HOUSTON COUNTY GEORGIA, CULLEN TALTON. Related document: 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON. (MORGAN, SHARON) (Entered: 11/03/2021) |
| 11/03/2021 | 139 | ***Disregard refiled at 140 *** MEMORANDUM in Support filed by ANNA LANGE re: 135 MOTION for Summary Judgment (POWELL, WESLEY) Modified on 11/4/2021 to add docket text(vs). (Entered: 11/03/2021) |
| 11/04/2021 | 140 | MOTION for Summary Judgment by ANNA LANGE filed by WESLEY POWELL. (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts, # 3 Declaration of Jill K. Grant, # 4 Declaration of Sgt. Anna Lange, # 5 Declaration of Loren S. Schechter, # 6 Declaration of Joan Barrett, # 7 Declaration of Rachel Bluebond-Langner, # 8 Declaration of Chanel Haley, # 9 Declaration of Paisley Currah)(POWELL, WESLEY) (Entered: 11/04/2021) |
| 11/04/2021 | | Notice of Deficiency (related document(s): 139 Memorandum in Support filed by ANNA LANGE ); Other - Wrong document attached. (vs) (Entered: 11/04/2021) |
| 11/04/2021 | 141 | **SEALED DOCUMENT** (Attachments: # 1 Exhibit, # 2 Exhibit)(vs) (Entered: 11/04/2021) |
| 11/04/2021 | 142 | MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 Plaintiff's Disclosure of Expert Witness Pursuant to Fed.R.Civ.P26(A)(2)(C), # 4 Exhibit 3 Health Insurance Coverage of Gender-Affirming Top Surgery in the United States, # 5 Exhibit 4 Anna Lange 4-2-21 Deposition Excerpt Pages, # 6 Exhibit 5 Declaration of Kenneth Carter, # 7 Exhibit 6 Declaration of Joan C Barret (Boyden v State of Wisconsin Dept of Employee Trust Funds), # 8 Exhibit Expert Report of Joan C. Barrett and Elaine T. Corrough Submitted on Behalf of the Plaintiffs)(LAIL, PATRICK) (Entered: 11/04/2021) |
| 11/04/2021 | 143 | EXHIBIT(S) *Declaration of Joan Barrett* by ANNA LANGE re 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Report of Barrett)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 144 | EXHIBIT(S) *Declaration of Bluebond-Langner* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Declaration, # 2 Exhibit Expert Disclosure)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 145 | EXHIBIT(S) *Declaration of Currah* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Report)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 146 | EXHIBIT(S) *Declaration of Haley* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Witness Report)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 147 | EXHIBIT(S) *Declaration of Sgt. Lange* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (BARTON, |

| | | |
|---|---|---|
| | | KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 148 | EXHIBIT(S) *Declaration of Schecter* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Report, # 2 Exhibit Declaration)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 149 | EXHIBIT(S) *Declaration of Jill Grant (without exhibits, errors preventing filing)* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/05/2021 | 150 | EXHIBIT(S) *Declaration of Grant (Exhibits Part 1 of 2)* by ANNA LANGE re 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment, 139 Memorandum in Support, 149 Exhibit(s) (Attachments: # 1 Exhibit Deposition of Carter Part 1 of 5, # 2 Exhibit Deposition of Carter Part 2 of 5, # 3 Exhibit Deposition of Carter Part 3 of 5, # 4 Exhibit Deposition of Carter Part 4 of 5, # 5 Exhibit Deposition of Carter Part 5 of 5, # 6 Exhibit Deposition of Sheriff Part 1 of 2, # 7 Exhibit Deposition of Sheriff Part 2 of 2, # 8 Exhibit Deposition of Lange Part 1 of 2, # 9 Exhibit Deposition of Lange Part 2 of 2, # 10 Exhibit Deposition of Holland, # 11 Exhibit Deposition of Rape Part 1 of 2, # 12 Exhibit Deposition of Rape Part 2 of 2, # 13 Exhibit Deposition of Clark, # 14 Exhibit Deposition of Carter, # 15 Exhibit Deposition of Holland, # 16 Exhibit Deposition of Barrett, # 17 Exhibit Deposition of Galasso, # 18 Exhibit Deposition of Lange, # 19 Exhibit Deposition of Carter, # 20 Exhibit Defendants Responses to First RFAs, # 21 Exhibit Houston County Responses to Third Rogs, # 22 Exhibit Sheriff Responses to Second RFAs, # 23 Exhibit Sheriff Responses to First Rogs, # 24 Exhibit Zhao Report, # 25 Exhibit Anthems Clinical Guideline for Gender Affirming Surgery, # 26 Exhibit Carters November 4, 2019 Memo, # 27 Exhibit Anthems January 29, 2019 Denial, # 28 Exhibit Langes Fiscal Year 2020 Total Compensation Statement, # 29 Exhibit Houston County Responses to First Rogs, # 30 Exhibit Pope and Clark Email, # 31 Exhibit Hall and Lewis Email, # 32 Exhibit Lewis and Hall Email)(BARTON, KENNETH) (Entered: 11/05/2021) |
| 11/05/2021 | 151 | EXHIBIT(S) *Declaration of Grant (Exhibits Part 2 of 2)* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 149 Exhibit(s), 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Clark and Clark Email, # 2 Exhibit Clark and Pope Email, # 3 Exhibit Clark and Carter Email, # 4 Exhibit November 19, 2019 Houston County Board of Commissioners Meet Minutes, # 5 Exhibit January 16, 2019 letter from Lewis to County Attorney, # 6 Exhibit Clark and Carter Email, # 7 Exhibit BCBS000351, # 8 Exhibit Open Records Request, # 9 Exhibit Lange and Holland Email, # 10 Exhibit Anthem data re: 2018 Total Health Conditions by Paid Amount, # 11 Exhibit Anthem data re: 2019 Total Medical Conditions by Paid Amount, # 12 Exhibit Langes Petition to Change Name)(BARTON, KENNETH) (Entered: 11/05/2021) |
| 11/05/2021 | 152 | **SEALED DOCUMENT** (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(vs) (Entered: 11/05/2021) |
| 11/10/2021 | 153 | Request for Rule Local 6.2 Clerk's Extension re 137 MOTION for Summary Judgment, 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, 134 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D., 136 MOTION for Summary Judgment, 130 MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley, 129 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. by ANNA LANGE (BARTON, KENNETH) (Entered: 11/10/2021) |
| 11/10/2021 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 130 MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D. filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett filed by CULLEN TALTON, HOUSTON |

| | | |
|---|---|---|
| | | COUNTY GEORGIA, 129 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA (vs) (Entered: 11/10/2021) |
| 11/12/2021 | 154 | Certificate of Need to File Discovery *Deposition of Ken Carter 02/23/2021* by ANNA LANGE. Related document: 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 155 | DEPOSITION of Kenneth Carter taken on 02/23/2021 filed by ANNA LANGE. Related document: 154 Certificate of Need to File Discovery, filed by ANNA LANGE, 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE. (Attachments: # 1 Exhibit Ex. 1 Medical Benefit Booklet, # 2 Exhibit Ex. 2 Clinical UM Guideline, # 3 Exhibit Ex. 3 HBCS Approval of Changes, # 4 Exhibit Ex. 4 2017 Medical Plan Changes, # 5 Exhibit Ex. 5 Carter Email to Clark, # 6 Exhibit Ex. 6 Clark Email to Carter, # 7 Exhibit Ex. 7 Carter Email to Clark, # 8 Exhibit Ex. 8 Hall Email to Carter, # 9 Exhibit Ex. 9 Lewis Letter to HCBC, # 10 Exhibit Ex. 10 Transcend Legal Memo, # 11 Exhibit Ex. 11 Carter Email to Kissell, # 12 Exhibit Ex. 12 Carter Email to Clark, # 13 Exhibit Ex. 13 HCBC Meeting 02192019, # 14 Exhibit Ex. 14 Powell Letter to HCBC, # 15 Exhibit Ex. 15 Hall Letter to Powell, # 16 Exhibit Ex. 16 Clark Email to Carter, # 17 Exhibit Ex. 17 Memo to HCBC Health Plan Changes, # 18 Exhibit Ex. 18 Memo to HCBC Health Insurance Considerations, # 19 Exhibit Ex. 21 Carter Text 08122018, # 20 Exhibit Ex. 22 Carter Text 11042018, # 21 Exhibit Ex. 23 Carter Text 03302019, # 22 Exhibit Ex. 24 Carter Text 07042020)(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 156 | Certificate of Need to File Discovery *Sheriff Cullen Talton 03/25/2021* by ANNA LANGE. Related document: 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 157 | DEPOSITION of Sheriff Cullen Talton taken on 03/25/2021 filed by ANNA LANGE. Related document: 156 Certificate of Need to File Discovery, filed by ANNA LANGE, 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 158 | Certificate of Need to File Discovery *Houston County 30(b)(6)* by ANNA LANGE. Related document: 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 159 | DEPOSITION of Houston County 30(b)(6) (Holland and Carter) taken on 04/15/2021 filed by ANNA LANGE. Related document: 158 Certificate of Need to File Discovery, filed by ANNA LANGE, 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE. (Attachments: # 1 Exhibit Deposition of Ken Carter 04/15/2021)(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 160 | Certificate of Need to File Discovery *Houston County 30(b)(6) Ken Carter 09/16/2021* by ANNA LANGE. Related document: 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 161 | DEPOSITION of Houston County 30(b)(6) (Carter) taken on 09/16/2021 filed by ANNA LANGE. Related document: 160 Certificate of Need to File Discovery, filed by ANNA LANGE, |

| | | |
|---|---|---|
| | | [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [162](#) | Certificate of Need to File Discovery *Deposition of Donna Clark 04/13/2021* by ANNA LANGE. Related document: [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [163](#) | DEPOSITION of Donna Clark taken on 04/13/2021 filed by ANNA LANGE. Related document: [162](#) Certificate of Need to File Discovery, filed by ANNA LANGE, [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/15/2021 | [164](#) | Certificate of Need to File Discovery *Sheriff's Office 30(b)(6)* by ANNA LANGE. Related document: [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/15/2021) |
| 11/15/2021 | [165](#) | DEPOSITION of Houston County Sheriff's Office 30(b)(6) (Rape and Holland) taken on 04/13/2021 filed by ANNA LANGE. Related document: [164](#) Certificate of Need to File Discovery, filed by ANNA LANGE, [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [140](#) MOTION for Summary Judgment filed by ANNA LANGE. (Attachments: # [1](#) Exhibit Deposition of HCSO 30(b)(6) J. Holland)(BARTON, KENNETH) (Entered: 11/15/2021) |
| 11/15/2021 | [166](#) | Certificate of Need to File Discovery *Deposition of Tom Galasso* by ANNA LANGE. Related document: [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/15/2021) |
| 11/15/2021 | [167](#) | DEPOSITION of Tom Galasso taken on 09/09/2021 filed by ANNA LANGE. Related document: [166](#) Certificate of Need to File Discovery, filed by ANNA LANGE, [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/15/2021) |
| 11/17/2021 | [168](#) | Request for Rule Local 6.2 Clerk's Extension re [140](#) MOTION for Summary Judgment by HOUSTON COUNTY GEORGIA, CULLEN TALTON (MORGAN, SHARON) (Entered: 11/17/2021) |
| 11/17/2021 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: [140](#) MOTION for Summary Judgment filed by ANNA LANGE (vs) (Entered: 11/17/2021) |
| 11/18/2021 | [169](#) | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3952412, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State Bar No. 301171. (Attachments: # [1](#) Certificate of Good Standing)(FATA, CATHERINE) (Entered: 11/18/2021) |
| 11/19/2021 | [170](#) | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by CATHERINE FATA. (mdm) (Entered: 11/19/2021) |
| 12/02/2021 | [172](#) | JOINT MOTION for Extension of Time to File RESPONSE as to [137](#) MOTION for Summary Judgment, [133](#) MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, [136](#) MOTION for Summary Judgment, [130](#) MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley, [142](#) MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., [129](#) MOTION for Summary Judgment, [129](#) MOTION To Exclude Plaintiff's Expert Testimony: |

| | | |
|---|---|---|
| | | Paisley Currah, [132] MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 12/02/2021) |
| 12/03/2021 | 173 | This is a text only entry; no document issued. **ORDER** GRANTING [172] Motion for Extension of Time to File RESPONSE and REPLY briefs. The parties shall file responses to all Motions for Summary Judgment and *Daubert* motions by December 22, 2021 and file reply briefs by January 26, 2022. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 12/3/21. (bwr) (Entered: 12/03/2021) |
| 12/03/2021 | | Notice of Deficiency (related document(s): 171 Notice (Other) filed by ANNA LANGE ); The PACER login ID and password used to electronically file a document constitutes the Participants electronic signature for all purposes under the Federal Rules. Document must be re-filed using the user credentials of the name of the attorney in the signature block. See CM/ECF Administrative Procedures, page 7.(vs) (Entered: 12/03/2021) |
| 12/15/2021 | 175 | JOINT MOTION for Leave to File Excess Pages for Motions for Summary Judgment by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by SHARON P MORGAN. (MORGAN, SHARON) (Entered: 12/15/2021) |
| 12/15/2021 | 176 | This is a text only entry; no document issued. **ORDER** GRANTING [175] Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 12/15/21. (bwr) (Entered: 12/15/2021) |
| 12/22/2021 | 177 | RESPONSE filed by ANNA LANGE re [142] MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., [133] MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, [134] MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D., [130] MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley, [129] MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah, [132] MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. (BARTON, KENNETH) (Entered: 12/22/2021) |
| 12/22/2021 | 178 | RESPONSE filed by ANNA LANGE re [137] MOTION for Summary Judgment, [136] MOTION for Summary Judgment (Attachments: # [1] Stmt of Material Facts Resp Ex A Plaintiff's Response to Defendant Houston County's Statement of Undisputed Facts, # [2] Stmt of Material Facts Resp Ex B Plaintiff's Response to Defendant Sheriff Talton's Statement of Undisputed Facts) (BARTON, KENNETH) (Entered: 12/22/2021) |
| 12/22/2021 | 179 | RESPONSE filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [140] MOTION for Summary Judgment (Attachments: # [1] Exhibit A - Declaration of Kenneth Carter, # [2] Statement of Material Facts, # [3] Stmt of Material Facts Resp)(LAIL, PATRICK) (Entered: 12/22/2021) |
| 12/23/2021 | 180 | **SEALED DOCUMENT** re [179] (vs) (Entered: 12/23/2021) |
| 12/23/2021 | 181 | **SEALED DOCUMENT** re [177] (vs) Modified on 12/27/2021 to link to motion. (ggs). (Entered: 12/23/2021) |
| 01/20/2022 | 182 | JOINT MOTION for Leave to File Excess Pages for Reply Briefs in Support of Motions for Summary Judgment by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 01/20/2022) |
| 01/20/2022 | 183 | This is a text only entry; no document issued. **ORDER** GRANTING [182] Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 1/20/22. (bwr) (Entered: 01/20/2022) |
| 01/21/2022 | | NOTICE OF SETTING HEARING ON MOTION re [142] MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., [133] MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, [132] MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D., [140] MOTION for Summary Judgment, [130] MOTION To Exclude Plaintiff's Expert Testimony - Chanel Haley, [129] MOTION To Exclude Plaintiff's Expert Testimony - |

| | | |
|---|---|---|
| | | Paisley Currah, [137] MOTION for Summary Judgment, [136] MOTION for Summary Judgment. Motion Hearing set for 2/24/2022 at 2:00 PM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will occur **IN-PERSON**. Counsel, parties, and members of the public and press should review Standing Order 2021-08, available on the court's website, regarding courthouse entrance procedures due to COVID-19. Interested parties may obtain dial information by emailing macon.ecf@gamd.uscourts.gov. (kat) (Entered: 01/21/2022) |
| 01/26/2022 | [184] | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [142] MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., [132] MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. (Attachments: # [1] Exhibit A - Commentary on Gender Surgery Beyond Chest & Genitals - Current Insurance Landscape)(LAIL, PATRICK) (Entered: 01/26/2022) |
| 01/26/2022 | [185] | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [130] MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley, [129] MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah (LAIL, PATRICK) (Entered: 01/26/2022) |
| 01/26/2022 | [186] | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [133] MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett (LAIL, PATRICK) (Entered: 01/26/2022) |
| 01/26/2022 | [187] | REPLY to Response filed by ANNA LANGE re [140] MOTION for Summary Judgment (Attachments: # [1] Exhibit Order in Vasquez v. Iowa Dep't of Human Servs.)(BARTON, KENNETH) (Entered: 01/26/2022) |
| 01/26/2022 | [188] | REPLY to Response filed by ANNA LANGE re [140] MOTION for Summary Judgment (Attachments: # [1] Exhibit Exhibit 1 Anthem BCBS Claims Summary)(BARTON, KENNETH) (Entered: 01/26/2022) |
| 01/26/2022 | [189] | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [137] MOTION for Summary Judgment (Attachments: # [1] Exhibit 1 - Civil Docket for Henderson et al v Bodine Aluminum et al 4 95-cv-01051-CAS)(LAIL, PATRICK) (Entered: 01/26/2022) |
| 01/26/2022 | [190] | REPLY to Response filed by CULLEN TALTON re [136] MOTION for Summary Judgment (Attachments: # [1] Exhibit 1 - Civil Docket for Henderson et al v Bodine Aluminum et al 4 95-cv-01051-CAS)(LAIL, PATRICK) (Entered: 01/26/2022) |
| 02/01/2022 | [191] | NOTICE of Attorney Appearance by WILLIAM DRUMMOND DEVENEY on behalf of HOUSTON COUNTY GEORGIA, CULLEN TALTON Attorney WILLIAM DRUMMOND DEVENEY added to party HOUSTON COUNTY GEORGIA(pty:dft), Attorney WILLIAM DRUMMOND DEVENEY added to party CULLEN TALTON(pty:dft)(DEVENEY, WILLIAM) (Entered: 02/01/2022) |
| 02/17/2022 | [192] | UNOPPOSED MOTION to Seal Document(s) 174 Notice (Other), 171 Notice (Other),, MOTION for Leave to File Redacted Statement of Facts by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 02/17/2022) |
| 02/18/2022 | 193 | This is a text only entry; no document issued. **ORDER** GRANTING [192] Motion to Seal Document(s) 171 and 174 NOTICE Amended Local Rule 56 Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment with access restricted to court users and case parties. **ORDER** GRANTING [192] Motion for Leave to File Redacted Version of 174 NOTICE Amended Local Rule 56 Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 2/18/2022. (kat) (Entered: 02/18/2022) |
| 02/18/2022 | [194] | ***REFILED AT [195] *** NOTICE Amended Local Rule 56 Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment by ANNA LANGE re 171 Notice (Other), (BARTON, KENNETH) Text modified on 2/22/2022 (kat). (Entered: 02/18/2022) |

| 02/18/2022 | 195 | NOTICE Amended Local Rule 56 Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment by ANNA LANGE re 174 Notice (Other) - *REDACTED* (BARTON, KENNETH) Text modified on 2/22/2022 (kat). (Entered: 02/18/2022) |
|---|---|---|
| 02/22/2022 | | *** TIME CHANGE ONLY*** NOTICE OF RESETTING HEARING ON MOTION re 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D., 140 MOTION for Summary Judgment, 130 MOTION To Exclude Plaintiff's Expert Testimony - Chanel Haley, 129 MOTION To Exclude Plaintiff's Expert Testimony - Paisley Currah, 137 MOTION for Summary Judgment, 136 MOTION for Summary Judgment. Motion Hearing RESET for 2/24/2022 at 1:30 PM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will occur IN-PERSON. Counsel, parties, and members of the public and press should review Standing Order 2022-02, available on the court's website, regarding courthouse entrance procedures due to COVID-19. Interested parties may obtain dial information by emailing macon.ecf@gamd.uscourts.gov. (kat) (Entered: 02/22/2022) |
| 02/24/2022 | 196 | Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Motion Hearing held on 2/24/2022 re 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D. filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 140 MOTION for Summary Judgment filed by ANNA LANGE, 130 MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 129 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA. Court Reporter: Darlene Fuller. Time in Court: 1 hour / 44 minutes. (kat) (Entered: 02/24/2022) |
| 03/03/2022 | 197 | TRANSCRIPT of hearing on Motions for Summary Judgment held on 02/24/2022, before Judge Marc T. Treadwell. Court Reporter Darlene D. Fuller. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (ddf) (Entered: 03/03/2022) |
| 03/18/2022 | 198 | RESPONSE to Court Order filed by ANNA LANGE re 197 Transcript of Proceedings, (BARTON, KENNETH) (Entered: 03/18/2022) |
| 03/18/2022 | 199 | RESPONSE to Court Order filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re 197 Transcript of Proceedings, (LAIL, PATRICK) (Entered: 03/18/2022) |
| 03/29/2022 | 200 | Letter from Judge Treadwell. (kat) (Entered: 03/29/2022) |
| 04/08/2022 | 201 | RESPONSE to Court Order filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re 200 Letter (LAIL, PATRICK) (Entered: 04/08/2022) |
| 04/08/2022 | 202 | RESPONSE to Court Order filed by ANNA LANGE re 200 Letter (BARTON, KENNETH) (Entered: 04/08/2022) |
| 04/28/2022 | 203 | NOTICE of New Authority by HOUSTON COUNTY GEORGIA, CULLEN TALTON (LAIL, PATRICK) (Entered: 04/28/2022) |
| 05/17/2022 | 204 | NOTICE Supplemental Authority by ANNA LANGE re 140 MOTION for Summary Judgment (Attachments: # 1 Exhibit Eknes-Tucker v. Marshall Order)(BARTON, KENNETH) (Entered: 05/17/2022) |
| 06/02/2022 | 205 | **ORDER** DENYING without prejudice 129 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah; DENYING without prejudice 130 MOTION To Exclude Plaintiff's Expert |

| | | |
|---|---|---|
| | | Testimony: Chanel Haley; DENYING without prejudice [132](#) MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. ; DENYING without prejudice [133](#) MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett; GRANTING in part and DENYING in part [136](#) Motion for Summary Judgment; GRANTING in part and DENYING in part [137](#) Motion for Summary Judgment; GRANTING in part and DENYING in part [140](#) Motion for Summary Judgment; DENYING without prejudice [142](#) MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 6/2/2022. (kat) (Entered: 06/02/2022) |
| 06/16/2022 | [206](#) | MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # [1](#) Memorandum in Support, # [2](#) Proposed Order)(LAIL, PATRICK) (Entered: 06/16/2022) |
| 07/01/2022 | [207](#) | Letter regarding Request for Status Conference to Set Trial Date re [206](#) MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review (BARTON, KENNETH) (Entered: 07/01/2022) |
| 07/07/2022 | [208](#) | RESPONSE filed by ANNA LANGE re [206](#) MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review (BARTON, KENNETH) (Entered: 07/07/2022) |
| 07/13/2022 | | NOTICE OF **SETTING** STATUS CONFERENCE. Status Conference re [207](#) Letter set for 7/28/2022 at 10:00 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. The parties shall also be prepared to discuss [206](#) MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review. Hearing will occur **IN-PERSON**. Counsel, parties, and members of the public and press should review Standing Order 2022-03, available on the court's website, regarding courthouse entrance procedures due to COVID-19. (kat) (Entered: 07/13/2022) |
| 07/19/2022 | [209](#) | Letter regarding rescheduling status conference (POWELL, WESLEY) (Entered: 07/19/2022) |
| 07/20/2022 | | Notice of Deficiency (related document(s): [209](#) Letter filed by ANNA LANGE ); Document must be re-filed using correct event which is - Motion to Continue. (vs) (Entered: 07/20/2022) |
| 07/20/2022 | [210](#) | MOTION to Continue *Status Conference* by ANNA LANGE filed by WESLEY POWELL. (POWELL, WESLEY) (Entered: 07/20/2022) |
| 07/20/2022 | 211 | This is a text only entry; no document issued. **ORDER** GRANTING [210](#) Motion to Continue Status Conference. Status Conference PREVIOUSLY set for 7/28/2022 is RESET for 8/11/2022 at 10:00 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 7/20/2022. (kat) (Entered: 07/20/2022) |
| 07/21/2022 | | Notice of Deficiency (related document(s): [210](#) Motion to Continue filed by ANNA LANGE ); The signature block does not include the e mail address of the filer. Please do not re-file, for future reference only. See Fed.R.Civ.P 11.(rlw) (Entered: 07/21/2022) |
| 07/21/2022 | [212](#) | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [206](#) MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review (LAIL, PATRICK) (Entered: 07/21/2022) |
| 08/08/2022 | [213](#) | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # CGAMDC-4153272, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III 301171. (Attachments: # [1](#) Certificate of Good Standing)(PAYNE, AMANDA) (Entered: 08/08/2022) |
| 08/10/2022 | [214](#) | NOTICE Supplemental Authority by ANNA LANGE re [208](#) Response to Motion (Attachments: # [1](#) Exhibit Supplemental Authority)(BROWN, DAVID) (Entered: 08/10/2022) |
| 08/11/2022 | [215](#) | NOTICE of Attorney Withdrawal by MARY EATON on behalf of ANNA LANGE(EATON, MARY) (Entered: 08/11/2022) |

| 08/11/2022 | 216 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by AMANDA MARIE PAYNE. (mdm) (Entered: 08/11/2022) |
|---|---|---|
| 08/11/2022 | 217 | **ORDER** SETTING PRETRIAL CONFERENCE AND TRIAL (*re Title VII damages*): Pretrial Conference set for 9/8/2022 at 9:30 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Proposed Pretrial Order due by 9/1/2022. This case is set for jury trial during the trial term scheduled to begin on 9/19/2022 at 9:00 a.m. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/11/2022. (Attachments: # 1 Required Form) (kat) Modified on 9/1/2022 (kat). (Entered: 08/11/2022) |
| 08/11/2022 | 218 | NOTICE Clarification of Answer to Court's Question by HOUSTON COUNTY GEORGIA, CULLEN TALTON (DEVENEY, WILLIAM) (Entered: 08/11/2022) |
| 08/11/2022 | 219 | Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Status Conference / Motion Hearing held on 8/11/2022. Court Reporter: Tammy DiRocco. Time in Court: 1 hour / 26 minutes. (kat) Modified on 8/15/2022 to change filing date (vs). (Entered: 08/12/2022) |
| 08/18/2022 | 220 | **ORDER** DENYING 206 Motion to Certify Court's Order for Interlocutory Review. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/18/2022. (kat) (Entered: 08/18/2022) |
| 08/31/2022 | 221 | TRANSCRIPT of Proceedings held on 8-11-22, before Judge Treadwell. Court Reporter Tammy W. DiRocco. Volume Number: 1 of 1. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (Tammy W. DiRocco) (Entered: 08/31/2022) |
| 09/01/2022 | 222 | FIRST MOTION in Limine regarding Plaintiff's claims for future emotional distress damages by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support)(LAIL, PATRICK) (Entered: 09/01/2022) |
| 09/01/2022 | 223 | SECOND MOTION in Limine regarding Plaintiff's failure to make Rule 26 Disclosures by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A - Plaintiff's Initial Disclosures, # 3 Exhibit B - Defendant Houston County's Second Interrogatories to Plaintiff, # 4 Exhibit C - Plaintiff's Responses and Objections to Defendant Houston County's Second Set of Interrogatories)(LAIL, PATRICK) (Entered: 09/01/2022) |
| 09/01/2022 | 224 | THIRD MOTION in Limine regarding Rachel Bluebond-Langner, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A - Plaintiff's Initial Disclosures, # 3 Exhibit B - Expert Declaration of Rachel Bluebond-Langner, M.D. in Support of Plaintiff's Motion for Preliminary Injunction)(LAIL, PATRICK) (Entered: 09/01/2022) |
| 09/01/2022 | 225 | TRIAL BRIEF by HOUSTON COUNTY GEORGIA, CULLEN TALTON (Attachments: # 1 Exhibit A - Plaintiff's Response and Objections to Defendant Houston County's Second Set of Interrogatories)(LAIL, PATRICK) (Entered: 09/01/2022) |
| 09/01/2022 | 226 | TRIAL BRIEF by ANNA LANGE(BARTON, KENNETH) (Entered: 09/01/2022) |
| 09/01/2022 | 227 | ***DISREGARD REFILED AT 231 *** MOTION in Limine regarding Expert Testimony of Dr. Soety by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) Modified on 9/6/2022 to add docket text(vs). (Entered: 09/01/2022) |
| 09/01/2022 | 228 | ***DISREGARD, REFILED AT 230 *** MOTION in Limine regarding Arguments and Evidence Concerning Defendants' Liability by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) Modified on 9/6/2022 to add docket text(vs). (Entered: 09/01/2022) |

| 09/01/2022 | 229 | ***DISREGARD REFILED AT 232 *** MOTION in Limine regarding Evidence of Plaintiff's Disciplinary Record by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) Modified on 9/6/2022 to add docket text(vs). (Entered: 09/01/2022) |
|---|---|---|
| 09/02/2022 | | ***TIME CHANGE ONLY*** NOTICE OF **RESETTING** PRETRIAL CONFERENCE. Pretrial Conference RESET for 9/8/2022 at 1:00 PM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will occur **IN-PERSON**. Counsel, parties, and members of the public and press should review Standing Order 2022-03, available on the courts website, regarding courthouse entrance procedures due to COVID-19. (kat) (Entered: 09/02/2022) |
| 09/02/2022 | | Notice of Deficiency (related document(s): 227 Motion in Limine filed by ANNA LANGE, 229 Motion in Limine filed by ANNA LANGE, 228 Motion in Limine filed by ANNA LANGE ); Document must refiled. The Motion has not been filed. The Memorandum must be filed as an exhibit to the Motion. (vs) (Entered: 09/02/2022) |
| 09/02/2022 | 230 | MOTION in Limine regarding Arguments and Evidence Concerning Defendants' Liability by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Memorandum in Support of First Motion in Limine)(BARTON, KENNETH) (Entered: 09/02/2022) |
| 09/02/2022 | 231 | MOTION in Limine regarding Expert Testimony of Dr. Soety by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Memorandum in Support of Second Motion in Limine)(BARTON, KENNETH) (Entered: 09/02/2022) |
| 09/02/2022 | 232 | MOTION in Limine regarding Evidence of Plaintiff's Disciplinary Record by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Memorandum in Support of Third Motion in Limine)(BARTON, KENNETH) (Entered: 09/02/2022) |
| 09/06/2022 | 233 | **ORDER** SETTING PRETRIAL CONFERENCE AND TRIAL (*re equal protection clause claim*): Pretrial Conference set for 2/2/2023 at 9:30 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Proposed Pretrial Order due by 1/12/2023. This case is specially set for jury trial to begin on February 27, 2023 at 9:00 a.m. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 9/6/2022. (Attachments: # 1 Required Form) (kat) (Entered: 09/06/2022) |
| 09/08/2022 | 234 | NOTICE of Filing Corrected Exhibit B in Support of Defendants' Third Motion in Limine by HOUSTON COUNTY GEORGIA, CULLEN TALTON re 224 MOTION in Limine regarding Rachel Bluebond-Langner, M.D. (Attachments: # 1 Exhibit B - Plaintiff's Disclosure of Expert Witness Pursuant to Fed.R.Civ.P.26(A)(2)(C))(LAIL, PATRICK) (Entered: 09/08/2022) |
| 09/08/2022 | 237 | MINUTE ORDER FOR FINAL PRETRIAL CONFERENCE held 9/8/2022 before CHIEF DISTRICT JUDGE MARC T TREADWELL. The Court ruled as follows: 222 Defendants' First Motion in Limine re: Plaintiff's Claims for Future Emotional Distress Damages is WITHDRAWN; 223 Defendants' Second Motion in Limine re: limitations on economic loss evidence - no ruling is required; 224 Defendants' Third Motion in Limine re: Dr. Bluebond-Langner is GRANTED in part and DENIED in part; 230 Plaintiff's First Motion in Limine re: Argument and Evidence Concerning Defendants' Liability is GRANTED subject to Plaintiff opening the door; 231 Plaintiff's Second Motion in Limine to Exclude Expert Testimony of Dr. Soety is WITHDRAWN; 232 Plaintiff's Third Motion in Limine re: Evidence of Plaintiff's Disciplinary Record is WITHDRAWN. FTR Gold START and STOP Times 1:00 - 2:48 pm. (Court Reporter Tammy DiRocco). (kat) (Entered: 09/15/2022) |
| 09/12/2022 | 235 | NOTICE of Attorney Appearance by JAMES MITCHELL FUCETOLA, IV on behalf of BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC Attorney JAMES MITCHELL FUCETOLA, IV added to party BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC(pty:dft)(FUCETOLA, JAMES) (Entered: 09/12/2022) |

| | | |
|---|---|---|
| 09/12/2022 | [236](#) | NOTICE of Attorney Withdrawal by T JOSHUA ARCHER on behalf of BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC(ARCHER, T) (Entered: 09/12/2022) |
| 09/15/2022 | | NOTICE OF **SETTING** ATTORNEY COURTROOM TECHNOLOGY TESTING. ATTORNEY COURTROOM TECHNOLOGY TESTING (defendants' counsel) set for 9/16/2022 at 11:00 AM in Macon with Courtroom Deputy. ***Please have Court Security notify Chambers upon arrival.*** (kat) (Entered: 09/15/2022) |
| 09/16/2022 | [238](#) | TRANSCRIPT of Proceedings held on 9-8-22, before Judge Treadwell. Court Reporter Tammy W. DiRocco. Volume Number: 1 of 1. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (Tammy W. DiRocco) (Entered: 09/16/2022) |
| 09/16/2022 | [239](#) | NOTICE of Attorney Appearance by T JOSHUA ARCHER on behalf of BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC Attorney T JOSHUA ARCHER added to party BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC(pty:dft) (ARCHER, T) (Entered: 09/16/2022) |
| 09/19/2022 | 240 | INITIAL NOTIFICATION OF ELECTRONIC AVAILABILITY OF JUROR QUESTIONNAIRES. In order to obtain access to the attached juror questionnaires, you must docket CERTIFICATION RE: JUROR QUESTIONNAIRES. (hdw) (Entered: 09/19/2022) |
| 09/19/2022 | | Counsel for HOUSTON COUNTY GEORGIA, CULLEN TALTON hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(MORGAN, SHARON) (Entered: 09/19/2022) |
| 09/19/2022 | | Counsel for HOUSTON COUNTY GEORGIA, CULLEN TALTON hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(DEVENEY, WILLIAM) (Entered: 09/19/2022) |
| 09/19/2022 | | Counsel for ANNA LANGE hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(BARTON, KENNETH) (Entered: 09/19/2022) |
| 09/20/2022 | | Counsel for ANNA LANGE hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will |

| | | |
|---|---|---|
| | | destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(POWELL, WESLEY) (Entered: 09/20/2022) |
| 09/20/2022 | | Counsel for ANNA LANGE hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(BROWN, DAVID) (Entered: 09/20/2022) |
| 09/20/2022 | | NOTICE OF **SETTING** ATTORNEY COURTROOM TECHNOLOGY TESTING. Attorney Courtroom Technology Testing (plaintiff's counsel) set for 9/23/2022 at 10:00 AM in Macon with Courtroom Deputy. ***Please have Court Security notify Chambers upon arrival.*** (kat) (Entered: 09/20/2022) |
| 09/20/2022 | 241 | Letter from Judge Treadwell to all counsel of record. (kat) (Entered: 09/20/2022) |
| 09/22/2022 | | NOTICE OF **RESETTING** JURY TRIAL. Jury Trial PREVIOUSLY set for 9/19/2022 has been **RESET for 9/26/2022 at 9:00 AM in Macon** before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will occur **IN-PERSON**. Counsel, parties, and members of the public and press should review Standing Order 2022-03, available on the court's website, regarding courthouse entrance procedures due to COVID-19. (kat) (Entered: 09/22/2022) |
| 09/22/2022 | 242 | Letter regarding Judge Treadwell's Letter to All Counsel of Record dated 9/20/22 re 241 Letter (POWELL, WESLEY) (Entered: 09/22/2022) |
| 09/23/2022 | 243 | SUPPLEMENTAL NOTIFICATION OF AVAILABILITY OF JUROR QUESTIONNAIRES. If you have already entered a CERTIFICATION RE: JUROR QUESTIONNAIRES, it is not necessary to enter another Certification. If you have not entered a CERTIFICATION RE: JUROR QUESTIONNAIRES, you must do so in order to obtain access. (hdw) (Entered: 09/23/2022) |
| 09/23/2022 | 244 | Letter regarding the Court's trial documents (POWELL, WESLEY) (Entered: 09/23/2022) |
| 09/23/2022 | 245 | TRIAL BRIEF by ANNA LANGE (Attachments: # 1 Proposed Order Proposed Order) (BARTON, KENNETH) (Entered: 09/23/2022) |
| 09/24/2022 | 246 | Letter regarding Judge Treadwell's Letter re 241 Letter (DEVENEY, WILLIAM) (Entered: 09/24/2022) |
| 09/25/2022 | 247 | Letter regarding Plaintiff's Second Letter and Proposed Revision to Trial Documents re 244 Letter (LAIL, PATRICK) (Entered: 09/25/2022) |
| 09/25/2022 | 248 | TRIAL BRIEF by HOUSTON COUNTY GEORGIA, CULLEN TALTON(LAIL, PATRICK) (Entered: 09/25/2022) |
| 09/26/2022 | 249 | **COURT'S RULINGS** on Deposition Objections as to Dr. Rachel Bluebond-Langner. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 9/26/2022. (kat) (Entered: 09/28/2022) |
| 09/26/2022 | 250 | TEXT ONLY Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Pretrial Conference held on 9/26/2022. FTR Gold START and STOP Times 8:59AM - 9:14AM. Court Reporter: Darlene Fuller.Time in Court: 15 minutes. (ans) Modified to change hearing date to 09/26/2022 on 9/28/2022 (ans). (Entered: 09/28/2022) |

