

# U.S. District Court [LIVE AREA]
## Middle District of Georgia (Macon)
## CIVIL DOCKET FOR CASE #: 5:19-cv-00392-MTT

LANGE v. HOUSTON COUNTY, GEORGIA et al
Assigned to: CHIEF DISTRICT JUDGE MARC T TREADWELL
Case in other court:  US Court of Appeals, 22-13626-DD
Cause: 42:1983 Civil Rights (Employment Discrimination)

Date Filed: 10/02/2019
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**ANNA LANGE**                              represented by   **KENNETH E BARTON , III**
170 COLLEGE ST
MACON, GA 31201
478-841-9007
Fax: 4788419002
Email: keb@cooperbarton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ALEJANDRA CARABALLO**
520 8TH AVE
STE 2204
NEW YORK, NY 10018
646-993-1676
Fax: 646-993-1686
Email: acaraballo@transgenderlegal.org
*TERMINATED: 08/16/2021*

**AMANDA MARIE PAYNE**
787 7TH AVE
NEW YORK, NY 10019
212-728-3781
Email: apayne@willkie.com
*ATTORNEY TO BE NOTICED*

**CATHERINE FATA**
787 SEVENTH AVE
NEW YORK, NY 10019-6099
212-728-8563
Email: cfata@willkie.com
*ATTORNEY TO BE NOTICED*

**DAVID BROWN**
520 8TH AVE
STE 2204
NEW YORK, NY 10018
646-862-9396
Email: dbrown@transgenderlegal.org
*ATTORNEY TO BE NOTICED*

**JILL K GRANT**
787 SEVENTH AVENUE
NEW YORK, NY 10019-6099
212-728-8774
Email: jgrant@willkie.com
*ATTORNEY TO BE NOTICED*

**KEVIN BARRY**
275 MT CARMEL AVE
HAMDEN, CT 06518
203-582-3238
Email: legalclinic@quinnipiac.edu
*ATTORNEY TO BE NOTICED*

**MARY EATON**
601 LEXINGTON AVE
STE 31ST FL
NEW YORK, NY 10022
212-277-4000
Email: mary.eaton@freshfields.com
*TERMINATED: 08/15/2022*
*ATTORNEY TO BE NOTICED*

**MICHAEL DEVLIN COOPER**
170 COLLEGE ST
MACON, GA 31201
478-841-9007
Fax: 478-841-9002
Email: mdc@cooperbarton.com
*ATTORNEY TO BE NOTICED*

**NOAH E LEWIS**
223-241 WEST 38TH STREET
PO BOX 1094
NEW YORK, NY 10018
(646) 862-9396
Fax: (646) 930-5654
Email: nlewis@transgenderlegal.org
*TERMINATED: 08/31/2021*
*ATTORNEY TO BE NOTICED*

**NOAH ETHAN LEWIS**
520 8TH AVE
STE 2204
NEW YORK, NY 10018
646-862-9396
Fax: 646-993-1686
Email: nlewis@transgenderlegal.org
*TERMINATED: 08/31/2021*
*ATTORNEY TO BE NOTICED*

**SARAH MATLACK WASTLER**
1875 K ST NW
WASHINGTON, DC 20006-1238
202-303-1257

Fax: 202-303-2257
Email: swastler@willkie.com
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**WESLEY POWELL**
787 SEVENTH AVE
NEW YORK, NY 10019
212-728-8264
Email: wpowell@willkie.com
*ATTORNEY TO BE NOTICED*

**Z GABRIEL ARKLES**
520 8TH AVE
STE 2204
NEW YORK, NY 10004
646-993-1688
Email: garkles@transgenderlegal.org
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**HOUSTON COUNTY GEORGIA**                    represented by

**SHARON P MORGAN**
229 PEACHTREE ST NE STE 800
ATLANTA, GA 30303
404-659-6700
Email: morgan@elarbeethompson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
229 PEACHTREE ST NE
800 INTERNATIONAL TOWER
ATLANTA, GA 30303
404-582-8428
Fax: 404-222-9718
Email: lail@elarbeethompson.com
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
Elarbee, Thompson LLP
229 Peachtree Street, N.E.
800 International Tower
Atlanta, GA 30303
404-659-6700
Fax: (404) 222-9718
Email: gignilli@elarbeethompson.com
*ATTORNEY TO BE NOTICED*

**WILLIAM DRUMMOND DEVENEY**
229 Peachtree Street, N.E.
800 International Tower
Atlanta, GA 30303
404-659-6700

**Defendant**

**HOUSTON COUNTY BOARD OF COMMISSIONERS**
*TERMINATED: 08/20/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Commissioner TOMMY STALNAKER**
*Houston County, In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**H. JAY WALKER, III**
*In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GAIL ROBINSON**
*In her individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LARRY THOMSON**
*In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TOM MCMICHAEL**
*In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BARRY HOLLAND**
*In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROBBIE DUNBAR**
*In his official and individual capacity*
*TERMINATED: 04/13/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**KENNETH CARTER**
*Director of Personnel at Houston County, In his individual capacity*
*TERMINATED: 10/30/2020*

represented by **SHARON P MORGAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PATRICK L LAIL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sheriff CULLEN TALTON**
*in his Official Capacity*

represented by **PATRICK L LAIL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**RICHARD READ GIGNILLIAT**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**SHARON P MORGAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**WILLIAM DRUMMOND DEVENEY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC**

represented by **JAMES MITCHELL FUCETOLA , IV**
30 IVAN ALLEN JR BLVD NW
STE 700
ATLANTA, GA 30308
404-962-3511
Fax: 404-261-3556
Email: mfucetola@balch.com
*ATTORNEY TO BE NOTICED*

**T JOSHUA ARCHER**
30 IVAN ALLEN JR BLVD NW STE 700
ATLANTA, GA 30308-3036
404-261-6020
Email: jarcher@balch.com
*ATTORNEY TO BE NOTICED*

**TYLER P BISHOP**
3414 PEACHTREE RD NE
STE 1500
ATLANTA, GA 30326
404-589-3410
Email: tbishop@bakerdonelson.com
*TERMINATED: 09/12/2022*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/02/2019 | 1 | **COMPLAINT** against All Defendants Fee paid: Receipt # AGAMDC-3277783, $400 filed by All Plaintiffs (Attachments: # 1 Exhibit Ex. A EEOC Right to Sue, # 2 Civil Cover Sheet Civil Cover Sheet, # 3 Summons Houston County Summons, # 4 Summons Board of Commissioners Summons, # 5 Summons Stalnaker Summons, # 6 Summons Walker Summons, # 7 Summons Robinson Summons, # 8 Summons Thomson Summons, # 9 Summons McMichael Summons, # 10 Summons Holland Summons, # 11 Summons Dunbar Summons, # 12 Summons Carter Summons)(BARTON, KENNETH) (Entered: 10/02/2019) |
| 10/02/2019 | | NOTICE TO COUNSEL WESLEY POWELL, MARY EATON, JILL K GRANT, DAVID BROWN, NOAH E LEWIS, KEVIN M BARRY - Counsel is notified that they do not show in the court records that they meet the required attorney admissions policies of this court. If within 14 days of this notice all requirements, including the payment of Pro Hac Vice or admissions fees, have not been met, a show cause hearing will be scheduled. (vs) (Entered: 10/02/2019) |
| 10/02/2019 | 2 | Summons Issued as to KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III. (Attachments: # 1 Summons Robbie Dunbar, # 2 Summons Barry Holland, # 3 Summons Tom McMichael, # 4 Summons Larry Thomson, # 5 Summons Gail Robinson, # 6 Summons H. Jay Walker, # 7 Summons Tommy Stalnaker, # 8 Summons Houston County, Georgia, # 9 Summons Houston County Board of Commissioners)(vs) (Entered: 10/02/2019) |
| 10/02/2019 | 3 | Consent Form (28 USC 636(c)(1)) sent to ANNA LANGE (vs) (Entered: 10/02/2019) |
| 10/09/2019 | 4 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3283244, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing SDNY Cert. Good Standing) (LEWIS, NOAH) (Entered: 10/09/2019) |
| 10/09/2019 | 5 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by NOAH E LEWIS (nop) (Entered: 10/09/2019) |
| 10/14/2019 | 6 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3286675, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III; State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(EATON, MARY) (Entered: 10/14/2019) |
| 10/14/2019 | 7 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3286679, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III; State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(GRANT, JILL) (Entered: 10/14/2019) |
| 10/15/2019 | 8 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3287156, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State |

| | | |
|---|---|---|
| | | Bar No. 301171. (Attachments: # 1 Certificate of Good Standing D.Conn. Cert. Good Standing) (BARRY, KEVIN) (Entered: 10/15/2019) |
| 10/15/2019 | 9 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3287634, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III; State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(POWELL, WESLEY) (Entered: 10/15/2019) |
| 10/16/2019 | 10 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by MARY EATON (ans) (Entered: 10/16/2019) |
| 10/16/2019 | 11 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by JILL K GRANT (ans) (Entered: 10/16/2019) |
| 10/16/2019 | 12 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by KEVIN BARRY (ans) (Entered: 10/16/2019) |
| 10/16/2019 | 13 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by WESLEY POWELL (ans) (Entered: 10/16/2019) |
| 10/28/2019 | 14 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3299956, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III, Ga. State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing District of North Dakota) (BROWN, DAVID) (Entered: 10/28/2019) |
| 10/30/2019 | 15 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by DAVID BROWN (nop) (Entered: 10/30/2019) |
| 11/01/2019 | 16 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to TOM MCMICHAEL (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 17 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to KENNETH CARTER (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 18 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to TOMMY STALNAKER (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 19 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to GAIL ROBINSON (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 20 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to H. JAY WALKER, III (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 21 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to ROBBIE DUNBAR (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 22 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to LARRY THOMPSON (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 23 | WAIVER OF SERVICE Returned Executed by ANNA LANGE. as to BARRY HOLLAND (BARTON, KENNETH) (Entered: 11/01/2019) |
| 11/01/2019 | 24 | STIPULATION *AND ACKNOWLEDGMENT OF SERVICE OF PROCESS* by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III (MORGAN, SHARON) (Entered: 11/01/2019) |
| 11/01/2019 | 25 | NOTICE of Attorney Appearance by Patrick L. Lail on behalf of All Defendants Attorney Patrick L. Lail added to party KENNETH CARTER(pty:dft), Attorney Patrick L. Lail added to party ROBBIE DUNBAR(pty:dft), Attorney Patrick L. Lail added to party BARRY |

| | | |
|---|---|---|
| | | HOLLAND(pty:dft), Attorney Patrick L. Lail added to party HOUSTON COUNTY BOARD OF COMMISSIONERS(pty:dft), Attorney Patrick L. Lail added to party HOUSTON COUNTY, GEORGIA(pty:dft), Attorney Patrick L. Lail added to party TOM MCMICHAEL(pty:dft), Attorney Patrick L. Lail added to party GAIL ROBINSON(pty:dft), Attorney Patrick L. Lail added to party TOMMY STALNAKER(pty:dft), Attorney Patrick L. Lail added to party LARRY THOMPSON(pty:dft), Attorney Patrick L. Lail added to party H. JAY WALKER, III(pty:dft) (Lail, Patrick) (Entered: 11/01/2019) |
| 11/01/2019 | 26 | NOTICE of Attorney Appearance by RICHARD READ GIGNILLIAT on behalf of All Defendants Attorney RICHARD READ GIGNILLIAT added to party KENNETH CARTER(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party ROBBIE DUNBAR(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party BARRY HOLLAND(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party HOUSTON COUNTY BOARD OF COMMISSIONERS(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party HOUSTON COUNTY, GEORGIA(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party TOM MCMICHAEL(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party GAIL ROBINSON(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party TOMMY STALNAKER(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party LARRY THOMPSON(pty:dft), Attorney RICHARD READ GIGNILLIAT added to party H. JAY WALKER, III(pty:dft) (GIGNILLIAT, RICHARD) (Entered: 11/01/2019) |
| 11/01/2019 | 27 | NOTICE of Attorney Appearance by SHARON P MORGAN on behalf of All Defendants Attorney SHARON P MORGAN added to party KENNETH CARTER(pty:dft), Attorney SHARON P MORGAN added to party ROBBIE DUNBAR(pty:dft), Attorney SHARON P MORGAN added to party BARRY HOLLAND(pty:dft), Attorney SHARON P MORGAN added to party HOUSTON COUNTY BOARD OF COMMISSIONERS(pty:dft), Attorney SHARON P MORGAN added to party HOUSTON COUNTY, GEORGIA(pty:dft), Attorney SHARON P MORGAN added to party TOM MCMICHAEL(pty:dft), Attorney SHARON P MORGAN added to party GAIL ROBINSON(pty:dft), Attorney SHARON P MORGAN added to party TOMMY STALNAKER(pty:dft), Attorney SHARON P MORGAN added to party LARRY THOMPSON(pty:dft), Attorney SHARON P MORGAN added to party H. JAY WALKER, III(pty:dft) (MORGAN, SHARON) (Entered: 11/01/2019) |
| 11/22/2019 | 28 | MOTION for Preliminary Injunction by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Brief in Supp. of Motion for Injunction, # 2 Exhibit Lange Declaration, # 3 Exhibit Bluebond-Langner Declaration, # 4 Exhibit Lewis Declaration, # 5 Exhibit Schechter Declaration)(BARTON, KENNETH) (Entered: 11/22/2019) |
| 11/26/2019 | | NOTICE OF **SETTING** TELEPHONE CONFERENCE: Telephone Conference set for 12/5/2019 at 10:00 AM in Macon before US DISTRICT JUDGE MARC THOMAS TREADWELL. Call-in instructions emailed to the parties. (kat) (Entered: 11/26/2019) |
| 12/03/2019 | 29 | MOTION to Dismiss Complaint re 1 Complaint by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III filed by SHARON P MORGAN. (Attachments: # 1 Memorandum in Support) (MORGAN, SHARON) Modified on 12/4/2019 to edit docket text (vs). (Entered: 12/03/2019) |
| 12/03/2019 | 30 | ANSWER to Complaint by HOUSTON COUNTY, GEORGIA. (Attachments: # 1 Exhibit A - 2019 POS Plan, # 2 Exhibit B - EEOC FOIA File)(MORGAN, SHARON) Modified on 12/4/2019 to edit docket text (vs). (Entered: 12/03/2019) |
| 12/03/2019 | 31 | MOTION for Judgment on the Pleadings by HOUSTON COUNTY, GEORGIA filed by SHARON P MORGAN. (Attachments: # 1 Memorandum in Support)(MORGAN, SHARON) (Entered: 12/03/2019) |
| 12/05/2019 | 32 | Minute Entry for proceedings held before US DISTRICT JUDGE MARC THOMAS TREADWELL: Telephone Conference held on 12/5/2019. Court Reporter: Darlene Fuller. (kat) |

| | | |
|---|---|---|
| | | (Entered: 12/05/2019) |
| 12/11/2019 | 33 | Letter regarding Request of 7-day extension to file Defendants' Response to Plaintiff's Motion for Preliminary Injunction re 28 MOTION for Preliminary Injunction (MORGAN, SHARON) (Entered: 12/11/2019) |
| 12/12/2019 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 28 MOTION for Preliminary Injunction filed by ANNA LANGE (vs) (Entered: 12/12/2019) |
| 12/14/2019 | 34 | UNOPPOSED MOTION for Extension of Time to File RESPONSE as to 31 MOTION for Judgment on the Pleadings, 29 MOTION to Dismiss Complaint re 1 Complaint,, :MOTION to Dismiss Complaint, 28 MOTION for Preliminary Injunction by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 12/14/2019) |
| 12/17/2019 | 35 | **ORDER** GRANTING 34 Motion for Extension of Time to File Reply for 34 Plaintiff's motion for preliminary injunction, Response for 29 Defendants' motion to dismiss complaint, and Response for 31 Defendant's motion for judgment on the pleadings. Plaintiff shall have until January 14, 2020 to file the briefs. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 12/17/2019. (kat) (Entered: 12/17/2019) |
| 12/20/2019 | 36 | RESPONSE filed by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III re 28 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit 1 - Declaration of Kenneth Carter)(GIGNILLIAT, RICHARD) (Entered: 12/20/2019) |
| 01/06/2020 | 37 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3354423, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(WASTLER, SARAH) (Entered: 01/06/2020) |
| 01/06/2020 | 38 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by SARAH MATLACK WASTLER (nop) (Entered: 01/06/2020) |
| 01/09/2020 | 39 | UNOPPOSED MOTION for Leave to File Excess Pages for Motions to Dismiss and for Judgment on the Pleadings by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 01/09/2020) |
| 01/10/2020 | 40 | This is a text only entry; no document issued. **ORDER** GRANTING 39 Motion for Leave to File Omnibus Response and to Extend Page Limits. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 1/10/2020. (wbm) (Entered: 01/10/2020) |
| 01/14/2020 | 41 | RESPONSE filed by ANNA LANGE re 31 MOTION for Judgment on the Pleadings, 29 MOTION to Dismiss Complaint re 1 Complaint,, :MOTION to Dismiss Complaint (BARTON, KENNETH) (Entered: 01/14/2020) |
| 01/14/2020 | 42 | REPLY to Response filed by ANNA LANGE re 28 MOTION for Preliminary Injunction (BARTON, KENNETH) (Entered: 01/14/2020) |
| 01/21/2020 | 43 | TRANSCRIPT of Telephone Conference held on 12/05/2019, before Judge Marc T. Treadwell. Court Reporter Darlene D. Fuller. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (ddf) (Entered: 01/21/2020) |
| 01/23/2020 | 44 | Letter regarding Request of 14-day extension to file Defendants' Reply in Support of their Motion to Dismiss and Defendant Houston County's Reply in Support of its Motion for Judgment on the Pleadings re 31 MOTION for Judgment on the Pleadings, 29 MOTION to |

| | | |
|---|---|---|
| | | Dismiss Complaint re 1 Complaint,, :MOTION to Dismiss Complaint (MORGAN, SHARON) (Entered: 01/23/2020) |
| 01/23/2020 | 45 | MOTION for Hearing re Motion for Preliminary Injunction re 36 Response to Motion, 43 Transcript of Proceedings, 28 MOTION for Preliminary Injunction (COOPER, MICHAEL) Modified on 1/24/2020 to change event type (vs). (Entered: 01/23/2020) |
| 01/24/2020 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 31 MOTION for Judgment on the Pleadings filed by HOUSTON COUNTY, GEORGIA (vs) (Entered: 01/24/2020) |
| 01/30/2020 | 46 | Letter from Judge Treadwell regarding pending motions. (kat) (Entered: 01/30/2020) |
| 02/06/2020 | 47 | UNOPPOSED MOTION for Leave to File Excess Pages for Defendants' Reply in Support of their Motion to Dismiss and Defendants' Reply in Support of their Motion for Judgment on the Pleadings by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, LARRY THOMPSON, H. JAY WALKER, III filed by SHARON P MORGAN.(MORGAN, SHARON) (Entered: 02/06/2020) |
| 02/07/2020 | 48 | This is a text only entry; no document issued. **ORDER** GRANTING 47 Motion for Leave to File Excess Pages. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 2/7/2020. (wbm) (Entered: 02/07/2020) |
| 02/11/2020 | 49 | REPLY to Response filed by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, TOM MCMICHAEL, GAIL ROBINSON re 29 MOTION to Dismiss Complaint re 1 Complaint,, :MOTION to Dismiss Complaint (MORGAN, SHARON) (Entered: 02/11/2020) |
| 02/11/2020 | 50 | REPLY to Response filed by HOUSTON COUNTY, GEORGIA re 31 MOTION for Judgment on the Pleadings (MORGAN, SHARON) (Entered: 02/11/2020) |
| 02/12/2020 | 51 | Letter regarding Intention to File Motion for Leave to Amend Complaint (POWELL, WESLEY) (Entered: 02/12/2020) |
| 02/26/2020 | 52 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by All Plaintiffs Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3401421, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III 301171. (Attachments: # 1 Certificate of Good Standing)(CARABALLO, ALEJANDRA) (Entered: 02/26/2020) |
| 02/27/2020 | 53 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by ALEJANDRA CARABALLO (nop) (Entered: 02/27/2020) |
| 03/23/2020 | 54 | **ORDER** STAYING pending motions 28 MOTION for Preliminary Injunction; 29 MOTION to Dismiss Complaint; 31 MOTION for Judgment on the Pleadings, and 45 MOTION for Hearing until the Plaintiff's motion to amend is resolved. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 3/23/2020. (kat) (Entered: 03/23/2020) |
| 04/10/2020 | 55 | STIPULATION *Regarding Amended Complaint, Motion for Preliminary Injunction and Dispositive Motions* re 29 MOTION to Dismiss Complaint re 1 Complaint,, :MOTION to Dismiss Complaint, 28 MOTION for Preliminary Injunction by ANNA LANGE (BARTON, KENNETH) (Entered: 04/10/2020) |
| 04/10/2020 | 56 | AMENDED 1 Complaint,, against All Defendants by ANNA LANGE (BARTON, KENNETH) (Entered: 04/10/2020) |
| 04/10/2020 | 57 | MOTION for Preliminary Injunction by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Brief in Support of Motion, # 2 Exhibit Lange Declaration, # 3 Exhibit Lewis Declaration, # 4 Exhibit Schechter Declaration, # 5 Exhibit Bluebond-Langer Declaration)(BARTON, KENNETH) (Entered: 04/10/2020) |

| | | |
|---|---|---|
| 04/28/2020 | 58 | Letter regarding extension of time to file Defendants' Response to Plaintiff's Superseding Motion for Preliminary Injunction re 57 MOTION for Preliminary Injunction (MORGAN, SHARON) (Entered: 04/28/2020) |
| 04/28/2020 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 57 MOTION for Preliminary Injunction filed by ANNA LANGE (vs) (Entered: 04/28/2020) |
| 05/06/2020 | 59 | UNOPPOSED MOTION for Leave to File Excess Pages for Defendants' Brief in Support of their Motion to Dismiss by KENNETH CARTER, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III filed by SHARON P MORGAN.(MORGAN, SHARON) (Entered: 05/06/2020) |
| 05/08/2020 | 60 | This is a text only entry; no document issued. **ORDER** GRANTING 59 Motion for Leave to File Excess Pages. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 5/8/2020. (wbm) (Entered: 05/08/2020) |
| 05/11/2020 | 61 | MOTION to Dismiss for Lack of Jurisdiction by CULLEN TALTON filed by SHARON P MORGAN. (Attachments: # 1 Memorandum in Support)(MORGAN, SHARON) (Entered: 05/11/2020) |
| 05/11/2020 | 62 | MOTION to Dismiss Complaint re 56 Amended Complaint/Petition : by KENNETH CARTER, ROBBIE DUNBAR, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III filed by SHARON P MORGAN. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A - 2019 POS Plan)(MORGAN, SHARON) (Entered: 05/11/2020) |
| 05/15/2020 | 63 | RESPONSE filed by KENNETH CARTER, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III re 57 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit 1 - Declaration of Kenneth Carter)(MORGAN, SHARON) (Entered: 05/15/2020) |
| 05/22/2020 | 64 | UNOPPOSED MOTION to Amend/Correct 57 MOTION for Preliminary Injunction by ANNA LANGE filed by DAVID BROWN. (Attachments: # 1 Affidavit Corrected Declaration of Sgt. Lange)(BROWN, DAVID) (Entered: 05/22/2020) |
| 05/26/2020 | 65 | This is a text only entry; no document issued. **ORDER** GRANTING 64 Motion to Amend/Correct. The Defendants shall have 7 days to file an amended response brief. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 5/26/2020. (wbm) (Entered: 05/26/2020) |
| 05/26/2020 | 66 | EXHIBIT(S) *Corrected Declaration with Exhibits* by ANNA LANGE re 65 Order on Motion to Amend/Correct, (BARTON, KENNETH) (Entered: 05/26/2020) |
| 05/26/2020 | 67 | Letter regarding Request of 14-day extension to file Plaintiffs Responses re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition :, 61 MOTION to Dismiss for Lack of Jurisdiction (WASTLER, SARAH) (Entered: 05/26/2020) |
| 05/27/2020 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition : filed by HOUSTON COUNTY BOARD OF COMMISSIONERS, BARRY HOLLAND, TOM MCMICHAEL, KENNETH CARTER, LARRY THOMSON, H. JAY WALKER, III, GAIL ROBINSON, ROBBIE DUNBAR, HOUSTON COUNTY, GEORGIA, TOMMY STALNAKER, CULLEN TALTON, 61 MOTION to Dismiss for Lack of Jurisdiction filed by CULLEN TALTON (vs) (Entered: 05/27/2020) |
| 06/02/2020 | 68 | DEFENDANTS' AMENDED RESPONSE in Opposition to Plaintiff's Superseding Motion for a Preliminary Injunction filed by KENNETH CARTER, BARRY HOLLAND, HOUSTON |

| | | |
|---|---|---|
| | | COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III re 57 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit 1 - Declaration of Kenneth Carter)(MORGAN, SHARON) Modified on 6/3/2020 to add docket text(vs). (Entered: 06/02/2020) |
| 06/10/2020 | 69 | UNOPPOSED MOTION for Leave to File Excess Pages for Response to Defendants' Motions to Dismiss by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 06/10/2020) |
| 06/10/2020 | | NOTICE OF SETTING HEARING ON MOTION re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition, and 61 MOTION to Dismiss for Lack of Jurisdiction: Motion Hearing set for 8/10/2020 at 2:00 PM in Macon before CHIEF US DISTRICT JUDGE MARC THOMAS TREADWELL. Hearing will occur via **VIDEOCONFERENCE** . Counsel will receive connection information by separate email. Interested parties may obtain dial information by emailing macon.ecf@gamd.uscourts.gov. (kat) Text modified on 7/28/2020 to include videoconference language(kat). (Entered: 06/10/2020) |
| 06/11/2020 | 70 | This is a text only entry; no document issued. **ORDER** GRANTING 69 Motion for Leave to File Excess Pages. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 6/11/2020. (wbm) (Entered: 06/11/2020) |
| 06/15/2020 | 71 | EMERGENCY MOTION for Extension of Time to File RESPONSE as to 57 MOTION for Preliminary Injunction, 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition :, 61 MOTION to Dismiss for Lack of Jurisdiction by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 06/15/2020) |
| 06/15/2020 | 72 | This is a text only entry; no document issued. **ORDER** GRANTING 71 Emergency Unopposed Motion for Extension of Time to File RESPONSE re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition, 57 MOTION for Preliminary Injunction, and 61 MOTION to Dismiss for Lack of Jurisdiction. Plaintiff shall have through and including 6/18/2020 to respond. Ordered by US DISTRICT JUDGE MARC THOMAS TREADWELL on 6/15/2020. (kat) (Entered: 06/15/2020) |
| 06/18/2020 | 73 | REPLY to Response filed by ANNA LANGE re 57 MOTION for Preliminary Injunction (Attachments: # 1 Exhibit Ex 1 EEOC Interim Enforcement Guidance on application of ADA, # 2 Exhibit Ex 2 Notice of Claim Sheriff Talton)(BARTON, KENNETH) (Entered: 06/18/2020) |
| 06/18/2020 | 74 | RESPONSE filed by ANNA LANGE re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition :, 61 MOTION to Dismiss for Lack of Jurisdiction (Attachments: # 1 Exhibit Ex. A Demonstrative Chart)(BARTON, KENNETH) (Entered: 06/18/2020) |
| 06/25/2020 | 75 | Letter regarding Request of 14-day extension to file Defendant Talton's' Reply in Support of his Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Defendants' Reply in Support of their Motion to Dismiss Amended Complaint re 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition :, 61 MOTION to Dismiss for Lack of Jurisdiction (MORGAN, SHARON) (Entered: 06/25/2020) |
| 06/25/2020 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 75 Letter, 62 MOTION to Dismiss Complaint re 56 Amended Complaint/Petition : filed by HOUSTON COUNTY BOARD OF COMMISSIONERS, BARRY HOLLAND, TOM MCMICHAEL, KENNETH CARTER, LARRY THOMSON, H. JAY WALKER, III, GAIL ROBINSON, ROBBIE DUNBAR, HOUSTON COUNTY, GEORGIA, TOMMY STALNAKER, CULLEN TALTON, 61 MOTION to Dismiss for Lack of Jurisdiction filed by CULLEN TALTON () (tam) (Entered: 06/25/2020) |
| 07/10/2020 | 76 | UNOPPOSED MOTION for Leave to File Excess Pages for Defendants' Reply Brief of their Rule 12(b)(6) Motion to Dismiss and Defendant Talton's Reply Brief in Support of his Rule 12(b)(1) Motion to Dismiss by KENNETH CARTER, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM |

| | | |
|---|---|---|
| | | MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III filed by SHARON P MORGAN.(MORGAN, SHARON) (Entered: 07/10/2020) |
| 07/13/2020 | 77 | This is a text only entry; no document issued. **ORDER** GRANTING [76] Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 7/13/2020. (wbm) (Entered: 07/13/2020) |
| 07/16/2020 | 78 | Motion for hearing/Letter regarding oral argument for PI motion (WASTLER, SARAH) Modified on 7/17/2020 to edit docket text(vs). (Entered: 07/16/2020) |
| 07/16/2020 | 79 | REPLY to Response filed by KENNETH CARTER, BARRY HOLLAND, HOUSTON COUNTY BOARD OF COMMISSIONERS, HOUSTON COUNTY, GEORGIA, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III re [62] MOTION to Dismiss Complaint re [56] Amended Complaint/Petition : (MORGAN, SHARON) (Entered: 07/16/2020) |
| 07/16/2020 | 80 | REPLY to Response filed by CULLEN TALTON re [61] MOTION to Dismiss for Lack of Jurisdiction (MORGAN, SHARON) (Entered: 07/16/2020) |
| 08/05/2020 | | AMENDED NOTICE OF **RESETTING** HEARING ON MOTION re [62] MOTION to Dismiss Complaint re [56] Amended Complaint/Petition, [61] MOTION to Dismiss for Lack of Jurisdiction. Motion Hearing PREVIOUSLY set for 8/10/2020 is RESET for 8/19/2020 at 2:00 PM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will be convened in court. Counsel shall appear via **VIDEOCONFERENCE**. Counsel will receive connection information by separate email. For telephonic access, contact macon.ecf@gamd.uscourts.gov.(kat) Text modified on 8/10/2020 (kat). (Entered: 08/05/2020) |
| 08/11/2020 | 81 | UNOPPOSED MOTION for Leave to File Surreply by ANNA LANGE filed by DAVID BROWN.(BROWN, DAVID) (Entered: 08/11/2020) |
| 08/11/2020 | 82 | This is a text only entry; no document issued. **ORDER** GRANTING [81] Motion for Leave to File Surreply. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/11/2020. (wbm) (Entered: 08/11/2020) |
| 08/14/2020 | 83 | SURREPLY filed by ANNA LANGE re [62] MOTION to Dismiss Complaint re [56] Amended Complaint/Petition :, [61] MOTION to Dismiss for Lack of Jurisdiction (BROWN, DAVID) (Entered: 08/14/2020) |
| 08/20/2020 | 84 | **ORDER**. The official-capacity claims against Defendants Stalnaker, Walker, Robinson, Thomson, McMichael, Holland, Carter, and the Houston County Board of Commissioners, are DISMISSED without prejudice as redundant of the claims against the County. If discovery reveals that any of those claims are not redundant, Plaintiff may amend her complaint to add the claims back in. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/20/2020. (kat) (Entered: 08/20/2020) |
| 08/21/2020 | 85 | NOTICE of Statement of Authorities by ANNA LANGE re [74] Response to Motion (WASTLER, SARAH) (Entered: 08/21/2020) |
| 08/26/2020 | 86 | NOTICE Defendants' Statement of Additional Authorities by KENNETH CARTER, BARRY HOLLAND, TOM MCMICHAEL, GAIL ROBINSON, TOMMY STALNAKER, CULLEN TALTON, LARRY THOMSON, H. JAY WALKER, III re [62] MOTION to Dismiss Complaint re [56] Amended Complaint/Petition : (Attachments: # [1] Exhibit 1 Childs v Macon-Bibb County Ind'l Auth., # [2] Exhibit 2 Zimmerman v. Cherokee County)(MORGAN, SHARON) (Entered: 08/26/2020) |
| 08/28/2020 | 87 | Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Motion Hearing held on 8/19/2020 re [61] MOTION to Dismiss for Lack of Jurisdiction filed by CULLEN TALTON; and [62] MOTION to Dismiss Complaint re [56] Amended Complaint/Petition filed by HOUSTON COUNTY BOARD |

| | | |
|---|---|---|
| | | OF COMMISSIONERS, BARRY HOLLAND, TOM MCMICHAEL, KENNETH CARTER, LARRY THOMSON, H. JAY WALKER, III, GAIL ROBINSON, ROBBIE DUNBAR, HOUSTON COUNTY, GEORGIA, TOMMY STALNAKER, CULLEN TALTON. Court Reporter: Darlene Fuller. (kat) (Entered: 08/28/2020) |
| 09/02/2020 | 88 | TRANSCRIPT of Motion to Dismiss held on 08/19/2020, before Judge Marc T. Treadwell. Court Reporter Darlene D. Fuller. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (ddf) (Entered: 09/02/2020) |
| 10/30/2020 | 89 | **ORDER** DENYING 61 Motion to Dismiss for Lack of Jurisdiction; and GRANTING in part and DENYING in part 62 Motion to Dismiss Complaint. The remaining claims are (1) ADA Title I claims against the County and the Sheriff in his official capacity, (2) Title VII claims against the County and the Sheriff in his official capacity, and (3) federal equal protection claims against the County and the Sheriff in his official capacity. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/30/2020. (kat) (Entered: 10/30/2020) |
| 10/30/2020 | 90 | ***RE-FILED AT 91 ***Letter regarding Request for Oral Argument re 57 MOTION for Preliminary Injunction (BARTON, KENNETH) Modified on 11/2/2020 to add docket text (vs). (Entered: 10/30/2020) |
| 11/02/2020 | | Notice of Deficiency (related document(s): 90 Letter ); Document must be re-filed using correct event - MOTION FOR HEARING(vs) (Entered: 11/02/2020) |
| 11/02/2020 | 91 | MOTION for Hearing re 57 MOTION for Preliminary Injunction by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 11/02/2020) |
| 11/13/2020 | 92 | ANSWER to 56 Amended Complaint/Petition by HOUSTON COUNTY, GEORGIA. Related document: 56 Amended Complaint/Petition filed by ANNA LANGE.(MORGAN, SHARON) (Entered: 11/13/2020) |
| 11/13/2020 | 93 | DISREGARD - WRONG DOCUMENT ATTACHED - REFILED AT TAB 96. ANSWER to 56 Amended Complaint/Petition by CULLEN TALTON. Related document: 56 Amended Complaint/Petition filed by ANNA LANGE.(MORGAN, SHARON) Modified on 11/16/2020 (ggs). (Entered: 11/13/2020) |
| 11/13/2020 | 94 | MOTION for Reconsideration re 89 Order on Motion to Dismiss/Lack of Jurisdiction,,, Order on Motion to Dismiss Complaint,, by HOUSTON COUNTY, GEORGIA filed by SHARON P MORGAN.(MORGAN, SHARON) (Entered: 11/13/2020) |
| 11/13/2020 | 95 | DISREGARD - WRONG DOCUMENT ATTACHED - REFILED AT TAB 96. ANSWER to 56 Amended Complaint/Petition by CULLEN TALTON. Related document: 56 Amended Complaint/Petition filed by ANNA LANGE.(MORGAN, SHARON) Modified on 11/16/2020 (ggs). (Entered: 11/13/2020) |
| 11/13/2020 | 96 | ANSWER to 56 Amended Complaint/Petition by CULLEN TALTON. Related document: 56 Amended Complaint/Petition filed by ANNA LANGE.(MORGAN, SHARON) (Entered: 11/13/2020) |
| 11/16/2020 | | Notice of Deficiency (related document(s): 95 Answer to Amended Complaint filed by CULLEN TALTON, 93 Answer to Amended Complaint filed by CULLEN TALTON: Wrong document attached. No action necessary, correctly filed at Tab 96. (ggs) (Entered: 11/16/2020) |
| 11/19/2020 | 97 | UNOPPOSED MOTION for Extension of Time to File RESPONSE as to 94 MOTION for Reconsideration re 89 Order on Motion to Dismiss/Lack of Jurisdiction,,, Order on Motion to Dismiss Complaint,, by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 11/19/2020) |
| 11/19/2020 | 98 | UNOPPOSED MOTION for Discovery by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Memorandum in Support of Unopposed Motion |

| | | |
|---|---|---|
| | | for Expedited Discovery, # 2 Proposed Order Proposed Consent Order for Expedited Discovery) (BARTON, KENNETH) (Entered: 11/19/2020) |
| 11/20/2020 | 99 | This is a text only entry; no document issued. **ORDER** GRANTING 97 Motion for Extension of Time to File RESPONSE re 94 MOTION for Reconsideration. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/20/2020. (wbm) (Entered: 11/20/2020) |
| 11/20/2020 | 100 | **CONSENT ORDER FOR EXPEDITED DISCOVERY**. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/20/2020. (kat) (Entered: 11/20/2020) |
| 11/30/2020 | 101 | RESPONSE filed by ANNA LANGE re 94 MOTION for Reconsideration re 89 Order on Motion to Dismiss/Lack of Jurisdiction,,, Order on Motion to Dismiss Complaint,, (Attachments: # 1 Exhibit Declaration of David Brown)(BARTON, KENNETH) (Entered: 11/30/2020) |
| 12/22/2020 | 102 | **ORDER** DENYING 94 Motion for Reconsideration. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 12/22/2020. (kat) (Entered: 12/22/2020) |
| 01/07/2021 | 103 | JOINT MOTION for Protective Order by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Proposed Order Prosposed Consent Protective and Confidentiality Order) (BARTON, KENNETH) (Entered: 01/07/2021) |
| 01/08/2021 | 104 | **CONSENT PROTECTIVE AND CONFIDENTIALITY ORDER**. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 1/8/2021. (kat) (Entered: 01/08/2021) |
| 02/10/2021 | 105 | JOINT MOTION for Consent Order Extending Expedited Discovery Period re 100 Order on Motion for Discovery by HOUSTON COUNTY, GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Proposed Order)(LAIL, PATRICK) (Entered: 02/10/2021) |
| 02/10/2021 | 106 | **ORDER** GRANTING 105 JOINT MOTION for Consent Order Extending Expedited Discovery Period re 100 Consent Order for Expedited Discovery. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 2/10/2021. (kat) (Entered: 02/10/2021) |
| 03/10/2021 | 107 | UNOPPOSED MOTION for Second Consent Order Extending Expedited Discovery Period re 98 MOTION for Discovery by HOUSTON COUNTY, GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Proposed Order Text of Order)(LAIL, PATRICK) (Entered: 03/10/2021) |
| 03/11/2021 | 108 | This is a text only entry; no document issued. **ORDER** GRANTING 107 Unopposed Motion for Second Consent Order Extending Expedited Discovery Period. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 3/11/2021. (wbm) (Entered: 03/11/2021) |
| 03/15/2021 | 109 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3741013, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III, 301171. (Attachments: # 1 Certificate of Good Standing SDNY COGS)(ARKLES, Z) (Entered: 03/15/2021) |
| 03/16/2021 | 110 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by Z GABRIEL ARKLES (nop) (Entered: 03/16/2021) |
| 05/19/2021 | 111 | MOTION to Withdraw Document 57 Motion for Preliminary Injunction, by ANNA LANGE filed by SARAH MATLACK WASTLER.(WASTLER, SARAH) Modified on 5/26/2021 to edit text(vs). (Entered: 05/19/2021) |
| 05/26/2021 | 112 | **ORDER**. Discovery SHALL be completed by August 19, 2021, and dispositive and Daubert motions are due by September 2, 2021. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 5/26/2021. (kat) (Entered: 05/26/2021) |
| 08/06/2021 | 113 | UNOPPOSED MOTION for Extension of Time to File. by HOUSTON COUNTY, GEORGIA filed by PATRICK L LAIL. (Attachments: # 1 Proposed Order)(LAIL, PATRICK) (Entered: |

| | | 08/06/2021) |
|---|---|---|
| 08/09/2021 | 114 | This is a text only entry; no document issued. **ORDER** GRANTING 113 Motion for Extension of Time. Discovery to be complete by 9/20/2021. Dispositive and *Daubert* motions due by 10/20/2021. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/9/2021. (wbm) (Entered: 08/09/2021) |
| 08/16/2021 | 115 | MOTION to Withdraw as Attorney by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Proposed Order Proposed Order on Motion to Withdraw)(BARTON, KENNETH) (Entered: 08/16/2021) |
| 08/30/2021 | 116 | MOTION to Withdraw as Attorney by ANNA LANGE filed by NOAH ETHAN LEWIS. (Attachments: # 1 Proposed Order Proposed Order Proposed Order on Motion to Withdraw) (LEWIS, NOAH) (Entered: 08/30/2021) |
| 10/04/2021 | 117 | UNOPPOSED MOTION re 114 Order on Motion for Extension of Time (Misc), by HOUSTON COUNTY BOARD OF COMMISSIONERS, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Proposed Order)(LAIL, PATRICK) (Entered: 10/04/2021) |
| 10/04/2021 | 118 | This is a text only entry; no document issued. **ORDER** GRANTING 117 Motion for Extension of Time. Dispositive and *Daubert* motions due by 11/3/2021. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/4/21 (bwr) (Entered: 10/04/2021) |
| 10/18/2021 | 119 | MOTION to Withdraw as Attorney by ANNA LANGE filed by SARAH MATLACK WASTLER. (Attachments: # 1 Exhibit A: Notice of Withdrawal of Counsel, # 2 Proposed Order)(WASTLER, SARAH) (Entered: 10/18/2021) |
| 10/27/2021 | 120 | CONSENT MOTION to Seal Document(s) by BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC filed by TYLER P BISHOP. (Attachments: # 1 Exhibit A - Subpoena, # 2 Exhibit B - Declaration of D. Smead, # 3 Exhibit C - Proposed Order)(BISHOP, TYLER) (Entered: 10/27/2021) |
| 10/27/2021 | 121 | UNOPPOSED MOTION to Seal Document(s) 104 Order on Motion for Protective Order by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Proposed Order Proposed Order)(BARTON, KENNETH) (Entered: 10/27/2021) |
| 10/28/2021 | 122 | **ORDER** GRANTING 120 CONSENT MOTION to Seal Document(s) by BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/28/2021. (kat) (Entered: 10/28/2021) |
| 10/28/2021 | 123 | **ORDER** GRANTING 121 UNOPPOSED MOTION to Seal Document(s). Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/28/2021. (kat) (Entered: 10/28/2021) |
| 10/28/2021 | 124 | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # CGAMDC-3935413, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State Bar No. 301171. (Attachments: # 1 Certificate of Good Standing)(FATA, CATHERINE) (Entered: 10/28/2021) |
| 10/28/2021 | 125 | UNOPPOSED MOTION for Leave to File Excess Pages for Motions for Summary Judgment by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by SHARON P MORGAN. (MORGAN, SHARON) (Entered: 10/28/2021) |
| 10/28/2021 | 126 | UNOPPOSED MOTION for Leave to File Excess Pages for Motion for Summary Judgment by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 10/28/2021) |
| 10/29/2021 | | Notice of Deficiency (related document(s): 124 Petition to the Clerk for Admission to Plead and Practice Pro Hac Vice, filed by ANNA LANGE ); Other - If you are not a member of the State Bar of Georgia and do not maintain an office in Georgia, you must obtain a Certificate of Good Standing from a US District Court where you are admitted to practice. (The Certificate must be |

| | | |
|---|---|---|
| | | issued within 30 days of petition for admission.) State court certificates are NOT accepted. (mdm) (Entered: 10/29/2021) |
| 11/01/2021 | 127 | This is a text only entry; no document issued. **ORDER** GRANTING <u>125</u> Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/1/2021. (bwr) (Entered: 11/01/2021) |
| 11/01/2021 | 128 | This is a text only entry; no document issued. **ORDER** GRANTING <u>126</u> Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/1/2021. (bwr) (Entered: 11/01/2021) |
| 11/03/2021 | <u>129</u> | MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit 1 Plaintiff's Expert Witness Identifications, # <u>3</u> Exhibit 2 Expert Report of Paisley Currah, # <u>4</u> Exhibit 3 2015 U.S. Transgender Survey GA State Report)(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | <u>130</u> | MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit 1 Plaintiff's Expert Witness Identifications, # <u>3</u> Exhibit 2 Expert Report for Chanel Haley, # <u>4</u> Exhibit 3 2015 U.S. Transgender Survey GA State Report)(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | <u>131</u> | Request to ANNA LANGE to file original discovery document(s) by CULLEN TALTON, HOUSTON COUNTY GEORGIA.(MORGAN, SHARON) (Entered: 11/03/2021) |
| 11/03/2021 | <u>132</u> | MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit 1 Plaintiff's Expert Witness Identification, # <u>3</u> Exhibit 2 Expert Report of Loren S. Schechter, M.D., # <u>4</u> Exhibit 3 Societal Implications of Health Coverage for Medically Necessary Services in the U.S. Transgender Population, # <u>5</u> Exhibit 4 The implications of Allowing Transgender Personnel to Serve Openly in the U.S. Military, # <u>6</u> Exhibit 5 Declaration of Kenneth Carter)(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | <u>133</u> | MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit 1 Plaintiff's Expert Witness Identifications, # <u>3</u> Exhibit 2 Expert Report of Joan Barrett, FSA, MAAA, # <u>4</u> Exhibit 3 Joan Barret Deposition Excerpt Pages, # <u>5</u> Exhibit 4 Actuarial Standard of Practice No. 1, # <u>6</u> Exhibit 5 Actuarial Standard of Practice No. 41, # <u>7</u> Exhibit 6 Expert Report of James P. Galasso (8-12-21), # <u>8</u> Exhibit 7 Declaration of Kenneth Carter, # <u>9</u> Exhibit 8 Expert Report of Joan C Barrett and Elaine T. Corrough Submitted On Behalf of the Plaintiffs (3/22/19))(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | <u>134</u> | ***Refiled at <u>142</u> *** MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit 1 Plaintiff's Expert Witness Identifications, # <u>3</u> Exhibit 2 Plaintiff's Disclosure of Expert Witness Pursuant to Fed.R.Civ.P26(A)(2)(C), # <u>4</u> Exhibit 3 Health Insurance Coverage of Gender-Affirming Top Surgery in the United States, # <u>5</u> Exhibit 4 Anna Lange 4/2/21 Deposition Excerpt Pages, # <u>6</u> Exhibit 5 Declaration of Kenneth Carter, # <u>7</u> Exhibit 6 Declaration of Joan C Barrett, # <u>8</u> Exhibit 7 Expert Report of Joan C. Barrett and Elaine T. Corrough Submitted on Behalf of the Plaintiffs) (LAIL, PATRICK) Modified on 11/4/2021 to add docket text(vs). (Entered: 11/03/2021) |
| 11/03/2021 | <u>135</u> | ***Refiled at <u>140</u> *** MOTION for Summary Judgment by ANNA LANGE filed by WESLEY POWELL.(POWELL, WESLEY) Modified on 11/4/2021 to add docket text(vs). (Entered: 11/03/2021) |
| 11/03/2021 | <u>136</u> | MOTION for Summary Judgment by CULLEN TALTON filed by SHARON P MORGAN. (Attachments: # <u>1</u> Statement of Material Facts, # <u>2</u> Declaration of Donna Clark, # <u>3</u> Declaration of Tommy Stalnaker, # <u>4</u> Declaration of Barry Holland, # <u>5</u> Declaration of Ken Carter, # <u>6</u> |

| | | |
|---|---|---|
| | | Declaration of William Rape, # 7 Declaration of Gail Robinson, # 8 Declaration of Jay Walker, # 9 Memorandum in Support)(MORGAN, SHARON) (Entered: 11/03/2021) |
| 11/03/2021 | 137 | MOTION for Summary Judgment by HOUSTON COUNTY GEORGIA filed by PATRICK L LAIL. (Attachments: # 1 Stmt of Material Facts Resp, # 2 Memorandum in Support, # 3 Plaintiff Anna Lange 4/2/21 Deposition and Exhibits, # 4 Declaration of Donna Clark, # 5 Declaration of Kenneth Carter, # 6 Declaration of Barry Holland, # 7 Declaration of Tommy Stalnaker, # 8 Declaration of Gail Robinson, # 9 Declaration of H. Jay Walker, # 10 Declaration of William H. Rape, # 11 August 24, 2021 Deposition of Joan Barrett, # 12 September 9, 2021 Deposition of Tom Galasso)(LAIL, PATRICK) (Entered: 11/03/2021) |
| 11/03/2021 | 138 | Certificate of Need to File Discovery by HOUSTON COUNTY GEORGIA, CULLEN TALTON. Related document: 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON. (MORGAN, SHARON) (Entered: 11/03/2021) |
| 11/03/2021 | 139 | ***Disregard refiled at 140 *** MEMORANDUM in Support filed by ANNA LANGE re: 135 MOTION for Summary Judgment (POWELL, WESLEY) Modified on 11/4/2021 to add docket text(vs). (Entered: 11/03/2021) |
| 11/04/2021 | 140 | MOTION for Summary Judgment by ANNA LANGE filed by WESLEY POWELL. (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts, # 3 Declaration of Jill K. Grant, # 4 Declaration of Sgt. Anna Lange, # 5 Declaration of Loren S. Schechter, # 6 Declaration of Joan Barrett, # 7 Declaration of Rachel Bluebond-Langner, # 8 Declaration of Chanel Haley, # 9 Declaration of Paisley Currah)(POWELL, WESLEY) (Entered: 11/04/2021) |
| 11/04/2021 | | Notice of Deficiency (related document(s): 139 Memorandum in Support filed by ANNA LANGE ); Other - Wrong document attached. (vs) (Entered: 11/04/2021) |
| 11/04/2021 | 141 | **SEALED DOCUMENT** (Attachments: # 1 Exhibit, # 2 Exhibit)(vs) (Entered: 11/04/2021) |
| 11/04/2021 | 142 | MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 Plaintiff's Disclosure of Expert Witness Pursuant to Fed.R.Civ.P26(A)(2)(C), # 4 Exhibit 3 Health Insurance Coverage of Gender-Affirming Top Surgery in the United States, # 5 Exhibit 4 Anna Lange 4-2-21 Deposition Excerpt Pages, # 6 Exhibit 5 Declaration of Kenneth Carter, # 7 Exhibit 6 Declaration of Joan C Barret (Boyden v State of Wisconsin Dept of Employee Trust Funds), # 8 Exhibit Expert Report of Joan C. Barrett and Elaine T. Corrough Submitted on Behalf of the Plaintiffs)(LAIL, PATRICK) (Entered: 11/04/2021) |
| 11/04/2021 | 143 | EXHIBIT(S) *Declaration of Joan Barrett* by ANNA LANGE re 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Report of Barrett)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 144 | EXHIBIT(S) *Declaration of Bluebond-Langner* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Declaration, # 2 Exhibit Expert Disclosure)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 145 | EXHIBIT(S) *Declaration of Currah* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Report)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 146 | EXHIBIT(S) *Declaration of Haley* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Witness Report)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 147 | EXHIBIT(S) *Declaration of Sgt. Lange* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (BARTON, |

| | | |
|---|---|---|
| | | KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 148 | EXHIBIT(S) *Declaration of Schecter* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Expert Report, # 2 Exhibit Declaration)(BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/04/2021 | 149 | EXHIBIT(S) *Declaration of Jill Grant (without exhibits, errors preventing filing)* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment (BARTON, KENNETH) (Entered: 11/04/2021) |
| 11/05/2021 | 150 | EXHIBIT(S) *Declaration of Grant (Exhibits Part 1 of 2)* by ANNA LANGE re 140 MOTION for Summary Judgment, 135 MOTION for Summary Judgment, 139 Memorandum in Support, 149 Exhibit(s) (Attachments: # 1 Exhibit Deposition of Carter Part 1 of 5, # 2 Exhibit Deposition of Carter Part 2 of 5, # 3 Exhibit Deposition of Carter Part 3 of 5, # 4 Exhibit Deposition of Carter Part 4 of 5, # 5 Exhibit Deposition of Carter Part 5 of 5, # 6 Exhibit Deposition of Sheriff Part 1 of 2, # 7 Exhibit Deposition of Sheriff Part 2 of 2, # 8 Exhibit Deposition of Lange Part 1 of 2, # 9 Exhibit Deposition of Lange Part 2 of 2, # 10 Exhibit Deposition of Holland, # 11 Exhibit Deposition of Rape Part 1 of 2, # 12 Exhibit Deposition of Rape Part 2 of 2, # 13 Exhibit Deposition of Clark, # 14 Exhibit Deposition of Carter, # 15 Exhibit Deposition of Holland, # 16 Exhibit Deposition of Barrett, # 17 Exhibit Deposition of Galasso, # 18 Exhibit Deposition of Lange, # 19 Exhibit Deposition of Carter, # 20 Exhibit Defendants Responses to First RFAs, # 21 Exhibit Houston County Responses to Third Rogs, # 22 Exhibit Sheriff Responses to Second RFAs, # 23 Exhibit Sheriff Responses to First Rogs, # 24 Exhibit Zhao Report, # 25 Exhibit Anthems Clinical Guideline for Gender Affirming Surgery, # 26 Exhibit Carters November 4, 2019 Memo, # 27 Exhibit Anthems January 29, 2019 Denial, # 28 Exhibit Langes Fiscal Year 2020 Total Compensation Statement, # 29 Exhibit Houston County Responses to First Rogs, # 30 Exhibit Pope and Clark Email, # 31 Exhibit Hall and Lewis Email, # 32 Exhibit Lewis and Hall Email)(BARTON, KENNETH) (Entered: 11/05/2021) |
| 11/05/2021 | 151 | EXHIBIT(S) *Declaration of Grant (Exhibits Part 2 of 2)* by ANNA LANGE re 139 Memorandum in Support, 140 MOTION for Summary Judgment, 149 Exhibit(s), 135 MOTION for Summary Judgment (Attachments: # 1 Exhibit Clark and Clark Email, # 2 Exhibit Clark and Pope Email, # 3 Exhibit Clark and Carter Email, # 4 Exhibit November 19, 2019 Houston County Board of Commissioners Meet Minutes, # 5 Exhibit January 16, 2019 letter from Lewis to County Attorney, # 6 Exhibit Clark and Carter Email, # 7 Exhibit BCBS000351, # 8 Exhibit Open Records Request, # 9 Exhibit Lange and Holland Email, # 10 Exhibit Anthem data re: 2018 Total Health Conditions by Paid Amount, # 11 Exhibit Anthem data re: 2019 Total Medical Conditions by Paid Amount, # 12 Exhibit Langes Petition to Change Name)(BARTON, KENNETH) (Entered: 11/05/2021) |
| 11/05/2021 | 152 | **SEALED DOCUMENT** (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(vs) (Entered: 11/05/2021) |
| 11/10/2021 | 153 | Request for Rule Local 6.2 Clerk's Extension re 137 MOTION for Summary Judgment, 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, 134 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D., 136 MOTION for Summary Judgment, 130 MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley, 129 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. by ANNA LANGE (BARTON, KENNETH) (Entered: 11/10/2021) |
| 11/10/2021 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: 130 MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D. filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett filed by CULLEN TALTON, HOUSTON |

| | | |
|---|---|---|
| | | COUNTY GEORGIA, 129 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA (vs) (Entered: 11/10/2021) |
| 11/12/2021 | 154 | Certificate of Need to File Discovery *Deposition of Ken Carter 02/23/2021* by ANNA LANGE. Related document: 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 155 | DEPOSITION of Kenneth Carter taken on 02/23/2021 filed by ANNA LANGE. Related document: 154 Certificate of Need to File Discovery, filed by ANNA LANGE, 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE. (Attachments: # 1 Exhibit Ex. 1 Medical Benefit Booklet, # 2 Exhibit Ex. 2 Clinical UM Guideline, # 3 Exhibit Ex. 3 HBCS Approval of Changes, # 4 Exhibit Ex. 4 2017 Medical Plan Changes, # 5 Exhibit Ex. 5 Carter Email to Clark, # 6 Exhibit Ex. 6 Clark Email to Carter, # 7 Exhibit Ex. 7 Carter Email to Clark, # 8 Exhibit Ex. 8 Hall Email to Carter, # 9 Exhibit Ex. 9 Lewis Letter to HCBC, # 10 Exhibit Ex. 10 Transcend Legal Memo, # 11 Exhibit Ex. 11 Carter Email to Kissell, # 12 Exhibit Ex. 12 Carter Email to Clark, # 13 Exhibit Ex. 13 HCBC Meeting 02192019, # 14 Exhibit Ex. 14 Powell Letter to HCBC, # 15 Exhibit Ex. 15 Hall Letter to Powell, # 16 Exhibit Ex. 16 Clark Email to Carter, # 17 Exhibit Ex. 17 Memo to HCBC Health Plan Changes, # 18 Exhibit Ex. 18 Memo to HCBC Health Insurance Considerations, # 19 Exhibit Ex. 21 Carter Text 08122018, # 20 Exhibit Ex. 22 Carter Text 11042018, # 21 Exhibit Ex. 23 Carter Text 03302019, # 22 Exhibit Ex. 24 Carter Text 07042020)(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 156 | Certificate of Need to File Discovery *Sheriff Cullen Talton 03/25/2021* by ANNA LANGE. Related document: 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 157 | DEPOSITION of Sheriff Cullen Talton taken on 03/25/2021 filed by ANNA LANGE. Related document: 156 Certificate of Need to File Discovery, filed by ANNA LANGE, 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 158 | Certificate of Need to File Discovery *Houston County 30(b)(6)* by ANNA LANGE. Related document: 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 159 | DEPOSITION of Houston County 30(b)(6) (Holland and Carter) taken on 04/15/2021 filed by ANNA LANGE. Related document: 158 Certificate of Need to File Discovery, filed by ANNA LANGE, 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE. (Attachments: # 1 Exhibit Deposition of Ken Carter 04/15/2021)(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 160 | Certificate of Need to File Discovery *Houston County 30(b)(6) Ken Carter 09/16/2021* by ANNA LANGE. Related document: 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | 161 | DEPOSITION of Houston County 30(b)(6) (Carter) taken on 09/16/2021 filed by ANNA LANGE. Related document: 160 Certificate of Need to File Discovery, filed by ANNA LANGE, |

| | | |
|---|---|---|
| | | [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [162](#) | Certificate of Need to File Discovery *Deposition of Donna Clark 04/13/2021* by ANNA LANGE. Related document: [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/12/2021 | [163](#) | DEPOSITION of Donna Clark taken on 04/13/2021 filed by ANNA LANGE. Related document: [162](#) Certificate of Need to File Discovery, filed by ANNA LANGE, [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/12/2021) |
| 11/15/2021 | [164](#) | Certificate of Need to File Discovery *Sheriff's Office 30(b)(6)* by ANNA LANGE. Related document: [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/15/2021) |
| 11/15/2021 | [165](#) | DEPOSITION of Houston County Sheriff's Office 30(b)(6) (Rape and Holland) taken on 04/13/2021 filed by ANNA LANGE. Related document: [164](#) Certificate of Need to File Discovery, filed by ANNA LANGE, [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [140](#) MOTION for Summary Judgment filed by ANNA LANGE. (Attachments: # [1](#) Exhibit Deposition of HCSO 30(b)(6) J. Holland)(BARTON, KENNETH) (Entered: 11/15/2021) |
| 11/15/2021 | [166](#) | Certificate of Need to File Discovery *Deposition of Tom Galasso* by ANNA LANGE. Related document: [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/15/2021) |
| 11/15/2021 | [167](#) | DEPOSITION of Tom Galasso taken on 09/09/2021 filed by ANNA LANGE. Related document: [166](#) Certificate of Need to File Discovery, filed by ANNA LANGE, [137](#) MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, [136](#) MOTION for Summary Judgment filed by CULLEN TALTON, [140](#) MOTION for Summary Judgment filed by ANNA LANGE.(BARTON, KENNETH) (Entered: 11/15/2021) |
| 11/17/2021 | [168](#) | Request for Rule Local 6.2 Clerk's Extension re [140](#) MOTION for Summary Judgment by HOUSTON COUNTY GEORGIA, CULLEN TALTON (MORGAN, SHARON) (Entered: 11/17/2021) |
| 11/17/2021 | | Notice of Clerk's Granting of Extension Pursuant to Local Rule 6.2 re: [140](#) MOTION for Summary Judgment filed by ANNA LANGE (vs) (Entered: 11/17/2021) |
| 11/18/2021 | [169](#) | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # AGAMDC-3952412, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III Ga. State Bar No. 301171. (Attachments: # [1](#) Certificate of Good Standing)(FATA, CATHERINE) (Entered: 11/18/2021) |
| 11/19/2021 | [170](#) | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by CATHERINE FATA. (mdm) (Entered: 11/19/2021) |
| 12/02/2021 | [172](#) | JOINT MOTION for Extension of Time to File RESPONSE as to [137](#) MOTION for Summary Judgment, [133](#) MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, [136](#) MOTION for Summary Judgment, [130](#) MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley, [142](#) MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., [129](#) MOTION for Summary Judgment, [129](#) MOTION To Exclude Plaintiff's Expert Testimony: |

| | | |
|---|---|---|
| | | Paisley Currah, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 12/02/2021) |
| 12/03/2021 | 173 | This is a text only entry; no document issued. **ORDER** GRANTING 172 Motion for Extension of Time to File RESPONSE and REPLY briefs. The parties shall file responses to all Motions for Summary Judgment and *Daubert* motions by December 22, 2021 and file reply briefs by January 26, 2022. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 12/3/21. (bwr) (Entered: 12/03/2021) |
| 12/03/2021 | | Notice of Deficiency (related document(s): 171 Notice (Other) filed by ANNA LANGE ); The PACER login ID and password used to electronically file a document constitutes the Participants electronic signature for all purposes under the Federal Rules. Document must be re-filed using the user credentials of the name of the attorney in the signature block. See CM/ECF Administrative Procedures, page 7.(vs) (Entered: 12/03/2021) |
| 12/15/2021 | 175 | JOINT MOTION for Leave to File Excess Pages for Motions for Summary Judgment by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by SHARON P MORGAN. (MORGAN, SHARON) (Entered: 12/15/2021) |
| 12/15/2021 | 176 | This is a text only entry; no document issued. **ORDER** GRANTING 175 Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 12/15/21. (bwr) (Entered: 12/15/2021) |
| 12/22/2021 | 177 | RESPONSE filed by ANNA LANGE re 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, 134 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D., 130 MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley, 129 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. (BARTON, KENNETH) (Entered: 12/22/2021) |
| 12/22/2021 | 178 | RESPONSE filed by ANNA LANGE re 137 MOTION for Summary Judgment, 136 MOTION for Summary Judgment (Attachments: # 1 Stmt of Material Facts Resp Ex A Plaintiff's Response to Defendant Houston County's Statement of Undisputed Facts, # 2 Stmt of Material Facts Resp Ex B Plaintiff's Response to Defendant Sheriff Talton's Statement of Undisputed Facts) (BARTON, KENNETH) (Entered: 12/22/2021) |
| 12/22/2021 | 179 | RESPONSE filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re 140 MOTION for Summary Judgment (Attachments: # 1 Exhibit A - Declaration of Kenneth Carter, # 2 Statement of Material Facts, # 3 Stmt of Material Facts Resp)(LAIL, PATRICK) (Entered: 12/22/2021) |
| 12/23/2021 | 180 | **SEALED DOCUMENT** re 179 (vs) (Entered: 12/23/2021) |
| 12/23/2021 | 181 | **SEALED DOCUMENT** re 177 (vs) Modified on 12/27/2021 to link to motion. (ggs). (Entered: 12/23/2021) |
| 01/20/2022 | 182 | JOINT MOTION for Leave to File Excess Pages for Reply Briefs in Support of Motions for Summary Judgment by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 01/20/2022) |
| 01/20/2022 | 183 | This is a text only entry; no document issued. **ORDER** GRANTING 182 Motion for Leave to File Excess Pages. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 1/20/22. (bwr) (Entered: 01/20/2022) |
| 01/21/2022 | | NOTICE OF SETTING HEARING ON MOTION re 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D., 140 MOTION for Summary Judgment, 130 MOTION To Exclude Plaintiff's Expert Testimony - Chanel Haley, 129 MOTION To Exclude Plaintiff's Expert Testimony - |

| | | |
|---|---|---|
| | | Paisley Currah, [137] MOTION for Summary Judgment, [136] MOTION for Summary Judgment. Motion Hearing set for 2/24/2022 at 2:00 PM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will occur **IN-PERSON**. Counsel, parties, and members of the public and press should review Standing Order 2021-08, available on the court's website, regarding courthouse entrance procedures due to COVID-19. Interested parties may obtain dial information by emailing macon.ecf@gamd.uscourts.gov. (kat) (Entered: 01/21/2022) |
| 01/26/2022 | [184] | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [142] MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., [132] MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. (Attachments: # [1] Exhibit A - Commentary on Gender Surgery Beyond Chest & Genitals - Current Insurance Landscape)(LAIL, PATRICK) (Entered: 01/26/2022) |
| 01/26/2022 | [185] | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [130] MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley, [129] MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah (LAIL, PATRICK) (Entered: 01/26/2022) |
| 01/26/2022 | [186] | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [133] MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett (LAIL, PATRICK) (Entered: 01/26/2022) |
| 01/26/2022 | [187] | REPLY to Response filed by ANNA LANGE re [140] MOTION for Summary Judgment (Attachments: # [1] Exhibit Order in Vasquez v. Iowa Dep't of Human Servs.)(BARTON, KENNETH) (Entered: 01/26/2022) |
| 01/26/2022 | [188] | REPLY to Response filed by ANNA LANGE re [140] MOTION for Summary Judgment (Attachments: # [1] Exhibit Exhibit 1 Anthem BCBS Claims Summary)(BARTON, KENNETH) (Entered: 01/26/2022) |
| 01/26/2022 | [189] | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [137] MOTION for Summary Judgment (Attachments: # [1] Exhibit 1 - Civil Docket for Henderson et al v Bodine Aluminum et al 4 95-cv-01051-CAS)(LAIL, PATRICK) (Entered: 01/26/2022) |
| 01/26/2022 | [190] | REPLY to Response filed by CULLEN TALTON re [136] MOTION for Summary Judgment (Attachments: # [1] Exhibit 1 - Civil Docket for Henderson et al v Bodine Aluminum et al 4 95-cv-01051-CAS)(LAIL, PATRICK) (Entered: 01/26/2022) |
| 02/01/2022 | [191] | NOTICE of Attorney Appearance by WILLIAM DRUMMOND DEVENEY on behalf of HOUSTON COUNTY GEORGIA, CULLEN TALTON Attorney WILLIAM DRUMMOND DEVENEY added to party HOUSTON COUNTY GEORGIA(pty:dft), Attorney WILLIAM DRUMMOND DEVENEY added to party CULLEN TALTON(pty:dft)(DEVENEY, WILLIAM) (Entered: 02/01/2022) |
| 02/17/2022 | [192] | UNOPPOSED MOTION to Seal Document(s) 174 Notice (Other), 171 Notice (Other),, MOTION for Leave to File Redacted Statement of Facts by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) (Entered: 02/17/2022) |
| 02/18/2022 | 193 | This is a text only entry; no document issued. **ORDER** GRANTING [192] Motion to Seal Document(s) 171 and 174 NOTICE Amended Local Rule 56 Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment with access restricted to court users and case parties. **ORDER** GRANTING [192] Motion for Leave to File Redacted Version of 174 NOTICE Amended Local Rule 56 Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 2/18/2022. (kat) (Entered: 02/18/2022) |
| 02/18/2022 | [194] | ***REFILED AT [195] *** NOTICE Amended Local Rule 56 Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment by ANNA LANGE re 171 Notice (Other), (BARTON, KENNETH) Text modified on 2/22/2022 (kat). (Entered: 02/18/2022) |

| | | |
|---|---|---|
| 02/18/2022 | 195 | NOTICE Amended Local Rule 56 Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment by ANNA LANGE re 174 Notice (Other) - *REDACTED* (BARTON, KENNETH) Text modified on 2/22/2022 (kat). (Entered: 02/18/2022) |
| 02/22/2022 | | *** TIME CHANGE ONLY*** NOTICE OF RESETTING HEARING ON MOTION re 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D., 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D., 140 MOTION for Summary Judgment, 130 MOTION To Exclude Plaintiff's Expert Testimony - Chanel Haley, 129 MOTION To Exclude Plaintiff's Expert Testimony - Paisley Currah, 137 MOTION for Summary Judgment, 136 MOTION for Summary Judgment. Motion Hearing RESET for 2/24/2022 at 1:30 PM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will occur IN-PERSON. Counsel, parties, and members of the public and press should review Standing Order 2022-02, available on the court's website, regarding courthouse entrance procedures due to COVID-19. Interested parties may obtain dial information by emailing macon.ecf@gamd.uscourts.gov. (kat) (Entered: 02/22/2022) |
| 02/24/2022 | 196 | Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Motion Hearing held on 2/24/2022 re 137 MOTION for Summary Judgment filed by HOUSTON COUNTY GEORGIA, 142 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D. filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 133 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 136 MOTION for Summary Judgment filed by CULLEN TALTON, 140 MOTION for Summary Judgment filed by ANNA LANGE, 130 MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 129 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA, 132 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA. Court Reporter: Darlene Fuller. Time in Court: 1 hour / 44 minutes. (kat) (Entered: 02/24/2022) |
| 03/03/2022 | 197 | TRANSCRIPT of hearing on Motions for Summary Judgment held on 02/24/2022, before Judge Marc T. Treadwell. Court Reporter Darlene D. Fuller. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (ddf) (Entered: 03/03/2022) |
| 03/18/2022 | 198 | RESPONSE to Court Order filed by ANNA LANGE re 197 Transcript of Proceedings, (BARTON, KENNETH) (Entered: 03/18/2022) |
| 03/18/2022 | 199 | RESPONSE to Court Order filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re 197 Transcript of Proceedings, (LAIL, PATRICK) (Entered: 03/18/2022) |
| 03/29/2022 | 200 | Letter from Judge Treadwell. (kat) (Entered: 03/29/2022) |
| 04/08/2022 | 201 | RESPONSE to Court Order filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re 200 Letter (LAIL, PATRICK) (Entered: 04/08/2022) |
| 04/08/2022 | 202 | RESPONSE to Court Order filed by ANNA LANGE re 200 Letter (BARTON, KENNETH) (Entered: 04/08/2022) |
| 04/28/2022 | 203 | NOTICE of New Authority by HOUSTON COUNTY GEORGIA, CULLEN TALTON (LAIL, PATRICK) (Entered: 04/28/2022) |
| 05/17/2022 | 204 | NOTICE Supplemental Authority by ANNA LANGE re 140 MOTION for Summary Judgment (Attachments: # 1 Exhibit Eknes-Tucker v. Marshall Order)(BARTON, KENNETH) (Entered: 05/17/2022) |
| 06/02/2022 | 205 | **ORDER** DENYING without prejudice 129 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah; DENYING without prejudice 130 MOTION To Exclude Plaintiff's Expert |

| | | |
|---|---|---|
| | | Testimony: Chanel Haley; DENYING without prejudice [132](#) MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. ; DENYING without prejudice [133](#) MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett; GRANTING in part and DENYING in part [136](#) Motion for Summary Judgment; GRANTING in part and DENYING in part [137](#) Motion for Summary Judgment; GRANTING in part and DENYING in part [140](#) Motion for Summary Judgment; DENYING without prejudice [142](#) MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner M.D. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 6/2/2022. (kat) (Entered: 06/02/2022) |
| 06/16/2022 | [206](#) | MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # [1](#) Memorandum in Support, # [2](#) Proposed Order)(LAIL, PATRICK) (Entered: 06/16/2022) |
| 07/01/2022 | [207](#) | Letter regarding Request for Status Conference to Set Trial Date re [206](#) MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review (BARTON, KENNETH) (Entered: 07/01/2022) |
| 07/07/2022 | [208](#) | RESPONSE filed by ANNA LANGE re [206](#) MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review (BARTON, KENNETH) (Entered: 07/07/2022) |
| 07/13/2022 | | NOTICE of **SETTING** STATUS CONFERENCE. Status Conference re [207](#) Letter set for 7/28/2022 at 10:00 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. The parties shall also be prepared to discuss [206](#) MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review. Hearing will occur **IN-PERSON**. Counsel, parties, and members of the public and press should review Standing Order 2022-03, available on the court's website, regarding courthouse entrance procedures due to COVID-19. (kat) (Entered: 07/13/2022) |
| 07/19/2022 | [209](#) | Letter regarding rescheduling status conference (POWELL, WESLEY) (Entered: 07/19/2022) |
| 07/20/2022 | | Notice of Deficiency (related document(s): [209](#) Letter filed by ANNA LANGE ); Document must be re-filed using correct event which is - Motion to Continue. (vs) (Entered: 07/20/2022) |
| 07/20/2022 | [210](#) | MOTION to Continue *Status Conference* by ANNA LANGE filed by WESLEY POWELL. (POWELL, WESLEY) (Entered: 07/20/2022) |
| 07/20/2022 | 211 | This is a text only entry; no document issued. **ORDER** GRANTING [210](#) Motion to Continue Status Conference. Status Conference PREVIOUSLY set for 7/28/2022 is RESET for 8/11/2022 at 10:00 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 7/20/2022. (kat) (Entered: 07/20/2022) |
| 07/21/2022 | | Notice of Deficiency (related document(s): [210](#) Motion to Continue filed by ANNA LANGE ); The signature block does not include the e mail address of the filer. Please do not re-file, for future reference only. See Fed.R.Civ.P 11.(rlw) (Entered: 07/21/2022) |
| 07/21/2022 | [212](#) | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re [206](#) MOTION for Leave to File Defendants' Motion to Certify the Court's June 2, 2022 Order for Interlocutory Review (LAIL, PATRICK) (Entered: 07/21/2022) |
| 08/08/2022 | [213](#) | PETITION TO THE CLERK FOR ADMISSION TO PLEAD AND PRACTICE PRO HAC VICE by ANNA LANGE Attorney Admission Fee (Pro Hac Vice) paid by Receipt # CGAMDC-4153272, $100. LOCAL COUNSEL Name and Georgia Bar #: Kenneth E. Barton III 301171. (Attachments: # [1](#) Certificate of Good Standing)(PAYNE, AMANDA) (Entered: 08/08/2022) |
| 08/10/2022 | [214](#) | NOTICE Supplemental Authority by ANNA LANGE re [208](#) Response to Motion (Attachments: # [1](#) Exhibit Supplemental Authority)(BROWN, DAVID) (Entered: 08/10/2022) |
| 08/11/2022 | [215](#) | NOTICE of Attorney Withdrawal by MARY EATON on behalf of ANNA LANGE(EATON, MARY) (Entered: 08/11/2022) |

| | | |
|---|---|---|
| 08/11/2022 | 216 | Order granting Petition for Admission Pro Hac Vice (Petition Attached); Attorney Admission Fee Met by AMANDA MARIE PAYNE. (mdm) (Entered: 08/11/2022) |
| 08/11/2022 | 217 | **ORDER** SETTING PRETRIAL CONFERENCE AND TRIAL (*re Title VII damages*): Pretrial Conference set for 9/8/2022 at 9:30 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Proposed Pretrial Order due by 9/1/2022. This case is set for jury trial during the trial term scheduled to begin on 9/19/2022 at 9:00 a.m. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/11/2022. (Attachments: # 1 Required Form) (kat) Modified on 9/1/2022 (kat). (Entered: 08/11/2022) |
| 08/11/2022 | 218 | NOTICE Clarification of Answer to Court's Question by HOUSTON COUNTY GEORGIA, CULLEN TALTON (DEVENEY, WILLIAM) (Entered: 08/11/2022) |
| 08/11/2022 | 219 | Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Status Conference / Motion Hearing held on 8/11/2022. Court Reporter: Tammy DiRocco. Time in Court: 1 hour / 26 minutes. (kat) Modified on 8/15/2022 to change filing date (vs). (Entered: 08/12/2022) |
| 08/18/2022 | 220 | **ORDER** DENYING 206 Motion to Certify Court's Order for Interlocutory Review. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 8/18/2022. (kat) (Entered: 08/18/2022) |
| 08/31/2022 | 221 | TRANSCRIPT of Proceedings held on 8-11-22, before Judge Treadwell. Court Reporter Tammy W. DiRocco. Volume Number: 1 of 1. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (Tammy W. DiRocco) (Entered: 08/31/2022) |
| 09/01/2022 | 222 | FIRST MOTION in Limine regarding Plaintiff's claims for future emotional distress damages by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support)(LAIL, PATRICK) (Entered: 09/01/2022) |
| 09/01/2022 | 223 | SECOND MOTION in Limine regarding Plaintiff's failure to make Rule 26 Disclosures by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A - Plaintiff's Initial Disclosures, # 3 Exhibit B - Defendant Houston County's Second Interrogatories to Plaintiff, # 4 Exhibit C - Plaintiff's Responses and Objections to Defendant Houston County's Second Set of Interrogatories)(LAIL, PATRICK) (Entered: 09/01/2022) |
| 09/01/2022 | 224 | THIRD MOTION in Limine regarding Rachel Bluebond-Langner, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A - Plaintiff's Initial Disclosures, # 3 Exhibit B - Expert Declaration of Rachel Bluebond-Langner, M.D. in Support of Plaintiff's Motion for Preliminary Injunction)(LAIL, PATRICK) (Entered: 09/01/2022) |
| 09/01/2022 | 225 | TRIAL BRIEF by HOUSTON COUNTY GEORGIA, CULLEN TALTON (Attachments: # 1 Exhibit A - Plaintiff's Response and Objections to Defendant Houston County's Second Set of Interrogatories)(LAIL, PATRICK) (Entered: 09/01/2022) |
| 09/01/2022 | 226 | TRIAL BRIEF by ANNA LANGE(BARTON, KENNETH) (Entered: 09/01/2022) |
| 09/01/2022 | 227 | ***DISREGARD REFILED AT 231 *** MOTION in Limine regarding Expert Testimony of Dr. Soety by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) Modified on 9/6/2022 to add docket text(vs). (Entered: 09/01/2022) |
| 09/01/2022 | 228 | ***DISREGARD, REFILED AT 230 *** MOTION in Limine regarding Arguments and Evidence Concerning Defendants' Liability by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) Modified on 9/6/2022 to add docket text(vs). (Entered: 09/01/2022) |

| Date | Doc | Description |
|---|---|---|
| 09/01/2022 | 229 | ***DISREGARD REFILED AT 232 *** MOTION in Limine regarding Evidence of Plaintiff's Disciplinary Record by ANNA LANGE filed by KENNETH E BARTON, III.(BARTON, KENNETH) Modified on 9/6/2022 to add docket text(vs). (Entered: 09/01/2022) |
| 09/02/2022 | | ***TIME CHANGE ONLY*** NOTICE OF **RESETTING** PRETRIAL CONFERENCE. Pretrial Conference RESET for 9/8/2022 at 1:00 PM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will occur **IN-PERSON**. Counsel, parties, and members of the public and press should review Standing Order 2022-03, available on the courts website, regarding courthouse entrance procedures due to COVID-19. (kat) (Entered: 09/02/2022) |
| 09/02/2022 | | Notice of Deficiency (related document(s): 227 Motion in Limine filed by ANNA LANGE, 229 Motion in Limine filed by ANNA LANGE, 228 Motion in Limine filed by ANNA LANGE ); Document must refiled. The Motion has not been filed. The Memorandum must be filed as an exhibit to the Motion. (vs) (Entered: 09/02/2022) |
| 09/02/2022 | 230 | MOTION in Limine regarding Arguments and Evidence Concerning Defendants' Liability by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Memorandum in Support of First Motion in Limine)(BARTON, KENNETH) (Entered: 09/02/2022) |
| 09/02/2022 | 231 | MOTION in Limine regarding Expert Testimony of Dr. Soety by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Memorandum in Support of Second Motion in Limine)(BARTON, KENNETH) (Entered: 09/02/2022) |
| 09/02/2022 | 232 | MOTION in Limine regarding Evidence of Plaintiff's Disciplinary Record by ANNA LANGE filed by KENNETH E BARTON, III. (Attachments: # 1 Memorandum in Support Memorandum in Support of Third Motion in Limine)(BARTON, KENNETH) (Entered: 09/02/2022) |
| 09/06/2022 | 233 | **ORDER** SETTING PRETRIAL CONFERENCE AND TRIAL (*re equal protection clause claim*): Pretrial Conference set for 2/2/2023 at 9:30 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Proposed Pretrial Order due by 1/12/2023. This case is specially set for jury trial to begin on February 27, 2023 at 9:00 a.m. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 9/6/2022. (Attachments: # 1 Required Form) (kat) (Entered: 09/06/2022) |
| 09/08/2022 | 234 | NOTICE of Filing Corrected Exhibit B in Support of Defendants' Third Motion in Limine by HOUSTON COUNTY GEORGIA, CULLEN TALTON re 224 MOTION in Limine regarding Rachel Bluebond-Langner, M.D. (Attachments: # 1 Exhibit B - Plaintiff's Disclosure of Expert Witness Pursuant to Fed.R.Civ.P.26(A)(2)(C))(LAIL, PATRICK) (Entered: 09/08/2022) |
| 09/08/2022 | 237 | MINUTE ORDER FOR FINAL PRETRIAL CONFERENCE held 9/8/2022 before CHIEF DISTRICT JUDGE MARC T TREADWELL. The Court ruled as follows: 222 Defendants' First Motion in Limine re: Plaintiff's Claims for Future Emotional Distress Damages is WITHDRAWN; 223 Defendants' Second Motion in Limine re: limitations on economic loss evidence - no ruling is required; 224 Defendants' Third Motion in Limine re: Dr. Bluebond-Langner is GRANTED in part and DENIED in part; 230 Plaintiff's First Motion in Limine re: Argument and Evidence Concerning Defendants' Liability is GRANTED subject to Plaintiff opening the door; 231 Plaintiff's Second Motion in Limine to Exclude Expert Testimony of Dr. Soety is WITHDRAWN; 232 Plaintiff's Third Motion in Limine re: Evidence of Plaintiff's Disciplinary Record is WITHDRAWN. FTR Gold START and STOP Times 1:00 - 2:48 pm. (Court Reporter Tammy DiRocco). (kat) (Entered: 09/15/2022) |
| 09/12/2022 | 235 | NOTICE of Attorney Appearance by JAMES MITCHELL FUCETOLA, IV on behalf of BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC Attorney JAMES MITCHELL FUCETOLA, IV added to party BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC(pty:dft)(FUCETOLA, JAMES) (Entered: 09/12/2022) |

| 09/12/2022 | [236](#) | NOTICE of Attorney Withdrawal by T JOSHUA ARCHER on behalf of BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC(ARCHER, T) (Entered: 09/12/2022) |
|---|---|---|
| 09/15/2022 | | NOTICE OF **SETTING** ATTORNEY COURTROOM TECHNOLOGY TESTING. ATTORNEY COURTROOM TECHNOLOGY TESTING (defendants' counsel) set for 9/16/2022 at 11:00 AM in Macon with Courtroom Deputy. ***Please have Court Security notify Chambers upon arrival.*** (kat) (Entered: 09/15/2022) |
| 09/16/2022 | [238](#) | TRANSCRIPT of Proceedings held on 9-8-22, before Judge Treadwell. Court Reporter Tammy W. DiRocco. Volume Number: 1 of 1. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (Tammy W. DiRocco) (Entered: 09/16/2022) |
| 09/16/2022 | [239](#) | NOTICE of Attorney Appearance by T JOSHUA ARCHER on behalf of BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC Attorney T JOSHUA ARCHER added to party BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA INC(pty:dft) (ARCHER, T) (Entered: 09/16/2022) |
| 09/19/2022 | 240 | INITIAL NOTIFICATION OF ELECTRONIC AVAILABILITY OF JUROR QUESTIONNAIRES. In order to obtain access to the attached juror questionnaires, you must docket CERTIFICATION RE: JUROR QUESTIONNAIRES. (hdw) (Entered: 09/19/2022) |
| 09/19/2022 | | Counsel for HOUSTON COUNTY GEORGIA, CULLEN TALTON hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(MORGAN, SHARON) (Entered: 09/19/2022) |
| 09/19/2022 | | Counsel for HOUSTON COUNTY GEORGIA, CULLEN TALTON hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(DEVENEY, WILLIAM) (Entered: 09/19/2022) |
| 09/19/2022 | | Counsel for ANNA LANGE hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(BARTON, KENNETH) (Entered: 09/19/2022) |
| 09/20/2022 | | Counsel for ANNA LANGE hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will |

| | | |
|---|---|---|
| | | destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(POWELL, WESLEY) (Entered: 09/20/2022) |
| 09/20/2022 | | Counsel for ANNA LANGE hereby certifies that the juror information forms and the information obtained therefrom are privileged and shall be kept confidential and not shared with anyone other than his or her client or other members of his or her law firm or Federal Defender organization without written consent of the United States District Court. This information shall be used only for selecting the jury. Further, counsel certifies in accordance with U.S. District Court, Middle District of Georgia, Local Rule 48, that, immediately after trial, he or she will destroy all copies of completed juror information forms and any other documents containing information obtained from the completed form and shall not use juror information for any purpose(BROWN, DAVID) (Entered: 09/20/2022) |
| 09/20/2022 | | NOTICE OF **SETTING** ATTORNEY COURTROOM TECHNOLOGY TESTING. Attorney Courtroom Technology Testing (plaintiff's counsel) set for 9/23/2022 at 10:00 AM in Macon with Courtroom Deputy. ***Please have Court Security notify Chambers upon arrival.*** (kat) (Entered: 09/20/2022) |
| 09/20/2022 | 241 | Letter from Judge Treadwell to all counsel of record. (kat) (Entered: 09/20/2022) |
| 09/22/2022 | | NOTICE OF **RESETTING** JURY TRIAL. Jury Trial PREVIOUSLY set for 9/19/2022 has been RESET for 9/26/2022 at 9:00 AM in Macon before CHIEF DISTRICT JUDGE MARC T TREADWELL. Hearing will occur **IN-PERSON**. Counsel, parties, and members of the public and press should review Standing Order 2022-03, available on the court's website, regarding courthouse entrance procedures due to COVID-19. (kat) (Entered: 09/22/2022) |
| 09/22/2022 | 242 | Letter regarding Judge Treadwell's Letter to All Counsel of Record dated 9/20/22 re 241 Letter (POWELL, WESLEY) (Entered: 09/22/2022) |
| 09/23/2022 | 243 | SUPPLEMENTAL NOTIFICATION OF AVAILABILITY OF JUROR QUESTIONNAIRES. If you have already entered a CERTIFICATION RE: JUROR QUESTIONNAIRES, it is not necessary to enter another Certification. If you have not entered a CERTIFICATION RE: JUROR QUESTIONNAIRES, you must do so in order to obtain access. (hdw) (Entered: 09/23/2022) |
| 09/23/2022 | 244 | Letter regarding the Court's trial documents (POWELL, WESLEY) (Entered: 09/23/2022) |
| 09/23/2022 | 245 | TRIAL BRIEF by ANNA LANGE (Attachments: # 1 Proposed Order Proposed Order) (BARTON, KENNETH) (Entered: 09/23/2022) |
| 09/24/2022 | 246 | Letter regarding Judge Treadwell's Letter re 241 Letter (DEVENEY, WILLIAM) (Entered: 09/24/2022) |
| 09/25/2022 | 247 | Letter regarding Plaintiff's Second Letter and Proposed Revision to Trial Documents re 244 Letter (LAIL, PATRICK) (Entered: 09/25/2022) |
| 09/25/2022 | 248 | TRIAL BRIEF by HOUSTON COUNTY GEORGIA, CULLEN TALTON(LAIL, PATRICK) (Entered: 09/25/2022) |
| 09/26/2022 | 249 | **COURT'S RULINGS** on Deposition Objections as to Dr. Rachel Bluebond-Langner. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 9/26/2022. (kat) (Entered: 09/28/2022) |
| 09/26/2022 | 250 | TEXT ONLY Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Pretrial Conference held on 9/26/2022. FTR Gold START and STOP Times 8:59AM - 9:14AM. Court Reporter: Darlene Fuller.Time in Court: 15 minutes. (ans) Modified to change hearing date to 09/26/2022 on 9/28/2022 (ans). (Entered: 09/28/2022) |

| | | |
|---|---|---|
| 09/26/2022 | [251](#) | Minute Entry **(content for administrative purposes only)** for proceedings held before CHIEF DISTRICT JUDGE MARC T TREADWELL: Jury Trial Day 1 and Day 2 held on 9/26/2022 - 9/27/2022 Court Reporter: Darlene Fuller. (vs) (Entered: 09/28/2022) |
| 09/27/2022 | [252](#) | PLAINTIFF'S TRIAL EXHIBIT by ANNA LANGE (Attachments: # [1](#) Exhibit P3 - Surgery Denial Letter, dated 11/26/2018 (Lange - HC001951-54))(vs) (Entered: 09/28/2022) |
| 09/27/2022 | [253](#) | DEFENDANTS' TRIAL EXHIBITS by HOUSTON COUNTY, GA and CULLEN TALTON (Attachments: # [1](#) Exhibit D5 - Letter dated 10/11 /18 from Dr. Soety to Dr. Bluebond-Langner [Lange 2443-24441], # [2](#) Exhibit D8 - 11/13/18 Consult notes of Dr. Bluebond-Langner [Lange 2417-2421], # [3](#) Exhibit D9 - 11/13/18 Consult notes of Dr. Lee Zhao [Lange 2422-2427])(vs) Text modified on 9/29/2022 (kat). (Entered: 09/28/2022) |
| 09/27/2022 | [254](#) | Jury Instructions (Attachments: # [1](#) Burden of Proof)(vs) (Entered: 09/28/2022) |
| 09/27/2022 | [255](#) | Jury Notes/Questions(vs) (Entered: 09/28/2022) |
| 09/27/2022 | [256](#) | JURY VERDICT for ANNA LANGE(vs) (Entered: 09/28/2022) |
| 09/27/2022 | [257](#) | Jury Verdict signature page (Un-redacted) Related document: [256](#) JURY VERDICT.(vs) (Entered: 09/28/2022) |
| 10/03/2022 | [258](#) | **ORDER** FOR PERMANENT INJUNCTIVE AND DECLARATORY RELIEF. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/3/2022. (kat) (Entered: 10/03/2022) |
| 10/17/2022 | [259](#) | TRANSCRIPT of Jury Trial held on 09/26/2022 and 09/27/2022, before Chief Judge Marc T. Treadwell. Court Reporter Darlene D. Fuller. The transcript may be inspected at the court or purchased through the court reporter for a period of 90 days. After 90 days, the transcript may be obtained via PACER. REDACTION OF TRANSCRIPTS: Complete redaction policy available on the courts website. (ddf) Text modified on 10/17/2022 (kat). (Entered: 10/17/2022) |
| 10/17/2022 | [260](#) | MOTION to Stay re [258](#) Order by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by RICHARD READ GIGNILLIAT. (Attachments: # [1](#) Memorandum in Support, # [2](#) Exhibit A - The New York Times Article 05/10/2022)(GIGNILLIAT, RICHARD) Modified on 10/18/2022 to edit docket text(vs). (Entered: 10/17/2022) |
| 10/19/2022 | [261](#) | **PRETRIAL ORDER** (*as to Title VII Damages*). Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/19/2022. (Attachments: # [1](#) Exhibit - PTO Attachment A, # [2](#) Exhibit - PTO Attachment B, # [3](#) Exhibit - PTO Attachment C, # [4](#) Exhibit - PTO Attachment D, # [5](#) Exhibit - PTO Attachment E, # [6](#) Exhibit - PTO Attachment F, # [7](#) Exhibit - PTO Attachment G). (kat) (Entered: 10/19/2022) |
| 10/21/2022 | [262](#) | NOTICE OF APPEAL as to [258](#) Order by HOUSTON COUNTY GEORGIA, CULLEN TALTON. Filing fee $ 505, Receipt No.: AGAMDC-4212594. (Attachments: # [1](#) Exhibit A - Docket 258 ORDER for Permanent Injunctive and Declaratory Relief)(MORGAN, SHARON) (Entered: 10/21/2022) |
| 10/21/2022 | | Appeal Instructions re [262](#) Notice of Appeal,. The Transcript Information Form and instructions are available on the District Court website under Forms & Guides. **PLEASE NOTE** Separate forms must be filed for each court reporter. Transcript Order Form due by 11/7/2022 (vs) (Entered: 10/21/2022) |
| 10/21/2022 | [263](#) | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re: [262](#) Notice of Appeal, [258](#) Order Judge Appealed: Marc T. Treadwell. Court Reporter: Darlene Fuller. Fee: Paid. (vs) (Entered: 10/21/2022) |
| 10/27/2022 | [264](#) | Request for Local Rule 6.2 Clerks Extension re [260](#) MOTION to Stay Pending Appeal re [258](#) Order by ANNA LANGE (POWELL, WESLEY) (Entered: 10/27/2022) |
| 10/28/2022 | | Notice of Clerk's Granting of Extension Pursuant to re: [260](#) MOTION to Stay Pending Appeal re [258](#) Order filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA (vs) (Entered: |

| | | 10/28/2022) |
|---|---|---|
| 10/31/2022 | 265 | This is a text only entry; no document issued. **ORDER**. The Court's October 3, 2022, order 258 is **STAYED** pending resolution of the defendants' motion for stay pending appeal 260 . Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 10/31/2022. (bwr) (Entered: 10/31/2022) |
| 10/31/2022 | 266 | USCA Case Number 22-13626-DD re 262 Notice of Appeal, filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA. (vs) (Entered: 10/31/2022) |
| 10/31/2022 | 267 | MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 - Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 - Expert Report of Joan Barrett, FSA, MAAA, # 4 Exhibit 3 - Deposition of Joan Barrett 8-24-21, # 5 Exhibit 4 - Actuarial Standard of Practice No. 1, # 6 Exhibit 5 - Actuarial Standard of Practice No. 41, # 7 Exhibit 6 - Expert Report of James P. Galasso, # 8 Exhibit 7 - Declaration of Kenneth Carter, # 9 Exhibit 8 - Expert Report of Joan C Barrett and Elaine T Corrough Submitted on Behalf of the Plaintiffs)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | 268 | MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 - Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 - Plaintiff's Disclosure of Expert Witness Pursuant to Fed.R.Civ.P26(A)(2)(C), # 4 Exhibit 3 - Health Insurance Coverage of Gender-Affirming Top Surgery in the United States, # 5 Exhibit 4 - Anna Lange 4-2-21 Deposition Excerpt Pages, # 6 Exhibit 5 - Declaration of Kenneth Carter, # 7 Exhibit 6 - Declaration of Joan C. Barrett, # 8 Exhibit 7 - Expert Report of Joan C. Barrett and Elaine T. Corrough Submitted on Behalf of the Plaintiffs)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | 269 | MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 - Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 - Expert Report of Paisley Currah, # 4 Exhibit 3 - 2015 - U.S. Transgender Survey - GA State Report)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | 270 | MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D. by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 - Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 - Expert Report of Loren S. Schechter, M.D., # 4 Exhibit 3 - Societal Implications of Health Coverage for Medically Necessary Services in the U.S. Transgender Population, # 5 Exhibit 4 - The implications of Allowing Transgender Personnel to Serve Openly in the U.S. Military, # 6 Exhibit 5 - Declaration of Kenneth Carter)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | 271 | MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by PATRICK L LAIL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 - Plaintiff's Expert Witness Identifications, # 3 Exhibit 2 - Plaintiff's Expert Witness Report for Chanel Haley, # 4 Exhibit 3 - 2015 U.S. Transgender Survey GA State Report)(LAIL, PATRICK) (Entered: 10/31/2022) |
| 10/31/2022 | 272 | MOTION to Continue *of Jury Trial Set for February 27, 2023* by HOUSTON COUNTY GEORGIA, CULLEN TALTON filed by WILLIAM DRUMMOND DEVENEY. (Attachments: # 1 Memorandum in Support)(DEVENEY, WILLIAM) (Entered: 10/31/2022) |
| 11/01/2022 | 273 | This is a text only entry; no document issued. **ORDER** FOR RESPONSE TO MOTION re: 272 MOTION to Continue *Jury Trial Set for February 27, 2023* filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA. Lange shall respond to 272 defendants' motion for continuance by November 11, 2022. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/1/2022. (kat) (Entered: 11/01/2022) |

| | | |
|---|---|---|
| 11/04/2022 | 274 | USCA Case Number 22-13626-DD re 262 Notice of Appeal, filed by CULLEN TALTON, HOUSTON COUNTY GEORGIA. (vs) (Entered: 11/04/2022) |
| 11/04/2022 | 275 | TRANSCRIPT INFORMATION FORM by HOUSTON COUNTY GEORGIA, CULLEN TALTON. re 262 Notice of Appeal, *Tammy DiRocco* (GIGNILLIAT, RICHARD) (Entered: 11/04/2022) |
| 11/04/2022 | 276 | TRANSCRIPT INFORMATION FORM by HOUSTON COUNTY GEORGIA, CULLEN TALTON. re 262 Notice of Appeal, *Darlene D. Fuller* (GIGNILLIAT, RICHARD) (Entered: 11/04/2022) |
| 11/07/2022 | 277 | Notice of Filing Official Transcript to all parties re 221 Transcript of Proceedings, 238 Transcript of Proceedings,.(Tammy W. DiRocco) (Entered: 11/07/2022) |
| 11/08/2022 | 278 | ***Refiled at 279 *** Letter regarding Proposed Consent Order for Continuance of Jury Trial Set for February 27, 2023 re 272 MOTION to Continue *of Jury Trial Set for February 27, 2023*, 273 Order for Response to Motion, (Attachments: # 1 Proposed Order)(POWELL, WESLEY) Modified on 11/10/2022 to add docket text(vs). (Entered: 11/08/2022) |
| 11/09/2022 | | Notice of Deficiency (related document(s): 278 Letter, filed by ANNA LANGE); Document is a response to a motion, which is not in the proper format, and does not contain the filer's e-mail address in the signature block. The response must be re-filed using correct event which is "Response to Motion."(ggs) (Entered: 11/09/2022) |
| 11/09/2022 | 279 | RESPONSE filed by ANNA LANGE re 272 MOTION to Continue *of Jury Trial Set for February 27, 2023* (Attachments: # 1 Proposed Order)(POWELL, WESLEY) (Entered: 11/09/2022) |
| 11/11/2022 | 280 | RESPONSE filed by ANNA LANGE re 260 MOTION to Stay Pending Appeal re 258 Order (Attachments: # 1 Exhibit A - Defendants' Attorneys' Fees)(POWELL, WESLEY) (Entered: 11/11/2022) |
| 11/17/2022 | 281 | **ORDER** TERMINATING 267 MOTION To Exclude Plaintiff's Expert Testimony- Joan Barrett ; TERMINATING 268 MOTION To Exclude Plaintiff's Expert Testimony - Rachel Bluebond-Langner, M.D. ; TERMINATING 269 MOTION To Exclude Plaintiff's Expert Testimony: Paisley Currah ; TERMINATING 270 MOTION To Exclude Plaintiff's Expert Testimony - Loren S. Schechter, M.D.; TERMINATING 271 MOTION To Exclude Plaintiff's Expert Testimony: Chanel Haley ; and GRANTING 272 MOTION to Continue of Jury Trial Set for February 27, 2023. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 11/17/2022. (kat) (Entered: 11/17/2022) |
| 11/18/2022 | | NOTICE OF <span style="color:red">**CANCELLATION**</span> OF PRETRIAL CONFERENCE. Pretrial Conference previously scheduled for 2/2/2023 is CANCELLED. (kat) (Entered: 11/18/2022) |
| 11/21/2022 | 282 | Request for Local Rule 6.2 Clerks Extension re 260 MOTION to Stay Pending Appeal re 258 Order by HOUSTON COUNTY GEORGIA, CULLEN TALTON (DEVENEY, WILLIAM) (Entered: 11/21/2022) |
| 11/21/2022 | | Notice of Clerk's Granting of Extension Pursuant to re: Defendants Reply Brief to Plaintiffs Response to Defendants Motion to Stay Pending Appeal 280 and 260 Motion.(ksl) Modified on 11/22/2022 to add link (ggs). (Entered: 11/21/2022) |
| 12/09/2022 | 283 | REPLY to Response filed by HOUSTON COUNTY GEORGIA, CULLEN TALTON re 260 MOTION to Stay Pending Appeal re 258 Order (LAIL, PATRICK) (Entered: 12/09/2022) |
| 12/12/2022 | 284 | MOTION for Extension of Time to File her Motions for Attorneys' Fees and Costs. by ANNA LANGE filed by WESLEY POWELL.(POWELL, WESLEY) (Entered: 12/12/2022) |
| 12/14/2022 | 285 | This is a text only entry; no document issued. **ORDER** GRANTING 284 Motion for Extension of Time. The Plaintiff shall file her Motions for Attorneys' Fees and Costs within thirty (30) days of the expiration of the time for any party to seek reconsideration or to obtain a grant of |

| | | |
|---|---|---|
| | | certiorari from the United States Supreme Court of the Court of Appeals' opinion on Defendants' pending appeal. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 12/14/2022. (bwr) (Entered: 12/14/2022) |
| 12/20/2022 | | Pursuant to F.R.A.P 11(c) the Clerk of the District Court for the Middle District of Georgia certifies that the record is complete for purposes of this appeal re: 262 Notice of Appeal,. The entire record on appeal is available electronically (vs) (Entered: 12/20/2022) |
| 01/09/2023 | 286 | **ORDER** FOR RESPONSE. The parties shall supplement their briefs to address what effect, if any, Adams has on the defendants' 260 motion to stay injunctive relief pending appeal by January 23, 2023. Ordered by CHIEF DISTRICT JUDGE MARC T TREADWELL on 1/9/2023. (kat) (Entered: 01/09/2023) |

| | | | |
|---|---|---|---|
| **PACER Service Center** | | | |
| **Transaction Receipt** | | | |
| 01/20/2023 09:56:57 | | | |
| **PACER Login:** | et0016 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:19-cv-00392-MTT |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

179-3

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:19-CV-00392-MTT |
| HOUSTON COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF
UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Houston County, Georgia, and Defendant Houston County Sheriff Cullen Talton, in his official capacity ("Defendants") respond to Plaintiff Anna Lange's Local Rule 56 Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment (ECF No. 174)[1] as follows:

**I.     Transgender People, Gender Dysphoria, and Gender Transition[2]**

1.

Transgender is a term used to describe a person whose gender identity—*i.e.*, an internal sense of who they know themselves to be—differs from the sex they were assigned at birth. Decl. of Loren S. Schechter M.D. in Support of Plaintiff's Mot. for Summ. J. ("Schechter Decl.") at Ex. 1, ¶ 18. *See also* Decl. of Jill K. Grant in Support of Plaintiff's

---

[1] Plaintiff's Statement of Undisputed Material Facts was originally filed as ECF No. 140-2.  It was re-filed to correct paragraph numbering issues as ECF No. 174.

[2] Defendants include the headings from Plaintiff's Statement only as a marker for the Court's assessment of the Response; not as an endorsement of the headings themselves.

Motion for Summary Judgment ("Grant Decl."), Ex. A Carter Dep., Feb. 23, 2021 ("Carter Dep.") at 31:8-13.

**RESPONSE:**

Undisputed.

2.

This dissonance between one's gender identity and sex assigned at birth can cause intent [*sic*] and persistent discomfort, including "clinically significant distress or impairment in social, occupational, or other important areas of functioning." Schechter Decl. at Ex. 1, ¶¶ 19–20.

**RESPONSE:**

Undisputed.

3.

The medical diagnosis for this incongruence and associated distress is gender dysphoria. *Id.*; Decl. of Declaration of Rachel Bluebond-Langner, M.D in Support of Plaintiff's Mot. for Summ. J. ("Bluebond-Langner Decl.") at Ex. 1, ¶ 17. Gender dysphoria is defined by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-5) as "a difference between one's experienced/expressed gender and assigned gender, and significant distress or problems functioning." Schechter Decl. at Ex. 1, ¶19.

**RESPONSE:**

Defendants object to SUMF No. 3 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.

4.

Many transgender people experience gender dysphoria at some point in their lives. Schechter Decl. at Ex. 1, ¶ 21.

**RESPONSE**:

Undisputed.

5.

Gender dysphoria has a physiological and biological etiology; the condition derives from an atypical interaction of the endocrine and neurological systems, which results in a person being born with external sex characteristics and hormones that are inconsistent with the person's gender perception. Bluebond-Langner Decl. at Ex. 1, ¶ 18.

**RESPONSE**:

Disputed.  Dr. Bluebond-Langner's Declaration contradicts itself.  On the one hand, quoting from an article summarizing the Endocrine Society's view, Paragraph 19 of her Declaration states on the one hand "Considerable scientific evidence has emerged *demonstrating a durable biological element underlying gender identity*. Individuals may make choices due to other factors in their lives, but there do not seem to be external forces that genuinely cause individuals to change gender identity."  On the other hand, however, that same Paragraph admits: "Although the *specific* mechanisms guiding the biological underpinnings of gender identity are not entirely understood, there is *evolving consensus* that being transgender is not a mental health disorder. Such evidence stems from scientific studies *suggesting* …"  (ECF 144-1, ¶ 19 (emphasis added).)  These findings indicate that the definitive statement in Paragraph 5 above is not entitled to credence.

6.

Left untreated, gender dysphoria can lead to clinically significant personal suffering and comorbidities, including anxiety, depression, self-harm, and suicidality. Schechter Decl. at Ex. 1, ¶ 19. These effects can intensify over time. Schechter Decl. at Ex. 1, ¶ 20.

**RESPONSE**:

Defendants object to Paragraph 6 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately. Undisputed.

7.

Gender dysphoria is treatable. *See* Schechter Decl. at Ex. 1, at ¶21.

**RESPONSE:**

Undisputed.

8.

Since 1979, the World Professional Association for Transgender Health ("WPATH"), a non-profit professional and educational organization devoted to transgender health, has promulgated Standards of Care ("SOC")—guidelines for the clinical management of gender dysphoria that reflect the best available scientific evidence and expert professional consensus. Schechter Decl. at Ex. 1, at ¶ 23.

**RESPONSE:**

Disputed.  Plaintiff's citation to the record evidence does not support the fact. Defendants also object to SUMF No. 8 on the grounds that the admissibility cannot be established merely by the ipse dixit of even a qualified expert.  United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004).

9.

The major health professional associations—including the American Medical Association, the Endocrine Society, the American Psychiatric Association, the American Psychological Association, the American College of Physicians, the American Osteopathic Association, and the American College of Obstetrics and Gynecology—endorse protocols in line with the SOC and/or call for insurance coverage of these treatments. See Schechter Decl. at Ex. 1, at ¶¶ 24, 24, 33; Bluebond-Langner Decl. at Ex. 1, ¶ 21.

**RESPONSE:**

Disputed.  Plaintiff's citation to Exhibit 1 to Dr. Schechter's Declaration does not support the fact.  Defendants also object to SUMF No. 9 on the grounds that the admissibility cannot be established merely by the ipse dixit of even a qualified expert. United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004).

10.

Effective treatment options for gender dysphoria, as outlined in the SOC, include mental health care, hormone therapy, and surgical procedures. See Schechter Decl. at Ex. 1, at ¶ 25.

**RESPONSE:**

Undisputed.

11.

Social transition involves bringing a person's gender expression and social sex role into alignment with their affirmed sex, such as by wearing clothes, using a new name and pronouns, and interacting with one's peers and social environment in a manner that matches the person's affirmed sex. Schechter Decl. at Ex. 1, at ¶ 25.

**RESPONSE:**

Undisputed.

12.

Pharmacological transition (or hormone replacement therapy) is the prescription of drugs, generally by an endocrinologist, to change the hormone balance in a person's body to be consistent with their affirmed sex. Schechter Decl. at Ex. 1, at ¶ 26.

**RESPONSE**:

Undisputed.

13.

Surgical transition entails surgical modification of secondary sex characteristics to align a person's primary and/or secondary sex characteristics with the person's gender identity. Schechter Decl. at Ex. 1, at ¶ 27.

**RESPONSE**:

Undisputed.

14.

Gender-confirming surgeries are "medically necessary" for many people with gender dysphoria. Schechter Decl. at Ex. 1, at ¶¶27-28; Grant Decl., Ex. N Defs.' Resp. to First Set of RFAs at No. 3 (admitting that "gender transition, or 'sex change' as that term is used in the Health Plan [as defined in the RFA and in paragraph 44 herein], can be medically necessary treatment for gender dysphoria for some people").

**RESPONSE**:

Undisputed, but Dr. Schechter's report states that "[n]o particular procedure is inherently cosmetic or inherently medically necessary; rather, the underlying diagnosis

determines whether procedure is considered cosmetic or medically necessary.  (Doc. 148-2, ¶ 26.)

15.

Accordingly, third-party administrator for the Defendants' health plan, the health insurance company Anthem Blue Cross Blue Shield ("Anthem") maintains a "Clinical U[tilization] M[anagement] Guideline" ("Guideline") of criteria for when it deems gender-confirming surgery to be "medically necessary." *See* Grant Decl., Ex. A Carter Dep. at Ex. 2.

**RESPONSE**:

Undisputed.

16.

Under the Guideline, surgery is medically necessary if there is "significant functional impairment AND the procedure can be reasonably expected to improve the functional impairment." Grant Decl., Ex. S at p.1 (BCBS 000224).

**RESPONSE**:

Undisputed.

17.

Treatments that underlie gender-confirming care involve the same procedures (as indicated by use of the same CPT codes) that are used to treat non-transgender individuals. *See* Schechter Decl., at Ex. 2 at ¶¶ 37–40. For example, surgeons perform procedures to reconstruct genitalia—including phalloplasties and vaginoplasties—following oncologic resection, traumatic injury, infection, or to address congenital conditions. *Id.* at ¶ 39.

**RESPONSE**:

Disputed.  Defendants object to SUMF No. 17 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately. Defendants also object to SUMF No. 17 on the grounds that the admissibility cannot be established merely by the ipse dixit of even a qualified expert, and Dr. Schechter is not qualified to testify as an expert on CPT codes.  United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004).  To the extent Dr. Schechter contends that a billing insurer uses the same CPT code to bill for a vaginoplasty performed on cisgender female as gender-norming surgery performed on a transgender female, his Report does not provide any basis for supporting that fact.

18.

"These medical procedures do not become more expensive simply because they are being performed for the purpose of treating gender dysphoria." *Id.* at ¶ 36.

**RESPONSE**:

Defendants object to SUMF No. 18 as immaterial.  Defendants also object to SUMF No. 18 on the grounds that the admissibility cannot be established merely by the ipse dixit of even a qualified expert, and Dr. Schechter is not qualified to testify as an expert on CPT codes.  United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004).

Undisputed only with regard to that a procedure in a hospital billed based on a CPT code will generally not be more expensive than the same procedure with the same CPT code in the same hospital.

19.

Research indicates that "the one-time costs of gender-confirmation surgeries coupled with standard post-operative, primary and maintenance care, were overall less

-8-

expensive at 5 and 10-year marks, as compared to the long-term treatment of the negative health outcomes associated with lack of insurance and resulting healthcare access." *Id.* at ¶ 41.

**RESPONSE**:

Defendants object to SUMF No. 19 as immaterial.  Defendants also object to SUMF No. 19 on the grounds that the admissibility cannot be established merely by the ipse dixit of even a qualified expert.  United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004).

Disputed.  Defendants' expert explained that, given the uncertainty of both pricing and utilization of transgender surgery, a single year could see a material spike in costs. Doc. 167 at 116:9-119:9.

20.

Transgender people constitute approximately 0.58% of the adult population. *See* Decl. of Paisley Currah in Support of Plaintiff's Mot. for Summ. J. ("Currah Decl.") at Ex. 1, ¶ 65.

**RESPONSE**:

Undisputed, but Defendants object to SUMF No. 20 as immaterial.

21.

Transgender people are perceived as a discrete social group due to their defining characteristic of living in a gender other than that assigned at birth. Currah Decl. at Ex. 1, ¶ 46. They have been targeted for discrimination on that basis. Currah Decl. at Ex. 1, ¶¶ 3, 12, 17–45, 51.

**RESPONSE**:

Defendants object to SUMF No. 21 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately. Defendants also object to SUMF No. 21 as immaterial.

Disputed.   Plaintiff's citation to the record evidence does not support the fact: Currah did not state that transgender people are perceived as a discrete social group.  (Doc. 145-1, Ex. 1, ¶ 46.)

22.

Transgender people have historically been subjected to discrimination in all facets of life. Currah Decl. at Ex. 1, ¶¶ 11–13. That discrimination remains pervasive today. *Id*.

**RESPONSE**:

Defendants object to SUMF No. 22 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately. Defendants also object to SUMF No. 22 as immaterial.

Undisputed.

23.

Transgender people routinely encounter discrimination in employment, housing, education, and in government services. Currah Decl. at Ex. 1, ¶¶ 22–44; Decl. of Chanel Haley in Support of Plaintiff's Mot. for Summ. J. ("Haley Decl.") at Ex. 1, ¶¶ 14–18. Rates are even higher among transgender women and transgender people of color. Haley Decl. at Ex. 1, ¶ 18.

**RESPONSE**:

Defendants object to SUMF No. 23 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately. Defendant objects to SUMF No. 23 as immaterial.

Disputed.  These conclusions appear to be based on allegations of individuals other than the declarants.  Doc. 130-3 at 10, ¶ 23, p. 13, ¶ 27.

24.

Transgender people are significantly underrepresented politically. Currah Decl. at Ex. 1, ¶ 58. The first openly transgender member of a state legislature was elected in 2017, and transgender people remain underrepresented in state legislatures in proportion to their share of the population by a factor of four. *Id*. No person known to be transgender has ever been elected to federal office. *Id*. There has never been a cabinet secretary known to be transgender. *Id*. at ¶ 59. It was not until this year that the U.S. Senate confirmed an openly transgender person in any executive role. *Id*.

**<u>RESPONSE</u>**:

Defendants object to SUMF No. 24 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed, but Defendants also object to SUMF No. 24 as immaterial.

25.

Due to their lack of political influence, transgender people have had only limited success in combatting a wave of discriminatory laws and policies enacted at the state and federal levels in recent years. *Id*. at ¶¶ 60–69. *See also* Haley Decl. at Ex. 1, ¶¶ 30–35 (transgender people have had only limited success in in obtaining protection against discrimination under state and local law in Georgia).

**RESPONSE**:

Defendants object to SUMF No. 25 as immaterial.

Disputed.   Defendants also object to SUMF No. 25 as setting forth a legal conclusion.   Defendants also object to SUMF No. 25 on the grounds that the admissibility cannot be established merely by the ipse dixit of even a qualified expert.   United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004).

26.

Neither transgender status nor gender dysphoria have a bearing on a person's ability to work, to care for others, or to participate in civic life. *See* Currah Decl. at Ex. 1, ¶ 51.

**RESPONSE**:

Undisputed, but immaterial to this case.

27.

Despite a history of social animus against them, transgender people have excelled as creators, performers, teachers, attorneys, physicians, and elected officials, among many other professions. *Id*. ¶ 54.

**RESPONSE**:

Undisputed, but immaterial to this case.

## II.    **The Parties**

### *Plaintiff Sergeant Anna Lange*

28.

Sgt. Lange has worked in law enforcement for twenty-five years and has served as a deputy in the Sheriff's office of Houston County, Georgia (the "County") since 2006. *See* Decl. of Sgt. Anna Lange in Support of Plaintiff's Mot. for Summ. J. ("Lange Decl.") at ¶

4. Sgt. Lange is a capable investigator who "has performed her duties as an investigator very well, before, during and after this process." Grant Decl., Ex. H HC Dep. (B. Holland) at 78:11-79:6.

**RESPONSE**:

Undisputed.

29.

Sgt. Lange is also a transgender woman, meaning that although she was assigned a male sex at birth, her internal knowledge of herself has always been that she is female. *See* Lange Decl. at ¶ 6.

**RESPONSE**:

Undisputed.

30.

Sgt. Lange is the only openly transgender employee in the Sheriff's Office and the County and the only transgender member of the Defendants' health plan. *See* Grant Decl., Ex. A Carter Dep. at 93:4–12; Grant Decl., Ex. H Houston County 30(b)(6) Dep. (B. Holland), Apr. 15, 2021 ("HC Dep. (B. Holland)") at 51:14-20; Grant Decl., Ex. E SO Dep. (Rape) at 75:2–8; Def. Sheriff Talton's (in His Official Capacity) Answer and Affirmative Defenses to Plaintiff's Am. Compl. (ECF No. 96) ("Def. Sheriff Talton's Answer") at ¶ 41.

**RESPONSE**:

Undisputed.

31.

Sgt. Lange began her gender transition in 2017, after being diagnosed with gender dysphoria by her health care provider. *See* Lange Decl. at ¶ 9.

**<u>RESPONSE</u>**:

Undisputed.

32.

After her diagnosis, Sgt. Lange began sustained treatment—namely, a gender transition. *Id*.

**<u>RESPONSE</u>**:

Undisputed.

33.

In consultation with her health professionals, Sgt. Lange has transitioned socially. *See id*. She lives fully and consistently with her female identity: she told her family, friends, and employers; she exclusively uses her female name, Anna, and female pronouns; and she wears typical women's clothing. *See id*.

**<u>RESPONSE</u>**:

Undisputed.

34.

Sgt. Lange also takes a regimen of hormone replacement therapy prescribed by her endocrinologist, which is comprised of estradiol, a form of estrogen, and spironolactone, a testosterone blocker. *See id*. This is necessary to avoid masculinization of Sgt. Lange's body, which would exacerbate her gender dysphoria and negatively affect her day-to-day functioning. *See* Bluebond-Langner Decl. at Ex. 1, ¶ 26.

**RESPONSE**:

Undisputed.

35.

Sgt. Lange also obtained top surgery to feminize her chest. *See* Grant Decl., Ex. R Zhao Evaluation at p.1 (Lange_00002422); Lange Decl. at ¶¶ 9, 14.

**RESPONSE**:

Undisputed.  Plaintiff acknowledged she paid for this surgery.  (Doc. 150-18, Pl. Dep. II, p. 155:1-11.)

36.

Nevertheless, Sgt. Lange still feels significant distress and anxiety due to the incongruence between her female gender identity and her remaining male physical characteristics, including her genitalia. *See* Lange Decl. at ¶¶ 15, 22; Bluebond-Langner Decl. at Ex. 1, ¶¶ 31, 33–34.

**RESPONSE**:

Disputed.  Plaintiff is not so distressed that she cannot perform a law enforcement job as a criminal investigator, work side jobs, and engage in hobbies like beekeeping, refereeing soccer, and playing in a competitive tennis league all the way to the state championships for her division.  (Doc. 137-3 at 12:12-22, 38:2-39:18.)

37.

Accordingly, upon the recommendation of her endocrinologist, two psychologists, and a surgeon, Sgt. Lange has determined that vaginoplasty, also known as "bottom surgery," is the next step in her treatment. *See* Bluebond-Langner Decl. at Ex. 1, ¶ 24; Lange Decl. at ¶

21; Grant Decl., Ex. L Lange Dep., Sept. 14, 2021 ("Lange II Dep.") at Ex. 42, p. 3 (Lange_00002425).

**RESPONSE**:

Undisputed.

38.

Sgt. Lange has fully complied with and met the medical necessity criteria for a vaginoplasty under Anthem's Guidelines. *See* Bluebond-Langner Decl. at Ex. 1, ¶¶27, 33–34.

**RESPONSE**:

Undisputed.

### *Defendant Sheriff Cullen Talton*

39.

Cullen Talton is the Sheriff of Houston County, Georgia and he has served in this position since 1973. See Grant Decl., Ex. B Sheriff Talton Dep., Mar. 25, 2021 ("Sheriff Talton Dep.") at 10:12-14.

**RESPONSE**:

Undisputed.

40.

Sheriff Talton is a constitutional officer, a separate entity from the County under the Georgia Constitution. Grant Decl., Ex. E Sheriff's Office 30(b)(6) Dep. (Rape), Apr. 13, 2021 ("SO (Rape) Dep.") at 32:4–13.

**RESPONSE**:

Undisputed.

41.

The Sheriff has had at least 15 employees each year since 2017 and is engaged in the business of government, which affects interstate commerce. Grant Decl., Ex. N Defs.' Resp. to First Set of RFAs at No. 9.

**RESPONSE**:

Undisputed.

42.

The Sheriff has not placed his employees in the County's civil service system. See Grant Decl., Ex. P Def. Sheriff Talton's Resp. to Second Set of RFAs at No. 5.

**RESPONSE**:
Undisputed.

### *Defendant Houston County, Georgia*

43.

The Houston County Board of Commissioners (the "Commissioners") is the governing authority for Houston County, which is comprised of 5 commissioners (the "County"). See Houston County, Georgia, https://www.houstoncountyga.org/commissioner/contact-information.cms (last visited Nov. 3, 2021); Grant Decl., Ex. A Carter Dep. at 53:20–22.

**RESPONSE**:

Undisputed.

44.

The Commissioners sponsor a healthcare plan (the "Health Plan") for all full-time employees of the County, the Sheriff's Office, the Houston County Tax Commissioners,

the Houston County Clerk of the Superior Court, the Houston County Probate Court, and the Houston County District Attorney. *See* Grant Decl., Ex. A Carter Dep. at Ex. 1; Grant Decl., Ex. A Carter Dep. at 22:19-23:7; 26:3-5; Grant Decl., Ex. G Houston County 30(b)(6) Dep. (K. Carter), Apr. 15, 2021 ("HC Dep. (Carter I)") at 14:7-15:12, 16:17-25.

**RESPONSE**:

Undisputed.

45.

The County has had at least 15 employees each year since 2017 and is engaged **in** the business of government, which affects interstate commerce. *See* Grant Decl., Ex. N Defs.' Resp. to First Set of RFAs at No. 9.

**RESPONSE**:

Undisputed.

## III. **The Intergovernmental Relationship**

46.

The Sheriff's Office has delegated certain employment functions to the County, pursuant to an unwritten agreement. *See* Grant Decl., Ex. E SO Dep. (Rape) at 35:4-39:11.

**RESPONSE**:

Disputed. Rape described the intergovernmental relationship and did not use the term "delegate." (Doc. 165 at 35:4-39:11.) Moreover, the Sheriff's Office acknowledged it has the option to obtain other insurance; thus, it retains authority over the provision of health insurance and has not delegated it to the County. (Doc. 157 at 81:4-10)

47.

Kenneth Carter is the Director of Personnel for Houston County and is responsible for the administration of benefits, including the Health Plan. *See* Grant Decl., Ex. A Carter Dep. at 11:11–13, 15:12–16, 16:11–17:3.

**<u>RESPONSE</u>**:

Undisputed that Carter is the Director of Personnel and *internally* administers benefits. However, the claims administrator is Anthem, which adjudicates claims and determines whether a claim is covered under the plan. (Doc. 150-4 at 109; Doc. 137-4 at ¶ 3.)

48.

In this role, Mr. Carter reports to the Director of the Administration, Barry Holland, as well as to the Commissioners. *See* Grant Decl., Ex. A Carter Dep. at 15:17-23.

**<u>RESPONSE</u>**:

Undisputed.

49.

Mr. Carter's responsibilities for the Health Plan include, among other things, obtaining the Commissioners' approval for changes to the Health Plan. *See* Grant Decl., Ex. G HC Dep. (Carter I) at 21:24–22:19.

**<u>RESPONSE</u>**:

Undisputed.

50.

Although the Commissioners are responsible for deciding what changes, if any, will be made, their decision is guided by recommendations from Mr. Carter and his superior,

Mr. Holland. *See* Grant Decl., Ex. G HC Dep. (Carter I) at 22:20-25; 23:2; Grant Decl., Ex. A Carter Dep. at 49:3-5.

**RESPONSE**:

Undisputed.  It is standard that elected officials receive staff recommendations on various matters.  (Doc. 150-15 at 90:2-91:7).

51.

Not all changes relating to the Health Plan requires approval by the entire Board of Commissioners. *See* Grant Decl., Ex. A Carter Dep. at 46:24-48:4; 49:6-8.

**RESPONSE**:

Undisputed.

52.

The Sheriff's Office uses the County Personnel Policy Manual, which contains policies that apply to all Sheriff's Office employees. *See generally* Grant Decl., Ex. E SO Dep. (Rape) at Ex. 12. *See also* Grant Decl., Ex. E SO Dep. (Rape) at 116:19–118:11.

**RESPONSE**:

Disputed.  The cited testimony establishes that the Sheriff's Office has its own policies, it follows certain County policies like EEO, and Sheriff's Office employees *used to* receive a copy of the County policies, but that process was stopped because employees were confused who they work for.  Doc. 165 at 116:19-118:11.

53.

As a part of this onboarding process, the County handles the new hire's paperwork and holds an orientation for them. See Grant Decl., Ex. G HC Dep. (Carter I) at 18:3-18.

**RESPONSE**:

Disputed.  The County's role is only to provide a benefits orientation.  (Doc. 150-11 at 123:2-18).

54.

When the Sheriff's Office terminates an employee or an employee otherwise leaves, the County also handles the employees off boarding with respect to payroll and benefits. See Grant Decl., Ex. G HC Dep. (Carter I) at 19:3-13.

**RESPONSE**:

Undisputed.  After the Sheriff's Office makes the termination decision, the County removes the person from benefits.  (Doc. 150-11 at 46:4-14; Doc. 150-14 at 19:3-13).

55.

The County also provides consultation to Sheriff's Office regarding individual human resources issues; for example, Mr. Carter has had two meetings with the Sheriff about Sgt. Lange regarding issues other than the Health Plan—the first on Sgt. Lange's transitioning and work and the second when the Sheriff "ask[ed him] on an HR sort of advice" around a disciplinary issue. See Grant Decl., Ex. C, Lange Dep., Apr. 2, 2021 ("Lange I Dep.") at 55:3-58:7; Grant Decl., Ex. A Carter Dep. at 111:8-112:19, 188:10–189:2-20.

**RESPONSE**:

Disputed.  The Sheriff's Office makes its own employment decisions.  (Doc. 150-11 at 33:20-34:4; Doc. 150-14 at 19:3-13).  Carter met with the Sheriff at the time of her transition at *Plaintiff's* request.  (Doc. 137-3 at 56:6-8; Doc 150-1 at 111:12-21.)  Carter's meeting with the Sheriff's Office about a disciplinary issue involving Plaintiff was a rare

-21-

occurrence, and Carter merely provided input for the Sheriff's Office's consideration. (Doc. 150-1 at 188:18-25.)

56.

The County also administers employee payroll for the Sheriff's Office. See Grant Decl., Ex. G HC Dep. (Carter I) at 35:19-21.

**RESPONSE**:

Undisputed.

57.

Accordingly, "Houston County Commissioners" is listed as Sgt. Lange's employer on both her IRS Form W-2 and IRS Form 1095-C. See Def. Sheriff Talton's Answer at ¶ 20.

**RESPONSE**:

Undisputed.

58.

As part of administering the Sheriff's Office onboarding for new employees, the County will add them to the Health Plan, if they choose to participate in it. See Grant Decl., Ex. G HC Dep. (Carter I) at 17:13-15; 18:2-25.

**RESPONSE**:

Undisputed.  The County adds those employees to the Health Plan at the Sheriff's Office's and the employee's direction.  (Doc. 150-14 at 18:4-19:2.)

IV.     **The Health Plan**

59.

The Sheriff's Office provides health insurance benefits to its employees as a

-22-

component of their compensation package. See Def. Sheriff Talton's Answer at ¶ 42; Grant Decl., Ex. V (letter from Houston County to Sgt. Lange showing her "personalized total compensation" and including her health insurance benefits in the total amount).

**RESPONSE**:

Undisputed.

60.

The Sheriff's Office has chosen to have its employees participate in the County's Health Plan, pursuant to its informal intergovernmental agreement with the County, since at least 1973. See Grant Decl., Ex. Q Def. Sheriff Talton's Resp. to First Set of Interrogatories at No. 1; Grant Decl., Ex. E SO Dep. (Rape) at 38:8–39:10; Grant Decl., Ex. B Sheriff Talton Dep. at 80:12–1 8.

**RESPONSE**:

Undisputed.

61.

This agreement is voluntary on the part of both parties. Def. Sheriff Talton's Answer at ¶ 72; Def. Houston County's Answer and Affirmative Defenses to Plaintiff's Am. Compl. (ECF No. 95) ("Def. Houston County's Answer") ¶ 72. The Sheriff's Office, if it so chose, could obtain a separate health plan. See Grant Decl., Ex. A Carter Dep. at 124:10-18 ("Q. Does the sheriff have the authority to amend the health plan for his employees? A. I mean, in the grand scheme of things, yes; . . . he can pull out of our health plan and get his own."); Grant Decl., Ex. B Sheriff Talton Dep. at 81:4-13; Grant Decl., Ex. E SO Dep. (Rape) at 44:3-20.

**RESPONSE**:

Defendants object to SUMF No. 61 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.

62.

Under their agreement, the County sets the Health Plan's benefit terms. See Def. Sheriff Talton's Answer at ¶ 77; Def. Houston County's Answer at ¶ 77; Grant Decl., Ex. A Carter Dep. at 26:3-10, 49:3-5); determines the members' deductibles and premiums (Grant Decl., Ex. A Carter Dep. at 49:3-14; Grant Decl., Ex. M HC Dep. (Carter II) at 106:3-10); and provides for Sheriffs' Office employees to enroll, disenroll, and have their questions answered, among other things. Grant Decl., Ex. E SO Dep. (Rape) at 45:11–46:14, 48:8-20.

**RESPONSE**:

Undisputed.

63.

For example, if a plan member has an issue, they may text or call Mr. Carter, Houston County's Director of Personnel, to discuss. See Grant Decl., Ex. A Carter Dep. at 18:18– 19:5 (Q: Do you know if you ever texted a co-worker about the health plan? A: I've had co-workers text me that they have a health plan issue. Generally I like to do that over the phone because it's very hard to explain things by text, so they may call and say I'm at the doctor having this issue or I'm in the hospital[.]").

**RESPONSE**:

Undisputed.

64.

The County also advises the Sheriff regarding the costs of the Health Plan (Grant Decl., Ex. G HC Dep. (Carter I) at 26:20-27:9); discusses issues with the Sheriff arising out of his employees' participation (for example, Sheriff Talton discussed Sgt. Lange's case with the Commission's Chair, Tommy Stalnaker (Grant Decl., Ex. B Sheriff Talton Dep. at 51:25–52:9)); and speaks with its insurance broker about issues related to Sheriff's Office employees. *See, e.g.*, Grant Decl., Ex. A Carter Dep. at 98:12-104:19; Grant Decl. Ex. A Carter Dep. at Ex. 6.

**RESPONSE**:

Disputed.  Plaintiff suggests a pattern of collaboration, which presents a false picture. The County informs the Sheriff's Office what the costs of the Health Plan are and charges it a per capita fee for its employee-participants.  (Doc. 137-5 at ¶ 11; Doc. 150-14 at 19:15-20:18.)  Far from a pattern, Sheriff Talton testified he had *one* meeting with Stalnaker shortly after Plaintiff spoke at a Commission meeting.  (Doc. 157 at 52:5-53:13.)

65.

The State of Georgia has no control over the terms or conditions of the Health Plan. *See* Grant Decl., Ex. P Def. Sheriff Talton's Resp. to Second Set of RFAs at No. 2.

**RESPONSE:**

Undisputed.

66.

The State of Georgia does not fund the Health Plan. *See* Grant Decl., Ex. P Def. Sheriff Talton's Resp. to Second Set of RFAs at No 4.

**RESPONSE**:

Undisputed.  However, the State provides a mechanism for the Sheriff to challenge any underfunding of its benefits.  The Sheriff's Office submits an annual budget to the County to support its activities and, generally, the requested budget is approved.  (S.O. 30(b)(6) Dep. Rape, p. 34:9-35:3.)  If it were not approved, the Sheriff's Office could pursue a remedy against the County in court.  Id.

67.

The plan has, in total, about 1,500 members. *See* Grant Decl., Ex. T at p.8 (Lange – HC000425) ("Membership" shows 1444 members in 2016-2017 and a total spend of $9,476,062 for the same time period); Grant Decl., Ex. M Houston County 30(b)(6) Dep. (K. Carter), Sept. 16, 2021 ("HC Dep. (Carter II)") at Ex. 32 (showing 1,498 "Avg Total Lives" in the Health Plan in 2019); Grant Decl., Ex. M HC Dep. (Carter II) at 43:24-44:2 (explaining "Average Total Lives" means "everybody that's on the plan, including employee and dependent").

**RESPONSE**:

Undisputed.

68.

About 350 employees of the Sheriff's Office participate in the Health Plan, whereas about 320 County employees participate in the Health Plan. *See* Grant Decl., Ex. G HC Dep. (Carter I) at 17:10-12 ("Q So the sheriff's office employees are the largest percentage of eligible members? A Yes."). *See also id.* at 16:12-17:9 (estimating that there are between about 660 and 701 plan members who are current employees; about 350 work for the

Sheriff's Office; about 320 work for the County; and about 15 and 18, respectively, work

for two other agencies).

**RESPONSE**:

    Undisputed.

69.

    The Health Plan is a self-funded or Administrative Services Only ("ASO") plan,

which means that Anthem, the County's third-party administrator, administers claims

using funds provided by the County and employee contributions. *See* Grant Decl., Ex. A

Carter Dep. at 25:2426:2, 54:23-55:3. *See also* Grant Decl., Ex. F Clark Dep., Apr. 13,

2021 ("Clark Dep.") at 62:1014.

**RESPONSE**:

    Undisputed.

70.

    Annual expenditures for the Health Plan are around $10 million dollars. *See* Grant

Decl., Ex. T at p. 8 (Lange – HC000425).

**RESPONSE**:

    Undisputed.  However, Health Plan expenditures vary from year to year.  In 2019,

plan expenditures were $12.5 million dollars.  (Doc. 137-1 at ¶ 37.)

71.

    Sgt. Lange participates in and contributes monthly premiums to the Health Plan. *See*

Lange Decl. at ¶ 14.

**RESPONSE**:

    Undisputed.

72.

The Health Plan covers medically necessary services including "office visits and doctor services," "diagnostic laboratory" services, "prescription drugs," "surgical supplies," "inpatient hospital care," and "inpatient professional services" including "surgery" and "general anesthesia," subject to certain exclusions. *See* Grant Decl. Ex. A Carter Dep. at Ex. 1; Def. Sheriff Talton's Answer at ¶ 79; Def. Houston County's Answer at ¶ 79. *See also* Grant Decl., Ex. A Carter Dep. at 41:3-8 (agreeing that the Health Plan only covers services when Anthem deems them medically necessary).

**RESPONSE**:

Undisputed.

73.

The County believes that the Health Plan is more generous than health plans typically offered by the private sector employees. *See* Grant Decl., Ex. M HC Dep. (Carter II) at 33:15-21, 52:8-53:12.

**RESPONSE**:

Undisputed.

**V.    The Exclusion**

74.

Like all insurance plans, the Health Plan contains a number of exclusions, *i.e.*, certain types of medical care that are not covered. *See* Grant Decl. Ex. A Carter Dep. at Ex. 1 at p. 66 (Lange – HC001827).

**RESPONSE**:

Undisputed.

75.

Since at least 1998, the Health Plan has excluded coverage for the treatment of gender dysphoria. *See id*. at p. 71 (Lange – HC001832), p. 73 (Lange – HC001834); Grant Decl., Ex. A Carter Dep. at 67:18–21 (acknowledging that the Health Plan does not cover treatment for gender dysphoria); Ex. W Def. Houston County's Resp. to First Set of Interrogatories at No. 1 ("After a careful search of records available to the County, the Exclusion was found in a County health plan as early as 1998."). *See also* Grant Decl., Ex. F Clark Dep. at Ex. 26 (County's insurance broker referring to it as "the exclusion for Gender Dysphoria").

**RESPONSE**:

Disputed.   Since at least 1998, an exclusion for sex change surgery (or similar language) – not an exclusion for "the treatment of gender dysphoria" – has been in the Health Plan.  (Doc. 150-14 at 10:25-11:3; Doc. 137-3, Ex. 9, 10; Doc. 150-15 at 45:9-23.)  Further, Plaintiff testified that her endocrinologist visits, psychological visits, and hormones and other medications have been covered by the Health Plan.  (Doc. 137-3 at 48:19-49:15.)

76.

Specifically, there are two exclusions—Exclusion 57 and Exclusion 26 (together, the "Exclusion")—that preclude treatment for transition-related care. *See* Grant Decl. Ex. A Carter Dep. at Ex. 1 at p. 71 (Lange – HC001832), p. 73 (Lange – HC001834). Exclusion 57 excludes coverage for "[s]ervices and supplies for a sex change and/or the reversal of a sex change." Grant Decl. Ex. A Carter Dep. at Ex. 1 at p. 71 (Lange – HC001832). Exclusion 26 excludes coverage for "[d]rugs for sex change surgery." Grant Decl. Ex. A Carter Dep. at Ex. 1 at p. 73 (Lange – HC001834).

**RESPONSE**:

Disputed.  As stated in response to SUMF 75, the Exclusion does not "preclude treatment for transition-related care," but only excludes sex change surgery.  Plaintiff's experience of having her own care covered demonstrates that the Exclusion is not total.

77.

The Exclusion denies coverage for procedures and treatments that would otherwise be covered if provided in connection with a different diagnosis. *See* Grant Decl., Ex. A Carter Dep. at 6:7–13 (agreeing that "without an exclusion, gender confirmation surgery would be covered under a health plan administered by Anthem if it was medically necessary"); *id*. at 35:9– 15 (Q: "Would exclusion 57 exclude a mastectomy sought for cancer treatment?" A: "No." Q:  "But would exclusion 57 prevent coverage of a mastectomy if it was used to treat gender dysphoria?" A: "Yes."); 37:9–16 (Q: "Exclusion 26 would not exclude hormone replacement therapy to treat menopause?" A: "No, not as I understand it." Q: "But would exclusion 26 prevent hormone replacement therapy if used to treat gender dysphoria?" A: "As I understand it, yes."); 103:10-22 (Q: "Is mental healthcare generally covered under the plan?" A: "Yes." Q: "So it becomes not covered when it's related to transgender treatment?" A: "Well, yes . . . . When it is because of transgender surgery or whatever it may be, then it is not covered."); Grant Decl., Ex. F Clark Dep. at 100:6–10 (Q: "So were you saying that if [mental health] counseling were done for the purpose of treating gender dysphoria, then it would not be covered because of the exclusion?" A: "Yes."); Grant Decl., Ex. H HC Dep. (B. Holland) at 27:16–20 (Q: "Would any mental health counseling around transitioning be excluded under this exclusion?" A: "I believe it would, if it was specific to transitioning, yes."); Grant Decl., Ex. B Sheriff Talton Dep. at 55: 6–12 (Q: "Do

you know if . . . mastectomies, you know, breast surgery . . . in the context of breast cancer, whether that's covered by the policy?" A: "I understand [if] it is about breast cancer, things like that, yes.").

**RESPONSE**:

Disputed to the extent Plaintiff suggests that *all* treatment for gender dysphoria is excluded. Plaintiff testified that her endocrinologist visits, psychological visits, and hormones and other medications have been covered by the Health Plan. (Doc. 137-3 at 48:19-49:15.)

Defendants object to SUMF No. 77 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

78.

Defendants admits "that the only Health Plan participants impacted by the Exclusion are transgender people seeking a 'sex change.'" Grant Decl., Ex. N Defs.' Resp. to First Set of RFAs at No. 5.

**RESPONSE**:

Undisputed.

79.

The County could remove the Exclusion at any time. See Grant Decl., Ex. A Carter Dep. at 149:8–13 (Q: "The Board of Commissioners is permitted to change the plan during the plan year if they are so inclined, correct?: A: "I would think they had the authority, it's our plan.").

**RESPONSE**:

 Undisputed that the Commission has the *authority* to change the plan during the plan year.  However, the Commission's *practice* is only to make changes at the time of annual renewal.  (Doc. 150-15 at 68:2-6.)

80.

 The County has chosen to retain the Exclusion because they are concerned about potentially having to offer different or lesser benefits to other plan members. See Grant Decl., Ex. M HC Dep. (Carter II) at 32:24-33:21 (Q: "Does the County believe that removing the exclusion would cause the health plan to become insolvent?" A: "You know, can I get a definition of 'insolvent?' I'm just an HR person so...." Q: "[T]hat the County wouldn't be able to cover the cost of the health plan." A: "I believe that we would have to make changes. I don't think it's going to do away with the health plan, no, but I think we would have to make some drastic changes if the cost does increase." Q: "What kind of drastic changes?" A: "We potentially may have to go to more of a high deductible plan, we may have to actually look at actually really cutting out a lot of the plan we have, I mean, we have really good health insurance, and we may have to go back to some of what the private sector actually has.").

**RESPONSE**:

 Disputed.  The County looked at the cost of the plan as a whole, including the cost trends of claims paid.  (County 30(b)(6) Dep. I Holland, pp. 42:11-45:6.).  However, any change that impacts cost will have some effect on other plan participants.

## VI. Anthem's 2017 Nondiscrimination Mandate

81.

The McNeal Insurance Agency ("McNeal") is the County's insurance broker and acts as a liaison between the County and Anthem. See Grant Decl., Ex. A Carter Dep. at 48:5–10; 75:24–77:7; Grant Decl., Ex. F Clark Dep. at 12:15–22.

**RESPONSE**:

Undisputed.

82.

Donna Clark is a group account manager at McNeal and serves as the County's agent and primary contact. See Grant Decl., Ex. F Clark Dep. at 12:5–7; 15:24–16:7; Grant Decl., Ex. A Carter Dep. at 76:2–77:7.

**RESPONSE**:

Undisputed.

83.

On September 27, 2016, Anthem sent Ms. Clark an email attaching information related to the County's plan renewal for 2017. See Grant Decl., Ex. F Clark Dep. at Ex. 5, p. 3 (Anthem_0000006).

**RESPONSE**:

Undisputed.

84.

Attached to that September 26, 2017 email from Anthem of renewal information was a document titled "2017 Medical Plan Changes for Large Group (100+ Enrolled Employees)" which included certain "2017 Mandates." Grant Decl., Ex. F Clark Dep. at Ex. 5 at pgs. 5-6 (Anthem_0000008–09).

**RESPONSE**:

    Undisputed.

85.

One of the "Mandates" is titled, "Nondiscrimination in Health Programs and Activities Rule," and states that "[i]n recognition of regulations issued under PPACA section 1557, the exclusion for Gender Identity Disorders and Sex Change Surgery will be removed from our plans (both Fully Insured and ASO)" (the "Nondiscrimination Mandate"). *See id.*

**RESPONSE**:

    Undisputed.

86.

During their annual renewal process in late 2016, Ms. Clark informed the County of these mandates. *See* Grant Decl., Ex. F Clark Dep. at 45:18–22; Grant Decl., Ex. G HC Dep. (Carter I) at 180:25–181:11 (stating that "back in '16 when this e-mail came out and Donna came and talked to me, I probably was under the understanding that was probably something they asked us to do").

**RESPONSE**:

    Undisputed.

87.

"[T]he County generally follows the recommendation of its third-party administrator as to exclusions for the plan." *See* Ex. O Def. Houston County's Resp. to Third Set of Interrogatories at No.3.

**RESPONSE**:

-34-

Undisputed.

88.

For example, the County has removed exclusions recommended by Anthem in connection with the Mental Health Parity Act. *See* Grant Decl., Ex. G HC Dep. (Carter I) at 29:11– 24 ("[W]e removed some mental health stuff [*i.e.*, exclusions], I think back in 2012 or 2013, but that was because of the Mental Health Parity Act and we were required to do that.").

**RESPONSE**:

Undisputed.

89.

The County has relied on Anthem's recommendations with respect to exclusions in the Health Plan, including those recommended based on "Anthem's experience" rather than dictated by law. *See* Grant Decl., Ex. G HC Dep. (Carter I) at 32:8–33:25.

**RESPONSE:**

Undisputed.

90.

In fact, since 2017, the County has followed Anthem's recommendations with respect to approximately 10 different exclusions (without conducting any independent analysis with respect to those exclusions). *See* Grant Decl., Ex. G HC Dep. (Carter I) at 35:13–16.

**RESPONSE**:

Undisputed, but these were *added* exclusions, not *removed* exclusions.  County 30(b)(6) I (Carter), p. 35:13-16.

-35-

91.

Despite its general practice of following Anthem's recommendations, the County chose to not accept the Non-Discrimination Mandate. See Grant Decl., Ex. M HC Dep. (Carter II) at 180:4–7; Grant Decl., Ex. F Clark Dep. at Ex. 26, p. 32 (Ms. Clark's handwritten note next to the Nondiscrimination Mandate stating "remove not taking"); Grant Decl., Ex. F Clark Dep. at 114:19–115:10.

**RESPONSE**:

Undisputed.  Carter testified he researched the non-discrimination mandate, which is based on Section 1557 of the Affordable Care Act and determined the County's self-funded Health Plan was not covered by Section 1557.  (Doc. 150-1 at 89:2-18.)

92.

Despite the County's decision to reject the Nondiscrimination Mandate, Anthem reported that it had no record of the opt-out at the time. See Anthem_00000012 ("Everything we have shows that the county accepted the mandates.").

**RESPONSE**:

Undisputed.  However, this reflects only a misunderstanding on *Anthem's* part. Clark made notes of the County's position on her renewal document for the 2017 plan year and informed Anthem of the County's position.  (Clark Dep., p. 48:14-23, Ex. 20A)

## VII.   Sgt. Lange Informed the County and Sheriff's Office That She Is Transgender

93.

On April 18, 2018, Sgt. Anna Lange sought out Mr. Carter in his office and informed

him that she was transgender and intended to live openly as a woman. See Grant Decl.,
Ex. A Carter Dep. at 92:10-95:18; Lange Decl. at ¶ 10.

**RESPONSE**:

Undisputed.

94.

During this conversation, Sgt. Lange informed Mr. Carter that she would be seeking
gender reassignment surgery and Mr. Carter confirmed that it was not covered by the
Health Plan, because of the Exclusion. See Grant Decl., Ex. A Carter Dep. at 95:19–20
("We discussed about the insurance not paying it").

**RESPONSE**:

Undisputed.

95.

Following this meeting, Mr. Carter sent an email to Ms. Clark stating: "I know that
the insurance does not pay for gender reassignment surgery or any medication that comes
with it. But what about the mental health side. I am thinking more for someone who needs
counseling to help them get through, decide, or just confirm their thoughts about being
transgender. It seems to me that is as much of a mental health need as most anything. Just
curious before I tell someone to file it with insurance." See Grant Decl. Ex. A Carter Dep.
at Ex. 7, p. 3 (Lange-HC000897).

**RESPONSE**:

Defendants object to SUMF No. 95 on the grounds that it does not comply with the
requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.

96.

Ms. Clark responded: "I am not sure if you were made aware that I spoke at length to someone about this last week. We discussed the issues with counseling, one being no one around here apparently is familiar with that type of counseling and two if they are and they use the codes necessary it will not be covered since the 'overall diagnosis' is not covered." Grant Decl., Ex. F Clark Dep. at Ex. 17.

**RESPONSE**:

Defendants object to SUMF No. 96 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.

97.

Mr. Carter replied: "Yes I was told you were spoken to and told him. So he was aware not covered. I told him that don't seem right but Donna would know." Grant Decl. Ex. A Carter Dep. at Ex. 7, p. 2 (Lange-HC000896).

**RESPONSE**:

Undisputed.

98.

Later that same day, Sgt. Lange met with Sheriff Talton and informed him that she is transgender; Mr. Carter accompanied her. See Grant Decl., Ex. A Carter Dep. at 112:7–23; Grant Decl., Ex. B Sheriff Talton Dep. at 17:10–18:18; 23:15–20; Grant Decl., Ex. E SO Dep. (Rape) at 61:24–62:21; Grant Decl., Ex. C Lange I Dep. at 57:23–58:7.

**RESPONSE**:

Undisputed.

99.

During the meeting with Sheriff Talton, Sgt. Lange requested permission to wear a female uniform at work and present herself as a female in the office. See Grant Decl., Ex. A Carter Dep. at 115:11–20; Lange Decl. at ¶ 10; Grant Decl., Ex. C Lange I Dep. at 57:23–58:7.

**RESPONSE**:

Undisputed.

100.

In response, Sheriff Talton looked at Mr. Carter and said, "What the hell is he talking about?" Grant Decl., Ex. A Carter Dep. at 114:3-11.

**RESPONSE**:

Undisputed.

101.

Mr. Carter then explained to Sheriff Talton that "what Sergeant Lange is trying to tell you is that she would like to start presenting herself as a woman and she wants you to understand that." Grant Decl., Ex. A Carter Dep. at 114:12–18.

**RESPONSE**:

Undisputed.

102.

Sheriff Talton was shocked and, at first, "thought it was a joke." See Grant Decl., Ex. B Sheriff Talton Dep. at 37:7–15.

**RESPONSE**:

Undisputed.

103.

Sheriff Talton then told Sgt. Lange that he doesn't " believe in sex changes." Grant Decl., Ex. B Sheriff Talton Dep. at 104:8–105:3; Grant Decl., Ex. C Lange I Dep. at 58:17–25; Grant Decl., Ex. E SO Dep. (Rape) at 66:17–22.

**RESPONSE**:

Undisputed.

104.

Sheriff Talton then asked Sgt. Lange to step outside and asked his secretary to find Chief Deputy Billy Rape and Captain John Holland, Sgt. Lange's direct supervisor. See Grant Decl., Ex. A Carter Dep. at 113:2–7, 115:21-25, 116:2-6; Sheriff Tr. 26:24–27:22; 28:21–23.

**RESPONSE**:

Undisputed.

105.

Once Chief Rape and Captain Holland arrived, Sheriff Talton, and Mr. Carter informed them of Sgt. Lange's news and the group, excluding Sgt. Lange, discussed whether it would be an issue for Sgt. Lange to wear female attire. See Grant Decl., Ex. A Carter Dep. at 116:7–118:3; Grant Decl., Ex. B Sheriff Talton Dep. at 26:24–28:5.

**RESPONSE**:

Undisputed.

106.

Sgt. Lange was then brought back into the room and given permission to dress as a

female at the office. See Grant Decl., Ex. A Carter Dep. at 118:15-24; Grant Decl., Ex. B Sheriff Talton Dep. at 28:24–29:9.

**RESPONSE**:

Undisputed.

107.

Chief Rape also informed Sgt. Lange that she would need to "have tough skin." Grant Decl., Ex. A Carter Dep. at 118:15–119:7; Grant Decl., Ex. B Sheriff Talton Dep. at 24:22– 25:15; Grant Decl., Ex. C Lange I Dep. at 59:22–60:3.

**RESPONSE**:

Undisputed.

108.

Sheriff Talton understood Chief Rape's comment to mean that Sgt. Lange "was going to take a lot of riding from some of his cohorts back in the back." Grant Decl., Ex. B Sheriff Talton Dep. at 25:16–23.

**RESPONSE**:

Undisputed.  In full, Sheriff Talton answered: "personally I think he meant that he was going to take a lot of riding about this from some of his cohorts back in the back, but we let him know right quick that we weren't going to put with that."  (Doc. 57 at 25:16-23.)

109.

Sgt. Lange understood Chief Rape's comment to mean that she should not report inappropriate comments and teasing from his colleagues until "it's out of hand." See Grant Decl., Ex. C Lange I Dep. at 60:4–10.

-41-

**RESPONSE**:

Undisputed that that is Plaintiff's interpretation.  Plaintiff also acknowledged the CID team engages in teasing on various subjects and she participates in such teasing.  (Doc. 137-3 at 60:11-24.)

110.

After the meeting, Mr. Carter again emailed Ms. Clark: "We just had the meeting with the sheriff and it went well. I am good with nothing being covered and I think he is also. I do think that some of the mental health part should be covered in the beginning (not later) but do not want to get into creating loop holes and things like that." Grant Decl. Ex. A Carter Dep. at Ex. 7, p. 1 (Lange-HC000895).

**RESPONSE**:

Defendants object to SUMF No. 110 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.

111.

The following day, April 19, 2017, Sgt. Lange came out to her coworkers in the Criminal Investigation Division ("CID"). Grant Decl., Ex. B Sheriff Talton Dep. 60:5–61:10; Grant Decl., Ex. C Lange I Dep. at 61:5-17 ("[T]hey said it couldn't be kept a secret, that you need to tell them."); Lange Decl. at ¶ 10.

**RESPONSE**:

Undisputed.

112.

During the meeting, Sheriff Talton repeated that he "didn't believe in all this." Grant

Decl., Ex. C Lange I Dep. at 62:13-24; Grant Decl., Ex. D Sheriff's Office 30(b)(6) Dep. (J. Holland), Apr. 13, 2021 ("SO Dep. (J. Holland)") at 8:18-25; 9:2-11 ("I recall him making a statement about he doesn't believe in this, referring to the transgender issue necessarily.").

**RESPONSE:**

Undisputed.  Holland also testified that Sheriff Talton opened the meeting by saying "we were going to be talking about a sensitive and a serious subject that date and he wanted everyone's attention."  (Doc. 165-1 at 7:16-25.)

113.

Sheriff Talton also told the group that what Sgt. Lange did "takes big balls." Grant Decl., Ex. C Lange I Dep. at 62:13-24; *accord* Grant Decl., Ex. D SO Dep. (J. Holland) at 8:6-17 ("I forget the exact verbiage, it took a lot of nerve or something to that effect. . .").

**RESPONSE**:

Undisputed.

## VIII.   Sgt. Lange is Denied Coverage for Medically Necessary Bottom Surgery.

114.

On September 12, 2018, Sgt. Lange contacted Anthem, inquiring about pre-authorization for gender confirmation surgery. *See* Lange Decl. at ¶ 26.

**RESPONSE**:

Undisputed.  However, Defendants note that, before calling, Plaintiff understood that gender confirmation surgery was not covered as stated in the Health Plan and she confirmed that understanding with broker Donna Clark before calling Anthem.  (Doc. 137-3 at 44:22-45:19.)

115.

During this call, Anthem informed Sgt. Lange that the surgery would be covered provided that it was "medically necessary" under Anthem's Guideline. Lange Decl. at ¶ 25; Grant Decl., Ex. U at p. 18 (Anthem000049).

**RESPONSE**:

Undisputed that is what Anthem told Plaintiff.

116.

Sgt. Lange then contacted the office of Dr. Rachel Bluebond-Langner at NYU Langone Health, who had been performing gender confirming surgeries for transgender individuals for over seven years. Lange Decl. at ¶ 24; Bluebond-Langner Decl. at Ex. 1, ¶ 8.

**RESPONSE**:

Undisputed.

117.

Sgt. Lange chose Dr. Rachel Bluebond-Langner as her surgeon because "she is in-network at Anthem" and because "there are no surgeons providing bottom surgery in [her] community." Lange Decl. at ¶ 24.

**RESPONSE**:

Undisputed.

118.

On September 14, 2018, Cheryl Morris, an employee in Dr. Bluebond-Langner's office, also called Anthem on September 14, 2018 to confirm coverage for bottom surgery under the Health Plan. Bluebond-Langner Decl. at Ex. 1, ¶ 22.

**RESPONSE**:

Undisputed.

119.

Anthem representatives informed Dr. Bluebond-Langer's office "that Sgt. Lange had gender-affirming benefits and that preauthorization would be required." Bluebond-Langner Decl. at Ex. 1, ¶ 22. *See also* Grant Decl., Ex. F Clark Dep. at Ex. 14, p. 1 (summary of call stating that "associate confirmed that codes are covered under the patient's plan.").

**RESPONSE**:

Undisputed.

120.

On November 13, 2018, Sgt. Lange flew to New York for a consultation with Dr. Bluebond-Langner and her colleague, Dr. Lee Zhao. *See* Lange Decl. at ¶ 27; Bluebond-Langner Decl. at Ex. 1, ¶ 23.

**RESPONSE**:

Undisputed.

121.

Dr. Bluebond-Langner and Dr. Zhao both determined that sex reassignment surgery is medically necessary for the treatment of Sgt. Lange's gender dysphoria under Anthem's Guideline. Bluebond-Langner Decl. at Ex. 1, ¶¶ 24, 27-36; Grant Decl., Ex. A Carter Dep. at Ex. 2, pgs. 1-3 (Lange00001205-07).

**RESPONSE**:

Undisputed.

122.

Following Sgt. Lange's consultation, on November 21, 2019, Dr. Bluebond-Langner's office called Anthem to check for precertification and coverage for gender confirming surgery under the Health Plan. *See* Grant Decl., Ex. F Clark Dep. at Ex. 14, p. 2.

**RESPONSE**:

Undisputed.

123.

Again, Anthem informed her office that "service will be covered at 80% of the allowed amount once the deductible is met." *Id*.

**RESPONSE**:

Undisputed.  This was based on the discrepancy between the plan document and what Anthem had in its system.  (Doc. 163 at 88:25-89:6.)

124.

Following her consultation with Sgt. Lange, Dr. Bluebond-Langner submitted a pre-authorization request to Anthem for Sgt. Lange's gender reassignment surgery, which was scheduled for January 31, 2019. *See* Bluebond-Langner Decl. at Ex. 1, ¶ 27; Lange Decl. at ¶ 27.

**RESPONSE**:

Undisputed.

125.

On November 29, 2018, Deborah Pope of Anthem informed Ms. Clark that,

according to Anthem's records, the County had not opted-out of the Nondiscrimination Mandate. Grant Decl., Ex. F Clark Dep. at Ex. 5, p. 9 (Anthem_00000012).

**RESPONSE**:

Disputed.  The cited e-mail was sent on September 27, 2016 and merely listed the ACA Section 1557 mandates at Anthem_0009.  (Doc. 163 at 270, 273.)  Clark and Pope had a separate e-mail exchange on November 29, 2018 regarding Anthem's confusion about the mandates.  (Doc. 163 at 276-277; 56:21-57:16.)

126.

In doing so, Ms. Pope included the language of the Non-Discrimination Mandate and explained that: "Everything we have shows that the county accepted the mandates. There have been other mandates for other years that they did not accept, but for 2017, they accepted them all." *Id*.

**RESPONSE**:

Undisputed, although this language is at Doc. 163 at 276.

127.

Ms. Clark immediately responded to Ms. Pope, stating, "[n]ot sure I agree with that." *Id*. at p. 10 (Anthem_00000013).

**RESPONSE**:

Undisputed, although this language is at Doc. 163 at 277.

128.

Ms. Clark, in consultation with Mr. Carter, then worked with Anthem to pursue a "retro change to 1/1/2017 on the antidiscrimination benefit," which required approval from

Anthem's legal team. *Id*. at pgs. 11-12 (Anthem_00000014-15); Grant Decl., Ex. F Clark Dep. at 59:4-60:21.

**RESPONSE**:

Disputed. *Anthem* was making a "retro change" to address its error. Clark testified: "We [she and the County] were trying to correct the record, not make a different plan change." (Doc. 163 at 59:16-20.)

129.

On November 30, 2018, Sgt. Lange received a letter, dated November 26, 2018, denying the pre-authorization request and explaining that the "service is excluded or not covered under your plan benefits." *See* Lange Decl. at ¶ 28; Grant Decl. Ex. A Carter Dep. at Ex. 9, p. 1114 (Lange - HC001951-54). She appealed this decision on December 11, 2018 and the appeal was denied on January 29, 2019, citing the Exclusion. Lange Decl. at ¶ 29.

**RESPONSE**:

Defendants object to SUMF No. 129 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.

130.

In response to Ms. Clark's request for a "retro change," Ms. Pope sent Ms. Clark a document, titled in relevant part "2017 Mandates—only ASO can opt out," and which states, "Nondiscrimination in Health Programs and Activities Rule (ACA Section 1557): "In recognition of regulations issued under PPACA section 1557, the exclusion for Gender Identity Disorders and Sex Change Surgery will be removed for our plans (both fully insured

and ASO)." Beside that statement is a box marked "Yes" and a box marked "No." Grant Decl., Ex. F Clark Dep. at Ex. 5, pgs. 11-14 (Anthem_00000014-17); Grant Decl., Ex. F Clark Dep. at 62:2–23.

**RESPONSE**:

Disputed.  Clark did not ask for a "retro change," which is Anthem's language. Rather, Clark testified: "We [she and the County] were trying to correct the record, not make a different plan change."  (Doc. 163 at 59:16-20.)  Defendants do not dispute the language of the form, except there were only blanks on the referenced pages for "Yes" or "No," but neither was marked.  (Doc. 163 at 281.)

131.

In the body of her email, Ms. Pope told Ms. Clark that she could "add a signature line" to the sign off sheet, which Ms. Clark did. *See* Grant Decl., Ex. F Clark Dep. at Ex. 5, pgs. 11-14 (Anthem_00000014-17); Grant Decl., Ex. F Clark Dep. at 62:12–14.

**RESPONSE**:

Undisputed.

132.

Ms. Clark testified that she has never seen a process similar to this for plan changes before. *See* Grant Decl., Ex. F Clark Dep. at 62:2-23.

**RESPONSE**:

Undisputed.

133.

On December 19, 2018, Mr. Carter checked the "No" box next on the form in order to retroactively opt out of the Nondiscrimination Mandate (i.e., reject the removal of the

Exclusion from the Health Plan) and signed and dated the form. See Grant Decl., Ex. A Carter Dep. at Ex. 4; Grant Decl. Ex. A Carter Dep. at Ex. 5, p. 1 (Lange - HC000442); Grant Decl., Ex. A Carter Dep. at 62:11–12.

**RESPONSE**:

Undisputed that Carter signed the form.

Disputed that it was a retroactive opt out.  Clark testified: "We [she and the County] were trying to correct the record, not make a different plan change."  (Doc. 163 at 59:16-20.)  Clark further testified that "they [the County] did not accept the mandate, so the plan document indicated that so this was to clear the record to make sure that the plan document was the same as what was in the Anthem system."  (Doc. 163 at 59:25-60:5.)

134.

Prior to executing the retroactive opt-out, Mr. Carter did not consult with counsel, discuss the matter with the Commissioners, or consider any information about the cost of the Nondiscrimination Mandate (i.e. removing the Exclusion). Grant Decl., Ex. A Carter Dep. at 64:924, 66:23-67:9, 69:7-10, 74:17-25; 75:2.

**RESPONSE**:

Undisputed that Carter did not consult with counsel, discuss the matter with the Commissioners, or consider any information about the cost of the Nondiscrimination Mandate before signing the form.

Disputed that this was a retroactive opt-out.  Clark testified: "We [she and the County] were trying to correct the record, not make a different plan change."  (Doc. 163 at 59:16-20.)  Clark further testified that "they [the County] did not accept the mandate, so

the plan document indicated that so this was to clear the record to make sure that the plan document was the same as what was in the Anthem system."  (Doc. 163 at 59:25-60:5.)

135.

Cost was not a factor in the County's decision to opt out of the Nondiscrimination Mandate. Grant Decl., Ex. A Carter Dep. at 74:17-20.

**RESPONSE**:

Undisputed.

136.

The decision to opt out of the Nondiscrimination Mandate was not presented to the Commissioners and was not the subject of a vote. See Grant Decl. Ex. A Carter Dep. at Ex. 4; Grant Decl., Ex. A Carter Dep. at 66:23–67:5; Grant Decl., Ex. G HC Dep. (Carter I) at 40:7-10.

**RESPONSE**:

Undisputed.

137.

The County admits that, by checking the box, it knew the Health Plan would not cover treatment for gender dysphoria. Grant Decl., Ex. A Carter Dep. at 67:18-21.

**RESPONSE**:

Undisputed, but Carter did not know Plaintiff had sought surgery at the time he completed the form.  (Doc. 150-1 at 67:10-17.)

## IX. <u>Sgt. Lange Requests Rescission of the Exclusion And Coverage Of Medically Necessary Care</u>

138.

On January 6, 2019, at 10:43 a.m., Sgt. Lange, through her counsel, Noah Lewis, sent a letter, via email, to County Attorney Tom Hall informing the County that Sgt. Lange had been denied coverage under the Health Plan for medically necessary health care and requesting that, "in lieu of a lawsuit," the County engage in a "Structured Negotiation" regarding removal of the Exclusion. Grant Decl. Ex. A Carter Dep. at Ex. 9, pgs. 1-5 (Lange - HC001941-45); Grant Decl., Ex. A Carter Dep. at 130:10–16; Grant Decl. Ex. A Carter Dep. at Ex. 8.

**<u>RESPONSE</u>**:

Undisputed.

139.

At 10:48 a.m., five minutes after receiving the email, Mr. Hall forwarded it to Mr. Carter at 10:48 a.m., stating "I just received this. I have not read it completely. Looks like someone is trying to raise an issue." Grant Decl. Ex. A Carter Dep. at Ex. 8; Grant Decl., Ex. A Carter Dep. at 132:5-17.

**<u>RESPONSE</u>**:

Undisputed.

140.

Forty-eight minutes after that, at 11:36 a.m., Mr. Carter forwarded the letter to Robert Kissell, the supervisor of the County's liability insurance at the Association of County Commissioners, informing him of the letter received from Sgt. Lange's counsel and stating, "We have not received any lawsuit yet, but I do believe that we will not move forward with

negotiations as indicated in the letter." Grant Decl. Ex. A Carter Dep. at Ex. 11; Grant Decl.,

Ex. H HC Dep. (B. Holland) at 61:1-15 ("Q: What information did Houston County consider

before deciding not to move forward with negotiations? A: No information other that we

weren't in a position, at that time of year, to make any changes to the plan.").

**RESPONSE**:

    Undisputed.

141.

    Mr. Carter did not consider the cost of removing the exclusion, or even read the

email "in detail" before forwarding it to Mr. Kissel. Grant Decl., Ex. A Carter Dep. at

138:19–20 (Q: Did you read this correspondence and the attachments before you sent it to

Mr. Kissel? A: I'm sure I did, I'm sure I went through, probably not in detail, but I probably

scanned it.").

**RESPONSE**:

    Undisputed.

142.

    On January 16, 2019, Mr. Carter sent the January 6, 2019, letter and attachments to

Ms. Clark, informing her that Sgt. Lange has "hired an attorney to challenge our decision

to not cover her surgery." *See* Grant Decl., Ex. F Clark Dep. at Ex. 19A.

**RESPONSE**:

    Undisputed.  (Doc. 150-1 at 142:11-24.)

143.

    That same day, Ms. Clark forwarded Mr. Carter's email to Ms. Pope. *See*

McNeal_00000121.

**RESPONSE**:

Disputed.  The referenced document is not part of the summary judgment record.

144.

And the next day, on January 17, 2019, Ms. Pope requested that Anthem "please add back the exclusion for Transgender surgery on both medical plans." Grant Decl., Ex. AA at pgs. 1-2.

**RESPONSE**:

Undisputed this is what the e-mail says.

Disputed that it is related to the notice purportedly sent on January 16, 2019.

145.

On January 23, 2019, Anthem notified Sgt. Lange that it was denying her appeal of the denial of her claim for gender reassignment surgery. Grant Decl., Ex. C Lange I Dep. at 45:23– 46:1; Grant Decl., Ex. C Lange I Dep. at Ex. 22.

**RESPONSE**:

Undisputed.

146.

On February 4, 2019, Mr. Lewis again emailed Mr. Hall asking for a meeting to discuss Sgt. Lange's Request. Grant Decl., Ex. Y.

**RESPONSE**:

Undisputed.

147.

Mr. Hall responded that his schedule was full that week and that they would have to try for another time. *Id.*

**RESPONSE**:

Undisputed.

148.

On February 7, 2019, Mr. Lewis again emailed Mr. Hall asking to have "a conversation next week about the transgender health exclusion." Grant Decl., Ex. Z.

**RESPONSE**:

Undisputed.

149.

Mr. Lewis stated: "[w]e would really like to have a private dialogue with you, but if that is not going to happen imminently, we will plan to deliver public comments at the Feb. 19 Commissioners meeting." *Id.*

**RESPONSE**:

Undisputed.

150.

Mr. Hall never responded to the letter nor to Mr. Lewis's meeting request. *See* Grant Decl., Ex. H HC Dep. (B. Holland) at 58:16-20.

**RESPONSE**:

Undisputed.

**X.    The County Confirms Its Decision To Opt Out of the Mandate for 2019.**

151.

On February 7, 2019, Anthem emailed Ms. Clark attaching a letter and stating that Anthem is "requesting this going forward with 2019. I would guess that it is more CYA than anything else." *See* Grant Decl., Ex. X at pgs. 1-2 (McNeal_00000115-16). The letter

was addressed to Mr. Carter and requested confirmation that the County had discussed its decision to reject the Nondiscrimination Mandate with counsel and agreed "to be responsible for any penalties if the plan is determined to be noncompliant." *Id*. The County had never before seen an indemnity demand in any other correspondence with Anthem. *See* Grant Decl., Ex. G HC Dep. (Carter I) at 42:17-19.

**RESPONSE**:

Defendants object to SUMF No. 151 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.  In addition, the letter stated: "We're writing because Houston Co BOC has elected to decline the 2017 Mandate for Nondiscrimination in Health Programs and Activities Rule ACA Section 1557 for the plan year beginning 01/01/2017. While your chosen plan design differs from our interpretation of the Affordable Care Act (ACA or health care reform law) and related regulations, we understand that many aspects of the law are unclear and may be subject to varying interpretations. Therefore, Anthem is offering some flexibility to self-funded customers who may have a different interpretation of the law."  (Doc. 150-30, p. 2.)

152.

On February 13, 2019, Ms. Clark forwarded Mr. Carter the email from Ms. Pope attaching the confirmation letter and explaining that he would need to respond to it on Houston County letterhead. Grant Decl. Ex. A Carter Dep. at Ex. 5, pgs. 1-6 (Lange - HC000442-47).

**RESPONSE**:

Undisputed.

153.

The letter states that it is being sent because the County "elected to decline the 2017 mandate for Nondiscrimination in Health Programs and Activities Rule ACA Section 1557 for the plan year beginning 1/1/2017." *Id*. at p. 6 (Lange - HC000447).

**RESPONSE**:

Undisputed.  In addition, the letter stated: "We're writing because Houston Co BOC has elected to decline the 2017 Mandate for Nondiscrimination in Health Programs and Activities Rule ACA Section 1557 for the plan year beginning 01/01/2017. While your chosen plan design differs from our interpretation of the Affordable Care Act (ACA or health care reform law) and related regulations, we understand that many aspects of the law are unclear and may be subject to varying interpretations. Therefore, Anthem is offering some flexibility to self-funded customers who may have a different interpretation of the law."  (Doc. 150-30, p. 2.)

154.

The confirmation letter further informs the County that their "chosen plan design differs from [Anthem's] interpretation of the Affordable Care Act and related regulations." *Id*.

**RESPONSE**:

Undisputed.  The above phrase appears in this paragraph of the letter: "We're writing because Houston Co BOC has elected to decline the 2017 Mandate for Nondiscrimination in Health Programs and Activities Rule ACA Section 1557 for the plan year beginning 01/01/2017. While your chosen plan design differs from our interpretation of the Affordable Care Act (ACA or health care reform law) and related regulations, we

understand that many aspects of the law are unclear and may be subject to varying interpretations. Therefore, Anthem is offering some flexibility to self-funded customers who may have a different interpretation of the law." (Doc. 150-30, p. 2.)

155.

The confirmation letter seeks confirmation that the County (1) has chosen to decline the 2017 Nondiscrimination Mandate and believes that doing so is in compliance with the ACA and related regulations; (2) will be responsible for any penalties that result if the plan is determined to be noncompliant; and (3) has consulted legal counsel with respect to the plan design. Id.

**RESPONSE**:

Undisputed.

156.

The confirmation letter asks for a response within 30 days, otherwise Anthem would "consider the benefit plan document as the source of group intent regarding benefits." Id.

**RESPONSE**:

Undisputed.

157.

After receiving the confirmation letter from Anthem, Mr. Carter discussed the decision to opt out of the Nondiscrimination Mandate with Barry Holland and Tom Hall for "30 seconds, a minute" and, separately, Tommy Stalnaker for "probably less than a minute." Grant Decl., Ex. A Carter Dep. at 84:23–88:25; Grant Decl., Ex. G HC Dep. (Carter I) at 39:3-19. The substance of the conversation with Mr. Stalnaker was Mr. Carter informing him that "Anthem [was] asking [the County] do we still want to have this

[E]xclusion and I just want to confirm that's what we want to have," and Mr. Stalnaker's response was "yes." Grant Decl., Ex. A Carter Dep. at 85:25–86:18.

**RESPONSE**:

Defendants object to SUMF No. 157 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.

158.

At Mr. Stalnaker's instruction, Mr. Carter also spoke with some of the other Commissioners, but no discussion, meeting, or vote was held. See Grant Decl., Ex. G HC Dep. (Carter I) at 38:12-23, 39:3-19, 40:7-10.

**RESPONSE**:

Undisputed.

159.

On February 13, 2019, the same day that he received the confirmation letter, Mr. Carter drafted a response, stating "We have elected to decline the 2017 mandate for Nondiscrimination in Health Programs and Activities Rule ACA Section 1557 for the plan year beginning 01/01/2017." Grant Decl. Ex. A Carter Dep. at Ex. 5, pgs. 1-3 (Lange - HC000442-44).

**RESPONSE**:

Undisputed.

160.

The letter provides that "Houston County will be responsible for any penalties that result if the plan is determined to be noncompliant." Id. at p. 3 (Lange - HC000442)

**RESPONSE**:

Undisputed.

161.

The letter also provides that Houston County consulted its own legal counsel with respect to the plan design. *Id.*

**RESPONSE**:

Undisputed.

162.

On February 14, 2019, Mr. Carter sent the letter to Ms. Clark. *Id. See also* Grant Decl., Ex. A Carter Dep. at 84:7-10.

**RESPONSE**:

Undisputed.

163.

On February 15, 2019, Ms. Clark forwarded the confirmation letter to Anthem. Grant Decl., Ex. BB at p. 1 (McNeal_00000109).

**RESPONSE**:

Undisputed.

164.

On February 21, 2019, Ms. Pope sent Ms. Clark the "corrected" Health Plan, which Ms. Clark then forwarded to Mr. Carter. Grant Decl., Ex. CC.

**RESPONSE**:

Undisputed.

**XI.    The Commissioners Refuse to Consider Sgt. Lange's Request For Accommodation.**

165.

In mid-February 2019, Sgt. Lange met with Sheriff Talton and informed him that she planned to speak to the Commission about his request to modify the Health Plan; they also discussed her trip to New York and that she had appealed the denial of her claim for gender reassignment surgery). Grant Decl., Ex. C Lange I Dep. at 72:6–73:20; Grant Decl., Ex. B Sheriff Talton Dep. at 70:8–71:3; 75:4–24.

**RESPONSE**:

Undisputed that Plaintiff informed Sheriff Talton she intended to speak to the Commission and that she had travelled to New York.  However, Sheriff Talton recalled she met with lawyers in New York, but not a doctor.  (Doc. 157 at 91:19-92:9.)

Disputed that Sheriff Talton testified there was any discussion of Plaintiff's appeal.

166.

Sheriff Talton took no action in response. Grant Decl., Ex. C Lange I Dep. 72:16–73:20; Grant Decl., Ex. B Sheriff Talton Dep. at 81:14–21. *See also* Grant Decl., Ex. B Sheriff Talton Dep. at 77:19-78:3, 78:25-79:22 (after meeting with Sgt. Lange, the Sheriff discussed the Exclusion with Mr. Stalnaker, but they did not discuss removing it).

**RESPONSE**:

Undisputed.

167.

On February 19, 2019, Sgt. Lange and Mr. Lewis attended a regular public meeting of the Board of Commissioners. Grant Decl., Ex. A Carter Dep. at 147:5–18.

**RESPONSE**:

Undisputed.

168.

Prior to the meeting, the County was aware that Sgt. Lange's intention at this meeting was "[t]o ask for an exclusion or some kind of an accommodation removing that exclusion specifically for her so that she could proceed with her surgeries, under our plan." Grant Decl., Ex. H HC Dep. (B. Holland) at 66:4-10.

**RESPONSE**:

Undisputed.

169.

Specifically, the County understood that she was seeking either "a rescission of the [E]xclusion entirely or an exception [to the Exclusion] for her individually." Grant Decl., Ex. H HC Dep. (B. Holland) at 66:20-25.

**RESPONSE**:

Undisputed.

170.

Mr. Lewis and Sgt. Lange then each made a presentation. *See* Meeting Mins. at PDF p. 5.

**RESPONSE**:

Undisputed.

171.

When Sgt. Lange spoke, she explained that "she was originally told by Blue Cross and Blue Shield that the surgery would be covered but was later denied even though the gender transition was medically necessary" and that she "feels discriminated against because the County refuses to make the necessary changes to the County's insurance plan

and asked the Board to vote to remove the exclusions." Grant Decl. Ex. A Carter Dep. at Ex. 13, p. 5.

**RESPONSE**:

    Undisputed.

172.

When Mr. Lewis spoke, he explained that "correspondence to the County asking for mediation concerning this matter elicited no response from County Attorney Tom Hall" and that, "[a]lthough they would like to avoid legal action, if the Board does not remove the exclusion by the next Commissioner's meeting on March 5th a complaint with the Equal Employment Opportunity Commission will be filed." *Id*.

**RESPONSE**:

    Undisputed.

173.

A transcription of the Commissioners' entire response to these presentations, made in 2019 by Sgt. Lange's counsel based on the County's videorecording of the meeting, which the County had posted to its website but subsequently took down, is as follows. A recording obtained by the Houston Home Journal remains available at https://www.facebook.com/HHJOnline/videos/558703247982131/.

> Chair Stalnaker: "Let's make one statement. To you and Anna. I'm gonna call on County Attorney Tom Hall to tell the County's position on this particular issue. Mr. Hall."
>
> Mr. Hall: "Thank you Mr. Chairman. The information that you sent on the 19th of January, we did receive, and had an answer to that prepared, and then your client asked for an audience here at the meeting. So, we determined that we weren't going to send you an answer—that we would, at this meeting, as you present yours, we would also tell you our answer. What you requested, as you know, is not covered by the County health insurance. The Commissioners is not considering any changes to the plan at this time. I'll let everyone know that I have advised the Commission and the staff not to discuss this matter due to the potential for litigation. So, if you do ask

-63-

them about it, they're not going to answer you about it. So, that is, in a nutshell, that's our answer. And we appreciate your time."

Mr. Lewis: "Can you offer a reason for the..."

Chair Stalnaker: "No, thanks. Your time's up. Thank you very much."

**RESPONSE**:

Undisputed.

174.

The County did not consider any cost information prior to deciding not to consider Sgt. Lange's request to remove the Exclusion. Grant Decl., Ex. A Carter Dep. at 151:4-13; Grant Decl., Ex. H HC Dep. (B. Holland) at 61:10-62:13.

**RESPONSE**:

Undisputed.  In fact, both Chairman Stalnaker (at 0:30-0:50) and County Attorney Hall (at the end of the recording) stated at the meeting (as can be heard in the linked recording) that no change would be considered since the terms of the then-plan year had already been set.

175.

At deposition, the County testified that the Commissioners told Sgt. Lange the County wasn't "in a position, at that time of year, to make any changes to the plan." Grant Decl., Ex. H HC Dep. (B. Holland) at 61:10-15. This testimony is contradicted by the recording of the meeting, which does not contain any explanation regarding the time of year. In any event, "[t]he Board of Commissioners is permitted to change the plan during the plan year if they are so inclined." Grant Decl., Ex. A Carter Dep. at 149:8-13.

**RESPONSE**:

Defendants object to SUMF No. 175 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately. Undisputed that Barry Holland testified as stated.

Disputed. Both Chairman Stalnaker and County Attorney Hall stated at the meeting (as can be heard in the linked recording) that no change would be considered since the terms of the then-plan year had already been set.

176.

The only explanation it provided was that the County wasn't "in a position, at that time of year, to make any changes to the plan." See Grant Decl., Ex. H HC Dep. (B. Holland) at 61:10-15, 62:7-63:6; Grant Decl., Ex. A Carter Dep. at 150:24-151:13.

**RESPONSE**:

Undisputed.

XII.   **September 20, 2019 Request for Accommodation**

177.

Sgt. Lange researched whether she could afford to pay for the surgery out-of-pocket, and called multiple additional surgeons around the country seeking cost quotes. Grant Decl., Ex. C Lange I Dep. at 136:14-137:2; Lange Decl. at ¶ 23.

**RESPONSE**:

Undisputed.

178.

Only one provided an estimate, of $40,000 to $50,000, which Sgt. Lange could not

afford on her law enforcement salary. Grant Decl., Ex. C Lange I Dep. at 137:7:10; 24-25; 138:14.

**RESPONSE**:

Undisputed.

179.

Sgt. Lange investigated surgery abroad, but determined this was not a safe course of action. Grant Decl., Ex. C Lange I Dep. at 52:13-17; 138:7-14. She also felt that being forced to have surgery outside of the United States for medically necessary care when her colleagues were not forced to was "not equal and it's not fair." Grant Decl., Ex. C Lange I Dep. at 172:10–173:1.

**RESPONSE**:

Defendants object to SUMF No. 179 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed that these are Plaintiff's opinions.

180.

Sgt. Lange then filed EEOC charges against the County and on July 8, 2019, was issued a right-to-sue letter. Grant Decl., Ex. EE at p. 16 (Lange-HC005532).

**RESPONSE**:

Undisputed.

181.

On September 20, 2019, Willkie Farr & Gallagher, LLP, counsel for Sgt. Lange, sent a letter to Mr. Hall, again requesting a reasonable accommodation. Grant Decl., Ex. A Carter Dep. at Ex. 14.

**RESPONSE**:

Undisputed that her attorneys sent a letter that date.

182.

The letter stated that Sgt. Lange seeks a "modification or adjustment of the Plan or on-going exemptions to the Exclusions for 'Drugs for sex change surgery' and 'services and supplies for a sex change' that would allow her access to coverage for medically necessary treatments for gender dysphoria." Id. at p. 3 (Lange_00002359).

**RESPONSE**:

Undisputed.

183.

The letter further stated that Sgt. Lange would prefer to resolve the dispute without litigation, although she would need to file suit by early October under the EEOC's deadline. Id. at p. 1 (Lange_00002357).

**RESPONSE:**

Undisputed.

184.

On September 26, 2019, Mr. Hall replied, stating that he would need to wait until after the next Commissioners' meeting to respond. Grant Decl., Ex. A Carter Dep. at Ex. 15.

**RESPONSE**:

Undisputed.

185.

The County never engaged in any discussions with Sgt. Lange as to her requested accommodation. Lange Decl. at ¶ 32.

**RESPONSE**:

Undisputed, except that it heard from Plaintiff and her attorney at a February 2019 meeting and considered her request at a November 2019 meeting.  (Doc. 150-15 at 65:15-66:10, 103:10-104:14.)

### XIII. The County Sought Information about the Cost of Removing the Exclusion Only After Sgt. Lange Threatened Litigation.

186.

On September 30, 2019, Mr. Carter emailed Ms. Clark, writing the following: "Do you think that Anthem BC/BS could give us an estimated cost of the gender reassignment. I know that there are before and after surgery cost including maintenance and that is fine if those are included also. Additionally, I know it can depend on the facility and provider but was wondering if they have something that says this surgery will cost _____ and the additional cost are. We are working with he [stet.] attorney and this question has come up. I thought I would ask before I let google tell me because BCBS numbers may be closer to fact." Grant Decl., Ex. A Carter Dep. at Ex. 16, p. 2 (Lange - HC003299); Grant Decl., Ex. A Carter Dep. at 157:21-158:2; Grant Decl., Ex. H HC Dep. (B. Holland) at 41:23-25.

**RESPONSE**:

187.          Undisputed.  Defendants object to SUMF No. 186 on the grounds that it does not comply with the requirements of Local Rule

56 because the proposed facts are not numbered separately.    This was the first time that the County had sought any information about the cost of removing the Exclusion or providing coverage for gender-confirming care. Grant Decl., Ex. F Clark Dep. at 79:16-80:5; Grant Decl., Ex. H HC Dep. (B. Holland) at 94:22-95:2.

**RESPONSE**:

    Undisputed.

188.

    The reason the County sought out the cost information was because of the threatened litigation. See Grant Decl., Ex. M HC Dep. (Carter II) at 25:4-19; Grant Decl., Ex. H HC Dep. (B. Holland) at 115:15-16 (Q: "Why was [cost information] obtained here then?" A: "Frankly, because we were sued here."); 41:16-22 ("In this particular year, I believe Sergeant Lange had filed -- had filed her lawsuit in October of 2019 and in light of those claims, we decided to gather information and we asked our third-party administrator Anthem to provide us some cost data on what might be the typical cost for those procedures."); ECF No. 68-1 at ¶¶ 2-4 (explaining that when the Commissioners renew the plan, Carter makes "recommendations" regarding "terms and rates," but in November 2019, "[i]n addition" [and only] "in light of this lawsuit" and Sgt. Lange's "request that the Board of Commissioners look at the exclusions in the plan affecting sex reassignment surgery, I provided [exclusion-related] information to the Board.").

**RESPONSE**:

    Undisputed, and as referenced in this paragraph, this was the time of plan renewal.

189.

    Later that same day, Ms. Clark sent Mr. Carter a photograph of a portion of a

computer screen with text on it, purportedly generated by Anthem, showing various estimated costs for male to female gender reassignment surgery, with estimated costs totaling $186,100, including $25,600 for a genital vaginoplasty—the only surgery that Sgt. Lange was seeking. Grant Decl., Ex. A Carter Dep. at Ex. 16, p. 1, 4 (Lange - HC003298, 3301); Lange Decl. at ¶ 15.

**RESPONSE**:

Undisputed.

190.

A number of the procedures listed in the photograph were not considered not medically necessary under Anthem's Guideline, and so would not have been covered if the Exclusion were removed. Grant Decl., Ex. A Carter Dep. at 177:22-178:20; Grant Decl. Ex. A Carter Dep. at Ex. 2, p. 4 (Lange_00001208).

**RESPONSE**:

To the extent this paragraph asserts that some procedures on the screen image were not medically necessary, it is undisputed.

191.

The photograph also states, "This is a much more difficult question than it might seem on the surface; the price is dependent on what the individual has done surgically to achieve gender reassignment." Grant Decl., Ex. A Carter Dep. at Ex. 16, p. 4 (Lange - HC003301)

**RESPONSE**:

Undisputed.

192.

The $25,600 cost estimate of a vaginoplasty provided by Anthem to the County in the photograph would not be a "high-cost" claim under the Health Plan which categorizes such costs as those over $50,000. Grant Decl. Ex. A Carter Dep. at Ex. 17, p. 7 (Lange - HC001912).

**RESPONSE**:

Undisputed.

193.

The County admits the data provided in the photograph was not "an in-depth cost analysis of the cost of removing the . . . [E]xclusion," and that the County, in fact, never conducted such an analysis. Grant Decl., Ex. M HC Dep. (Carter II) at 24:4–19. *See also* Grant Decl., Ex. K James Galasso Dep., Sept. 9, 2021 ("Galasso Dep.") at 14:3-8 (testifying that Galasso's scope of retention does not include calculating the cost of removing the Exclusion).

**RESPONSE**:

Undisputed.

194.

No other cost information relating to the Exclusion (or any other exclusion) was obtained from Anthem or provided to the Commissioners. *See* Grant Decl., Ex. H HC Dep. (B. Holland) at 102:8–11; 105:21–24.

**RESPONSE**:

Undisputed.

**XIV.  The County Prepares A *Pro Forma* Cost Analysis Before the Next Board Meeting**

195.

On November 4, 2019, Mr. Carter sent the Commissioners a memorandum recommending the Health Plan be renewed for the 2020 plan year without changes to the scope of benefits but with certain changes to cost sharing and premiums, including to "[i]mplement Prior Authorization for Prescription Drug Plan; [i]ncrease Retiree Rates by 4%; [and] [i]ncrease deductible, copay, and out of pocket maximum for both plans." Grant Decl. Ex. A Carter Dep. at Ex. 17, p. 1 (Lange - HC001906); Grant Decl., Ex. A Carter Dep. at 160:15-20.

**RESPONSE**:

Undisputed.

196.

Despite having received the cost information from Anthem related to gender-confirming care, that information was not included in the November 4 memorandum. Grant Decl. Ex. A Carter Dep. at Ex. 17.

**RESPONSE**:

Undisputed.

197.

On November 16, 2019, two weeks after sending the Commissioners his recommended plan changes, and only three days prior to the Commissioners' meeting, Mr. Carter sent another memorandum to the Commissioners, this time providing the cost information that he received from Ms. Clark on September 30, 2019. Grant Decl. Ex. A Carter Dep. at Ex. 18.

**RESPONSE**:

Undisputed.

198.

Mr. Carter testified that he provided this information separately because the November 4, 2019, memorandum was the "actual changes" that County was going to make to the Health Plan. Grant Decl., Ex. A Carter Dep. at 169:7-20.

**RESPONSE**:

Undisputed.

199.

The November 16, 2019, memorandum did not provide a recommendation as to the Exclusion, because Mr. Carter anticipated that it would not be removed. Grant Decl., Ex. M HC Dep. (Carter II) at 77:15 ("I think you could say that we were not going to remove the [E]xclusion, but that had not been decided on yet and had not been voted on."). Its stated intent was to provide information to "assist in evaluating any changes to plan design." Grant Decl. Ex. A Carter Dep. at Ex. 18, p.1 (Lange – HC001904).

**RESPONSE**:

Disputed. Carter testified: "I think it would be accurate to say that the recommendations from staff was not going to be able to remove the exclusion, but the commissioners who actually can do that had not made that decision." (Doc. 150-19 at 77:25-78:10.)

200.

Nowhere in the November 16, 2019, memorandum did Mr. Carter mention the County's concern that removing one exclusion would cause all other exclusions to be

removed. Grant Decl. Ex. A Carter Dep. at Ex. 18; Grant Decl., Ex. M HC Dep. (Carter II) at 79:21-25.

**RESPONSE**:

Undisputed.

201.

Mr. Carter also did not explain that a number of the listed procedures would not have been covered under Anthem's Guideline even if the Exclusion were removed. Grant Decl., Ex. A Carter Dep. at 179:3-10.

**RESPONSE**:

Undisputed.

202.

On November 19, 2019, the Commissioners held a public meeting. Grant Decl., Ex. DD.

**RESPONSE**:

Undisputed.

203.

During this meeting, Mr. Carter briefed the Commissioners on the 2020 health insurance renewal and recommended changes. *Id*. at p. 2 (Lange - HC000434).

**RESPONSE**:

Undisputed.

204.

Mr. Carter noted that "the County has been challenged over an exclusion in the plan," and explained that "cost data was obtained from Anthem on the exclusion and its

removal would impact the cost to the County plan" though he did not explain what that impact would be. *Id*.

**<u>RESPONSE</u>**:

      Undisputed.

205.

Mr. Carter recommended not removing "any of the 68 medical and 29 pharmacy exclusions." *Id*.

**<u>RESPONSE</u>**:

      Undisputed.

206.

Neither Mr. Carter's notes from the meeting nor the official minutes mention a concern that the removal of the Exclusion would result in the removal of all exclusions. Grant Decl., Ex. M HC Dep. (Carter II) at Ex. 41; Grant Decl., Ex. M HC Dep. (Carter II) at 81:21-8214, 83:7-14.

**<u>RESPONSE</u>**:

      Undisputed.

207.

Mr. Carter had not prepared or provided any cost information regarding removing all of the exclusions in connection with the 2020 health insurance renewal decision. Grant Decl., Ex. H HC Dep. (B. Holland) at 105:21-24.

**<u>RESPONSE</u>**:

      Undisputed.

208.

The Commissioners did not discuss any cost information regarding the Exclusion. Grant Decl., Ex. DD. *See also* Houston County, *Commissioner's Meeting*, VIMEO (Nov. 5, 2019), https://vimeo.com/366622943 (*also available at* Houston County, *Commissioners Meeting Minutes*, https://www.houstoncountyga.org/commissioner/meeting-minutes.cms (last visited Nov. 3, 2021). Nor did they remark on the fact that the scope of Mr. Carter's recommendation— regarding all the Health Plan's exclusions—did not match the content of the cost information he presented—regarding just the one Exclusion. *Id*.

**RESPONSE**:

Defendants object to SUMF No. 208 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.  However, a majority of Commissioners were aware of the rising costs of the plan as a whole.  (Doc. 150-15 at 101:8-12, 104:10-14; Doc. 137-7 at ¶ 4; Doc. 137-9 at ¶ 4; Doc. 137-8 at ¶ 4.)

## XV.   **The Commissioners Meet On November 19, 2019 and Conduct an Unprecedented Vote On Exclusions**

209.

On November 19, 2019, the Commissioners passed a motion "unanimously by all to approve the recommended cost-sharing to plan participants and the premium increases to retirees as presented and that the 68 plan exclusions and 29 pharmacy benefits exclusions remain in place." Grant Decl., Ex. DD at p. 3 (Lange - HC000435). In other words, the Commissioners voted to *not* make any changes to the Health Plan for regarding exclusions for 2020.

**RESPONSE**:

Defendants object to SUMF No. 209 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.

210.

The Commissioners typically only vote on "major changes to the [Health Plan]." Grant Decl., Ex. A Carter Dep. at 49:6-14 (Q: Do [the Commissioners] have to vote on every change to the health plan? A: No. Q: What types of changes would they have to vote on? A: Major changes that involve [sic] whether it's deductibles, whether its adding things, major changes to the plan, yes they would have to vote on.").

**RESPONSE**:

Undisputed.

211.

The Commissioners do not vote on adding exclusions to or removing exclusions from the Health Plan; Mr. Carter testified that he and Ms. Clark "discuss it and then me and Donna sometimes will go meet with Barry [Holland] before we go meet with Chairman Stalnaker and we will updated Chairman Stalnaker," and he or Mr. Holland "may go around to some of the other commissioners and talk to them." Grant Decl., Ex. A Carter Dep. at 24:24–27:19.

**RESPONSE:**

Undisputed.

212.

When deciding in 2019 to maintain the Health Plan with no changes for the 2020 plan year, the Commissioners did not vote at an open meeting. Grant Decl., Ex. A Carter Dep. at

23:3-14 ("Q And are all of those decisions [about the Health Plan] made during open meetings? A Not all of them. The past probably four years, yes, because there have been some major changes. **Last year we didn't do any changes, so, you know, didn't go before them because we didn't change anything.** But there's been years when it's very small changes that we've done and I just updated each commissioner and then the chairman said this is – I'm good with it if the other commissioners are good and we just went with it from that point.").

**RESPONSE**:

Undisputed.

## XVI.   The County Develops Its "Snowball" Defense After The Commissioners Vote.

213.

Subsequently, the County settled on an explanation for its removing the Exclusion: if it removed one exclusion, it would have to remove all of them, thus quintupling the Health Plan's expenses. Grant Decl., Ex. A Carter Dep. at 163:5-6. The County calls this its "snowball" defense. Grant Decl., Ex. M HC Dep. (Carter II) at 34:4.

**RESPONSE**:

Defendants object to SUMF No. 213 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Disputed.   The County declined to remove the Exclusion, or any of the many exclusions in the Health Plan, to keep down the overall costs of the plan.  (Doc. 150-15 at 101:8-12, 104:10-14; Doc. 137-7 at ¶ 4; Doc. 137-9 at ¶ 4; Doc. 137-8 at ¶ 4.)  After publicity about Plaintiff's lawsuit, several employees said, if she were successful, those employees

would take action to change the exclusions that affected them.  (Doc. 150-19 at 166:10-168:22.)

214.

The County admits that its snowball defense was not a "basis of [its] decision not to remove the Exclusion." Grant Decl., Ex. M HC Dep. (Carter II) at 83:15-84:24. *See also id*. at 79:21-83:14 (admitting that this concern was not included in Mr. Carter's memo or presentation and is not reflected in the Commissioners' Nov. 19, 2019, meeting minutes).

**<u>RESPONSE</u>**:

Undisputed; however, in addition to the cost trends of the plan, the County knew that plan members had asked about exclusions other than the sex change surgery exclusion and there was concern that eliminating one exclusion would lead to requests (or even lawsuits) to remove other exclusions. (County 30(b)(6) Dep. II Carter, pp. 84:7-14, 129:24-130:15, Ex. 31.) Since Plaintiff's lawsuit, some members have even stated that, if Plaintiff gets the relief she is seeking, those members would take action (legal or otherwise) to have the exclusion that affects them removed from the plan. (County 30(b)(6) Dep. II Carter, p. 161:15-25, Ex. 31.)

215.

Rather, the County admits this concern arose "about three weeks" after the Commissioners voted to maintain the Exclusion. *Id*. at 84:25-85:18.

**<u>RESPONSE</u>**:

Undisputed; however, in addition to the cost trends of the plan, the County knew that plan members had asked about exclusions other than the sex change surgery exclusion and there was concern that eliminating one exclusion would lead to requests (or even lawsuits)

to remove other exclusions. (County 30(b)(6) Dep. II Carter, pp. 84:7-14, 129:24-130:15, Ex. 31.) Since Plaintiff's lawsuit, some members have even stated (starting three weeks after the November 2019 meeting) that, if Plaintiff gets the relief she is seeking, those members would take action (legal or otherwise) to have the exclusion that affects them removed from the plan. (County 30(b)(6) Dep. II Carter, p. 161:15-25, Ex. 31.)

216.

But the County admits that the exclusions would not automatically be removed as a result of the removal of the Exclusion. *See* Grant Decl., Ex. M HC Dep. (Carter II) at 189:20-190:7. Rather, "it's going to put the exclusion in challenge from other employees." *Id.*; Grant Decl., Ex. H HC Dep. (B. Holland) at 86:10-88:10 (admitting that after granting an exemption to an employee regarding bariatric surgery, the County did not have to remove any exclusions).

**RESPONSE**:

Defendants object to SUMF No. 216 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.

217.

The County also admits that other exclusions would not automatically be removed as a result of the removal of the Exclusion. *See* Grant Decl., Ex. M HC Dep. (Carter II) at 189:2025; 190:2-7. Rather, "it's going to put the exclusion in challenge from other employees." *Id.*

**RESPONSE**:

Defendants object to SUMF No. 217 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.

218.

The County's own actuarial expert, James Galasso, testified that he "would be hard pressed to say it's [his] opinion as an actuary" that removal of one exclusion would result in removing additional exclusions. Grant Decl., Ex. K Galasso Dep. at 92:4-20; 95:4-96:6; 97:2-9 ("Q: Is it your opinion that it's reasonable to assume that removing one exclusion would result in removing all exclusions? A: That would sound like a stretch me, that they would all be removed.").

**RESPONSE**:

Undisputed as to removing one exclusion leading to the removal of *all* exclusions. Disputed in that Galasso testified the County's concern about having other exclusions challenged was reasonable because it is rare to remove an exclusion not required by regulatory mandate, the Plan's history over the past three years has only see the addition of exclusions and not any removals, and the County provided a list of employees who had questioned various exclusions over the past few years. (Doc. 167 at 91:1-13.)

219.

Likewise, according to Sgt. Lange's actuarial and insurance expert, Joan Barrett, "it is standard practice to maintain certain non-standard exclusions and remove others." Decl. of Joan Barrett in Support of Plaintiff's Mot. for Summ. J. ("Barret Decl.") at Ex. 1, ¶¶

5(b). *See also* Grant Decl., Ex. J Joan Barrett Dep., Aug. 24, 2021 ("Barrett Dep.") at 68:6-15.

**RESPONSE**:

Undisputed that is Barrett's testimony.

220.

The County has previously removed other exclusions from the Health Plan without causing a financial crisis. Grant Decl., Ex. A Carter Dep. at 174:7-21; Grant Decl., Ex. M HC Dep. (Carter II) at 176:22-25.

**RESPONSE**:

Undisputed; however, those exclusions were mandated by regulation. (Doc. 150-19 at 174:24-175:17.)

221.

Ms. Clark testified that in her experience as an insurance agent, removing one exclusion does not require removal or other or all exclusions, and "every plan has exclusions." Grant Decl., Ex. F Clark Dep. at 78:15-18 (Q: [J]ust because one exclusion is removed, it doesn't mean that another exclusion will necessarily be removed, right? A: That's correct.") *Id.* at 78:10– 14 ("Q: So for those other plans where the exclusion did end up getting removed, do you know if those plans continue to have other types of exclusions? A: Every plan has exclusions.")

**RESPONSE**:

Undisputed.

## XVII. **The Estimated Cost of Removing the Exclusion is Minimal.**

222.

Sgt. Lange's actuarial expert, Joan Barrett, estimated that the budgetary impact of removing the exclusion of transition-related surgery would be, on average, less than 0.1% of total annual medical and pharmacy claims. *See* Barrett Decl. at Ex. 1, ¶¶ 5(a), 47-50, 53; Grant Decl., Ex. J Barrett Dep. at 40:9-14; 41:18-25; 42:1-2; Grant Decl., Ex. K Galasso Dep. at 60:2-6; 13-16.

**RESPONSE**:

Undisputed, but immaterial to this case.  In their Motion to Exclude Expert Testimony of Barrett, Defendants showed this opinion was unreliable.  (Doc. 133.)

223.

The impact would be considered immaterial from an actuarial perspective. *See* Barrett Decl. at Ex. 1, ¶¶ 5(a), 53; Grant Decl., Ex. J Barrett Dep. at 49:7-25; 50:19; Grant Decl., Ex. K Galasso Dep. at 97:15-23; 101: 13-16. (Q. Have you, in your experience, ever concluded that a .1 percent cost increase was material? A. Not that I can recall, no.").

**RESPONSE**:

Disputed.  Galasso disputes that spreading the cost of transgender surgery over time via a per member per month calculation (leading to the assessment of a 0.1% cost increase) is a valid or reliable actuarial approach and compared it to the possible impact in the year the cost occurs.  "If the number is a PMPM spread over a hundred years, it's not terribly relevant. If the number is, in my experience, next year, likely or unlikely, I think it is relevant."  (Doc. 167 at 97:24-100:6.)

224.

Anthem's own analysis, as provided to the County, is consistent with Ms. Barrett's

estimates. Anthem purportedly estimated the cost for a genital vaginoplasty is $25,600, which would be less than .1% of the Health Plan's total claims over the three-year period of 2017 to 2019. *See* Grant Decl., Ex. FF at p. 2 (McNeal_00000066); Barrett Decl. at Ex. 1, ¶ 53.

**RESPONSE**:

Undisputed.  However, Galasso noted that Barrett's report relies on studies with wide variation in the cost of transition surgery, including from $21,302 to $52,344, all of which indicates unpredictability in cost for the procedure.  (Doc. 167 at 300.)

225.

Anthem produced an "estimation" prepared for its internal use during the 2017 plan year, based on data from state plans without blanket exclusions. Grant Decl., Ex. GG. Anthem calculated that, for a transgender woman seeking both top and bottom surgeries, the average cost paid was [Redacted]. *Id.*

**RESPONSE**:

Undisputed.

226.

Anthem also concluded that that utilization of gender-confirming care was low, [Redacted] utilizing surgical services for gender dysphoria annually, and [Redacted] of health plan members using any covered services. *Id.* Based on these estimations, Anthem concluded that the average cost to plans of covering gender-confirming care was about [Redacted] *Id.*

**RESPONSE**:

Defendants object to SUMF No. 226 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed that this is Anthem's conclusions, which differ from Barrett's conclusions.  (Doc. 167 at 162, ¶ 44.)

227.

The County did not provide any analysis to show that the cost of removing the Exclusion would be greater than .1%. Grant Decl., Ex. K Galasso Dep. at 14:3-8 (testifying that Galasso's scope of retention does not include calculating the cost of removing the Exclusion).

**RESPONSE**:

Undisputed, but not reliable as stated in Doc. 133.

228.

Other than obtaining estimated costs for various gender reassignment procedures, the County has never analyzed the cost of removing the Exclusion. Grant Decl., Ex. M HC Dep. (Carter II) at 24:14-25:9; Grant Decl., Ex. H HC Dep. (B. Holland) at 106:5-25. The same is true with respect to Sheriff Talton. Grant Decl., Ex. B Sheriff Talton Dep. at 75:4-76:14

**RESPONSE**:

Defendants object to SUMF No. 228 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.

229.

The County admits that the removal of the Exclusion in and of itself would not cause the County "to make [any] drastic changes" to the Health Plan or "do away with the plan". *See* Grant Decl., Ex. M HC Dep. (Carter II) at 33:2-12; 34:2-10.

**RESPONSE**:

Undisputed.

230.

The County has stated that, if it were to remove the Exclusion, it might need to offer a plan that is more like plans offered in by private sector employers, such as a plan with higher deductibles. Grant Decl., Ex. M HC Dep. (Carter II) at 33:13-21.

**RESPONSE**:

Undisputed.

231.

Houston County also maintains a stop-loss policy that allows it to manage risk and protect the Health Plan from unusually large claims expenditure in a given year. Grant Decl., Ex. A Carter Dep. at 55:23-57:13; Barrett Decl. at Ex. 1, ¶ 52; Grant Decl., Ex. J Barrett Dep. at 21:2522:3; 55:24-56:9; Grant Decl., Ex. K Galasso Dep. at 110:14-23.

**RESPONSE**:

Undisputed that the plan has stop-loss insurance.  Disputed that such insurance would keep the Plan from unusually large expenditure during a year.  Individual claim stop loss triggers at $175,000 and aggregate stop loss (for a plan year's spend) does not trigger until actual plan expenditures exceed anticipated claims by 25% (thus, if anticipated claims are $10M, the County would spend $2.5M *over budget* before the stop loss would help). (Doc. 167 at 313-314.)

## XVIII. Despite Invitation to Settle, Defendants Insisted on Continuing Litigation and Incurred Disproportionately High Legal Expenses

232.

On February 12, 2020, before filing an Amended Complaint naming the Sheriff's Office as an additional defendant, counsel for Sgt. Lange sent the Sheriff's Office an *ante litem* notice, whose purpose whose purpose under Georgia practice is to "provide adequate notice of the claim to facilitate settlement before the filing of a lawsuit." *Board of Regents v. Myers*, 764 S.E.2d 543, 546 (Ga. 2014) (emphasis added). The Sheriff's Office received the notice, but did not respond. Grant Decl., Ex. E SO Dep. (Rape) at 82:13-15; Def. Sheriff Talton's Answer at ¶ 105.

**RESPONSE**:

Defendants object to SUMF No. 232 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately and supported by specific citation to particular parts of materials in the record.

Undisputed, but immaterial to this case.

233.

Defendants had, as of September 17, 2021, spent over $541,000 on attorney's fees defending this matter. Grant Decl., Ex. HH. This is over twenty-one times their estimate for the cost of Sgt. Lange's surgery.

**RESPONSE**:

Defendants object to Paragraph 233 on the ground that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately and supported by specific citation to particular parts of materials in the record.

Undisputed, but immaterial to this case

**XIX. The County Has Granted An Exception to an Exclusion in the Past.**

234.

According to the County, granting an exception to the Exclusion, would "would only open up Pandora's Box for every other participant to ask for removal or exceptions to any of the other listed exclusions in the plan, which we maintained in -- maintain the affordability of the plan for all of our employees." Grant Decl., Ex. H HC Dep. (B. Holland) at 79:18-80:2. The County has explained "if you make one exception or remove one," then "why would you not do [it] for others when they come asking for a tummy tuck or a nose job or infertility treatments or so on." Grant Decl., Ex. H HC Dep. (B. Holland) at 80:3-11; 85:18-86:9.

**RESPONSE**:

Defendants object to Paragraph 234 on the ground that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed.  The County further explained that Plaintiff "is one of hundreds of participants] on that plan" (Doc. 159 at 79:17-18.) and "we have 68, I believe, stated exclusions in our plan, just under medical."  (Doc. 159 at 80;6-8.)

235.

Nevertheless, the County has made an exception to the Health Plan in the past. Grant Decl., Ex. O Def. Houston County's Resp. to Third Set of Interrogatories at No. 4. Grant Decl., Ex. H HC Dep. (B. Holland) at 80:16-25; 81:2-12; 81:18-25; 82:2-25; 83:2-6.

**RESPONSE**:

Disputed on the grounds that the cited evidence does not support Plaintiff's proposed fact.  The County testified that the Plan had previously covered lap band surgery

which contemplated annual adjustments for several years after the initial procedure. (Doc. 150-19 at 184:6-13). A Plan participant had the surgery and one adjustment before an exclusion for lap band surgery was added to the Plan effective January 1, 2010. (Id. p. 184:14-25; Ex. 40.) When the Plan participant was subsequently denied coverage for a lap band adjustment, she asked the County to pay for the adjustment since it was contemplated when she had the surgery. Id. p. 184:20-185:2. The County agreed to cover the remaining lap band adjustment procedure because it was contemplated when the initial surgery occurred and was covered. Id. p. 184:6-25; 185:14-186:3.

236.

In that case, a plan member received lap band surgery that was covered under the Health Plan at the time of the procedure. Grant Decl., Ex. M HC Dep. (Carter II) at 184:2-13.

**RESPONSE**:

Undisputed.

237.

The following year, the County added an exclusion for bariatric surgery. Grant Decl., Ex. O Def. Houston County's Resp. to Third Set of Interrogatories at No. 4; Grant Decl., Ex. M HC Dep. (Carter II) at 186:7-10.

**RESPONSE**:

Undisputed that the County accepted Anthem's recommendation to add an exclusion for bariatric surgery to the Health Plan.

Disputed that the cited evidence supports Plaintiff's statement that the exclusion for bariatric surgery was added the year following the surgery referenced in SUMF 236.

238.

The plan member was subsequently denied coverage for lap band adjustment surgeries as a result of the bariatric surgery exclusion. Grant Decl., Ex. M HC Dep. (Carter II) at 184:14-20.

**RESPONSE**:

Undisputed.

239.

That individual requested an exception to the exclusion. Grant Decl., Ex. M HC Dep. (Carter II) at 184:14-25; 185:2.

**RESPONSE**:

Undisputed.

240.

After the individual discussed her request with Chairman Stalnaker on January 1, 2011, the County granted an exception to the exclusion not only to her, but all plan members in the same circumstance. Grant Decl., Ex. M HC Dep. (Carter II) at 186:4-10.

**RESPONSE**:

Undisputed.   The County issued a letter to Anthem to clarify its intention to cover the "lap band adjustments" for lap band procedures which were covered by the Plan prior to the decision to add an exclusion for lap band surgery effective January 1, 2021.   (Doc. 150-19 186:4-10, Ex. 40)

241.

The County was not concerned that granting this exception would lead to the removal of other exclusions. Grant Decl., Ex. M HC Dep. (Carter II) at 189:9-14.

**RESPONSE**:

Disputed as the cited evidence does not support that the County removed an exclusion. As explained by the County, however, the decision to pay for the adjustments was viewed as a clarification because the surgery and required adjustments were covered at the time of the participant's surgery. (Doc. 150-19 at 188:20-24.) The County was not worried that its decision to approve payment for the second and third adjustments would lead to the removal of other exclusions because it didn't remove any exclusions but rather kept the exclusion in place. (Id. 189:9-14.)

242.

The County did not have to remove any exclusions as a result of making this exemption. Grant Decl., Ex. H HC Dep. (B. Holland) at 86:10-88:10.

**RESPONSE**:

Disputed as to the term "exemption." As explained by the County, the decision to pay for the adjustments was viewed as a clarification because the surgery and required adjustments were covered at the time of the participant's surgery. (Doc. 150-19 at 188:20-24.)

243.

In granting this exception, the County did not consider whether the requested

surgeries were necessary for the Health Plan member to do their job. See Grant Decl., Ex. H HC Dep. (B. Holland) at 87:3-12.

**RESPONSE**:

Undisputed.  As explained by the County, the decision to pay for the remaining adjustments was viewed as a clarification because the surgery and required adjustments were covered at the time of the participant's surgery.  (Doc. 150-19 at 188:20-189:8.)

## XX.   **The County Routinely Handles High-Cost Claims**

244.

The County routinely covers numerous high-cost claimants each year, Lange – HC000425 (listing 107 of 1444 members during the years 2017-2019), including one whose costs reached $1.1 million. Grant Decl., Ex. M HC Dep. (Carter II) at 92:7-11

**RESPONSE**:

Undisputed.  Because the County already has these high-cost claims, it does not want to make plan changes that will add more costs.  (Doc. 159 at 101:22-102:7; Doc. 150-19, Ex. M at 23:20-31:7.)

245.

There are numerous high-cost procedures or conditions the Health Plan does not exclude—for example, in 2018, it covered: spinal stenosis with spinal fusion ($235,709 expended with additional $95,000 expected), colon cancer ($186,047 expended with an additional $250,000 expected) and endometriosis with hysterectomy ($171,979 expended with an additional $180,000 expected). Lange – HC000427.

**RESPONSE**:

Undisputed.  Because the County already has these high-cost claims, it does not want to make plan changes that will add more costs. (Doc. 159 at 101:22-102:7; Doc. 150-19, Ex. M at 23:20-31:7.)

246.

Likewise, most of the Health Plan's expenditure covers care that is subject to much higher rates of utilization and expenditure than those that would be expected regarding gender-confirming care. Grant Decl., Ex. O Def. Houston County's Resp. to Third Set of Interrogatories at No. 1; Grant Decl., Ex. M HC Dep. (Carter II) at Ex. 35; Grant Decl., Exhs. JJ, KK. For example, in 2019, the Health Plan spent $1.58 million on 538 members with disorders of the musculoskeletal system, comprising over a fifth of its total spending; and over $700,000 each on the claims of several hundred members with disorders of the circulatory system and "Injury & Poisoning," comprising nearly another tenth each. Grant Decl., Ex. KK. Despite these diagnoses being vastly more costly to the Health Plan than the predicted cost of covering gender dysphoria, they are not subject to a blanket exclusion.

**RESPONSE**:

Defendants object to SUMF No. 246 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed in that, because the County already has these high-cost claims, it does not want to make plan changes that will add more costs.  (Doc. 159 at 101:22-102:7; Doc. 150-19, Ex. M at 23:20-31:7.)

Disputed as to the suggestion transition treatments are subject to a "blanket exclusion."  Plaintiff testified that her endocrinologist visits, psychological visits, and

hormones and other medications have been covered by the Health Plan.  (Doc. 137-3 at 48:19-49:15.)

## XXI. **Defendants have made discriminatory statements regarding transgender people.**

247.

[*Intentionally left blank.*]

**RESPONSE**:

248.

Defendants have made numerous discriminatory statements regarding transgender people. For example, in the fall of 2017, Sgt. Lange requested to go by the name Anna before she had legally changed it. Grant Decl., Ex. II.

**RESPONSE**:

Defendants object to Paragraph 248 on the ground that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately and supported by specific citation to particular parts of materials in the record.

Disputed as to the first proposed fact.  Plaintiff asserts a general conclusory statement without any citation to the record.

Undisputed as to the second proposed fact.

249.

In response, Sheriff Talton indicated that he would not require anyone to call Sgt. Lange Anna until it was legally changed although others in the office use names of choice.

*See* Grant Decl., Ex. B Sheriff Talton Dep. at 97:6-98:14; 98:21-99:6. *See also* Grant Decl., Ex. E SO Dep. (Rape) at 107:22-108:3. Grant Decl., Ex. A Carter Dep. at 187:5-9.

**RESPONSE**:

Disputed as the cited evidence does not support Plaintiff's proposed fact that "others in the office use names of choice."

250.

Even after she legally changed her name, Sheriff did not require his deputies to call her Anna. Grant Decl., Ex. B Sheriff Talton Dep. at 101:15-20; Grant Decl., Ex. E SO Dep. (Rape) at Ex. 6; Grant Decl., Ex. LL; Grant Decl., Ex. E SO Dep. (Rape) at 106:9 – 23. To this day, the Sheriff has still given no instructions or request to his deputies to call Sgt. Lange by her legal name. Grant Decl., Ex. B Sheriff Talton Dep. at 101:24-102:6. Both her state-issued identification and County personnel records list her as female. Grant Decl., Ex. L Lange Dep. at 124:15-125:7.

**RESPONSE**:

Defendants object to SUMF No. 250 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed, but not material as Plaintiff has not alleged that since she legally changed her name to Anna Lange that any Sheriff's Office employee has refused to call her by her legal name.

251.

Sheriff Talton still refers to Sgt. Lange with male pronouns, even though Sgt. Lange has requested to be called "she," has presented as female for years and legally changed her name to Anna. *See e.g.,* Grant Decl., Ex. B Sheriff Talton Dep. at 14:2-9; 15:17-24; 17:3

-95-

**RESPONSE**:

Disputed to the extent Plaintiff's proposed fact suggests that Sheriff Talton does not refer to Plaintiff with female pronouns. (Doc. 157 at 22:23-23:4; 29:3-13; 63:16-64:9; 93:5-12; 97:6-23; 98:9-14; 104: 8-14.).

252.

In August 2018, Sgt. Lange was reprimanded for posting "improper" photographs of herself in female court clothes on social media. Grant Decl., Ex. E SO Dep. (Rape) at Ex. 6, p. 11 (Lange – SO000088); Grant Decl., Ex. C Lange I Dep. at 18:14-17; 20:7-13. Sgt. Lange was told by her immediate supervise that he "didn't feel comfortable when [Sgt. Lange] wore female attire at work." Grant Decl., Ex. C Lange I Dep. at 26:11-12; 23-25.

**RESPONSE**:

Defendants object to SUMF No. 252 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Disputed as Plaintiff was not reprimanded for posting a photograph of herself in female court clothes on social media but was reprimanded for posting a nude photo of herself on her public Facebook page (Doc. 137-3 at 18:10-25, 110.)

253.

Sheriff Talton has stated that he does not believe in sex changes—"whether it is surgery or not." Grant Decl., Ex. B Sheriff Talton Dep. at 105:16–18.

**RESPONSE**:

Undisputed, but Defendants contend that Sheriff Talton's personal belief about gender transition – which he is entitled to have – is not material where, as here, it has no

impact on his treatment of Plaintiff as an employee of the Sheriff's Office (Doc. 157 at 18:15-25, 104:5-105:18; Doc. 137-3 at 36:19-23; 37:15-23.)

254.

Sheriff Talton has stated that he does not think that gender dysphoria is "a type of thing . . . that's going to affect [Sgt. Lange's] health or anything like that." Grant Decl., Ex. B Sheriff Talton Dep. at 86:11–16; 87:15–18.

**RESPONSE**:

Disputed on the ground that Plaintiff's cited evidence does not support the proposed fact. Moreover, Plaintiff's proposed fact is immaterial because Sheriff Talton does not exercise any authority or control over the County's Health Plan (Doc. 150-11 at 49:2-18.)

255.

Sheriff Talton has stated that he does not believe that there is any form of care for a transgender person that should be covered under the Health Plan to treat gender dysphoria. See Grant Decl., Ex. B Sheriff Talton Dep. at 87:19–88:3. Mr. Carter likewise stated he was "good with nothing being covered." Grant Decl., Ex. A Carter Dep. at Ex. 7, p. 1 (Lange-HC000895).

**RESPONSE**:

Defendants object to SUMF No. 255 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed as to the first proposed fact, but immaterial to this case as it is a statement of Sheriff Talton's personal opinion and the record is unrefuted that Sheriff Talton does not exercise any authority or control over the County's Health Plan (Doc. 137-10 at ¶ 6; Doc. 150-11 at 49:2-18.)

Disputed as to the second proposed fact as the cited evidence does not support it. (Carter Dec. II, ¶ 4). Moreover, Plaintiff's use of the term "likewise" improperly suggests that Carter does not believe that the Plan should cover care for a transgender person which is unsupported by the record. (Id.)

256.

Sheriff Talton has stated that he believes that no treatment for a transgender individual can be medically necessary. Grant Decl., Ex. B Sheriff Talton Dep. at 55:18–25.

**<u>RESPONSE</u>**:

Disputed on the ground that Plaintiff's cited evidence does not support the proposed fact. Sheriff Talton stated that, in his opinion, he does not believe that surgery is medically necessary as a form of treatment for someone who is transgender. He did not state that "no treatment for a transgender individual can be medically necessary." Defendants further object to the proposed fact as immaterial to this case as it is a statement of Sheriff Talton's personal opinion and the record is unrefuted that Sheriff Talton does not exercise any authority or control over the County's Health Plan (Doc. 137-10 at ¶ 6; Doc. 150-11 at 49:2-18.)

257.

Sheriff Talton has stated that he believes that sex change surgery is not medically necessary for a transgender individual the way that surgery may be medically necessary for someone with breast cancer. Grant Decl., Ex. B Sheriff Talton Dep. at 57:8–17.

**RESPONSE**:

Undisputed but the proposed fact is not immaterial to this case as it is a statement of Sheriff Talton's personal opinion and the record is unrefuted that Sheriff Talton does not exercise any authority or control over the County's Health Plan (Doc. 137-10 at ¶ 6; Doc. 150-11 at 49:2-18.)

258.

Sheriff Talton has stated that he is concerned about what the public and other members of the Sheriff's Office would think about there being a transgender deputy. Grant Decl., Ex. B Sheriff Talton Dep. at 38:15-25; 39:2-22.

**RESPONSE**:

Disputed. Plaintiff's cited evidence is incomplete and does not support the proposed fact.  Sheriff Talton testified that while he was concerned about what the public would think, that "didn't change his mind about keeping Sergeant Lange in [her] position" and that as long as Plaintiff continued to do her job he planned on keeping her, and her transition "didn't affect my feelings at all." (Doc. 157 at 38:15-39:8.)

259.

Mr. Carter understands the term "transgender" to mean "a person who wants to be or believes or however, it's a person that identifies as the opposite sex of what they assign for at birth." Grant Decl., Ex. A Carter Dep. at 31:8-13.

**RESPONSE**:

Undisputed.

-99-

260.

Mr. Carter views the terms "transgender" and "gender dysphoria" to mean the same thing. Grant Decl., Ex. A Carter Dep. at 31:14-24.

**RESPONSE**:

Undisputed.

261.

Sheriff Talton also understands "transgender" and "sex change" to mean the same thing. Grant Decl., Ex. B Sheriff Talton Dep. at 15:14-20.

**RESPONSE**:

Disputed, as Plaintiff's cited evidence does not support the proposed fact.

262.

Both the County and the Sheriff likened gender-affirming healthcare to cosmetic surgery, like a "tummy tuck," a "nose job," or an aesthetic breast enhancement. Grant Decl., Ex. H HC Dep. (B. Holland) at 80:3-11; Grant Decl., Ex. B Sheriff Talton Dep. at 54:24-55:5.

**RESPONSE**:

Disputed. Plaintiff's cited evidence does not support the proposed fact.  When asked why he did not believe Plaintiff's surgery should be covered, Sheriff Talton referred to his need for hearing aids and that they are not covered under the policy. (Doc. 157 at 54:21-24.)  The County's referenced testimony refers to its concern that other current medical exclusions may be challenged if the County removes the Exclusion for Plaintiff.

## XXII. <u>Sgt. Lange Continues to Need Healthcare</u>

263.

Sgt. Lange has continued to have routine healthcare coverage denied. Lange Decl. at ¶ 37.

**<u>RESPONSE</u>**:

Disputed as Plaintiff's cited evidence does not support the proposed fact. Even if Plaintiff's statement as to the two claims referenced in Paragraph 36 of her Declaration are undisputed, it is also undisputed that the Plan covered (and continues to cover) Plaintiff's transition-related hormone medication, endocrinologist visits and psychological monitoring, (Doc. 137-3 48:19-49:15; Doc. 150-18 at 120:14-123, Ex. 36).

264.

Sgt. Lange requires annual endocrinologist visits and blood work to monitor her hormone levels and renew her hormone replacement therapy prescriptions. Lange Decl. at ¶ 16.

**<u>RESPONSE</u>**:

Disputed as Plaintiff's cited evidence does not support the proposed fact.

265.

On June 12, 2019, she was denied coverage for a routine blood test for monitoring her hormone and medication levels, citing the Exclusion. Grant Decl., Ex. A Carter Dep. at Ex. 1, p. 72-73 (Lange – HC001833-34); Lange Decl. at ¶ 37.

**<u>RESPONSE</u>**:

Disputed, as the cited evidence does not support that Plaintiff was told she was denied coverage for this blood test due to the Exclusion.

266.

And as recently as October 18, 2021, she was denied coverage for her regular annual visit to the endocrinologist. Lange Decl. at ¶ 37.

**RESPONSE**:

Undisputed, but Plaintiff testified that her previous endocrinologist visits have been covered under the Plan.  (Doc. 150-18 at 120:14 – 124:7, Ex. 36)

267.

Sgt. Lange remains unable to afford surgery, and so her gender dysphoria remains only partially treated. Lange Decl. at ¶ 24.

**RESPONSE**:

Undisputed.

268.

This continues to cause her distress, anxiety, sleeplessness, feelings of depression, and other symptoms, which continue to limit her ability to function socially and professionally, including difficulties thinking, concentrating, and interacting with other people like her spouse, child, and coworkers—this last interfering with her career goals and relationships with colleagues—as well as major bodily functions, such as neurological and brain functions. Lange Decl. at ¶¶ 15, 22, 27.

**RESPONSE**:

Undisputed, but Plaintiff has been successful in her job duties and interactions with colleagues, and she has participated in a number of hobbies, including working as a soccer referee, participating in several tennis tournaments and as a speaker on panels addressing

transgender issues. (Doc. 137-3 at 13:21-23, 14:8-10, 16:5-7, 17:18-20, 30:16-18, 38:16-18, 39:9-11, 32:12-15.)

Respectfully submitted this 22nd day of December 2021.

s/ Patrick L. Lail
R. Read Gignilliat
Georgia Bar No. 293390
Sharon P. Morgan
Georgia Bar No. 522955
Patrick L. Lail
Georgia Bar No. 431101

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 659-6700
(404) 222-9718 (Facsimile)
gignilliat@elarbeethompson.com
morgan@elarbeethompson.com
lail@elarbeethompson.com

*Attorneys for Defendants*

**THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 5:19-CV-00392-MTT |
| v. | ) | |
| | ) | |
| HOUSTON COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 22, 2021, I served a true and correct copy of

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED**

**MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY**

**JUDGMENT** via this Court's ECF filing system which will automatically send electronic

notification of filing to the following attorneys of record:

Kenneth E. Barton, III                       Jill K. Grant
   M. Devlin Cooper


        David Brown                        Kevin M. Barry



                              *s/ Patrick L. Lail*
                              Patrick L. Lail
                              Georgia Bar No. 431101

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ANNA LANGE, | Civil Action No. |
| Plaintiff, | 5:19-CV-00392-MTT |
| vs. | **ORAL ARGUMENT REQUESTED** |
| HOUSTON COUNTY, GEORGIA; and Houston County Sheriff CULLEN TALTON, in his official capacity, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................1

I.      The Sheriff's Office Is Not Entitled To Sovereign Immunity ............................1

II.     The Undisputed Facts Show That The County Is An Agent of the Sheriff's Office ..........2

III.    The Exclusion Violates Title VII ................................................................4

        A.      Sgt. Lange Has Offered Direct Evidence of Discrimination. ..................5

        B.      The Exclusion Is Expressly Discriminatory. ........................................6

        C.      Defendants Have Not Shown a Dispute of Material Fact....................7

IV.     The Exclusion Violates the Equal Protection Clause ........................................14

V.      The Exclusion Violates Title I of the ADA ....................................................16

        A.      Sgt. Lange Has A Disability Under The ADA. ..................................19

        B.      Defendants Denied Sgt. Lange's Request For A Reasonable
                Accommodation.........................................................................24

CONCLUSION..........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Choate,*
  469 U.S. 287 (1985)..............................................................................................18

*Bazemore v. Friday,*
  478 U.S. 385 (1986)..............................................................................................13

*Bonilla v. Baker Concrete Constr., Inc.,*
  487 F.3d 1340 (2007)..............................................................................................5

*Boots v. Nw. Mut. Life Ins. Co.,*
  77 F. Supp. 2d 211 (D.N.H. 1999)........................................................................19

*Bostock v. Clayton Cnty., Georgia,*
  140 S. Ct. 1731 (2020)........................................................................................7, 9

*Brooks v. Cnty. Com'n of Jefferson Cnty., Alabama,*
  446 F.3d 1160 (11th Cir. 2006) ......................................................................11, 12

*Califano v. Goldfarb,*
  430 U.S. 199 (1977)..............................................................................................10

*Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New
  England, Inc.,*
  37 F.3d 12 (1st Cir. 1994).....................................................................................19

*Chapman v. AI Transp.,*
  229 F.3d 1012 (11th Cir. 2000) ......................................................................11, 12

*City of Los Angeles, Dep't of Water & Power v. Manhart,*
  435 U.S. 702 (1978)................................................................................................7

*Clark v. St. Joseph's/Candler Health Sys., Inc.,*
  No. 4:05-CV-119, 2006 WL 2228929 (S.D. Ga. Aug. 3, 2006)..............................4

*Collins v. Hartford Fire Ins. Co.,*
  Civil Action File No. 1:04-CV-3219-WBH, 2006 WL 8431856 (N.D. Ga.
  Aug. 3, 2006) .......................................................................................................18

*de Louis v. Metro. Atlanta Rapid Transit Auth.,*
  No. 1:04-CV-2816-CC, 2005 WL 8154830 (N.D. Ga. Aug. 4, 2005) ...................19

*Doe v. Colautti,*
  592 F.2d 704 (3d Cir. 1979)..................................................................................18

*Doe v. CVS Pharm., Inc.*,
  982 F.3d 1204 (9th Cir. 2020) *cert. dismissed* 142 S. Ct. 480 (2021) ..............................17, 18

*Donnellon v. Fruehauf Corp.*,
  794 F.2d 598 (11th Cir.1986) ................................................................................................13

*Edmo v. Corizon, Inc.*,
  935 F.3d 757 (9th Cir. 2018) ..................................................................................................8

*EEOC v. CNA Ins. Cos.*,
  96 F.3d 1039 (7th Cir. 1996) ................................................................................................18

*EEOC v. Staten Is. Sav. Bank*,
  207 F.3d 144 (2d Cir. 2000)..................................................................................................18

*Enwonwu v. Fulton-Dekalb Hosp. Auth.*,
  286 F. App'x 586 (11th Cir. 2008) ........................................................................................21

*Fisher v. Fed. Bureau of Prisons*,
  484 F. Supp. 3d 521 (N.D. Ohio 2020)...................................................................................8

*Fletcher v. Tufts Univ.*,
  367 F. Supp. 2d 99 (D. Mass. 2005) ......................................................................................19

*Ford v. Schering-Plough Corp.*,
  145 F.3d 601 (3d Cir. 1998)............................................................................................16, 17

*Frontiero v. Richardson*,
  411 U.S. 677 (1973)..............................................................................................................10

*Grizzle v. Macon Cnty., Georgia.*,
  Civil Action No. 5:08-CV-164 (CAR), 2009 WL 2611319 (M.D. Ga. Aug. 20,
  2009) .....................................................................................................................................22

*Henderson v. Bodine Aluminum, Inc.*,
  70 F.3d 958 (8th Cir. 1995) ..................................................................................................19

*Keene v. Prine*,
  477 F. App'x 575 (11th Cir. 2012) ........................................................................................13

*Krauel v. Iowa Methodist Med. Ctr.*,
  95 F.3d 674 (8th Cir. 1996), *abrogated on other grounds, Bragdon v. Abbott*,
  524 U.S. 624 (1998)..............................................................................................................18

*Lebron v. Sec. of Fla. Dep't of Children and Families*,
  772 F.3d 1352 (11th Cir. 2014) ..............................................................................................8

*Lewis v. City of Union City, Georgia,*
  934 F.3d 1169 (11th Cir. 2019) ....................................................................10

*McKnight v. GMC,*
  550 F.3d 519 (6th Cir. 2008) ........................................................................18

*Mileski v. Gulf Health Hosps., Inc.,*
  No. CA 14-0514-C, 2016 WL 1295026 (S.D. Ala. Mar. 31, 2016) .................21, 23

*Modderno v. King,*
  82 F.3d 1059 (D.C. Cir. 1996) ......................................................................18

*Newman v. Consol. Dispatch Agency,*
  No. 4:16CV69-MW/CAS, 2017 WL 6585839 (N.D. Fla. Nov. 6, 2017)..............10

*Newport News Shipbuilding & Dry Dock Co. v. EEOC,*
  462 U.S. 669 (1983).....................................................................................10

*Ojeda v. Louisville Ladder Inc.,*
  410 Fed. App'x 213 (11th Cir. 2010) ..............................................................2

*Robertson v. Riverstone Comms., LLC,*
  849 F. App'x 795 (11th Cir. 2021) ..................................................................5

*Rogers v. Dep't of Health & Envtl. Ctrl.,*
  174 F.3d 431 (4th Cir. 1999) ........................................................................18

*Short v. Mando Am. Corp.,*
  805 F. Supp. 2d 1246 (M.D. Ala. 2011) .......................................................11, 12

*Spirt v. Teachers Ins. & Annuity Ass'n,*
  475 F. Supp. 1298 (S.D.N.Y. 1979)...............................................................3, 4

*Stallworth v. Shuler,*
  777 F.2d 1431 (11th Cir. 1985) .....................................................................11

*Traynor v. Turnage,*
  485 U.S. 535 (1988).....................................................................................18

*United States v. Virginia,*
  518 U.S. 515 (1996).....................................................................................15, 16

*Whitley v. Dr. Pepper Snapple Grp., Inc.,*
  4:16-CV-00362, 2017 WL 1739917 (E.D. Tex. May 4, 2017) .........................18, 19

*Williams v. Ala. Dep't of Transp.,*
  509 F. Supp. 2d 1046 (M.D.Ala.2007) ...........................................................12

*Williams v. City of Montgomery, Alabama,*
  742 F.2d 586 (11th Cir. 1984) ...................................................................3

*Winnie v. Infectious Disease Assocs., P.A.,*
  750 F. App'x 954 (11th Cir. 2018) ...........................................................24

*Wright v. Southland Corp.,*
  187 F.3d 1287 (11th Cir. 1999) ................................................................5

*Young v. United Parcel Serv.,*
  575 U.S. 206 (2015) ..............................................................................9, 10

**Statutes**

42 U.S.C.A. § 12102(2)(A).....................................................................21, 22

42 U.S.C. § 2000e(k) ....................................................................................9

42 U.S.C. § 12102(1) ..................................................................................20

42 U.S.C. § 12102(3)(A)..............................................................................23

42 U.S.C. § 12102(4)(A)........................................................................20, 23

**Other Authorities**

29 C.F.R. § 1630.2(i)(1)(i) ..........................................................................22

29 C.F.R. § 1630.2(j)(1)(ii) .........................................................................23

29 C.F.R. § 1630.2(j)(1)(iii) ........................................................................20

29 C.F.R. § 1630.2(j)(1)(v) ..........................................................................22

Fed. R. Evid. 701 ..........................................................................................2

Fed. R. Evid. 803 ..........................................................................................8

## INTRODUCTION

Defendants' sprawling opposition to Sgt. Lange's summary judgment motion makes numerous arguments, but none of them prevents summary judgment.  Many are cut and pasted from Defendants' own summary judgment briefs, and Plaintiff endeavors not to repeat her responses to those here.  This reply addresses five points.  *First*, the Sheriff's Office has not presented any additional facts requiring the Court to revisit its earlier determination that it is not entitled to sovereign immunity.  *Second*, the County has failed to show that it is not liable under Title VII as an agent of the Sheriff's Office, and, in opposition to Plaintiff's summary judgment motion, does not contest its liability as a joint employer.  *Third*, Defendants have failed to rebut that the Exclusion is expressly discriminatory under Title VII, nor do they rebut the direct evidence of discrimination in the Exclusion's adoption and renewal presented in Sgt. Lange's opening brief. *Fourth,* Defendants have failed to establish that the Exclusion is closely tailored to an important government interest, as required by the Equal Protection Clause.  *Finally*, Defendants have failed to rebut Sgt. Lange's showing that she has a "disability" under the ADA, and have failed to show that no reasonable accommodation is possible.  Sgt. Lange is therefore entitled to summary judgment.

## ARGUMENT

### I.    The Sheriff's Office Is Not Entitled To Sovereign Immunity.

The Sheriff's Office has cited no admissible evidence and has not carried its burden to demonstrate that it is an arm of the State of Georgia.  Despite stating that "the Sheriff's Office now provides extrinsic record evidence supporting a factual attack," it merely repeats the sovereign immunity arguments from its motion to dismiss briefing in their entirety, which the Court has

already rejected.[1]  Further, the Sheriff's Office admits that the State of Georgia "does not exercise control over the terms or conditions of the Health Plan" and "does not fund the Plan."  Therefore, the Sheriff's Office does not point to any evidence that would alter the Court's finding that the Sheriff's Office was not acting as an arm of the state.  *See* Plaintiff's Mem. of Law in Support of Plaintiff's Mot. for Summary Judgment at 46, *Lange v. Houston Cnty., Georgia*, No. 5:19-CV-00392-MTT (M.D. Ga. Nov. 4, 2021), ECF No. 140-1 ("Pl's Opening Br.").

The only arguably "record evidence" that the Sheriff's Office cites is a deponent's statement that it can sue the County in court if its budget is not approved.  (Grant Decl., Ex. E Rape Dep. at 34:9-35:3.)  But the existence (or not) of a cause of action under Georgia law is a question of law for the Court to consider; it is not admissible evidence at trial, and certainly does not create a genuine issue for trial as to whether the Sheriff's Office is entitled to sovereign immunity.  *See Ojeda v. Louisville Ladder Inc.*, 410 F. App'x 213, 215 (11th Cir. 2010) (unpublished) (lay legal conclusions are inadmissible under Fed. R. Evid. 701 and may not defeat summary judgment).

## II.     The Undisputed Facts Show That The County Is An Agent of the Sheriff's Office.

It is undisputed that the Sheriff's Office has chosen to delegate the provision of healthcare benefits to Houston County, and that the County has chosen to provide those benefits.  Nevertheless, the County argues it is not the Sheriff's Office's "agent" for purposes of Title VII and the ADA.  *See* Defendants' Response in Opposition to Plaintiff's Motion for Summary

---

[1] *Compare* ECF No. 61-1 at 4-10 *and* ECF No. 179 at 47-50.  Specifically, the Sheriff's Office repeats its argument that "it is the Sheriff's role as employer that is the focus here, not merely the more limited issue of providing benefits." *See* ECF No. 179 at 48-49.  This ignores the Court's distinguishing the State's authority in "hiring and firing deputies" from its lack of authority over "provision of healthcare benefits to employees."  *See Lange*, 499 F. Supp. 3d at 1268. As to its argument that the County is mandated by the state of Georgia to fund the Sheriff's Office, this Court has already found that this factor "does not weigh for or against immunity" because while state law requires counties to fund sheriff's offices, the county cannot dictate how the Sheriff spends its funds. *See Lange*, 499 F. Supp. 3d at 1269.

Judgment, *Lange v. Houston Cnty, et al.*, No. 5:19-CV-00392-MTT (M.D. Ga. Dec. 22, 2021), ECF No. 179 ("Defs' Opp.") at 28.  But this argument has no legal support.  Courts regularly hold third parties liable as "agent[s]" of employers under Title VII and the ADA if they control the aspect of the employment that is challenged.  *See Williams v. City of Montgomery*, *Alabama,* 742 F.2d 586, 589 (11th Cir. 1984).  "[T]wo separate entities can both be an employer under Title VII" as "[t]he ADA and Title VII both define 'employer' to include an employer's agents."  *Lange v. Houston Cnty., Georgia*, 499 F. Supp. 3d 1258, 1273 (M.D. Ga. 2020) (citing 42 U.S.C. 2000e(b)). "Where an employer delegates control of some of its traditional rights over its employees to another entity, that third party is an employer by virtue of the agency relationship."  *Williams*, 742 F.2d at 589 (11th Cir. 1984).

In *Williams*, the Eleventh Circuit found that a personnel board was liable as an agent of the city of Montgomery for purposes of a Title VII claim brought by a city employee, because the board was acting on behalf of the city in making hiring decisions.  *Id*. at 588-89.  The same reasoning in *Williams* applies here.  The County attempts to distinguish *Williams* on the grounds that Alabama law expressly permitted delegation of hiring and other duties, which the *Williams* court noted are traditionally reserved for the employer, to a personnel board.  *See* Defs' Opp. at 29.  But that distinction is irrelevant given the undisputed fact that the Sheriff's Office (like the city of Montgomery in *Williams*) delegated a traditional employment function, the provision of benefits, to the County.  The County is thus liable as its "agent."  Why the employer delegates the functions, or whether doing so is consistent with state law, is legally irrelevant.

The County also seeks to distinguish *Spirt v. Teachers Ins. & Annuity Ass'n*, 475 F. Supp. 1298 (S.D.N.Y. 1979) by arguing that the Sheriff's Office controls "whether" and "how" to provide health insurance benefits.  *See* Defs' Opp. at 30.  In *Spirt*, an employer adopted a benefit

plan administered by a third-party administrator; the administrator wrote a plan term that discriminated on the basis of sex; and the court ruled that the administrator faced liability as the employer's agent under Title VII because it controlled the aspect of employment (the benefits plan) that gave rise to the discrimination. *Id*. at 1308. That is an exact parallel to this case. The County nevertheless observes that employee participation in the benefits plan in *Spirt* was mandatory. But *Spirt*'s agency analysis doesn't turn on that fact. *See Spirt* at 1308 (holding third-party administrators liable where they had "responsibility for and control over employee annuity plans"). Here, the County concedes that, as in *Spirt*, it has "responsibility for and control over" the Plan. *See* Defs' Opp. at 30 ("it is true that the County—through its Board—controls the terms and conditions of the Plan, including its exclusions"). Thus, the County's argument that it acts subject to its principal's ultimate authority—as do all agents—does not discharge it from liability for its actions setting the Plan's terms.

The County's agency argument also cites, without discussion, the magistrate's report and recommendation in *Clark v. St. Joseph's/Candler Health Sys., Inc.*, No. 4:05-CV-119, 2006 WL 2228929 (S.D. Ga. Aug. 3, 2006), but *Clark* does not consider agency liability. The *Clark* court conducted its analysis exclusively under the joint employer theory, which Defendants' brief does not address. *Id*. at *7 (holding two entities cannot be considered as joint employers because their operations lack any significant degree of interrelation). *Clark* does not inform whether the County is liable as an agent.

### III.   The Exclusion Violates Title VII.

There is no dispute that Sgt. Lange has been denied care on the basis of sex. Defendants' argument that the Exclusion isn't discriminatory because it is not a "blanket" exclusion is irrelevant, incorrect, and *post hoc*; and their argument that the record evinces an issue of material fact ignores the legal framework for deciding Sgt. Lange's Title VII claims presented in this

Court's motion to dismiss opinion (*Lange v. Houston Cnty., Georgia*, 499 F. Supp. 3d 1258 (M.D. Ga. 2020)) and the direct evidence Sgt. Lange presented under it.  The Exclusion is expressly discriminatory and disproportionately impacts transgender people, regardless of whether it is labeled a "blanket" exclusion or not.  Further, Defendants' attempt to reassert and reframe their cost defense does not advance their argument because the defense fails as a matter of law and because the undisputed evidence proves that removing the Exclusion would not significantly increase the Plan's costs, and that the defense is pretextual.  Therefore, Sgt. Lange is entitled to summary judgment.

<strong>A.   <u>Sgt. Lange Has Offered Direct Evidence of Discrimination.</u></strong>

The direct evidence standard Plaintiff advanced in her initial memorandum properly applies here.  *See* Pl's Opening Br. at 14; *accord Wright v. Southland Corp.*, 187 F.3d 1287, 1293 (11th Cir. 1999) (acknowledging the confusion over the standard but confirming "that 'direct evidence,' in the context of employment discrimination law, means evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic")  Defendants argue that this standard is not binding, relying primarily on a footnote in *Robertson v. Riverstone Comms., LLC*, 849 F. App'x 795, 801 n.4 (11th Cir. 2021) (per curiam) (unpublished).  Defs' Opp. at 10.  But "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants"; and they are "not persuasive" when their "facts are materially different" than the case at bar.  *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1347 n.7 (2007).

*Robertson* is particularly unpersuasive because it fails to acknowledge the Eleventh Circuit's application of the *Wright* standard in *Glenn v. Brumby*, a transgender employment case that is both binding precedent and factually on point.  *See* 663 F.3d 1312, 1320 (11th Cir. 2011) (explaining that *Wright* outlines "methods of proof" in both direct and circumstantial evidence

5

cases and holding that employer statements that a transgender employee wearing women's clothing is "unnatural" and "unsettling" were among the "ample direct evidence" of employment discrimination). *Glenn* remains good law, and is applicable in this transgender employment discrimination case. As in *Glenn*, statements by Defendants here are among the "ample direct evidence" that supports Sgt. Lange's claims. These include the Sheriff's comment that he does not believe in a "sex change, whether it's surgery or not surgery" (Grant Decl., Ex. B Sheriff Talton Dep. at 104:5-105:18); the Defendants' frequent misgendering of Sgt. Lange, including in their most recent brief (Defs' Opp. at 18) and by the Sheriff throughout his deposition (Grant Decl., Ex. B Sheriff Talton Dep. at 14:2-9; 15:17-24; 17:3); and Defendants' comparisons of Sgt. Lange's medical care to cosmetic procedures despite acknowledging its medical necessity (Grant Decl., Ex. H HC Dep. (B. Holland) at 80:3-11; Grant Decl., Ex. B Sheriff Talton Dep. at 54:24-55:5).

## B.   <u>The Exclusion Is Expressly Discriminatory.</u>

Even assuming *arguendo* that Defendants are correct that direct evidence is "that which, 'if believed, proves [the] existence of [a] fact in issue without inference or presumption" (Defs' Opp. at 10), the undisputed record still demonstrates that the Exclusion is discriminatory.

No inference or presumption is needed to prove that the Exclusion discriminates based on sex—direct evidence of discrimination is written into the policy itself, which explicitly bans "[s]ervices and supplies for a sex change and/or the reversal of a sex change" and "[d]rugs for sex change surgery." Grant Decl., Ex. A Carter Dep. at Ex. 1. This language expressly withdraws coverage from transgender employees for care that is covered for cisgender employees—even when the procedures sought are exactly the same. The Plan covers medically necessary care including "office visits and doctor services," "diagnostic laboratory" services, "prescription drugs," "surgical supplies," "inpatient hospital care," and "inpatient professional services" including "surgery" and "general anesthesia"; and then the Exclusion withdraws coverage for all

6

such care that is "for a sex change."  *Id.*[2]  By its very terms, the Exclusion denies Sgt. Lange coverage because she was assigned a male sex at birth, is transgender, and seeks to change her physical sex characteristics.  It thus discriminates based on sex.

Defendants argue that *Bostock* only applies when an employer discriminates against a transgender employee by firing them because of sex—not when an employer discriminates against a transgender employee by providing them lesser healthcare because of sex.  Defs' Opp. at 13.  But *Bostock* is not limited to firing or demotion; rather, it holds that "an employer who intentionally treats a person worse because of sex . . . discriminates against that person in violation of Title VII."  *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1740 (2020).  Here, Sgt. Lange would have been treated better if she were a cisgender woman, assigned a female sex at birth, and not seeking to change her physical sex characteristics.  *See Bostock* at 1743, 1748 (citing *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702 (1978)).  Defendants have "intentionally penalize[d] a person identified as male at birth for traits or actions that [they] tolerat[e] in an employee identified as female at birth" by denying her coverage for care that she would otherwise have been granted.  *See id.* at 1741 (2020).  No inference or presumption is required to show that the Exclusion does not pass *Manhart* and *Bostock*'s "simple test."

## C.    Defendants Have Not Shown a Dispute of Material Fact.

Defendants conclusorily argue that Sgt. Lange has failed to show an absence of a genuine issue of material fact, yet they do not point to any material factual disputes.  It is undisputed that

---

[2] Defendants claim that the Exclusion applies only to surgery, but this is contradicted by its plain text.  Sgt. Lange has also had some non-surgical gender-affirming care denied on the basis of the Exclusion.  *See* Grant Decl., Ex. C, Lange Dep., Apr. 2, 2021 ("Lange I Dep.") at 48:19-49:25; *see also* Plaintiff's Reply Statement of Facts, Ex. 1.  That these denials have been inconsistent may be explained by providers sometimes submitting insurance claims coded as something other than gender-affirming care, so that they don't trigger the Exclusion.  *See* Grant Decl., Ex. F, Clark Dep. at 100:6-18 (Q: So were you saying that if counseling were done for the purpose of treating gender dysphoria, then it would not be covered because of the exclusion? A: Yes. Q: And is counseling for other reasons covered under the health plan? A: Yes, depending on the diagnosis code.).  In addition, as discussed in Plaintiff's prior briefing and below, this factual dispute is immaterial.

the Exclusion denies coverage for medical care, including the exact same care that is covered for cisgender employees, when the care is "for a sex change." It is undisputed that Sgt. Lange is presently being denied coverage for a vaginoplasty, which would be covered if she were cisgender and needed the same surgery for a different condition.[3]

Rather, Defendants argue that the Exclusion is not a "blanket" one.[4] But even if that is true (which Plaintiff disputes), it does not change either of these undisputed facts, which establish a Title VII violation. Moreover, the distinction between a "blanket" and a "partial" exclusion is not legally relevant, and Defendants do not cite any case law holding that it is. Nor could they. Even when courts apply standards that are highly deferential to defendants, such as the Eighth Amendment's "deliberate indifference" standard, they have found that it is not. *See, e.g.*, *Edmo v. Corizon, Inc.,* 935 F.3d 757 (9th Cir. 2018) (denying medically necessary vaginoplasty to prisoner was sufficient for preliminary injunction under the deferential Eighth Amendment standard, even though the prison was supplying gender-affirming hormone care); *Fisher v. Fed. Bureau of Prisons*, 484 F. Supp. 3d 521, 543 (N.D. Ohio 2020) (blanket exclusion for gender-confirming surgery but not hormone replacement therapy states an Eighth Amendment claim at motion to dismiss stage).

Given that there is no real dispute over the controlling facts, Defendants primarily attempt to argue that the well-established civil rights case law discussed in Sgt. Lange's opening brief does

---

[3] Defendants try to create a factual dispute by citing an extra-record treatise about a condition they call "MRKH syndrome." Under Federal Rule of Evidence 803 "treatises are inadmissible as hearsay on summary judgment where no expert witness testimony supports the proposition asserted by way of the treatise." *Lebron v. Sec. of Fla. Dep't of Children and Families*, 772 F.3d 1352, 1370 (11th Cir. 2014). Defendants have cited no such testimony—and there is none, as no expert in this case has relied on or been deposed about that treatise, nor has testified about this condition. Also, their argument incorrectly refers to Sgt. Lange as male (Defs' Opp. at 18), further evidencing their discriminatory attitude toward transgender individuals and Sgt. Lange.

[4] This, as discussed in Plaintiff's opposition brief, is factually incorrect, as well as legally irrelevant. *See* Pl's Opp. Br. at 18. Defendants argue in a footnote that Sgt. Lange hasn't provided evidence in support of denials of routine care. She has. See Grant Decl., Ex. A Carter Dep. at Ex. 1, p. 72-73 (Lange – HC001833-34); Lange Dep., Apr. 2, 2021 ("Lange I Dep.") at 48:19-49:25. Defendants do not contest that evidence.

not apply here.  But the law is clear that where "[s]ex plays a necessary and undisguisable role in the decision," this is "exactly what Title VII forbids."  *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1737 (2020); *see also Glenn,* 663 F.3d at 1321 ("[Plaintiff's] testimony provides ample direct evidence to support the district court's conclusion that Brumby acted on the basis of [plaintiff's] gender non-conformity.  If this were a Title VII case, the analysis would end here.").  Both of these cases are controlling precedent.  And the weight of authority reviewed in Plaintiff's opening brief from courts around the country holding transgender health exclusions unlawful[5]— to which Defendants do not cite a single case to the contrary—is consistent with this precedent.

Defendants' entire extended discussion of sex discrimination cites only one case—*Young v. United Parcel Serv*., 575 U.S. 206 (2015)—not already addressed in prior briefing.  But *Young* does not advance Defendants' argument because it interprets a different cause of action than the one Sgt. Lange is proceeding under, and it analyzes the claim using circumstantial evidence under the *McDonnell Douglas* burden-shifting framework (not a direct evidence claim, as Sgt. Lange has done here).  The issue in *Young* was how an employee who was denied a request for a reasonable accommodation for her pregnancy can state a claim under 42 U.S.C. § 2000e(k), which provides that "women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes…as other persons not so affected but similar in their ability or inability to work . . . ."  The *Young* plaintiff unsuccessfully attempted to show that if at least one other person was granted an accommodation for a comparable disability, then the denial of her request was necessarily discriminatory.  The Court ruled this unavailing because an accommodation request is necessarily tailored to individual circumstances.  *See Young* at 1350

---

[5] To those may now be added the decision of the Polk County, Iowa district court striking down the transgender health exclusion in Iowa's Medicaid plan (*Vasquez v. Iowa Dep't of Human Servs.,* No. CVCV061729 at 38, 40 (D. Ct. Polk Cnty. ordered Nov. 19, 2021)), attached hereto.

(discussing reasons why employer might deny an employee's request for reasons unrelated to pregnancy).  Critically, Sgt. Lange cites to an expressly discriminatory policy and to the other direct evidence cited in her brief, so *Young's* reasoning in denying summary judgment on the pregnancy discrimination claim does not apply here.

*Young* does support Sgt. Lange's claim, however, for two reasons not mentioned by Defendants.  First, it reaffirms that Title VII claims must be resolved "consistent with Congress' intent to overrule *Gilbert's* reasoning," *id.* at 1356; *see also id.* at 1354 ("Simply including pregnancy among Title VII's protected traits . . . would not overturn *Gilbert* in full."). Furthermore, *Young* makes clear that cost is no defense under Title VII: an employer may not rely on the "claim that it is more expensive or less convenient to add pregnant women to the category of those . . . whom the employer accommodates.  After all, the employer in *Gilbert* could in all likelihood have made just such a claim."  *Id.* at 1354.  And economizing by paying workers less because of sex is just black-letter discrimination.  *See Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669 (1983) (employer that offered health benefits coverage related to pregnancies of employees but not their spouses violated Title VII); *see also Frontiero v. Richardson,* 411 U.S. 677 (1973) (employer that required females to prove the dependency of their spouses as a condition for receiving benefits but did not require males to do the same violated the Equal Protection Clause); *Califano v. Goldfarb,* 430 U.S. 199 (1977) (same).

Defendants also misunderstand Sgt. Lange's case when they say her "comparator" is "cisgender females generally."  First, "comparators are unnecessary when direct evidence of discriminatory intent exists."  *Newman v. Consol. Dispatch Agency*, No. 4:16CV69-MW/CAS, 2017 WL 6585839, at *2 (N.D. Fla. Nov. 6, 2017) (citing *Damon v. Fleming Supermarkets of Florida, Inc*., 196 F.3d 1354, 1358 (11th Cir. 1999)).  And even under a circumstantial framework,

a comparator is unnecessary given the "systematically better treatment of similarly situated employees" generally.  *See Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (explaining a "convincing mosaic" of circumstantial evidence can show discriminatory intent through bits and pieces of information, including "suspicious timing, ambiguous statements" and a "pretextual" justification by the employer).  Second, even if a comparator were needed, the proper one would be people seeking the same care as Sgt. Lange, but for reasons other than "a sex change," and so not subject to the Exclusion.  Under that comparison, the Exclusion is discriminatory because cisgender individuals can receive coverage for a vaginoplasty, while Sgt. Lange is denied the same coverage because of sex.

Defendants' remaining arguments may be dealt with briefly.  Their cost argument is restated nearly verbatim from prior briefs, and Plaintiff does not further address those parts which are repeated.  Defendants cite two additional cases, *Chapman v. AI Transp.*, 229 F.3d 1012 (11th Cir. 2000), and *Short v. Mando Am. Corp.*, 805 F. Supp. 2d 1246 (M.D. Ala. 2011), to argue that Plaintiff is not entitled to dispute the credibility of Defendants' cost defense.  Both *Chapman* and *Short* addressed a defendant's burden under the *McDonnell Douglas* analysis, not a direct evidence case.  In a direct evidence case, "Defendant cannot rebut [Plaintiff's] showing of discrimination simply by articulating or producing evidence of legitimate, non-discriminatory reasons." *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985).  And in any event, as discussed in Plaintiff's opposition brief, under *McDonnell Douglas* a plaintiff is entitled to show that a defendant's proffered reason lacks credibility, which she can do by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation. *Brooks v. Cnty. Com'n of Jefferson Cnty., Alabama*, 446 F.3d 1160, 1163 (11th Cir. 2006).  Accordingly, Defendants' reliance on *Chapman* and *Short* would be unavailing even under burden

shifting. *Chapman* held that an employer's subjective reason for an employment decision may meet its initial burden in a *McDonnell Douglas* analysis, so long as the subjective reason is supported by "a clear and reasonably specific factual basis." *Chapman*, 229 F.3d 1012 at 1033. Similarly, *Short* affirmed, consistent with Eleventh Circuit precedent such as *Brooks*, that a plaintiff may rely on evidence that a defendant's proffered business reasons for its actions "are not the real reasons," *Short*, 805 F. Supp. at 1274.

Here, Defendants have not articulated a clear and reasonably specific factual basis for their assertions. When they were first sued, they had no information about the cost of removing the Exclusion. ECF No. 179-3 at ¶ 188. They later took the position that removing the Exclusion or making an exception for Sgt. Lange would be, by itself, too expensive. *Id.* at ¶¶ 169, 189–94, 198, 200–08. They then switched to arguing that covering her surgery would require them to remove all the Plan's exclusions, quintupling the Plan's expenses, which they call their "snowball" defense. *Id.* ¶¶ 200, 213–15; ECF No. 179 at 8. Most recently, they have offered the argument that, because they *could* afford to cover an eightfold, per-employee increase in spending on the health Plan since 1994, they *cannot* afford to cover Sgt. Lange's surgery. ECF No. 179 at 7-8.

Further, however it is framed, the defense is belied by the undisputed facts. Removing the Exclusion would amount to about 0.1% of the Plan's cost as a whole. ECF No. 179-3 at ¶¶ 192, 222, 224, 227. The care subject to the Exclusion, including Sgt. Lange's vaginoplasty, is less costly than care the Plan covers routinely, *id.* ¶¶ 192, 244-46. Defendants have already granted exceptions to employees from non-sex-based exclusions without any of the cost consequences or "snowballing" of exceptions they purportedly fear.

Simply put, cost does not satisfy Defendants' burden under *Chapman*, and cost concerns "are not the real reasons" for the Exclusion. *See also Williams v. Ala. Dep't of Transp.*, 509 F.

Supp. 2d 1046, 1056 (M.D.Ala.2007) ("Plaintiff may establish pretext by showing that an employer's 'nondiscriminatory reasons were after-the-fact justifications, provided subsequent to the beginning of legal action.'").  *See also* Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 25-28, *Lange v. Houston Cnty., Georgia*, No. 5:19-CV-00392-MTT (M.D. Ga. Dec. 22, 2021), ECF No. 178 ("Pl's Opp. Br.") citing *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286 (11th Cir. 2006); *Keene v. Prine*, 477 F. App'x 575, 583 (11th Cir. 2012), and *Donnellon v. Fruehauf Corp.,* 794 F.2d 598 (11th Cir.1986).

In addition, Defendants misstate the record regarding the bariatric surgery exception they granted, which further undermines their cost defense.  *See*  Defs' Opp. at 25.  The County granted the exception as to *all* employees who had received the surgery, not just the one person who requested it.  *See* Carter HC 30(b)(6) Dep. (ECF No. 160) at 184:3-186:10.  It is particularly unreasonable for the County to argue now that granting relief from an exclusion would "snowball" when this did not in fact happen when the County granted this exception.

Defendants also suggest that the Exclusion is not discriminatory because it predates Sgt. Lange's employment.  This ignores Defendants' re-adoption of it every year, including through the irregular processes described in Plaintiff's opening brief once it came to their attention she was seeking surgery.  Pl's Opening Br. at 22.  But the Exclusion's current application is discriminatory no matter when it was adopted.  *See Bazemore v. Friday*, 478 U.S. 385, 395–96 (1986) ("Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII.").  *Id. at n.6* (The "critical question . . . is whether any present violation exists.'") (citing *Hazelwood*).

Finally, the Sheriff argues that "although Plaintiff refers to Defendants in the plural through her Motion, she has produced no evidence that the Sheriff was involved in the initial adoption of the Exclusion or in any subsequent decision regarding the Exclusion or any other aspect of the plan." Defs' Opp. at 8. However, the Sheriff's Office overlooks its own admissions that "it is the Sheriff who controls both whether to provide health insurance benefits to his employees and how to provide such benefits to his employees," Defs' Opp. at 30; and that the Sheriff has authority to adopt a different plan if he so chooses, but has not done so because he is "satisfied" with the current Health Plan, and believes it "should not cover" gender-confirming care. *See* Grant Decl., Ex. B Sheriff Talton Dep. at 56:20, 81:4-13; Grant Decl., Ex. E SO Dep. (Rape) at 44:3-20. By affirmatively choosing to participate in the Plan each year he is liable for its discriminatory terms.

Because Sgt. Lange has shown there is no genuine dispute of material fact as to the direct evidence of discrimination, she is entitled to judgment as a matter of law and her motion for summary judgment should be granted.

## IV.     The Exclusion Violates the Equal Protection Clause.

Defendants state that Sgt. Lange "asserts a facial challenge only" under the Equal Protection Clause. Defs' Opp. at 32. But this appears to conflate the concept of a "facial challenge," *see id.*, with the argument that the Exclusion is facially discriminatory, which the Court has already rejected under the Equal Protection Clause. *See Lange v. Houston Cnty., Georgia*, 499 F. Supp. 3d 1258, 1275 (M.D. Ga. 2020). Rather, Sgt. Lange seeks summary judgment under the first of the frameworks Defendants quote—that "the Exclusion is a facially neutral classification that has a disproportionate impact on transgender persons and is motivated by discriminatory purpose." *Id.* at 1275. Additionally, Defendants incorrectly claim that Plaintiff seeks strict scrutiny for her sex claim and that she is making a belated due process claim. Plaintiff's only constitutional claim is an Equal Protection claim. Under the theory that the Exclusion

14

discriminates on the basis of sex, she seeks to have intermediate scrutiny applied.  She also pursues a theory of transgender status as an at-least quasi-suspect class (which Defendants' opposition brief does not address), to which heightened scrutiny applies.

The first part of the Equal Protection analysis is the same as the Title VII analysis.  If there is sufficient direct evidence on cross-motions for summary judgment, the ultimate issue of discrimination is proven.  *Glenn*, 663 F.3d at 1321.  Under Title VII, the analysis ends there.  *Id.* Under the Equal Protection Clause, however, there is an additional step: the Court must, under heightened scrutiny, consider whether Defendants succeed in showing an "exceedingly persuasive justification," for their actions—or in other words, that their conduct was "substantially related to a sufficiently important governmental interest" for the discriminatory conduct.  *Id.*  This burden "is demanding" and it rests entirely on the government.  *Id.* at 1316, 1321.

As the Title VII analysis has been presented above, this section addresses the second step. Plaintiff has already shown above and in prior briefing how Defendants' cost defense—the only justification they advance in defense of the Exclusion—fails to meet their demanding burden to show that the Exclusion is substantially related to an important government interest.  Defendants' brief provides one additional argument supporting this defense, which also fails.  Defendants mention statements by unnamed employees who, after hearing about Sgt. Lange's lawsuit to enforce her civil rights, "have stated that, if Plaintiff gets the relief she is seeking," the employees "will take action (legal or otherwise)" to have an exclusion they oppose (for cosmetic surgery) removed.  *See* Defs' Opp. at 8; 27-28.  These alleged threats of litigation are expressly conditioned on "[i]f Plaintiff's procedures" or "surgery is covered."  *See* Grant Decl., Ex. O Houston County's Third Interrogatory Response at No. 2.  By definition, since these statements occurred after this

suit commenced, reliance on them is a *post hoc* rationalization that cannot survive intermediate scrutiny.  *See United States v. Virginia,* 518 U.S. 515, 533 (1996).

But further, as the district court in *Glenn* explained: "avoiding the anticipated negative reactions of others cannot serve as a sufficient basis for discrimination and does not constitute an important government interest."  724 F. Supp. 2d 1284, 1305 (N.D. Ga. 2010), *aff'd,* 663 F.3d 1312 (11th Cir. 2011) (citing *Palmore v. Sidoti*, 466 U.S. 429, 433, 104 S. Ct. 1879, 80 L.Ed.2d 421 (1984) ("The Constitution cannot control such prejudices but neither can it tolerate them.  Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect.  Public officials sworn to uphold the Constitution may not avoid a constitutional duty by bowing to the hypothetical effects of private racial prejudice that they assume to be both widely and deeply held.") (internal quotations omitted)).  Defendants cannot justify the Exclusion as necessary to appease outraged employees, as "the electorate as a whole, whether by referendum or otherwise, could not order city action violative of the Equal Protection Clause . . . and the [County] may not avoid the strictures of that Clause by deferring to the wishes or objections of some fraction of the body politic."  *See id.* (quoting *Cleburne* 473 U.S. at 448).  And the Eleventh Circuit in *Glenn* specifically rejected the possibility of litigation as unduly hypothetical under intermediate scrutiny.  663 F.3d at 1321.

Because Defendants have not shown that the Exclusion is substantially related to an important government interest, based on record evidence, they have failed to carry their burden, and Sgt. Lane is entitled to summary judgment on her Equal Protection claim.

## V.    The Exclusion Violates Title I of the ADA.

In opposition, Defendants argue, relying on *Ford v. Schering-Plough Corp*., 145 F.3d 601 (3d Cir. 1998), that "having an exclusion in a Health Plan does not violate the ADA."  Defs' Opp. at 38.  But Sgt. Lange does not argue that the existence of a health plan exclusion is a per se ADA

violation.   Rather, she argues that the Exclusion here violates the ADA because it singles out individuals with a particular disability—gender dysphoria—for different and lesser benefits. While the ADA may permit health plans to exclude coverage for certain treatments, the ADA does not permit health plans to cover  treatment for people with certain disabilities, while excluding coverage of the same treatment for a different disability.   For example, a health plan may completely exclude chemotherapy, but it may not cover chemotherapy for people with certain disabilities (*e.g.*, lung cancer) and exclude coverage of chemotherapy for others because they have a different disability (*e.g.*, breast cancer).

This distinction is precisely why *Ford* dooms Defendants' argument and supports Sgt. Lange's.  *Ford* describes how the Exclusion here is unlawful almost to a T: "A limitation may be placed on reimbursements for a procedure or the types of drugs or procedures covered[,] e.g., a limit on the number of x-rays or non-coverage of experimental drugs or procedures; but, that limitation must apply to persons with or without disabilities." *Ford*, 145 F.3d at 610 (quoting S.Rep. No. 101–116, at 29 (1989)).[6]  Here, the Health Plan excludes coverage of vaginoplasties, routine blood tests, and annual endocrinologist visits for people with gender dysphoria but not for people with cancer or other disabilities.  This is an ADA violation, as *Ford* held.  *See Ford*, 145 F.3d at 608 (stating that ADA would prohibit "a specific disabled employee from facing differential treatment due to her disability").

There can be no doubt that the Exclusion does not apply equally to all Plan members with and without disabilities—it applies only to those with gender dysphoria.  Defendants' cited cases are exactly the opposite; one rejects the precise argument Defendants make.  *Doe v. CVS Pharm.,*

---

[6] This precise language was also adopted by the EEOC in its 2016 "interpretative guidance on Title I of the Americans with Disabilities Act."  29 C.F.R. § Pt. 1630, App.

*Inc.* considered an employee health plan that covered prescription drugs generally, but also contained a limitation requiring people with HIV/AIDS (among others) to fill prescriptions at mail-order pharmacies and not at community pharmacies where they could consult with knowledgeable pharmacists.  982 F.3d 1204, 1207 (9th Cir. 2020) *cert. dismissed* 142 S. Ct. 480 (2021).  Even though the restriction was facially neutral, the court relied on *Alexander v. Choate*, 469 U.S. 287 (1985) and ruled that the limitation was *prima facie* disability discrimination because it "denied meaningful access to [plaintiffs'] prescription drug benefit under their employer-sponsored health plans because [it] prevents them from receiving effective treatment for HIV/AIDS."  982 F.3d at 1211.  And none of the rest of Defendants' cases uphold a health plan's coverage of treatments for people with certain disabilities while excluding those same treatments for people with other disabilities. *See, e.g.*, *Alexander*, 469 U.S. at 302 (upholding a reduction in coverage of the number of inpatient days for all health plan members); *Modderno v. King*, 82 F.3d 1059, 1064-65 (D.C. Cir. 1996) (upholding blanket limitation on mental healthcare treatments); *Doe v. Colautti*, 592 F.2d 704, 708 (3d Cir. 1979) (same); *EEOC v. CNA Ins. Cos.*, 96 F.3d 1039, 1044 (7th Cir. 1996) (same); *EEOC v. Staten Is. Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000) (same); *Rogers v. Dep't of Health & Envtl. Ctrl.*, 174 F.3d 431, 433 (4th Cir. 1999) (same); *Collins v. Hartford Fire Ins. Co.*, Civil Action File No. 1:04-CV-3219-WBH, 2006 WL 8431856, at *2 (N.D. Ga. Aug. 3, 2006) (same); *Krauel v. Iowa Methodist Med. Ctr.*, 95 F.3d 674, 680-81 (8th Cir. 1996) (upholding blanket exclusion of coverage for infertility treatments), *abrogated on other grounds, Bragdon v. Abbott*, 524 U.S. 624 (1998); *cf. Traynor v. Turnage*, 485 U.S. 535, 549 (1988) (upholding a Veterans' Administration limitation on education benefits for  all "willfully caused" physical and mental disabilities); *McKnight v. GMC*, 550 F.3d 519, 529 (6th Cir. 2008) (upholding blanket

reduction of supplemental retirement benefits for all beneficiaries who became eligible for social security disability benefits).

Defendants also attempt to distinguish *Whitley*, but Sgt. Lange does not rely on *Whitley* for the purpose of establishing that Defendants' re-adoption of the Exclusion in 2018 following Sgt. Lange's inquiries constitutes an adverse action. Rather, Sgt. Lange relies on *Whitley* for the proposition that singling out a particular disability for lesser benefits violates the ADA. *See Whitley v. Dr. Pepper Snapple Grp., Inc*., 4:16-CV-00362, 2017 WL 1739917, at *3–4 (E.D. Tex. May 4, 2017) ("A term or provision in a health insurance plan may violate the ADA if it singles out a particular disability."). *See also Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 960 (8th Cir. 1995) (granting preliminary injunction to provide coverage for a certain treatment that was being denied for breast cancer but allowed for other cancers); *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 14 (1st Cir. 1994) (permitting Title I ADA challenge to lifetime cap on health benefits for individuals with AIDS); *Fletcher v. Tufts Univ.*, 367 F. Supp. 2d 99, 104, 111, 114 (D. Mass. 2005) (holding that plaintiff stated claim that employer violated Title I of the ADA by adopting and maintaining a health plan that provided inferior benefits to people with mental health conditions); *de Louis v. Metro. Atlanta Rapid Transit Auth.*, No. 1:04-CV-2816-CC, 2005 WL 8154830, at *10 (N.D. Ga. Aug. 4, 2005) (holding that a public employee stated a claim under Title II for "alleged[] discriminati[on] against him in the provision of disability benefits" on the basis of his mental health condition); *Boots v. Nw. Mut. Life Ins. Co*., 77 F. Supp. 2d 211, 219 (D.N.H. 1999) ("[T]he ADA is violated by a policy that disadvantages schizophrenics based on their disability.").

A.     **Sgt. Lange Has A Disability Under The ADA.**

As an initial matter, Defendants repeat their arguments that "gender dysphoria" is synonymous with "gender identity disorders" and that Sgt. Lange's gender dysphoria is not a

"disability" under the Act because it does not result from a physical impairment.  As discussed in

prior summary judgment briefing, *see* Pl's Opening Br.; Pl's Opp. Br., Defendants' first argument

fails under the ADA's plain language and because it is not based on any evidence in the record;

and the second fails due to the uncontested evidence that gender dysphoria results from a physical

impairment.

Citing Sgt. Lange's medical records, Defendants additionally argue that even if the ADA

does not exclude gender dysphoria, Sgt. Lange has failed to show that her gender dysphoria

substantial limits her major life activities.  They are wrong.  As the record demonstrates, Sgt.

Lange's gender dysphoria substantially limits one or more of her major life activities under both

the "actual" disability and "record of" a disability prongs of the ADA's definition of "disability."

*See* 42 U.S.C. § 12102(1).  The record also demonstrates that Sgt. Lange is "regarded as having

such an impairment," which does not require a showing of substantial limitation.  *Id.*

**a.**     **Sgt. Lange's Gender Dysphoria "Substantially Limits" Her Major Life Activities.**

Defendants argue that Sgt. Lange's gender dysphoria does not substantially limit her major

life activities because "her providers have indicated she is functioning well."  Defs' Opp. at 44.

Not only does this argument smack of stereotypes about disabled people by assuming that a

disability necessarily equates with low functioning, but it is also incorrect as a matter of law.

Nowhere does the ADA provide that an individual "functioning well" does not have a "disability"

under the ADA.  Indeed, such a test would require that courts engage in the kind of extensive

analysis specifically rejected by the statute.  *See* 29 C.F.R. § 1630.2(j)(1)(iii) ("The primary object

of attention in cases brought under the ADA should be whether covered entities have complied

with their obligations and whether discrimination has occurred, not whether an individual's

impairment substantially limits a major life activity.  Accordingly, the threshold issue of whether

an impairment 'substantially limits' a major life activity should not demand extensive analysis."). *See also* 42 U.S.C. 12102(4)(A) ("The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.").

Further, all of the statements Defendants point to as evidence are irrelevant to the determination of whether Sgt. Lange's gender dysphoria substantially limits her major life activities. To begin with, under the ADA courts must look at an impairment in its active and unmitigated state. *See* 42 U.S.C. 12102(4)(D), (E). *See also Mileski v. Gulf Health Hosps., Inc.*, No. CA 14-0514-C, 2016 WL 1295026, at *14 (S.D. Ala. Mar. 31, 2016) (explaining that the question was "whether [plaintiff's] depression and/or PTSD substantially limited a major life activity *when active*") (emphasis added).[7] When Sgt. Lange's gender dysphoria is considered in its active and unmitigated state—that is, without any treatment—the record shows it substantially limits her major life activities. As Sgt. Lange's experts have stated, untreated gender dysphoria can cause depression, self-harm, and suicidality, which substantially limit major life activities. (SOF ¶ 6.)[8] Consistent with this, the record demonstrates that before Sgt. Lange sought treatment for her gender dysphoria, she "experienced stress, anxiety, depression, and distress, making it difficult to think, concentrate, and interact with others." *See* Declaration of Sgt. Lange in Support of Plaintiff's Motion for Summary Judgment at ¶ 7, *Lange v. Houston Cnty., Georgia*, No. 5:19-CV-00392-MTT (M.D. Ga. Nov. 3, 2021), ECF No. 140-4. *See also* 42 U.S.C.A. § 12102(2)(A)

---

[7] Defendants' citation to *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 603 (11th Cir. 2008) (per curiam) (unpublished) is thus unavailing because it is no longer good law in light of the 2008 amendments to the ADA, which add the provision that courts must analyze a disability in its unmitigated state. *See* ADA AMENDMENTS ACT OF 2008, PL 110–325, September 25, 2008, 122 Stat 3553. Moreover, *Enwonwu* is distinguishable. In that case, the plaintiffs alleged that they were substantially limited in their ability work, but Sgt. Lange does not base her claim on that particular limitation.

[8] Citations to "SOF" refer to the Plaintiff's Local Rule 56 Statement of Facts, filed in support of Plaintiff's Motion for Summary Judgment, ECF 140-2.

("major life activities" includes caring for oneself, thinking, concentrating, and communicating). Indeed, her feelings of hopelessness and depression had reached an all-time high before seeking treatment. *Id.* at ¶ 8 ("In 2014, I was hit by a vehicle being driven by an inattentive driver while riding my bicycle. People told me I was lucky to be alive, but I found myself wishing the accident had killed me."); *id.* at ¶ 9 ("Realizing I did not want to go back to being the person who wished to be dead, I started seeing a therapist. She diagnosed me with gender dysphoria, and I began sustained treatment."). Accordingly, Defendants have failed to show that, based on post-treatment statements, gender dysphoria does not "substantially limit one or more of her major life activities."

Even if the Court considered the post-treatment statements relevant, they do not support Defendants' argument. While Sgt. Lange's treatment has certainly had a positive impact on her life, the record demonstrates that Sgt. Lange's gender dysphoria continues to "cause her distress, anxiety, sleeplessness, feelings of depression, and other symptoms," which is exactly why Sgt. Lange seeks the next step in her treatment, a vaginoplasty. (SOF ¶ 268.) These ongoing symptoms substantially limit her major life activities because they continue to cause her "difficulties thinking, concentrating, and interacting[9] with others (like her spouse, child, and coworkers)." (SOF ¶ 268.) *See also* 42 U.S.C.A. § 12102(2)(A) ("major life activities" includes caring for oneself, thinking, concentrating, and communicating). Therefore, even when looking at Sgt. Lange's gender dysphoria after she started treatment (*i.e.*, in its mitigated state), there can be no doubt that it substantially limits one or more of her major life activities.[10]

---

[9] In a footnote, Defendants argue that "interacting with others" may not qualify as a "major life activity," citing *Grizzle v. Macon Cnty., Georgia.*, Civil Action No. 5:08-CV-164 (CAR), 2009 WL 2611319, at *7 (M.D. Ga. Aug. 20, 2009). However, *Grizzle* was decided *before* the governing regulations expanded "major life activities" to explicitly include "interacting with others." *See* 29 C.F.R. 1630.2(i)(1)(i). *See also Regulations To Implement the Equal Employment Provisions of the Americans With Disabilities Act, as Amended* 76 FR 16978-01 ("The final regulations retain "interacting with others" as an example of a major life activity, consistent with the Commission's long-standing position in existing enforcement guidance.").

[10] The cited statements also fail to contradict Sgt. Lange's substantial limitations. None of the quoted material even references, let alone contradicts, her testimony that "stress, anxiety, depression, and distress" substantially limit her

The ADA simply does not impose the high bar to demonstrating a disability that Defendants seek.  In fact, in 2008, the ADA was specifically amended because courts had "created an inappropriately high level of limitation necessary to obtain coverage under the ADA."  Pub. L. No. 110–325, 122 Stat. 3553, § 2(a)(7) & (b)(5).  Accordingly, an individual's impairment "need not prevent or severely or significantly limit a major life activity to be considered 'substantially limiting.'"  29 C.F.R. § 1630.2(j)(1)(ii).  Moreover, "the term 'substantially limits' should be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA."  42 U.S.C. § 12102(4)(A).

For the reasons set forth above, Defendants have not created an issue of material fact that Sgt. Lange has an "actual" disability and a "record of" a disability under the ADA.  *See Mileski v. Gulf Health Hosps., Inc.*, No. 14-0514-C, 2016 WL 1295026, No. CA 14-0514-C, at *15 (S.D. Ala. Mar. 31, 2016) (finding that plaintiff had an actual disability and/or a record of a disability based on plaintiff's bouts of depression, which she had experienced for many years, that limited her ability to interact and communicate with others, as well as care for herself).

**b.**      **Sgt. Lange Is "Regarded As" Being Disabled.**

Sgt. Lange has also demonstrated that she falls within the "regarded-as prong" under the ADA's definition of disability, which does not require a showing of substantially limiting a major life activity.  *See* 42 U.S.C. § 12102(3)(A).  It is undisputed that both the County and the Sheriff's Office are on notice that Sgt. Lange has gender dysphoria and, because of that disability (and her employer's knowledge of it), she has been denied healthcare coverage under the Plan for medical

---

ability to perform the major life activities of "think[ing], concentrat[ing], and interact[ing] with others."  Declaration of Sgt. Lange in Support of Plaintiff's Motion for Summary Judgment at ¶ 7, *Lange v. Houston County*, No. 5:19-CV-00392-MTT (M.D. Ga. Nov. 3, 2021), ECF No 140-4.  Defendants also observe that Sgt. Lange's medical records do not explicitly state that her gender dysphoria substantially limits her major life activities, but this argument is likewise unavailing.  Under the ADA, the "determination of whether an impairment substantially limits a major life activity as compared to most people will *not* usually require scientific, medical, or statistical evidence."  29 C.F.R. § 1630.2(j)(1)(v) (emphasis added).

23

services that are not excluded for Plan members who do not have the same condition.  (SOF ¶¶ 77, 129.)  *See also* 42 U.S.C. § 12102(3)(A) (an individual meets the "regarded as" prong if "she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment").  Defendants' only argument on this point—made in a single sentence— is that "the mere existence of the Exclusion does not violate the ADA."  Defs' Opp. at 45.  But this argument fails for the reasons discussed above.  Accordingly, Sgt. Lange meets the ADA's definition of "disability."

## B.       Defendants Denied Sgt. Lange's Request For A Reasonable Accommodation.

Defendants argue that Sgt. Lange's proposed accommodation—removing the Exclusion or granting her an exception to it—is not reasonable and would create an undue hardship, claiming that it would somehow negatively impact other employees.  Defs' Opp. at 45.  But nothing in the record supports Defendants' assertion.  As already discussed, their cost defense is belied by common sense and by the undisputed record.  Defendants cite three cases in support of their argument that Sgt. Lange's proposed accommodation would negatively impact other employees, but none of those cases stand for the proposition that an immaterial, 0.1% increase in expenses is an undue hardship.  *Cf. Winnie v. Infectious Disease Assocs., P.A.*, 750 F. App'x 954, 962 (11th Cir. 2018) (unpublished) ("'Undue hardship' means an action requiring *significant* difficulty or expense") (quoting 42 U.S.C. § 12111(10)(A) (emphasis added).  (SOF ¶ 221.)  This argument is further undermined by the fact that Defendants have already granted employees an exception to an different exclusion,  SOF ¶ 216, yet none of the harms to other employees that Defendants allege they fear, *see* Defs' Opp. 46, took place then.  (SOF ¶¶ 216, 242.)

## CONCLUSION

For the reasons stated in Plaintiff's opening brief and herein, Plaintiff respectfully requests the Court enter summary judgment on all her claims.

Respectfully submitted this 26th day of January, 2022.


<u>/s/ Kenneth E. Barton III</u>

Kenneth E. Barton III
Ga. State Bar No. 301171
M. Devlin Cooper
Ga. State Bar No. 142447
COOPER, BARTON & COOPER
170 College Street
Macon, GA 31201
(478) 841-9007 tel.
(478) 841-9002 fax
keb@cooperbarton.com
mdc@cooperbarton.com

David Brown*
Gabriel Arkles*
TRANSGENDER LEGAL DEFENSE EDUCATION
FUND, INC.
520 8th Ave. Ste. 2204
New York, NY 10018
(646) 862-9396 tel.
(646) 993-1686 fax
dbrown@transgenderlegal.org
garkles@transgenderlegal.org



Wesley Powell*
Jill K. Grant*
Catherine E. Fata*
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 tel.
(212) 728-8111 fax
wpowell@willkie.com
jgrant@willkie.com
cfata@willkie.com

Kevin M. Barry*
QUINNIPIAC UNIVERSITY SCHOOL OF LAW
LEGAL CLINIC
275 Mount Carmel Ave.
Hamden, CT 06518
(203) 582-3238 tel.
(203) 582-3237 fax
legalclinic@quinnipiac.edu

*Attorneys for Plaintiff*

\* Admitted pro hac vice.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing **Plaintiff's Memorandum of Law in Further Support of Her Motion for Summary Judgment** to the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to the following counsel of record, who are CM/ECF participants:

Sharon P. Morgan, Esq.
Patrick L. Lail
Elarbee, Thompson, Sapp & Wilson, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
morgan@elarbeethompson.com
lail@elarbeethompson.com
*Attorneys for Defendants*

This 26th day of January, 2022.

/s/ Kenneth E. Barton III

Kenneth E. Barton III
Ga. State Bar No. 301171
M. Devlin Cooper
Ga. State Bar No. 142447
COOPER, BARTON & COOPER
170 College Street
Macon, GA 31201
(478) 841-9007 tel.
(478) 841-9002 fax
keb@cooperbarton.com
mdc@cooperbarton.com

**IN THE UNITED STATE DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| ANNA LANGE, | Civil Action No. |
| Plaintiff, | 5:19-CV-00392-MTT |
| vs. | **ORAL ARGUMENT REQUESTED** |
| HOUSTON COUNTY, GEORGIA; and Houston County Sheriff CULLEN TALTON, in his official capacity, | |
| Defendants. | |

**PLAINTIFF'S REPLY STATEMENT OF FACTS**

COMES NOW, Plaintiff Anna Lange ("Plaintiff"), by and through her undersigned counsel, and hereby files this Reply Statement of Facts in response to paragraph 246 of Defendants' Response to Plaintiff's Statement of Undisputed Material Facts (ECF No. 179-3) as follows:

246.    Likewise, most of the Health Plan's expenditure covers care that is subject to much higher rates of utilization and expenditure than those that would be expected regarding gender-confirming care. Grant Decl., Ex. O Def. Houston County's Resp. to Third Set of Interrogatories at No. 1; Grant Decl., Ex. M HC Dep. (Carter II) at Ex. 35; Grant Decl., Exhs. JJ, KK. For example, in 2019, the Health Plan spent $1.58 million on 538 members with disorders of the musculoskeletal system, comprising over a fifth of its total spending; and over $700,000 each on the claims of several hundred members with disorders of the circulatory system and "Injury & Poisoning," comprising nearly another tenth each. Grant Decl., Ex. KK. Despite these diagnoses being vastly more costly to the Health Plan than the predicted cost of covering gender dysphoria, they are not subject to a blanket exclusion.

**RESPONSE**

Defendants object to SUMF No. 246 on the grounds that it does not comply with the requirements of Local Rule 56 because the proposed facts are not numbered separately.

Undisputed in that, because the County already has these high-cost claims, it does not want to make plan changes that will add more costs. (Doc. 159 at 101:22-102:7; Doc. 150-19, Ex. M at 23:20-31:7.)

Disputed as to the suggestion transition treatments are subject to a "blanket exclusion." Plaintiff testified that her endocrinologist visits, psychological visits, and hormones and other medications have been covered by the Health Plan. (Doc. 137-3 at 48:19-49:15.)

**REPLY**

Disputed that this was Plaintiff's testimony. Plaintiff testified that she was not certain about what had been covered and whether that was a result of it having been coded for a diagnosis other than gender dysphoria. She testified: "My mental health coverage has been covered, but I don't know -- you know, there's coding. You know how doctors will code a diagnosis? I don't know what she coded or what she does. Q: Is your endocrinologist also covered? A: I don't know about the doctor's visits, if they are covered. But I know my blood work is not. I have to pay -- I get a bill for $400 for that every time I go get blood done." Grant Decl., Ex. C, Lange Dep., April 2, 2021 at 49:9-17.

Plaintiff also has had routine care denied as a result of the Exclusion, including as recently as after the close of discovery. *See* Ex. 1 (Lange_00002529) at 4 (denying coverage for an office visit on grounds that "[y]our plan's benefits don't cover this kind of care.")[1]

---

[1] This document was produced to Defendants' counsel on November 1, 2021.

Respectfully submitted this 26 day of January, 2022.

/s/ Kenneth E. Barton III

Kenneth E. Barton III
Ga. State Bar No. 301171
M. Devlin Cooper
Ga. State Bar No. 142447
COOPER, BARTON & COOPER
170 College Street
Macon, GA 31201
(478) 841-9007 tel.
(478) 841-9002 fax
keb@cooperbarton.com
mdc@cooperbarton.com

David Brown*
Gabriel Arkles*
TRANSGENDER LEGAL DEFENSE EDUCATION
FUND, INC.
520 8th Ave. Ste. 2204
New York, NY 10018
(646) 862-9396 tel.
(646) 993-1686 fax
dbrown@transgenderlegal.org
garkles@transgenderlegal.org

Wesley Powell*
Jill K. Grant*
Catherine E. Fata*
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 tel.
(212) 728-8111 fax
wpowell@willkie.com
jgrant@willkie.com
cfata@willkie.com

Kevin M. Barry*
QUINNIPIAC UNIVERSITY SCHOOL OF LAW
LEGAL CLINIC
275 Mount Carmel Ave.
Hamden, CT 06518
(203) 582-3238 tel.
(203) 582-3237 fax
legalclinic@quinnipiac.edu

*Attorneys for Plaintiff*

* Admitted pro hac vice.

# EXHIBIT 1

Anthem Blue Cross and Blue Shield
P.O. BOX 105370
ATLANTA, GA 30348-5370

**Anthem** ✚ ⩓



**Don't worry, this is not a bill.**

#WGEGAE01VIEW#
ANNA H LANGE
REDACTED

Hi Anna - Here's your
# Health Care Summary
**October 16, 2021.**

Also called an Explanation of Benefits (EOB),
it shows you the care you received and who
paid for it.  Your EOB also includes
information about saving money on health
care and tips for staying healthy.

**Need help in a different language? Call us.**
¿Necesita ayuda en español? Llámenos.
**1-855-397-9267**

## Helpful resources



Use **Sydney Health,** *the Anthem member mobile app,*
or **anthem.com** to check on claims, review your
benefits and find care.

*Text Sydney to 268436 to download the Sydney Health app.*



**Call**
1-855-397-9267 TTY/TDD: 711

## Claims summary

| | |
|---|---|
| Doctor/facility charges: | $590.00 |
| Your discounts: | -250.31 |
| Due to your doctor/facility (max allowed): | $339.69 |
| Anthem paid: | -204.69 |

**What you pay :    $135.00**

## Preventive care reminders

**For ANNA**

- ☐ Breast cancer screening
- ☐ Pap test reminder
- ☐ Colon cancer screening
- ☐ Annual wellness visit
- ☐ Flu shot

\* Your checklist is based on age and gender guidelines from the Centers for Disease Control
and Prevention. If you have been to the doctor recently, it may not reflect your most recent
services.

## Tips and tools

**COVID-19 Resource Center**
Your health plan is here for you. Go to
**anthem.com/coronavirus** for information on
testing, care, and extra support.

**Urgent care without the urgent cost**
If it's not an emergency, try an urgent care instead of the ER.
It could save you an average of $500. Use the **Sydney Health**
mobile app or **anthem.com** to find an urgent care close by.

Anthem Blue Cross and Blue Shield is the trade name of Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. Independent licensee of the Blue Cross and Blue Shield Association. Anthem Blue Cross and Blue
Shield provides administrative claims payment services only and does not assume any financial risk or obligation with respect to claims.

Lange_00002526

## 2021 year-to-date summary

**Anna H Lange**

**Member ID:** REDACTED
**Group ID:** GA6706M001 - HOUSTON COUNTY BOC

**Coverage:** Individual

| Plan deductible | In-network deductible | Applied to date | Remaining deductible | Out-of-network deductible | Applied to date | Remaining deductible |
|---|---|---|---|---|---|---|
| **Individual** Anna H Lange | $400.00 | -$46.95 | $353.05 | $400.00 | -$46.95 | $353.05 |

| Out-of-pocket (OOP) maximum | In-network OOP max | Applied to date | Remaining OOP max | Out-of-network OOP max | Applied to date | Remaining OOP max |
|---|---|---|---|---|---|---|
| **Individual** Anna H Lange | $3,000.00 | -$96.95 | $2,903.05 | $5,500.00 | -$46.95 | $5,453.05 |

**Copay** is the flat-dollar amount you pay for health care, such as doctor visits.

**Deductible** is the amount you pay for health care before we start sharing the cost.

**Out-of-pocket maximum** is the most you'll pay for covered health care in your plan year. After that, we'll pay for all your covered health care.

Need more information? Go to **anthem.com/glossary.**

You may have other health care services that aren't showing here. Use our **Sydney Health** mobile app to see the latest information.

Lange_00002527

## Claims Details

Are you concerned about healthcare fraud?
Learn more at **fighthealthcarefraud.com**

**Anna Lange**    **Claim Number:** 2021274CW7237    **Received:** 10/01/21    **Doctor:** SOUTH HOUSTON INTERNAL ME (In your plan)

**Going to this doctor uses in-network benefits. That's your best value.**

**You pay $20.00.**
**Here's how it breaks down.**

**Your total cost**

| Service date | Service | Reason code* | Doctor charges | Your discounts | Due to your doctor (max allowed) | Anthem paid | Copay | Deductible | Your share of the cost (coinsurance) | Services not covered | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | - | = | - | + | + | + | + | |
| 07/01/21 | Office Visit | 066 | 135.00 | 23.17 | 111.83 | 91.83 | 20.00 | 0.00 | 0.00 | 0.00 | =20.00 |
| 07/01/21 | Injection/Infusion | 066 | 45.00 | 7.38 | 37.62 | 37.62 | 0.00 | 0.00 | 0.00 | 0.00 | =0.00 |
| 07/01/21 | Drug Non-Oral Admin | 066 | 50.00 | 44.50 | 5.50 | 5.50 | 0.00 | 0.00 | 0.00 | 0.00 | =0.00 |
| 07/01/21 | Lab Microbiology | 066 | 45.00 | 20.49 | 24.51 | 24.51 | 0.00 | 0.00 | 0.00 | 0.00 | =0.00 |
| 07/01/21 | Lab Microbiology | 066 | 200.00 | 154.77 | 45.23 | 45.23 | 0.00 | 0.00 | 0.00 | 0.00 | =0.00 |
| 07/01/21 | Diagnostic Service | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | =0.00 |
| 07/01/21 | Diagnostic Service | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | =0.00 |
| 07/01/21 | Patient History | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | =0.00 |
| 07/01/21 | Patient History | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | =0.00 |
| 07/01/21 | Patient History | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | =0.00 |
| 07/01/21 | Diagnostic Service | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | =0.00 |
| **Totals:** | | | 475.00 | 250.31 | 224.69 | 204.69 | 20.00 | 0.00 | 0.00 | 0.00 | =$20.00 |

*The total copayment amount for a service on the claim may have been collected across multiple lines.

*066: You don't pay the "Your discount" amount. This is the benefit to using doctors/facilities in one of our plans.

Lange_00002528

## Claims Details

Are you concerned about healthcare fraud?
Learn more at **fighthealthcarefraud.com**

**Anna Lange**  **Claim Number:** 2021287CX3903  **Received:** 10/14/21  **Doctor**: THOMAS C JONES MD PC (In your plan)

**Going to this doctor uses in-network benefits. That's your best value.**

**You pay $115.00.**
**Here's how it breaks down.**

**Your total cost**

| Service date | Service | Reason code* | Doctor charges | Your discounts | Due to your doctor (max allowed) | Anthem paid | Copay | Deductible | Your share of the cost (coinsurance) | Services not covered | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | − | = | − | + | + | + | + | |
| 10/07/21 | Office Visit | 001 | 115.00 | 0.00 | 115.00 | 0.00 | 0.00 | 0.00 | 0.00 | 115.00 | =115.00 |
| **Totals:** | | | 115.00 | 0.00 | 115.00 | 0.00 | 0.00 | 0.00 | 0.00 | 115.00 | =$115.00 |

*001: Your plan's benefits don't cover this kind of care. Find what's covered in your plan documents or go to our website. Visit the Benefits area for a searchable list and all your plan details. It's also the right place to get an appeal started.

Lange_00002529

# Your appeal rights.

Anytime you pay for a portion of your care, you have the right to question whether we calculated it correctly. We call that your appeal rights.

**Call us at 1-855-397-9267.**

o  **Ask for help understanding this notice.**
o  **Talk through your portion and our portion of these service costs, including any denials.**

**If you think something should have been covered** (in whole or in part), but it wasn't, or it wasn't covered in the way you think it should be — you can appeal it and we'll take another look.

**Here's how you file an appeal.** Check your plan benefits for how long you have to file an appeal. Usually it's within 180 days of when we told you our decision. You can send us a note saying you want to file an appeal. Someone acting for you can also file an appeal, but be sure they include a signed authorization from you. You can do all this by secure message on **anthem.com**. Make sure to select Grievances/Appeals as the subject of your message.

Or send us a note in the mail to:
  **Grievances and Appeals
  PO Box 105449
  Atlanta, GA 30548-5449**

Be sure to include:
o  Patient information: name, member ID, address, phone number, date of birth
o  Claim information: date(s) of the service, your doctor's name/address/phone number
o  Any other information about your claim that you think is important

**Do it online or in writing** if you can. Or check your



**Do your claims in this document look correct?**

Yes → Great!

No → **Call us. At 1-855-397-9267.**

Solved → Great!

No → Appeal the claim.

benefits booklet or plan documents to see if you can file an appeal by phone.

**If you need a decision fast,** call us. You can ask for an "expedited appeal", and get an answer in about 72 hours, unless your benefits booklet or plan documents states otherwise. Use this option if:

o  Your life or health is in danger
o  In your doctor's opinion, your pain can't be adequately controlled while you wait
o  You had emergency services, but haven't been discharged from the facility.

To ask for an expedited appeal or expedited review by someone outside our company — you, your doctor or someone acting for you can call the Member Services number on your ID card or by mailing to the address

provided for appeals.

**Ask for more information on your claim — it's free.**
Call us to get billing, diagnosis or treatment codes and their meanings, or any other information we used to decide your claim, anytime.  This includes any new or additional evidence or reasons for the decision on your claim. If we decided that any of the services are experimental or aren't medically necessary, or used a guideline, criteria or clinical rationale in making our decision, you can get a copy of it free of charge.

If you appeal, we'll do a review and give you a written decision within 30 calendar days from the date we received your appeal request. Check your benefits booklet to see if it gives a different time limit. If you still don't feel our response is right, or if you don't hear back from us in time, you may be able to ask for a review from someone outside our company, an independent third party. Their decision then is final.

For questions about your rights or for help, call Employee Benefits Security Administration at **1-866-444-EBSA (3272).**

Lange_00002530

Lange_00002531

# We're here for you – in many languages

The law requires us to include a message in all of these different languages. Curious what they say? Here's the English version: "You have the right to get help in your language for free. Just call the Member Services number on your ID card." Visually impaired? You can also ask for other formats of this document.

### Spanish
Usted tiene derecho a recibir ayuda en su idioma en forma gratuita. Simplemente llame al número de Servicios para Miembros que figura en su tarjeta de identificación.

### Chinese
您有權免費獲得透過您使用的語言提供的幫助。請撥打您的ID卡片上的會員服務電話號碼。若您是視障人士，還可索取本文件的其他格式版本。

### Vietnamese
Quý vị có quyền nhận miễn phí trợ giúp bằng ngôn ngữ của mình. Chỉ cần gọi số Dịch vụ dành cho thành viên trên thẻ ID của quý vị. Bị khiếm thị? Quý vị cũng có thể hỏi xin định dạng khác của tài liệu này."

### Korean
귀하는 자국어로 무료지원을 받을 권리가 있습니다. ID 카드에 있는 멤버 서비스번호로 연락하십시오.

### Tagalog
May karapatan ka na makakuha ng tulong sa iyong wika nang libre. Tawagan lamang ang numero ng Member Services sa iyong ID card. May kapansanan ka ba sa paningin? Maaari ka ring humiling ng iba pang format ng dokumentong ito.

### Russian
Вы имеете право на получение бесплатной помощи на вашем языке. Просто позвоните по номеру обслуживания клиентов, указанному на вашей идентификационной карте. Пациенты с нарушением зрения могут заказать документ в другом формате.

### Armenian
Դուք իրավունք ունեք ստանալու անվճար օգնություն ձեր լեզվով: Պարզապես զանգահարեք Անդամների սպասարկման կենտրոն, որի հեռախոսահամարը նշված է ձեր ID քարտի վրա:

### Farsi
"شما این حق را دارید تا به صورت رایگان به زبان مادری تان کمک دریافت کنید. کافی است با شماره خدمات اعضا (Member Services) درج شده روی کارت شناسایی خود تماس بگیرید." دچار اختلال بینایی هستید؟ می توانید این سند را به فرمت های دیگری نیز درخواست دهید.

### French
Vous pouvez obtenir gratuitement de l'aide dans votre langue. Il vous suffit d'appeler le numéro réservé aux membres qui figure sur votre carte d'identification. Si vous êtes malvoyant, vous pouvez également demander à obtenir ce document sous d'autres formats.

### Arabic
لك الحق في الحصول على مساعدة بلغتك مجانًا. ما عليك سوى الاتصال برقم خدمة الأعضاء الموجود على بطاقة الهوية. هل أنت ضعيف البصر؟ يمكنك طلب أشكال أخرى من هذا المستند.

### Japanese
お客様の言語で無償サポートを受けることができます。IDカードに記載されているメンバーサービス番号までご連絡ください。

### Haitian
Se dwa ou pou w jwenn èd nan lang ou gratis. Annik rele nimewo Sèvis Manm ki sou kat ID ou a. Èske ou gen pwoblèm pou wè? Ou ka mande dokiman sa a nan lòt fòma tou.

### Italian
Ricevere assistenza nella tua lingua è un tuo diritto. Chiama il numero dei Servizi per i membri riportato sul tuo tesserino. Sei ipovedente? È possibile richiedere questo documento anche in formati diversi

### Polish
Masz prawo do uzyskania darmowej pomocy udzielonej w Twoim języku. Wystarczy zadzwonić na numer działu pomocy znajdujący się na Twojej karcie identyfikacyjnej.

### Punjabi
ਆਪਣੀ ਭਾਸ਼ਾ ਵਿੱਚ ਮੁਫ਼ਤ ਵਿੱਚ ਮਦਦ ਹਾਸਲ ਕਰਨ ਦਾ ਅਧਿਕਾਰ ਹੈ। ਬਸ ਆਪਣੇ ਆਈਡੀ ਕਾਰਡ ਤੇ ਦਿੱਤੇ ਮੈਂਬਰਸ ਨੰਬਰ ਤੇ ਕਾਲ ਕਰੋ। ਨਜ਼ਰ ਕਮਜ਼ੋਰ ਹੈ? ਤੁਸ ਇਸ ਦਸਤਾਵੇਜ਼ ਦੇ ਹੋਰ ਰੂਪਾਂਤਰ ਮੰਗ ਸਕਦੇ ਹੋ।

## TTY/TTD:711

### It's important we treat you fairly

We follow federal civil rights laws in our health programs and activities. By calling Member Services, our members can get free in-language support, and free aids and services if you have a disability. We don't discriminate, exclude people, or treat them differently on the basis of race, color, national origin, sex, age or disability. For people whose primary language isn't English, we offer free language assistance services through interpreters and other written languages. Interested in these services? Call the Member Services number on your ID card for help (TTY/TDD: 711). If you think we failed in any of these areas, you can mail a complaint to: Compliance Coordinator, P.O. Box 27401, Mail Drop VA2002-N160, Richmond, VA 23279, or directly to the U.S. Department of Health and Human Services, Office for Civil Rights at 200 Independence Avenue, SW; Room 509F, HHH Building; Washington, D.C. 20201. You can also call 1-800- 368-1019 (TDD: 1-800-537-7697) or visit https://ocrportal.hhs.gov/ocr/portal/lobby.jsf

Lange_00002532

*0165954040400*

Lange_00002533

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:19-cv-392 (MTT) |
| | ) | |
| HOUSTON COUNTY, GEORGIA, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

Plaintiff Anna Lange—a transgender woman and sworn deputy with the Houston County Sheriff's Office—brings this action against her employer Defendant Sheriff Cullen Talton in his official capacity and Defendant Houston County, Georgia.  Doc. 56. The County's health insurance plan, which Sheriff Talton elected to provide to his employees, excludes coverage for "sex change" surgery, which Lange contends violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; the Equal Protection Clause of the United States Constitution; and Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.  Id.*  Sheriff Talton, the County, and Lange have moved for summary judgment on all claims.  Docs. 136; 137; 140.  For the following reasons, the parties' motions are **GRANTED in part** and **DENIED in part**. Lange is entitled to partial summary judgment on her Title VII claim against both Sheriff Talton and the County.  Lange's equal protection claim shall proceed against the County, and to the extent that Lange seeks prospective relief against Sheriff Talton under the Equal Protection Clause, that claim too shall proceed.  Lange's ADA claim

fails on the merits because she has not come forward with sufficient admissible evidence that her gender dysphoria is the result of a physical impairment.

## I. BACKGROUND

### A. Lange's Employment with the Houston County Sheriff's Office

Unless noted, the parties agree the following facts are undisputed.

*1. Lange's Gender Dysphoria and Gender Transition*

Lange is a twenty-five-year law enforcement veteran, the past fifteen of which have been with the Houston County Sheriff's Office.  Docs. 179-3 ¶ 28; 195 ¶ 28.  By all accounts, Lange is an exceptional employee who "has performed her duties as an investigator very well" throughout her tenure as a sheriff's deputy.  *Id.*  Lange is also a transgender woman, meaning that although she was assigned a male sex at birth, her internal knowledge of herself has always been that she is female.  Docs. 179-3 ¶ 29; 195 ¶ 29.  In medical parlance, this condition is called gender dysphoria.  Docs. 179-3 ¶ 3; 195 ¶ 3.  Left untreated, gender dysphoria can lead to clinically significant personal suffering and comorbidities, including anxiety, depression, self-harm, and suicidality.  Docs. 179-3 ¶ 6; 195 ¶ 6.

Lange began her gender transition in 2017 after she was diagnosed with gender dysphoria.  Docs. 179-3 ¶ 31; 195 ¶ 31.  Lange now lives fully and consistently as a woman.  Docs. 179-3 ¶ 33; 195 ¶ 33.  To facilitate her transition, Lange receives hormone replacement therapy and has had "top surgery" to feminize her chest.  Docs. 179-3 ¶¶ 34-35; 195 ¶¶ 34-35.  Notwithstanding that treatment, Lange alleges she continues to suffer significant distress and anxiety due to the incongruence between her female gender identity and her remaining male physical characteristics, including her

genitalia.  Docs. 179-3 ¶ 36; 195 ¶ 36 (the defendants dispute that Lange is so distressed that she cannot work or engage in recreational activities).  When such symptoms persist, gender-confirming surgery is considered "medically necessary."  Docs. 179-3 ¶ 14; 195 ¶ 14.  Following the recommendations of her endocrinologist, two psychologists, and a surgeon, Lange determined that a vaginoplasty, also known as "bottom surgery," was the next step in the treatment of her gender dysphoria.  Docs. 179-3 ¶ 37; 195 ¶ 37.

### 2. The County's Health Insurance Plan and the Exclusion

Pursuant to an informal intergovernmental agreement between the Sheriff and the County, the Sheriff's Office has participated in the County's health insurance plan since 1973.  Docs. 179-3 ¶ 60; 195 ¶ 60.  As a Sheriff's deputy, Lange participates in the County's plan—which has about 1500 members in total—and contributes monthly premiums for the coverage.  Docs. 179-3 ¶¶ 67, 70, 71; 195 ¶¶ 67, 70, 71.  The health insurance plan is a self-funded or Administrative Services Only ("ASO") plan, which means that Anthem Blue Cross Blue Shield, the County's third-party administrator, administers claims using funds provided by the County and employee contributions.  Docs. 179-3 ¶ 69; 195 ¶ 69.

The County's health insurance plan has 68 medical exclusions and 29 pharmacy benefit exclusions.  Docs. 179-3 ¶¶ 74, 209; 195 ¶¶ 74, 209.  Two of those exclusions, which have been in place since 1998, preclude coverage for "sex change" surgery.  Docs. 179-3 ¶¶ 75, 76; 195 ¶¶ 75, 76.  Specifically, exclusions 26 and 57 ("the Exclusion") exclude coverage for "[d]rugs for sex change surgery" and "[s]ervices and

supplies for a sex change and/or the reversal of a sex change."  Docs. 179-3 ¶ 76; 195 ¶ 76.

Kenneth Carter is the Director of Personnel for Houston County and responsible for the administration of the County's health insurance plan.  Docs. 179-3 ¶ 47; 195 ¶ 47.  During the renewal process in late 2016, the County's insurance broker, who acts as a liaison between the County and Anthem, informed Carter of Anthem's "Nondiscrimination in Health Programs and Activities Rule" which stated that "[i]n recognition of regulations issued under PPACA section 1557, the exclusion for Gender Identity Disorders and Sex Change Surgery will be removed from our plans (both Fully Insured and ASO)."  Docs. 179-3 ¶¶ 81, 85, 86; 195 ¶¶ 81, 85, 86.  Despite Anthem's recommendation to do so, the County chose not to accept the nondiscrimination mandate.  Docs. 179-3 ¶ 91; 195 ¶ 91.  Accordingly, the Exclusion remained in place.

For health insurance plans that accepted the nondiscrimination mandate and thus removed the exclusion for "sex change surgery," Anthem has a Guideline for when such surgery is "medically necessary" and covered by the plan.  Docs. 179-3 ¶ 15; 195 ¶ 15.  Under the Guideline, surgery is medically necessary if there is "significant functional impairment AND the procedure can be reasonably expected to improve the functional impairment."  Docs. 179-3 ¶ 16; 195 ¶ 16.  It is undisputed that Lange's prescribed vaginoplasty is medically necessary under Anthem's Guideline.  Docs. 179-3 ¶ 38; 195 ¶ 38.  No evidence disputes Lange's evidence that the prescribed vaginoplasty is medically necessary.

*3. Lange Informs the County and the Sheriff's Office of her Transgender Status*

Lange told Carter that she was transgender and intended to live openly as a woman on April 18, 2018.  Docs. 179-3 ¶ 93; 195 ¶ 93.  The purpose of this conversation was to determine whether Lange's medically necessary gender reassignment surgery would be covered by the County's health insurance plan.  Docs. 179-3 ¶ 94; 195 ¶ 94.  Citing the Exclusion, Carter told Lange that her surgery would not be covered.  *Id.*

Later that day, Lange and Carter met with Sheriff Talton and told him Lange was transgender.  Docs. 179-3 ¶ 98; 195 ¶ 98.  During that meeting, Lange requested permission from Sheriff Talton to wear a female uniform at work and present herself as a female in the office.  Docs. 179-3 ¶ 99; 195 ¶ 99.  In response, Sheriff Talton looked at Carter and said, "[w]hat the hell is he talking about?"  Docs. 179-3 ¶ 100; 195 ¶ 100.  Carter then explained to Sheriff Talton that "what Sergeant Lange is trying to tell you is that she would like to start presenting herself as a woman and she wants you to understand that."  Docs. 179-3 ¶ 101; 195 ¶ 101.  Sheriff Talton initially thought Lange's revelation was a joke.  Docs. 179-3 ¶ 102; 195 ¶ 102.  Sheriff Talton then told Lange that he doesn't "believe in sex changes."  Docs. 179-3 ¶ 103; 195 ¶ 103.  Nonetheless, the Sheriff ultimately granted Lange permission to dress as a female but also warned her she would need "tough skin" to deal with her coworkers.  Docs. 179-3 ¶¶ 106-107; 195 ¶¶ 106-107.

The following day, Lange came out to her coworkers in the Criminal Investigation Division ("CID") during a meeting chaired by Sheriff Talton.  Docs. 179-3 ¶¶ 111, 112; 195 ¶¶ 111, 112.  Despite acknowledging that Lange's transition was "sensitive and a

serious subject," Sheriff Talton repeated his sentiment that he "didn't believe in all this" during the meeting.  Docs. 179-3 ¶ 112; 195 ¶ 112.  And perhaps in tacit acknowledgement of the CID's boisterous atmosphere, Sheriff Talton told the group that what Lange did "takes big balls."  Docs. 179-3 ¶ 113; 195 ¶ 113.

**B. Lange's "Sex Change" Surgery is Denied Pursuant to the County's Exclusion**

*1. Lange's Gender Confirmation Surgery is Denied*

Anthem initially told Lange that her gender confirmation surgery would be covered if it was "medically necessary" under Anthem's Guideline.  Docs. 179-3 ¶ 115; 195 ¶ 115.  This, the County contends, was a misunderstanding, due to Anthem's failure to note the County's position on the 2017 plan year renewal document.  Docs. 179-3 ¶ 92; 195 ¶ 92.  According to Anthem's records, the County had not opted-out of the nondiscrimination mandate.  Docs. 179-3 ¶ 126; 195 ¶ 126.  In consultation with the County's insurance broker, Carter worked with Anthem to ensure the Exclusion remained intact.[1]  Docs. 179-3 ¶ 128; 195 ¶ 128.  The parties dispute whether this was a retroactive "opt-out" or whether the County was merely attempting to "correct the record."  Docs. 179-3 ¶ 133; 195 ¶ 133.  In any event, it is undisputed that cost was not a factor in the County's decision to opt out of the nondiscrimination mandate.  Docs. 179-3 ¶ 135; 195 ¶ 135.

On November 30, 2018, Lange was denied pre-authorization for gender confirmation surgery in accordance with the Exclusion.  Docs. 179-3 ¶ 129; 195 ¶ 129. Lange appealed, and that appeal was denied on January 23, 2019.  Docs. 179-3 ¶ 145; 195 ¶ 145.  In a final attempt to have the Exclusion removed and her surgery covered,

---

[1] Anthem reinstated the Exclusion but required the County to agree that the County "will be responsible for any penalties that result if the plan is determined to be noncompliant."  Docs. 179-3 ¶ 160; 195 ¶ 160.

Lange presented her case to the County Commissioners during a public meeting on February 19, 2019.  Docs. 179-3 ¶¶ 167-170; 195 ¶¶ 167-170.  The County Attorney, speaking for the County, informed Lange the Commissioners are "not considering any changes to the plan at this time" and that he further advised the Commission "not to discuss this matter due to the potential for litigation."  Docs. 179-3 ¶ 173; 195 ¶ 173. The County did not consider any cost information prior to deciding not to consider Lange's request to remove the Exclusion.  Docs. 179-3 ¶ 174; 195 ¶ 174.

### 2. The County Decides to Keep the Exclusion

Lange filed EEOC charges against the County and was issued a right-to-sue letter on July 8, 2019.  Docs. 179-3 ¶ 180; 195 ¶ 180.  With potential litigation on the table, the County sought information from Anthem about the cost of gender reassignment surgery on September 30, 2019.  Docs. 179-3 ¶¶ 186, 188; 195 ¶¶ 186, 188.  Anthem responded that such costs could total $186,100, but that the specific procedure Lange sought—a genital vaginoplasty—was estimated only to cost $25,600. Docs. 179-3 ¶ 189; 195 ¶ 189.  Anthem also concluded that that utilization of gender-confirming care was low.  Docs. 179-3 ¶ 226; 195 ¶ 226.

On November 19, 2019, the County Commissioners voted "unanimously by all to approve the recommended cost-sharing to plan participants and the premium increases to retirees as presented and that the 68 plan exclusions and 29 pharmacy benefits exclusions remain in place."  Docs. 179-3 ¶ 209; 195 ¶ 209.  The County contends this was done to keep down the overall costs of the plan.  Doc. 179-3 ¶ 213.  Specifically, the County was concerned that eliminating one exclusion would lead to requests or legal action to remove other exclusions.  Doc. 179-3 ¶ 214.

**C. Procedural Summary**

Lange's operative complaint alleges the adoption and maintenance of the Exclusion violates the Equal Protection Clause of the U.S. Constitution, the Equal Protection guarantee of the Georgia Constitution, Title VII, Title I and Title II of the ADA, and the Rehabilitation Act of 1973.  Doc. 56.  On the defendants' motions, the Court dismissed Lange's ADA Title II claim, Georgia equal protection claim, and individual capacity federal equal protection claim against numerous defendants, including Sheriff Talton.  Doc. 89 at 36.  Accordingly, the only claims that remain are Lange's federal equal protection claim against the County and the Sheriff in his official capacity, Lange's Title VII claim against the County and the Sheriff in his official capacity, and Lange's ADA Title I claim against the County and the Sheriff in his official capacity.  *Id.* at 37.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Id.*  The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment." *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing *Four Parcels of Real Prop.*, 941 F.2d at 1438). The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Four Parcels of Real Prop.*, 941 F.2d at 1438. In other words, the moving party's evidence must be so credible that, if not controverted at trial, the party would be entitled to a directed verdict. *Id.*

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Thus, the Court "'can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'" *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)).

In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material

*negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)).  The moving party "simply may show . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (cleaned up).  "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp.*, 281 F.3d at 1224-25 (citing *Celotex Corp.*, 477 U.S. at 324).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted).  The Court will consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

### III. DISCUSSION

The Court first addresses issues concerning the reach and scope of Lange's claims.

### A. Sheriff Talton's Immunity and the County's Agency

*1. The County is an "Agent" for Purposes of Title VII and the ADA*

Liability under Title VII and the ADA is the employer's. *Busby v. Cty. of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (Title VII); *Mason v. Stallings*, 82 F.3d 1007, 1009

(11th Cir. 1996) (ADA).  But Title VII and the ADA both define "employer" to include an employer's agents.  42 U.S.C. §§ 12111(5)(A); 2000e(b).  That definition must be construed liberally.  *Cty. of Los Angeles, Dept. of Water and Power v. Manhart*, 435 U.S. 702, 718 n.33 (1978); *Williams v. Cty. of Montgomery*, 742 F.2d 586, 588 (11th Cir. 1984), *cert. denied*, 470 U.S. 1053 (1985).  "Where the employer has delegated control of some of the employer's traditional rights, such as hiring or firing, to a third party, the third party has been found to be an 'employer' by virtue of the agency relationship." *Williams*, 742 F.2d. at 589 (quoting Schlei & Grossman, *Employment Discrimination Law* at 1002 (2d ed. 1983)).[2]  Lange contends that the Sheriff delegated to the County the authority to provide healthcare benefits to the Sheriff's employees, and thus, the County is an "employer."

In *Williams*, the Eleventh Circuit held that the City of Montgomery and its agent, the Montgomery City-County Personnel Board, were both liable for racial discrimination under Title VII.  742 F.2d. at 589.  In that case, the Board exercised rights traditionally reserved to the employer.  *Id.*  Among other things, the Board established a pay plan, formulated minimum standards for jobs, evaluated employees, and reinstated employees in the competitive service.  *Id.*  Because these functions were traditionally exercised by an employer, the Eleventh Circuit held the Board was an agent of the City and Title VII liability applied to both entities.  *Id.*  Thus, when the Board allegedly

---

[2] *See also Tolar v. Bradley Arant Boult Cummings*, 2014 WL 12836011, at *7 (N.D. Ala. Nov. 18, 2014) (collecting cases in which agents' control of a specific employment practice, such as health care, determined employer status under Title VII); *Fike v. Gold Kist, Inc.,* 514 F. Supp. 722, 728 (N.D. Ala. 1981), *aff'd,* 664 F.2d 295 (11th Cir. 1981) ("an agency relationship which establishes an 'employment nexus'" wherein one corporation is the "agent of the other with respect to employment practices" is sufficient to establish employer status under Title VII); *Ingber v. Ramada Inns, Inc.*, 1979 WL 280, at *3 (N.D. Ga. Aug. 7, 1979) (finding that the "ultimate question" for determining an agent's employer status under Title VII was whether one company functioned as the other's agent with respect to employment practices).

violated Title VII by refusing to reinstate a black firefighter, it was liable as an agent of the City.

Here, Sheriff Talton delegated the authority to the County to provide and administer healthcare benefits to his employees.  Docs. 179-3 ¶ 60; 195 ¶ 60.  The County—on behalf of the Sheriff—provided the Sheriff's employees a health insurance plan containing the Exclusion and, in the administration of that plan, it denied Lange's claim for medically necessary treatment.  Docs. 179-3 ¶¶  60, 75, 129; 195 ¶¶ 60, 75, 129.  In short, the County acted as an agent of the Sheriff because the County provided a health insurance plan to the Sheriff's deputies—a function traditionally exercised by an employer.  *Williams*, 742 F.2d at 589.

The County admits all of this.  Docs. 137-2 at 8-11; 180 at 30.  But it argues that Georgia law provides that sheriffs alone have the authority to decide whether and how to provide healthcare benefits to their employees.  *Id*.  True, but the County cites no law prohibiting what happened here—the Sheriff's delegation to the County the authority to provide and administer, on behalf of the Sheriff, healthcare benefits for his employees. The well-established law that a sheriff's employees are not county employees does not preclude a sheriff from outsourcing employer functions.  In other words, just because Sheriff Talton alone chooses how a health insurance plan is provided to his employees does not mean the County does not act as an agent when it provides health coverage at the express delegation of the Sheriff.  *See Williams*, 742 F.2d at 589.

In sum, it is undisputed that the County acted as the Sheriff's agent.  If the County violated Title VII and the ADA, the County, as an agent, is liable.

*2. Sheriff Talton Functions as an "Arm of the State" When Providing Healthcare Benefits to His Employees*

Sheriff Talton argues he is entitled to Eleventh Amendment immunity from Lange's equal protection and ADA claims because a sheriff acts as an "arm of the state" when he pays "wages" to his employees, and healthcare benefits are wages as part of his "deputies' compensation package."  Doc. 136-9 at 5-11.  The Sheriff is correct—healthcare benefits are a form of compensation—and that much Lange does not dispute.  Rather, Lange contends immunity is inappropriate because the State of Georgia would neither be responsible for a monetary judgment against the Sheriff nor does the State exercise control over the County's health insurance plan.  Doc. 178 at 49-52.

First, it is not just the Eleventh Amendment that bars § 1983 claims for damages against sheriffs in their official capacities.[3]  States—and, by extension, arms of the state—are not "persons" within the meaning of § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  And § 1983 subjects only "persons" to monetary liability for violations of constitutional rights.  But the questions of whether Sheriff Talton is a "person" subject to § 1983 liability and whether Sheriff Talton is entitled to Eleventh Amendment immunity from the ADA both turn on whether the Sheriff functioned as an arm of the state when he provided healthcare benefits to his employees.  In other words, the "personhood" analysis is the same as the Eleventh Amendment analysis.

---

[3] For the most part, it may only be of academic interest that courts repeatedly dismiss § 1983 claims against states and state agents, in their official capacities, on Eleventh Amendment grounds rather than because they are not "persons" subject to § 1983 liability for damages.  *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1301-02 (11th Cir. 2007); *Pellitteri v. Prine*, 776 F.3d 777, 779-80 (11th Cir. 2015).  That is because the result is the same either way— the claims fail.  But in some cases, this distinction can be significant, such as when a state removes an action to federal court.  *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002).

*United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 606 n.9 (11th Cir. 2014).[4]

"Under the traditional Eleventh Amendment paradigm, states are extended immunity, counties and similar municipal corporations are not, and entities that share characteristics of both require a case-by-case analysis."  *Lesinski*, 739 F.3d at 601 (citing *Mt. Healthy Cty. Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  In the Eleventh Circuit, this case-by-case analysis is conducted by applying the factors set forth in *Manders v. Lee*. 338 F.3d 1304, 1308-09 (11th Cir. 2003).[5]  When a county or municipality is acting in concert with an agent or instrumentally of the state, a *Manders* analysis is appropriate to determine the agency's status as either a state or local government actor when performing the specific function at issue.  *Monroe v. Fort Valley State Univ.*, ___F. Supp. 3d___, 2021 WL 5451145, at *6 (M.D. Ga. Nov. 22, 2021) (citations omitted).  But "when a state-created entity only serves the state, a *Manders* analysis is a pointless exercise."  *Id.*

Both parties agree the function at issue is Sheriff Talton's provision of healthcare benefits to his employees.  Docs. 136-9 at 5-11; 178 at 49-52.  But with the benefit of discovery, Lange does not suggest that function was performed for or on behalf of the County.  *See* Doc. 178 at 49-52.  And during oral argument, Lange conceded Sheriff

---

[4] *Lesinski*, which addressed whether a *qui tam* action could be brought against a state created agency, was not an Eleventh Amendment case.  739 F.3d at 602.  Rather, it borrowed "Eleventh Amendment arm of the state analysis to determine whether a state entity is a 'person' subject to FCA liability."  *Id.*  Still, *Lesinski* is instructive because the Eleventh Circuit noted "that the analysis for the two questions is identical."  *Id.* at 606 n.9.

[5] *Manders* also notes that if a Sheriff is acting as an arm of the state when exercising certain functions, then the issue arises of whether any § 1983 suit is also "subject to dismissal on the independent ground that sheriffs are not 'persons' for purposes of § 1983."  338 F.3d at 1328 n.53 (citing *Will*, 491 U.S. at 71). But because this statutory question was not briefed on appeal, *Manders* did not address it.  *Id.*

Talton was acting on his own behalf and not on behalf of the County.  Doc. 197 at 16:24-17:8.  Instead, Lange reasons that because Sheriff Talton was acting on his own behalf when he adopted the County's health insurance plan, he could not be acting as an arm of the state.  *See id*.  That is not how it works.

While a *Manders* analysis is frequently necessary when sheriffs are sued, it is only necessary when there is a colorable question of whether the sheriff acted in his capacity as a state officer or on behalf of some non-state governmental entity such as the county he serves.  *See, e.g., Manders*, 338 F.3d at 1305-06 (whether the sheriff acts as an arm of the state when he establishes use-of-force policies at the county jail); *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Com'rs*, 405 F.3d 1298, 1309 (11th Cir. 2005) (whether the sheriff acts as an arm of the state when he enforces county ordinances).  In this case, a *Manders* analysis is not required because Lange concedes the Sheriff was not providing a health insurance plan to his employees on behalf of the County.  *Monroe*, 2021 WL 5451145, at *6.  In other words, Sheriff Talton never stepped outside his arm of the state position.

Accordingly, Lange's Equal Protection claim for damages pursuant to § 1983 fails because Sheriff Talton is an arm of the state and, thus, not a "person" for the purposes of that statute.[6]  Similarly, as an arm of the state, Sheriff Talton is entitled to Eleventh

---

[6] Even if a *Manders* analysis were appropriate, it is well settled that a sheriff acts as an arm of the state when carrying out employment decisions.  *See Pellitteri*, 776 F.3d at 779.  Employment decisions include compensation.  *Walker v. Jefferson Cnty. Bd. of Educ.*, 771 F.3d 748, 757 (11th Cir. 2014); *see also Kicklighter v. Goodrich*, 162 F. Supp. 3d 1363, 1376 (S.D. Ga. 2016) ("Despite being distinguishable, [functions of hiring, firing, and compensation of employees] have been treated as one for purposes of the *Manders* inquiry.").  And while it has not been explicitly discussed in the *Manders* context, group health insurance plans are a form of compensation.  *See Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682 (1983).  Again, the parties do not dispute that.

Amendment immunity from Lange's ADA claim for monetary damages.[7]  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001).

## B. Fact Issues Preclude Summary Judgment on Lange's Equal Protection Claim

Section 1983 allows a plaintiff to seek relief when "deprived of a right 'secured by the Constitution and laws'" of the United States.  *Baker v. McCollan*, 443 U.S. 137, 140 (1979) (quoting 42 U.S.C. § 1983).  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker*, 443 U.S. at 144 n.3).  Lange seeks relief under the Equal Protection Clause of the Fourteenth Amendment which guarantees "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.

### 1. The Exclusion Is Not Facially Discriminatory Under the Equal Protection Clause

There are three categories of equal protection claims.  *E & T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987) (citations omitted).  First, a classification may violate the Equation Protection Clause if it discriminates "on its face."  *Id.*  "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications*."  Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019).  Second, a facially

---

[7] Lange may seek injunctive and declaratory relief against Sheriff Talton under § 1983 and the ADA.  *Ex Parte Young*, 209 U.S. 123, 159-160 (1908).  When a state official in his official capacity is sued for such relief, that official "would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."  *Will*, 491 U.S. at 71 n.10 (quotation omitted).  Similarly, the Eleventh Amendment does not bar prospective relief.  *Garrett*, 531 U.S. at 374 n.9.  Sheriff Talton's Eleventh Amendment immunity does not, however, extend to the County as an agent of Sheriff Talton for the purposes of Lange's ADA claim.  *See McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1334 (11th Cir. 2007) (finding that derivative sovereign immunity was not available to a government contractor because "status as a common law agent is not a sufficient condition for derivative sovereign immunity."); *see also Badilla v. Midwest Air Traffic Control Serv., Inc.*, 8 F.4th 105, 125 (2d Cir. 2021) (declining to extend the Federal Tort Claims Act combatant activities defense to government contractors).

neutral classification may discriminate in its purpose or effect by having a "disparate impact" on a particular class. *E & T Realty,* 830 F.2d at 1112 n.5. Third, a facially neutral policy may be unequally administered as applied to the plaintiff. *Id.* Facially neutral classifications are unconstitutional when they are intended to affect a protected class and fail the applicable level of scrutiny.[8] *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272-73 (1979).

Lange does not argue the Exclusion facially discriminates on the basis of sex. Doc. 187 at 20. Understandably so, the Supreme Court has foreclosed that argument. *Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974). In *Geduldig,* the Supreme Court held a state insurance policy that excluded coverage for a medical procedure that only one sex can undergo did not classify on the basis of sex. *Id.* at 495-97. Rather, the classification was based on a medical condition. *Id.* at 496-97. The classification created two groups—pregnant and nonpregnant people. *Id.* at 496 n.20. Although "the first group is exclusively female," the Court reasoned "the second includes members of both sexes," which revealed a "lack of identity" between pregnancy and sex. *Id.* The Court noted that there was "no risk from which men are protected and women are not. Likewise, there is no risk from which women are protected and men are not." *Id.* at 496.

According to the logic of *Geduldig*, Lange has the same coverage as other employees because the Exclusion applies equally to a male seeking to become a woman or a woman seeking to become a man. And even if transgender individuals are

---

[8] Lange contends heightened scrutiny is appropriate because the Exclusion discriminates on the basis of sex, or in the alternative, that transgender status is a quasi-suspect class requiring heightened scrutiny. Doc. 140-1 at 34-35. In the Eleventh Circuit, controlling precedent holds "discrimination against a transgender individual because of her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender." *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011).

entitled to protection under the Equal Protection Clause as a separate and distinct class from that of males and females, the same logic would apply.  In other words, the Exclusion creates two groups—those that want a "sex change" and those that do not.  Both groups contain transgender members and non-transgender members, so a "lack of identity" exists between the policy and transgender status.  Thus, in the context of the Equal Protection Clause, the Exclusion does not facially discriminate on the basis of sex.[9]

*2. Whether Lange Can Establish Invidious Discrimination is a Disputed Fact*

Lange argues the Exclusion, although facially neutral pursuant to *Geduldig,* nonetheless violates the Equal Protection Clause because it has "a disproportionate impact on transgender individuals and [was] motivated by discriminatory intent."  Doc. 187 at 20.  Determining discriminatory intent is guided by an eight-factor test: "(1) the impact of the challenged law; (2) the historical background; (3) the specific sequence of events leading up to its passage; (4) procedural and substantive departures; … (5) the contemporary statements and actions of key legislators; … (6) the foreseeability of the disparate impact; (7) knowledge of that impact; and (8) the availability of less discriminatory alternatives."  *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1373 (11th Cir. 2022) (cleaned up) (quoting *Greater Birmingham Ministries v. Sec'y of State for Ala.*, 992 F.3d 1299, 1322 (11th Cir. 2021)).

---

[9] *Glenn* observed that the analysis to determine whether an employer's actions were sex discrimination is the same under the Equal Protection Clause and Title VII.  663 F.3d at 1321 ("If this were a Title VII case, the analysis would end here") (citing *Lewis v. Smith*, 731 F.2d 1535, 1537-38 (11th Cir.1984)).  Certainly, there are cases where this may hold true.  But *Glenn* has no bearing on the issue of whether an insurance exclusion based on a medical procedure that only one sex can undergo is facially discriminatory under the Equal Protection Clause because *Geduldig* already provides the answer.  417 U.S. at 496 n.20.

The parties do not address all eight factors.  But after a careful review of the record, it is clear material disputes of fact preclude summary judgment for any of the parties.

**The Impact of the Challenged Law**.  The impact of the Exclusion is no secret—the defendants admit "that the only Health Plan participants impacted by the Exclusion are transgender people seeking a 'sex change.'"  Docs. 179-3 ¶ 78; 195 ¶ 78.  And Lange is the only openly transgender member of the defendants' health insurance plan.  Docs. 179-3 ¶ 30; 195 ¶ 30.  But while "impact provides an important starting point, purposeful discrimination is the condition that offends the Constitution."  *Feeney*, 442 U.S. at 274 (cleaned up).

**The Historical Background and the Specific Sequence of Events Leading Up to the Exclusion**.  There is no direct evidence shedding light on why the Exclusion was adopted in 1998.[10]  One reason could have been cost control.  Certainly, the County *now* professes concern about costs, but that argument is undercut by the undisputed fact that the County built its cost defense after the fact.  *See* Docs. 179-3 ¶ 135; 195 ¶ 135.  And the Exclusion impacts only transgender individuals—that provides some circumstantial evidence of intentional discrimination.

**Procedural and Substantive Departures**.  The County chose not to accept the non-discrimination mandate and instead maintained the Exclusion notwithstanding Anthem's recommendation that it be removed.  Docs. 179-3 ¶ 91; 195 ¶ 91.  Of course,

---

[10] The Court refers here to direct and circumstantial evidence in the general sense, not in the *McDonnell Douglas* sense.  *See, e,g., Eleventh Circuit Pattern Jury Instructions (Civil Cases)* 3.3 (2022) ("There's no legal difference in the weight you may give to either direct or circumstantial evidence."); *see also United States v. Barnette*, 800 F.2d 1558, 1566 (11th Cir. 1986), *reh'g denied*, 807 F.2d 999 (11th Cir. 1986), *cert. denied*, 480 U.S. 935 (1987) (noting that the "test for evaluating circumstantial evidence is the same as in evaluating direct evidence") (citing *United States v. Henderson*, 693 F.2d 1028, 1030 (11th Cir. 1982)).

the mandate arose from § 1557 of the Affordable Care Act, and the County concluded

that its self-funded plan did not fall within the mandate's scope.  Doc. 180 at 3.  Still,

Lange contends the mandate, even if technically not applicable, substantively gave

notice to the County that the Exclusion was discriminatory, yet the County maintained—

or reinstated—the Exclusion nonetheless.  Doc. 140-1 at 29.  Similarly, Lange argues

the County's refusal to consider an exception for Lange's "sex change" surgery

demonstrates discriminatory intent.  *Id.* at 30.

**The Contemporary Statements and Actions of Key Legislators**.  Sheriff

Talton didn't "believe in sex changes," and the County didn't consider the cost of

removing the Exclusion before it declined to do so.  Docs. 179-3 ¶¶ 103, 174; 195 ¶¶

103, 174.  On the other hand, because annual plan costs rose by over 17% in 2018–

2019 it could be that the County wasn't interested in taking any action that would cause

it to pay any more than it was already obligated to pay under the existing terms of the

health insurance plan.  *See* Docs. 137-1 ¶ 37; 178-1 ¶ 37.

**The Foreseeability of the Impact and Knowledge of the Impact**.  These

factors tend to favor Lange.  It is undisputed the Exclusion affected only transgender

members, Lange is the only openly transgender member, and the County, based on the

Exclusion, has refused to authorize medically necessary treatment.

**The Availability of Less Discriminatory Alternatives**.  There is no evidence

the County considered less discriminatory alternatives.

In sum, the facts are hotly disputed.  The Court cannot say as a matter of law

whether, under the Equal Protection Clause, the adoption and maintenance of the

Exclusion was motivated by discriminatory intent.  The parties' motions for summary judgment (Docs. 136; 137; 140) on equal protection grounds are **DENIED**.[11]

**C. Lange is Entitled to Partial Summary Judgment on Her Title VII Claim**

At first look, it may seem odd that the question of whether the Exclusion violates the Equal Protection Clause is one of fact while the question of whether the Exclusion violates Title VII can be decided as a matter of law.  Whether odd or not, the reason is clear— *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731 (2020).

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Sex discrimination under Title VII includes discrimination based on sexual orientation and discrimination based on gender stereotyping because "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex."  *Bostock*, 140 S. Ct. at 1741.  And as *Bostock* makes clear, "because of" sex means that "a particular outcome would not have happened 'but for' the purported cause."  *Id.* at 1739.  Denying healthcare coverage "because of" sex unquestionably violates Title VII because those benefits are "compensation, terms, conditions, or privileges of employment" under the Act.  *Newport News*, 462 U.S. at 682 (quoting 42 U.S.C. § 2000e-2(a)(1)); *see also Manhart*, 435 U.S. at 710 ("[T]here is no reason to believe that Congress intended a

---

[11] Because there is a genuine dispute of material fact as to whether the adoption and maintenance of the Exclusion was done with discriminatory intent, the Court does not reach the question of whether the Exclusion would subsequently survive intermediate scrutiny.

special definition of discrimination in the context of employee group insurance coverage.").

A facially discriminatory employer action against a member of a protected class violates Title VII.[12]  *Johnson Controls, Inc.*, 499 U.S. at 206.  And if an adverse employment action is facially discriminatory, the employer's intent is immaterial—"the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect."  *Id.* at 199.  Here, it is undisputed that the Exclusion is facially discriminatory.

The relevant facts are neatly summarized in Lange's Statements of Material Fact 77 and 78.

> **77. The Exclusion denies coverage for procedures and treatments that would otherwise be covered if provided in connection with a different diagnosis.**  *See* Grant Decl., Ex. A Carter Dep. at 6:7-13 (agreeing that "without an exclusion, gender confirmation surgery would be covered under a health plan administered by Anthem if it was medically necessary"); *id.* at 35:9-15 (Q: "Would exclusion 57 exclude a mastectomy sought for cancer treatment?" A: "No." Q: "But would exclusion 57 prevent coverage of a mastectomy if it was used to treat gender dysphoria?" A: "Yes."); 37:9-16 (Q: "Exclusion 26 would not exclude hormone replacement therapy to treat menopause?" A: "No, not as I understand it." Q: "But would exclusion 26 prevent hormone replacement therapy if used to treat gender dysphoria?" A: "As I understand it, yes."); 103:10-22 (Q: "Is mental healthcare generally covered under the plan?" A: "Yes." Q: "So it becomes not covered when it's related to transgender treatment?" A: "Well, yes [.] When it is because of transgender surgery or whatever it may be, then it is not covered."); Grant Decl., Ex. F Clark Dep. at 100:6-10 (Q: "So were you saying that if [mental health] counseling were done for the purpose of treating gender dysphoria, then it would not be covered because of the exclusion?" A: "Yes."); Grant Decl., Ex. H HC Dep. (B. Holland) at 27:16–20 (Q: "Would any mental health counseling around transitioning be excluded under this exclusion?" A: "I believe it would, if it was specific to transitioning, yes."); Grant Decl., Ex. B Sheriff Talton Dep. at 55:

---

[12] The only exception is if the employer can establish a bona fide occupational qualification ("BFOQ") justifying the action.  *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 206 (1991).  "To prove a BFOQ, the employer must show that [the protected characteristic] is a qualification 'reasonably necessary to the normal operation of that particular business or enterprise.'"  *Garrett v. Okaloosa Cnty.*, 734 F.2d 621, 624 (11th Cir. 1984) (citation omitted).  Neither Sheriff Talton nor the County argue that a BFOQ justifies the Exclusion.

6–12 (Q: "Do you know if . . . mastectomies, you know, breast surgery . . . in the context of breast cancer, whether that's covered by the policy?" A: "I understand [if] it is about breast cancer, things like that, yes.").

RESPONSE: Disputed to the extent Plaintiff suggests that all treatment for gender dysphoria is excluded.  Plaintiff testified that her endocrinologist visits, psychological visits, and hormones and other medications have been covered by the Health Plan. (Doc. 137-3 at 48:19-49:15.)

Docs. 179-3 ¶ 77; 195 ¶ 77.

**78. Defendants admits "that the only Health Plan participants impacted by the Exclusion are transgender people seeking a 'sex change.'"** Grant Decl., Ex. N Defs.' Resp. to First Set of RFAs at No. 5.

RESPONSE: Undisputed.

Docs. 179-3 ¶ 78; 195 ¶ 78.

The defendants' qualification of their admission of Statement of Fact 77 is well taken.  Notwithstanding the County's apparent belief that the Exclusion bars all treatment for gender dysphoria (a belief providing some evidence of discriminatory intent), that plainly is not what the Exclusion says: it excludes coverage for sex change surgery and drugs related to sex change surgery.  That qualification, however, is immaterial to the question of whether the Exclusion is facially discriminatory.  The fact of the matter is, for example, that the plan pays for mastectomies when medically necessary for cancer treatment but not when mastectomies are medically necessary for sex change surgery.  And the plan pays for hormone replacement therapy medically necessary for the treatment of menopause, but not hormone replacement therapy medically necessary for "sex change."  The undisputed, ultimate point is that the Exclusion applies only to transgender members, and it applies to Lange because she is transgender.

The defendants' effort to mitigate the necessary implication of these admissions is damning.

> Since the plan covers some treatments related to her transgender status, it can only be said that the County's health plan differentiates on the basis of transgender individuals *who want transition surgery.*

Doc. 201 at 3.

Precisely.  Transgender employees cannot get medically necessary treatment for "sex change" medical care because they are transgender.  On these undisputed facts, the implication of *Bostock* is clear.

In *Bostock*, the Supreme Court recognized that Title VII delivers a message "equally simple and momentous: [a]n individual's … transgender status is not relevant to employment decisions."  140 S. Ct. at 1741.  Since the Supreme Court's decision, the defendants have struggled to marshal responses to this clear message.  For example, *Bostock* had not been decided when the defendants moved to dismiss Lange's complaint, but it had when the Court heard oral argument on the motions.  At that hearing, the following exchange took place:

> THE COURT: So let me be sure.  I think in your initial brief you raised the argument that this particular exclusion is not a Title VII violation because it impacts both male and female transgender people.  You don't make that argument anymore?
>
> COUNSEL: Your Honor, I think *Bostock* changes the landscape in that regard.  I think that was a viable argument when we made it back in April or May, whenever that brief was filed initially, before *Bostock* was decided in June.

Doc. 88 at 10:16-24.

But the defendants attempt to resurrect that argument to support their motions for summary judgment.  Specifically, they argue, without even a nod this time to *Bostock*, that the Exclusion cannot be discriminatory because it applies to "participants of both

sexes (regardless of gender)."  Docs. 136-9 at 16, 137-2 at 15.  But, as defendants

properly conceded initially, *Bostock* precludes that argument:

> Nor is it a defense for an employer to say it discriminates against both men and women because of sex.  This statute works to protect individuals of both sexes from discrimination, and does so equally.  So an employer who fires a woman, Hannah, because she is insufficiently feminine and also fires a man, Bob, for being insufficiently masculine may treat men and women as groups more or less equally.  But in *both* cases the employer fires an individual in part because of sex.  Instead of avoiding Title VII exposure, this employer doubles it.

140 S. Ct. at 1741.

Ignoring *Bostock* doesn't make it go away.  Yet the defendants' main briefs

relegate *Bostock* to a footnote in which they argue that the Supreme Court did not

create a new suspect class, but rather:

> the Supreme Court broadened the understanding of what amounts to "sex" discrimination.  Thus, for purposes of her Title VII claim, the issue is not whether the sex reassignment surgery exclusion discriminates on the basis of transgender status; Plaintiff must show it discriminates on the basis of sex.

Docs. 136-9 at 16 n.10; 137-2 at 14-15 n.11.

The defendants' point is not clear, but *Bostock* covers any possible intended

point—discrimination on the basis of transgender status is discrimination on the basis of

sex and is a violation of Title VII.

Given the import of the undisputed facts and the defendants' failure to address

*Bostock* in any meaningful way, the Court requested supplemental briefing on the

following question:

> Whether an exclusion in an employee healthcare benefit plan that excludes medically necessary coverage because of transgender status necessarily is a violation of Title VII.

Doc. 200.

The defendants' supplemental brief is telling.  They begin by acknowledging that sex "is deemed to include transgender status, and, therefore, an employer who takes an adverse employment action against 'an individual *merely for being* … transgender defies [Title VII].'"  Doc. 201 at 1.  The defendants do not explain why they emphasize "merely," but the Court notes that *Bostock* confirms that Title VII requires only "but for" causation.[13]  As framed, the issue for supplemental briefing clearly encompasses but-for causation.

The defendants then argue that there are only two "sets of circumstances in which a health plan could discriminate on the basis of … transgender status in violation of Title VII, neither of which is present in this case."  Doc. 201 at 1-2.  First, the defendants argue a plan violates Title VII if it "offer[s] a *different* coverage package to participants based on their sex or transgender status."  *Id.* at 2.  Second, "a plan violates Title VII if it *completely* excludes coverage for transgender care."  *Id.*  Because Lange has been offered the same coverage as other participants and the plan covers some treatment relating to Lange's transgender status, the defendants conclude the Exclusion is not facially discriminatory.  *Id.*  Under *Bostock*, neither argument has merit.

The defendants' first argument fails on its face.  The suggestion that an employer with a single health insurance plan could fill the plan with discriminatory exclusions and avoid Title VII liability because the employer offered that one "coverage package" to all employees lacks any merit.  The two cases defendants cite to support their argument make that clear.  In *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, the Supreme

---

[13] "When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision."  *Bostock*, 140 S. Ct. at 1739.  Indeed, if "the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law."  *Id.*

Court held that a health insurance plan that provided different pregnancy benefits to female employees than to spouses of male employees violated Title VII.  462 U.S. at 685.  And in *City of Los Angeles v. Manhart*, the Supreme Court held that a pension plan requiring higher contributions from females because females live longer, violated Title VII notwithstanding the actuarial soundness of the scheme—charging women higher premiums because they are women violated Title VII.[14]  435 U.S. at 709.  Neither case remotely supports the proposition that health insurance plans run afoul of Title VII only if an employer provides "different coverage packages."  As the Supreme Court said in *Manhart*, there is no "special definition of discrimination" for employee benefits plans.[15]  435 U.S. at 710.

The defendants' second argument—the Exclusion is lawful because it excludes only some treatment because of transgender status—has, if possible, even less merit. For authority, the defendants cite recent district court cases finding unlawful insurance

---

[14] The defendants' first argument actually appears to be a strained reading of *General Electric Company v. Gilbert*, 429 U.S. 125 (1976).  It is instructive to examine *Gilbert*.  There, the Court upheld an exclusion in a disability plan for women unable to work because of pregnancy or childbirth.  The Court reasoned the plan did not classify by "gender as such," because one of the two groups comprised "non-pregnant persons" and thus "included members of both sexes."  *Id.* at 134-35.  The Court concluded the exclusion alone was not proof of discrimination against women.  That reasoning, of course, is taken directly from *Geduldig's* equal protection analysis.  The dissent in *Gilbert* took issue with the majority's assumption "that the Fourteenth Amendment standard of discrimination is coterminous with that applicable to Title VII," in part because the "word 'discriminate' does not appear in the Equal Protection Clause."  *Id.* at 154 n.6 (Brennan, J., dissenting); *id.* at 160-61 (Stevens, J., dissenting).  In other words, the *Gilbert* dissenters argued the majority improperly imported *Geduldig* into Title VII.  Congress legislatively overruled *Gilbert,* and the Supreme Court in *Newport News* made clear the extent of *Gilbert's* abrogation.  Congress, the Supreme Court concluded, not only overturned *Gilbert*, but it also made clear that its *Geduldig*-based reasoning had no place in Title VII analysis.  Thus, a benefit plan that provides less coverage because of sex violates Title VII.  That is precisely what the County's health insurance plan does.

[15] To state the obvious, cost savings cannot justify a facially discriminatory policy.  "[N]either Congress nor the courts have recognized [a cost justification] defense under Title VII."  *Manhart*, 435 U.S.at 717; *see also Newport News*, 462 U.S. at 685 n.26 ("[No cost justification] is recognized under Title VII once discrimination has been shown.").  Although the parties debate whether the County's professed desire to save money is relevant to disprove discriminatory intent or to provide a legitimate nondiscriminatory reason appropriate in a *McDonnell Douglas* analysis, that debate has no place here.

plan exclusions for transgender healthcare but argue these cases turn on the blanket exclusion of benefits for transgender-related medical care.  *See* Doc. 201 at 2-3.  As Lange points out, they do no such thing.[16]  Also, this argument is simply a rearranged version of the first argument—an employer, the defendants maintain, can lawfully refuse to pay benefits because of transgender status for some conditions as long as it pays benefits to transgenders for other services.  Title VII does not exempt "partial" violations.  *See* 42 U.S.C. § 2000e-2(a)(1).

In short, the defendants can't find a *Bostock* workaround.  That is understandable.  The Exclusion plainly discriminates because of transgender status.  Accordingly, Lange's motion for summary judgment (Doc. 140) on Title VII grounds as to Sheriff Talton and the County is **GRANTED in part**.  Lange does not address appropriate relief.  That issue remains.

## D. Lange's ADA Claim Fails

Finally, Lange alleges the Exclusion discriminates on the basis of her gender dysphoria and thus violates Title I of the ADA.  Doc. 140-1 at 21, 37-45.  Congress enacted the ADA in 1990 to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).  Title I of the ADA prohibits certain discrimination because of disability in employment settings.  *Id.* §§ 12111-12117.  But the ADA does not cover all disabilities.  Specifically, the ADA excludes from the definition of disability "gender identity disorders

---

[16] For example, in *Fletcher v. Alaska*—a case decided three months before *Bostock*—the district court held a state health insurance policy that excluded coverage for sex reassignment surgery was facially discriminatory under Title VII.  443 F. Supp. 3d 1024, 1030 (D. Alaska 2020).  *Fletcher* did not turn on a partial versus a blanket exclusion, but rather on the simple principle that because the plaintiff "was treated differently because of her natal sex," that is "discrimination because of sex and makes defendant's formal policy … facially discriminatory."  *Id.*

not resulting from physical impairments." *Id.* § 12211(b)(1).  Lange contends that because the text of 42 U.S.C. § 12211(b) makes no express mention of gender dysphoria, that condition is not excluded.  Doc. 178 at 38.  And even if the ADA's gender identity disorders exclusion did apply to gender dysphoria, Lange argues she has sufficient evidence to demonstrate her condition resulted from a physical impairment.  Both arguments are without merit.

    *1. Gender Dysphoria is Subject to the ADA's Gender Identity Disorders Exclusion*

    The exclusionary language of the ADA at issue has not been amended since it was enacted in 1990.  42 U.S.C. § 12211(b).  While not explicitly mentioned by Lange, her argument that gender dysphoria is not subject to the exclusion appears to rest on the "interpretive canon, *expressio unius est exclusio alterius*, 'expressing one item of [an] associated group or series excludes another left unmentioned.'" *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002) (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)).  In other words, because the ADA's exclusionary language makes no mention of gender dysphoria, gender dysphoria is not subject to the exclusion.

    "The force of any negative implication, however, depends on context." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013).  Indeed, "the *expressio unius* canon does not apply 'unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.'" *Id.* (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)).  That didn't happen here because gender dysphoria first appeared as a diagnosis in 2013 when the American Psychiatric Association published the Fifth Edition of its Diagnostic and Statistical Manual of Mental Disorders ("DSM-V").  *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental*

*Disorders – Fifth Edition*, at 451 (2013).  So regardless of whether gender dysphoria is a "replacement diagnosis," as the defendants argue, or a "new and distinct" diagnosis, as Lange contends, the fact that it was not mentioned in the exclusionary language of the ADA is not determinative because the diagnosis did not exist at the time the Act was written.  *See Marx*, 568 U.S. at 381.

More fundamentally, Lange's statutory construct builds on a false premise.  She argues the diagnosis of gender dysphoria is not the same as the diagnosis of gender identity disorder.  But Congress did not limit the exclusion to a single diagnosis or a single condition.  Rather, Congress excluded from the coverage of the ADA "gender identity disorders."  42 U.S.C. § 12211(b)(1).  There is no reason to think Congress's use of the descriptive term "gender identity disorders" was an accident.  The Third Edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-III")—the operative version at the time the ADA was drafted—used the same term.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders – Third Edition*, at 261 (1980).  The DSM-III defined "gender identity disorders" as one of four groups of "psychosexual disorders."  *Id*.  Under the DSM-III, the "gender identity disorders" subclass of psychosexual disorders was "characterized by the individual's feelings of discomfort and inappropriateness about his or her anatomic sex and by persistent behaviors generally associated with the other sex."  *Id*.  The DSM-III further defined the "essential feature" of the gender identity disorders subclass as "an incongruence between anatomic sex and gender identity."  *Id*.  The descriptive term

used in the DSM-III clearly includes the subsequently refined specific diagnosis of gender dysphoria.[17]

The DSM-V confirms this:

> *Gender dysphoria* refers to the distress that may accompany the incongruence between one's experienced or expressed gender and one's assigned gender. Although not all individuals will experience distress as a result of such incongruence, many are distressed if the desired physical interventions by means of hormones and / or surgery are not available. The current term is more descriptive than the previous DSM-IV term gender identity disorder and focuses on dysphoria as the clinical problem, not identity per se.

*Id.* at 451.

Thus, the "more descriptive" gender dysphoria emphasizes the "clinical problem" rather than on the "identity per se." But the focus of the new term didn't change—"the incongruence between one's experienced or expressed gender and one's assigned gender." Clearly "gender identity disorders," as used in the ADA, and for that matter in the DSM-III, includes within its scope the condition the DSM-V calls "gender dysphoria."

Lange argues this conclusion must be avoided because doing so would raise "a serious doubt of constitutionality" under the Equal Protection Clause. Doc. 178 at 40 (citing *Doe v. Mass. Dep't of Corr.*, 2018 WL 2994403, at *5-7 (D. Mass. June 14, 2018)). Not true. Aside from citing some legislative history in a footnote, Lange makes no real effort to show that the ADA's gender identity disorder exclusion violates the Equal Protection Clause and thus has not carried her burden necessary for the Court to make such a finding. Doc. 178 at 40 n.7; *see Panama City Med. Diagnostic Ltd. v.*

---

[17] The specific term "gender identity disorder" first appeared as an independent condition in the DSM-IV which was not published until 1994, four years after the ADA was enacted. *See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders – Fourth Edition*, at 532-38 (1994).

*Williams*, 13 F.3d 1541, 1547 (11th Cir. 1994).  Accordingly, Lange's ADA claim only survives if her gender dysphoria is the result of a physical impairment.

### 2. Lange Cannot Establish that her Gender Dysphoria Results from a Physical Impairment

The DSM-V makes clear that gender dysphoria is a mental impairment, which Lange acknowledges.  Doc. 140-1 at 38-39.  But she argues gender dysphoria is also a "physical impairment."  *Id.* at 38.  "Specifically, the condition is the result of an atypical interaction of the endocrine system and the neurological system."  *Id.*  However, the "evidence" offered to support this conclusion is nothing more than an expert's recitation of literature suggesting a *possible* influence of sex hormones on the developing fetal brain as a factor in gender dysphoria.  *See* Doc. 144-1 ¶¶ 18, 19.  The expert's report acknowledges that "the specific mechanisms guiding the biological underpinnings of gender identity are not entirely understood."  *Id.* ¶ 19.  But based on that not entirely understood mechanism(s), the expert's report cites an "evolving consensus that being transgender is not a mental health disorder."  *Id.*  This is not even an *ipse dixit,* it is an evolving possible *ipse dixit.*

Even if the Court were to accept Lange's expert report at face value, there is nothing in that report or anywhere else in the record suggesting *Lange's* gender dysphoria results from a "physical impairment."  *See* Doc. 144-1.  Nor does Lange address the kind of "physical impairments" required by the ADA.[18]

---

[18] At least one commentator has suggested that "physical condition" means just that—a manifest physical condition that causes one's gender identity disorder.  Thus, "the presence of a physical condition related to gender identity disorder, such as having undescended testicles, missing ovaries, hermaphroditic conditions, genetic anomalies, or an androgen receptor disorder" would qualify as a disability under the Act.  Jones, "Section 504 of the Rehabilitation Act of 1973: A Double-Edged Sword for the Protection of Students with Gender Identity Disorder," 25 Wis. J.L. Gender & Soc'y 353 (2010).

In short, Lange has submitted no evidence that her gender dysphoria results from a physical impairment, and her ADA claim fails.  Accordingly, the defendants' motions for summary judgment (Docs. 136; 137) as to Lange's ADA claim are **GRANTED**.

## IV. CONCLUSION

Based on the foregoing, Lange's motion for summary judgment (Doc. 140) is **GRANTED in part.**  She has established as a matter of law that the Exclusion is facially discriminatory and thus violates Title VII, leaving only the issue of appropriate relief. The defendants' motions for summary judgment (Docs. 136; 137) are **GRANTED** as to Lange's ADA claim because she has not established her gender dysphoria is the result of a physical impairment.  Lange's equal protection claim will proceed to trial because there are numerous disputes of fact as to whether the Exclusion was adopted and maintained with a discriminatory intent.  Thus, the parties' cross motions for summary judgment on that claim (Docs. 136; 137; 140) are **DENIED**.[19]

**SO ORDERED**, this 2nd day of June, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[19] Because this Order moots some, if not all, of the defendants' *Daubert* motions, those motions (Docs. 129; 130; 132; 133; 142) are **DENIED without prejudice**.  The parties shall confer regarding what issues remain.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

|  |  |  |
|---|---|---|
| **ANNA LANGE,** | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Civil Action No. 5:19-CV-00392-MTT** |
| | ) | |
| **HOUSTON COUNTY, GEORGIA, et al,** | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| | ) | |

<u>**ORDER FOR PERMANENT INJUNCTIVE AND DECLARATORY RELIEF**</u>

The parties jointly prepared, and the Court now approves, the following order.

Plaintiff Sergeant Anna Lange filed an amended complaint seeking, among other things, declaratory and injunctive relief against Defendants Houston County, Georgia (the "County") and Sheriff Cullen Talton in his official capacity in April 2020.  Doc. 56.  The Court awarded Sgt. Lange summary judgment on her claim arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), in an opinion dated June 2, 2022.  Doc. 205.  In light of the findings of undisputed fact and conclusions of law in the Court's opinion, the Court hereby **ORDERS** the following injunctive and declaratory relief pursuant to 42 U.S.C. § 2000e-5(g):

1.  The Court declares that the exclusions of coverage for "[d]rugs for sex change surgery" and "[s]ervices and supplies for a sex change and/or the reversal of a sex change" (together, the "Exclusion") in the County's employee health plan (the "Health Plan") violate Title VII;

2.  The Court permanently enjoins Defendants from any further enforcement or application of the Exclusion;

3.  Within 14 days of this Order, Defendants shall:

    a.  Notify Anthem Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. ("Anthem"), the Health Plan's third-party administrator, of this order, and take all necessary steps to ensure Anthem ceases to enforce or apply the Exclusion or to maintain it in the Health Plan;

    b.  Defendants shall direct Anthem to process any claim for Sgt. Lange's vaginoplasty, including all associated charges for services, supplies, and facilities, and all "Medically Necessary pre-operative and post-operative care" (as that term is used in the Health Plan) as indicated by her treating providers, in accordance with the terms, conditions, and limitations of the Health Plan as they stood in 2019 (except as modified herein).

This Court retains jurisdiction of this action, including Sgt. Lange's Equal Protection claim that is currently pending and set for trial, for the purpose of enforcing or modifying this Order and for the purpose of granting such additional relief as may be necessary or appropriate.

   **SO ORDERED**, this 3rd day of October, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