| | | |
|---|---|---|
| 09/26/2022 | 251 | Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Jury Trial Day 1 and Day 2 held on 9/26/2022 - 9/27/2022 Court Reporter: Darlene Fuller. (vs) (Entered: 09/28/2022) |
| 09/27/2022 | 252 | PLAINTIFF'S TRIAL EXHIBIT by ANNA LANGE (Attachments: # 1 Exhibit P3 - Surgery Denial Letter, dated 11/26/2018 (Lange - HC001951-54))(vs) (Entered: 09/28/2022) |
| 09/27/2022 | 253 | DEFENDANTS' TRIAL EXHIBITS by HOUSTON COUNTY, GA and CULLEN TALTON (Attachments: # 1 Exhibit D5 - Letter dated 10/11 /18 from Dr. Soety to Dr. Bluebond-Langner [Lange 2443-24441], # 2 Exhibit D8 - 11/13/18 Consult notes of Dr. Bluebond-Langner [Lange 2417-2421], # 3 Exhibit D9 - 11/13/18 Consult notes of Dr. Lee Zhao [Lange 2422-2427])(vs) Text modified on 9/29/2022 (kat). (Entered: 09/28/2022) |
| 09/27/2022 | 254 | Jury Instructions (Attachments: # 1 Burden of Proof)(vs) (Entered: 09/28/2022) |
| 09/27/2022 | 255 | Jury Notes/Questions(vs) (Entered: 09/28/2022) |
| 09/27/2022 | 256 | JURY VERDICT for ANNA LANGE(vs) (Entered: 09/28/2022) |
| 09/27/2022 | 257 | Jury Verdict signature page (Un-redacted) Related document: 256 JURY VERDICT.(vs) (Entered: 09/28/2022) |
| 10/03/2022 | 258 | **ORDER** FOR PERMANENT INJUNCTIVE AND DECLARATORY RELIEF. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/3/2022. (kat) (Entered: 10/03/2022) |
| 10/17/2022 | 259 | TRANSCRIPT of Jury Trial held on 09/26/2022 and 09/27/2022, before Chief Judge Marc T. Treadwell. Court Reporter Darlene D. Fuller. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (ddf) Text modified on 10/17/2022 (kat). (Entered: 10/17/2022) |
| 10/17/2022 | 260 | MOTION to Stay re 258 Order by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by RICHARD READ GIGNILLIAT. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A - The New York Times Article 05/10/2022)(GIGNILLIAT, RICHARD) Modified on 10/18/2022 to edit docket text(vs). (Entered: 10/17/2022) |
| 10/19/2022 | 261 | **PRETRIAL ORDER** (*as to Title VII Damages*). Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/19/2022. (Attachments: # 1 Exhibit - PTO Attachment A, # 2 Exhibit - PTO Attachment B, # 3 Exhibit - PTO Attachment C, # 4 Exhibit - PTO Attachment D, # 5 Exhibit - PTO Attachment E, # 6 Exhibit - PTO Attachment F, # 7 Exhibit - PTO Attachment G). (kat) (Entered: 10/19/2022) |
| 10/21/2022 | 262 | NOTICE OF APPEAL as to 258 Order by HOUSTON COUNTY GEORGIA, CULLEN TALTON. Filing fee $ 505, Receipt No.: AGAMDC-4212594. (Attachments: # 1 Exhibit A - Docket 258 ORDER for Permanent Injunctive and Declaratory Relief)(MORGAN, SHARON) (Entered: 10/21/2022) |
| 10/21/2022 | | Appeal Instructions re 262 Notice of Appeal,. The Transcript Information Form and instructions are available on the District Court website under Forms & Guides. **PLEASE NOTE** Separate forms must be filed for each court reporter. Transcript Order Form due by 11/7/2022 (vs) (Entered: 10/21/2022) |
| 10/21/2022 | 263 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re: 262 Notice of Appeal, 258 Order Judge Appealed: Marc T. Treadwell. Court Reporter: Darlene Fuller. Fee: Paid. (vs) (Entered: 10/21/2022) |
| 10/27/2022 | 264 | Request for Local Rule 6.2 Clerks Extension re 260 MOTION to Stay Pending Appeal re 258 Order by ANNA LANGE (POWELL, WESLEY) (Entered: 10/27/2022) |
| 10/28/2022 | | Notice of Clerk's Granting of Extension Pursuant to re: 260 MOTION to Stay Pending Appeal re 258 Order filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA (vs) (Entered: |

| | | |
|---|---|---|
| | | 10/28/2022) |
| 10/31/2022 | 265 | This is a text only entry; no document issued. **ORDER**. The Court's October 3, 2022, order 258 is **STAYED** pending resolution of the defendants' motion for stay pending appeal 260 . Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/31/2022. (bwr) (Entered: 10/31/2022) |
| 10/31/2022 | 266 | USCA Case Number 22-13626-DD re 262 Notice of Appeal, filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA. (vs) (Entered: 10/31/2022) |
| 10/31/2022 | 267 | MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 - Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 - Expert Report of Joan Barrett, FSA, MAAA, # 4 Exhibit 3 - Deposition of Joan Barrett 8-24-21, # 5 Exhibit 4 - Actuarial Standard of Practice No. 1, # 6 Exhibit 5 - Actuarial Standard of Practice No. 41, # 7 Exhibit 6 - Expert Report of James P. Galasso, # 8 Exhibit 7 - Declaration of Kenneth Carter, # 9 Exhibit 8 - Expert Report of Joan C Barrett and Elaine T Corrough Submitted on Behalf of the Plaintiffs)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | 268 | MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 - Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 - Plaintiff's Disclosure of Expert Witness Pursuant to Fed.R.Civ.P26(A)(2)(C), # 4 Exhibit 3 - Health Insurance Coverage of Gender-Affirming Top Surgery in the United States, # 5 Exhibit 4 - Anna Lange 4-2-21 Deposition Excerpt Pages, # 6 Exhibit 5 - Declaration of Kenneth Carter, # 7 Exhibit 6 - Declaration of Joan C. Barrett, # 8 Exhibit 7 - Expert Report of Joan C. Barrett and Elaine T. Corrough Submitted on Behalf of the Plaintiffs)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | 269 | MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 - Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 - Expert Report of Paisley Currah, # 4 Exhibit 3 - 2015 - U.S. Transgender Survey - GA State Report)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | 270 | MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 - Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 - Expert Report of Loren S. Schechter, M.D., # 4 Exhibit 3 - Societal Implications of Health Coverage for Medically Necessary Services in the U.S. Transgender Population, # 5 Exhibit 4 - The implications of Allowing Transgender Personnel to Serve Openly in the U.S. Military, # 6 Exhibit 5 - Declaration of Kenneth Carter)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | 271 | MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 - Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 - Plaintiff's Expert Witness Report for Chanel Haley, # 4 Exhibit 3 - 2015 U.S. Transgender Survey GA State Report)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | 272 | MOTION to Continue *of Jury Trial Set for February 27, 2023* by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by WILLIAM DRUMMOND DEVENEY. (Attachments: # 1 Memorandum in Support)(DEVENEY, WILLIAM) (Entered: 10/31/2022) |
| 11/01/2022 | 273 | This is a text only entry; no document issued. **ORDER** FOR RESPONSE TO MOTION re: 272 MOTION to Continue *Jury Trial Set for February 27, 2023* filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA. Lange shall respond to 272 defendants' motion for continuance by November 11, 2022. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/1/2022. (kat) (Entered: 11/01/2022) |

| 11/04/2022 | [274](#) | USCA Case Number 22-13626-DD re [262](#) Notice of Appeal, filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA. (vs) (Entered: 11/04/2022) |
|---|---|---|
| 11/04/2022 | [275](#) | TRANSCRIPT INFORMATION FORM by HOUSTON COUNTY GEORGIA, CULLEN TALTON. re [262](#) Notice of Appeal, *Tammy DiRocco* (GIGNILLIAT, RICHARD) (Entered: 11/04/2022) |
| 11/04/2022 | [276](#) | TRANSCRIPT INFORMATION FORM by HOUSTON COUNTY GEORGIA, CULLEN TALTON. re [262](#) Notice of Appeal, *Darlene D. Fuller* (GIGNILLIAT, RICHARD) (Entered: 11/04/2022) |
| 11/07/2022 | [277](#) | Notice of Filing Official Transcript to all parties re [221](#) Transcript of Proceedings, [238](#) Transcript of Proceedings,.(Tammy W. DiRocco) (Entered: 11/07/2022) |
| 11/08/2022 | [278](#) | ***Refiled at [279](#) *** Letter regarding Proposed Consent Order for Continuance of Jury Trial Set for February 27, 2023 re [272](#) MOTION to Continue *of Jury Trial Set for February 27, 2023*, 273 Order for Response to Motion, (Attachments: # [1](#) Proposed Order)(POWELL, WESLEY) Modified on 11/10/2022 to add docket text(vs). (Entered: 11/08/2022) |
| 11/09/2022 | | Notice of Deficiency (related document(s): [278](#) Letter, filed by ANNA LANGE); Document is a response to a motion, which is not in the proper format, and does not contain the filer's e-mail address in the signature block. The response must be re-filed using correct event which is "Response to Motion."(ggs) (Entered: 11/09/2022) |
| 11/09/2022 | [279](#) | RESPONSE filed by ANNA LANGE re [272](#) MOTION to Continue *of Jury Trial Set for February 27, 2023* (Attachments: # [1](#) Proposed Order)(POWELL, WESLEY) (Entered: 11/09/2022) |
| 11/11/2022 | [280](#) | RESPONSE filed by ANNA LANGE re [260](#) MOTION to Stay Pending Appeal re [258](#) Order (Attachments: # [1](#) Exhibit A - Defendants' Attorneys' Fees)(POWELL, WESLEY) (Entered: 11/11/2022) |
| 11/17/2022 | [281](#) | **ORDER** TERMINATING [267](#) MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett ; TERMINATING [268](#) MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D. ; TERMINATING [269](#) MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah ; TERMINATING [270](#) MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D.; TERMINATING [271](#) MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley ; and GRANTING [272](#) MOTION to Continue of Jury Trial Set for February 27, 2023. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/17/2022. (kat) (Entered: 11/17/2022) |
| 11/18/2022 | | NOTICE OF **CANCELLATION** OF PRETRIAL CONFERENCE. Pretrial Conference previously scheduled for 2/2/2023 is CANCELLED. (kat) (Entered: 11/18/2022) |
| 11/21/2022 | [282](#) | Request for Local Rule 6.2 Clerks Extension re [260](#) MOTION to Stay Pending Appeal re [258](#) Order by HOUSTON COUNTY GEORGIA, CULLEN TALTON (DEVENEY, WILLIAM) (Entered: 11/21/2022) |
| 11/21/2022 | | Notice of Clerk's Granting of Extension Pursuant to re: Defendants Reply Brief to Plaintiffs Response to Defendants Motion to Stay Pending Appeal [280](#) and [260](#) Motion.(ksl) Modified on 11/22/2022 to add link (ggs). (Entered: 11/21/2022) |
| 12/09/2022 | [283](#) | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [260](#) MOTION to Stay Pending Appeal re [258](#) Order (LAIL, PATRICK) (Entered: 12/09/2022) |
| 12/12/2022 | [284](#) | MOTION for Extension of Time to File her Motions for Attorneys' Fees and Costs. by ANNA LANGE filed by WESLEY POWELL.(POWELL, WESLEY) (Entered: 12/12/2022) |
| 12/14/2022 | 285 | This is a text only entry; no document issued. **ORDER** GRANTING [284](#) Motion for Extension of Time. The Plaintiff shall file her Motions for Attorneys' Fees and Costs within thirty (30) days of the expiration of the time for any party to seek reconsideration or to obtain a grant of |

| | | |
|---|---|---|
| | | certiorari from the United States Supreme Court of the Court of Appeals' opinion on Defendants' pending appeal. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 12/14/2022. (bwr) (Entered: 12/14/2022) |
| 12/20/2022 | | Pursuant to F.R.A.P 11(c) the Clerk of the District Court for the Middle District of Georgia certifies that the record is complete for purposes of this appeal re: 262 Notice of Appeal,. The entire record on appeal is available electronically (vs) (Entered: 12/20/2022) |
| 01/09/2023 | 286 | **ORDER** FOR RESPONSE. The parties shall supplement their briefs to address what effect, if any, Adams has on the defendants' 260 motion to stay injunctive relief pending appeal by January 23, 2023. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 1/9/2023. (kat) (Entered: 01/09/2023) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 01/20/2023 09:56:57 | | |
| **PACER Login:** | et0016 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:19-cv-00392-MTT |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

ANNA LANGE,

      Plaintiff,

v.

HOUSTON COUNTY, GEORGIA;
HOUSTON COUNTY BOARD OF
COMMISSIONERS; Houston County
Commissioners TOMMY STALNAKER,
H. JAY WALKER III, GAIL ROBINSON,
LARRY THOMSON, and TOM
McMICHAEL, in their official and
individual capacities; Houston County
Director of Administration BARRY
HOLLAND, in his official and individual
capacity; Houston County Director of
Personnel KENNETH CARTER, in his
official and individual capacity; and
Houston County Sheriff CULLEN
TALTON, in his official and individual
capacity,

      Defendants.

Civil Action

**JURY TRIAL DEMANDED**

---

**AMENDED COMPLAINT**

---

Plaintiff Anna Lange, by and through her attorneys, files this Complaint against

Defendants Houston County, Georgia; the Houston County Board of Commissioners; Houston

County Commissioners Tommy Stalnaker, H. Jay Walker III, Gail Robinson, Larry Thomson,

and Tom McMichael, in their official and individual capacities; Houston County Director of

Administration Barry Holland, in his official and individual capacity; Houston County Director

of Personnel Kenneth Carter, in his official and individual capacity; and Houston County Sheriff

Cullen Talton, in his official and individual capacity (collectively, the "Defendants"); and respectfully states as follows:

## INTRODUCTION

1.      This case is about the denial of equal benefits for equal work.

2.      Sergeant Anna Lange ("Plaintiff" or "Sgt. Lange"), a twenty-three-year veteran of law enforcement, is a Deputy Sheriff in the Houston County Sheriff's Office ("Sheriff's Office"), where she has worked since 2006.

3.      Sgt. Lange is also a transgender woman who requires doctor-recommended gender-transition treatment for a medical condition:  gender dysphoria.

4.      Under the Houston County employee health plan (the "Health Plan"), employees generally receive coverage for their medically necessary care. In contrast, Sgt. Lange is being denied medically necessary care under the Health Plan because Houston County ("Houston County" or the "County") has expressly and deliberately excluded the care she needs. The Health Plan specifically provides that the medical treatments that Sgt. Lange's physicians have prescribed for her—which it calls "[d]rugs for sex change surgery," and "[s]ervices and supplies for a sex change"—are not covered (the "Exclusion").[1]

5.      The County hasn't adopted the Exclusion because the excluded care isn't medically necessary or widely recognized as effective, but simply because the County seeks to discriminate against employees like Sgt. Lange. Houston County's creation of the Exclusion deliberately discriminates for three reasons, each of which is unlawful:  first, to injure Sgt. Lange

-----

[1] The term "sex change surgery" is not used in the medical community, which instead refers to these procedures as gender reassignment surgery or gender confirmation surgery. These terms reflect the contemporary medical and psychological understanding that gender-transition medical treatments make visible, but do not "change," an individual's sex, by bringing primary and secondary sex characteristics into alignment with the person's sense of gender.

and others like her, for engaging in conduct—seeking a gender transition—that changes physical sex characteristics from male to female and transgresses gender stereotypes; second, to deprive Sgt. Lange and all other Houston County employees of coverage for the only treatment known to be effective for a stigmatized medical condition, gender dysphoria, because Defendants disfavor "sex change[s];" and third, to target Sgt. Lange and other transgender employees for inferior treatment compared to their co-workers.

6.      As a result of the Exclusion, Sgt. Lange has been forced to forgo some medically necessary gender-transition care because she cannot afford to pay for it out of pocket; and has incurred out-of-pocket costs to obtain other medically necessary care without the financial protections afforded by the Health Plan.

7.      She also suffers distress, humiliation, and a loss of dignity because of this targeted discrimination and Defendants' categorical denigration of her and her medical needs.

8.      Sgt. Lange has repeatedly asked Defendants to remove the Exclusion from the Health Plan, including in correspondence, through testimony at a public meeting of the Houston County Board of Commissioners in February 2019, and at an in-person meeting with Sheriff Talton the same month.

9.      In response to her requests, Defendants have doubled down on their discrimination. After Sgt. Lange sent her initial letter requesting a removal of the Exclusion in January 2019, Houston County's Director of Personnel, Kenneth Carter, wrote to the Health Plan's claims administrator, Anthem Blue Cross and Blue Shield ("Anthem"), reaffirming that the County would retain the Exclusion, and agreeing to be responsible for any penalties incurred as a result of the County's unlawful discrimination. Subsequently, the County Attorney, Tom

Hall, directed the Board and its staff not to speak to anyone about the Exclusion. The Houston County Board of Commissioners subsequently voted to readopt the Exclusion for 2020.

10. Sgt. Lange thus brings this action seeking declaratory and injunctive relief and an award of damages caused by Defendants' discriminatory denial of health care coverage and their failure to reasonably accommodate her disability.

## JURISDICTION AND VENUE

11. This action arises under the equal protection guarantees of the Fourteenth Amendment of the United States Constitution (pursuant to 42 U.S.C. § 1983) and of Article I, § 1, ¶¶ II and XXV of the Georgia Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); Titles I and II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*

12. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367(a); and 42 U.S.C. § 2000e-5(f)(3).

13. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983.

14. Under 28 U.S.C. § 1391, venue is proper in the Middle District of Georgia because Defendants reside and are subject to personal jurisdiction in the District and a substantial part of the events or omissions giving rise to the claim occurred in Houston County, Georgia.

15. This action arises in the Macon Division because the events or omissions that give rise to the claim occurred in Houston County, Georgia.

## PARTIES

16. Plaintiff Anna Lange resides in Houston County, Georgia. She is employed as a sheriff's deputy in Houston County.

17.     Defendant Houston County, Georgia is a political subdivision of the State of Georgia. Its office is located at 200 Carl Vinson Parkway, Warner Robins, Georgia. Houston County has 15 or more employees and is engaged in the business of government, which affects commerce.

18.     The County is a member of the Georgia Interlocal Risk Management Agency (GIRMA) risk pool for liability insurance, which operates as a common risk management and insurance program for local government members.

19.     Defendant Houston County Board of Commissioners (the "Board") is the governing authority for Houston County. Its office is located at 200 Carl Vinson Parkway, Warner Robins, Georgia. The Board has authority to set the terms of, and administer, the Health Plan.

20.     Sgt. Lange is annually issued an IRS Form W-2 identifying the "Houston County Commissioners" as Sgt. Lange's employer, and an IRS Form 1095-C likewise identifying the "Houston County Commissioners" as the provider of her employer-provided health insurance, pursuant to the Affordable Care Act.

21.     The Board's members are Defendants Tommy Stalnaker, H. Jay Walker III, Gail Robinson, Larry Thomson, and Tom McMichael. Commissioner Stalnaker is Chairman of the Board; in that capacity, he serves as the County's chief executive officer. The Board has delegated to Commissioner Walker the role of developing and maintaining appropriate personnel policies and fringe benefits for Houston County employees. Commissioner Thomson's work assignments include the Sheriff's Office.

22.     Defendant Barry Holland is Houston County's Director of Administration. He is responsible for the day-to-day operations of the County's staff departments and advises the Board on finance and personnel, among other matters.

23.     Defendant Kenneth Carter is Houston County's Director of Personnel. He administers the County's selection of the Health Plan's terms, including the Exclusion.

24.     Defendant Cullen Talton is Houston County's Sheriff. He is Plaintiff's supervisor and oversees the entire Sheriff's Office, which is located at 202 Carl Vinson Parkway, Warner Robins, Georgia and 201 Perry Parkway, Perry, Georgia.

25.     Defendant Talton, in his capacity as Sheriff of Houston County, is the highest policy making official within the Sheriff's Office.

26.     The Sheriff's Office receives federal financial assistance, including through the Edward Byrne Memorial Justice Assistance Grant Program.

27.     Defendant Talton has delegated to Houston County the authority to provide Sheriff's Office employees with fringe benefits and other essential employer functions.

28.     Defendants Tommy Stalnaker, H. Jay Walker III, Gail Robinson, Larry Thomson, Tom McMichael, Kenneth Carter, and Cullen Talton are referred to herein as the "Individual Defendants." The Individual Defendants are sued in both their official and personal capacities.

**EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS**

29.     On May 20, 2019, Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Houston County for sex and disability discrimination in violation of Title VII and the ADA, respectively.

30.     The EEOC did not undertake any conciliation efforts and issued a right-to-sue letter, dated July 8, 2019, which was received on July 11, 2019.

31.     A true and accurate copy of the right-to-sue letter is attached hereto as Exhibit A.

32.     On February 11, 2020, Plaintiff timely filed a charge with the EEOC against the Sheriff's Office and Sheriff Talton for sex and disability discrimination in violation of Title VII and the ADA, respectively.

33.     The EEOC did not undertake any conciliation efforts and issued a right-to-sue letter, dated February 26, 2020, which was received on February 28, 2020.

34.     A true and accurate copy of the right-to-sue letter is attached hereto as Exhibit B.

## FACTUAL BACKGROUND

*Houston County Deputy Sheriff Sgt. Anna Lange's Career in Law Enforcement*

35.     Sgt. Lange, a Georgia native, has worked in Georgia law enforcement for twenty-three years.

36.     In September 2006, the Sheriff's Office hired Sgt. Lange to serve as Patrol Deputy. As a result of her exemplary performance, she has been promoted twice, first in 2012 to the rank of Corporal and, subsequently in 2014, to her current rank of Sergeant in the Criminal Investigation Division of the Sheriff's Office.

37.     Sgt. Lange also brings specialized training to the job. She has been a Field Training Officer since 2001 and helps to train new officers. In 2009, she graduated from the Georgia Bureau of Investigations' Georgia Terrorism and Intelligence Project program. She has an At-Risk Adult Crime Tactics (ACT) Specialist certification and is the County's primary investigator for elder-abuse cases. She is also currently a member of the Middle District of Georgia's Human Trafficking Network and works to aid prosecutions of those crimes.

38.     In her current position, Sgt. Lange is tasked with investigating Houston County's most serious crimes, and she routinely risks her life to serve and protect the County's citizens. She has been trained to work on cases involving homicide, sexual assault, financial crimes, and theft. Sgt. Lange serves throughout the county, carries a firearm, and makes arrests. In 2014, she

led a homicide investigation that resulted in the conviction of two men—Devasko Lewis, who

had hired a hitman to kill his former business partner; and the hitman, Jamarcus Clark, who

mistakenly murdered the intended victim's nephew. Her six-hour interrogation of Mr. Clark

yielded his confession.

39.     From the time she joined the Sheriff's Office until early 2017, Sgt. Lange wore

typical men's clothing at work, went by her male birth name, and responded to male pronouns.

As detailed further below, by early 2017, Sgt. Lange had begun the process commonly known as

"gender transition," through which she took steps to align her outward—previously male—

appearance with her internal experience of being female. This required her to inform her

employer that she would begin wearing typical women's clothing, using her female name, Anna,

going by female pronouns, and otherwise being openly female at work. Thus, in April 2017, she

informed Defendant Carter and Defendant Talton of her transition plans during an in-person

meeting. With Defendant Talton's unspoken support, she told her other work colleagues at a

meeting the following day.

40.     While, as discussed further below, Sgt. Lange has experienced significant distress

as a consequence of gender dysphoria, her transition has positively impacted her job performance

and experience. She has found being able to live and work as female—openly and with the

acceptance of her colleagues—to be a blessing, and she has continued to perform her work

successfully.

41.     The "essential functions" of the position of Deputy Sheriff were listed on the

County's website as of the time this case was filed.[2] Sgt. Lange has been consistently able to

---

[2] Houston County, Personnel, Deputy Sheriff,
https://www.houstoncountyga.org/jobs.cms/110/Sheriff%20Department/Deputy%20Sheriff (last accessed Oct. 1, 2019).

perform these functions, despite never receiving an accommodation from the County, as discussed further below. However, she remains the only openly transgender employee out of over three hundred in the Sheriff's Office, and, indeed, one of only a very small number of openly transgender law enforcement officers in the nation.

42.     As part of her overall employment compensation as a Deputy Sheriff, Sgt. Lange receives health care benefits offered and administered by Houston County under the Health Plan. As with other Health Plan participants, she currently contributes $10 of her compensation per pay period for health care benefits.

### *Transgender Status, Gender Dysphoria, and Transition-Related Health Care*

43.     A transgender person is someone whose sex assigned at birth, as determined by the appearance of external sex characteristics, does not match that person's innate, internal sense of being male, female, or some other category (often referred to as "gender identity"). Most of the time, people born with male external characteristics experience themselves as male, and those with female external characteristics experience themselves as female. However, for a transgender person, their external characteristics and their internal perception of sex do not match.

44.     Being transgender bears no relation to their ability to perform or contribute to society. People who are transgender have no impairment in judgment, stability, reliability, or general social or vocational capabilities solely because of their transgender status.

45.     "A person is defined as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes …. There is thus a congruence between discriminating against transgender and transsexual individuals and discrimination on the basis of gender-based behavioral norms." *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011).

46.     Transgender people face stigma and discrimination across all areas of life, from employment, to housing, to health care and public accommodations. The 2015 U.S. Transgender Survey Georgia State Report illuminates the issues facing transgender Georgians.[3] One out of five report losing a job due to their gender identity or expression. Of those who are employed, a third reported being fired, not hired, or denied a promotion for being transgender; and large percentages reported other forms of mistreatment, including being denied appropriate restrooms, told they had to hide their transgender status at work, or being verbally or physically harassed or sexually assaulted. This widespread discrimination leads transgender Georgians to have unemployment and poverty rates of over twice the national average.

47.     Nearly one in three transgender Georgians have experienced homelessness at some point in their lives and more than one in four have been denied housing because of being transgender. Over half have avoided using public restrooms out of fear. One in three report negative experiences with health care providers, including being refused treatment; and one in four did not see a doctor when they needed to due to fear of being mistreated. Onerous bureaucratic requirements prevent most transgender Georgians from obtaining ID documents that correctly reflect their name and gender. This creates a public health and safety hazard:  one in three transgender Georgians who have shown such an ID to another have experienced verbal harassment, denial of service, or assault as a result.

48.     Nationwide and in Georgia, transgender people lack political power and have been unable to translate public support into laws to protect themselves from discrimination. On average, public support for explicit protections in statewide employment nondiscrimination laws

_____

[3] National Center for Transgender Equality, 2015 *U.S. Transgender Survey: Georgia State Report* (2017), http://www.transequality.org/sites/default/files/docs/usts/GA-State-Report-FINAL.pdf.

must reach 81% before such laws can be passed, reflecting a "democratic deficit" when it comes to transgender people.[4]

49.     Transgender people commonly experience gender dysphoria. Gender dysphoria is a rare but serious medical condition that is defined in the American Psychiatric Association's authoritative treatise, the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5"), as a condition characterized by a marked incongruence between one's gender assigned at birth and one's internal sense or experience of gender, which results in clinically significant distress.[5] Gender dysphoria derives from an atypical interaction of the endocrine and neurological systems, which results in a person being born with external sex characteristics and hormones that are inconsistent with the person's gender perception.

50.     Individuals suffering from untreated gender dysphoria often experience severe psychological harm and suffering, including anxiety, depression, thoughts of suicide, and other mental health issues.

51.     Individuals suffering from gender dysphoria are inherently transgender. Nevertheless, unlike the outdated diagnosis of "gender identity disorder," the hallmark or presenting feature of gender dysphoria is not a person's gender identity per se, but rather the clinically diagnosable distress they experience as a consequence of the incongruence of their assigned and experienced genders.

---

[4] Andrew R. Flores et al., *Transgender inclusion in state non-discrimination policies: The democratic deficit and political powerlessness*, RESEARCH AND POLITICS 1, 1 (2015), https://journals.sagepub.com/doi/pdf/10.1177/2053168015612246.

[5] AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 451 (5th ed. 2013).

52.     In addition to the negative health conditions directly attributable to gender dysphoria, people with gender dysphoria (as with transgender people generally) are frequently subjected to discrimination in multiple areas of their lives, including health care, housing, employment, school, and interactions with police and other government officials, which exacerbates these negative health outcomes.

53.     Like many other medical conditions, gender dysphoria is highly treatable. It is a well-established medical consensus that transition-related medical care, which includes hormonal and surgical treatment to align external sex characteristics with a person's internal sense of sex, is successful in alleviating gender dysphoria.[6]

54.     The World Professional Association for Transgender Health ("WPATH"), an interdisciplinary professional and educational organization devoted to transgender health, has established internationally accepted Standards of Care ("SOC") for the treatment of people with gender dysphoria. Major medical and mental health organizations, including the American Medical Association, the Endocrine Society, the American Psychiatric Association, and the American Psychological Association, have endorsed the SOC as the authoritative standards of care.

---

[6] *See*, *e.g.*, WORLD PROF'L ASS'N FOR TRANSGENDER HEALTH, STANDARDS OF CARE 8 (7th ed. 2012) https://s3.amazonaws.com/amo_hub_content/Association140/files/Standards of Care V7 - 2011 WPATH (2)(1).pdf ("[H]ormone therapy and surgery have been found to be medically necessary to alleviate gender dysphoria in many people."); DSM-5 at 51 ("[M]any are distressed if the desired physical interventions by means of hormones and/or surgery are not available.") (emphasis added); see also *O'Donnabhain v. C.I.R.*, 134 T.C. 34, 69 (U.S. Tax Ct. 2010) (holding that the costs of transition-related care are tax deductible, and stating that "[t]he evidence is clear that a substantial segment of the psychiatric profession has been persuaded of the advisability and efficacy of hormone therapy and sex reassignment surgery as treatment for [gender dysphoria], as have many courts").

55.     The treatment for gender dysphoria, as recommended by WPATH, is to assist the person in undergoing a gender transition that will alleviate the distress caused by gender dysphoria and allow the person to live in alignment with their affirmed sex. The transition process has three main components—social, pharmacological, and surgical:

      a.      Social transition involves bringing a person's gender expression and social sex role into alignment with their affirmed sex. It may include wearing clothes, using a new name and pronouns, and interacting with peers and one's social environment in a manner that matches the person's affirmed sex.

      b.      A physician may also prescribe medications that change the hormone balance in the body to be consistent with the person's affirmed sex. For example, a transgender woman would be prescribed medications that reduce testosterone and replace those hormones with estrogen, which will feminize that person's sex characteristics.

      c.      Lastly, a transgender person may pursue surgical treatment to alleviate dysphoria caused by having incongruent primary and secondary sex characteristics.

56.     The precise medical treatments required to alleviate a particular individual's gender dysphoria may vary based on the person's individualized medical needs.

### Sgt. Lange's Gender Dysphoria and Gender Transition

57.     Sgt. Lange is a transgender woman. Although she was assigned the sex of male at birth based on external physical sex characteristics, Sgt. Lange is female.

58.     As a child, Sgt. Lange experienced significant distress, but she did not understand its source. As a teenager, she would sometimes buy traditionally female articles of clothing to try on in private—only to throw them away later in shame.

59.     As a younger adult, Sgt. Lange considered the possibility of "coming out" as a woman. She sought talk therapy, and briefly attempted seeking hormone replacement therapy in

2004. She ultimately decided not to transition at that time because of concern that her marriage and family relationships could suffer, her young child could face discrimination, or she would be forced out of a career that she loved.

60.     Sgt. Lange's gender dysphoria, left untreated, caused her to experience stress, anxiety, depression, and distress, making it difficult to think, concentrate, and interact with others, including her spouse, child, and coworkers.

61.     In 2017, she was diagnosed by her health care provider with gender dysphoria and began sustained treatment. As a part of her treatment for gender dysphoria, Sgt. Lange underwent gender transition. Specifically, Sgt. Lange now lives fully and consistently with her female identity:  she "came out" as transgender to her family, friends, and her employers; she exclusively uses a female name and female pronouns; and she wears typical women's clothing.

62.     Sgt. Lange has been consistently taking hormone replacement therapy, which includes estrogen and a testosterone blocker, under the care of an endocrinologist since March 2017. The therapy has feminized her appearance over time and has reduced the gender dysphoria caused by her male secondary sex characteristics.

63.     Hormone therapy helps to alleviate gender dysphoria in transgender women by changing the predominant sex hormone in the body from testosterone to estrogen. This results in mental health benefits as well as physical changes, including the development and maintenance of female sex characteristics. Common effects include body fat redistribution, decreased muscle mass and strength, softening and decreased oiliness of skin, decreased libido and sperm production, male sexual dysfunction, variable breast growth, and thinning and slowed growth of body and facial hair.

64.     In December 2017, Sgt. Lange legally changed her name, and the name and sex designation on her Georgia driver's license. She also took steps to legally change the sex on her birth certificate but was ultimately prevented from doing so because Georgia law requires that she first certify that she has had gender reassignment surgery.

65.     Sgt. Lange's legal name change also allowed her to begin using the name Anna at work. Previously, she had used her former name, as Defendant Talton, acting on the advice of County Attorney Tom Hall, had denied her earlier request to be called Anna at work.

66.     In April 2018, Sgt. Lange had feminizing chest surgery (also known as "top surgery"). Due to the Exclusion, Sgt. Lange paid $6,866 out of pocket for it.

67.     Since her top surgery, Sgt. Lange continues to experience distress regarding her remaining male external sex characteristics. Although the medical treatment she has received thus far has been therapeutic, Sgt. Lange requires additional treatment to fully resolve her gender dysphoria. She continues to experience stress, anxiety, depression, and distress, which she handles as best as she can, but has continued to limit her ability to function socially and professionally. Her reproductive,[7] neurological and endocrine functions remain impaired.[8] She remains a qualified individual with a disability, she has a record of a disability, and she is regarded as having a disability.

68.     Sgt. Lange also fears for her safety, given the incongruence between her increasingly feminized appearance and those characteristics.

---

[7] *See* SOC at 36-38 (discussing decreased sperm production in people taking feminizing hormones).

[8] *See also generally* 29 C.F.R. § 1630.2(j)(4)(ii) ("[T]he *non*-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity.") (emphasis added).

69.     To alleviate her gender dysphoria, Sgt. Lange has decided, upon the
recommendation of her endocrinologist, two psychologists, and a surgeon, that genital surgery
(also known as "bottom surgery") is the next step in her treatment.

### Defendants' Discriminatory Health Plan

70.     Defendants operate the Health Plan for the benefit of participating employees.

71.     As an employee, Sgt. Lange is qualified to and does participate in the Health Plan.

72.     Defendants have entered into an arrangement under which Sherriff Talton has
delegated to Houston County the obligation to provide the Sheriff's Office employees with
fringe benefits and other essential employer functions.

73.     Consistent with this delegation of employer functions, Defendant Carter oversees
the compensation and health benefits of the Sheriff's Office employees, just as he does for other
employees of Houston County. The County includes the Sheriff's Office employees within its
payroll system and within the Health Plan. The County adds and removes from the Health Plan
each employee that the Sheriff's Office directs it to.

74.     Defendants Houston County and the Board have exclusive control over setting the
terms of, administering, and financing the Health Plan. Defendant Carter administers the Health
Plan and recommends changes to the Health Plan to the Board.

75.     Defendants Houston County and the Board have contracted with Anthem as the
third-party administrator of the Health Plan. The Health Plan is funded by the county and
administered by Anthem, which provides administrative services for the Health Plan, including
the preparation of template benefits plans, customized plan design consultation, and claims
processing. Defendants Houston County and the Board have final say over the terms of the plan,
including which services are covered and which are excluded. The Health Plan recites that the

Board, as the sponsor of the plan, is "[t]he legal entity that has adopted the [Health] Plan and has authority regarding its operation, amendment and termination."

76.     Notwithstanding the fact that both the County and the Board control the terms and conditions of the Health Plan provided to employees of the Sheriff's Office, including Sgt. Lange, both the County and the Board have, in this litigation, denied being Sgt. Lange's employer and argued that they are not liable for the discriminatory Exclusion on that basis. However, both are an "employer" under the applicable statutes because they are joint employers with, and agents of, the Sheriff's Office.

77.     Defendant Talton has no control over setting the terms of, administering, or financing the Health Plan. The Sheriff's Office offers no health plans to its employees directly and relies exclusively on Defendants Houston County and the Board to provide health care coverage.

78.     Defendant Talton has the authority to rescind his delegation of control over the terms of Sheriff's Office employees' health benefits and instead offer a health plan that does not contain the Exclusion, but he has not done this. Defendant Talton also has the authority to offer a supplemental health plan that covers treatments for general dysphoria, but he has not done this.

79.     The Health Plan covers medically necessary services including "office visits and doctor services," "diagnostic laboratory" services, "prescription drugs," "surgical supplies," "inpatient hospital care," and "inpatient professional services" including "surgery" and "general anesthesia."

80.     However, the Health Plan excludes coverage of these same services for treating gender dysphoria.

81.     Specifically, the Health Plan excludes the following services:  "Sex Change –
Services and supplies for a sex change and/or the reversal of a sex change," and "Sex Change
Drugs – Drugs for sex change surgery." But for these exclusions, gender transition-related care
would be covered under the Health Plan on the same terms as other medically necessary care.

82.     The Health Plan covers medically necessary hormone replacement therapy,
medically necessary genital surgery, and medically necessary breast surgery as treatment for
various other health conditions, but it expressly excludes coverage of such treatments when
prescribed "for a sex change."

83.     Excluding "sex change" treatments is, by definition, an exclusion of gender-
transition treatments. Only services undertaken for the exclusive purpose of changing external
sex characteristics from male to female and vice versa are excluded. Thus, the Exclusion targets
employees like Sgt. Lange because they are transgender.

84.     The Exclusion deliberately excludes treatments for gender dysphoria. The only
recognized effective treatment for gender dysphoria is gender transition. No other diagnosis
other than gender dysphoria uses gender-transition as a treatment. That is, no one without gender
dysphoria undergoes gender transition. Thus, the Exclusion targets employees like Sgt. Lange
because they need gender dysphoria treatments.

85.     The Health Plan contains a generic exclusion for "Non-Medically Necessary
Services," that is, services that are not undertaken to treat a diagnosed condition. Thus "sex
change" services that were undertaken for non-therapeutic reasons by persons not diagnosed with
gender dysphoria would never be covered under the Health Plan.

86.     Similarly, absent the Exclusion, only medically necessary treatments for gender
dysphoria could be covered.

87.     Most people with gender dysphoria undergo gender transition treatment. Excluding treatments because they change sex characteristics therefore also disproportionately affects people who need access to treatments for gender transition for the purpose of treating gender dysphoria.

88.     As administrator of the Health Plan, Anthem uses corporate medical policies to make medical necessity determinations when evaluating claims. Since at least 2006, Anthem has generally recognized the medical necessity of sex reassignment surgeries in its medical policy on Gender Reassignment Surgery,[9] which outlines the clinical criteria for when it considers such care to be medically necessary. Accordingly, gender transition care meets the Health Plan's definition of medical necessity.

89.     Sgt. Lange has met all of the clinical criteria outlined in Anthem's policy to qualify for surgical treatment for gender dysphoria, including, inter alia, the capacity to make fully informed decisions and consent to treatment; a diagnosis of gender dysphoria; undergoing hormone therapy for over a year; documentation of having lived openly as female for over a year; not having any other significant medical or mental health issues present; and two referrals from qualified mental health professionals.

90.     The specific procedures that have been prescribed for Sgt. Lange and for which she seeks coverage would be covered as medically necessary under the Health Plan but for Defendants' specific decision to deny coverage pursuant to the Exclusion.

---

[9] Anthem, *Clinical UM Guideline, Gender Reassignment Surgery* (Dec. 18, 2019), https://www.anthem.com/dam/medpolicies/abcbs/active/guidelines/gl_pw_a051166.html (last accessed Mar. 23, 2020).

***Defendants' Denial of Sgt. Lange's Requests to Stop Discriminating and Refusal to Accommodate Her Disability***

91.     Defendants knowingly and intentionally chose to adopt and maintain the Exclusion. Sgt. Lange has repeatedly and unsuccessfully requested that Defendants remove or waive it.

92.     In preparation for bottom surgery, Sgt. Lange called Anthem to inquire as to whether this surgery was covered under the Health Plan. Anthem's agent informed Sgt. Lange that she did not see an exclusion and that the surgery would be covered. Skeptical, Sgt. Lange asked her surgeon's office to inquire as well, and they, too, were told that the surgery would be covered under the Health Plan.

93.     Based upon these assurances, Sgt. Lange flew out of state for a surgical consultation in November 2018. After the consultation, the surgery was scheduled, and Sgt. Lange's surgeon applied to Anthem for preauthorization.

94.     Notwithstanding its prior assurances, in a letter dated November 26, 2018, Anthem denied preauthorization, citing the Exclusion. Sgt. Lange submitted an appeal to Anthem on December 11, 2018, which Anthem denied on January 29, 2019, again citing the Exclusion. Sgt. Lange submitted a voluntary second-level appeal on March 28, 2019. Anthem did not issue a response.

95.     The Health Plan provides that the Board "may change the benefits described in this Benefit Booklet and the Member will be informed of such changes as required by law. This Benefit Booklet shall be subject to amendment, modification, and termination in accordance with any of its provisions by the Employer, or by mutual agreement between the Claims Administrator and the Employer without the consent or concurrence of any Member."

96.     The Exclusion must be renewed annually as part of Houston County's renewal of its Administrative Services Agreement with Anthem and its update of the Health Plan's terms. Anthem's plan selection documents include a box to check that indicates whether the Exclusion should be renewed. The most recent version of Anthem's checkbox form recites that the Exclusion is unlawful but will be preserved if the box is checked.

97.     Signing the Administrative Services Agreement and checking the box renewing the Exclusion are among the responsibilities of Defendant Carter.

98.     On December 12, 2018, Defendant Carter checked the Exclusion box and signed the checkbox form, thus renewing the Exclusion for the 2019 plan year.

99.     Upon information and belief, Defendant Carter again communicated to Anthem the County's intention to renew the Exclusion for the 2020 plan year, sometime subsequent to November 18, 2019.

100.    As Defendants are responsible for the Exclusion, Sgt. Lange has sought to have them rescind it.

101.    In a January 16, 2019, letter from her attorney to the Board, Sgt. Lange explained that she is transgender, requires care excluded by the Exclusion, and asked to engage in a dialogue about modifying or eliminating the Exclusion.

102.    In response, Defendants reaffirmed their commitment to discriminate against Sgt. Lange because she is a transgender woman seeking transition-related health care as treatment for her gender dysphoria. On February 13, 2019, Defendant Carter sent a letter to Anthem,

reaffirming Houston County's decision to adopt the Exclusion and agreeing to be responsible for any legal consequences of that decision.[10]

103.    At a February 19, 2019 public meeting of the Board, Sgt. Lange spoke on the record about her transition, her gender dysphoria, and her need for care excluded by the Exclusion, and asked for a modification. The Board responded that it would not change the Exclusion. County Attorney Tom Hall directed the Board and its staff not to explain their reason for the denial and not to speak about it with anyone.[11]

104.    Shortly before that, approximately the week of February 11, 2019, Sgt. Lange met with Sheriff Talton to discuss the Exclusion, her request for coverage for her surgery, and her plan to speak at the Board meeting. Although Sheriff Talton asked about the Exclusion, the

---

[10] Upon information and belief, this letter was solicited by Anthem as a condition of agreeing to retain the Exclusion.

[11] The following colloquy occurred at the meeting between the Board and Sgt. Lange's counsel Noah Lewis:

> Chairman Stalnaker: "I'm gonna call on County Attorney Tom Hall to tell the County's position on this particular issue. Mr. Hall."
>
> Mr. Hall: "Thank you Mr. Chairman. The information that you sent on the 19th of January, we did receive, and had an answer to that prepared, and then your client asked for an audience here at the meeting. So, we determined that we weren't going to send you an answer—that we would, at this meeting, as you present yours, we would also tell you our answer.
>
> What you requested, as you know, is not covered by the County health insurance. The Board is not considering any changes to the plan at this time. I'll let everyone know that I have advised the Commission and the staff not to discuss this matter due to the potential for litigation. So, if you do ask them about it, they're not going to answer you about it. So, that is, in a nutshell, that's our answer. And we appreciate your time."
>
> Mr. Lewis: "Can you offer a reason for the…"
>
> Chairman Stalnaker: "No, thanks. Your time's up. Thank you very much."

process of denial, and the cost of the surgery, he did not engage in an interactive process or offer to provide her with a reasonable accommodation.

105.    Counsel for Sgt. Lange also sent Defendant Talton an ante litem notice detailing her claims by overnight mail on February 12, 2020, but received no reply.

106.    On April 19, 2019, Defendant Carter signed the annual renewal and amendment of the Administrative Services Agreement for the 2019 plan year on the Board's behalf.

107.    In a September 20, 2019, email from her attorneys to Mr. Hall, Sgt. Lange renewed her request for a rescission of the Exclusion, clarifying that she was also seeking it not be applied to her, as a disability accommodation. The Board did not make any response other than a request by Mr. Hall for further time to respond.

108.    Upon information and belief, Chairman Stalnaker and Commissioner Walker have the authority to direct Defendant Carter to rescind the Exclusion and have not done so.

109.    Prior to the commencement of this litigation, the Board had never publicly voted or debated on the Exclusion, nor offered any reason for it.

110.    There is no medical or cost basis for it. It also has no relation to any employee's job function.

111.    Defendants have elected to maintain the Exclusion, notwithstanding that a valued employee requested it be eliminated and in the teeth of an express warning of illegality from Anthem, which requires Defendants to assume responsibility for any penalties incurred.

112.    Following the commencement of this litigation, on November 19, 2019, the Board met and considered Defendant Carter's recommendations concerning plan changes for the 2020 plan year. At that meeting, Defendant Carter recommended that the Board maintain the Exclusion.

113.    The Board approved Defendant Carter's recommendation. The Board did not discuss or approve any accommodation for Sgt. Lange.

114.    The only proffered reason for maintaining the Exclusion at that meeting was cost. That has also been the only reason Defendants have provided for maintaining the Exclusion in this litigation.

115.    Saving money is not a legitimate basis for discrimination on the grounds of sex, disability, or transgender status.

116.    Even if it were, there is no actuarially sound reason to single out and price gender transition coverage separately from all other procedures. The Health Plan covers other medical conditions that are more widespread and costlier to treat. Gender transition care is not uniquely costly as compared to other forms of health care.

117.    The cost of removing an exclusion of medically necessary treatments for gender dysphoria from a health care plan is insignificant. *See*, *e.g.*, *Flack v. Wisconsin Dep't of Health Servs.*, No. 18-CV-309-WMC, 2019 WL 3858297, at *5 (W.D. Wis. Aug. 16, 2019) ("[D]efendants estimate that removing the Challenged Exclusion and covering gender-confirming surgeries would cost between $300,000 and $1.2 million annually. There is no dispute that these amounts are actuarially immaterial as they are equal to approximately 0.008% to 0.03% of the State's $3.9 billion share of Wisconsin Medicaid's $9.7 billion annual budget."); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 1000 (W.D. Wis. 2018) ("From an actuarial perspective, there appears to be no dispute that the cost of coverage is immaterial at 0.1% to 0.2% of the total cost of providing health insurance to state employees, even adopting defendants' cost estimation.").

118.     The cost of the care covered by the Exclusion is in line with other medical treatments. This care also has a low utilization rate, given that transgender people comprise a very small percentage of the population.

119.     The cost of care covered by the Exclusion is also offset by the treatment expenses and morbidities associated with inadequately treated gender dysphoria, including anxiety, depression, substance abuse, HIV incidence, depression, and suicide attempts.

120.     Upon information and belief, the County engaged in no actuarial or other analysis of its likely costs absent the Exclusion.

121.     Rescinding the Exclusion would not impair or threaten the Health Plan's solvency.

122.     Actuarial data supports a conclusion that rescinding the Exclusion would not even require the Health Plan to raise employee or employer contribution rates in order to pay for the care.

123.     Defendants maintain stop-loss insurance that allows them to pay for any claims that are unusually high.

124.     Given the Exclusion, Sgt. Lange is unable to equally access the fringe benefits offered under the Health Plan without a reasonable accommodation for her disability. Sgt. Lange's proposed, reasonable accommodation is coverage of her medically necessary care.

125.     A one-time exception from the Exclusion for Sgt. Lange would be an expense on par with comparable forms of health care, and would not unduly burden the Health Plan, nor affect its solvency.

126.     Lacking any justified or justifiable reason, the only conceivable purpose of the Exclusion is its effect:  to single out transgender people undergoing a gender transition for

inferior compensation as compared to their colleagues, and to unlawfully seek to avoid paying for a stigmatized form of health care.

127.    Most transgender people do seek at least some transition-related health care, commonly including a lifelong course of hormone replacement therapy. And only transgender people seek transition-related medical care. Thus, the Exclusion affects only transgender people and, by definition, it affects only those people who seek a gender transition. It also, by definition, excludes the only medically accepted medical and pharmaceutical treatments for gender dysphoria.

128.    The Exclusion's singling out of people who seek gender dysphoria treatment not only harms their health and their finances, it deepens the stigma attached to being transgender, suffering from gender dysphoria, and seeking a gender transition. It communicates to them and to the public that their local government deems them unworthy of being treated equally and of obtaining the same coverage for medically necessary health care that all other employees receive in exchange for their work.

129.    The discrimination against Sgt. Lange remains ongoing as long as the Exclusion remains in the Health Plan.

130.    Because the Exclusion prohibits all treatments for gender transition, Sgt. Lange has been forced to incur out-of-pocket costs for medically necessary health care.

131.    She has also been forced to forgo medically necessary care because she cannot afford it, leaving her gender dysphoria inadequately treated.

132.    The discrimination she has suffered as a result of the Exclusion has caused her financial hardship, distress, anguish, stress, and humiliation.

**FIRST CAUSE OF ACTION**

***Violation of 42 U.S.C. § 1983 Caused by Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution on the Basis of Sex and Transgender Status, Against Houston County, the Board, and the Individual Defendants in Their Individual and Official Capacities***

133.    The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall make or enforce any law which shall … deny to any person within its jurisdiction the equal protection of the laws."

134.    42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, … subjects, or causes to be subjected, any … person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …."

135.    Defendants' adoption of the Exclusion has denied and continues to deny Sgt. Lange equal protection of the laws, by discriminating against her on the basis of sex and transgender status.

**SECOND CAUSE OF ACTION**

***Violation of the Georgia Equal Protection Guarantee on the Basis of Sex and Transgender Status, Against the Individual Defendants in Their Individual Capacities***

136.    Georgia's Equal Protection Clause states as follows:  "Protection to person and property is the paramount duty of government and shall be impartial and complete. No person shall be denied the equal protection of the laws." Ga. Const. Art. I, § 1, ¶ II.

137.    Ga. Const. Art. I, § 1, ¶ XXV provides further that, "The social status of a citizen shall never be the subject of legislation."

138.   Defendants' adoption of the Exclusion has denied and continues to deny Sgt.

Lange equal protection of the laws by discriminating against her on the basis of sex and

transgender status.

## THIRD CAUSE OF ACTION

### *Unlawful Discrimination on the Basis of Sex in Violation of Title VII of the Civil Rights Act of 1964, Against Houston County, the Board, and the Individual Defendants in Their Official Capacities*

139.   Title VII of the Civil Rights Act of 1964 provides that an employer or agent

thereof may not "discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C.

§ 2000e-2(a)(1).

140.   The County, the Board, and the Individual Defendants in their official capacities

are Sgt. Lange's employers under Title VII of the Civil Rights Act.

141.   Defendants' adoption of the Exclusion violates Title VII by intentionally

providing lesser terms of compensation to employees, including Sgt. Lange, who are seeking a

gender transition.

## FOURTH CAUSE OF ACTION

### *Unlawful Discrimination on the Basis of Disability in Violation of Title I of the Americans with Disabilities Act Against Houston County, the Board, and the Individual Defendants in Their Official Capacities*

142.   Title I of the Americans with Disabilities Act ("ADA") provides that "[n]o

covered entity shall discriminate against a qualified individual on the basis of disability in regard

to … employee compensation, job training, and other terms, conditions, and privileges of

employment." 42 U.S.C. § 12112(a).

143.   Title I of the ADA prohibits disparate treatment of a qualified individual with a

disability, including:  (i) "limiting, segregating, or classifying a job applicant or employee in a

way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee"; (ii) "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs)"; and (iii) "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(1)-(2), (4); *see also* 29 C.F.R. §§ 1630.4 – 1630.8.

144.    Title I of the ADA prohibits conduct that has a disparate impact on a qualified individual with a disability, including:  (i) "utilizing standards, criteria, or methods of administration … that have the effect of discrimination on the basis of disability"; and (ii) "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b)(3), (6); *see also* 29 C.F.R. §§ 1630.7, 1630.10.

145.    Title I of the ADA also prohibits "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or … denying employment opportunities to a job applicant or employee who is an otherwise qualified

individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5); *see also* 29 C.F.R. § 1630.9.

146.    29 C.F.R. § 1630.2(o)(1)(iii) also requires "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities."

147.    The County, the Board, and the Individual Defendants in their official capacities are Sgt. Lange's employers under Title I of the ADA.

148.    Employees enrolled in the Health Plan who do not have gender dysphoria are able to access medically necessary services under the plan without limitation due to disability.

149.    Employees enrolled in the Health Plan who do not have gender dysphoria can get coverage under the Health Plan for hormone therapy, mastectomies, breast implants, and other surgical modifications of their bodies for the purpose of treating an illness or disease.

150.    Sgt. Lange is not able to access medically necessary services under the Health Plan because of her gender dysphoria, meaning Sgt. Lange has been unable to enjoy equal benefits and privileges of employment.

151.    Defendants' adoption of the Exclusion violates Title I of the ADA by discriminating against Sgt. Lange on the basis of her gender dysphoria.

152.    Defendants' adoption of the Exclusion also violates Title I of the ADA because it has the effect of discriminating against employees, including Sgt. Lange, on the basis of gender dysphoria.

153.    Sgt. Lange informed Defendants of her need for a reasonable accommodation necessary for her to enjoy equal benefits and privileges of employment, namely a waiver or revocation of the exclusion for "sex change" services.

154.    Defendants did not engage in a dialogue about what would constitute a reasonable accommodation or grant her proposed accommodation in the form of making a one-time exception to the general rule that the plan excludes "sex change" services.

155.    Making a one-time exception would not financially or otherwise unduly burden the operation of the Health Plan. Additionally, the Sheriff could also reasonably accommodate Sgt. Lange by replacing the Health Plan with a different health plan that did not include the Exclusion.

156.    Defendants' refusal to grant Sgt. Lange the requested reasonable accommodation of rescinding or waiving the Exclusion or refusing to replace the Health Plan with one that does not include the Exclusion violates Title I of the ADA by discriminating against Sgt. Lange on the basis of her gender dysphoria.

**FIFTH CAUSE OF ACTION**

*Unlawful Discrimination on the Basis of Disability in Violation of Title II of the Americans with Disabilities Act Against Houston County, the Board, and the Individual Defendants in Their Official Capacities*

157.    Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132, including "[a]fford[ing] a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii) or "utiliz[ing] criteria or methods of administration

. . . [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability," *id.* § 35.130(b)(3)(i).

158.    Title II of the ADA also requires a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

159.    Employees enrolled in the Health Plan who do not have gender dysphoria are able to access medically necessary services under the plan without limitation due to disability.

160.    Employees enrolled in the Health Plan who do not have gender dysphoria can get coverage under the Health Plan for hormone therapy, mastectomies, breast implants, and other surgical modifications of their bodies for the purpose of treating an illness or disease.

161.    Sgt. Lange is not able to access medically necessary services under the Health Plan because of her gender dysphoria, meaning Sgt. Lange has been unable to enjoy equal benefits and privileges of employment.

162.    Defendants' adoption of the Exclusion violates Title II of the ADA by discriminating against Sgt. Lange on the basis of her gender dysphoria.

163.    Defendants' adoption of the Exclusion also violates Title II of the ADA because it has the effect of discriminating against employees, including Sgt. Lange, on the basis of gender dysphoria.

164.    Defendants' failure to modify the Health Plan to waive or rescind the Exclusion or to replace the Health Plan with one that does not include the Exclusion also violates Title II of

the ADA because the Exclusion relegates Sgt. Lange to using a benefit or service that is not

equal to that afforded to Health Plan enrollees without gender dysphoria.

165.    Eliminating the Exclusion would not fundamentally alter the nature of the Health

Plan as the Health Plan is designed to provide coverage for medically necessary services and

treatments for gender dysphoria are medically necessary.

## SIXTH CAUSE OF ACTION

### *Unlawful Discrimination on the Basis of Disability in Violation of Section 504 of the Rehabilitation Act Against Defendant Talton in His Official Capacity*

166.    Section 504 of the Rehabilitation Act ("Section 504") provides that "[n]o

otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability,

be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a); *see*

*also* 28 C.F.R. § 42.503(a), including "discrimination in employment under any program or

activity receiving Federal financial assistance." 28 C.F.R. 42.510(a).

167.    Section 504 prohibits discrimination accomplished either directly or indirectly

through contractual or other arrangements. 28 C.F.R. § 42.510(a); *see also* 29 U.S.C. § 794(d)

(stating that standards under Title I of the ADA shall apply to employment discrimination by

federally funded programs or activities). Section 504 further forbids conduct that has a disparate

impact on a qualified individual with a disability, including "utiliz[ing] criteria or methods of

administration that either purposely or in effect discriminate on the basis of handicap" or

"perpetuate the discrimination of another recipient if both recipients are subject to common

administrative control or are agencies of the same State." 28 C.F.R. § 42.503(b)(3).

168.    Section 504 requires the provision of "reasonable accommodation to the known

physical or mental limitations of an otherwise qualified handicapped applicant or employee

unless the recipient can demonstrate . . . that the accommodation would impose an undue hardship on the operation of its program or activity." 28 C.F.R. § 42.511(a).

169.     At all relevant times, Defendant Talton, in his capacity as the Sheriff of Houston County, received federal financial assistance for the operation of the Sheriff's Office and is thus subject to the Rehabilitation Act. 29 U.S.C. § 794(b)(1); *see also* 28 C.F.R. § 42.540(h). In particular, the Sheriff's Office receives federal funding through the Edward Byrne Memorial Justice Assistance Grant Program.

170.     Employees enrolled in the Health Plan who do not have gender dysphoria are able to access medically necessary services under the plan without limitation due to disability.

171.     Employees enrolled in the Health Plan who do not have gender dysphoria can get coverage under the Health Plan for hormone therapy, mastectomies, breast implants, and other surgical modifications of their bodies for the purpose of treating an illness or disease.

172.     Sgt. Lange is not able to access medically necessary services under the Health Plan because of her gender dysphoria, meaning Sgt. Lange has been unable to enjoy equal benefits and privileges of employment.

173.     Defendant Talton's decision, in his capacity as Sheriff of Houston County, to provide employees health care coverage containing the discriminatory Exclusion violates Section 504 of the Rehabilitation Act because it constitutes discrimination against employees, including Sgt. Lange, solely on the basis of a disability, preventing them from fully and equally enjoying all of the benefits of the Health Plan.

174.     Defendant Talton's decision to provide employee health care coverage containing the discriminatory Exclusion also violates Section 504 of the Rehabilitation Act because it has

the effect of discriminating against employees, including Sgt. Lange, on the basis of gender dysphoria.

175.     Defendant Talton further violated Section 504 of the Rehabilitation Act by failing to reasonably accommodate Sgt. Lange by providing her health care coverage that does not contain the Exclusion—a reasonable accommodation that would not impose an undue hardship on Defendant Talton, the Sheriff's Office, or its operations.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Sgt. Anna Lange respectfully requests that this Court:

A.     Declare that the Defendants' adoption of the Exclusion violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Georgia Constitution's equal protection guarantee, Title VII of the Civil Rights Act, Title I of the ADA, Title II of the ADA, and Section 504 of the Rehabilitation Act;

B.     Enjoin Defendants from any further enforcement or application of the Exclusion, and from enforcing or applying the Health Plan or any future health plan in any discriminatory or unlawful manner against transgender individuals, individuals with gender dysphoria, or individuals seeking transition-related health care;

C.     Award Plaintiff compensatory, consequential, and punitive damages in an amount to be determined at trial;

D.     Award pre-judgment and post-judgment interest at the highest lawful rate;

E.     Award Plaintiff her reasonable attorneys' fees, costs, and expenses under 42

U.S.C. § 1988 or other applicable statutes; and

F.     Award Plaintiff such other and further relief as the Court may deem just and

proper.

Respectfully submitted this 10th day of April, 2020.

*/s/ Kenneth E. Barton*          David Brown*
Kenneth E. Barton III            Noah E. Lewis*
Ga. State Bar No. 142447         Alejandra Caraballo*
M. Devlin Cooper                 TRANSGENDER LEGAL DEFENSE EDUCATION
Ga. State Bar No. 301171         FUND, INC.
COOPER, BARTON & COOPER          520 8th Ave.
170 College Street               Suite 2204
Macon, GA 31201                  New York, NY 10018
(478) 841-9007 tel.              (646) 862-9396 tel.
(478) 841-9002 fax               (646) 993-1686 fax
keb@cooperbarton.com             dbrown@transgenderlegal.org
mdc@cooperbarton.com             nlewis@transgenderlegal.org
                                 acaraballo@transgenderlegal.org


Wesley Powell*                   Kevin M. Barry*
Mary Eaton*                      QUINNIPIAC UNIVERSITY SCHOOL OF LAW
Sarah M. Wastler*                LEGAL CLINIC
Jill K. Grant*                   275 Mount Carmel Ave.
WILLKIE FARR & GALLAGHER LLP     Hamden, CT 06518
787 Seventh Avenue               (203) 582-3238 tel.
New York, NY 10019-6099          (203) 582-3237 fax
(212) 728-8000 tel.              legalclinic@quinnipiac.edu
(212) 728-8111 fax
wpowell@willkie.com
meaton@willkie.com
swastler@willkie.com
jgrant@willkie.com

*Attorneys for Plaintiff*

* Admitted *pro hac vice*.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

|                                        |     |                                    |
| -------------------------------------- | --- | ---------------------------------- |
| **ANNA LANGE,**                        | )   |                                    |
|                                        | )   |                                    |
|                                        | )   |                                    |
| **Plaintiff,**                         | )   |                                    |
|                                        | )   |                                    |
| **v.**                                 | )   | **CIVIL ACTION NO. 5:19-cv-392 (MTT)** |
|                                        | )   |                                    |
| **HOUSTON COUNTY, Georgia, _et al._,** | )   |                                    |
|                                        | )   |                                    |
|                                        | )   |                                    |
| **Defendants.**                        | )   |                                    |
|                                        | )   |                                    |

## ORDER

Plaintiff Anna Lange brought this action challenging a provision in an employee healthcare plan that excludes coverage for "sex change surgery." The Defendants moved to dismiss all claims, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendant Sheriff Talton's motion to dismiss on sovereign immunity grounds (Doc. 61) is **DENIED**, and the Defendants' motion to dismiss for failure to state a claim (Doc. 62) is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Plaintiff Anna Lange is a Deputy Sheriff at the Houston County Sheriff's Office, where she has worked since 2006. Doc. 56 ¶ 2. In 2017, Lange was diagnosed by her healthcare provider with gender dysphoria, which, she alleges, is "defined in the American Psychiatric Association's authoritative treatise, the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5"), as a condition characterized by a marked incongruence between one's gender assigned at birth and one's internal sense

or experience of gender, which results in clinically significant distress." *Id.* ¶¶ 61, 49. As treatment for her gender dysphoria, Lange has begun using a female name and female pronouns, started wearing typical women's clothing, started receiving hormone therapy, and started identifying as female to her family, friends, employers, and coworkers. *Id.* at 61-65. In April 2018, Lange received feminizing chest surgery, and she now seeks feminizing genital surgery. *Id.* at 66-69. She alleges she seeks feminizing genital surgery on the advice of her endocrinologist, two psychologists, and a surgeon. *Id.* ¶ 69.

Lange receives healthcare benefits[1] as an employment benefit of her job at the Houston County Sheriff's Office. She alleges that the Sheriff's Office and Houston County "have entered into an arrangement under which Sheriff Talton has delegated to Houston County the obligation to provide the Sheriff's Office employees with fringe benefits and other essential employer functions." *Id.* ¶ 72. In other words, Sheriff's Office employees are allowed to participate in the County's health plan. The County's health plan is funded by the County and employee contributions. The Plan is administered by Anthem Blue Cross and Blue Shield. One does not stray from the record to infer that Anthem has expertise and experience in the drafting and administration of health plans and that the County sought Anthem's assistance, to some degree, because of that expertise and experience.

The Plan generally covers medically necessary treatment and services. *Id.* ¶ 79. Lange alleges that Anthem, since at least 2006, "has generally recognized the medical

---

[1] The health plan is self-insured with stop loss coverage. Doc. 56 ¶¶ 74-75, 123. Lange also alleges the County provides other employment-related services to Sheriff's Office employees. *Id.* ¶ 72. It is not yet known whether the Sheriff's Office has placed its employees in the County's civil service system. Doc. 88 at 16:8-11.

necessity of sex reassignment surgeries in its medical policy on Gender Reassignment Surgery."  *Id.* ¶ 88.  However, Houston County's Plan excludes coverage for "Sex Change—Services and supplies for a sex change and/or the reversal of a sex change" and "Sex Change Drugs—Drugs for sex change surgery."  *Id.* ¶ 81.  Lange alleges that Exclusion was adopted by the County, against Anthem's advice, for the purpose of discriminating against transgender employees.  *Id.* ¶¶ 4-5.

It is not yet known when the County first adopted the Exclusion.  Lange alleges that Anthem initially informed her and her surgeon that her surgery would be covered by the Plan.  *Id.* ¶ 92.  But shortly after that, on November 26, 2018, Anthem, now citing the Exclusion, denied preauthorization for the surgery.  *Id.* ¶ 94.  Apparently, the Exclusion was in fact in effect in 2018 because Lange alleges the County "renew[ed]" the Exclusion for the 2019 plan year on December 12, 2018.  *Id.* ¶ 98.  On January 16, 2019, Lange's attorney wrote the Board in an effort "to engage in a dialogue about modifying or eliminating the exclusion."  *Id.* ¶ 101.  Lange alleges the Defendants, rather than engaging in dialogue, "reaffirmed their commitment to discriminate against Sgt. Lange because she is a transgender woman seeking transition-related health care as treatment for her gender dysphoria."  *Id.* ¶ 102.  That conclusory allegation apparently is based in part on a letter the County sent to Anthem on February 13, 2019 "reaffirming Houston County's decision to adopt the Exclusion and agreeing to be responsible for any legal consequences of that decision."  *Id.*  Lange alleges that Anthem required that indemnification for the consequences of the "unlawful" exclusion as a condition of retaining the Exclusion.  *Id.* at n.10.

On February 19, 2019, Sgt. Lange appeared at a public meeting of the Board to request relief from the Exclusion. *Id.* ¶ 103. According to Lange, the County's attorney "directed the Board and its staff not to explain their reason for the denial and not to speak about it with anyone." *Id.* On April 19, 2019, the County renewed the Plan and retained the Exclusion. After Lange filed this action, she alleges the Board again decided to retain the Exclusion for the 2020 plan year. Lange alleges that the "most recent version" of Anthem's plan renewal documentation "recites that the Exclusion is unlawful but will be preserved if the [renewal] box is checked [by the County]." *Id.* ¶ 96.

In her initial Complaint, Lange, for some reason, did not sue her actual employer, Sheriff Talton in his official capacity. (Distinguishing between the Sheriff in his individual capacity and the Sheriff in his official capacity is particularly important here. Accordingly, this Order, when addressing the Sheriff in his official capacity, refers to the Sheriff's Office.) Rather, she sued the County; the County Board of Commissioners; the individual members of the Board of Commissioners; Barry Holland, Houston County's Director of Administration; and Kenneth Carter, the County's Director of Personnel. Doc. 56 ¶¶ 1-2.[2] The Defendants moved to dismiss, arguing the County is not Lange's employer. Taking the hint, Lange amended her complaint to add claims against the Sheriff's Office and the Sheriff in his individual capacity. Docs. 29; 56. In her amended complaint, she generally alleges the adoption and maintenance of the Exclusion violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; Title I and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Rehabilitation Act of

---

[2] The original complaint included a claim against Robbie Dunbar, which was withdrawn by the amended complaint. Doc. 1 at 1. The original complaint also identified Holland as a member of the Board of Commissioners, rather than a Director of Administration. *Id.* ¶ 19.

1973, 29 U.S.C. § 701 *et seq.*; the Equal Protection Clause of the U.S. Constitution; and

the Equal Protection guarantee of the Georgia Constitution.

## II. MOTION TO DISMISS STANDARD

### A. Standard under Rule 12(b)(1)

"[T]he Eleventh Amendment's ultimate guarantee is that nonconsenting states

may not be sued by private individuals in federal court.  Because the Eleventh

Amendment represents a constitutional limitation on the federal judicial power

established in Article III, federal courts lack jurisdiction to entertain claims that are

barred by the Eleventh Amendment." *McClendon v. Georgia Dep't of Cmty. Health*, 261

F.3d 1252, 1256 (11th Cir. 2001) (quotation marks and citations omitted).  In

unpublished guidance, the Eleventh Circuit has stated that "a dismissal on sovereign

immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter

jurisdiction exists." *Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 n.3 (11th Cir.

2010).  When "the existence of subject matter jurisdiction is inextricably intertwined with

material facts affecting the merits of the claim, a district court must be guided by the

standard for summary judgment motions[.]" *Bennett v. United States*, 102 F.3d 486,

488 n.1 (11th Cir. 1996).  Here, the jurisdictional issue is not inextricably intertwined

with facts affecting the merits of the claim, so the Court analyses the motion under Rule

12(b)(1).  The Court addresses the sovereign-immunity defenses first.

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of

subject matter jurisdiction by either facial or factual attack." *Stalley v. Orlando Reg'l*

*Heathcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citation omitted).  "A facial

attack on the complaint requires the court merely to look and see if the plaintiff has

sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his

complaint are taken as true for the purposes of the motion." *Id.* at 1232-33 (quotation

marks and citation omitted).  A factual attack, however, "challenges the existence of

subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits

or testimony." *Id.* at 1233 (citation omitted).  The parties have not introduced any

material extrinsic to the pleadings, and the Court will look only to the complaint to

determine whether there is jurisdiction.

**B. Standard under Rule 12(b)(6)**

The Federal Rules of Civil Procedure require that a pleading contain a "short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a)(2).  To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain

sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft

v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,

570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.*  "Factual

allegations that are merely consistent with a defendant's liability fall short of being

facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012)

(quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and

the reasonable inferences therefrom are construed in the light most favorable to the

plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011)

(quotation marks and citations omitted).  But "conclusory allegations, unwarranted

deductions of facts or legal conclusions masquerading as facts will not prevent

dismissal." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (quotation marks and citation omitted).  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

### III. DISCUSSION

**A. Sovereign immunity**

The Sheriff's Office argues that it is entitled to sovereign immunity from Lange's claims for damages under the Federal Equal Protection Clause, the ADA, and the Rehabilitation Act.  Doc. 61-1.  In response, Lange argues (1) that the Sheriff's Office is not an "arm of the state" for purposes of sovereign immunity, (2) that Congress abrogated sovereign immunity from Lange's ADA Title II claim, and (3) that the Sheriff's Office waived sovereign immunity with respect to Lange's Rehabilitation Act claim.  Doc. 74 at 48-53.  Because the Sheriff's Office has failed to show it was acting as an arm of the state, the Court does not consider Lange's abrogation and waiver arguments.

The Eleventh Amendment protects a state or an arm of the state from being sued in federal court without the state's consent.  *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).  "To receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State.  Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is

asserted to arise. . . . In Eleventh Amendment cases, [the Eleventh Circuit] uses four factors to determine whether an entity is an 'arm of the State' in carrying out a particular function: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1308–09. The entity invoking Eleventh Amendment immunity "bears the burden of demonstrating that it qualifie[s] as an arm of the state entitled to share in its immunity." *Haven v. Bd. of Trustees of Three Rivers Reg'l Libr. Sys.*, 625 F. App'x 929, 933 (11th Cir. 2015) (citations omitted); *see Miller v. Advantage Behav. Health Sys.*, 677 F. App'x 556, 559 (11th Cir. 2017) (citations omitted).[3]

That much is easily said. But as some district judges have noted and as the five dissenting judges in *Manders* argued, the application of the *Manders* factors can be challenging.[4] Before turning to those factors, two preliminary points merit mention. First, as the majority in *Manders* repeatedly stressed, the *Manders* factors must be considered "in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Manders*, 338 F.3d at 1308.

---

[3] The Eleventh Circuit never quite says in its published "arm of the state" cases that the party raising the affirmative defense of sovereign immunity bears the burden of proving its defense. Although the decisions cited here are unpublished, the Court agrees with their reasoning. Further, other circuits addressing the issue have unanimously concluded the burden is on the party invoking immunity. *Grajales v. Puerto Rico Ports Auth.*, 831 F.3d 11, 15 (1st Cir. 2016); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006); *Christy v. Pa. Tpk. Comm'n,* 54 F.3d 1140, 1144 (3d Cir.1995); *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 542 (4th Cir. 2014); *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000); *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002); *Baxter by Baxter v. Vigo Cty. Sch. Corp.*, 26 F.3d 728, 735 n.5 (7th Cir. 1994); *United States ex rel. Fields v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 872 F.3d 872, 876 (8th Cir. 2017); *ITSI T.V. Prods., Inc. v. Agric. Associations*, 3 F.3d 1289, 1292 (9th Cir. 1993).

[4] *See Johnson v. Ogeechee Behav. Health Servs.*, 479 F. Supp. 2d 1357, 1365 (S.D. Ga. 2007); *Mia Luna, Inc. v. Hill*, 2008 WL 4002964, at *3-6 (N.D. Ga. Aug. 22, 2008); *Massengale v. Hill*, 2005 WL 8155185, at *4-5 (N.D. Ga. July 25, 2005).

Thus, the question here is not whether the Sheriff's Office acted as an arm of the state "in some categorical all or nothing manner," but whether it acted for the state "in the particular function[] at issue today." *Id.* at 1309, n. 9 (quotation marks and citations omitted). That would seem to require a very narrow inquiry. But critics of *Manders* argue that the practical application of the *Manders* factors has resulted, as the dissenting judges warned, in "a blatant end-run around our function-by-function approach." *Id.* at 1334 (Barkett, J., dissenting).

Second, and of fundamental importance here, the Sheriff's Office bears the burden of proving that its affirmative defense of sovereign immunity requires dismissal of Lange's claims for damages against him in his official capacity. As Judge Anderson put it in his *Manders* dissenting opinion (albeit not in the context of the standard of review), "the proper question is whether the sheriff has carried his burden of proving that he is an arm of the state." *Id.* at 1331 (Anderson, J., dissenting). In the discharge of that burden, the Sheriff's Office has chosen to make a facial attack; it introduces no extrinsic evidence shedding light on the application of the *Manders* factors.

That said, the Court turns to the narrow question posed by the Sheriff's Office—whether, based on the allegations of the amended complaint, it has established that it acts as an arm of the state when it provides healthcare benefits to its employees. Although the Eleventh Circuit's significant "arm of the state" cases have involved Sheriff's Offices, none of those decisions has addressed anything remotely related to that narrow function. Nonetheless, the Sheriff's Office argues that those decisions provide the answer here. It argues that Eleventh Circuit precedent necessarily

establishes that *any* personnel decision by the Sheriff's Office is taken as an arm of the state.  Docs. 61-1 at 4-8; 80 at 1-2.

The first *Manders* factor, how state law defines the entity, supports a finding of sovereign immunity.  As the Eleventh Circuit has noted, "sheriffs in Georgia derive their power and duties from the State, are controlled [as to certain functions] by the State, and counties cannot, and do not, delegate any law enforcement power or duties to sheriffs."  *Pellitteri v. Prine*, 776 F.3d 777, 780 (11th Cir. 2015) (quoting *Manders*, 338 F.3d at 1313).  As the Court in *Manders* stressed, under Georgia law, the Sheriff's Office and the County are independent, separate entities.  *Id.* at 1319.  The first factor supports a finding that the Sheriff's Office was acting as an arm of the state. [5]

As for control, the second factor, the Sheriff's Office has failed to demonstrate that the State exercises any control over the provision of healthcare benefits.  Instead, it argues that the State exercises control over peace officer training and certification.  Doc. 61-1 at 5-7.  Though it is true that the State's authority to train and discipline supports a finding that the Sheriff's Office is an arm of the state *for purposes of hiring and firing deputies*, provision of healthcare benefits to employees is a different function.  So although "[a sheriff's] power to hire and fire his deputies is subject to a significant amount of oversight by the State," nothing in the briefs or record indicates that the Sheriff's Office's provision of benefits to employees is subject to similar oversight.  *Pellitteri*, 776 F.3d at 781.  Rather, looking to the allegations in the complaint, it appears the Sheriff's Office, not the State, maintains full control over the healthcare benefits it

---

[5] Of course, the same could be said, and has been said, for many other entities created by Georgia law, such as counties and municipalities.  *See Manders*, 338 F.3d at 1335 (Barkett, J., dissenting) ("all local government is by definition a creature of the state's authority to attach powers and duties to particular offices.").

provides its employees.  Exercising that control, it delegated the provision of health benefits to the County.  But nowhere in the complaint, or even in the Sheriff's Office's brief, is there any indication that the State had any control over the Plan or over employee benefits more generally.  Accordingly, looking only to the facts alleged, that factor supports a finding that the Sheriff's Office was not acting as an arm of the state when it performed the function of providing healthcare benefits to its employees.

As to the third factor, source of funding, "each county in Georgia bears the major burden of providing funds to the sheriff's office, including the salaries of the sheriff and his deputies."  *Pellitteri*, 776 F.3d at 782.  However, the Eleventh Circuit has held that this factor does not weigh against immunity because (1) state law requires counties to fund sheriff's offices and (2) counties cannot dictate how the funds are spent.  *Id*.[6] Similarly, the County here cannot dictate how the Sheriff's Office spends its funds. Accordingly, this factor does not weigh for or against immunity.

Fourth, the Court considers monetary liability for a potential judgment against the Sheriff's Office.  In Georgia, as a general matter, "neither the State nor the County will be required to directly pay for any adverse judgment against the Sheriff's office."  *Id*. at 783 (citation omitted).  Typically, therefore, this factor weighs against immunity.  *Id*. Here, however, it arguably weighs against immunity even more strongly: not only will the State treasury be unaffected, but also the County may be responsible for an adverse judgment.  After all, it is the County's Plan, and Lange alleges the County made

---

[6] With respect to funding, the Court in *Pellitteri* stated that "we cannot conclude that this factor weighs in favor of Eleventh Amendment immunity."  However, that quotation was seemingly a typographic mistake, and the Court intended to write, "we cannot conclude that this factor weighs against Eleventh Amendment immunity."  *See Nelson v. Jackson*, 2015 WL 13545487, at *10 n.10 (N.D. Ga. Mar. 31, 2015), *report and recommendation adopted,* 2015 WL 13546505 (N.D. Ga. Apr. 21, 2015) ("Although the court in *Pellitteri* wrote, '[W]e cannot conclude that this factor weighs in favor of Eleventh Amendment immunity,' it seems clear that this was a misstatement.").

the decision to exclude coverage for her needed surgery.  *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994) ("rendering control dispositive does not home in on the impetus for the Eleventh Amendment: the prevention of federal-court judgments that must be paid out of a State's treasury. . . . Accordingly, Courts of Appeals have recognized the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations."); *see also Ga. Ports Auth. v. Lawyer*, 304 Ga. 667, 676, 821 S.E.2d 22, 29 (2018) (describing "the protection of state treasuries *and* the preservation of the respect and dignity due the states as sovereigns" as the twin reasons for being of the Eleventh Amendment) (citing *Hess*).

In sum, under Eleventh Circuit law, the first factor supports a conclusion that the Sheriff's Office was acting as an arm of the state, the second and fourth support a conclusion that it was not acting as an arm of the state, and the third does not support either conclusion.  Looking only to the facts alleged in the complaint, the Sheriff's Office has failed to carry its burden of showing it was acting as an arm of the state.  Accordingly, its motion to dismiss (Doc. 61) is **DENIED**.

**B. ADA Title II claims**

The Defendants also argue that Lange fails to state a claim under Title II of the ADA.  To establish a prima facie case under Title II of the ADA, a plaintiff must show

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (citation omitted).

The Defendants argue that Lange's ADA Title II claims fail because (1) Lange is not disabled within the meaning of the ADA and (2) failure to tailor a plan to a specific

disabled individual's needs is not a denial of access to a public benefit or discrimination within the meaning of the ADA.  Doc. 62-1 at 11-17.

*1. Disability*

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  However, the ADA excludes "gender identity disorders not resulting from physical impairments" from its definition of disability.  42 U.S.C. § 12211(b)(1).  Lange alleges she has "gender dysphoria," which is "defined in the [DSM-5] as a condition characterized by a marked incongruence between one's gender assigned at birth and one's internal sense or experience of gender, which results in clinically significant distress."  Doc. 56 ¶ 49.  The Defendants argue that "gender dysphoria" is a "replacement diagnosis" for "gender identity disorder."  Doc. 62-1 at 12-13.  They argue that a change in how the condition is labeled should not alter the legal effect of the statutory exclusion.

In response, Lange argues that "gender dysphoria" is not a mere relabeling or replacement diagnosis, but rather a "new and distinct diagnosis."  Doc. 74 at 38.  Lange also argues that, as alleged, her gender dysphoria "'result[s] from physical impairments.'"  *Id.* at 38-39.  Specifically, she alleges that "[g]ender dysphoria derives from an atypical interaction of the endocrine and neurological systems, which results in a person being born with external sex characteristics and hormones that are inconsistent with the person's gender perception."  Doc. 56 ¶ 49.  The Defendants' only argument in reply is that that general allegation about the causes of gender dysphoria

does not allege that *Lange's own* dysphoria was caused by an atypical interaction of the endocrine and neurological systems.  Doc. 79 at 15-16.

However, if Lange is alleging (i) that gender dysphoria results from a physical impairment and (ii) that she has gender dysphoria, then it follows that (iii) her dysphoria results from a physical impairment.  Certainly, if this issue were addressed at the summary judgment stage, those allegations might receive more scrutiny.  For example, the Defendants may argue that not all gender dysphoria results from physical impairment, that gender dysphoria has multiple causes, and so on.  But they do not make those arguments here, and it is unlikely the Court could consider them at the motion to dismiss stage.  As a matter of pleading, Lange clearly alleges that she has a condition that results from physical impairment.

Because she has alleged that, the Court cannot conclude as a matter of law that the statutory exclusion of "gender identity disorders" applies, and there is no cause to address whether "gender dysphoria" is a replacement diagnosis.

### 2. *Whether the Exclusion violates Title II of the ADA*

The Defendants also argue the Exclusion does not violate Title II of the ADA because Lange and other employees had equal access to the same health plan.  Lange does not dispute that she had access to the same health plan as her coworkers.  Instead, she argues that the Plan singles out transgender employees for less coverage, thereby impeding their "access" to healthcare.  But courts have consistently rejected her interpretation of Title II's requirements.  In a case under the Rehabilitation Act, the Supreme Court upheld a state's limitation in Medicaid coverage which disproportionately affected handicapped persons.  *Alexander v. Choate*, 469 U.S. 287

(1985).  The Court noted that the Act did not require that "each [Medicaid] recipient . . .

receive that level of health care precisely tailored to his or her particular needs." *Id.* at

303.  Further, the Court noted that the state could choose which benefits it provided,

and the Rehabilitation Act did not require the state to alter its definition of benefits

"simply to meet the reality that the handicapped have greater medical needs." *Id.*

Applying *Alexander*, courts of appeals have uniformly rejected plaintiffs' arguments that

exclusion of disability benefits under a health plan constitutes discrimination under Title

II of the ADA.[7]  *See, e.g.*, *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 608, 610 (3d

Cir. 1998) ("While the defendants' insurance plan differentiated between types of

disabilities, this is a far cry from a specific disabled employee facing differential

treatment due to her disability. . . . The cases finding no violation of the ADA by a

disparity in benefits between mental and physical disabilities are supported by the

ADA's legislative history."); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1019 (6th Cir.

1997) ("As the Court concluded regarding the Rehabilitation Act, the ADA similarly does

not prohibit an insurance company from differentiating between different disabilities.");

*E.E.O.C. v. CNA Ins. Companies*, 96 F.3d 1039, 1044 (7th Cir. 1996) ("All employees—

the perfectly healthy, the physically disabled, and the mentally disabled—had a plan

that promised them long-term benefits from the onset of disability until age 65 if their

problem was physical, and long-term benefits for two years if the problem was mental or

nervous. This may or may not be an enlightened way to do things, but it was not

discriminatory in the usual sense of the term.").

---

[7] The same reasoning may apply to Lange's claims under Title I of the ADA.  However, the Defendants have not made that argument, so the Court does not consider it.

Lange cites no authority to the contrary.  Instead, she argues that her employer should have offered her an "accommodation."  Doc. 74 at 40-41.  By "accommodation," she means rescinding the Exclusion and paying for her treatment.  *Id.*  But she cites no authority in support of the proposition that the ADA requires public employers to cover treatments for any disability.

She cites only two cases, both by district courts.  Neither is apposite.  The first found that state-funded mental health care that was inaccessible to deaf people violated the ADA.  *Belton v. Georgia*, 2012 WL 1080304, at *3 (N.D. Ga. Mar. 30, 2012).  The scope of provided treatment—specifically, mental health counselling—was the same, but the unavailability of American Sign Language interpreters or funding for such interpreters rendered that care inaccessible to deaf people.  Accordingly, that case was not about differential treatment, but denial of access.  In the only other case Lange found to support her interpretation of the ADA, a district court in California wrote that "a person with a disability may be the victim of discrimination precisely because she did not receive disparate treatment when she needed accommodation."  *Presta v. Peninsula Corridor Joint Powers Bd.*, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998).  The Court, and likely the Defendants, would agree, but the case does not support Lange's argument.[8]

---

[8] In that case, the plaintiff brought a claim under a California statute analogous to the ADA, based on trains not stopping at the platform long enough for physically disabled people to embark and disembark. *Presta*, 16 F. Supp. 2d at 1136.  In the order Lange cites, the Court held that a jury instruction requiring the plaintiff to prove discriminatory intent was inappropriate.  *Id.* at 1135 ("The parties have submitted proposed jury instructions. . . . Having considered arguments submitted in letter briefs by both parties, and good cause appearing, the Court now holds that in a claim for discrimination on the basis of disability brought under [California's] Unruh Act, a plaintiff need not prove that the defendant harbored discriminatory intent.").  It is difficult to discern how this case even arguably supports Lange's position.

Because the Plan is equally available to all employees and Lange has pleaded no facts suggesting otherwise, she fails to state a claim under Title II of the ADA.  The Defendants' motion to dismiss (Doc. 62) is **GRANTED** as to the Title II claims.

## C. Rehabilitation Act claims

For similar reasons, Lange fails to state a claim under the Rehabilitation Act. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]"  29 U.S.C. § 794(a). The parties agree that the same analysis applies to the Rehabilitation Act and Title II of the ADA.  Docs. 62-1 at 17-18, 18 n.16; 74 at 43; *see Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) ("Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases.").  Again, Lange has access to the same health plan as everyone else, and the fact the health plan provides more adequate treatment for some conditions than for others does not show discrimination.  Because the Sheriff's Office does not, through the Exclusion, deny Lange access to health care or discriminate against her within the meaning of the Rehabilitation Act, she fails to state a claim.  Accordingly, the Sheriff's Office's motion to dismiss (Doc. 62) is **GRANTED** as to the Rehabilitation Act claim.[9]

---

[9] The Sheriff's Office also argues that the Rehabilitation Act, which prohibits discrimination "*solely* by reason of [the plaintiff's] disability," imposes a higher causation and pleading requirement and that Lange cannot meet that requirement.  29 U.S.C. § 794(a) (emphasis added); Doc. 62-1 at 17-18.  It argues that Lange cannot plausibly allege that the Sheriff's Office chose to offer its employees the County's Plan *solely* to discriminate.  Because the Rehabilitation Act claim fails for the reasons already noted, the Court need not reach this argument.

**D. Employer Liability**

The Sheriff's Office argues that the Title VII claims should be dismissed because it has no control over setting the terms of the Plan; the County argues that the ADA Title I and Title VII claims should be dismissed because Lange is not a County employee. Doc. 62-1 at 6-9.  The Court rejects both arguments.

*1. The Sheriff's Office's Liability*

The Sheriff's Office's lack of control argument fails for two reasons.

First, the Sheriff's Office does have control over its employees' healthcare: it chose to provide its employees with the County's allegedly discriminatory Plan, and it could remove them from the Plan or provide an alternative plan if it chose to.  At the hearing, the Defendants' counsel did not admit the Sheriff's Office retained ultimate control, but neither could he refute it:

> "THE COURT: But the sheriff, the employer, still has control ultimately over the plan; correct?
>
> [Defendants' counsel]: I hesitate because I do some ERISA law, and there are some limitations on what the employer does versus what is a function that the insurance company does."

Doc. 88 at 14:19-23.  Counsel then argued that the County "are handling things that are not, I guess, employer functions; they are just doing the paperwork essentially for the sheriff's office." *Id.* at 15:15-17.  Under that view, of course, the Sheriff's Office does retain control over its employees' health benefits.  Counsel also admit that if an employer delegates an employment function to an agent and the agent violates Title VII, the employer remains liable. *Id.* at 15:18-16:7.  Clearly, as alleged, the Sheriff's Office delegated the function of providing benefits to the County.  Doc. 56 ¶¶ 27, 72.  And the Defendants have not argued—let alone, established—that the Sheriff's Office does not

retain ultimate control over Lange's health benefits.[10]   Accordingly, the Court rejects the argument that the Sheriff's Office's delegation of healthcare benefits to the County insulates it from responsibility for the terms of the Plan.

   *2. The County's Liability*

   The County, by contrast, argues it is not Lange's employer for purposes of Title I of the ADA and Title VII.  Doc. 62-1 at 6-9.  It is undisputed that Lange is employed by the Sheriff's Office and that under Georgia law, the Sheriff's Office and the County are separate entities.

   However, as Lange argues, two separate entities can both be an employer under Title VII.  *See* Doc. 74 at 21.  The ADA and Title VII both define "employer" to include an employer's agents.  42 U.S.C. §§ 12111(5), 2000e(b).  That definition must be construed liberally.  *Williams v. City of Montgomery*, 742 F.2d 586, 588 (11th Cir. 1984), *cert. denied,* 470 U.S. 1053 (1985).  Lange first argues that the County is an agent of the Sheriff's Office.  "Where the employer has delegated control of some of the employer's traditional rights, such as hiring or firing, to a third party, the third party has been found to be an 'employer' by virtue of the agency relationship."  *Williams*, 742 F.2d at 589.  Here, Lange alleged that the Sheriff's Office has chosen to delegate the provision of healthcare benefits to the County.  The County provided healthcare benefits to Sheriff's Office employees on behalf of the Sheriff's Office and tailored those benefits to exclude genital surgery.  With regard to the claims at issue in this lawsuit, therefore,

---

[10] Again, it is not yet known whether the Sheriff's Office has placed its employees in the County's civil service system or has otherwise ceded control of its employees to the County.

Lange has plausibly alleged that the County was acting as an agent of the Sheriff's Office.[11]

## E. ADA Title I claims

As noted above, the Sheriff's Office has not demonstrated it is immune from the ADA Title I claim, and the County has not shown that it is not Lange's employer under the ADA.  The Defendants' motions to dismiss do not address the merits of Lange's ADA Title I claims.  Accordingly, the claims against the Sheriff's Office and against the County will proceed.  The County's motion to dismiss the ADA Title I claims (Doc. 62) is **DENIED**.

## F. Title VII claims

The Sheriff's Office and County originally argued that the Exclusion does not discriminate on the basis of sex because gender dysphoria is a sex-neutral condition. Doc. 62-1 at 9-11.  After the Defendants filed their motions, the Supreme Court ruled in *Bostock v. Clayton Cty., Ga.*, that discrimination against a transgender person necessarily discriminates on the basis of that person's sex.  140 S.Ct. 1731, 1737 (2020).  The Defendants acknowledge that that holding forecloses their original argument.  Doc. 88 at 10:16-11:2.

In their reply brief, the Defendants argue that Lange must allege sufficient facts "to show that the Sheriff adopted the Plan containing the Exclusion with the intent to discriminate against Plaintiff *specifically*."  Doc. 79 at 23 (emphasis added).  They argue that, at most, Lange's allegations demonstrate the Exclusion's impact on "transgender

---

[11] Because the County may be liable under an agency theory, there is no reason to address Lange's alternative argument that the County is liable as a joint employer with the Sheriff's Office.

persons as a whole." Doc. 79 at 24. Unless the Exclusion was adopted to discriminate against Lange, they argue, it cannot violate Title VII.

But that argument patently lacks merit. Under the Defendants' standard, an employer could, hypothetically, adopt a policy of paying all female employees 20% less than their male counterparts. In many situations, a female plaintiff could not prove the policy was adopted with intent to discriminate specifically against her—for instance, if the company had hundreds of female employees or if the policy was adopted before the plaintiff was hired. Under the Defendants' test, that policy might well be immune from challenge under Title VII.

Thus it is no surprise the Defendants can find no authority to support that test. Their only citation is to the Supreme Court's statement in *Bostock* that Title VII analysis should focus on "'individuals, not groups.'" Doc. 79 at 23 (quoting *Bostock*, 140 S. Ct. at 1740). However, the Defendants take that quote out of context. The *Bostock* Court made that observation by way of rejecting the defendant's argument that transgender discrimination does not violate Title VII because it does not favor one sex over another sex. But that principle does not support the Defendants' argument that a showing of discriminatory animus against a protected class is insufficient to state a claim under Title VII.

Second, the Defendants' argument is factually mistaken, too. Lange has alleged sufficient facts to support a plausible inference of individual discrimination. Her amended complaint alleges the following:

- Lange is the only openly transgender employee in the Sheriff's Office. Doc. 56 ¶ 41.  (And, as far as the record reveals, the only openly transgender employee on the Plan.)

- In February 2019, Lange spoke about her transition and requested coverage of her surgery at a public board meeting.  *Id.* ¶ 103.

- The County Attorney acknowledged Lange's request but informed her the Board would not consider modifying the Exclusion.  *Id.*

- Subsequently, the Board "voted to readopt the Exclusion for 2020."  *Id.* ¶ 9.  In April 2019, the County renewed its insurance policy, including the Exclusion.  *Id.* ¶ 106.

- The Board refused to give a rationale for the Exclusion.  *Id.* ¶¶ 103, 109.

- The Board did all this despite Anthem's warning that their exclusion of coverage was "unlawful."[12]

From those allegations, "the court [can] draw the reasonable inference that the defendant is liable" for sex discrimination under Title VII, even under the Defendants' unduly restrictive test.  *Iqbal,* 556 U.S. at 678 (citation omitted).

Because the Defendants' original argument is foreclosed by *Bostock* and their new argument misstates the law and overlooks key factual allegations, their motion to dismiss (Doc. 62) is **DENIED** as to the Title VII claims.[13]

---

[12] Of course, Anthem does not determine legality.  But the point is that the Defendants, without explanation, repeatedly rebuffed Lange even though the Plan administrator advised them their Exclusion was not proper.

[13] The parties do not address whether the adoption or renewal of the Exclusion is an adverse employment action within the meaning of Title VII.  As a result, the Court does not address that issue here.  For a discussion of the analogous issue of whether exclusions of disability coverage for pregnancy violate Title VII, *see Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 676 (1983); *see also General Elec. Co. v. Gilbert*, 429 U.S. 125 (1976), *overruled by Newport News.*

**G. The Federal Equal Protection Clause**

*1. The Sheriff's Office and the County*

As noted above, the Sheriff's Office has not shown it is immune from damages for the equal protection claim.  The Sheriff's Office and the County argue that exclusion of coverage of treatment for a medical condition unique to transgender persons is not discrimination within the meaning of the Equal Protection Clause.  Docs. 62-1 at 31-32; 79 at 18-21.  That argument fails.

There are three types of equal protection claims: (i) that a statute or policy discriminates on its face against the plaintiff's group, (ii) that neutral application of a facially neutral statute or policy has a disparate impact, and (iii) that the defendants are unequally administering a facially neutral statute.  *E & T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987) (citation omitted).  For the latter two claims, the plaintiff must show the defendant acted with a discriminatory purpose.  *Id.* at 112 n.5, 113.  Lange argues the policy is facially discriminatory, and the Defendants argue it is not discriminatory at all.  Both arguments are flawed.  The Court concludes that Lange sufficiently alleges that the Exclusion is a facially neutral classification that has a disproportionate impact on transgender persons and is motivated by discriminatory purpose.

First, though, Lange's argument that the Exclusion is facially discriminatory is suspect.  In the analogous situation of a state disability insurance program which excluded coverage for lost work due to pregnancy, the Supreme Court found the exclusion was not facially sex-based.  *Geduldig v. Aiello*, 417 U.S. 484 (1974).  As the Court noted, the exclusion did not prevent particular groups of people from accessing

the disability program.  The classification, a pregnancy exclusion, did not classify between men and women, or any other *groups* of people.  Instead, it classified by conditions, excluding coverage for pregnancy-related disabilities.  The Court noted that there was "no risk from which men are protected and women are not.  Likewise, there is no risk from which women are protected and men are not."  *Id.* at 496.  A male individual had the same coverage as a female individual.  Similarly, Lange has the same health coverage as other employees.

Lange contends that *Geduldig* has been undermined by intervening precedent. Docs. 74 at 12-13; 83 at 2-3 (citing *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1763 (2020); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989);  *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011)).  But those cases have no bearing on whether a health exclusion is facially discriminatory.  As Lange notes, *Bostock* recognized that discrimination against transgender persons, which penalizes them for not conforming to sex stereotypes, is a form of discrimination on the basis of sex for purposes of Title VII. And under Eleventh Circuit precedent, that rationale applies to equal protection claims, too.  *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011).  But the issue addressed by *Geduldig* is different: whether an insurance exclusion based on a health condition is facially discriminatory.  Neither *Bostock* nor *Glenn* had any bearing on that issue. Similarly, the Court questions Lange's argument that the Eleventh Circuit's recent decision in *Adams by & through Kasper v. Sch. Bd. of St. Johns Cty*, 968 F.3d 1286 (11th Cir. 2020), undermines *Geduldig*.  In *Adams*, the Court held that a facially discriminatory bathroom policy triggered heightened scrutiny under the Equal Protection

Clause.[14]  But *Adams* has no bearing on whether the Plan's exclusion is facially discriminatory.  Again, *Geduldig's* analysis suggests the Exclusion, which does not facially classify among groups at all, is facially neutral.  To some, that analysis may seem a bit strained today, but it nonetheless remains intact.

But assuming Lange's argument that the Plan is facially discriminatory fails, that is not dispositive of her claim.  *Geduldig* noted that a plaintiff can still prevail by "showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other."  417 U.S. at 496 n.20; *see also Washington v. Davis*, 426 U.S. 229, 241 (1976) ("A statute, otherwise neutral on its face, must not be applied so as invidiously to discriminate on the basis of [a protected class].").  Thus the Defendants' argument that *Geduldig* compels dismissal of the equal protection claim fails.

In sum, the Court rejects the Defendants' argument that *Geduldig* forecloses Lange's equal protection claim altogether.  The Defendants do not argue that Lange fails to allege plausible facts supporting an inference of discriminatory purpose, so there is no need to address that argument here.  However, the Court notes that "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive

---

[14] The majority, dissent, and district court all disagreed on their analysis of how the policy classified groups.  The majority believed the policy was facially discriminatory because it singled out transgender students as a group for different treatment.  *Adams*, 968 F.3d at 1296.  The dissent argued that because the policy was sex-based, it was facially neutral as to transgender students.  *Id.* at 1315 (11th Cir. 2020) (Pryor, C.J., dissenting).  The trial judge, by contrast, had found that the policy was facially sex-based, so it triggered heightened scrutiny as to transgender students.  *Adams by & through Kasper v. Sch. Bd. of St. Johns Cty., Fla.*, 318 F. Supp. 3d 1293, 1312 (M.D. Fla. 2018), *aff'd sub nom. Adams by & through Kasper v. Sch. Bd. of St. Johns Cty.*, 968 F.3d 1286 (11th Cir. 2020) ("The School Board's bathroom policy cannot be stated without referencing sex-based classifications . . . The School Board does not dispute that its bathroom policy makes distinctions based on sex.").  None of those three different characterizations describe the policy here, which does not facially classify on the basis of sex or of transgender status.

inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).  Relevant evidence of intent may include any disproportionate impact of the challenged law or policy, the historical background of the decision, any departures from normal procedures, or legislative or administrative history.  *Id.* at 266-68.  Again, the parties do not reach the question of whether Lange has alleged sufficient facts to create a plausible claim for intentional discrimination.  However, if the Defendants had made that argument, the Court would find that Lange has plausibly alleged that the adoption of the Exclusion was motivated by discriminatory purpose.

The County makes one further argument: that Lange "lacks standing to assert her Section 1983 claim against the County."  Doc. 62-1 at 30.  Although they use the word "standing," the County does not argue that the 12(b)(1) standard applies or that its argument goes to jurisdiction.  Rather, the County's argument seems based on a misinterpretation of decisions addressing 42 U.S.C. § 1983 claims seeking to vindicate statutory rights.[15]  The County cites two cases.  The first decision, *Gonzaga Univ. v. Doe*, addressed "[t]he question . . . whether a student may sue a private university for damages under Rev. Stat. § 1979, 42 U.S.C. § 1983 (1994 ed., Supp. V), to enforce provisions of the Family Educational Rights and Privacy Act of 1974 (FERPA or Act), 88 Stat. 571, 20 U.S.C. § 1232g, which prohibit the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized

---

[15] The background principle is that § 1983 creates a right of action against officials who deprive persons of "any rights, privileges, or immunities secured by the Constitution *and laws*."  42 U.S.C. § 1983 (emphasis added).  The vast majority of § 1983 suits brought in this Court allege deprivations of constitutional rights, but § 1983 also allows, in rare circumstances, for plaintiffs to sue to vindicate statutory rights.  *See generally Maine v. Thiboutot*, 448 U.S. 1 (1980). The County appears to have conflated the two.

persons."  536 U.S. 273, 276 (2002).  The second, *Blessing v. Freestone*, addressed whether a plaintiff could sue under § 1983 for a state agency's violation of a provision of the Social Security Act.  520 U.S. 329.  Lange's § 1983 claims are not premised on the County's alleged violation of a statutory right, but rather on its alleged violation of her right to equal protection under the Fourteenth Amendment of the Constitution.[16] The County cites no authority concerning standing to assert constitutional rights.

For those reasons, the motion to dismiss is **DENIED** as to the equal protection claims against the Sheriff's Office and the County.

### 2. The individual Defendants

The Defendants also argue that Lange fails to plausibly allege an equal protection claim and that the individual Defendants are entitled to both qualified immunity and legislative immunity.

a. The allegations against Holland, Carter, and the Sheriff in his individual capacity

Before addressing those arguments, the Court notes that although the parties fail to address the particular allegations against Defendant Holland, it is clear that Lange fails to state a claim against him.  Lange's only allegations against Holland are that he is

---

[16] *Gonzaga* limited § 1983 claims based on statutes that did not themselves provide a cause of action. To determine whether a plaintiff can sue under § 1983 to enforce a statutory right, the Court held, a court must "determine whether Congress *intended to create a federal right*" for private citizens when it enacted the statute.  *Gonzaga*, 536 U.S. at 283 (citation omitted).

The County's statement that "a third party beneficiary only has standing to sue if the source of the claimed benefit is a Congressional enactment 'intended to create a federal right'" badly misreads *Gonzaga*.  Doc. 62-1 at 31 (citing *Gonzaga*, 536 U.S. at 283-84).  Nor does it make any sense in this context: obviously, no one is arguing that Lange's health plan was a benefit created by the United States Congress.  Similarly, the distinction between (i) a contractual "third-party beneficiary" of a healthcare plan and a (ii) a beneficiary of a federal statute for which Congress provided no means of private enforcement, should be clear.  Further, although the County describes the *Gonzaga* question about whether a statute creates a right enforceable through § 1983 in terms of "standing," the cases it cites do not.  Doc. 62-1 at 30; *see generally Gonzaga*; *Blessing*.

the County's Director of Administration and is "responsible for the day-to-day operations of the County's staff departments and advises the Board on finance and personnel." Doc. 56 ¶ 22.  These allegations are in the introductory paragraphs of Lange's amended complaint; thereafter, Lange makes no mention of Holland.  Clearly, that is insufficient to state an equal protection claim.

Similarly, Lange fails to state a claim against the Sheriff in his individual capacity. The original complaint sued only the County and County Defendants.  Doc. 1 at 1. When the Defendants filed a previous motion to dismiss, arguing the Sheriff's Office, not the County, was Lange's employer, Lange amended her complaint to add claims against the Sheriff's Office.  Although she also joined the Sheriff in his individual capacity as a Defendant, she did not add sufficient allegations to support that claim. Doc. 56 at 1-2.  Lange alleges that she "asked Defendants to remove the Exclusion . . . at an in-person meeting with Sheriff Talton[;]" that he delegated employee health insurance to the County; that he "has no control over setting the terms of, administering, or financing the Health Plan;" that he has the authority to rescind the agreement providing his employees insurance on the County Plan, but has not done so; and that he could enroll Lange in a different plan, but has not done so.  Doc. 56 ¶¶ 8, 73, 77-78, 104, 155.  Those allegations do not raise a plausible inference that Talton delegated health benefits for the purpose of discriminating against Lange.  The Defendants' motion (Doc. 62) is therefore **GRANTED** as to the claims against Holland and the Sheriff in his individual capacity.

The parties' briefs also do not address the allegations against Defendant Carter, but those allegations are somewhat more substantial.  Lange alleges he is the County's

Director of Personnel, "administers the County's selection of the Health Plan's terms, including the Exclusion," "oversees the compensation and health benefits of the Sheriff's Office employees," recommended the Board maintain the Exclusion for 2020, and has various administrative responsibilities for implementing the healthcare plan, including the Exclusion. *Id.* ¶¶ 23, 73-74, 97, 102, 106, 112.  Given the Defendants' failure to address Carter, the Court cannot say those allegations are plainly insufficient to state a claim.

### b. Legislative immunity

The Defendants also argue that Lange's claims against the individual Defendants in their individual capacities are barred by legislative immunity.  "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity," including actions by local legislators. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quotation marks omitted).  "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.*  "Generally, absolute immunity applies to prospective, legislative-type rules that have general application. Employment decisions generally are administrative except when they are accomplished through traditional legislative functions such as policymaking and budgetary restructuring that strike at the heart of the legislative process." *Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009) (quotation marks and citations omitted).  "[V]oting, debate and reacting to public opinion are manifestly in furtherance of legislative duties . . . Additionally, a legislative act is characterized by having a policymaking function and general application." *Brown v. Crawford Cty., Ga.*, 960 F.2d 1002, 1011 (11th Cir. 1992).  The burden to establish legislative immunity is on the party asserting it.

The complaint alleges that "The Houston County Board of Commissioners . . . voted to readopt the Exclusion for 2020."  Doc. 56 ¶ 9.  As part of a healthcare plan that applies to all County employees and Sheriff's Office employees, the Exclusion is a "'prospective, legislative-type rule[]' that ha[s] general application."  *Bryant*, 575 F.3d at 1306.  Further, as the Defendants note, the home rule provisions of the Georgia Constitution provide that county governing authorities are authorized to determine compensation and "to establish and maintain . . . insurance" for their employees.  Ga. Const. Art. IX, § 2, ¶ I.  Clearly, a vote by the Commissioners on a provision of an insurance plan is a legislative act.

Lange argues that legislative immunity should be confined to acts "necessary to preserve the integrity of the legislative process," such as "voting, speechmaking . . . . [or] preparing committee reports."  Doc. 74 at 30.  However, it seems clear that, to the extent any individual Commissioners could be liable for adopting and maintaining the Exclusion, Lange seeks to hold them liable precisely because of their vote.  At trial, Lange could prevail on her claims against an individual Commissioner Defendant only by proving his vote was motivated by a purpose to discriminate.  Lange's claims would require "proof of a legislative act or the motives or purposes underlying such an act" and implicate the core concerns of legislative immunity.  *Gravel v. United States*, 408 U.S. 606, 621 (1972).

The claims against Defendants Stalnaker, Walker, Robinson, Thomson, and McMichael in their individual capacities are therefore subject to dismissal.  However, the same reasoning does not apply to Defendant Carter.  The complaint does not seek to hold Carter responsible for how he voted, so it is not clear that legislative immunity

applies to him.  Nor do the Defendants' briefs address legislative immunity in Carter's particular circumstances.  For that reason, the motion to dismiss (Doc. 62) is **GRANTED** as to the claims against Stalnaker, Walker, Robinson, Thomson, and McMichael in their individual capacities.

> c. Qualified immunity

The individual Defendants also argue they are entitled to qualified immunity because they were acting within their discretionary authority and their actions did not violate any clearly established rights.  As noted above, the complaint fails to state a claim against Holland and the Sheriff in his individual capacity, so the Court does not reach qualified immunity for those Defendants.  Similarly, the Commissioners are entitled to legislative immunity.  Accordingly, the Court addresses only whether Carter is entitled to qualified immunity.

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'"  *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach,* 561 F.3d 1288, 1291 (11th Cir. 2009)).  To meet this burden, a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation."  *City of W. Palm Beach*, 561 F.3d at 1291.  This two-step analysis may be done in whatever order is

deemed most appropriate for the case.  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Lange does not dispute that Carter was acting within his discretionary authority, so the burden shifts to her to show he violated clearly established rights.  Doc. 74 at 26. For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  A plaintiff can show a right is clearly established in three ways: first, by pointing to "relevant case law at the time of the alleged violation that would have made it obvious to the officer that his actions violated federal law." *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018).  Second, a plaintiff "can identify a broader, clearly established principle that should govern the novel facts of the situation." *Id.* Third, the plaintiff "can show that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary." *Id.* at 1259-1260.

Lange makes two arguments: first, she argues that Eleventh Circuit law established the general principle that "the Equal Protection Clause prohibits government discrimination on the basis of someone's gender nonconformity[.]"  Doc. 74 at 27 (citing *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011)).  That is true as a general statement, but that broad principle would not have put Carter on notice that his actions in recommending the Exclusion and administering the Plan violated the law.  "[I]n most qualified immunity cases preexisting case law that is factually similar is necessary to give officials 'fair notice' that the behavior violated a constitutional right." *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1272 (11th Cir. 2003) (quoting *Willingham*

*v. Loughnan,* 321 F.3d 1299, 1301 (11th Cir.2003)).  The Plaintiffs do not cite any cases clearly establishing that adopting an exclusion in a health plan is discriminatory, let alone that Carter's alleged conduct—making recommendations about a health plan and "administering"[17] a health plan—violates the Equal Protection Clause.  "Although intentional . . . gender-based discrimination is unlawful, none of the cases set forth by [Lange] fairly and clearly put [Carter] on notice that the decision at issue in this case was unlawful."  *Williams*, 341 F.3d at 1273 (holding that officer was entitled to qualified immunity from claim that he chose not to create new positions because the candidates for those positions were of a different race).

Second, Lange argues that she, her attorney, and Anthem told the Defendants that they believed the Exclusion was unlawful.  Doc. 74 at 28.  But the opinion of Lange and her lawyers does not "clearly establish" the law.  *See J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d at 1259-1260 (discussing ways to show the law was clearly established).  Nor does the opinion of Anthem's lawyers.

For those reasons, Lange has failed to carry her burden of showing that Carter's conduct, as alleged, violated clearly established rights.[18]  The Defendants' motion to dismiss (Doc. 62) is **GRANTED** as to Carter.

## H. Georgia Equal Protection Clause

The Defendants argue that the Georgia Constitution does not provide a cause of action for violations of constitutional rights.  In response, Lange argues that Article I,

---

[17] The allegations that Carter "administers the County's selection of the Health Plan's terms" and "oversees the compensation and health benefits of the Sheriff's Office employees" are too vague to really pinpoint what conduct by Carter allegedly violated the Equal Protection Clause.

[18] The Court does not rule out the possibility that if, during discovery, more evidence about Carter's specific conduct comes to light, Lange may be able to argue that that conduct violated clearly established rights.  In light of that possibility, the Court's dismissal of Carter is without prejudice.

Section II, Paragraph IX(d) creates an express right of action for equal protection violations.  Doc. 74 at 32-33.  The relevant provision reads:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

Ga. Const. Art. I, § 2, Par. IX(d).  However, as the Defendants note, that provision codifies Georgia's common-law doctrine of official immunity.[19]  Doc. 79 at 3.  It does not create a cause of action, nor does it supplant the longstanding principle that Georgia "ha[s] no equivalent to 42 U.S.C. § 1983, which gives a claim against a state officer individually for certain unconstitutional acts."  *Howard v. Miller*, 222 Ga. App. 868, 871, 476 S.E.2d 636, 639 (1996).  That constitutional provision provides no cause of action for the Defendants' alleged violations of the Georgia Constitution.

Lange cited no other cause of action for her state constitutional claims.[20] However, she argues that two cases recognized a general cause of action for equal protection violations.  Doc. 85 at 1 (citing *Lathrop v. Deal*, 801 S.E.2d 867 (Ga. 2017);

---

[19] That is not to suggest that official immunity at common law and under Paragraph IX(d) are identical. "[A]lthough the text of Article I, Section II, Paragraph IX (d) does not unambiguously incorporate all of the preexisting decisional law on official immunity, it also does not unambiguously sweep that law into the dustbin of historical curiosities."  *Lathrop v. Deal*, 301 Ga. 408, 440, 801 S.E.2d 867, 889 (2017).

[20] Because Lange has not pleaded or argued a cause of action for her Georgia claims, the Court need not address the separate issue of sovereign immunity.  However, it is worth noting that "the doctrine of sovereign immunity usually poses no bar to suits in which state officers are sued in their individual capacities for official acts that are alleged to be unconstitutional."  *Lathrop*, 301 Ga. at 434, 801 S.E.2d at 885.  However, the court did not clearly articulate what cause of action such a suit would be based on.

*Liberty County Sch. Dist. v. Halliburton*, 762 S.E.2d 138 (Ga. App. 2014)).  Neither support her argument.

Lange argues that *Lathrop* "state[s] that [Georgia constitution] claims seeking prospective relief from the threatened enforcement of unconstitutional laws could be maintained against state officials in their individual capacity[.]"  *Id.* at 1.  But that is too broad a statement of *Lathrop*'s holding.  More precisely, the Georgia Supreme Court stated that "*the doctrine of sovereign immunity* usually poses no bar to suits in which state officers are sued in their individual capacities for official acts that are alleged to be unconstitutional."  *Lathrop*, 301 Ga. at 434, 801 S.E.2d at 885 (emphasis added).  Nowhere in *Lathrop* did the court suggest there is a general cause of action for violations of the Georgia constitution.[21]

Lange also argues that in one case, the Georgia Court of Appeals "declin[ed] to dismiss suit under the Georgia Equal Protection Clause against individual capacity defendants."  Doc. 85 at 1 (citing *Halliburton*, 762 S.E.2d 138).  But the Court finds little support for Lange's assertion that *Halliburton* involved a "suit under the Georgia Equal Protection Clause."[22]  And the issue in *Halliburton* for the individual-capacity claims was

---

[21] To the contrary, *Lathrop* affirms the longstanding principle that there is no general right of action for constitutional violations.  The plaintiff in *Lathrop* argued that every violation by a government official of a constitutional right created an implied right of action—a more developed version of Lange's argument here.  The Georgia Supreme Court rejected that argument, limiting implied rights of action to Georgia's Takings Clause.  And it noted that "Unlike the Takings Clause, many constitutional guarantees of right do not identify in specific and explicit terms a justiciable remedy for violations of the guarantee, nor are they without meaning in the absence of a right of action against the government itself."  *Lathrop*, 301 Ga. at 427.

[22] It is not clear that the cause of action was in *Halliburton*.  The plaintiff sued the school board for alleged racial discrimination in nonrenewing her contract as school principal.  *Halliburton*, 328 Ga. App. at 422, 762 S.E.2d at 140.  The only mention of equal protection in the entire decision is an explanatory parenthetical after a case citation.  Lange does not explain how that supports her contention.  Still, the Court attempted to flesh out Lange's argument, such as it is, by consulting the trial court documents from *Halliburton*.  The complaint alleged breach of contract, wrongful termination, violation of equal protection, tortious interference with contract, violation of freedom of speech, freedom of association, malice, and

not whether the plaintiff had a cause of action, but whether the plaintiff had alleged malice sufficient to overcome Georgia's official immunity defense.  *See* Ga. Const. Art. I, § 2, Par. IX(d).

In sum, Lange's only argument for a cause of action is based on the limited sovereign-immunity waiver in the Georgia Constitution, and that argument fails.  Her attempt to bolster that argument by citing *Lathrop* and *Halliburton*, without explaining their relevance, also fails.  After the Court examined those cases in an attempt to guess Lange's argument, it is clear that *Halliburton* provides no support for her argument and that *Lathrop* undermines her argument.  Because she has not identified a cause of action for her claims under the Georgia Constitution, those claims will be dismissed.

## IV. CONCLUSION

For the reasons noted, the Sheriff's Office's motion to dismiss for lack of jurisdiction (Doc. 61) is **DENIED**.  The Defendants' motion to dismiss for failure to state a claim (Doc. 62) is **GRANTED** as to the ADA Title II claims, the Georgia equal protection claims, and the federal equal protection claims against Defendants Stalnaker, Walker, Robinson, Thomson, McMichael, Holland, Carter, and the Sheriff in his individual capacity; but **DENIED** as to the Title VII and ADA Title I claims against the County, the federal equal protection claims against the County, and the Title VII claims against the Sheriff in his official capacity.

---

negligence.  *Halliburton v. Liberty County School District*, 4:14-cv-179 (S.D.Ga. 2014), Doc. 1-2 at 13-14. In their motion to dismiss, the defendants argued Halliburton's complaint failed to allege actual malice, so it was barred by official immunity.  Doc. 1-4 at 5-7.  That is the issue the Court of Appeals ruled on. Whether or not the plaintiff had a freestanding cause of action for equal protection was never at issue in that case.  On remand, the plaintiff amended her complaint to add federal claims, and the defendants removed to the Southern District of Georgia.  The individual claims were later dismissed for failure to allege sufficient facts to state a claim.  *Id.*, Doc. 40.

The remaining claims, therefore, are (1) ADA Title I claims against the County and the Sheriff in his official capacity, (2) Title VII claims against the County and the Sheriff in his official capacity, and (3) federal equal protection claims against the County and the Sheriff in his official capacity.

**SO ORDERED**, this 30th day of October, 2020.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:19-CV-00392-MTT |
| HOUSTON COUNTY, GEORGIA; and | ) | |
| Houston County Sheriff CULLEN | ) | |
| TALTON, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT HOUSTON COUNTY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

Defendant Houston County, Georgia ("the County") files its Answer and Affirmative Defenses pursuant to Rules 8(c) and 12(a) of the Federal Rules of Civil Procedure, responding as follows to the allegations of Plaintiff's Amended Complaint.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Amended Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that she failed to file her civil action within the applicable statute of limitations and/or to the extent that Plaintiff failed to satisfy all conditions precedent and/or statutory prerequisites to a suit required under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Americans with

Disabilities Act as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and/or other applicable law.[1]

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of consent, waiver, estoppel, justification, license, laches, unclean hands, after-acquired evidence, and/or additional defenses that may arise during the proceedings.

### FOURTH AFFIRMATIVE DEFENSE

Any action taken by the County with regard to Plaintiff or her employment was for legitimate, non-discriminatory and non-retaliatory reasons, and, as such, did not violate any legal or constitutional right possessed by Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE

The County has at all times acted in accord with and in good faith compliance with federal law.  The County has neither intentionally nor willfully violated Plaintiff's rights in any manner nor acted maliciously or with reckless disregard with respect to Plaintiff or any aspect of her employment, and at no time has the County acted with any intent to injure Plaintiff.

### SIXTH AFFIRMATIVE DEFENSE

The County has fulfilled all obligations imposed on it by law.

---

[1]   The County asserts it is not, and has never been, Plaintiff's employer as defined by Title VII and the ADA.  Nevertheless, it raises this defense and certain other defenses applicable to employers in response to Plaintiff's allegations and in an abundance of caution.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any of the relief – equitable, declaratory, legal or attorneys' fees – requested against the County; however, to the extent she is entitled to any damages or other relief, which she is not, any such damages or relief are limited to the relief allowable against the County under the applicable provisions of Title VII, the ADA, and other applicable law. Specifically, Plaintiff's claims for damages and other monetary relief under Title VII and the ADA are subject to the limitations imposed by 42 U.S.C. §§ 1981a(a)(1) and (b)(3).

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is required to mitigate her alleged damages as required by law.

## NINTH AFFIRMATIVE DEFENSE

Any damages that Plaintiff suffered were the direct and proximate result of her own actions or inactions, including, but not limited to, assumption of the relevant risks.

## TENTH AFFIRMATIVE DEFENSE

Any damages that Plaintiff suffered resulted from the acts or omissions of others for whom the County is not liable.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that accommodation of her disability, if any, would have caused undue hardship to the County.

## TWELFTH AFFIRMATIVE DEFENSE

Any act or failure to act towards Plaintiff was not the result of any willful, malicious, reckless, or bad faith conduct on the part of the County such as to give rise to the imposition

of compensatory, consequential, or punitive damages and/or any of the statutory penalties requested in the Amended Complaint.  The County has at all times acted in good faith and had objectively reasonable grounds to believe that any act or omission taken with respect to Plaintiff was in compliance with all federal laws.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks to recover punitive damages in this action, she cannot recover punitive damages from the County as a matter of law.

## FOURTEENTH AFFIRMATIVE DEFENSE

Any action taken by the County was reasonable and necessary to serve an important government purpose.

## FIFTEENTH AFFIRMATIVE DEFENSE

Certain of Plaintiff's claims are or may be barred, in whole or in part, by sovereign immunity.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Section 1983 claim is barred on the grounds that the County committed no acts or omissions or breached any duty owed to Plaintiff with respect to any legal or constitutional right possessed by her.

## SEVENTEENTH AFFIRMATIVE DEFENSE

One or more of the claims asserted by Plaintiff must be dismissed insofar as the County is not subject to suit under applicable law.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The County hereby reserves the right to seek leave to amend this Answer or add additional defenses, or to withdraw defenses, as deemed warranted after reasonable opportunity for appropriate discovery.

## RESPONSE TO NUMBERED ALLEGATIONS

The County responds to the numbered allegations of the Amended Complaint as follows:

## INTRODUCTION

1.

The County denies the allegations in Paragraph 1 of the Amended Complaint.

2.

Answering Paragraph 2 of the Amended Complaint, the County admits Plaintiff Anna Lange ("Plaintiff") is a Deputy Sheriff with the rank of Sergeant in the Houston County Sheriff's Office, where she has worked since 2006. Except as specifically admitted herein, the County denies the allegations in Paragraph 2 of the Amended Complaint.

3.

Answering Paragraph 3 of the Amended Complaint, the County admits Plaintiff is a transgender woman. Except as specifically admitted herein, the County denies the allegations in Paragraph 3 of the Amended Complaint.

4.

Answering Paragraph 4 of the Amended Complaint, the County admits the BlueChoice Option POS Plan in which Plaintiff participates (the POS Plan) covers health

care costs, subject to the terms, conditions, and limitations of the POS Plan, including its 68 medical exclusions and 29 pharmacy exclusions.  Except as specifically admitted herein, the County denies the allegations in Paragraph 4 (including its footnote 1) of the Amended Complaint.

5.

The County denies the allegations in Paragraph 5 of the Amended Complaint.

6.

Answering Paragraph 6 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 6 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 6 of the Amended Complaint.

7.

The County denies the allegations in Paragraph 7 of the Amended Complaint.

8.

Answering Paragraph 8 of the Amended Complaint, the County admits Plaintiff has sent two letters and appeared at one meeting of the Houston County Board of Commissioners ("Board of Commissioners") regarding certain POS Plan exclusions.  Except as specifically admitted herein, the County denies the allegations in Paragraph 8 of the Amended Complaint.

9.

Answering Paragraph 9 of the Amended Complaint, the County admits Plaintiff sent a letter to a Commissioner and the County Attorney about certain exclusions in January 2019;

and Kenneth Carter provided a requested letter to Anthem Blue Cross Blue Shield ("Anthem") about certain exclusions in February 2019.  Answering further, the County avers that Anthem (or its predecessor) has requested confirmation of certain exclusions previously, and Carter's February 2019 letter to Anthem was merely part of the annual renewal process and not in response to Plaintiff's situation.  Except as specifically admitted herein, the County denies the allegations in Paragraph 9 of the Amended Complaint.

10.

Answering Paragraph 10 of the Amended Complaint, the County admits Plaintiff seeks declaratory and injunctive relief, and damages, but denies she is entitled to any such relief.  Except as specifically admitted herein, the County denies the allegations in Paragraph 10 of the Amended Complaint.

## JURISDICTION AND VENUE

11.

Answering Paragraph 11 of the Amended Complaint, the County admits Plaintiff raises claims under the listed constitutional provisions and statutes, but denies she is entitled to relief under them.  Except as specifically admitted herein, the County denies the allegations in Paragraph 11 of the Amended Complaint.

12.

Answering Paragraph 12 of the Amended Complaint, the County admits this Court has jurisdiction over this matter.  Except as specifically admitted herein, the County denies the allegations in Paragraph 12 of the Amended Complaint.

13.

The County admits the allegations in Paragraph 13 of the Amended Complaint.

14.

Answering Paragraph 14 of the Amended Complaint, the County admits venue is proper in this district.  Except as specifically admitted herein, the County denies the allegations in Paragraph 14 of the Amended Complaint.

15.

Answering Paragraph 15 of the Amended Complaint, the County admits venue is proper in this division.  Except as specifically admitted herein, the County denies the allegations in Paragraph 15 of the Amended Complaint.

## **PARTIES**

16.

Answering Paragraph 16 of the Amended Complaint, the County admits Plaintiff is employed as a Sheriff's Deputy.  Answering further, the County admits Plaintiff resides in Houston County.  Answering further still, the County admits Plaintiff performs the bulk of her duties and responsibilities within the borders of Houston County, but specifically denies that she is an employee of the County. Answering further, the County avers Plaintiff is employed exclusively by the Houston County Sheriff's Office.  Answering further, the County avers that the Sheriff's Office – and not the County – is solely authorized to hire its employees (as it hired Plaintiff), promote its employees (as it promoted Plaintiff on two occasions), direct the manner and means of its employees' work, set its employees' work schedules,   issue   discipline   and   commendations   to   its   employees,   provide

internal/departmental training and external training opportunities for its employees, and determine its employees' compensation and benefits – including the source of such benefits. In contrast, as a common administrative courtesy, the County merely processes the Sheriff's Office's payroll according to instructions from the Sheriff's Office, and allows employees of the Sheriff's Office to participate in the County's benefit offerings pursuant to a long-term, informal intergovernmental agreement between the two governmental entities.  Except as specifically admitted herein, the County denies the allegations in Paragraph 16 of the Amended Complaint.

17.

The County admits the allegations in Paragraph 17 of the Amended Complaint. Answering further, the County avers that, while Defendant Houston County employs 15 or more employees, its employees do not include Plaintiff.

18.

The County denies the allegations in Paragraph 18 of the Amended Complaint.

19.

The County admits the allegations in Paragraph 19 of the Amended Complaint.

20.

The County admits the allegations in Paragraph 20 of the Amended Complaint.

21.

Answering Paragraph 21 of the Amended Complaint, the County admits members of the Board of Commissioners are Defendants Stalnaker, Walker, Robinson, Thomson, and McMichael; and Defendant Stalnaker is the Chairman of the Board of Commissioners, in

which capacity he is the County's chief executive officer.  Except as specifically admitted herein, the County denies the allegations in Paragraph 21 of the Amended Complaint.

22.

Answering Paragraph 22 of the Amended Complaint, the County admits Holland is the Director of Administration and has responsibility for the day-to-day operations of the County.  Except as specifically admitted herein, the County denies the allegations in Paragraph 22 of the Amended Complaint.

23.

Answering Paragraph 23 of the Amended Complaint, the County admits Carter is the County's Personnel Director and has responsibility for the day-to-day administration of the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 23 of the Amended Complaint.

24.

Answering Paragraph 24 of the Amended Complaint, the County admits Defendant Talton is the Houston County Sheriff and oversees the Sheriff's Office, which is located at 202 Carl Vinson Parkway, Warner Robins, Georgia, and 201 Perry Parkway, Perry, Georgia. Except as specifically admitted herein, the County denies the allegations in Paragraph 24 of the Amended Complaint.

25.

The County admits the allegations in Paragraph 25 of the Amended Complaint.

26.

The County admits the allegations in Paragraph 26 of the Amended Complaint.

27.

Answering Paragraph 27 of the Amended Complaint, the County admits Defendant Talton obtains payroll and benefits services through the County.  Except as specifically admitted herein, the County denies the allegations in Paragraph 27 of the Amended Complaint.

28.

The County denies as moot the allegations in Paragraph 28 of the Amended Complaint.

## ALLEGED EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

29.

The County admits the allegations in Paragraph 29 of the Amended Complaint.

30.

Answering Paragraph 30 of the Amended Complaint, the County admits the EEOC issued a Notice of Right to Sue dated July 8, 2019.  Answering further, the County admits, upon information and belief, that the EEOC failed to investigate, reach a determination, or conciliate Plaintiff's Charge.  Except as specifically admitted herein, the County denies the allegations in Paragraph 30 of the Amended Complaint.

31.

The County denies the allegations in Paragraph 31 of the Amended Complaint.

32.

Answering Paragraph 32 of the Amended Complaint, the County admits Plaintiff filed an EEOC Charge against Defendant Talton and the Sheriff's Office alleging violations of the ADA and Title VII.  Except as specifically admitted herein, the County denies the allegations in Paragraph 32 of the Amended Complaint.

33.

Answering Paragraph 33 of the Amended Complaint, the County admits the EEOC issued a Notice of Right to Sue dated February 26, 2020.  Answering further, the County admits, upon information and belief, that the EEOC failed to investigate, reach a determination, or conciliate Plaintiff's Charge.  Except as specifically admitted herein, the County denies the allegations in Paragraph 33 of the Amended Complaint.

34.

The County denies the allegations in Paragraph 34 of the Amended Complaint.

**ALLEGED FACTUAL BACKGROUND**

35.

Answering Paragraph 35 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 35 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 35 of the Amended Complaint.

36.

Answering Paragraph 36 of the Amended Complaint, the County admits the Sheriff's Office hired Plaintiff in 2006, promoted her to Corporal in 2012, and promoted her to Sergeant in 2014.  Except as specifically admitted herein, the County denies the allegations in Paragraph 36 of the Amended Complaint.

37.

Answering Paragraph 37 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 37 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 37 of the Amended Complaint.

38.

Answering Paragraph 38 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 38 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 38 of the Amended Complaint.

39.

Answering Paragraph 39 of the Amended Complaint, the County admits, until early 2017, Plaintiff wore typical men's clothing at work, went by her male birth name, and responded to male pronouns.  Answering further, the County admits, by early 2017, Plaintiff began wearing typical women's clothing, using her female name, Anna, going by female pronouns, and otherwise being openly female at work.  Answering further, the County admits Plaintiff informed Carter and the Sheriff of her transition plans.  Except as

specifically admitted herein, the County denies the allegations in Paragraph 39 of the Amended Complaint.

40.

Answering Paragraph 40 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 40 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 40 of the Amended Complaint.

41.

Answering Paragraph 41 of the Amended Complaint, the County admits a job description for Deputy Sheriff is accessible on the website identified in Paragraph 41, n. 2, when applications are being accepted.  The County is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 41 and, therefore, denies the same.  Except as specifically admitted herein, the County denies the allegations in Paragraph 41 of the Amended Complaint.

42.

Answering Paragraph 42 of the Amended Complaint, the County admits Plaintiff receives health care benefits under the POS Plan, pursuant to an informal intergovernmental agreement between the County and the Sheriff's Office.  Answering further, the County admits the plan is administered by Houston County and Plaintiff currently pays a premium of $10 per pay period for single coverage under the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 42 of the Amended Complaint.

43.

Answering Paragraph 43 of the Amended Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 43 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 43 of the Amended Complaint.

44.

Answering Paragraph 44 of the Amended Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 44 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 44 of the Amended Complaint.

45.

Answering Paragraph 45 of the Amended Complaint, the County avers that Paragraph 45 contains assertions of law to which no responsive pleading can or should be framed.  The Glenn v. Brumby decision speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 45 of the Amended Complaint.

46.

Answering Paragraph 46 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 46 (including its footnote 3) and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 46 of the Amended Complaint.

47.

Answering Paragraph 47 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 47 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 47 of the Amended Complaint.

48.

Answering Paragraph 48 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 48 (including its footnote 4) and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 48 of the Amended Complaint.

49.

Answering Paragraph 49 of the Amended Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 49 (including its footnote 5) and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 49 of the Amended Complaint.

50.

Answering Paragraph 50 of the Amended Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 50 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 50 of the Amended Complaint.

51.

Answering Paragraph 51 of the Amended Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 51 and, therefore, denies the same.  Answering further, the County avers that Paragraph 51 contains assertions of law to which no responsive pleading can or should be framed.  The language of the Americans with Disabilities Act, including "gender identity disorder," speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 51 of the Amended Complaint.

52.

Answering Paragraph 52 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 52 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 52 of the Amended Complaint.

53.

Answering Paragraph 53 of the Amended Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 53 (including its footnote 6) and, therefore, denies the same.  Answering further, the County avers that Paragraph 53 contains assertions of law to which no responsive pleading can or should be framed.  The language of the O'Donnabhain v. C.I.R. decision speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 53 of the Amended Complaint.

54.

Answering Paragraph 54 of the Amended Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 54 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 54 of the Amended Complaint.

55.

Answering Paragraph 55 of the Amended Complaint, including its subparagraphs a. through c., the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 55 and, therefore, denies the same. Except as specifically answered herein, the County denies the allegations in Paragraph 55 of the Amended Complaint.

56.

Answering Paragraph 56 of the Amended Complaint, the County (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 56 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 56 of the Amended Complaint.

57.

The County admits, upon information and belief, the allegations in Paragraph 57 of the Amended Complaint.

58.

Answering Paragraph 58 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 58 and, therefore,

denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 58 of the Amended Complaint.

59.

Answering Paragraph 59 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 59 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 59 of the Amended Complaint.

60.

Answering Paragraph 60 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 60 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 60 of the Amended Complaint.

61.

Answering Paragraph 61 of the Amended Complaint, the County admits, upon information and belief, that Plaintiff now lives as a female, "came out" to her employer (the Sheriff), exclusively uses a female name and female pronouns, and wears typical women's clothing.  Except as specifically admitted herein, the County denies the allegations in Paragraph 61 of the Amended Complaint.

62.

Answering Paragraph 62 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 62 and, therefore,

denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 62 of the Amended Complaint.

63.

Answering Paragraph 63 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 63 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 63 of the Amended Complaint.

64.

Answering Paragraph 64 of the Amended Complaint, the County admits Plaintiff legally changed her name, and the name and sex designation on her Georgia driver's license, in December 2017.  Answering further, the County is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 64 and, therefore, denies the same.  Except as specifically admitted herein, the County denies the allegations in Paragraph 64 of the Amended Complaint.

65.

Answering Paragraph 65 of the Amended Complaint, the County admits Plaintiff began using the name Anna at work after her legal name change.  Except as specifically admitted herein, the County denies the allegations in Paragraph 65 of the Amended Complaint.

66.

Answering Paragraph 66 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 66 and, therefore,

denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 66 of the Amended Complaint.

67.

Answering Paragraph 67 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in all but the last sentence of Paragraph 67 (including its footnote 7) and, therefore, denies the same.  Answering further, the last sentence of Paragraph 67, as well as footnote 8, contains assertions of law to which no responsive pleading can or should be framed.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 67 of the Amended Complaint.

68.

Answering Paragraph 68 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 68 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 68 of the Amended Complaint.

69.

Answering Paragraph 69 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 69 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 69 of the Amended Complaint.

70.

Answering Paragraph 70 of the Amended Complaint, the County admits it operates the POS Plan for the benefit of its employees.  Answering further, the County admits that, pursuant to an informal intergovernmental agreement with the Sheriff's Office, employees of the Sheriff's Office, including Plaintiff, are permitted to participate in the plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 70 of the Amended Complaint.

71.

Answering Paragraph 71 of the Amended Complaint, the County admits Plaintiff is eligible for and participates in the POS Plan, which is available to her through an informal intergovernmental agreement between the Sheriff and the County.  Except as specifically admitted herein, the County denies the allegations in Paragraph 71 of the Amended Complaint.

72.

Answering Paragraph 72 of the Amended Complaint, the County admits it has agreed – through an informal intergovernmental agreement – to allow employees of the Sheriff's Office to participate in either of the County's health plans.  Answering further, the County denies that this informal intergovernmental agreement was the product of any obligation on the part of the Sheriff's Office to provide its employees with fringe benefits and denies that the Sheriff's Office delegated – or is legally authorized to delegate – any such obligations or "essential employer functions" to the County.  Except as specifically admitted herein, the County denies the allegations in Paragraph 72 of the Amended Complaint.

73.

Answering Paragraph 73 of the Amended Complaint, the County admits the County administers payroll for the Sheriff, as directed by the Sheriff, and permits the Sheriff's employees to participate in the POS Plan, based on information and direction from the Sheriff's Office and pursuant to an informal intergovernmental agreement.  Except as specifically admitted herein, the County denies the allegations in Paragraph 73 of the Amended Complaint.

74.

Answering Paragraph 74 of the Amended Complaint, the County admits the County funds the POS Plan, along with contributions by plan participants, and a per capita charge to the Sheriff for his employees' participation.  Except as specifically admitted herein, the County denies the allegations in Paragraph 74 of the Amended Complaint.

75.

Answering Paragraph 75 of the Amended Complaint, the County admits Anthem is the third-party administrator of the POS Plan.  Answering further, the County admits the County funds the POS Plan, along with contributions by plan participants, and a per capita charge to the Sheriff for his employees' participation.  Except as specifically admitted herein, the County denies the allegations in Paragraph 75 of the Amended Complaint.

76.

Answering Paragraph 76 of the Amended Complaint, the County admits it has taken the position in this litigation – and continues to maintain – it is not Plaintiff's employer, an agent of the Sheriff's Office, or a joint employer with the Sheriff's Office. Except as

specifically admitted herein, the County denies the allegations in Paragraph 76 of the Amended Complaint.

77.

Answering Paragraph 77 of the Amended Complaint, the County admits the Sheriff's Office does not set the terms of or administer the POS Plan, and the Sheriff's Office offers no health plan of its own to its employees.  Except as specifically admitted herein, the County denies the allegations in Paragraph 77 of the Amended Complaint.

78.

Answering Paragraph 78 of the Amended Complaint, the County admits the Sheriff's Office has the discretion to obtain a health plan for its employees from a source other than the County.  Except as specifically admitted herein, the County denies the allegations in Paragraph 78 of the Amended Complaint.

79.

Answering Paragraph 79 of the Amended Complaint, the County admits the POS Plan covers the services listed in Paragraph 79, subject to the terms, conditions, and limitations in the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 79 of the Amended Complaint.

80.

Answering Paragraph 80 of the Amended Complaint, the County admits the POS Plan lists 68 medical exclusions, one of which deals with services and supplies for a "sex change," and 29 pharmacy exclusions, one of which deals with drugs for "sex change

surgery."   Except as specifically admitted herein, the County denies the allegations in Paragraph 80 of the Amended Complaint.

81.

Answering Paragraph 81 of the Amended Complaint, the County admits the POS Plan excludes services and supplies for a "sex change" and drugs for "sex change surgery." Except as specifically admitted herein, the County denies the allegations in Paragraph 81 of the Amended Complaint.

82.

Answering Paragraph 82 of the Amended Complaint, the County admits the POS Plan covers certain hormone deficiency services and certain breast surgery, subject to the terms, conditions, and limitations in the POS Plan.  Answering further, the County admits the POS Plan excludes services and supplies for a "sex change."  Except as specifically admitted herein, the County denies the allegations in Paragraph 82 of the Amended Complaint.

83.

Answering Paragraph 83 of the Amended Complaint, the County admits the POS Plan excludes services and supplies for a "sex change."  Answering further, the County specifically denies the POS Plan "targets" plan participants like Plaintiff – rather, it excludes 68 categories of services that may impact a broad number of plan participants at one time or another.  Except as specifically admitted herein, the County denies the allegations in Paragraph 83 of the Amended Complaint.

-25-

84.

Answering Paragraph 84 of the Amended Complaint, the County admits the POS Plan excludes services and supplies for a "sex change."  Except as specifically admitted herein, the County denies the allegations in Paragraph 84 of the Amended Complaint.

85.

Answering Paragraph 85 of the Amended Complaint, the County admits the POS Plan excludes non-medically necessary services.  Except as specifically admitted herein, the County denies the allegations in Paragraph 85 of the Amended Complaint.

86.

The County denies the allegations in Paragraph 86 of the Amended Complaint.

87.

The County denies the allegations in Paragraph 87 of the Amended Complaint.

88.

Answering Paragraph 88 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 88 (including its footnote 9) and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 88 of the Amended Complaint.

89.

Answering Paragraph 89 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 89 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 89 of the Amended Complaint.

90.

Answering Paragraph 90 of the Amended Complaint, the County admits the POS Plan excludes services and supplies for a "sex change."  Except as specifically admitted herein, the County denies the allegations in Paragraph 90 of the Amended Complaint.

91.

Answering Paragraph 91 of the Amended Complaint, the County admits the POS Plan has retained the exclusion of services and supplies for a "sex change."  Answering further, the County admits Plaintiff requested that the County remove or waive the exclusion via a January 2019 letter and her appearance at a Board of Commissioners meeting in February 2019.  Except as specifically admitted herein, the County denies the allegations in Paragraph 91 of the Amended Complaint.

92.

Answering Paragraph 92 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 92 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 92 of the Amended Complaint.

93.

Answering Paragraph 93 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 93 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 93 of the Amended Complaint.

94.

Answering Paragraph 94 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 94 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 94 of the Amended Complaint.

95.

Answering Paragraph 95 of the Amended Complaint, the County admits the POS Plan contains the language quoted in Paragraph 95.  Answering further, the County admits the POS Plan continues, "By electing medical and Hospital benefits under the Plan or accepting the Plan benefits, all Members legally capable of contracting, and the legal representatives of all Members incapable of contracting, agree to all terms, conditions, and provisions hereof." Except as specifically admitted herein, the County denies the allegations in Paragraph 95 of the Amended Complaint.

96.

Answering Paragraph 96 of the Amended Complaint, the County admits Anthem, or its predecessor Blue Cross Blue Shield, has previously required elections to retain certain exclusions.  Answering further, the County specifically denies Anthem's form contends the exclusions are unlawful.  Except as specifically admitted herein, the County denies the allegations in Paragraph 96 of the Amended Complaint.

97.

Answering Paragraph 97 of the Amended Complaint, the County admits Carter signed the Anthem form renewing certain exclusions for the 2019 plan year.  Except as specifically

admitted herein, the County denies the allegations in Paragraph 97 of the Amended Complaint.

98.

The County denies the allegations in Paragraph 98 of the Amended Complaint.

99.

The County denies the allegations in Paragraph 99 of the Amended Complaint.

100.

Answering Paragraph 100 of the Amended Complaint, the County admits Plaintiff requested that the County remove or waive the exclusion via a January 2019 letter and her appearance at a Board of Commissioners meeting in February 2019. Except as specifically admitted herein, the County denies the allegations in Paragraph 100 of the Amended Complaint.

101.

Answering Paragraph 101 of the Amended Complaint, the County admits Plaintiff's attorney sent a letter dated January 16, 2019, which requested that the County remove or waive the exclusion. Except as specifically admitted herein, the County denies the allegations in Paragraph 101 of the Amended Complaint.

102.

Answering Paragraph 102 of the Amended Complaint, the County admits Carter sent a letter to Anthem dated February 13, 2019, in response to a specific request by Anthem. Except as specifically admitted herein, the County denies the allegations in Paragraph 102 (including its footnote 10) of the Amended Complaint.

103.

Answering Paragraph 103 of the Amended Complaint, the County admits Plaintiff requested that the County remove or waive the exclusion via her appearance at a Board of Commissioners meeting in February 2019, and the Board responded it was not considering changes to the POS Plan at that time.  Except as specifically admitted herein, the County denies the allegations in Paragraph 103 (including its footnote 11) of the Amended Complaint.

104.

Answering Paragraph 104 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 104 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 104 of the Amended Complaint.

105.

Answering Paragraph 105 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 105 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 105 of the Amended Complaint.

106.

Answering Paragraph 106 of the Amended Complaint, the County admits Carter signed an amendment to the Administrative Services Agreement on April 19, 2019.  Except as specifically admitted herein, the County denies the allegations in Paragraph 106 of the Amended Complaint.

107.

Answering Paragraph 107 of the Amended Complaint, the County admits Plaintiff's attorney sent an e-mail to County Attorney Tom Hall on September 20, 2019.  Except as specifically admitted herein, the County denies the allegations in Paragraph 107 of the Amended Complaint.

108.

The County denies the allegations in Paragraph 108 of the Amended Complaint.

109.

The County denies the allegations in Paragraph 109 of the Amended Complaint.

110.

The County denies the allegations in Paragraph 110 of the Amended Complaint.

111.

Answering Paragraph 111 of the Amended Complaint, the County admits the POS Plan has retained the exclusion of services and supplies for a "sex change."  Except as specifically admitted herein, the County denies the allegations in Paragraph 111 of the Amended Complaint.

112.

Answering Paragraph 112 of the Amended Complaint, the County admits the Board met on November 19, 2019 and considered possible changes to the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 112 of the Amended Complaint.

113.

Answering Paragraph 113 of the Amended Complaint, the County admits the Board made decisions on the POS Plan and it did not specifically discuss any accommodation for Plaintiff.  Except as specifically admitted herein, the County denies the allegations in Paragraph 113 of the Amended Complaint.

114.

Answering Paragraph 114 of the Amended Complaint, the County admits that cost was mentioned as a factor for decisions on the POS Plan at the November 19, 2019 Board meeting.  Except as specifically admitted herein, the County denies the allegations in Paragraph 114 of the Amended Complaint.

115.

Answering Paragraph 115 of the Amended Complaint, the County avers that Paragraph 115 contains assertions of law to which no responsive pleading can or should be framed.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 115 of the Amended Complaint.

116.

The County denies the allegations in Paragraph 116 of the Amended Complaint.

117.

Answering Paragraph 117 of the Amended Complaint, the County avers that Paragraph 117 contains assertions of law to which no responsive pleading can or should be framed.  The Flack v. Wisconsin Dep't of Health Servs.  and Boyden v. Conlin decisions

speak for themselves.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 117 of the Amended Complaint.

118.

The County denies the allegations in Paragraph 118 of the Amended Complaint.

119.

The County denies the allegations in Paragraph 119 of the Amended Complaint.

120.

The County denies the allegations in Paragraph 120 of the Amended Complaint.

121.

The County denies the allegations in Paragraph 121 of the Amended Complaint.

122.

The County denies the allegations in Paragraph 122 of the Amended Complaint.

123.

Answering Paragraph 123 of the Amended Complaint, the County admits the County has stop-loss insurance.  Except as specifically admitted herein, the County denies the allegations in Paragraph 123 of the Amended Complaint.

124.

The County denies the allegations in Paragraph 124 of the Amended Complaint. Answering further, the County specifically denies that Plaintiff lacks access to the POS Plan – in fact, she has access to the same POS Plan as other Sheriff's Office employees and, for that matter, County employees, and is a participant in the POS Plan.

125.

The County denies the allegations in Paragraph 125 of the Amended Complaint.

126.

The County denies the allegations in Paragraph 126 of the Amended Complaint.

127.

Answering Paragraph 127 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 127 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 127 of the Amended Complaint.

128.

The County denies the allegations in Paragraph 128 of the Amended Complaint.

129.

The County denies the allegations in Paragraph 129 of the Amended Complaint.

130.

The County denies the allegations in Paragraph 130 of the Amended Complaint.

131.

Answering Paragraph 131 of the Amended Complaint, the County is without sufficient knowledge or information to admit or deny the allegations in Paragraph 131 and, therefore, denies the same.  Except as specifically answered herein, the County denies the allegations in Paragraph 131 of the Amended Complaint.

132.

The County denies the allegations in Paragraph 132 of the Amended Complaint.

## FIRST CAUSE OF ACTION

***Alleged Violation of 42 U.S.C. § 1983 Caused by Alleged Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution on the Basis of Sex and Transgender Status, Against Houston County, the Board, and the Individual Defendants in Their Individual and Official Capacities***

133.

Answering Paragraph 133 of the Amended Complaint, the County avers that Paragraph 133 contains assertions of law to which no responsive pleading can or should be framed.  The United States Constitution speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 133 of the Amended Complaint.

134.

Answering Paragraph 134 of the Amended Complaint, the County avers that Paragraph 134 contains assertions of law to which no responsive pleading can or should be framed.  The statute at 42 U.S.C. § 1983 speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 134 of the Amended Complaint.

135.

The County denies the allegations in Paragraph 135 of the Amended Complaint.

## SECOND CAUSE OF ACTION

### *Alleged Violation of the Georgia Equal Protection Guarantee on the Basis of Sex and Transgender Status, Against the Individual Defendants in Their Individual Capacities*

136.

The County denies as moot the allegations in Paragraph 136 of the Amended Complaint.[2/]

137.

The County denies as moot the allegations in Paragraph 137 of the Amended Complaint.

138.

The County denies as moot the allegations in Paragraph 138 of the Amended Complaint.

## THIRD CAUSE OF ACTION

### *Alleged Unlawful Discrimination on the Basis of Sex in Violation of Title VII of the Civil Rights Act of 1964, Against Houston County, the Board, and the Individual Defendants in Their Official Capacities*

139.

Answering Paragraph 139 of the Amended Complaint, the County avers that Paragraph 139 contains assertions of law to which no responsive pleading can or should be framed.  Title VII of the Civil Rights Act of 1964 speaks for itself.  To the extent a response

---

[2/]   The Court's October 30, 2020 Order (Doc. 89) dismissed Plaintiff's Second, Fifth, and Sixth Causes of Action.

is required, except as specifically stated herein, the County denies the allegations in Paragraph 139 of the Amended Complaint.

140.

Answering Paragraph 140 of the Amended Complaint, the County admits that the Sheriff's Office is Plaintiff's employer.  Except as specifically answered herein, the County denies the allegations in Paragraph 140 of the Amended Complaint.

141.

The County denies the allegations in Paragraph 141 of the Amended Complaint.

## FOURTH CAUSE OF ACTION

***Alleged Unlawful Discrimination on the Basis of Disability in Violation of
Title I of the Americans with Disabilities Act, Against Houston County, the Board,
and the Individual Defendants in Their Official Capacities***

142.

Answering Paragraph 142 of the Amended Complaint, the County avers that Paragraph 142 contains assertions of law to which no responsive pleading can or should be framed.  Title I of the ADA speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 142 of the Amended Complaint.

143.

Answering Paragraph 143 of the Amended Complaint, the County avers that Paragraph 143 contains assertions of law to which no responsive pleading can or should be framed.  Title I of the ADA (including regulations interpreting it) speaks for itself.  To the

-37-

extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 143 of the Amended Complaint.

144.

Answering Paragraph 144 of the Amended Complaint, the County avers that Paragraph 144 contains assertions of law to which no responsive pleading can or should be framed.  Title I of the ADA (including regulations interpreting it) speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 144 of the Amended Complaint.

145.

Answering Paragraph 145 of the Amended Complaint, the County avers that Paragraph 145 contains assertions of law to which no responsive pleading can or should be framed.  Title I of the ADA (including regulations interpreting it) speaks for itself.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 145 of the Amended Complaint.

146.

Answering Paragraph 146 of the Amended Complaint, the County avers that Paragraph 146 contains assertions of law to which no responsive pleading can or should be framed.  The ADA regulations speak for themselves.  To the extent a response is required, except as specifically stated herein, the County denies the allegations in Paragraph 146 of the Amended Complaint.

147.

Answering Paragraph 147 of the Amended Complaint, the County admits that the Sheriff's Office is Plaintiff's employer.  Except as specifically answered herein, the County denies the allegations in Paragraph 147 of the Amended Complaint.

148.

Answering Paragraph 148 of the Amended Complaint, the County admits that participants in the POS Plan are able to access services subject to the terms, conditions, and limitation of the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 148 of the Amended Complaint.

149.

Answering Paragraph 149 of the Amended Complaint, the County admits that participants in the POS Plan are able to access services subject to the terms, conditions, and limitation of the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 149 of the Amended Complaint.

150.

Answering Paragraph 150 of the Amended Complaint, the County admits that Plaintiff is able to access services subject to the terms, conditions, and limitation of the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 150 of the Amended Complaint.

151.

The County denies the allegations in Paragraph 151 of the Amended Complaint.

152.

The County denies the allegations in Paragraph 152 of the Amended Complaint.

153.

Answering Paragraph 153 of the Amended Complaint, the County admits Plaintiff requested a waiver or change to the POS Plan.  Except as specifically admitted herein, the County denies the allegations in Paragraph 153 of the Amended Complaint.

154.

The County denies the allegations in Paragraph 154 of the Amended Complaint.

155.

The County denies the allegations in Paragraph 155 of the Amended Complaint.

156.

The County denies the allegations in Paragraph 156 of the Amended Complaint.

## FIFTH CAUSE OF ACTION

***Alleged Unlawful Discrimination on the Basis of Disability in Violation of
Title II of the Americans with Disabilities Act Against Houston County, the Board,
and the Individual Defendants in Their Official Capacities***

157.

The County denies as moot the allegations in Paragraph 157 of the Amended Complaint.

158.

The County denies as moot the allegations in Paragraph 158 of the Amended Complaint.

159.

The County denies as moot the allegations in Paragraph 159 of the Amended Complaint.

160.

The County denies as moot the allegations in Paragraph 160 of the Amended Complaint.

161.

The County denies as moot the allegations in Paragraph 161 of the Amended Complaint.

162.

The County denies as moot the allegations in Paragraph 162 of the Amended Complaint.

163.

The County denies as moot the allegations in Paragraph 163 of the Amended Complaint.

164.

The County denies as moot the allegations in Paragraph 164 of the Amended Complaint.

165.

The County denies as moot the allegations in Paragraph 165 of the Amended Complaint.

## SIXTH CAUSE OF ACTION

### *Alleged Unlawful Discrimination on the Basis of Disability in Violation of Section 504 of the Rehabilitation Act Against Defendant Talton in His Official Capacity*

166.

The County denies as moot the allegations in Paragraph 166 of the Amended Complaint.

167.

The County denies as moot the allegations in Paragraph 167 of the Amended Complaint.

168.

The County denies as moot the allegations in Paragraph 168 of the Amended Complaint.

169.

The County denies as moot the allegations in Paragraph 169 of the Amended Complaint.

170.

The County denies as moot the allegations in Paragraph 170 of the Amended Complaint.

171.

The County denies as moot the allegations in Paragraph 171 of the Amended Complaint.

172.

The County denies as moot the allegations in Paragraph 172 of the Amended Complaint.

173.

The County denies as moot the allegations in Paragraph 173 of the Amended Complaint.

174.

The County denies as moot the allegations in Paragraph 174 of the Amended Complaint.

175.

The County denies as moot the allegations in Paragraph 175 of the Amended Complaint.

## JURY DEMAND

The County denies the allegations in unnumbered Jury Demand of the Amended Complaint.

## REQUEST FOR RELIEF

Answering the allegations contained in the unnumbered ad damnum clause following Paragraph 175 of the Amended Complaint and set forth under the heading "REQUEST FOR RELIEF" (including subparagraphs "A." through "F." thereof), the County denies that Plaintiff is entitled to the relief requested or to any relief whatsoever.

Except as specifically admitted hereinabove in response to the numbered and unnumbered paragraphs of the Amended Complaint, the County denies any and all other claims or allegations which are raised or may have been raised by or in the Amended Complaint.

WHEREFORE, having fully answered the allegations in Plaintiff's Amended Complaint, the County respectfully requests that the Court enter an order dismissing the Amended Complaint in its entirety, with prejudice; award the County its costs and expenses, including reasonable attorneys' fees; and award the County any other such relief as this Court deems just and proper.

Respectfully submitted, this 13th day of November, 2020.

/s/ Sharon P. Morgan
R. Read Gignilliat
Georgia Bar No. 293390
Sharon P. Morgan
Georgia Bar No. 522955
Patrick L. Lail
Georgia Bar No. 431101

ELARBEE, THOMPSON, SAPP &
  WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
(404) 659-6700
(404) 222-9718 (facsimile)
gignilliat@elarbeethompson.com
morgan@elarbeethompson.com
lail@elarbeethompson.com

Attorneys for Defendants

-44-

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:19-CV-00392-MTT |
| HOUSTON COUNTY, GEORGIA; | ) | |
| and Houston County Sheriff CULLEN | ) | |
| TALTON, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed a true and correct copy of **DEFENDANT HOUSTON COUNTY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT** with the Clerk of Court using the CM/EMF system which will automatically send email notification of such filing, constituting service, to the following attorneys of record:

Kenneth E. Barton, III                              Wesley Powell
M. Devlin Cooper                                    Mary Eaton
                                                    Sarah M. Waster
                                                    Jill K. Grant

David Brown                                         Kevin M. Barry
Noah E. Lewis
Alejandra Caraballo

Respectfully submitted, this 13th day of November, 2020.

/s/ Sharon P. Morgan
Sharon P. Morgan
Georgia Bar No. 522955

ELARBEE, THOMPSON, SAPP &
  WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
(404) 659-6700
(404) 222-9718 (facsimile)
morgan@elarbeethompson.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:19-CV-00392-MTT |
| HOUSTON  COUNTY,  GEORGIA;  and | ) | |
| Houston County Sheriff's Office CULLEN | ) | |
| TALTON, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT SHERIFF TALTON'S (IN HIS OFFICIAL CAPACITY) ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

Defendant Sheriff Cullen Talton, in his official capacity (the "Sheriff's Office"), files his Answer and Affirmative Defenses pursuant to Rules 8(c) and 12(a) of the Federal Rules of Civil Procedure, responding as follows to the allegations of Plaintiff's Amended Complaint.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Amended Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that she failed to file her civil action within the applicable statute of limitations and/or to the extent that Plaintiff failed to satisfy all conditions precedent and/or statutory prerequisites to a suit required under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Americans with

Disabilities Act as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and/or other applicable law.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of consent, waiver, estoppel, justification, license, laches, unclean hands, after-acquired evidence, and/or additional defenses that may arise during the proceedings.

## FOURTH AFFIRMATIVE DEFENSE

Any action taken by the Sheriff's Office with regard to Plaintiff or her employment was for legitimate, non-discriminatory and non-retaliatory reasons, and, as such, did not violate any legal or constitutional right possessed by Plaintiff.

## FIFTH AFFIRMATIVE DEFENSE

The Sheriff's Office has at all times acted in accord with and in good faith compliance with federal law. The Sheriff's Office has neither intentionally nor willfully violated Plaintiff's rights in any manner nor acted maliciously or with reckless disregard with respect to Plaintiff or any aspect of her employment, and at no time has the Sheriff's Office acted with any intent to injure Plaintiff.

## SIXTH AFFIRMATIVE DEFENSE

The Sheriff's Office has fulfilled all obligations imposed on it by law.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to any of the relief – equitable, declaratory, legal or attorneys' fees – requested against the Sheriff's Office; however, to the extent she is entitled to any damages or other relief, which she is not, any such damages or relief are limited to the relief

allowable against the Sheriff's Office under the applicable provisions of Title VII, the ADA, and other applicable law.  Specifically, Plaintiff's claims for damages and other monetary relief under Title VII and the ADA are subject to the limitations imposed by 42 U.S.C. §§ 1981a(a)(1) and (b)(3).

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is required to mitigate her alleged damages as required by law.

## NINTH AFFIRMATIVE DEFENSE

Any damages that Plaintiff suffered were the direct and proximate result of her own actions or inactions, including, but not limited to, assumption of the relevant risks.

## TENTH AFFIRMATIVE DEFENSE

Any damages that Plaintiff suffered resulted from the acts or omissions of others for whom the Sheriff's Office is not liable.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that accommodation of her disability, if any, would have caused undue hardship to the Sheriff's Office.

## TWELFTH AFFIRMATIVE DEFENSE

Any act or failure to act towards Plaintiff was not the result of any willful, malicious, reckless, or bad faith conduct on the part of the Sheriff's Office such as to give rise to the imposition of compensatory, consequential, or punitive damages and/or any of the statutory penalties requested in the Amended Complaint.  The Sheriff's Office has at all times acted in good faith and had objectively reasonable grounds to believe that any act or omission taken with respect to Plaintiff was in compliance with all federal laws.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks to recover punitive damages in this action, she cannot recover punitive damages from the Sheriff's Office as a matter of law.

## FOURTEENTH AFFIRMATIVE DEFENSE

Any action taken by the Sheriff's Office was reasonable and necessary to serve an important government purpose.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Sheriff's Office is entitled to immunity from suit under the Eleventh Amendment to the United States Constitution.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Section 1983 claim is barred on the grounds that the Sheriff's Office committed no acts or omissions or breached any duty owed to Plaintiff with respect to any legal or constitutional right possessed by her.

## SEVENTEENTH AFFIRMATIVE DEFENSE

One or more of the claims asserted by Plaintiff must be dismissed insofar as the Sheriff's Office is not subject to suit under applicable law.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Sheriff's Office hereby reserves the right to seek leave to amend this Answer or add additional defenses, or to withdraw defenses, as deemed warranted after reasonable opportunity for appropriate discovery.

## RESPONSE TO NUMBERED ALLEGATIONS

The Sheriff's Office responds to the numbered allegations of the Amended Complaint as follows:

## INTRODUCTION

1.

The Sheriff's Office denies the allegations in Paragraph 1 of the Amended Complaint.

2.

The Sheriff's Office admits the allegations in Paragraph 2 of the Amended Complaint.

3.

Answering Paragraph 3 of the Amended Complaint, the Sheriff's Office admits Plaintiff is a transgender woman.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 3 of the Amended Complaint.

4.

Answering Paragraph 4 of the Amended Complaint, the Sheriff's Office admits the BlueChoice Option POS Plan in which Plaintiff participates (the POS Plan) covers health care costs, subject to the terms, conditions, and limitations of the POS Plan, including its 68 medical exclusions and 29 pharmacy exclusions.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 4 (including its footnote 1) of the Amended Complaint.

5.

The Sheriff's Office denies the allegations in Paragraph 5 of the Amended Complaint.

6.

Answering Paragraph 6 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 6 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 6 of the Amended Complaint.

7.

The Sheriff's Office denies the allegations in Paragraph 7 of the Amended Complaint.

8.

Answering Paragraph 8 of the Amended Complaint, the Sheriff's Office admits Plaintiff has sent a letter to the Sheriff's Office regarding her situation.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 8 of the Amended Complaint.

9.

Answering Paragraph 9 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 9 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 9 of the Amended Complaint.

10.

Answering Paragraph 10 of the Amended Complaint, the Sheriff's Office admits Plaintiff seeks declaratory and injunctive relief, and damages, but denies she is entitled to any such relief.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 10 of the Amended Complaint.

## JURISDICTION AND VENUE

11.

Answering Paragraph 11 of the Amended Complaint, the Sheriff's Office admits Plaintiff raises claims under the listed constitutional provisions and statutes, but denies she is entitled to relief under them.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 11 of the Amended Complaint.

12.

Answering Paragraph 12 of the Amended Complaint, the Sheriff's Office admits this Court has jurisdiction over this matter.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 12 of the Amended Complaint.

13.

The Sheriff's Office admits the allegations in Paragraph 13 of the Amended Complaint.

14.

Answering Paragraph 14 of the Amended Complaint, the Sheriff's Office admits venue is proper in this district.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 14 of the Amended Complaint.

15.

Answering Paragraph 15 of the Amended Complaint, the Sheriff's Office admits venue is proper in this division.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 15 of the Amended Complaint.

## PARTIES

16.

The Sheriff's Office admits the allegations in Paragraph 16 of the Amended Complaint.

17.

The Sheriff's Office admits the allegations in Paragraph 17 of the Amended Complaint.

18.

The Sheriff's Office denies the allegations in Paragraph 18 of the Amended Complaint.

19.

The Sheriff's Office admits the allegations in Paragraph 19 of the Amended Complaint.

20.

The Sheriff's Office admits the allegations in Paragraph 20 of the Amended Complaint.

21.

Answering Paragraph 21 of the Amended Complaint, the Sheriff's Office admits members of the Board of Commissioners are Defendants Stalnaker, Walker, Robinson, Thomson, and McMichael; and Defendant Stalnaker is the Chairman of the Board of Commissioners.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 21 of the Amended Complaint.

22.

Answering Paragraph 22 of the Amended Complaint, the Sheriff's Office admits Holland is the Director of Administration.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 22 of the Amended Complaint.

23.

Answering Paragraph 23 of the Amended Complaint, the Sheriff's Office admits Carter is the County's Personnel Director.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 23 of the Amended Complaint.

24.

Answering Paragraph 24 of the Amended Complaint, the Sheriff's Office admits he is the Houston County Sheriff's Office and oversees the Sheriff's Office, which is located at 202 Carl Vinson Parkway, Warner Robins, Georgia, and 201 Perry Parkway, Perry, Georgia. Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 24 of the Amended Complaint.

25.

The Sheriff's Office admits the allegations in Paragraph 25 of the Amended Complaint.

26.

The Sheriff's Office admits the allegations in Paragraph 26 of the Amended Complaint.

27.

Answering Paragraph 27 of the Amended Complaint, the Sheriff's Office admits the Sheriff's Office obtains payroll and benefits services through the County.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 27 of the Amended Complaint.

28.

The Sheriff's Office denies as moot the allegations in Paragraph 28 of the Amended Complaint.

## ALLEGED EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

29.

Answering Paragraph 29 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 29 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 29 of the Amended Complaint.

30.

Answering Paragraph 30 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 30 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 30 of the Amended Complaint.

31.

The Sheriff's Office denies the allegations in Paragraph 31 of the Amended Complaint.

32.

Answering Paragraph 32 of the Amended Complaint, the Sheriff's Office admits Plaintiff filed an EEOC Charge against Defendant Talton and the Sheriff's Office alleging violations of the ADA and Title VII.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 32 of the Amended Complaint.

33.

Answering Paragraph 33 of the Amended Complaint, the Sheriff's Office admits the EEOC issued a Notice of Right to Sue dated February 26, 2020.  Answering further, the Sheriff's Office admits, upon information and belief, that the EEOC failed to investigate, reach a determination, or conciliate Plaintiff's Charge.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 33 of the Amended Complaint.

34.

The Sheriff's Office denies the allegations in Paragraph 34 of the Amended Complaint.

## ALLEGED FACTUAL BACKGROUND

35.

The Sheriff's Office admits, upon information and belief, the allegations in Paragraph 35 of the Amended Complaint.

36.

Answering Paragraph 36 of the Amended Complaint, the Sheriff's Office admits the Sheriff's Office hired Plaintiff in 2006, promoted her to Corporal in 2012, and promoted her

to Sergeant in 2014.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 36 of the Amended Complaint.

37.

Answering Paragraph 37 of the Amended Complaint, the Sheriff's Office admits Plaintiff has graduated from the GBI's Georgia Terrorism and Intelligence Project program, has an At-Risk Adult Crime Tactics (ACT) Specialist certification, investigates elder-abuse cases, and is a member of the Middle District of Georgia's Human Trafficking Network. Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 37 of the Amended Complaint.

38.

Answering Paragraph 38 of the Amended Complaint, the Sheriff's Office admits Plaintiff has been trained to handle a variety of cases, serves throughout the county, carries a firearm, and makes arrests.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 38 of the Amended Complaint.

39.

Answering Paragraph 39 of the Amended Complaint, the Sheriff's Office admits, until early 2017, Plaintiff wore typical men's clothing at work, went by her male birth name, and responded to male pronouns.  Answering further, the Sheriff's Office admits, by early 2017, Plaintiff began wearing typical women's clothing, using her female name, Anna, going by female pronouns, and otherwise being openly female at work.  Answering further, the Sheriff's Office admits Plaintiff informed the Sheriff's Office of her transition plans and then

told certain colleagues shortly thereafter. Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 39 of the Amended Complaint.

40.

Answering Paragraph 40 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 40 and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 40 of the Amended Complaint.

41.

Answering Paragraph 41 of the Amended Complaint, the Sheriff's Office admits a job description for Deputy Sheriff's Office is accessible on the website identified in Paragraph 41, n. 2, when applications are being accepted. Answering further, the Sheriff's Office admits Plaintiff performs her job duties and is the only openly transgender employee in the Sheriff's Office. The Sheriff's Office is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 41 and, therefore, denies the same. Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 41 of the Amended Complaint.

42.

Answering Paragraph 42 of the Amended Complaint, the Sheriff's Office admits Plaintiff receives health care benefits under a County-sponsored health plan, pursuant to an informal intergovernmental agreement between the County and the Sheriff's Office. Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 42 of the Amended Complaint.

43.

Answering Paragraph 43 of the Amended Complaint, the Sheriff's Office (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 43 and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 43 of the Amended Complaint.

44.

Answering Paragraph 44 of the Amended Complaint, the Sheriff's Office (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 44 and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 44 of the Amended Complaint.

45.

Answering Paragraph 45 of the Amended Complaint, the Sheriff's Office avers that Paragraph 45 contains assertions of law to which no responsive pleading can or should be framed. The Glenn v. Brumby decision speaks for itself. To the extent a response is required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 45 of the Amended Complaint.

46.

Answering Paragraph 46 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 46 (including its footnote 3) and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 46 of the Amended Complaint.

-14-

47.

Answering Paragraph 47 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 47 and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 47 of the Amended Complaint.

48.

Answering Paragraph 48 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 48 (including its footnote 4) and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 48 of the Amended Complaint.

49.

Answering Paragraph 49 of the Amended Complaint, the Sheriff's Office (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 49 (including its footnote 5) and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 49 of the Amended Complaint.

50.

Answering Paragraph 50 of the Amended Complaint, the Sheriff's Office (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 50 and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 50 of the Amended Complaint.

51.

Answering Paragraph 51 of the Amended Complaint, the Sheriff's Office (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 51 and, therefore, denies the same.  Answering further, the Sheriff's Office avers that Paragraph 51 contains assertions of law to which no responsive pleading can or should be framed.  The language of the Americans with Disabilities Act, including "gender identity disorder," speaks for itself.  To the extent a response is required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 51 of the Amended Complaint.

52.

Answering Paragraph 52 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 52 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 52 of the Amended Complaint.

53.

Answering Paragraph 53 of the Amended Complaint, the Sheriff's Office (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 53 (including its footnote 6) and, therefore, denies the same.  Answering further, the Sheriff's Office avers that Paragraph 53 contains assertions of law to which no responsive pleading can or should be framed.  The language of the O'Donnabhain v. C.I.R. decision speaks for itself.  To the extent a response is required, except as specifically stated

herein, the Sheriff's Office denies the allegations in Paragraph 53 of the Amended Complaint.

54.

Answering Paragraph 54 of the Amended Complaint, the Sheriff's Office (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 54 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 54 of the Amended Complaint.

55.

Answering Paragraph 55 of the Amended Complaint, including its subparagraphs a. through c., the Sheriff's Office (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 55 and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 55 of the Amended Complaint.

56.

Answering Paragraph 56 of the Amended Complaint, the Sheriff's Office (as a non-psychologist) is without sufficient knowledge or information to admit or deny the allegations in Paragraph 56 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 56 of the Amended Complaint.

57.

The Sheriff's Office admits, upon information and belief, the allegations in Paragraph 57 of the Amended Complaint.

58.

Answering Paragraph 58 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 58 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 58 of the Amended Complaint.

59.

Answering Paragraph 59 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 59 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 59 of the Amended Complaint.

60.

Answering Paragraph 60 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 60 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 60 of the Amended Complaint.

61.

Answering Paragraph 61 of the Amended Complaint, the Sheriff's Office admits, upon information and belief, that Plaintiff now lives as a female, "came out" to her employer (the Sheriff's Office), exclusively uses a female name and female pronouns, and wears typical women's clothing.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 61 of the Amended Complaint.

62.

Answering Paragraph 62 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 62 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 62 of the Amended Complaint.

63.

Answering Paragraph 63 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 63 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 63 of the Amended Complaint.

64.

Answering Paragraph 64 of the Amended Complaint, the Sheriff's Office admits Plaintiff legally changed her name, and the name and sex designation on her Georgia driver's license, in December 2017.  Answering further, the Sheriff's Office is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 64 and, therefore, denies the same.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 64 of the Amended Complaint.

65.

Answering Paragraph 65 of the Amended Complaint, the Sheriff's Office admits Plaintiff began using the name Anna at work after her legal name change.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 65 of the Amended Complaint.

66.

Answering Paragraph 66 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 66 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 66 of the Amended Complaint.

67.

Answering Paragraph 67 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in all but the last sentence of Paragraph 67 (including its footnote 7) and, therefore, denies the same. Answering further, the last sentence of Paragraph 67, as well as footnote 8, contains assertions of law to which no responsive pleading can or should be framed.  To the extent a response is required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 67 of the Amended Complaint.

68.

Answering Paragraph 68 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 68 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 68 of the Amended Complaint.

69.

Answering Paragraph 69 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 69 and,

therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 69 of the Amended Complaint.

70.

Answering Paragraph 70 of the Amended Complaint, the Sheriff's Office admits, upon information and belief, the County operates health plans for the benefit of its employees and other participants.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 70 of the Amended Complaint.

71.

Answering Paragraph 71 of the Amended Complaint, the Sheriff's Office admits Plaintiff is eligible for and participates in the POS Plan, which is available to her through an informal intergovernmental agreement between the County and the Sheriff's Office.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 71 of the Amended Complaint.

72.

Answering Paragraph 72 of the Amended Complaint, the Sheriff's Office admits the County and the Sheriff's Office have agreed – through an informal intergovernmental agreement – that employees of the Sheriff's Office can participate in the County's health plans.  Answering further, the Sheriff's Office denies that this informal intergovernmental agreement was the product of any obligation on the part of the Sheriff's Office to provide its employees with fringe benefits and denies that the Sheriff's Office delegated – or is legally authorized to delegate – any such obligations or "essential employer functions" to the

County. Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 72 of the Amended Complaint.

73.

Answering Paragraph 73 of the Amended Complaint, the Sheriff's Office admits the County administers payroll for the Sheriff's Office, as directed by the Sheriff's Office, and permits the Sheriff's Office's employees to participate in the County's health plans, based on information and direction from the Sheriff's Office and pursuant to an informal intergovernmental agreement. Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 73 of the Amended Complaint.

74.

Answering Paragraph 74 of the Amended Complaint, the Sheriff's Office admits the County funds the POS Plan, along with contributions by plan participants, and a per capita charge to the Sheriff's Office for its employees' participation. Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 74 of the Amended Complaint.

75.

Answering Paragraph 75 of the Amended Complaint, the Sheriff's Office admits Anthem is the third-party administrator of the POS Plan. Answering further, the Sheriff's Office admits the County funds the POS Plan, along with contributions by plan participants, and a per capita charge to the Sheriff's Office for its employees' participation. Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 75 of the Amended Complaint.

76.

Answering Paragraph 76 of the Amended Complaint, the Sheriff's Office admits the County has taken the position in this litigation – and continues to maintain – it is not Plaintiff's employer, an agent of the Sheriff's Office, or a joint employer with the Sheriff's Office.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 76 of the Amended Complaint.

77.

Answering Paragraph 77 of the Amended Complaint, the Sheriff's Office admits the Sheriff's Office does not set the terms of or administer the POS Plan, and the Sheriff's Office offers no health plan of its own to its employees.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 77 of the Amended Complaint.

78.

Answering Paragraph 78 of the Amended Complaint, the Sheriff's Office admits the Sheriff's Office has the discretion to obtain a health plan for its employees from a source other than the County or to offer a supplemental health plan or not to offer a health plan.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 78 of the Amended Complaint.

79.

Answering Paragraph 79 of the Amended Complaint, the Sheriff's Office admits the POS Plan covers the services listed in Paragraph 79, subject to the terms, conditions, and

limitations in the POS Plan.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 79 of the Amended Complaint.

80.

Answering Paragraph 80 of the Amended Complaint, the Sheriff's Office admits the POS Plan lists 68 medical exclusions, one of which deals with services and supplies for a "sex change," and 29 pharmacy exclusions, one of which deals with drugs for "sex change surgery."  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 80 of the Amended Complaint.

81.

Answering Paragraph 81 of the Amended Complaint, the Sheriff's Office admits the POS Plan excludes services and supplies for a "sex change" and drugs for "sex change surgery."  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 81 of the Amended Complaint.

82.

Answering Paragraph 82 of the Amended Complaint, the Sheriff's Office admits the POS Plan covers certain hormone deficiency services and certain breast surgery, subject to the terms, conditions, and limitations in the POS Plan.  Answering further, the Sheriff's Office admits the POS Plan excludes services and supplies for a "sex change."  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 82 of the Amended Complaint.

83.

Answering Paragraph 83 of the Amended Complaint, the Sheriff's Office admits the POS Plan excludes services and supplies for a "sex change."  Answering further, the Sheriff's Office specifically denies the POS Plan "targets" plan participants like Plaintiff – rather, it excludes 68 categories of services that may impact a broad number of plan participants at one time or another.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 83 of the Amended Complaint.

84.

Answering Paragraph 84 of the Amended Complaint, the Sheriff's Office admits the POS Plan excludes services and supplies for a "sex change."  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 84 of the Amended Complaint.

85.

Answering Paragraph 85 of the Amended Complaint, the Sheriff's Office admits the POS Plan excludes non-medically necessary services.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 85 of the Amended Complaint.

86.

The Sheriff's Office denies the allegations in Paragraph 86 of the Amended Complaint.

87.

The Sheriff's Office denies the allegations in Paragraph 87 of the Amended Complaint.

88.

Answering Paragraph 88 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 88 (including its footnote 9) and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 88 of the Amended Complaint.

89.

Answering Paragraph 89 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 89 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 89 of the Amended Complaint.

90.

Answering Paragraph 90 of the Amended Complaint, the Sheriff's Office admits the POS Plan excludes services and supplies for a "sex change."  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 90 of the Amended Complaint.

91.

Answering Paragraph 91 of the Amended Complaint, the Sheriff's Office admits the POS Plan has retained the exclusion of services and supplies for a "sex change."  Answering

further, the Sheriff's Office admits Plaintiff sent a letter to the Sheriff's Office regarding her situation.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 91 of the Amended Complaint.

92.

Answering Paragraph 92 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 92 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 92 of the Amended Complaint.

93.

Answering Paragraph 93 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 93 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 93 of the Amended Complaint.

94.

Answering Paragraph 94 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 94 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 94 of the Amended Complaint.

95.

Answering Paragraph 95 of the Amended Complaint, the Sheriff's Office admits the POS Plan contains the language quoted in Paragraph 95.  Answering further, the Sheriff's Office admits the POS Plan continues, "By electing medical and Hospital benefits under the

Plan or accepting the Plan benefits, all Members legally capable of contracting, and the legal representatives of all Members incapable of contracting, agree to all terms, conditions, and provisions hereof." Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 95 of the Amended Complaint.

96.

Answering Paragraph 96 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 96 and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 96 of the Amended Complaint.

97.

Answering Paragraph 97 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 97 and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 97 of the Amended Complaint.

98.

Answering Paragraph 98 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 98 and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 98 of the Amended Complaint.

99.

Answering Paragraph 99 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 99 and,

therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 99 of the Amended Complaint.

100.

Answering Paragraph 100 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 100 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 100 of the Amended Complaint.

101.

Answering Paragraph 101 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 101 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 101 of the Amended Complaint.

102.

Answering Paragraph 102 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 102 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 102 of the Amended Complaint.

103.

Answering Paragraph 103 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 103 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 103 of the Amended Complaint.

104.

The Sheriff's Office denies the allegations in Paragraph 104 of the Amended Complaint.

105.

The Sheriff's Office admits the allegations in Paragraph 105 of the Amended Complaint.

106.

Answering Paragraph 106 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 106 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 106 of the Amended Complaint.

107.

Answering Paragraph 107 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 107 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 107 of the Amended Complaint.

108.

Answering Paragraph 108 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 108 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 108 of the Amended Complaint.

109.

Answering Paragraph 109 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 109 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 109 of the Amended Complaint.

110.

Answering Paragraph 110 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 110 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 110 of the Amended Complaint.

111.

Answering Paragraph 111 of the Amended Complaint, the Sheriff's Office admits the POS Plan has retained the exclusion of services and supplies for a "sex change."  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 111 of the Amended Complaint.

112.

Answering Paragraph 112 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 112 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 112 of the Amended Complaint.

113.

Answering Paragraph 113 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 113 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 113 of the Amended Complaint.

114.

Answering Paragraph 114 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 114 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 114 of the Amended Complaint.

115.

Answering Paragraph 115 of the Amended Complaint, the Sheriff's Office avers that Paragraph 115 contains assertions of law to which no responsive pleading can or should be framed.  To the extent a response is required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 115 of the Amended Complaint.

116.

Answering Paragraph 116 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 116 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 116 of the Amended Complaint.

117.

Answering Paragraph 117 of the Amended Complaint, the Sheriff's Office avers that Paragraph 117 contains assertions of law to which no responsive pleading can or should be framed.  The Flack v. Wisconsin Dep't of Health Servs.  and Boyden v. Conlin decisions speak for themselves.  To the extent a response is required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 117 of the Amended Complaint.

118.

Answering Paragraph 118 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 118 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 118 of the Amended Complaint.

119.

Answering Paragraph 119 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 119 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 119 of the Amended Complaint.

120.

Answering Paragraph 120 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 120 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 120 of the Amended Complaint.

121.

Answering Paragraph 121 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 121 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 121 of the Amended Complaint.

122.

Answering Paragraph 122 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 122 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 122 of the Amended Complaint.

123.

Answering Paragraph 123 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 123 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 123 of the Amended Complaint.

124.

The Sheriff's Office denies the allegations in Paragraph 124 of the Amended Complaint.  Answering further, the Sheriff's Office specifically denies that Plaintiff lacks access to the POS Plan – in fact, she has access to the same POS Plan as other Sheriff's Office employees and, for that matter, County employees, and is a participant in the POS Plan.

125.

Answering Paragraph 125 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 125 and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 125 of the Amended Complaint.

126.

The Sheriff's Office denies the allegations in Paragraph 126 of the Amended Complaint.

127.

Answering Paragraph 127 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 127 and, therefore, denies the same. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 127 of the Amended Complaint.

128.

The Sheriff's Office denies the allegations in Paragraph 128 of the Amended Complaint.

129.

The Sheriff's Office denies the allegations in Paragraph 129 of the Amended Complaint.

130.

The Sheriff's Office denies the allegations in Paragraph 130 of the Amended Complaint.

131.

Answering Paragraph 131 of the Amended Complaint, the Sheriff's Office is without sufficient knowledge or information to admit or deny the allegations in Paragraph 131 and, therefore, denies the same.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 131 of the Amended Complaint.

132.

The Sheriff's Office denies the allegations in Paragraph 132 of the Amended Complaint.

## FIRST CAUSE OF ACTION

***Alleged Violation of 42 U.S.C. § 1983 Caused by Alleged Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution on the Basis of Sex and Transgender Status, Against Houston County, the Board, and the Individual Defendants in Their Individual and Official Capacities***

133.

Answering Paragraph 133 of the Amended Complaint, the Sheriff's Office avers that Paragraph 133 contains assertions of law to which no responsive pleading can or should be framed.  The United States Constitution speaks for itself.  To the extent a response is required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 133 of the Amended Complaint.

134.

Answering Paragraph 134 of the Amended Complaint, the Sheriff's Office avers that Paragraph 134 contains assertions of law to which no responsive pleading can or should be framed.  The statute at 42 U.S.C. § 1983 speaks for itself.  To the extent a response is

required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 134 of the Amended Complaint.

135.

The Sheriff's Office denies the allegations in Paragraph 135 of the Amended Complaint.

## **SECOND CAUSE OF ACTION**

### *Alleged Violation of the Georgia Equal Protection Guarantee on the Basis of Sex and Transgender Status, Against the Individual Defendants in Their Individual Capacities*

136.

The Sheriff's Office denies as moot the allegations in Paragraph 136 of the Amended Complaint.[1/]

137.

The Sheriff's Office denies as moot the allegations in Paragraph 137 of the Amended Complaint.

138.

The Sheriff's Office denies as moot the allegations in Paragraph 138 of the Amended Complaint.

---

[1/] The Court's October 30, 2020 Order (Doc. 89) dismissed Plaintiff's Second, Fifth, and Sixth Causes of Action.

## THIRD CAUSE OF ACTION

### *Alleged Unlawful Discrimination on the Basis of Sex in Violation of Title VII of the Civil Rights Act of 1964, Against Houston County, the Board, and the Individual Defendants in Their Official Capacities*

139.

Answering Paragraph 139 of the Amended Complaint, the Sheriff's Office avers that Paragraph 139 contains assertions of law to which no responsive pleading can or should be framed.  Title VII of the Civil Rights Act of 1964 speaks for itself.  To the extent a response is required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 139 of the Amended Complaint.

140.

Answering Paragraph 140 of the Amended Complaint, the Sheriff's Office admits that the Sheriff's Office is Plaintiff's employer.  Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 140 of the Amended Complaint.

141.

The Sheriff's Office denies the allegations in Paragraph 141 of the Amended Complaint.

## FOURTH CAUSE OF ACTION

### *Alleged Unlawful Discrimination on the Basis of Disability in Violation of Title I of the Americans with Disabilities Act, Against Houston County, the Board, and the Individual Defendants in Their Official Capacities*

142.

Answering Paragraph 142 of the Amended Complaint, the Sheriff's Office avers that Paragraph 142 contains assertions of law to which no responsive pleading can or should be

framed.  Title I of the ADA speaks for itself.  To the extent a response is required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 142 of the Amended Complaint.

143.

Answering Paragraph 143 of the Amended Complaint, the Sheriff's Office avers that Paragraph 143 contains assertions of law to which no responsive pleading can or should be framed.  Title I of the ADA (including regulations interpreting it) speaks for itself.  To the extent a response is required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 143 of the Amended Complaint.

144.

Answering Paragraph 144 of the Amended Complaint, the Sheriff's Office avers that Paragraph 144 contains assertions of law to which no responsive pleading can or should be framed.  Title I of the ADA (including regulations interpreting it) speaks for itself.  To the extent a response is required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 144 of the Amended Complaint.

145.

Answering Paragraph 145 of the Amended Complaint, the Sheriff's Office avers that Paragraph 145 contains assertions of law to which no responsive pleading can or should be framed.  Title I of the ADA (including regulations interpreting it) speaks for itself.  To the extent a response is required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 145 of the Amended Complaint.

146.

Answering Paragraph 146 of the Amended Complaint, the Sheriff's Office avers that Paragraph 146 contains assertions of law to which no responsive pleading can or should be framed. The ADA regulations speak for themselves. To the extent a response is required, except as specifically stated herein, the Sheriff's Office denies the allegations in Paragraph 146 of the Amended Complaint.

147.

Answering Paragraph 147 of the Amended Complaint, the Sheriff's Office admits that the Sheriff's Office is Plaintiff's employer. Except as specifically answered herein, the Sheriff's Office denies the allegations in Paragraph 147 of the Amended Complaint.

148.

Answering Paragraph 148 of the Amended Complaint, the Sheriff's Office admits that participants in the POS Plan are able to access services subject to the terms, conditions, and limitation of the POS Plan. Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 148 of the Amended Complaint.

149.

Answering Paragraph 149 of the Amended Complaint, the Sheriff's Office admits that participants in the POS Plan are able to access services subject to the terms, conditions, and limitation of the POS Plan. Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 149 of the Amended Complaint.

150.

Answering Paragraph 150 of the Amended Complaint, the Sheriff's Office admits that Plaintiff is able to access services subject to the terms, conditions, and limitation of the POS Plan.  Except as specifically admitted herein, the Sheriff's Office denies the allegations in Paragraph 150 of the Amended Complaint.

151.

The Sheriff's Office denies the allegations in Paragraph 151 of the Amended Complaint.

152.

The Sheriff's Office denies the allegations in Paragraph 152 of the Amended Complaint.

153.

The Sheriff's Office denies the allegations in Paragraph 153 of the Amended Complaint.

154.

The Sheriff's Office denies the allegations in Paragraph 154 of the Amended Complaint.

155.

The Sheriff's Office denies the allegations in Paragraph 155 of the Amended Complaint.

156.

The Sheriff's Office denies the allegations in Paragraph 156 of the Amended Complaint.

## **FIFTH CAUSE OF ACTION**

*Alleged Unlawful Discrimination on the Basis of Disability in Violation of Title II of the Americans with Disabilities Act Against Houston County, the Board, and the Individual Defendants in Their Official Capacities*

157.

The Sheriff's Office denies as moot the allegations in Paragraph 157 of the Amended Complaint.

158.

The Sheriff's Office denies as moot the allegations in Paragraph 158 of the Amended Complaint.

159.

The Sheriff's Office denies as moot the allegations in Paragraph 159 of the Amended Complaint.

160.

The Sheriff's Office denies as moot the allegations in Paragraph 160 of the Amended Complaint.

161.

The Sheriff's Office denies as moot the allegations in Paragraph 161 of the Amended Complaint.

162.

The Sheriff's Office denies as moot the allegations in Paragraph 162 of the Amended Complaint.

163.

The Sheriff's Office denies as moot the allegations in Paragraph 163 of the Amended Complaint.

164.

The Sheriff's Office denies as moot the allegations in Paragraph 164 of the Amended Complaint.

165.

The Sheriff's Office denies as moot the allegations in Paragraph 165 of the Amended Complaint.

## SIXTH CAUSE OF ACTION

### *Alleged Unlawful Discrimination on the Basis of Disability in Violation of Section 504 of the Rehabilitation Act Against Defendant Talton in His Official Capacity*

166.

The Sheriff's Office denies as moot the allegations in Paragraph 166 of the Amended Complaint.

167.

The Sheriff's Office denies as moot the allegations in Paragraph 167 of the Amended Complaint.

168.

The Sheriff's Office denies as moot the allegations in Paragraph 168 of the Amended Complaint.

169.

The Sheriff's Office denies as moot the allegations in Paragraph 169 of the Amended Complaint.

170.

The Sheriff's Office denies as moot the allegations in Paragraph 170 of the Amended Complaint.

171.

The Sheriff's Office denies as moot the allegations in Paragraph 171 of the Amended Complaint.

172.

The Sheriff's Office denies as moot the allegations in Paragraph 172 of the Amended Complaint.

173.

The Sheriff's Office denies as moot the allegations in Paragraph 173 of the Amended Complaint.

174.

The Sheriff's Office denies as moot the allegations in Paragraph 174 of the Amended Complaint.

175.

The Sheriff's Office denies as moot the allegations in Paragraph 175 of the Amended Complaint.

## JURY DEMAND

The Sheriff's Office denies the allegations in unnumbered Jury Demand of the Amended Complaint.

## REQUEST FOR RELIEF

Answering the allegations contained in the unnumbered ad damnum clause following Paragraph 175 of the Amended Complaint and set forth under the heading "REQUEST FOR RELIEF" (including subparagraphs "A." through "F." thereof), the Sheriff's Office denies that Plaintiff is entitled to the relief requested or to any relief whatsoever.

Except as specifically admitted hereinabove in response to the numbered and unnumbered paragraphs of the Amended Complaint, the Sheriff's Office denies any and all other claims or allegations which are raised or may have been raised by or in the Amended Complaint.

WHEREFORE, having fully answered the allegations in Plaintiff's Amended Complaint, the Sheriff's Office respectfully requests that the Court enter an order dismissing the Amended Complaint in its entirety, with prejudice; award the Sheriff's Office its costs and expenses, including reasonable attorneys' fees; and award the Sheriff's Office any other such relief as this Court deems just and proper.

Respectfully submitted, this 13th day of November, 2020.

/s/ Sharon P. Morgan
R. Read Gignilliat
Georgia Bar No. 293390
Sharon P. Morgan
Georgia Bar No. 522955
Patrick L. Lail
Georgia Bar No. 431101

ELARBEE, THOMPSON, SAPP &
  WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 659-6700
(404) 222-9718 (facsimile)
gignilliat@elarbeethompson.com
morgan@elarbeethompson.com
lail@elarbeethompson.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

ANNA LANGE,                          )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )          CIVIL ACTION NO.
                                     )          5:19-CV-00392-MTT
HOUSTON COUNTY, GEORGIA;             )
and Houston County Sheriff's Office  )
CULLEN TALTON, in his official       )
capacity,                            )
                                     )
          Defendants.                )

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed a true and correct copy of **DEFENDANT SHERIFF TALTON'S (IN HIS OFFICIAL CAPACITY) ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT** with the Clerk of Court using the CM/EMF system which will automatically send email notification of such filing, constituting service, to the following attorneys of record:

| Kenneth E. Barton, III | Wesley Powell |
| M. Devlin Cooper | Mary Eaton |
| | Sarah M. Wastler |
| | Jill K. Grant |
| | |
| David Brown | Kevin M. Barry |
| Noah E. Lewis | |
| Alejandra Caraballo | |

Respectfully submitted, this 13th day of November, 2020.

*/s/ Sharon P. Morgan*
Sharon P. Morgan
Georgia Bar No. 522955

ELARBEE, THOMPSON, SAPP &
  WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 659-6700
(404) 222-9718 (facsimile)
morgan@elarbeethompson.com

*Attorneys for Defendants*

140-1

**IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| ANNA LANGE, | Civil Action No. |
| Plaintiff, | 5:19-CV-00392-MTT |
| vs. | **ORAL ARGUMENT REQUESTED** |
| HOUSTON COUNTY, GEORGIA; and Houston County Sheriff CULLEN TALTON, in his official capacity, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND.................................................................................................2

    A.    Transgender People and Treatment of Gender Dysphoria.......................................2

    B.    Plaintiff Sgt. Anna Lange ........................................................................................3

    C.    The Health Plan, the Exclusion, and Denial of Coverage for Sgt. Lange's
    Bottom Surgery........................................................................................................4

    D.    Defendants Repeatedly Refuse to Engage with Sgt. Lange About the
    Exclusion or Requests for a Reasonable Accommodation. ....................................7

            1.    Sgt. Lange Requests Rescission of the Exclusion and Coverage of
               Medically Necessary Care............................................................................7

            2.    Sgt. Lange's Presentation to the Commissioners.........................................9

            3.    Sgt. Lange Again Requests a Reasonable Accommodation .......................9

            4.    Defendants Do Not Consider the Cost of Removing the Exclusion
               Until the Lawsuit........................................................................................10

ARGUMENT .......................................................................................................................13

    I.    The Exclusion Violates Title VII..........................................................................14

    A.    The Exclusion Is Expressly Discriminatory. .........................................................15

    B.    The Defendants' Actions in Adopting the Exclusion Demonstrate
    Discriminatory Intent. ...........................................................................................19

            1.    The Exclusion's "Disproportionate Impact" On Transgender
               Employees Shows Discriminatory Intent....................................................20

            2.    Disparaging Statements from Decision Makers Show Discriminatory
               Intent. .........................................................................................................21

            3.    Defendants' Departures from Normal Procedures Show
               Discriminatory Intent. .................................................................................21

             4.    Defendants' Granting of an Exception Shows Discriminatory Intent. ......23

    C.    Defendants' Cost Justification Fails as a Matter of Law. ......................................23

            1.    No Cost Justification Defense Is Available Under Title VII. ....................23

            2.    Defendants' Argument That Removing the Exclusion Will Increase
               The Health Plan's Costs Is Demonstrably False.........................................24

             3.    The Cost of Removing the Exclusion Would Be Minimal. .......................24

             4.    Removing the Exclusion Does Not Require Removing all exclusions......25

    D.    The County Is Liable as An Agent of the Sheriff's Office ....................................25

II.     The Exclusion Violates the Equal Protection Clause. ...................................................26

    A.      The Exclusion is Subject to Heightened Scrutiny...................................................27

        1.      The Exclusion Is a Sex-Based Classification.............................................27

        2.      Transgender People Are a Suspect or Quasi-Suspect Class. ....................27

    B.      The Exclusion Is Not Substantially Related to an Important Government
        Interest...........................................................................................................28

        1.      Cost Concerns Cannot Justify the Exclusion. ...........................................29

        2.      The Cost Justification Was Invented Post-Hoc In Response to
        Litigation...................................................................................................30

III.    The Exclusion Violates Title I of the ADA. ................................................................30

    A.      Sgt. Lange Has a Disability. ..................................................................................31

    B.      Sgt. Lange is a Qualified Individual. .....................................................................32

    C.      Defendants Discriminated Against Sgt. Lange Because of Her Disability. ..........33

        1.      Disparate Treatment...................................................................................33

        2.      Disparate Impact. .......................................................................................35

        3.      Failure to Make a Reasonable Accommodation. .......................................36

IV.     Sgt. Lange Is Entitled to Injunctive Relief.................................................................38

V.      The Sheriff's Office Is Not Entitled to Sovereign Immunity. .....................................39

CONCLUSION.....................................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Choate,*
    469 U.S. 287 (1985)..................................................................................34, 35

*Allmond v. Akal Sec., Inc.,*
    No. 4:05-cv-96(HL), 2007 WL 2904023 (M.D. Ga. Sept. 28, 2007).....................................35

*Barrett v. Walker County Sch. Dist.,*
    872 F.3d 1209 (11th Cir. 2017) ....................................................................38

*Bd. of Regents v. Myers,*
    764 S.E.2d 543 (Ga. 2014)..........................................................................13

*Bonidy v. U.S. Postal Serv.,*
    790 F.3d 1121 (10th Cir. 2015), *cert. denied*, 136 S. Ct. 1486 (2016)...................................29

*Bostock v. Clayton Cnty.,*
    140 S. Ct. 1731 (2020).............................................................. *passim*

*Bowen v. Gillard,*
    483 U.S. 587 (1987)................................................................................27

*Boyden v. Conlin,*
    341 F. Supp. 3d 979 (W.D. Wis. 2018) ................................................................17

*Brandt v. Rutledge,*
    21-cv-00450, 2021 WL 3292057 (E.D. Ark. Aug. 2, 2021).................................................28

*City of Cleburne v. Cleburne Living Centr., Inc.,*
    473 U.S. 432 (1985)................................................................................27

*City of Los Angeles, Dep't of Water & Power v. Manhart,*
    435 U.S. 702 (1978)........................................................................14, 16, 24

*Corbitt v. Taylor,*
    513 F. Supp. 3d 1309 (M.D. Ala. 2021) ...............................................................16

*Cordoba v. Dillard's, Inc.,*
    419 F.3d 1169 (11th Cir. 2005) ......................................................................36

*Davis v. Fla. Power & Light Co.,*
    205 F.3d 1301 (11th Cir. 2000) ......................................................................32

*Deerfield Med. Ctr. v. City of Deerfield Beach,*
   661 F.2d 328 (5th Cir. 1981) ................................................38

*Diaz v. Brewer,*
   656 F.3d 1008 (9th Cir. 2011) ............................................29

*EEOC v. Dolgencorp, LLC,*
   No. CV 617-100, 2018 WL 6251379 (S.D. Ga. Nov. 29, 2018) .....................14, 31

*Enwonwu v. Fulton-Dekalb Hosp. Auth.,*
   286 F. App'x 586 (11th Cir. 2008) ......................................33

*Flack v. Wis. Dept. of Health Servs.,*
   328 F. Supp. 3d 931 (W.D. Wisc. 2018)...............................17, 18, 28

*Fletcher v. Alaska,*
   443 F. Supp. 3d 1024 (D. Alaska 2020) .................................17

*Freyre v. Chronister,*
   910 F.3d 1371 (11th Cir. 2018) ..........................................39

*Frontiero v. Richardson,*
   411 U.S. 677 (1973)..........................................................29

*Geduldig v. Aiello,*
   417 U.S. 484 (1974).....................................................19, 30

*Gen. Elec. Co. v. Gilbert,*
   429 U.S. 125 (1976)..........................................................19

*Glenn v. Brumby,*
   663 F.3d 1312 (11th Cir. 2011) ...................................... *passim*

*Holly v. Clairson Indus., L.L.C.,*
   492 F.3d 1247 (11th Cir.2007) ..........................................35

*Hopman v. Union Pacific Railroad,*
   462 F.Supp.3d 913 (E.D. Ark. 2020)...............................36, 37

*Info. Sys. and Networks Corp. v. City of Atlanta,*
   281 F.3d 1220 (11th Cir. 2002) ..........................................13

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v.*
   *Johnson Controls, Inc.,*
   499 U.S. 187 (1991)..........................................................18

*Intl. Broth. of Teamsters v. U.S.,*
   431 U.S. 324 (1977)..........................................................38

*Kadel v. Folwell,*
    446 F. Supp. 3d 1 ......................................................................................................17, 18

*Lange v. Houston Cnty.,*
    499 F. Supp. 3d 1258 (M.D. Ga. 2020) ......................................................... *passim*

*Manders v. Lee,*
    338 F.3d 1304 (11th Cir. 2003) ...................................................................................39

*Mazzeo v. Color Resols. Int'l, LLC,*
    746 F.3d 1264 (11th Cir. 2014) ...................................................................................30

*Mem'l Hosp. v. Maricopa Cty.,*
    415 U.S. 250 (1975) .......................................................................................................29

*Merritt v. Dillard Paper Co.,*
    120 F.3d 1181 (11th Cir. 1997) .............................................................................20, 21

*Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.,*
    462 U.S. 669 (1983) ...........................................................................................14, 19, 24

*Price Waterhouse v. Hopkins,*
    490 U.S. 228 (1989) .......................................................................................................17

*Rodriguez v. Procter & Gamble Co.,*
    465 F. Supp. 3d 1301 (S.D. Fla.), *motion to certify appeal denied,* 499 F.
    Supp. 3d 1202 (S.D. Fla. 2020) ...................................................................................18

*Schroer v. Billington,*
    577 F. Supp. 2d 293 (D.D.C. 2008) ...........................................................................16

*Starling v. U.S. Postal Serv.,*
    No. 78-176A, 1979 WL 1929 (N.D. Ga. Aug. 17, 1979) ........................................13

*Toomey v. Arizona,*
    No. 19-cv-00035, 2019 WL 7172144 (D. Ariz. Dec. 23, 2019) .............................17

*United States v. Virginia,*
    518 U.S. 515 (1996) .................................................................................................26, 30

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
    429 U.S. 252 (1977) .......................................................................................................20

*Whitaker v. Kenosha Unified Sch. Dist. No.1 Bd. of Educ.,*
    858 F.3d 1034 (7th Cir. 2017) .....................................................................................15

*Whitley v. Dr. Pepper Snapple Grp., Inc.,*
    4:16-CV-00362, 2017 WL 1739917 (E.D. Tex. May 4, 2017) ................................33

*Williamson v. Clarke Cty. Dep't of Human Res.*,
   834 F. Supp. 2d 1310 (S.D. Ala. 2011)..................................................36

*Willis v. Conopco, Inc.*,
   108 F.3d 282 (11th Cir. 1997) ..........................................................37

*Young v. United Parcel Serv., Inc.*,
   575 U.S. 206 (2015).........................................................................15

**Statutes**

42 U.S.C.A. § 2000e-2(a)(1)................................................................14

42 U.S.C. § 2000e..............................................................................26

42 U.S.C. §§ 2000e-5(g)(1).................................................................38

42 U.S.C. § 12102(1)..........................................................................31

42 U.S.C. § 12111(8)..........................................................................32

42 U.S.C. § 12112(b)(3)(A)..................................................................35

42 U.S.C. § 18116(a)..........................................................................22

**Other Authorities**

29 C.F.R. § 1630.2(h)(1)......................................................................31

29 C.F.R. § 1630.2(o)(1)......................................................................37

Fed. R. Civ. P. 56(a) ..........................................................................13

Plaintiff Sgt. Anna Lange respectfully submits this memorandum of law in support of her motion for summary judgment. Based on the undisputed facts, Sgt. Lange is entitled to summary judgment on each of her claims, including Title VII of the Civil Rights Act of 1964 ("Title VII"), the Equal Protection Clause ("EPC"), and Title I of the Americans with Disabilities Act (the "ADA"). In addition, Defendant Sheriff's Office has not met its burden to show that it possesses sovereign immunity, and Sgt. Lange is entitled to summary judgment on this threshold issue.

## INTRODUCTION

This case challenges the blanket exclusion of health insurance coverage for gender-confirming care in the Houston County, Georgia (the "County") employee health plan (the "Health Plan"), administered by Anthem Blue Cross Blue Shield ("Anthem"). The Health Plan, which the Sheriff's Office has arranged for the County to provide to its employees, and in which Sgt. Lange participates, contains a discriminatory sex- and disability-based exclusion for "[d]rugs for sex change surgery," and "[s]ervices and supplies for a sex change" (the "Exclusion"). The Exclusion categorically denies medically necessary care to transgender people for treating gender dysphoria—even where the Health Plan covers *the very same care* for cisgender members who need it for other reasons. As a result of the Exclusion, Sgt. Lange has been denied coverage for medically necessary surgery, as well as routine tests and services.

Defendants do not dispute that the care Sgt. Lange seeks is medically necessary—they do not submit any evidence regarding any medical issues in this case. Rather, they admit that:

- "[G]ender transition or 'Sex Change' as that term is used in the Health Plan, is a medically necessary treatment for gender dysphoria for some people." (SOF ¶ 14.)[1]

---

[1]   Citations to "SOF" refer to the Plaintiff's Local Rule 56 Statement of Facts, filed in support of this motion.

- "[T]he only Health Plan Participants impacted by the Exclusion are transgender people seeking a 'sex change.'" (SOF ¶ 78.)

- The Exclusion prohibits coverage of medically-necessary care that would otherwise be covered, solely because a plan member seeks a "sex change"—even where the Plan would cover *the very same care* for a different reason. (SOF ¶ 77.)

- They could remove the Exclusion at any time (SOF ¶ 79) and indeed had they done nothing at all it would have been removed by default when Anthem sought to remove it from all Anthem's plans under a "Nondiscrimination Mandate," (SOF ¶ 85)—but instead, they chose to affirmatively opt out of the Nondiscrimination Mandate and maintain the Exclusion (SOF ¶ 91.)

- They have chosen to retain the Exclusion because they think it may allow them to offer better benefits to Health Plan members who are not transgender. (SOF ¶¶ 73, 80.)

All of these material facts are undisputed. As such, the Defendants discriminate against Sgt. Lange in violation of Title VII, the EPC, and the ADA.

## FACTUAL BACKGROUND

### A. Transgender People and Treatment of Gender Dysphoria

Transgender is a term used to describe a person whose gender identity—*i.e.*, their internal sense of who they know themselves to be—differs from the sex they were assigned at birth. (SOF ¶ 1.) This dissonance can be associated with "clinically significant distress or impairment in social, occupational, or other important areas of functioning." (SOF ¶ 2.) The medical diagnosis for this incongruence and associated distress is gender dysphoria. (SOF ¶ 3.) Many transgender people experience gender dysphoria at some point in their lives. (SOF ¶ 4.) Left untreated, gender dysphoria can lead to debilitating anxiety and depression, self-harm, and suicide. (SOF ¶ 6.)

Gender dysphoria is treatable. (SOF ¶ 7.) Since 1979, the World Professional Association for Transgender Health (WPATH), a non-profit professional and educational organization devoted to transgender health, has promulgated Standards of Care ("SOC")—guidelines for the clinical management of gender dysphoria that reflect the best available scientific evidence and expert professional consensus. (SOF ¶ 8.) As indicated in the SOC, effective treatment for gender

dysphoria includes social transition, hormone therapy, and various surgical procedures to align a person's sex characteristics with the person's gender identity ("gender-confirming" procedures). (SOF ¶¶ 10 – 11.) The major health professional associations—including the American Medical Association, the Endocrine Society, the American Psychiatric Association, the American Psychological Association, the American College of Physicians, the American Osteopathic Association, and the American College of Obstetrics and Gynecology—endorse protocols in line with the SOC and/or call for insurance coverage of these treatments. (SOF ¶ 9.)

Medical consensus is that gender-confirming surgeries are medically necessary for many people with gender dysphoria. (SOF ¶ 14.) Gender-confirming surgeries do not involve uniquely expensive or novel procedures; rather, they involve the same procedures (as indicated by use of the same CPT codes[2]) that are used to treat non-transgender individuals. (SOF ¶ 17.) For example, surgeons perform procedures to reconstruct genitalia—including phalloplasties and vaginoplasties—following oncologic resection, traumatic injury, infection, or to address congenital conditions. (SOF ¶ 17.). "These medical procedures do not become more expensive simply because they are being performed for the purpose of treating gender dysphoria." (SOF ¶ 18.)

B. **Plaintiff Sgt. Anna Lange**

Plaintiff Sgt. Anna Lange, a twenty-five year law enforcement veteran, has served as a deputy in the Houston County Sheriff's Office since 2006. (SOF ¶ 28.) She is also a transgender woman. (SOF ¶ 19.) She is the only openly transgender Sheriff's Office employee and the openly transgender Health Plan member. (SOF ¶ 29.) In 2017, Sgt. Lange's health care provider diagnosed

---

[2]   Current Procedural Terminology ("CPT") codes are numerical codes used primarily to identify medical services and procedures.

her with gender dysphoria, and she began a sustained treatment for this condition—namely by undergoing a gender transition. (SOF ¶¶ 31–32.) That spring, Sgt. Lange began taking a regimen of hormone therapy and adjusted her appearance to present as a female. (SOF ¶¶ 33–34.) She began using her female name, Anna, and came out to her friends and family. (SOF ¶ 23.)

On April 18, 2017, Sgt. Lange told Ken Carter, the County's Director of Personnel, that she was transgender, and asked about coverage for her transition-related medical expenses. (SOF ¶¶ 47, 93–94.) Mr. Carter first reached out to Donna Clark of the McNeal Agency, the County's insurance broker, inquiring whether the Health Plan would cover mental health counseling for someone who is transgender. (SOF ¶ 95.) Ms. Clark responded that, if "they use the codes necessary it will not be covered since the 'overall diagnosis' is not covered." (SOF ¶ 96.) Later the same day, Sgt. Lange attended a meeting with Sheriff Talton, Chief Deputy Billy Rape, and Mr. Carter, in which she told the Sheriff that she was transgender and planned to transition from male to female. (SOF ¶¶ 98–99.) Sheriff Talton looked at Mr. Carter and said, "What the hell is he talking about?" (SOF ¶ 100.) Sheriff Talton also commented, "I don't believe in sex changes." (SOF ¶ 103.)

That same day, Mr. Carter emailed Ms. Clark informing her that they "just had the meeting with the sheriff and it went well. I am good with nothing being covered and I think he is also. I do think that some of the mental health part should be covered in the beginning (not later) but do not want to get into creating loop holes and things like that." (SOF ¶ 110.)

## C.    The Health Plan, the Exclusion, and Denial of Coverage for Sgt. Lange's Bottom Surgery

As part of its employee compensation package, the County has created the Health Plan, which is self-funded. (SOF ¶ 69.) The Sheriff's Office and the County participate in an informal, unwritten, voluntary intergovernmental agreement, under which the County provides a range of

personnel services to the Sheriff's Office. (SOF ¶¶ 60–64.)  Since at least 1973, this has included allowing the Sheriff's Office employees to participate in the Health Plan. (SOF ¶ 60.)  Under this agreement, the County sets the Health Plan's benefit terms, determines the members' premiums and contribution limits, and provides for Sheriff's Office employees to enroll, disenroll, and have their questions answered, among other things. (SOF ¶ 62.) The County also advises the Sheriff regarding the costs of the Health Plan, and discusses issues that arise regarding his employees' participation both directly with the Sheriff—for example, Sheriff Talton discussed Sgt. Lange's case with the Commission's Chair, Tommy Stalnaker—and with the County's insurance broker. (SOF ¶ 64.)  There are approximately 1,500 Health Plan members. (SOF ¶ 67.)   The Sheriff's Office provides the largest number of employees to the Health Plan—more than the County itself. (SOF ¶ 68.)

The Health Plan is administered by Anthem, a third-party administrator. (SOF ¶ 69.) The Health Plan covers medically necessary services including "office visits and doctor services," "diagnostic laboratory" services, "prescription drugs," "surgical supplies," "inpatient hospital care," and "inpatient professional services" including "surgery" and "general anesthesia," subject to certain exclusions. (SOF ¶ 72.) According to the County, the Health Plan is more generous than employer health plans typically offered by the private sector. (SOF ¶ 73.)

The Health Plan has contained the Exclusion since at least 1998. (SOF ¶ 75.) In September 2016, Anthem notified the County, through its broker, that "the exclusion for gender identity disorders and sex change surgery will be removed from our plans (both fully-insured and ASO)"[3] (the "Nondiscrimination Mandate"). (SOF ¶¶ 84–85.) Anthem informed the County that the

---

[3]  "ASO" means "administrative services only," referring to plans, such as the Health Plan, that are self-funded. (SOF ¶ 53.)

Nondiscrimination Mandate would apply to the Health Plan unless the County expressly "opt[ed] out" of it. (SOF ¶¶ 85, 130, 133.) Although "the County generally follows the recommendation of its third-party administrator as to exclusions" for the Health Plan, the County chose not to do so this time, and instead opted out of the Nondiscrimination Mandate. (SOF ¶¶ 87, 91.)[4]

In April 2018, Sgt. Lange had surgery to feminize her chest ("top surgery"). (SOF ¶ 35.) Upon the recommendation of her doctors, Sgt. Lange determined that vaginoplasty, or "bottom surgery," was the next step in her treatment and began making arrangements to obtain the procedure. (SOF ¶ 37.) On September 12, 2018, Sgt. Lange contacted Anthem, inquiring about pre-authorization for gender confirmation surgery. (SOF ¶ 114.) At that time, Anthem informed Sgt. Lange that the surgery would be covered provided that it was "medically necessary" under Anthem's clinical guideline. (SOF ¶ 108.) No surgeon was available in Georgia, so Sgt. Lange found Dr. Rachel Bluebond-Langner, an Anthem in-network provider in New York. (SOF ¶ 117.) Sgt. Lange flew there on November 13, 2018 for a surgery consultation with Dr. Bluebond-Langner and her colleague, Dr. Lee Zhao. (SOF ¶ 120.) Dr. Bluebond-Langner and Dr. Zhao determined that sex reassignment surgery was medically necessary under Anthem's clinical guideline for the treatment of Sgt. Lange's gender dysphoria. (SOF ¶ 121.) Sgt. Lange scheduled her surgery for January 31, 2019 and her physicians submitted a pre-authorization request to Anthem. (SOF ¶ 124.)

---

[4] There is confusion surrounding whether the County chose to reject the Nondiscrimination Mandate in 2016, or whether it did so in 2018 retroactively after learning about Sgt. Lange's intent to have surgery. (SOF ¶¶ 91–92, 125–128, 130–134). At minimum, it appears Anthem believed the County had originally accepted the Nondiscrimination Mandate, so in September and November 2018, Anthem informed Sgt. Lange and her doctor that her surgery would be covered. (SOF ¶¶ 92, 114–115, 118–119.)

Upon learning of Sgt. Lange's intent to have surgery, Mr. Carter and Ms. Clark worked with Anthem to ensure the County was opted-out of the Nondiscrimination Mandate, thus maintaining the Exclusion in the Health Plan and preventing Sgt. Lange's surgery from being covered. (SOF ¶¶ 125–133.) Ms. Clark immediately sought to ensure the County was opted out (SOF ¶¶ 128, 130–32), and when Anthem sent the County a form for it to execute, titled in relevant part "2017 Mandates—only ASO can opt out," Mr. Carter promptly returned it on December 19, 2018 with the "No" box checked next to the text of the Nondiscrimination Mandate, in order to ensure the Exclusion remained in the Health Plan (SOF ¶¶ 133, 137).

At the time when the County executed the opt-out, it had not considered any cost information regarding the Exclusion. (SOF ¶ 134.) Indeed, the County admits that cost was not a factor in its decision. (SOF ¶ 135.) The County also admits that, by opting out, it knew the Health Plan would not cover treatment for gender dysphoria. (SOF ¶ 137.)

On February 7, 2019, Anthem sent Ms. Clark a letter via email, requesting confirmation that the County had discussed its opt-out decision with counsel, and agreed to be "responsible for any penalties if the plan is determined to be noncompliant." (SOF ¶¶ 151–55.) Although they had never received an indemnity demand from Anthem before, the County provided the confirmation letter containing the requested representations. (SOF ¶¶ 151, 159–63.)

### D. Defendants Repeatedly Refuse to Engage with Sgt. Lange About the Exclusion or Requests for a Reasonable Accommodation.

#### 1. Sgt. Lange Requests Rescission of the Exclusion and Coverage of Medically Necessary Care

On November 26, 2018, Anthem informed Sgt. Lange that her surgery would not be covered, due to the Exclusion. (SOF ¶ 129.) On December 11, 2018, she filed an appeal. (SOF ¶ 129.) On January 6, 2019, through her attorney Noah Lewis, she sent a letter to County Attorney Tom Hall explaining that she was being denied access to medically necessary healthcare and

requesting that, "in lieu of a lawsuit," the parties engage in a "Structured Negotiation" regarding the Exclusion's removal. (SOF ¶ 138.) Mr. Hall immediately forwarded the email to Mr. Carter, noting: "I just received this. I have not read it completely. Looks like someone is trying to raise an issue." (SOF ¶ 139.) Forty-eight minutes later, without having discussed the letter with anyone or even reading all of it ("I probably scanned it," SOF ¶ 141), and without inquiring how much removing the Exclusion would actually cost, Mr. Carter forwarded the letter to the County's liability insurer, stating "[w]e have not received any lawsuit yet, but I do believe that *we will not move forward with negotiations as indicated in the letter*." (SOF ¶ 140.) *("Q: What information did Houston County consider before deciding not to move forward with negotiations? A: No information* other that we weren't in a position, at that time of year, to make any changes to the plan.").[5] True to its word, the County ignored Sgt. Lange's request and instead continue to work to ensure that the Exclusion would be "add[ed] back" to the Health Plan." (SOF ¶ 144.)

On January 23, 2019, Anthem notified Sgt. Lange that it was denying her appeal of the decision to deny coverage for her surgery, citing the Exclusion. (SOF ¶ 145.)

Having received no response to his January 6 letter, Sgt. Lange's attorney again emailed Mr. Hall on February 4, 2019 and requested a meeting. (SOF ¶ 146.) Mr. Hall declined. (SOF ¶ 147.) A few days later, on February 7, 2019, Sgt. Lange's attorney again wrote to Mr. Hall asking to have "a conversation next week about the transgender health exclusion" and informing him that "[w]e would really like to have a private dialogue with you, but if that is not going to happen

---

[5] The County's testimony that Sgt. Lange's early 2019 accommodation requests came at the wrong time of year is contradicted by the documentary record. "The Board of Commissioners is permitted to change the plan during the plan year if they are so inclined. . . . [I]t's our plan." (SOF ¶ 79.) Moreover, the County's response to Sgt. Lange's request at the February 19, 2019 Commissioners' meeting, which was recorded on video, didn't mention the time of year. (SOF ¶ 175.)

imminently, we will plan to deliver public comments at the Feb. 19 Commissioners meeting." (SOF ¶ 149.) Neither Mr. Hall nor anyone else at the County responded or took any steps to engage with Sgt. Lange's request. (SOF ¶ 150.) Similarly, Sgt. Lange told Sheriff Talton a few days in advance of her intention to request the Exclusion be removed at the upcoming meeting of the Commissioners and Sheriff Talton took no action. (SOF ¶¶ 165–66.)

### 2. Sgt. Lange's Presentation to the Commissioners

On February 19, 2019, Sgt. Lange and her attorney attended the regular public meeting of the Commissioners and made presentations during which they again "asked the Commissioners to vote to remove the [E]xclusion." (SOF ¶ 167, 170–172.) The Commissioners' only response came from Mr. Hall, who instructed the Commissioners not to respond, nor offer any explanation for the Exclusion or refusing to remove it. (SOF ¶ 173.) The County admits that prior to the February 19, 2019 Commissioners' meeting, it did not seek out or consider any information regarding the cost of removing the Exclusion. (SOF ¶ 174.)

### 3. Sgt. Lange Again Requests a Reasonable Accommodation

Sgt. Lange researched whether she could afford to pay for her surgery out-of-pocket, and called multiple additional surgeons around the country seeking quotes. (SOF ¶ 177.) Only one provided an estimate, of between $40,000 and $50,000, which Sgt. Lange could not afford on her law enforcement salary. (SOF ¶ 178.) She also investigated surgery abroad, but felt that being forced to have surgery outside of the United States for medically necessary care when her colleagues were not forced to was "not equal and it's not fair."  (SOF ¶ 179.)

Sgt. Lange then filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") against the County and on July 8, 2019 was issued a right-to-sue letter. (SOF ¶ 180.) On September 20, 2019, counsel for Sgt. Lange sent another letter to Mr. Hall, again requesting a "modification . . . of the Plan or on-going exemptions to the Exclusion." (SOF ¶¶ 181–82.) The

letter again stated that she would prefer to resolve the dispute without litigation, although she would need to file suit by early October under the EEOC's deadline. (SOF ¶ 183.) Mr. Hall replied that he would not be able to respond until after the next Commissioners' meeting. (SOF ¶ 184.)

4.   Defendants Do Not Consider the Cost of Removing the Exclusion Until the Lawsuit

On October 2, 2019, Sgt. Lange filed this action. Only "in light of [Sgt. Lange's] claims" did the County, for the first time, request some information from Ms. Clark about what Sgt. Lange's surgery might actually cost. (SOF ¶¶ 186–88.) On September 30, 2019, Mr. Carter asked Ms. Clark for "an estimated cost of the gender reassignment," explaining that "[w]e are working with he [sic] attorney and this question has come up." (SOF ¶ 186.)

Ms. Clark replied to Mr. Carter with a photograph of part of a computer screen with text on it, purportedly generated by Anthem, estimating the cost of a vaginoplasty—the only procedure sought by Sgt. Lange—at $25,600, as part of a larger list of gender-confirming procedures, characterized as "having everything done" (which Sgt. Lange does not seek and many of which were not covered by Anthem's guideline in any event), estimated to total $186,100. (SOF ¶¶ 189–90.) The County admits the image was not "an in-depth cost analysis of the cost of removing the . . . exclusion," and that the County, in fact, never conducted such an analysis. (SOF ¶ 193.)

On November 4, 2019, Carter sent the Commissioners a memorandum recommending renewing the Health Plan for 2020 without changes to the scope of benefits, but with certain changes to cost sharing and premiums. (SOF ¶ 195.) Despite having received Anthem's cost estimates over a month before, Mr. Carter did not provide this information in the memorandum. (SOF ¶¶ 186, 189, 196.) In fact, Mr. Carter did not mention Sgt. Lange's requested modification whatsoever. (SOF ¶¶ 196, 198.) He has testified that this was probably because the November 4, 2019 memorandum reflected the "***actual changes we were going to make***." (SOF ¶ 198.)

10

On November 16, 2019, three days before the Commissioners' meeting, Mr. Carter sent a separate memorandum to the Commissioners including the photograph purportedly provided by Anthem. (SOF ¶ 197.) Mr. Carter did not inform the Commissioners that many of the procedures listed in the photograph were not deemed medically necessary under Anthem's clinical guideline and therefore would not be covered by the Plan even if the Exclusion were removed. (SOF ¶ 200.) He also omitted several other material facts that were relevant to analyzing whether to maintain or remove the Exclusion, and which would have placed Anthem's photograph in the context of the Health Plan as a whole, such as:

- Sgt. Lange was seeking only one surgery, a vaginoplasty estimated to cost $25,600 (SOF ¶¶ 37, 38, 189), which under the County's own definition would not even make her a "high-cost claimant." (SOF ¶ 192.)

- The estimated cost of the surgery would amount to only about one quarter of one percent (.25%) of the Plan's approximately $10 million average annual expenditure. (SOF ¶ 70.)

- Few, if any, other Health Plan members were expected to seek care covered by the Exclusion, as Sgt. Lange is the only known transgender plan member. (SOF ¶ 30.)

- The County covers numerous high-cost claimants whose estimated yearly costs are much higher than even the cost of "having everything done" in the photograph ($186,100) (SOF ¶¶ 244–45), and that the County's exposure to such costs is limited by stop loss insurance. (SOF ¶ 231.)

- The County covers conditions other than gender dysphoria that are subject to much higher rates of utilization and expenditure than any estimate of the cost of removing the Exclusion, but which are not the subject of a blanket exclusion (SOF ¶¶ 244–46.)

Mr. Carter's memorandum did not provide a recommendation as to the Exclusion—and indeed assumed it would not be removed. (SOF ¶ 199 ("*I think you could say that we were not going to remove the exclusion*, but that had not been decided on yet and had not been voted on.").)

At the November 19, 2019, Commissioners' meeting, Mr. Carter briefed the Commissioners on the recommended changes to the Health Plan for the 2020 plan year. (SOF ¶¶ 203–04.) With respect to Sgt. Lange's request, Mr. Carter stated only that "cost data was obtained

from Anthem on the exclusion and its removal would impact the cost to the County plan." (SOF ¶ 204.) He did not say what this impact would be. (SOF ¶ 204.) Despite having obtained this data, Mr. Carter did not make any recommendation regarding the Exclusion itself. (SOF ¶ 208.) Rather, he recommended retaining all the Plan's exclusions, as if they were inseparable, although the County admits that they are not. (SOF ¶¶ 205, 216.)

The Commissioners did not discuss any of the information Mr. Carter provided, nor comment on the mismatch between the scope of his recommendation—regarding all the Health Plan's exclusions—and the content of the cost information he presented—regarding just the one Exclusion.  (SOF ¶¶ 207–08). They then voted to retain all the exclusions. (SOF ¶ 209.) This vote was a departure from normal procedural practice: in other years, the Commissioners only considered changes to the Health Plan, not provisions to be renewed unchanged; and they have taken formal votes only in years where "major changes" were being proposed to the Health Plan, not where changes were proposed to individual Health Plan coverage terms. (SOF ¶¶ 210–12.)

Subsequently, the County settled on a rationale for why all the exclusions and not just the one Exclusion had to be voted on: if the County removed one exclusion, they'd have to remove all of them, thus quintupling the cost of the Health Plan. (SOF ¶ 213.) The County calls this its "snowball" defense. (SOF ¶ 213.) The County admits that its snowball defense was not a "basis of [its] decision not to remove the Exclusion." (SOF ¶ 214.) Rather, the County admits this concern arose "about three weeks" *after* the Commissioners' vote. (SOF ¶ 215.)

On February 12, 2020, before filing an Amended Complaint naming the Sheriff's Office as an additional defendant, counsel for Sgt. Lange sent the Sheriff's Office an *ante litem* notice, the purpose of which under Georgia practice is to "provide adequate notice of the claim to facilitate

settlement before the filing of a lawsuit." *Bd. of Regents v. Myers*, 764 S.E.2d 543, 546 (Ga. 2014) (SOF ¶ 232.) The Sheriff's Office received the notice, but did not respond. (SOF ¶ 232.)

In addition to her surgery denial, Sgt. Lange has continued to have routine healthcare coverage denied. (SOF ¶ 254.) Sgt. Lange requires annual endocrinologist visits and blood work to monitor her hormone levels and renew her hormone replacement therapy prescriptions. (SOF ¶ 265.) On June 12, 2019, she was denied coverage for a routine blood test for monitoring her hormone and medication levels, citing the Exclusion. (SOF ¶ 255.) And as recently as October 18, 2021, she was denied coverage for her regular annual visit to the endocrinologist. (SOF ¶ 266.)

Sgt. Lange remains unable to afford surgery, and so her gender dysphoria remains only partially treated. (SOF ¶ 267.) This continues to cause her distress, anxiety, sleeplessness, feelings of depression, and other symptoms, which continue to limit her ability to function socially and professionally. (SOF ¶ 268.)

Defendants have, as of September 17, 2021, spent over $541,000 on attorney's fees defending this matter. (SOF ¶ 233.) This is over 21 times Anthem's estimate for the cost of Sgt. Lange's surgery and three times its "having everything done" estimate.

## ARGUMENT

Summary judgment is appropriate when there is no genuine issue of material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. and Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (citation and punctuation omitted). "While [a court] grant[s] the opponent of summary judgment the benefit of every inference, [it] may not abandon common sense in identifying triable issues." *Starling v. U.S. Postal Serv.*, No. 78-176A, 1979 WL 1929, at *6 (N.D. Ga. Aug. 17, 1979).

Here, it is undisputed that Defendants have opted to provide an employee Health Plan containing a blanket Exclusion for gender-confirming care. In doing so, Defendants intended to deny transgender Health Plan members such as Sgt. Lange coverage for medically-necessary treatment for gender dysphoria—even where the *very same care* would be covered if sought as treatment for a different condition. Thus, as a matter of law, Defendants unlawfully discriminated against Plaintiff in violation of Title VII (because of her sex), the EPC (because of her sex and transgender status), and Title I of the ADA (because of her disability). As a result, based on the undisputed factual record, Sgt. Lange is entitled to injunctive relief. Finally, the Sheriff's Office cannot meet its burden to establish that it is entitled to sovereign immunity.

## I.     The Exclusion Violates Title VII.

"Title VII's message is 'simple but momentous': An individual employee's sex is 'not relevant to the . . . compensation of employees.'" *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1741 (2020) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 239 (1989) (plurality opinion)).[6] By excluding coverage for medically necessary care if it relates to a "sex change," Defendants discriminated against Sgt. Lange "because of sex" and betrayed the promise of Title VII.

In this case, there is direct evidence of sex discrimination. "Direct evidence is 'evidence from which a trier of fact could reasonably find that the defendant more probably than not discriminated against the plaintiff on the basis of a protected personal characteristic.'" *EEOC v.*

---

[6]   Title VII prohibits discrimination "because of . . . sex" in "compensation, terms, conditions, or privileges of employment." 42 U.S.C.A. § 2000e-2(a)(1). Health insurance constitutes "compensation, terms, conditions, or privileges of employment." *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 682 (1983); *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 710 (1978) ("[T]here is no reason to believe that Congress intended a special definition of discrimination in the context of employee group insurance coverage.").

*Dolgencorp, LLC*, No. CV 617-100, 2018 WL 6251379, at *6 (S.D. Ga. Nov. 29, 2018).[7] A reasonable factfinder must find the Exclusion violates Title VII because (i) its express terms impose differential treatment based on sex, and (ii) there is undisputed evidence of Defendants' intent to discriminate against transgender people.

### A.     The Exclusion Is Expressly Discriminatory.

It is undisputed that the Exclusion prohibits coverage of medically-necessary care that would otherwise be covered, solely because a plan member seeks a "sex change"—even where the Health Plan would cover *the very same care* for a different purpose. (SOF ¶ 77.) This is an expressly sex-based policy that violates Title VII for three reasons: (i) it explicitly withholds benefits based on "sex," (ii) it discriminates on the basis of an employee's transgender status, and (iii) it discriminates on the basis of gender stereotype. Since the Supreme Court confirmed in *Bostock* that Title VII's protections extend to transgender people, there can be no doubt that, no matter how one looks at the Exclusion, it unlawfully discriminates because of sex.

*First*, the Exclusion expressly prohibits coverage for drugs, services, and supplies related to "sex change." (SOF ¶ 76.) A "policy [that] cannot be stated without referencing sex" is "inherently based upon a sex-classification." *Whitaker v. Kenosha Unified Sch. Dist. No.1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017). Indeed, "an employer who discriminates against . . . transgender employees necessarily and intentionally applies sex-based rules." *Bostock*, 140 S. Ct. at 1748.

---

[7]   *McDonnell Douglas* burden shifting, which courts apply when there is circumstantial evidence of discrimination, is thus unnecessary. *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206, (2015) ("[A] plaintiff can prove disparate treatment either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*").

*Second*, the Exclusion "penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth." *Bostock*, 140 S. Ct. at 1741. For example, the Health Plan prohibits coverage for medically necessary vaginoplasty for women like Sgt. Lange whose sex assigned at birth was male, but covers such care for women whose sex was assigned female. (SOF ¶ .) The Exclusion thus fails the "simple test" of discrimination laid down by the Supreme Court because the undisputed "evidence shows 'treatment of a person in a manner which but for that person's sex would be different.'" *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711 (1978) (internal citations omitted). Indeed, the Exclusion applies "based on 'the sheer fact of transition.'" *Glenn v. Brumby*, 663 F.3d 1312, 1321 (11th Cir. 2011). It singles out "the very act that defines transgender people," *id*.—by applying exclusively and comprehensively to procedures that "change" an individual's "sex." (SOF ¶ 76.) One cannot penalize people for seeking to change their physical sex characteristics without relying on sex. *See Schroer v. Billington*, 577 F. Supp. 2d 293, 306-07 (D.D.C. 2008) (explaining that just as discrimination against a person for converting to a different religion is unquestionably "[d]iscrimination 'because of religion" under Title VII, so discrimination against a person who "has changed her sex" is discrimination "because of sex."); *Bostock*, 140 S. Ct. at 1739 (noting "sex" includes, at a minimum, "reproductive biology"); *Corbitt v. Taylor*, 513 F. Supp. 3d 1309, 1314 (M.D. Ala. 2021), appeal pending (ruling that a government policy that classifies people based on whether they have changed their genitalia is a sex-based classification).

*Third*, the Exclusion discriminates on the basis of gender stereotypes. An employee's choice to live openly in a sex other than their sex assigned at birth "transgresses gender stereotypes" "which presume that men and women's appearance and behavior will be determined

by their [assigned] sex." *Glenn*, 663 F.3d at 1316, 1320.[8] Thus, by excluding coverage for care that would otherwise be covered, on the basis of this choice, the Exclusion discriminates on the basis of sex stereotypes. Indeed, Sheriff Talton testified that this was a motivation for the Exclusion, because he "[doesn't] believe in" "sex changes," and there is no form of transgender healthcare that should be covered. (SOF ¶¶ 95, 104, 242.)

For all these reasons, it is well-settled that transgender health exclusions are express sex-based discrimination under Title VII. That is so if one views this as a "straightforward case" of discrimination based on transgender status, like other District Courts have done. *See, e.g., Boyden v. Conlin*, 341 F. Supp. 3d 979, 995 (W.D. Wis. 2018) ("[A] natal female born without a vagina qualifies for coverage of a vaginoplasty, but not the plaintiffs here because their natal sex is male. As such, this is a 'straightforward case of sex discrimination.'").[9] And it is so if one views this as a case about sex stereotypes, as other District Courts also have done. *See, e.g., Toomey v. Arizona*, No. 19-cv-00035, 2019 WL 7172144, at *6 (D. Ariz. Dec. 23, 2019) ("This narrow exclusion of coverage for 'gender reassignment surgery' is directly connected to the incongruence between Plaintiff's natal sex and his gender identity . . . [which] implicates the gender stereotyping

---

[8]   Although decided under the Equal Protection Clause, *Glenn* relied on Title VII precedent—most notably *Price Waterhouse*, which *Bostock* also cites—and includes a full Title VII analysis. *See Glenn*, 663 F.3d at 1317–18, 1320–21.

[9]   *See also Flack*, 328 F. Supp. 3d. at 948 (same); *Kadel v. Folwell*, 446 F. Supp. 3d 1, 14 (M.D.N.C. 2020 ("[T]he Exclusion discriminates . . . based on employee's physical sex characteristics"); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1030 (D. Alaska 2020) ("If plaintiff's natal sex were female and it was medically necessary for her to have a vaginoplasty . . . , coverage would have been available. . . . But, because plaintiff's natal sex is male and she was seeking to transition to a female, coverage was not available. . . That is discrimination because of sex and makes defendant's formal policy . . . facially discriminatory.").

prohibited by Title VII.").[10] *Bostock* affirms the reasoning in these cases, and leaves no doubt that Title VII forbids blanket transgender health exclusions in employee health plans.

Defendants do not dispute that the Exclusion prevents transgender employees like Sgt. Lange from receiving medically necessary care—even the very same care that would be covered for a different purpose. (SOF ¶ 77.) They argue instead that all Health Plan members have access to the same benefits, *i.e.*, the Exclusion applies equally to everyone, and thus it is not intentionally discriminatory.[11] This argument fails. To satisfy Title VII's intent requirement, a plaintiff only needs to show that the decision was "premised on" the protected characteristic; there is no requirement to show the employer was "motivated by invidious hostility or animus." *Ferrill*, 168 F.3d at 473;[12] *see also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.,* 499 U.S. 187, 199 (1991) ("[T]he absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect."). A facially-discriminatory employment policy is sufficient evidence of discriminatory intent to establish a violation of Title VII. *See id*. at 197-98 (lower court erred in using disparate impact analysis to consider policy that applied different requirement to women of childbearing age than to men and older women). *See also Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d

---

[10]  *See also Kadel,* 446 F. Supp. 3d at 14 ("[B]y denying coverage for gender-confirming treatment, the Exclusion tethers Plaintiffs to sex stereotypes which, as a matter of medical necessity, they seek to reject."); *Flack* at 951 ("the Challenged Exclusion feeds into sex stereotypes by requiring all transgender individuals receiving Wisconsin Medicaid to keep genitalia and other prominent sex characteristics consistent with their natal sex no matter how painful and disorienting it may prove for some.").

[11]  Defendants also argue the Exclusion is a cost-saving measure—a legally-infirm argument addressed in section I.D.

[12]  *Ferrill* is a 42 U.S.C. § 1981 race discrimination case but is nevertheless controlling here because "[t]he test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases." 168 F.3d at 472.

1301, 1320 (S.D. Fla.), *motion to certify appeal denied,* 499 F. Supp. 3d 1202 (S.D. Fla. 2020) ("[i]ntentional discrimination can be established by a facially discriminatory policy: one that explicitly applies less favorably to some, or all, members of a protected group."). A health insurance plan facially discriminates based on sex if it contains a sex-based exclusion, even if all employees have access to the same benefits. *See Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 676 (1983) (plan that offered coverage related to pregnancies of employees but not their spouses discriminated based on sex).[13]

Because the Exclusion is expressly discriminatory on the basis of sex, it is unlawful under Title VII. Sgt. Lange is entitled to summary judgment on this basis.

## B. The Defendants' Actions in Adopting the Exclusion Demonstrate Discriminatory Intent.

The undisputed evidence demonstrates that Defendants adopted the Exclusion intending to discriminate on the basis of sex. As this Court has explained regarding Sgt. Lange's EPC claim, "[r]elevant evidence of intent may include any disproportionate impact of the challenged law or policy, the historical background of the decision, any departures from normal procedures, or

---

[13]  Applying *Geduldig v. Aiello*, 417 U.S. 484, 489 (1974), which held a disability insurance policy that did not cover pregnancy-related disabilities did not discriminate because of sex, this Court has previously rejected Plaintiff's argument that the Exclusion is discriminatory on its face under the Equal Protection Clause. *Lange*, 499 F. Supp. 3d at [ ]. However, Plaintiff respectfully submits that *Geduldig* does not apply to Plaintiff's Title VII claim. *Newport News* confirms that neither the reasoning nor the holding of *Geduldig* applies to Title VII as amended by the Pregnancy Discrimination Act, overruling the Supreme Court's earlier holding to the contrary in *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 134 (1976). *Newport News*, 462 U.S. at 676 ("[W]e shall consider whether Congress, by enacting the Pregnancy Discrimination Act, not only overturned the specific holding in *General Electric v. Gilbert,* but also rejected the test of discrimination employed by the Court in that case. We believe it did . . . . When Congress amended Title VII in 1978, it unambiguously expressed its disapproval of both the holding and the reasoning of the Court in the *Gilbert* decision."); *id.* at 679 & n. 17 (reviewing legislative history that PDA was intended to "reestablish the principles of Title VII law as they had been understood prior to the *Gilbert* decision.").

legislative or administrative history." *Lange v. Houston Cnty.*, 499 F. Supp. 3d 1258, 1276 (M.D. Ga. 2020). An additional source of direct evidence of discrimination under Title VII may be "actions or statements of an employer reflect[ing] a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (citations and internal quotes omitted). Each of these indicia of intentional discrimination is present here.

Here, there is undisputed evidence that Defendants (i) know that the Exclusion exclusively impacts transgender employees like Sgt. Lange—and indeed, impacts *only* Sgt. Lange, as she is the only openly transgender health plan member; (ii) have denied Sgt. Lange's identity as a transgender woman and made numerous negative statements about her sex; (iii) have adopted and maintained the Exclusion in a marked departure from their normal procedures; and (iv) have granted an exception for a cisgender employee yet refused to engage in a dialogue with, or grant an accommodation to, Sgt. Lange. This is direct evidence of discriminatory intent.

1. The Exclusion's "Disproportionate Impact" On Transgender Employees Shows Discriminatory Intent.

Defendants admit that the Exclusion impacts transgender members of the Health Plan and no one else. (SOF ¶ 78.) Defendants also admit that it impacts *all* transgender members of the Health Plan; indeed, the County is aware of only one—Sgt. Lange. (SOF ¶ 30.) The deliberate choice to undertake a course of action that harms only transgender people and all transgender people is powerful evidence of an intent to discriminate. *See Lange*, 499 F. Supp. 3d at 1276 ("[D]isproportionate impact of the challenged law or policy" may be "relevant evidence of intent."); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) (where "a clear pattern, unexplainable on grounds other than [a protected characteristic], emerges from the effect of the state action . . . [t]he evidentiary inquiry is then relatively easy").

2.   Disparaging Statements from Decision Makers Show Discriminatory Intent.

There is ample undisputed evidence of "a discriminatory . . . attitude correlating to the discrimination . . . complained of by [Sgt. Lange]." *Merritt*, 120 F.3d at 1189. Defendants have made no secret of the fact that they do not view gender dysphoria as a genuine medical issue requiring care. Indeed, they have made numerous disparaging statements about Sgt. Lange and her transition, and have refused to recognize her as a woman in the workplace.

Both the County and the Sheriff likened gender-confirming healthcare to cosmetic surgery, like a "tummy tuck," a "nose job," or an aesthetic breast enhancement (SOF ¶ 234, 262)—even though the County is aware that care subject to the Exclusion is defined as "medically necessary" by Anthem (SOF ¶¶ 14–16), and even though they do not contest that gender confirming surgery is medically necessary (SOF ¶ 14). Indeed, Sheriff Talton testified that he does "not believe in" sex changes—"whether it is surgery or not. (SOF ¶ 253.) Likewise, Mr. Carter testified that he was "good with nothing being covered" for transgender people seeking treatment for gender dysphoria, and did not want to see the plan cover mental healthcare for gender dysphoria after an initial diagnosis to avoid the possibility of "loop holes" allowing transgender people to access other care (SOF ¶¶ 110, 255.)

Perhaps it is unsurprising, then, that despite her requests to be treated as a female at work, Sheriff Talton has persistently referred to Sgt. Lange as "he" (including consistently throughout his deposition in this case) and allowed others to do the same. (SOF ¶ 251.) Sheriff Talton also refused to instruct Sheriff's Office staff to use the name "Anna" in the workplace even after she changed it legally. (SOF ¶ 250.)

3.   Defendants' Departures from Normal Procedures Show Discriminatory Intent.

In adopting and maintaining the Exclusion, both "the historical background of the decision" and "departures from normal procedures" demonstrate Defendants' discriminatory intent. *Lange*,

499 F. Supp. 3d at 1276. Specifically, Defendants readopted the Exclusion multiple times through departures from normal processes:

- Although the County generally "follows the recommendation of its third-party administrator," it did not do so when opting out of the Nondiscrimination Mandate—even when Anthem informed it that its "chosen plan design differs from [Anthem's] interpretation of the Affordable Care Act and related regulations." (SOF ¶¶ 87, 91, 154);[14]

- The County agreed to indemnify Anthem in order to opt out of the Nondiscrimination Mandate, which it had never done before (SOF ¶ 151);

- The County decided to opt out of the Nondiscrimination Mandate and maintain the Exclusion without obtaining any information about its financial impact on the Health Plan (SOF ¶ 134);

- When Sgt. Lange and her lawyer requested an accommodation at an open meeting of the County Commissioners in February 2019, Mr. Hall read out a statement instructing the Commissioners not to answer any of their questions (SOF ¶ 173);

- After obtaining cost information solely about the Exclusion, the County staged a vote in November, 2019, on something else—to retain *all* the Plan's exclusions for the 2020 plan year, as if they were inseparable, which they are not, and even though they do not normally vote on adding or removing specific exclusions to the Health Plan—let alone on *not* changing terms in the Health Plan (SOF ¶¶ 209–12);

- The cost information that was presented in support of the vote by Mr. Carter was inconsistent with the facts provided to him by Sgt. Lange and her counsel, and by Anthem, and it was not presented in the context of the plan as a whole (SOF ¶ 197, 200–09);

- Only several weeks after voting did the County came up with a rationale to try to explain, retroactively, why they did so (SOF ¶¶ 213–15.)

---

[14] The County argues Anthem's warning regarding the Exclusion's illegality was about the ACA nondiscrimination provision only, which they say does not apply to the Health Plan. But the ACA prohibits discrimination on the basis of "sex." 42 U.S.C. § 18116(a). Defendants were thus aware Anthem was warning them the Exclusion constituted sex discrimination, which is unlawful under the Equal Protection Clause and Title VII, not just the ACA. Moreover, the County's admission that it chose this course of action because it believed this form of discrimination to be lawful is powerful evidence that it *did* intend to treat its employees differently based on a protected characteristic—it just didn't expect to face any consequences for that choice. (SOF ¶ 159.)

### 4.  Defendants' Granting of an Exception Shows Discriminatory Intent.

The County has, on at least one occasion, granted an exception to an employee who sought coverage for a procedure that was the subject of an exclusion. (SOF ¶¶ 235–40.) In that case, the County granted an exception to a member who sought coverage for a follow-up bariatric surgery procedure, despite bariatric surgery being the subject of an exclusion under the Plan, which had been added before the member needed the procedure. (SOF ¶¶ 235–40.)

However, when Sgt. Lange sought relief from the Exclusion, Defendants consistently refused to consider her request or even engage with her on the topic. (SOF ¶¶ 138, 146–50, 165–73, 181–85.) By contrast, Mr. Carter testified that he has discussed Health Plan concerns with other employees. (SOF ¶ 63.) Defendants have not offered any reason why they engaged with and ultimately granted an exception to another, non-transgender, employee, but not to Sgt. Lange.

## C.  Defendants' Cost Justification Fails as a Matter of Law.

Defendants have taken the position that the Exclusion is a cost-saving measure. (SOF ¶ 204.) Their explanation for how it does so has changed during the litigation. In November 2019, the Commissioners considered only cost information relevant to removing the Exclusion itself. (SOF ¶ 204.) Subsequently, Defendants developed their "snowball" cost defense. (SOF ¶ 213.) Either rationale is a cost defense—predicated on the idea that removing the Exclusion would raise the Health Plan's costs. This defense fails because (i) there is no cost defense available under Title VII as a matter of law, and (ii) the purported cost increase of removing the Exclusion is demonstrably false.

### 1.  No Cost Justification Defense Is Available Under Title VII.

Defendant's only explanation for the Exclusion—cost savings—fails as a matter of law. "Neither Congress nor the courts have recognized [a cost justification] defense under Title VII." *Manhart*, 435 U.S. at  716–17; *see also Newport News*, 462 U.S. at 685 n.26 ("[N]o [cost]

justification is recognized under Title VII once discrimination has been shown."). Discrimination through reducing compensation to disfavored employees saves employers money by definition—allowing such a defense would make the term "compensation" in the text of Title VII meaningless.

> 2. Defendants' Argument That Removing the Exclusion Will Increase The Health Plan's Costs Is Demonstrably False.

In addition to the lack of a cost justification defense until Title VII, Defendants' argument that removing the Exclusion would increase the Health Plan's costs is demonstrably false. The undisputed evidence shows that (i) the absolute cost to the Health Plan of removing the Exclusion would be minimal, and (ii) removing the Exclusion would not require removal of every exclusion in the Health Plan.

> 3. The Cost of Removing the Exclusion Would Be Minimal.

The County admits that removing the Exclusion would not be costly. (SOF ¶¶ 220.) The information provided by Anthem and presented to the Commissioners in their 2019 vote (although not discussed by them) confirms that the cost of removing the Exclusion would be insubstantial in the context of the Health Plan as a whole—amounting to a small fraction of one percent of the Health Plan's annual expenditure, and much less than it routinely pays out for numerous individual claimants and for costlier health conditions. (SOF ¶¶ 225–26, 245.)

Further, information that Anthem produced in response to Plaintiff's discovery requests confirms that the cost of covering the excluded care would be minimal. Specifically, Anthem produced an "estimation" prepared for its internal use during for the 2017 plan year, based on data from state plans without blanket exclusions. (SOF ¶ 25.) Anthem calculated that, for a transgender woman seeking both top and bottom surgeries, the average cost paid was ███. (SOF ¶ 225.) Anthem also concluded that that utilization of gender-confirming care was low, ███████████ ████████████████████████████████ utilizing surgical services for gender

dysphoria annually, and  of members using any covered services. (SOF ¶ 226.)
Based on these estimations, Anthem concluded that the average cost to health plans of covering
gender-confirming care was ███████████████████ (SOF ¶ 226.) This would
amount ██████████████████████████████████████

████████████████████████████████████████████

██████████ (SOF ¶¶ 67, 226.)

The uncontested evidence shows that, ████████████████████████

██████████, the actual cost of removing the Exclusion would be, in the words of Plaintiff's
cost expert, "immaterial." (SOF ¶ 222–23.)

### 4.   Removing the Exclusion Does Not Require Removing all exclusions.

Here, Defendants' "snowball" defense—the argument that removing the Exclusion would
result in the removal of all exclusions, thereby quintupling the cost of the Health Plan—belies
common sense. It is also belied by the record. Defendants' only expert testified that this argument
"certainly seems a stretch." (SOF ¶ 218.) Also, Defendants' insurance broker testified that this
concern was baseless. (SOF ¶ 221.) Defendants have conceded that: they have removed exclusions
and granted exemptions in the past while retaining others; nothing in the Health Plan requires them
to remove all exclusions by virtue of removing one; and they are aware that other plans have
removed their trans health exclusions while still retaining other exclusions. (SOF ¶¶ 216–21.)

### D.   The County Is Liable as An Agent of the Sheriff's Office

The County cannot escape liability under Title VII (or under the ADA) because Sgt. Lange
works for the Sheriff's Office. Title VII's definition of "employer" encompasses "any agent" of
one. 42 U.S.C. § 2000e. In ruling on Defendants' motions to dismiss, this Court held that "Lange
alleged that the Sheriff's Office has chosen to delegate the provision of healthcare benefits to the
County. The County provided healthcare benefits to Sheriff's Office employees on behalf of the

Sheriff's Office and tailored those benefits to exclude genital surgery. With regard to the claims at issue in this lawsuit, therefore Lange has plausibly alleged that the County was acting as an agent of the Sheriff's Office." *Lange*, 499 F. Supp. 3d at 1273.

Those allegations are now a matter of undisputed fact. The County admits it has provided healthcare benefits to Sheriff's Office employees on behalf of the Sheriff's Office through a voluntary, informal intergovernmental agreement. (SOF ¶ 60.) The County admits that it controls the terms of the Health Plan, administers it on behalf of and for the benefit of Sheriff's Office employees, and has tailored it to exclude gender-confirming care. (SOF ¶¶ 79, 80, 137.) Accordingly, the County is liable for violating Title VII (and the ADA) as the Sheriff's Office's agent.

## II.    The Exclusion Violates the Equal Protection Clause.

"The Equal Protection Clause requires the State to treat all persons similarly situated alike or, conversely, to avoid all classifications that are 'arbitrary or irrational' and 'those that reflect a 'bare . . . desire to harm a politically unpopular group." *Glenn*, 663 F.3d at 1315 (*citing City of Cleburne v. Cleburne Living Centr., Inc.*, 473 U.S. 432, 446–47 (1985). "[A]ll gender-based classifications today warrant heightened scrutiny." *United States v. Virginia*, 518 U.S. 515, 555 (1996).  Under heightened scrutiny, a "classification fails unless it is substantially related to a sufficiently important government interest." *Glenn*, 663 F.3d at 1315.  Further, the interest "must be genuine, not hypothesized or invented *post hoc* in response to litigation." *Virginia* at 533.  The Exclusion fails heightened scrutiny because Defendants can point to no evidence showing that it is substantially related to an important government interest. Indeed, the undisputed evidence confirms that the only purported interest served by the Exclusion—cost—was "hypothesized or invented *post hoc* in response to litigation."

### A.    The Exclusion is Subject to Heightened Scrutiny.

Heightened scrutiny is applicable here for two independent reasons: the Exclusion is a sex-based classification, and it is a classification on the basis of a suspect or quasi-suspect class—namely, transgender status.

### 1.    The Exclusion Is a Sex-Based Classification.

In analyzing the Exclusion, the Court must apply heightened scrutiny, because it is a sex-based classification. *Bostock* and *Glenn* leave no doubt that discrimination on the basis of transgender status constitutes sex discrimination.[15] *Bostock*, 140 S. Ct. at 1743 ("For an employer to discriminate against employees for being . . . transgender, the employer must intentionally discriminate against individual men and women in part because of sex."); *Glenn* ("Discrimination against a transgender individual because of her gender-nonconformity is sex discrimination" that "must be subjected to heightened scrutiny.").

### 2.    Transgender People Are a Suspect or Quasi-Suspect Class.

The Court must also apply heightened scrutiny for the additional reason that the Exclusion subjects transgender people—a suspect or quasi-suspect class—to differential treatment. Courts apply heightened scrutiny where government action differentially treats a class that (i) has been historically "subjected to discrimination," *Bowen v. Gillard*, 483 U.S. 587, 602 (1987); (ii) has a defining characteristic that "frequently bears no relation to ability to perform or contribute to society," *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440–41 (1985); (iii) has "obvious,

---

[15]  Although *Bostock* was decided under Title VII, *Glenn* holds that the analysis for determining whether employer action is sex discrimination is the same under the EPC as under the statute. *Glenn* at 1321 (analyzing employer's actions under Title VII precedents and concluding, ("If this were a Title VII case, the analysis would end here."). Unlike under Title VII, however, discriminatory action may survive judicial review, if it passes intermediate scrutiny. *Id*.

immutable, or distinguishing characteristics that define them as a discrete group," *Bowen*, 483 U.S. at 602; and (iv) is "a minority or politically powerless." *Id.*

Applying these factors, numerous courts have held transgender people are a suspect or quasi-suspect class meriting heightened scrutiny. *See, e.g., Grimm*, 972 F.3d 586 at 610–14 (heightened scrutiny applies because transgender people constitute "at least a quasi-suspect class"); *Brandt v. Rutledge*, 21-cv-00450, 2021 WL 3292057, at *2 (E.D. Ark. Aug. 2, 2021) *app. Filed* (same); *Flack v. Wis. Dept. of Health Servs.*, 328 F. Supp. 3d 931, 953 (W.D. Wisc. 2018) ("[O]ne would be hard-pressed to identify a class of people more discriminated against historically or otherwise more deserving of the application of heightened scrutiny when singled out for adverse treatment, than transgender people.").

The undisputed expert testimony also demonstrates that these factors are met. Transgender people have historically been "subjected to discrimination" in all facets of life and that discrimination remains pervasive today. (SOF ¶ 22.) Transgender people are perceived as a discrete group due to their defining characteristic of living in a gender other than that assigned at birth, and have been targeted for discrimination on that basis. (SOF ¶ 21.) This defining characteristic "bears no relation to ability to perform or contribute to society." (SOF ¶ 26.) Finally, transgender people are both "a minority" at approximately 0.58% of the population, and "politically powerless," as seen in their severe underrepresentation in elected office, a recent wave of anti-transgender state legislation, and challenges obtaining statutory protections against pervasive discrimination. (SOF ¶¶ 20, 24–25.)

### B.   The Exclusion Is Not Substantially Related to an Important Government Interest.

Defendants have failed to bear the "demanding" burden of demonstrating that the Exclusion is substantially related to "a sufficiently important governmental interest [to justify its]

discriminatory conduct." *Glenn*, 663 F.3d at 1320 (quoting *Cleburne*, 473 U.S. at 441). *First*, the evidence conclusively demonstrates that removal of the Exclusion would not materially increase Health Plan costs. *Second*, Defendants created their cost defense *post-hoc* in response to this litigation.

      1.   <u>Cost Concerns Cannot Justify the Exclusion.</u>

Here, the only government interest purportedly served by the Exclusion is cost. (SOF ¶¶ 204, 213.) But, "administrative convenience and economic cost-saving are not, by themselves, conclusive justifications for burdening a constitutional right." *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1127 (10th Cir. 2015), *cert. denied*, 136 S. Ct. 1486 (2016) (applying intermediate scrutiny); *see also Frontiero v. Richardson*, 411 U.S. 677, 688–90 (1973) (same under strict scrutiny). Indeed, under any level of scrutiny, a government may not "protect the public fisc by drawing an invidious distinction between classes of its citizens." *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250, 263 (1975); *see also Diaz v. Brewer*, 656 F.3d 1008, 1013 (9th Cir. 2011) ("[W]hen a state chooses to provide [employee health] benefits, it may not do so in an arbitrary or discriminatory manner that adversely affects particular groups that may be unpopular."). Yet the County does just that.

According to the County, its Health Plan offers better benefits than employees would expect in the private sector. (SOF ¶ 73.) The County believes that retaining the Exclusion helps make this financially possible: "Q. Does the County believe that removing the [E]xclusion would cause the health plan to become insolvent . . . that the County wouldn't be able to cover the cost of the health plan[?] A. ***I believe that we would have to make changes. I don't think it's going to do away with the health plan. . . . I mean, we have really good health insurance, and we may have to go back to some of what the private sector has***." (SOF ¶ 80.) In other words, the County does not defend the Exclusion as a matter of necessity, but rather as a subsidy, using the savings

achieved by withdrawing coverage from disfavored individuals—transgender people seeking a "sex change"—to help provide above-average benefits for everybody else. Defendants can do many things to ensure the provision of generous employee benefits, but they cannot institute a sex-based or quasi-suspect classification for that purpose.

Furthermore, under heightened scrutiny, the government's asserted justification must be based on persuasive record evidence; a hypothetical or merely conceivable basis for its actions, which would be adequate to survive rational basis review, is insufficient. *Glenn*, 663 F.3d at 1321. Removing the Exclusion would cost a small fraction of one percent of the Health Plan's annual expenditure. (SOF ¶¶ 222–27) and Defendants' "snowball" cost defense belies common sense and is wholly unsupported by the evidence (SOF ¶¶ 213–21.) A cost justification clearly fails to meet Defendants' "demanding" burden under heightened scrutiny.

2. The Cost Justification Was Invented *Post-Hoc* In Response to Litigation.

Additionally, Defendants' cost justification is plainly "invented *post hoc* in response to litigation." *Virginia*, 518 U.S. at 533. The County admits that it did not consider any cost information about the Exclusion until after it was sued, and did not settle on its current, "snowball" defense until even later that than that—after they had readopted the Exclusion yet one more time in November 2019. (SOF ¶¶ 213 – 15.) And, the Sheriff admits that he never considered costs of the Exclusion. (SOF ¶ 228.)

Defendants' *post-hoc* justification for the Exclusion is plainly a "a "mere pretext[] designed to effect an invidious discrimination." *Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974). This is insufficient to meet its "demanding" burden under heightened scrutiny.

## III.   The Exclusion Violates Title I of the ADA.

Title I of the ADA prohibits employers from discriminating "'against a qualified individual on the basis of a disability' in any of the 'terms, conditions, [or] privileges of employment.'"

*Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1267 (11th Cir. 2014) (quoting 42 U.S.C. § 12112(a)). To establish a *prima facie* case of employment discrimination under Title I, a plaintiff must show that she: (i) is disabled, (ii) is a qualified individual, and (iii) was unlawfully discriminated against because of her disability. *See id.* (citing *Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1255–56 (11th Cir.2007)). Sgt. Lange satisfies this standard. The undisputed evidence establishes that Sgt. Lange (i) has a disability, gender dysphoria; (ii) is capable of performing her job as a law enforcement officer; and (iii) was subjected to unlawful discrimination because of her disability under theories of disparate treatment, disparate impact, and failure to accommodate.

### A.     Sgt. Lange Has a Disability.

There is no dispute that Sgt. Lange has gender dysphoria—a disability, as that term is defined under the ADA. Specifically, the ADA broadly defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual" and also "being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, No. CV 617-100, 2018 WL 6251379, at *4 (S.D. Ga. Nov. 29, 2018) (the "definition of disability is now to be construed in favor of broad coverage of individuals"). Here, Sgt. Lange's gender dysphoria easily satisfies both of these definitions: gender dysphoria is both a physical and mental impairment that substantially limits Sgt. Lange's life activities; and she is regarded as suffering from gender dysphoria. (SOF ¶¶ 5, 6, 31, 268.)

Gender dysphoria is a "physical impairment" because it is a "physiological disorder or condition" "affecting one or more body systems." 29 C.F.R. § 1630.2(h)(1). Specifically, the condition is the result of an atypical interaction of the endocrine system and the neurological system. (SOF ¶ 5.) Gender dysphoria is also unquestionably a mental impairment: it is defined by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-5) as "a difference between one's experienced/expressed gender and assigned gender, and

significant distress or problems functioning." (SOF ¶ 3.) Left untreated, it can lead to clinically significant personal suffering and comorbidities, including anxiety, depression, self-harm, and suicidality (SOF ¶ 6).   And, without adequate treatment, Sgt. Lange's gender dysphoria substantially limits major life activities.   This includes difficulties thinking, concentrating, and interacting with other people, including her spouse, child, and coworkers—this last interfering with her career goals and relationships with colleagues—as well as major bodily functions, such as neurological and brain functions. (SOF ¶ 268.) She feels distress in her own body, and suffers from anxiety, feelings of depression, and sleeplessness. (SOF ¶ 268.)

Sgt. Lange also satisfies the "regarded as" prong because both the County and the Sheriff's Office know that Sgt. Lange has gender dysphoria and, as a result of that disability, she receives lesser benefits under the Health Plan than a member seeking the same care for another condition. (SOF ¶¶ 77, 129); *see also* § 12102(3)(A) (an individual meets the "regarded as" prong if "she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment").

### B.      Sgt. Lange is a Qualified Individual.

Defendants concede that Sgt. Lange is a "qualified individual" under the ADA. A "qualified individual" under the ADA is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also Davis v. Fla. Power & Light Co*., 205 F.3d 1301, 1305 (11th Cir. 2000). There is no dispute that Sgt. Lange is capable of performing her duties as a law enforcement officer (with or without the requested accommodation). (SOF ¶ 28.) Indeed, the County admits that Sgt. Lange "has performed her duties as an investigator very well, before, during and after this process." (SOF ¶ 28.)

### C.        Defendants Discriminated Against Sgt. Lange *Because of* Her Disability.

Under the ADA, a plaintiff may prove that she was discriminated against "because of" her disability by showing: (1) intentional discrimination (disparate treatment); (2) disparate impact; or (3) a failure to make a reasonable accommodation. *See* 42 U.S.C. 12112(b). Here, Sgt. Lange can prove discrimination under each theory. The undisputed evidence shows that (i) Defendants intentionally maintained the Exclusion which, on its face, excludes the only recognized effective treatment for gender dysphoria; (ii) as a result of the Exclusion, Sgt. Lange receives lesser benefits under the Health Plan than her colleagues who do not have gender dysphoria; and (iii) Defendants failed to reasonably accommodate Sgt. Lange's disability, and in fact, made no efforts to engage in the interactive process with Sgt. Lange.

### 1.    Disparate Treatment.

As with Title VII, a plaintiff may demonstrate disparate treatment under Title I of the ADA through direct or circumstantial evidence. *See Enwonwu v. Fulton-Dekalb Hosp. Auth.,* 286 F. App'x 586, 600 (11th Cir. 2008) ("Discrimination claims brought pursuant to the equal protection clause, Title VII, § 1981, and the ADA, have the same requirements of proof and use the same analytical framework."). Here, there is direct evidence of disparate treatment for individuals with gender dysphoria.

The Health Plan violates the ADA because it specifically singles out Sgt. Lange (and others suffering from gender dysphoria) for lesser benefits. Such singling out of a particular disability plainly violates the ADA. *See, e.g., Whitley v. Dr. Pepper Snapple Grp., Inc.*, 4:16-CV-00362, 2017 WL 1739917, at *3–4 (E.D. Tex. May 4, 2017) ("A term or provision in a health insurance plan may violate the ADA if it singles out a particular disability"); U.S. Equal Empl. Opp.

Comm'n, Interim Enforcement Guidance on the application of the ADA to disability-based distinctions in employer-provided health insurance (1993).[16]

Here, Sgt. Lange's medically-necessary surgery, as well as her routine physician visits and bloodwork, would be covered by the Health Plan to treat other conditions, but the Health Plan withdraws coverage of this care because it is for treating gender dysphoria. (SOF ¶ 77.) Singling out a disability, and providing lesser benefits to those with that disability, is direct evidence of an ADA violation. Likewise, Defendants have made numerous statements disparaging her disability and suggesting that it is not a condition requiring or deserving of healthcare. (SOF ¶¶ 14–16, 234, 253, 262.) This, too, is direct evidence.

Defendants contend that there can be no violation of the ADA because Sgt. Lange has the same access to the Health Plan as her colleagues without gender dysphoria. *See* ECF No. 95 at ¶124 (arguing that Sgt. Lange "has access to the same POS Plan as other Sheriff's Office employees and, for that matter, County employees"). This misstates the law: virtually any discriminatory practice could be justified under such logic, and Title I of the ADA would become meaningless. For example, an employer policy that cuts employees' pay in the event that they become disabled could simply argue that this is not discriminatory because all employees are subject to the same policy.

Defendants' argument is also not a correct explanation of how the Exclusion operates. Once it is determined that Sgt. Lange intends to use the Health Plan for treating her specific disability, even for treatments the Health Plan would cover for a different diagnosis, the Exclusion take the Health Plan's coverage away from her. Accordingly, the Exclusion is fundamentally

---

[16] *Available at* https://www.eeoc.gov/laws/guidance/interim-enforcement-guidance-application-ada-disability-based-distinctions-employer.

different than the type of coverage decisions that the Supreme Court determined are outside the scope of the Rehabilitation Act in *Alexander v. Choate*, 469 U.S. 287, 303 (1985) and its progeny. In *Alexander*, the Court held that an across-the-board annual limit on the number of hospital days covered under the plan did not have a disparate impact on people with disabilities in violation of the Rehabilitation Act. *Id*. at 292. In so holding, the Court emphasized that the limitation did "not apply to only particular [disability] and [took] effect regardless of the particular cause of hospitalization," 469 U.S. at 302 n.22. By contrast, the Exclusion applies only to one disability (gender dysphoria) and operates to prevent Sgt. Lange from receiving even coverage for the *very same* treatments available to cisgender plan members for a different diagnosis.

2. Disparate Impact.

"[A] plaintiff makes out an ADA claim of disparate impact discrimination by (1) identifying the challenged employment practice or policy, and pinpointing the employer's use of it; (2) demonstrating an adverse impact on himself or a group that falls within the protections of the ADA; and (3) demonstrating a causal relationship between the challenged practice and the disparate impact." *Allmond v. Akal Sec., Inc.*, No. 4:05-cv-96(HL), 2007 WL 2904023, at *6 (M.D. Ga. Sept. 28, 2007). There is no argument that the Health Plan complies with the ADA simply because it does not mention the disability of "gender dysphoria" by name.  Because the Exclusion has "the effect of discrimination on the basis of [a] disability," 42 U.S.C. § 12112(b)(3)(A), it has a disparate impact on employees with gender dysphoria. It denies coverage of medically necessary care *only* to those with gender dysphoria, who are the only people in need of "sex change" treatments. *See supra* X. In other words, the Exclusion's adverse impact falls *entirely* on individuals with gender dysphoria, and *entirely* because they are seeking treatment for it.  *Id*. This fact alone establishes disparate impact on the basis of gender dysphoria under the ADA.

3.  Failure to Make a Reasonable Accommodation.

The Eleventh Circuit has made clear that "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA[.]" *Holly*, 492 F.3d at 1262. Here, Defendants discriminated against Sgt. Lange *because of* her gender dysphoria when they failed to grant her requests for a reasonable accommodation.

There is no dispute that, after Sgt. Lange's pre-approval for surgery was denied by Anthem in November 2018, Sgt. Lange made a request for a reasonable accommodation on multiple occasions, including:

- Sgt. Lange's counsel's January 6, 2019, letter to Mr. Hall, requesting the County enter into Structured Negotiation to end the Exclusion (SOF ¶ 138);

- Sgt. Lange's counsel's February 4, 2019, follow-up email to Mr. Hall (SOF ¶ 146);

- Sgt. Lange's counsel's February 7, 2019, follow-up email to Mr. Hall (SOF ¶ 148);

- Sgt. Lange's early February, 2019, conversation with Sheriff Talton, in which she informed him she was going to address the upcoming regular Commissioners' meeting to request an accommodation (SOF ¶ 165);[17]

- Sgt. Lange's February 19, 2019, in-person request to the Commissioners, with counsel, to remove the Exclusion (SOF ¶¶ 167–173);

- Sgt. Lange's counsel's September 20, 2019, letter to Mr. Hall, again requesting an accommodation (SOF ¶ 181);

- Sgt. Lange's counsel's February 12, 2020, *ante litem* notice to the Sheriff's Office (SOF ¶ 232).

---

[17]  Sherriff Talton cannot argue that this did not amount to reasonable request for accommodation *to him*. An employer's duty to address an employee's request for accommodation is triggered when an employee "make[s] an adequate request, *thereby putting the employer on notice*." *Williamson v. Clarke Cty. Dep't of Human Res.*, 834 F. Supp. 2d 1310, 1320 (S.D. Ala. 2011) (emphasis added) (reviewing cases); *see also Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1183 (11th Cir. 2005) (ADA employs "actual notice" standard). It is undisputed that since at least February 2019, Sheriff Talton was on actual notice of Sgt. Lange's request to have the Plan changed. (SOF ¶ 165.)

It is undisputed that Defendants denied these requests. (SOF ¶¶ 147, 150, 173, 184.) Defendants' decision not to engage with Sgt. Lange is particularly problematic because the County has granted a similar request on at least one other occasion. (SOF ¶¶ 235-40.)

Defendants believe that Sgt. Lange is not entitled to a reasonable accommodation because she is able to perform the essential functions of her job without the accommodation. (SOF ¶¶ 235–40.) This is wrong as a matter of law. *See Hopman v. Union Pacific Railroad*, 462 F.Supp.3d 913, 925 (E.D. Ark. 2020) (rejecting defendant's argument that plaintiff may only bring a reasonable accommodation claim under the ADA if he is unable to perform the essential functions of his job). In fact, "many courts have recognized, in accordance with the ADA and its implementing regulations, that an employee ably performing the essential functions of [their] job might still need a reasonable accommodation to enjoy equal benefits and privileges of employment." *Id*. at 926 (collecting cases); *see also* 29 C.F.R. § 1630.2(o)(1) (stating that "[t]he term reasonable accommodation means, *inter alia*, "[m]odifications or adjustments to the work environment . . . that enable an individual with a disability who is qualified to perform the essential functions of that position; *or*. . . [m]odifications or adjustments that enable a covered entity's employee with a disability *to enjoy equal benefits and privileges of employment* as are enjoyed by its other similarly situated employees without disabilities") (emphasis added).

The record likewise shows that Defendants cannot prove that granting Sgt. Lange's accommodation would be unduly costly. A request accommodation imposes an "undue hardship' when it "require[es] significantly difficult or expense," as determined by reference to "the nature and cost of the accommodation needed" and "the overall financial resources of the covered entity." 42 U.S.C. § 12111(10).  "[U]ndue hardship is an affirmative defense to be pled and proven by an ADA defendant." *Willis v. Conopco, Inc*., 108 F.3d 282, 286 (11th Cir. 1997).  Where the cost of

covering Sgt. Lange's surgery would be minimal, at a small fraction of one percent of the Health Plans annual expenditure (SOF ¶¶ 222–27), and where Defendants' "snowball" defense fails common sense and is belied by the record (SOF ¶¶ 213–21), Defendants have not carried their burden.

## IV.    Sgt. Lange Is Entitled to Injunctive Relief.

"To obtain a permanent injunction, a plaintiff must show (1) that he has suffered an irreparable injury; (2) that his remedies at law are inadequate; (3) that the balance of hardships weighs in his favor; and (4) that a permanent injunction would not disserve the public interest." *Barrett v. Walker County Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017). Title VII and the ADA both require injunctive relief against ongoing employment discrimination, 42 U.S.C. §§ 2000e-5(g)(1), 12117(a); *Intl. Broth. of Teamsters v. U.S.*, 431 U.S. 324, 364–65 (1977). Indeed, "district courts have not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *id.* (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 421 (1975)).

Sgt. Lange has satisfied these four factors. Her injury is irreparable and ongoing, as she is being denied needed medical care and is suffering ongoing symptoms as a result. (SOF ¶¶ 263–68.) Her remedy at law is inadequate, precisely because Defendants' discrimination is ongoing—in addition to her untreated medical condition, she is also constantly accruing additional denials of care and thus new injuries whose present monetary value cannot be known. (SOF ¶ 266.) The remaining equitable factors—the balance of hardships and the public interest—merge with the merits both as to Sgt. Lange's statutory claims, which require injunction of ongoing violations, and as to her constitutional claim, *see Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338–39 (5th Cir. 1981) (a ruling for plaintiffs on the merits under intermediate scrutiny by definition means "the justifications offered for defendants' actions do not outweigh the harm to

plaintiffs" and the government's asserted interest "does not extend so far as to allow … interfere[nce] with the exercise of fundamental rights").

## V.    The Sheriff's Office Is Not Entitled to Sovereign Immunity.

The Eleventh Circuit "uses four factors to determine whether an entity is an 'arm of the state' in carrying out a particular function: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders v. Lee*, 338 F.3d 1304, 1308–09 (11th Cir. 2003). The fourth is the weightiest. *Freyre v. Chronister*, 910 F.3d 1371, 1384 (11th Cir. 2018).

This Court has explained that "under Eleventh Circuit law, the first factor supports a conclusion that the Sheriff's Office was acting as an arm of the state, the second and fourth support a conclusion that it was not acting as an arm of the state, and the third does not support either conclusion." *Lange*, 499 F. Supp. 3d at 1269. The Sheriff's Office can point to no evidence that would alter this analysis. To the contrary, the Sheriff's Office admits that "the state of Georgia does not exercise control over the terms or conditions of the Health Plan" and that "the State of Georgia does not fund the Health Plan." (SOF ¶¶ 65–66.)

## CONCLUSION

For all the foregoing reasons, the Court should grant Sgt. Lange's motion for summary judgment.

39

Respectfully submitted this 3rd day of November, 2021.

_/s/_  Wesley R. Powell
Wesley R. Powell*
Jill K. Grant*
Catherine E. Fata*
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 tel.
(212) 728-8111 fax
wpowell@willkie.com
jgrant@willkie.com
cfata@willkie.com

Kenneth E. Barton III
Ga. State Bar No. 301171
M. Devlin Cooper
Ga. State Bar No. 142447
COOPER, BARTON & COOPER
170 College Street
Macon, GA 31201
(478) 841-9007 tel.
(478) 841-9002 fax
keb@cooperbarton.com
mdc@cooperbarton.com

*Admitted _pro hac vice_.

David Brown*
Gabriel Arkles*
TRANSGENDER LEGAL DEFENSE EDUCATION
FUND, INC.
520 8th Ave. Ste. 2204
New York, NY 10018
(646) 862-9396 tel.
(646) 993-1686 fax
dbrown@transgenderlegal.org
garkles@transgenderlegal.org

Kevin M. Barry*
QUINNIPIAC UNIVERSITY SCHOOL OF LAW
LEGAL CLINIC
275 Mount Carmel Ave.
Hamden, CT 06518
(203) 582-3238 tel.
(203) 582-3237 fax
legalclinic@quinnipiac.edu

_Attorneys for Plaintiff_