No. 22-13626

# In the United States Court of Appeals
## for the Eleventh Circuit

**Anna Lange**,
*Plaintiff-Appellee*

v.

**Houston County, Georgia and
Houston County Sheriff Cullen Talton**,
*Defendants-Appellants*

On Appeal from the United States District Court
for the Middle District of Georgia
No. 5:19-cv-00392-MTT

## BRIEF OF PLAINTIFF-APPELLEE

Kenneth E. Barton III
Ga. State Bar No. 301171
M. Devlin Cooper
Ga. State Bar No. 142447
Cooper, Barton & Cooper, LLP
170 College Street
Macon, GA 31201
(478) 841-9007 tel.
(478) 841-9002 fax
keb@cooperbarton.com
mdc@cooperbarton.com

David Brown
Gabriel Arkles
Transgender Legal Defense Education Fund, Inc.
520 8th Ave. Ste. 2204
New York, NY 10018
(646) 862-9396 tel.
(646) 993-1686 fax
dbrown@transgenderlegal.org
garkles@transgenderlegal.org

Wesley R. Powell
Jill K. Grant*
Catherine Fata*
Amanda M. Payne*
Willkie Farr & Gallagher, LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000 tel.
(212) 728-8111 fax
wpowell@willkie.com
jgrant@willkie.com
cfata@willkie.com
apayne@willkie.com

*Counsel for Plaintiff-Appellee*

*admitted pro hac vice

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 28(a)(1) of the Federal Rules of Appellate Procedure and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, the Appellee, Sgt. Anna Lange submits this list, which includes the district court trial judge, and all attorneys, persons, associations of persons, firms, or partnerships that have an interest in the outcome of this review:

1.  Arkles, Gabriel, Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

2.  Barton, Kenneth E., Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

3.  Brown, David, Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

4.  Cooper, Barton & Cooper, LLP, *Attorneys for Plaintiff-Appellee, Sgt. Anna Lange*

5.  Cooper, M. Devlin, Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

6.  Deveney, William D., Esq., *Attorney for Defendant-Appellants, Houston County, Georgia and Houston County Sheriff, Cullen Talton*

7.  Elarbee, Thompson, Sapp & Wilson, LLP, *Attorneys for Defendant-Appellants, Houston County, Georgia and Houston County Sheriff, Cullen Talton*

8.  Fata, Catherine E., Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

9.  Gignilliat, R. Read, Esq., *Attorney for Defendant-Appellants, Houston County, Georgia and Houston County Sheriff, Cullen Talton*

10. Grant, Jill K., Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

11. Houston County, Georgia, *Defendant-Appellant*

12. Houston County Sheriff, Cullen Talton, *Defendant-Appellant*

13. Lail, Patrick L., Esq., *Attorney for Defendant-Appellants, Houston County, Georgia and Houston County Sheriff, Cullen Talton*

14. Lange, Anna, *Plaintiff-Appellee*

15. Morgan, Sharon P., Esq., *Attorney for Defendant-Appellants, Houston County, Georgia and Houston County Sheriff, Cullen Talton*

16. Payne, Amanda M., Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

17. Powell, Wesley R., Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

18. Transgender Legal Defense Education Fund, Inc., *Attorneys for Plaintiff-Appellee, Sgt. Anna Lange*

19. Treadwell, Hon. Marc T., *U.S. District Judge, Middle District of Georgia*

20. Willkie, Farr & Gallagher, LLP, *Attorneys for Plaintiff-Appellee, Sgt. Anna Lange*

No. 22-13626, Lange v. Houston County, et al.

Pursuant to Eleventh Circuit Rule 26.1-3(b), Plaintiff-Appellee, Sgt. Anna Lange, certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ *Wesley R. Powell*

*Counsel for Plaintiff-Appellee*

## PLAINTIFF-APPELLEE'S STATEMENT REGARDING ORAL ARGUMENT

Plaintiff Sgt. Anna Lange does not oppose Defendants' request for oral argument.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES.............................................................2

STATEMENT OF THE CASE...................................................................2

   I.    THE PARTIES ...........................................................................4

      A.    Plaintiff-Appellee Sergeant Anna Lange. ......................4

      B.    Defendant-Appellant Houston County, Georgia.............5

      C.    Defendant-Appellant Sheriff Cullen Talton (In His Official Capacity). ............................................................5

   II.    FACTS .........................................................................................5

      A.    Gender Dysphoria .........................................................5

      B.    The Health Plan.............................................................7

      C.    The Exclusion................................................................8

      D.    Sgt. Lange's Transition and Denial of Coverage for Bottom Surgery .........................................................8

      E.    Sgt. Lange Attempts to Avoid Litigation.....................10

      F.    EEOC Proceedings and the Commissioners Meeting...................11

      G.    Sgt. Lange Brings this Lawsuit ....................................12

  III.    THE DISTRICT COURT PROCEEDINGS ...........................12

      A.    Defendants' Motion to Dismiss ...................................13

      B.    Summary Judgment Ruling...........................................13

      C.    Defendants' Motion for Interlocutory Review .............14

      D.    The Title VII Damages Trial.........................................15

      E.    The Permanent Injunction .............................................15

      F.    Defendants' Motion to Stay ..........................................16

STANDARD OF REVIEW ....................................................................17

SUMMARY OF THE ARGUMENT .....................................................18

ARGUMENT ..........................................................................................21

   I.    THE DISTRICT COURT CORRECTLY HELD THAT THE EXCLUSION VIOLATES TITLE VII. ....................................21

A. The Exclusion Facially Discriminates on the Basis of Sex in Violation of Title VII. .................................................................21

B. Because the Exclusion is Facially Discriminatory, the District Court Correctly Held That Sgt. Lange Needs No Further Proof of Intentional Discrimination. .........................................................26

C. The District Court Properly Rejected Defendants' Argument.......28

D. The District Court Correctly Applied Supreme Court Precedent in Finding the Exclusion Facially Discriminatory. ............................31

E. Defendants' Remaining Arguments Also Fail. ..............................38

II. THE DISTRICT COURT CORRECTLY HELD THE COUNTY LIABLE UNDER TITLE VII AS THE SHERIFF'S AGENT. ................40

A. The District Court Correctly Held That An Agency Relationship Exists Between The Sheriff And The County In The Provision Of Health Insurance Benefits. ..........................................................40

B. Defendants Do Not Need to "Admit" to an Agency Relationship for Liability to Attach....................................................................49

III. THE DISTRICT COURT PROPERLY ENTERED A PERMANENT INJUNCTION...........................................................................................50

CONCLUSION .........................................................................................53

CERTIFICATE OF COMPLIANCE .......................................................55

CERTIFICATE OF SERVICE ................................................................56

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*,
57 F.4th 791 (11th Cir. 2022) .......................................................16, 17

*Archer v. Trans/Am. Servs.*
834 F.2d 1570 (11th Cir. 1988) ........................................................49

*Arizona Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*,
463 U.S. 1073 (1983) (Opinion of Marshall, J.)..............................31, 42, 46, 48

*Avirgan v. Hull*,
932 F.2d 1572 (11th Cir. 1991) ........................................................18

*Barrett v. Walker Cnty. Sch. Dist.*,
872 F.3d 1209 (11th Cir. 2017) .................................................17, 51

*Bostock v. Clayton County, Georgia*,
140 S. Ct. 1731 (2020).................................................................*passim*

*Boyden v. Conlin*,
341 F. Supp. 3d 979 (W.D. Wis. 2018) ............................................26

*Boyden v. Conlin*,
No. 17-CV-264-WMC, 2018 WL 6488594 (W.D. Wis. Sept. 24, 2018), ECF No. 213 ........................................................................50

*Burgest v. Colquitt Cty., Georgia*,
177 F. App'x 852 (11th Cir. 2005) ........................................28, 40, 49

*Busby v. Cty. of Orlando*,
931 F.2d 764 (11th Cir. 1991) ........................................................40

*C. P. v. Blue Cross Blue Shield of Ill.*,
3:20-CV-06145-RJB, 2022 WL 17788148 (W.D. Wash. Dec. 19, 2022) ........................................................................................26

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..........................................................................................18

*City of Los Angeles, Dep't of Water & Power v. Manhart*,
435 U.S. 702 (1978) ....................................................................................*passim*

*Clark v. St. Joseph's/Candler Health Sys., Inc.*,
No. 4:05-CV-119, 2006 WL 2228929 (S.D. Ga. Aug. 3, 2006) ..................48, 49

*Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*,
421 F.3d 170 (3d Cir. 2005) .................................................................................27

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*,
140 S. Ct. 1009 (2020) ..................................................................................32, 35

*Connecticut v. Teal*,
457 U.S. 440 (1982) ..............................................................................................38

*E.E.O.C. v. Joe's Stone Crab, Inc.*,
220 F.3d 1263 (11th Cir. 2000) ...........................................................................27

*E.E.O.C. v. R.G. &. G.R. Harris Funeral Homes, Inc.*,
884 F.3d 560 (6th Cir. 2018) ..........................................................25, 31, 42, 50

*E.E.O.C. v. Wooster Brush Co.*,
727 F.2d 566 (6th Cir. 1984) ...............................................................................48

*Fain v. Crouch*,
No. 3:20-0740, 2022 WL 3051015 (S.D. W. Va. Aug. 2, 2022) .......................26

*Flack v. Wis. Dep't of Health Servs.*,
395 F. Supp. 3d 1001 (W.D. Wis. 2019) .............................................................26

*Flack v. Wis. Dep't of Health Servs.*,
Case No. 18-cv-309-wmc (W.D. Wis. Oct. 31, 2019), ECF No. 248 ...............50

*Fletcher v. Alaska*,
443 F. Supp. 3d 1024 (D. Alaska 2020) ..............................................................26

*Frank v. United Airlines, Inc.*,
216 F.3d 845 (9th Cir. 2000) ...............................................................................27

*Glenn v. Brumby*,
  663 F.3d 1312 (11th Cir. 2011) .......................................................22, 24, 25, 31

*Goldsmith v. City of Atmore*,
  996 F.2d 1155 (11th Cir. 1993) .........................................................................41

*Grech v. Clayton County*,
  335 F.3d 1326 (11th Cir. 2005) (en banc) ........................................................48

*Hannahs v. New York State Teachers' Ret. Sys.*,
  Civil Action No. 78-Civ. 2541-CSH, 1981 WL 226 (S.D.N.Y. July
  10, 1981) ......................................................................................................44, 45

*Int'l Brotherhood of Teamsters v. United States*,
  431 U.S. 324 (1977).....................................................................................47, 50

*Int'l Union, United Auto. Aerospace & Agric. Implement Workers v.
  Johnson Controls, Inc.*,
  499 U.S. 187 (1991).................................................................................*passim*

*Kadel v. Folwell*,
  1:19CV272, 2022 WL 3226731 (M.D.N.C. Aug. 10, 2022).............................26

*KH Outdoor, LLC v. City of Trussville*,
  458 F.3d 1261 (11th Cir. 2006) .........................................................................51

*Lange v. Houston County, Georgia*,
  608 F. Supp. 3d 1340 (M.D. Ga. 2022) .......................................................14, 26

*Lyes v. City of Riviera Beach, Fla.*,
  166 F.3d 1332 (11th Cir. 1999) (en banc) ...................................................48, 49

*Manders v. Lee*,
  338 F.3d 1304 (11th Cir. 2003) (en banc) ........................................................48

*Miranda v. B & B Cash Grocery Store, Inc.*,
  975 F.2d 1518 (11th Cir. 1992) .........................................................................49

*Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*,
  462 U.S. 669 (1983).................................................................................*passim*

*Peters v. Wayne State*,
  691 F.2d 235 (6th Cir. 1982) ............................................................................48

*Peters v. Wayne State U.*,
463 U.S. 1223 (1983)..........................................................................48

*Phillips v. Martin Marietta Corp.*,
400 U.S. 542 (1971)......................................................................30, 39

*Price Waterhouse v. Hopkins*,
490 U.S. 228 (1989)..............................................................................24

*Ricci v. DeStefano*,
557 U.S. 577 (2009)..............................................................................26

*Schroer v. Billington*,
577 F. Supp. 2d 293 (D.D.C. 2008)......................................................25

*Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n, Inc.*,
881 F.2d 983 (11th Cir. 1989), *vacated on other grounds*, 895 F.2d
711 (11th Cir. 1990)........................................................................1, 17

*Spirt v. Teachers Ins. and Annuity Ass'n*,
691 F.2d 1054 (2d Cir. 1982), *vacated on other grounds* 463 U.S.
1223 (1983), *reinstated in relevant part* 735 F.2d 23 (2d Cir. 1984) ..........43, 46

*Terbovitz v. Fiscal Ct. of Adair Cnty., Ky.*,
825 F.2d 111 (6th Cir. 1987) ..............................................................43

*Whitaker v. Kenosha Unified Sch. Dist. No.1 Bd. of Educ.*,
858 F.3d 1034 (7th Cir. 2017) ............................................................23

*Williams v. Cty. of Montgomery*,
742 F.2d 586 (11th Cir. 1984) *cert. denied*, 470 U.S. 1053 (1985) ...........*passim*

*Young v. United Parcel Serv., Inc.*,
575 U.S. 206 (2015)....................................................................32, 36, 37

*Zaklama v. Mt. Sinai Med. Ctr.*,
842 F.2d 291 (11th Cir. 1988) ............................................................41

**Statutes**

28 U.S.C. § 1292(a)(1)........................................................................1, 17

28 U.S.C. § 1292(b) ...............................................................................14

42 U.S.C. § 2000e-2(a)(1)................................................................21, 31

42 U.S.C. § 2000e-2(m) .......................................................................35

42 U.S.C. § 2000e-5(g) .........................................................................15

42 U.S.C. § 2000e(b) .......................................................................20, 41

**Other Authorities**

EEOC Compliance Manual, No. 915.003, 2-III(B)(2)(b)(2000)............................42

Fed. R. App. P. 3(c)(4) ...........................................................................1

Fed. R. Civ. P. 56(c)(1)..........................................................................39

## INTRODUCTION

This case challenges the exclusion of coverage for transgender healthcare in the Houston County, Georgia (the "County") employee health plan (the "Health Plan"), administered by Anthem Blue Cross Blue Shield ("Anthem"). The Health Plan, which Houston County Sheriff Cullen Talton (the "Sheriff") has arranged for the County to provide to his employees, including sheriff's deputy Sgt. Anna Lange, contains a sex-based exclusion for "[d]rugs for sex change surgery," and "[s]ervices and supplies for a sex change" (the "Exclusion"). Thus, through the Exclusion, Defendants deny coverage of medically-necessary healthcare to Health Plan members precisely because they are transgender—even where they cover the very same care for members who need it for other reasons. As a result, Defendants have denied Sgt. Lange coverage for surgery on the basis of sex in violation of Title VII of the Civil Rights Act of 1964.

## JURISDICTIONAL STATEMENT

This is an appeal from a permanent injunction. Doc. 262. This Court has jurisdiction to review the injunction under 28 U.S.C. § 1292(a)(1). This Court may consider the underlying grant of summary judgment by the district court to the extent necessary to review the permanent injunction or as it otherwise deems appropriate. Fed. R. App. P. 3(c)(4); *Showtime/The Movie Channel, Inc. v. Covered Bridge*

*Condo. Ass'n, Inc.*, 881 F.2d 983, 987 (11th Cir. 1989), *vacated on other grounds*, 895 F.2d 711 (11th Cir. 1990).

## STATEMENT OF THE ISSUES

1.      Whether the district court was correct to enjoin enforcement of the Exclusion as violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., by denying coverage for healthcare because an employee is transgender.

2.      Whether the district court was correct in finding that the County is Sgt. Lange's "employer," as that term is defined in Title VII, based on the agency relationship created by the County's provision of the Health Plan to the Sheriff's employees on his behalf, and was thus properly included in the permanent injunction enjoining enforcement of the Exclusion.

## STATEMENT OF THE CASE

Sgt. Anna Lange is a twenty-six year law enforcement veteran who has served as a deputy in the Sheriff's Office since 2006. She is an exceptional employee and investigator. She is also a transgender woman. This means that, although she was assigned a male sex at birth, her internal knowledge of herself has always been that she is female. The significant suffering and distress caused by this incongruence is a serious medical condition called gender dysphoria. While Sgt. Lange has experienced symptoms of gender dysphoria for most of her life, she was formally

diagnosed by a healthcare provider in 2017. As treatment, she began a gender transition, meaning that she lives fully and openly as a woman, and has taken steps to align her body with her gender identity, including hormone therapy and surgery to feminize her chest. However, she continues to suffer distress; and so, the next, and final, step in her transition is a vaginoplasty, a surgical procedure that will feminize her genitals and which her healthcare providers determined was medically necessary for her in 2018.

However, Sgt. Lange has been unable to obtain this treatment because Defendants have maintained the Exclusion in the Health Plan, against Anthem's recommendation and even though they admit that (1) the care they exclude is medically necessary and (2) cost was not a factor in their decision.

As a result, Sgt. Lange, who cannot afford a vaginoplasty on her law enforcement salary, continues to suffer significant anxiety, depression, and other symptoms of untreated gender dysphoria. She brought suit in hopes of finally having the procedure that she has needed for years. After winning summary judgment and a jury award of damages, Sgt. Lange scheduled her surgery for December 2022. Defendants forced her to cancel by moving to stay the injunction pending the instant appeal. The court granted an interim stay pending decision. The motion was ultimately denied after Sgt. Lange's surgery date had passed. In ruling on the

motion, the district court noted that certain arguments put forth by Defendants were "false" and "irresponsible."

Defendants have now spent well over $1 million in taxpayer dollars on outside counsel in this ligation—some fifty times more than the cost of Sgt. Lange's surgery. Sgt. Lange still remains unable to access the healthcare that she needs.[1]

## I. THE PARTIES.

### A. Plaintiff Sergeant Anna Lange.

Sgt. Lange has been a deputy with the Sheriff's Office since 2006. Doc. 179-3, ¶ 28. She is an exceptional employee who "has performed her duties as an investigator very well." Doc. 205, p. 2. She is also a transgender woman, which means that, although she was assigned a male sex at birth, her internal knowledge of herself has always been that she is female. In 2017, she was formally diagnosed with gender dysphoria, which is the clinical name for the distress caused by the incongruence between one's gender identity and sex assigned at birth. Doc. 205, p. 2. As part of her treatment, she now lives fully and openly as a woman and has taken steps to align her body with her gender identity, including hormone replacement therapy prescribed by her endocrinologist and surgery to feminize her chest. *Id.* However, her transition remains incomplete, and her gender dysphoria only partially

---

[1] It has always been Sgt. Lange's priority to obtain surgery as soon as possible. To that end, following the district court ruling on the Injunction (Doc. 289), she has scheduled a surgery date for October 2023.

treated, because she has not been able to have her prescribed vaginoplasty (or "bottom surgery") due to the Exclusion. This continues to cause her significant suffering and distress. Doc. 205, pp. 2–3.

### B. Defendant Houston County, Georgia.

Houston County is a political subdivision of Georgia governed by the Houston County Board of Commissioners (the "Commissioners"). Doc. 179-3, ¶ 42. The Commissioners are responsible for the Health Plan, which is provided to employees of the County, the Sheriff, and other public agencies. *Id.* at ¶ 44.

### C. Defendant Sheriff Cullen Talton (In His Official Capacity).

Cullen Talton has been the Sheriff of Houston County, Georgia since 1973. *Id.* at ¶ 39. He chose to have the County provide the Health Plan to his employees on his behalf. *Id.* at ¶ 60.

## II. FACTS.

### A. Gender Dysphoria.

Transgender is a term used to describe a person whose gender identity—*i.e.*, their internal sense of the sex they know themselves to be—differs from the sex that they were assigned at birth. Doc. 205, p. 2. This dissonance can cause clinically significant distress or impairment in a person's life. Doc. 179-3, ¶ 2. The medical diagnosis for this distress is gender dysphoria, which can cause debilitating anxiety and depression, self-harm, and suicide if left untreated. Doc. 205, p. 2. But it is treatable via social transition, hormone therapy, and various surgical procedures to

align a person's sex characteristics with the person's gender identity. Docs. 179-3, ¶¶ 7, 10–14; 195, ¶¶ 7, 10–14. Gender dysphoria is a condition that, by definition, only transgender people can have. Doc. 179-3, ¶¶ 1, 3.

Since 1979, the World Professional Association for Transgender Health, a non-profit professional organization devoted to transgender health, has promulgated Standards of Care (the "SOC") for the clinical management of gender dysphoria that reflect the best available scientific evidence and expert consensus for care, including gender-confirming surgery. Doc. 195, ¶ 8. Medical consensus is that surgery is medically necessary for many people with gender dysphoria. Doc. 205, p. 3. Major health professional associations—including the American Medical Association, the Endocrine Society, the American Psychiatric Association, the American Psychological Association, the American College of Physicians, the American Osteopathic Association, and the American College of Obstetrics and Gynecology— endorse insurance coverage of healthcare, in line with the SOC. Doc. 195, ¶ 9. These surgeries are not unique to transgender healthcare; rather, they are the same procedures used to treat multiple conditions. Doc. 195, ¶ 17. For example, surgeons perform vaginoplasties following oncologic resection, injury, infection, or to address congenital conditions. *Id.*

**B.      The Health Plan.**

Since at least 1973, the Sheriff and the County have participated in a voluntary intergovernmental agreement, under which the County provides a range of personnel services to the Sheriff, including the Health Plan.  Doc. 205, p. 3; 179-3, ¶¶ 60–62. The plan is self-funded and administered by Anthem (commonly referred to as an "Administrative Services Only" or "ASO" plan).  Docs. 205, p. 3; 179-3, ¶ 69.

The Health Plan covers "medically necessary" services including "office visits and doctor services," "prescription drugs," "surgical supplies," "inpatient hospital care," and "inpatient professional services," including "surgery" and "general anesthesia."  Doc. 179-3, ¶ 72.  The County sets benefit terms, determines members' premiums and contribution limits, and provides services for the Sheriff, including enrollment and information services and advice regarding the costs of the Health Plan and issues arising from his employees' participation.[2]  Doc. 195, ¶¶ 62, 64.  *See also* Doc. 159-1, p. 8.  There are approximately 1,500 Health Plan members. Doc. 205, p. 3.  The Sheriff provides the largest number of employees to the Health Plan—more than the County itself.  Doc. 179-3, ¶ 68.

---

[2] For example, the Sheriff discussed Sgt. Lange's case with the County Commission's Chair, Tommy Stalnaker.  Doc. 157, pp. 52–53.

## C. The Exclusion.

The Health Plan has contained the Exclusion since at least 1998. Doc. 205, p. 3. It excludes coverage for "[d]rugs for sex change surgery," and "[s]ervices and supplies for a sex change." *Id.* at 3–4.

In September 2016, Anthem notified the County that "the exclusion for gender identity disorders and sex change surgery will be removed from [Anthem's 2017] plans. . ." (the "Nondiscrimination Mandate"). *Id.* at 4. However, Anthem permitted ASO plans to choose to "opt out" of the Nondiscrimination Mandate. *Id.*; Doc. 179-3 ¶¶ 83–85, 91. Although "the County generally follows the recommendation of its third-party administrator as to exclusions," the County chose the opt-out. Doc. 205, p. 4; 179-3, ¶¶ 87–90. That decision was not based on any consideration of medical or cost information related to the Exclusion. Docs. 205, p. 6; 179-3, ¶ 134.

## D. Sgt. Lange's Transition and Denial of Coverage.

On April 18, 2018, Sgt. Lange informed Kenneth Carter, Houston County's Director of Personnel, that she is transgender, and asked whether the Health Plan would cover surgery. Doc. 205, p. 5. Citing the Exclusion, Mr. Carter explained that it would not. *Id.* Later that day, Sgt. Lange met with the Sheriff and Mr. Carter, and told the Sheriff that she is transgender and planned to transition from male to female. The Sheriff asked Mr. Carter, "What the hell is he talking about?" *Id.* The Sheriff also commented, "I don't believe in sex changes." *Id.* That same day, Mr.

Carter emailed Donna Clark, the County's insurance broker, informing her that they "just had the meeting with the sheriff and it went well. I am good with nothing being covered and I think he is also. . . ." Doc. 179-3, ¶ 110.

That same month, Sgt. Lange had surgery to feminize her chest, paying cash. Doc. 205, p. 2. Upon the recommendation of her healthcare provider, she determined that a vaginoplasty would be the next step in her treatment. *Id.* at 3. On September 12, 2018, she contacted Anthem about coverage. Doc. 179-3, ¶ 114. Anthem informed Sgt. Lange that the surgery would be covered, provided that it is "medically necessary" under Anthem's clinical guidelines. Doc. 205, p. 6. As no surgeon was available locally, Sgt. Lange found Dr. Rachel Bluebond-Langner, an Anthem in-network provider in New York. Doc. 179-3, ¶ 117. On November 13, 2018, Sgt. Lange had a consultation with Dr. Bluebond-Langner and her colleague, Dr. Lee Zhao. *Id.* at ¶ 120. They determined that a vaginoplasty is medically necessary for Sgt. Lange's gender dysphoria under Anthem's clinical guidelines. *Id.*; Doc. 205, p. 4. They scheduled her surgery for January 31, 2019, and submitted a pre-authorization request to Anthem. Docs. 157, p. 52; 179-3, ¶ 124.

Upon learning of Sgt. Lange's impending surgery, Mr. Carter and Ms. Clark confirmed the County's opt-out with Anthem, thus maintaining the Exclusion in the

Health Plan and frustrating Sgt. Lange's surgery.[3]  Doc. 205, p. 6.  On November 30, 2018, Anthem informed Sgt. Lange that, due to the Exclusion, her surgery would not be covered.  *Id.*; Doc. 179-3, ¶ 129.

When the County subsequently filled out paperwork confirming its opt-out from the Nondiscrimination Mandate, Docs. 205, p. 6; 179-3, ¶¶ 130, 133; 195, ¶ 130; 140-4, ¶ 28, Anthem required the County to indemnify it and to discuss the opt-out with counsel.  Docs. 205, p. 6, n.1; 179-3, ¶ 155; 195, ¶130; 140-4, ¶ 28.

### E.    Sgt. Lange Attempts to Avoid Litigation.

On December 11, 2018, Sgt. Lange filed an appeal with Anthem, which was later denied.  Docs. 179-3, ¶ 129; 205, p. 6.

On January 6, 2019, Sgt. Lange sent a letter through her attorney to the County, explaining that she was being denied access to medically-necessary healthcare and requesting a negotiation to remove the Exclusion "in lieu of a lawsuit."  Doc. 179-3, ¶ 138.  The County simply forwarded the letter to its liability insurer, stating "we will not move forward with negotiations as indicated in the letter."[4]  *Id.* at ¶ 140.

---

[3] The County asserts it had rejected the Nondiscrimination Mandate prior to that date; at minimum, it appears Anthem had no record of that.  Doc. 205 p. 6.

[4] The County testified that its decision was based on the fact that Sgt. Lange's letter came outside of the time when it usually makes changes to the Health Plan, but that testimony is contradicted by the County's admission that "[t]he Board of Commissioners is permitted to change the [Health P]lan during the plan year if they are so inclined."  Doc. 179-3, ¶ 79.

On February 19, 2019, Sgt. Lange and her attorney attended a regular public Commissioners' meeting to request the Exclusion's removal. Docs. 179-3, ¶¶ 138, 167–173; 205, pp. 6–7. (A few days beforehand, Sgt. Lange told the Sheriff of her intention to request the Exclusion's removal at the meeting, but he took no action. Doc. 179-3, ¶ 165.) At the meeting, the County Attorney stated that the Exclusion would not be removed and instructed the Commissioners not to say anything. Doc. 205, p. 7.

### F. EEOC Proceedings.

As a result, Sgt. Lange filed a charge against the County with the U.S. Equal Employment Opportunity Commission ("EEOC") and was issued a right-to-sue letter on July 8, 2019. Doc. 205, p. 7. On September 20, 2019, Sgt. Lange's counsel made one final request to remove the Exclusion or grant an exception, in advance of the impending deadline to file suit. Doc. 179-3, ¶ 182. The County declined but, for the first time (and only in response to the threat of litigation), requested information from Anthem about the cost of Sgt. Lange's surgery. Docs. 205, p. 7; 179-3, ¶ 188. Anthem provided an estimate of $25,600. Docs. 205 p. 7; 179-3, ¶¶ 189–194.

### G. The Lawsuit.

Sgt. Lange filed suit on October 2, 2019. Doc. 1.

At the November 19, 2019, meeting, the Commissioners voted to maintain the provisions of the Health Plan—including the Exclusion—leaving the plan unchanged for 2020. Docs. 205, p. 7; 179-3, ¶¶ 202–212.

In addition to the denial of her bottom surgery, Sgt. Lange has continued to have routine healthcare coverage denied by Anthem pursuant to the Exclusion. Docs. 195, ¶ 263; 140-4 ¶ 36. For example, on June 12, 2019, she was denied coverage for a routine blood test for monitoring her hormone and medication levels; on October 18, 2021, she was denied coverage for her annual endocrinologist visit. Doc. 195, ¶¶ 265–266; 179-3, ¶ 266.

Sgt. Lange remains unable to obtain a vaginoplasty and thus continues suffering from her gender dysphoria. Doc. 179-3, ¶ 267. She still experiences distress, anxiety, sleeplessness, feelings of depression, and other symptoms, which limit her ability to function socially and professionally. *Id.* at ¶ 268.

Defendants have spent over $1,000,000 of taxpayer money—or about fifty times the cost of Sgt. Lange's surgery—on counsel to litigate this matter. Doc. 289, p. 6, n.2.

## III.   THE DISTRICT COURT PROCEEDINGS.

Sgt. Lange's October 2, 2019 Complaint named Houston County, Georgia; the Houston County Board of Commissioners; each of the Commissioners in their official and individual capacities; and Mr. Carter, in his official capacity. Doc. 1.

Sgt. Lange sought relief under Title VII; the Equal Protection Clauses of the United States and Georgia Constitutions; Section 504 of the Rehabilitation Act; and Titles I and II of the Americans with Disabilities Act ("ADA"). Doc. 56. On April 10, 2020, she filed an Amended Complaint adding the Sheriff as a Defendant in his official and individual capacity. Doc. 56.

### A.    Defendants' Motions to Dismiss.

On May 11, 2020, the Sheriff filed a Motion to Dismiss under Rule 12(b)(1) and the remaining Defendants, including the County, filed a Motion to Dismiss under Rule 12(b)(6). Docs. 61; 62. After briefing and a hearing, on October 30, the court denied dismissal of the Title VII, federal equal protection, and ADA Title I claims against the County and the Sheriff in his official capacity; and dismissed the remaining claims. Doc. 89, p. 36. The County filed a motion for reconsideration, which the district court dismissed on December 12, 2020. Docs. 94, 102.

### B.    Summary Judgment Ruling.

After discovery, on November 3, 2021, the parties moved for summary judgment on all claims.[5] Docs. 136–137; 140. The district court conducted a hearing on February 24, 2022 and then requested supplemental briefing on

---

[5] Sgt. Lange also sought a preliminary injunction, which was initially mooted by the filing of the Amended Complaint, and then ultimately withdrawn after she chose instead to proceed as expeditiously as possible to summary judgment. Docs. 28, 56, 57, 111.

"[w]hether the exclusion in the employee Health care benefit plan that excludes medically necessary coverage because of transgender status necessarily is a violation of Title VII." Docs. 196–197; 200.

On June 2, 2022, after considering all record evidence, the parties' briefing on competing motions for summary judgment, in-person oral argument, and additional briefing on a discrete legal issue requested following argument, the district court held that the Exclusion is facially discriminatory in violation of Title VII and that the County is an "agent" of the Sheriff for purposes of providing the Health Plan. Doc. 205, pp. 12, 28. The district court granted summary judgment for Defendants on Sgt. Lange's remaining ADA claim and denied both motions for summary judgment on her equal protection claim. Doc. 205, pp. 21, 33. The opinion is reported at *Lange v. Houston County, Georgia*, 608 F. Supp. 3d 1340 (M.D. Ga. 2022).

### C.     Defendants' Motion for Interlocutory Review.

On June 16, 2022, Defendants moved to certify the district court's opinion for interlocutory review pursuant to 28 U.S.C. § 1292(b). Doc. 206. Defendants requested that the district court certify two questions: "(1) Under *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020) does a health plan that covers non-surgical treatments needed by transgender individuals, but not transition surgery, constitute a facially discriminatory health plan under Title VII?; and (2) Can a county be treated

as the agent of a sheriff-employer under Title VII when the county does not have or exercise control over hiring, firing, or discipline of a sheriff's employees?"  Doc. 206-1, p. 1.  With the benefit of full briefing and oral argument—at which the court stated that Defendants' argument regarding agency "is borderline frivolous" (Doc. 221, p. 46)—the district court denied the motion.  Doc. 220.

**D.      The Title VII Damages Trial.**

On September 27, 2022, following a jury trial, Sgt. Lange was awarded $60,000 in compensatory damages under Title VII for her emotional distress caused by the Defendants.  Doc. 256.

**E.      The Injunction.**

After trial, the parties conferred to draft the terms of an injunction that was jointly submitted to the Court and entered on October 3, 2022 (the "Injunction") pursuant to 42 U.S.C. § 2000e-5(g) declaring and ordering as follows:

1.      The Court declares that the exclusions of coverage for '[d]rugs for sex change surgery' and '[s]ervices and supplies for a sex change and/or the reversal of a sex change' . . . in the County's employee health plan . . . violate Title VII;

2.      The Court permanently enjoins Defendants from any further enforcement or application of the Exclusion;

3.      Within 14 days of this Order, Defendants shall:

Notify [Anthem], the Health Plan's third-party administrator, of this order, and take all necessary steps to ensure Anthem ceases to enforce or apply the Exclusion or to maintain it in the Health Plan;

Defendants shall direct Anthem to process any claim for Sgt. Lange's vaginoplasty, including all associated charges for services, supplies, and facilities, and all 'Medically Necessary pre-operative and post-operative care' (as that term is used in the Health Plan) as indicated by her treating providers, in accordance with the terms, conditions, and limitations of the Health Plan as they stood in 2019 (except as modified herein).

Doc. 258.

### F.    Defendants' Motion to Stay.

On October 17, 2022, Defendants moved to stay the Injunction pending appeal and, on October 21, 2022, filed a notice of interlocutory appeal.  Docs. 262; 260-1.  On October 31, 2022, the district court temporarily stayed the Injunction pending resolution of Defendants' motion.  Doc. 265.  After full briefing from the parties— and supplementary briefing addressing *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022)—the district court denied Defendants'

motion on March 1, 2023.[6]  Doc. 289.  The district court held that all four factors in the stay analysis weighed "strongly against granting a stay" and "admonish[ed]" defense counsel for arguing that cost is a potential harm to Defendants, allegedly because the cost of her care is unknowable, when the undisputed record indicates that Defendants know the cost of Sgt. Lange's surgery would be about $25,600.  Doc. 289, pp. 5, 9.[7]

## STANDARD OF REVIEW

An appellate court reviews a district court's grant of a permanent injunction for abuse of discretion.  *See Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1221 (11th Cir. 2017).  The underlying findings of fact are reviewed for clear error and the conclusions of law *de novo*.  *Id*.

This Court may, in its discretion, consider aspects of the underlying summary judgment order.  *See Showtime/The Movie Channel, Inc.*, 881 F.2d at 987 ("Although '[a]ppellate review under § 1292(a)(1) is ordinarily confined to the injunctive aspects of the district court's order . . . such confinement is a rule of

---

[6] The parties agree that *Adams*, a Title IX and equal protection case, has no bearing on Sgt. Lange's Title VII claim.  Docs. 287 at 1–5; 288 at 2–3.

[7] The court also observed that this argument lacks credibility where Defendants have spent over a million dollars on outside counsel defending this lawsuit.  Doc. 289, p. 6, n. 2.  In any event, Title VII has no cost defense, *Manhart*, 435 U.S. at 716–17, *Newport News*, 462 U.S. at 685, n.26, and so the cost of coming into compliance with federal law is irrelevant.

judicial administration, not of jurisdiction. An appellate court has power to review the case to the extent it chooses to exercise it.'") (citation omitted).

Summary judgment is proper when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party asserting that a material issue of fact is genuinely disputed "must support that assertion by citing to particular parts of materials in the record." *Id.* A party may not "simply rely[ ] on legal conclusions or evidence which would be inadmissible at trial. The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) (citations omitted).

## SUMMARY OF THE ARGUMENT

This Court should affirm the Injunction. It is undisputed that the Health Plan's Exclusion for "sex change" procedures is the reason that Defendants denied coverage of Sgt. Lange's vaginoplasty. Because the Exclusion applies on the basis of a plan member's transgender status, which is "because of sex," the district court properly held that the Exclusion, on its face, violates Title VII. Moreover, because the County provides the Health Plan to the Sheriff's employees pursuant to a voluntary agreement between the two, the district court correctly held that the County is liable under Title VII as the Sheriff's agent. Accordingly, summary judgment against both the County and the Sheriff on Sgt. Lange's Title VII claim

was proper, and the district court soundly exercised its discretion in enjoining enforcement of the Exclusion.

Defendants nevertheless seek reversal on woefully deficient grounds. First, they contend that there is an issue of fact regarding whether Sgt. Lange was able to access *some* gender-confirming care despite the Exclusion. The district court correctly held that this contention is immaterial under Title VII given that a policy that is facially discriminatory only some of the time is still facially discriminatory.

Defendants next argue that the district court erred as a matter of law in holding that the Exclusion is discriminatory because *Bostock* does not address health care benefits. In *Bostock*, the Supreme Court held that Title VII protects transgender individuals from discrimination in the workplace. Longstanding precedent dictates that discrimination in employee benefits violates Title VII; *Bostock* did not change this. The district court thus correctly held that discrimination in the provision of benefits based on transgender status is discrimination under Title VII. The district court further held, relying on established precedent, that if a policy, like the Exclusion, is facially discriminatory, a plaintiff does not need to provide additional evidence of discriminatory intent. The discriminatory intent is evident from the face of the Exclusion. The district court thus correctly held that no further evidence of intentional discrimination is required.

Defendants also argue that the County is not the Sheriff's agent because the Sheriff did not expressly "delegate" the provision of healthcare benefits to the County and retained the ultimate authority to provide (or not provide) benefits to employees. Neither is legally material. Title VII liability applies to employers and their "agent[s.]" Doc. 205, pp. 10–11; 42 U.S.C. § 2000e(b); *Williams v. Cty. of Montgomery*, 742 F.2d 586, 588–89 (11th Cir. 1984) *cert. denied*, 470 U.S. 1053 (1985). The latter is a common-law term, which courts (including this one) have defined broadly to effectuate the purpose of Title VII. Defendants' attempts to distinguish controlling precedent based on immaterial differences in the facts of those cases—as with *Bostock*—fail because the undisputed facts here establish a straightforward agency relationship: the County, pursuant to an agreement with the Sheriff, provides health benefits, a traditional employer function, to his employees.

Finally, Defendants argue that they have not "admitted" either that the Exclusion discriminates on its face nor that the Sheriff "delegated" this responsibility over health benefits to the County. But Defendants' refusal to "admit" facts does not create a material issue. Furthermore, Title VII does not use the word "delegate" but rather "agent." These arguments are specious.

# ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THAT THE EXCLUSION VIOLATES TITLE VII.

The district court correctly held that the Exclusion discriminates because of sex in violation of Title VII. Defendants object on two grounds. First, they claim that the issue of whether the Exclusion prohibited Sgt. Lange from accessing all or just some medically-necessary care for her gender dysphoria is material. Brief of Defendants-Appellants ("Brief") at 32–40. Second, they argue that the Exclusion is not facially discriminatory because *Bostock* and other Supreme Court precedents do not address transgender employees in the provision of health care benefits. Brief at 40–62. Both arguments are without merit. The district court correctly applied precedent that discrimination on the basis of transgender status and in the provision of health care benefits is unlawful, that a facially discriminatory employer policy requires no further proof of intentional discrimination, and that it is irrelevant that an employer sometimes does not discriminate in other contexts. This decision should be upheld.

### A. The Exclusion Facially Discriminates on the Basis of Sex.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is well settled that employee health insurance

constitutes "compensation, terms, conditions, or privileges of employment." *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 682 (1983); *City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 710 (1978) ("[T]here is no reason [ ] to believe that Congress intended a special definition of discrimination in the context of employee group insurance coverage.").  It is equally well settled that discrimination based on sex in violation of Title VII includes discrimination based on transgender status.  *See Bostock*, 140 S. Ct. at 1742  ("[T]o discriminate on these grounds requires an employer to intentionally treat individual employees differently because of their sex."); *Glenn v. Brumby*, 663 F.3d 1312, 1320–21 (11th Cir. 2011).  To determine whether an employer's policy or action discriminates on the basis of sex in violation of Title VII, the Supreme Court has repeatedly held that one need only apply the "simple test" of "whether the evidence shows treatment of a person in a manner which but for that person's sex would be different."  *Manhart*, 435 U.S. at 711; *Bostock*, 140 S. Ct. at 1739.

Applying that test here, as the district court did, leads to an equally simple and straightforward conclusion: the Exclusion facially discriminates based on sex by denying coverage for procedures that would otherwise be covered because of an employee's transgender status.  It is undisputed that Sgt. Lange requires a medically-necessary vaginoplasty and, but for the Exclusion, Defendants would have covered it.  Doc. 150-1, p. 14.  As the district court explained, by its own terms, the Exclusion

plainly "excludes coverage for sex change surgery and drugs related to sex change surgery." Doc. 205, p. 23. Thus, even when a procedure would be covered for any other medically-necessary reason, Defendants specifically refuse to cover it when it is needed for a "sex change." *Id*. "The undisputed, ultimate point is that the Exclusion applies only to transgender members, and it applies to Lange because she is transgender." *Id*. Not only have Defendants conceded this point, Brief at 19–20, 35; Docs. 179-3, ¶¶ 77–78; 195, ¶¶ 77–78,[8] but they have also conceded that the Exclusion applies only to transgender people seeking a "sex change." Docs. 179-3, ¶ 78; 195, ¶ 78. *See also* Docs. 289, p. 9 n.3. The district court was compelled to hold that the Exclusion violated Title VII based on these undisputed facts.

Additional reasoning supports this conclusion. First, the Exclusion is expressly discriminatory because it cannot be applied without considering the employee's sex. A policy that cannot be applied "without considering sex" is based on sex. *Bostock*, 140 S. Ct. at 1746; *Whitaker v. Kenosha Unified Sch. Dist. No.1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) (a "policy [that] cannot be stated without referencing sex" is "inherently based upon a sex-classification."). To be able to decide whether to apply the Exclusion, Defendants must know whether Sgt.

---

[8] Defendants conceded this point, Doc. 179-3, ¶ 77–78, and only disputed it to the extent that Sgt. Lange suggests that all treatments for gender dysphoria is excluded. But this case arises from the denial of Sgt. Lange's vaginoplasty, which was undisputedly denied due to the Exclusion. Brief. at 28–29.

Lange was identified as male or female at birth. If she were identified as female, her vaginoplasty would be covered under the Health Plan; however, because she was not, it is not. Sex is the but-for cause of the differential treatment under the Exclusion. *See Bostock*, 140 S. Ct. at 1739–42.

Second, the Exclusion also necessarily discriminates on the basis of gender stereotypes. *See Bostock,* 140 S. Ct. at 1742–43 ("So just as an employer who fires both Hannah and Bob for failing to fulfill traditional sex stereotypes doubles rather than eliminates Title VII liability, an employer who fires both Hannah and Bob for being gay or transgender does the same."). An employee's choice to live openly in a gender other than the one assigned at birth "transgresses gender stereotypes," "which presume that men and women's appearance and behavior will be determined by their [assigned] sex." *Glenn*, 663 F.3d at 1316, 1320*; see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) ("[W]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group.").[9] Thus, by excluding coverage for care that would otherwise be covered on the basis of this choice, the Exclusion discriminates on the basis of gender stereotypes.

---

[9] Although decided under the Equal Protection Clause, *Glenn* relied on Title VII precedent—most notably, *Price Waterhouse*—and includes a full Title VII analysis. *See Glenn*, 663 F.3d at 1317–18, 1320–21.

Third, the Exclusion discriminates on its face because it penalizes a person "based on the sheer fact of the[ir] transition." *Glenn*, 663 F.3d at 1321. *See also Bostock*, 140 S. Ct. at 1741(an employer violates Title VII when it "intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth"); *E.E.O.C. v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 574–5 (6th Cir. 2018), *aff'd sub nom. Bostock*, 140 S. Ct. 1731 ("[D]iscrimination 'because of sex' inherently includes discrimination against employees because of a change in their sex."). To apply the Exclusion, Defendants must learn whether the procedure would involve changing Sgt. Lange's physical sex characteristics in a way not associated with her sex assigned at birth. If not, the care is covered; if so, the care is denied. The Exclusion therefore impermissibly singles out one of "the very acts that defines transgender people," *Glenn,* 663 F.3d at 1316 (citing Ilona M. Turner, *Sex Stereotyping Per Se: Transgender Employees and Title VII*, 95 Cal. L. Rev. 392, 392 (2007)), and penalizes them by withholding procedures that would change an individual's sex. One cannot penalize people for seeking to change their physical sex characteristics without relying on sex. *See Schroer v. Billington*, 577 F. Supp. 2d 293, 306–08 (D.D.C. 2008) (explaining that just as discrimination against a person for converting to a different religion is unquestionably "[d]iscrimination 'because of religion'"

under Title VII, so discrimination against a person who "has changed her sex" is discrimination "because of sex.").

Finally, if there were any doubt about the correctness of the district court's decision, federal courts—with *Lange*, seven in total—have been unanimous in striking down transgender health exclusions in cases reaching the final merits under Title VII or other federal sex discrimination laws. *C. P. v. Blue Cross Blue Shield of Ill.*, 3:20-CV-06145-RJB, 2022 WL 17788148, at *6 (W.D. Wash. Dec. 19, 2022); *Fain v. Crouch*, No. 3:20-0740, 2022 WL 3051015, at *11–12 (S.D. W. Va. Aug. 2, 2022); *Kadel v. Folwell*, 1:19CV272, 2022 WL 3226731, at *28–29 (M.D.N.C. Aug. 10, 2022); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1030 (D. Alaska 2020); *Flack v. Wis. Dep't of Health Servs.*, 395 F. Supp. 3d 1001, 1015, 1020–22 (W.D. Wis. 2019); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 995 (W.D. Wis. 2018).

### B. Because the Exclusion Is Facially Discriminatory, the District Court Correctly Held that Sgt. Lange Needs No Further Proof of Intentional Discrimination.

Defendants argue that summary judgment was improper because there is no evidence of discriminatory intent. They are wrong. Disparate treatment claims, like Sgt. Lange's, "occur where an employer has treated [a] particular person less favorably than others because of a protected trait" and "present[s] the most easily understood type of discrimination." *Ricci v. DeStefano*, 557 U.S. 577, 577 (2009) (internal citations and quotations omitted). A disparate-treatment plaintiff must

establish that the defendant discriminated intentionally. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1278 (11th Cir. 2000). A facially discriminatory policy demonstrates discriminatory intent. *Int'l Union, United Auto. Aerospace & Agric. Implement Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991) ("[T]he absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect."). In other words, where an employer policy injures employees based on a protected characteristic, such as sex, no further evidence of intent is needed. *See Bostock,* 140 S. Ct. at 1745–46 ("[N]othing in Title VII turns on the employer's labels or any further intentions (or motivations) for its conduct beyond sex discrimination."). *See also Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2005)[10]; *Frank v. United Airlines, Inc.*, 216 F.3d 845, 854 (9th Cir. 2000). Rather, the focus is on the "explicit terms of the discrimination." *Johnson Controls, Inc.,* 499 U.S. at 199.

The district court correctly applied this standard. *See* Doc. 205, pp. 21–22 (quoting *Johnson Controls, Inc.*, 499 U.S. at 199, 206). Having determined that the Exclusion is facially discriminatory, the district court properly held that no other evidence of intent is necessary. *Id.*

---

[10] This case involves violation of Title VIII of the Civil Rights Act, the Fair Housing Act, which uses "Title VII as a starting point" for analysis. *Cmty. Servs.*, 421 F.3d at 176 n.5.

### C. The District Court Properly Rejected Defendants' "Fact" Argument.

In holding that the Exclusion is facially discriminatory in violation of Title VII, the district court directly addressed and rejected Defendants' argument that the Exclusion is not discriminatory because it does not bar all treatment for gender dysphoria. Doc. 205, pp. 22–25. In rejecting it, the court specifically noted that whether the Exclusion discriminates in whole or in part is "immaterial to the question of whether the Exclusion is facially discriminatory." Doc. 205, pp. 22–23. Defendants take issue with this, arguing that (1) they never "admitted" that the Exclusion is facially discriminatory and (2) a policy denying only some healthcare coverage based on sex cannot be facially discriminatory. Brief at 32–40. These arguments are meritless.

#### 1. The District Court Correctly Found the Exclusion to Be Facially Discriminatory Based on Undisputed Facts.

Defendants disagree with the district court's use of the word "undisputed" in its ruling that "it is undisputed that the Exclusion is facially discriminatory," Brief at 34 (quoting Doc. 205, p. 22), arguing that the district court's ruling is neither supported by the record nor based on "any express admission" that the Exclusion is facially discriminatory. Brief at 34. As an initial matter, simply denying the allegations set forth by the moving party will not suffice to overcome the motion for summary judgment. *Burgest v. Colquitt Cty., Georgia*, 177 F. App'x 852, 854 (11th

Cir. 2005) (unpublished).  Additionally, the argument that the district court's ruling is not supported by the record is also demonstrably false.  The facts relevant to the district court's facial discrimination finding are undisputed and clear:

- Defendants control the terms of the Health Plan, Docs. 150-2, p. 14; 179-3, ¶ 62;

- The Health Plan contains the Exclusion, Docs. 205, pp. 3–4; 179-3, ¶¶ 74–76; 195, ¶¶ 74–76; 155-1, pp. 66, 71.

- The Exclusion denies coverage for care in connection with a "sex change," Docs. 205, pp. 3–4; 155-1, pp. 66, 71;

- The only participants impacted by the Exclusion are transgender people, Docs. 205, p. 19; 179-3, ¶ 78; and

- The Exclusion applies to Sgt. Lange because she is transgender.  Docs. 205, pp. 19, 23; 179-3, ¶¶ 30, 78.

Moreover, as discussed above, when an employer acts pursuant to a policy that expressly provides lesser treatment based on a protected characteristic, such as sex, Title VII is violated and no further evidence of intentional discrimination is needed.  *See Bostock*, 140 S. Ct. at 1745–46; *Johnson Controls, Inc*., 499 U.S. at 199.  Accordingly, because the Exclusion expressly discriminates on the basis of sex, no "express admission" of discrimination was required for the district court to conclude that the Exclusion is facially discriminatory as a matter of law.

## 2. The District Court Properly Rejected Defendants' "Sometimes" Argument as Irrelevant and Wrong as a Matter Of Law.

Defendants contend that the Exclusion is not facially discriminatory because it "is not a categorical exclusion of *all* medically necessary care for a gender transition."[11] Brief at 39. This argument was considered and rejected by the district court with respect to Sgt. Lange's Title VII claim because it lacks any basis in law and is irrelevant to the facial discrimination ruling. As the district court explained, an employer cannot lawfully withhold benefits because of sex for some procedures even if it covers others. Doc. 205, p. 28. "Title VII does not exempt 'partial' violations." *Id.* (citing 42 U.S.C. § 2000e-2(a)(1)). *See also Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544 (1971) (rejecting that an employer had a defense under Title VII where on the whole it hired more women than men).

Even assuming *arguendo* that the Exclusion does provide some but not all care, that does not change the fact that the Exclusion still discriminates based on sex. If Sgt. Lange is denied coverage for a medically-necessary vaginoplasty because she is transgender, it is irrelevant that Defendants do not discriminate against her on other occasions, such as when she needs coverage for hormones. Holding otherwise

---

[11] This argument necessarily concedes that the Exclusion does, in fact, deny at least some care to Sgt. Lange based on the fact that she is transgender. And Defendants have also acknowledged that sex "is deemed to include transgender status, and, therefore, an employer who takes an adverse employment action against an individual *merely for being* . . . transgender defies [Title VII]." Doc. 201, p. 1 (internal quotations omitted).

would ignore the fact that Title VII protects individuals from each act constituting prohibited discrimination. *See Bostock*, 140 S.Ct. at 1742 ("[T]he law makes each instance of discriminating against an individual employee because of that individual's sex an independent violation of Title VII.").

## D. The District Court Correctly Applied Supreme Court Precedent in Finding the Exclusion Facially Discriminatory.

Defendants argue that this case is different from other Title VII cases because it involves health insurance. It is not. The Supreme Court has repeatedly applied Title VII to claims involving health insurance in the same way it has applied Title VII to non-health insurance cases. *See, e.g.*, *Arizona Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073, 1089 (1983) (Opinion of Marshall, J.) ("[A]n employer that adopts a fringe-benefit scheme that discriminates among its employees on the basis of race, religion, sex, or national origin violates Title VII.").

Title VII is clear. It is unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Health insurance constitutes "compensation, terms, conditions, or privileges of employment." *Newport News*, 462 U.S. at 682; *see also Manhart*, 435 U.S. at 710. Sex discrimination under Title VII includes discrimination against a person for being transgender. *Bostock*, 140 S. Ct. at 1741; *Glenn*, 663 F.3d at 1320–21. Where

an employment policy involves disparate treatment through facial discrimination based on a protected characteristic, like sex, it does not matter why the employer discriminates. *Johnson Controls, Inc.*, 499 U.S. at 199. What matters is "the explicit terms of the discrimination." *Id.*

Defendants nevertheless attempt to distinguish *Bostock*, *Johnson Controls*, *Newport News*, and *Manhart* based on numerous immaterial factual differences. But their attempts fail because they cannot and do not undermine the well-established legal principles that these cases articulate, which the district court correctly applied in reaching its facial discrimination ruling. Defendants also attempt to undermine that ruling by relying on two entirely irrelevant cases—*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009 (2020) and *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 211 (2015)—which the district court properly declined to apply.

     *1.*    <u>*Bostock*</u>.

Defendants argue that the district court's facial discrimination ruling here is inconsistent with Title VII since *Bostock* "did not otherwise address the standard of causation or healthcare benefits." Brief at 42. But the fact that healthcare benefits are subject to Title VII has been settled law for half a century. *Newport News*, 462 U.S. at 682. Indeed, *Bostock* clarified that in future cases, inquiry into whether "other policies or practices" constitute discrimination should be resolved in the same

way as in any Title VII case: by determining whether they are "distinctions or differences in treatment that injure protected individuals." *Bostock*, 140 S. Ct. at 1753. Additionally, the Supreme Court clarified in *Bostock* that "because of" means that a "particular outcome would not have happened 'but for' the purported cause." *Id*. That is exactly what happened here—a sex-based difference in insurance coverage is the but-for cause of Sgt. Lange's ongoing injury. The district court's conclusion that "Defendants cannot find a *Bostock* workaround" is correct. Doc. 205, p. 28.

  2. *Johnson Controls*.

Defendants' attempt to distinguish *Johnson Controls* similarly fails. *Johnson Controls* holds that a policy treating people differently based on sex constitutes facial discrimination and benevolent intentions do not exculpate the employer. *Johnson Controls*, 499 U.S. at 199–200. Defendants argue that *Johnson Controls* does not apply because the policy there, which restricted job opportunities on the basis of capacity for pregnancy, "did not address fringe benefits in any sense." Brief at 49. But this argument, as with Defendants' attempts to distinguish *Bostock* fails given decades of precedent holding that there are no special rules applicable to employee benefit cases. *Newport News*, 462 U.S. at 682; *Manhart*, 435 U.S. at 710. Defendants fail to provide an explanation of how it could be relevant here or otherwise say how it impacts the legal proposition for which *Johnson Controls*

stands and on which the district court relied – that discriminatory intent is established by a facially discriminatory policy.

    3.    *Manhart & Newport News*.

While acknowledging that *Manhart* and *Newport News* involve "employment fringe benefits," Brief at 51, Defendants attempt to distinguish them on the basis that Sgt. Lange "has the same health coverage as other employees." Brief at 54. But it is not the law that an employer violates Title VII in the context of insurance coverage only if it offers different coverage packages or charges different rates to participants.

As the district court correctly stated in rejecting this argument, "[t]he suggestion that an employer with a single health insurance plan could fill the plan with discriminatory exclusions and avoid Title VII liability because the employer offered that one 'coverage package' to all employees lacks any merit." Doc. 205, p. 26. Such a rule would allow any discriminatory policy written into a plan, as it was in *Newport News*. And to the extent that Defendants seek to distinguish *Manhart* and *Newport News* on the basis that the unlawful policies in those cases explicitly treated women as a class differently from men as a class, that is also unavailing because Title VII's "focus on the individual is unambiguous," and so "an employer violate[s] Title VII because, when its policy work[s] exactly as planned, it could not 'pass the simple test' asking whether an *individual* . . . employee would have been

treated the same regardless of her sex." *Bostock*, 140 S. Ct. at 1743 (citing *Manhart*, 435 U.S. at 711) (emphasis added).

    4.    *Comcast*.

Defendants' reliance on *Comcast* is not clear, but they seem to argue that, despite the fact that the Exclusion cannot be stated without referencing sex, it is not a sex-based Exclusion. Rather, it's just an exclusion for certain care in connection with a particular diagnosis. Brief at 55. Defendants suggest that if you consider a "counterfactual" like the court did in *Comcast*, there's no sex discrimination here. *Id*.

This argument is baffling. First, *Comcast* held that, in Section 1981 cases, one must establish but-for causation rather than relying on the more liberal "motivating factor" test available under Title VII. 42 U.S.C. § 2000e-2(m). But-for causation is the same standard applied in *Bostock*, which is controlling, and, as discussed above, that standard is met here. Second, Defendants' two "counterfactuals" actually cut against their argument that the Exclusion doesn't discriminate based on sex. The first—a transgender person seeking cancer treatment—is irrelevant because it doesn't implicate the Exclusion. As already discussed, whether Defendants don't discriminate against transgender people in other contexts, such as when they have cancer, is no defense for when they do. The second—a cisgender person seeking gender dysphoria treatment—is absurd. A

cisgender person cannot be diagnosed with gender dysphoria, a condition that, by its very definition, only affects transgender people.  Doc. 179-3, ¶¶ 1-3.  And even if the counterfactual were possible, then the Exclusion would not apply under its plain terms because that person would not be seeking a "sex change."

Moreover, even if the Exclusion is based on gender dysphoria, it would still be discrimination.  *Bostock* made clear that simply using another word does not turn sex-based discrimination into something else.  *Bostock*, 140 S. Ct. at 1747 (noting that sexual harassment and motherhood discrimination "fall within Title VII's sweep" even though "conceptually distinct").  A sex-based Exclusion of gender dysphoria treatment is still sex discrimination for all the reasons discussed above.  At most, it would be a cause of discrimination in addition to sex, much as childbearing capacity was in *Johnson Controls* and gender identity or attraction to people of a particular sex was in *Bostock*.  Title VII applies regardless of whether another factor is an additional cause of discrimination.  *Bostock*, 140 S. Ct. at 1744 ("[I]t's irrelevant what an employer might call its discriminatory practice, how others might label it, *or what else might motivate it.*") (emphasis added).

   5.    *Young*.

Defendants further argue that the Exclusion isn't facially discriminatory based on *Young*, which is materially distinct.  In that case, a pregnant woman asserted that UPS's policy requiring all drivers to lift up to seventy pounds, except if injured on

the job or covered by the ADA, violated Title VII.  575 U.S. 206, 211 (2015).  The question there was whether UPS's *facially neutral* policy imposed a significant burden on pregnant employees, and if so, whether the policy was justified by UPS's non-discriminatory explanation, which of course encompassed the question of intent.  *Id*. at 220, 228 (citation omitted).  Unlike in *Young*, the policy here *is* facially discriminatory, and thus any further question of intent is irrelevant.[12]

Moreover, in *Young*, the employee argued that pregnant employees *must* receive their requested accommodations if *anyone* else has received *any* accommodation under *any* circumstance.  Here, however, nothing about Sgt. Lange's claim would grant transgender employees "most favored nation" status as Defendants claim.  *Id.* at 221.  Sgt. Lange simply wants the same coverage for medically-necessary procedures that would otherwise be covered under the Health Plan, but for the Exclusion.  That is a right anyone—cisgender or transgender—may vindicate under Title VII.  If, for example, the policy here were reversed and covered surgeries like a vaginoplasty *only* when medically necessary for "sex change" and not otherwise, a cisgender employee could bring her own claim.  Defendants' argue that an injunction here puts Sgt. Lange in a better position than her colleagues because they are also subject to the Health Plan's exclusion for "service or supplies

---

[12] Notably, Defendants analogize to *Young* to argue that the Exclusion is not facially discriminatory, but they do not argue that the Exclusion is facially neutral like the policy at issue in *Young*.

for male or female sexual problems." Brief at 60. But this argument is illogical because Sgt. Lange is also subject to that exclusion, which does not involve treatment that would be different but for the individual's sex.

### E. Defendants' Remaining Arguments Also Fail.

Defendants also make a series of other arguments, none of which detract from the inescapable conclusion that the Exclusion expressly discriminates based on sex, and that Defendants treated Sgt. Lange differently because of sex.

Defendants point out that the Health Plan contains other exclusions as well. That's true. If those other exclusions do not rely on a protected characteristic, they are not facially discriminatory under Title VII. This one, however, does and is. And, as discussed above, whether or not a defendant discriminates in some other context is irrelevant in a Title VII claim. The existence of coverage exclusions for hearing aids or bariatric surgery simply has no bearing on the Exclusion.[13]

It is also true—and equally beside the point—that, as Defendants point out, not all transgender people need surgery. An employer does not have to discriminate against all members of a protected group to violate Title VII. *See Connecticut v.*

---

[13] To the extent Defendants are arguing, as below, that properly applying Title VII here to forbid the Exclusion would also compel removal of their other, non-discriminatory exclusions, that is simply not plausible, and even Defendants' own actuarial expert didn't believe it. Doc. 137-12, p. 95 ("That would sound like a stretch to me, that they would all be removed."). But even if it were, that is a policy argument is best directed to Congress, which enacted Title VII without "slippery slope" defenses.

*Teal*, 457 U.S. 440, 455 (1982) ("Title VII does not permit the victim of a facially discriminatory policy to be told that he has not been wronged because other persons of his or her race or sex were hired."); *Phillips*, 400 U.S. at 543–44 (hiring policy discriminated based on sex even where large majority of those hired were women).

Nor does the employer have to withhold something that every member of the affected group would want. *See Manhart*, 435 U.S. at 708 ("The statute's focus on the individual is unambiguous.").  After all, not all women wish to work in a position that could jeopardize their reproductive health, yet it still violated Title VII for an employer to prevent those women who sought to do so from holding those positions. *See Johnson Controls, Inc.*, 499 U.S. at 198.  Just as Defendants would not be able to evade liability if they refused to allow women to work in a particular position by arguing that not all women *want* to work in that position, they cannot defend themselves here by arguing that not all transgender women need coverage for surgery.  It is enough that Sgt. Lange does need it and that Defendants deny it to her because of sex.

Finally, Defendants allege that vaginoplasties needed by transgender and cisgender women might differ in some way (although they do not say how this would be material).  Given the absence of record evidence cited in support of this argument, it is frivolous.  *See* Fed. R. Civ.  P. 56(c)(1).  The Exclusion operates to withhold coverage of otherwise covered medically-necessary care because of sex.

## II.  THE DISTRICT COURT CORRECTLY HELD THE COUNTY LIABLE UNDER TITLE VII AS THE SHERIFF'S AGENT.

The district court correctly held that the undisputed facts demonstrate that the County acted as the Sheriff's agent in providing health benefits to the Sheriff's employees, and is therefore liable under Title VII.  Defendants seemingly assert that the County cannot be the Sheriff's agent because the Sheriff retained the power to provide health benefits in another manner or not at all.  Brief at 62–69.  This argument lacks any basis in law and, as the district court stated at oral argument on Defendants' motion for interlocutory review, "is borderline frivolous."  Doc. 331, p. 46.  Defendants additionally argue that a disputed issue of fact exists because they have not admitted that the County is the Sheriff's agent.  Brief at 69–74.  But a party cannot create a material issue of fact by merely denying the undisputed facts. *Burgest*, 177 F. App'x at 854.  The district court correctly found, on the undisputed record, that the Sheriff's decision to have the County provide the Health Plan to his employees on his behalf created an agency relationship under established principles of agency law.  The County is therefore liable under Title VII for discrimination in the Health Plan.

### A.  The District Court Correctly Held that an Agency Relationship Exists Between the Sheriff and the County in the Provision Of Health Insurance Benefits.

It is well established that liability under Title VII is the employer's.  *Busby v. Cty. of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).  Title VII's definition of

"employer" encompasses "any agent" and is to be liberally construed to accomplish the policies of Title VII. *See* 42 U.S.C. § 2000e(b); *Manhart*, 435 U.S. at 718–19 n.33; *Williams*, 742 F.2d at 588. "It is clear from the language of the statute that Congress intended that the rights and obligations it created under Title VII would extend beyond the immediate employer-employee relationship." *Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291, 294 (11th Cir. 1988).

Title VII does not define the term "agent" so courts must therefore "turn to the common law principles of agency" to determine whether an agency relationship exists. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162 (11th Cir. 1993). "Under these principles, an agent is one who agrees to act on behalf of another, subject to the other's control." *Id.* at 1162 (citing Restatement (Second) of Agency § 1 (1958)). In applying agency principles and keeping with the liberal construction of "employer," the Eleventh Circuit has recognized that a third party may be considered an "agent" of an employer under Title VII "[w]here the employer has delegated control of some of the employer's traditional rights" over employees to the third party. *Williams*, 742 F.2d at 589 (quotation omitted).

In a straightforward analysis applying Eleventh Circuit precedent, the district court correctly held that an agency relationship exists between the County and the Sheriff regarding the provision of the Health Plan, and the County therefore is an "agent" of an "employer" subject to Title VII. Doc. 205, pp. 10–12. The parties

agree that the "County and the Sheriff's Office have entered into an intergovernmental agreement in which the County makes its health insurance plans available to employees of the Sheriff's Office." Docs. 137-1 ¶ 4; 179-3, ¶ 61 ("This agreement is voluntary on the part of both parties."). The parties also agree that "the County controls the terms and conditions of the Plan, including the Exclusion, and is responsible for administering the Plan." Brief at 64; *see also* Doc. 179-3, ¶ 62 ("Under their agreement, the County sets the Health Plan's benefit terms; determines the members' deductibles and premiums; and provides for Sheriffs' Office employees to enroll, disenroll, and have their questions answered, among other things.") (citations omitted). Any conclusion that these facts do not constitute an agency relationship would be error.[14]

The district court's ruling that the undisputed facts create a common law agency relationship is in line with both controlling precedent and other circuit court cases holding third parties liable as agents of employers under Title VII where they control the aspect of employment that is challenged.[15] *See, e.g., Norris*, 463 U.S. at

---

[14] Defendants say (citing nothing in the record) that other sheriff's offices in Georgia have similar arrangements. Brief at 65, n.31. Even if this were proper, any argument that such liability is too "expansive" is properly directed at Congress and not to a court of law obliged to apply the statute's plain text.

[15] EEOC guidance further supports the district court's holding. *See* EEOC Compliance Manual, No. 915.003, 2-III(B)(2)(b)(2000), *available at* www.eeoc.gov/policy/docs/threshold.html ("An entity that is an agent of a covered entity is liable for the discriminatory actions it takes on behalf of the covered entity.") (citations omitted).

1090 (holding plaintiffs' employer and third-party retirement plan provider liable under Title VII for sex discrimination in plan as "it is well established that both parties to a discriminatory contract are liable for any discriminatory provisions the contract contains"); *Manhart*, 435 U.S. at 718 n.33 (city's third-party retirement plan liable for sex discrimination as city's agent); *Terbovitz v. Fiscal Ct. of Adair Cnty., Ky.*, 825 F.2d 111, 117 (6th Cir. 1987), *abrogated on other grounds by Price Waterhouse*, 490 U.S. 228 at n.2 (county's third-party screeners for employment eligibility, who refused to screen women job applicants, were "acting as the [county's] agents for the limited purpose of screening applicants . . ."); *Williams*, 742 F.2d at 589 (city's third-party personnel board liable for racial discrimination in hiring and firing employees on behalf of city); *Spirt v. Teachers Ins. and Annuity Ass'n*, 691 F.2d 1054, 1063 (2d Cir. 1982), *vacated on other grounds* 463 U.S. 1223 (1983), *reinstated in relevant part* 735 F.2d 23, 29 (2d Cir. 1984) (holding third-party retirement plan liable for sex discrimination as agent because, *inter alia*, "the language of the Supreme Court in *Manhart* would seem to compel a finding that delegation of responsibility for employee benefits cannot insulate a discriminatory plan from attack under Title VII") (reviewing cases).

Defendants fail to distinguish this well-settled law. Principally, Defendants argue that the County is not the Sheriff's agent because the aspect of Sgt. Lange's employment administered by the County—the Health Plan—is different from those

administered by the personnel board—hiring and firing—in *Williams*. Brief at 62–66. In *Williams*, this Court held both the City of Montgomery and its agent, the Montgomery City-County Personnel Board, liable for racial discrimination under Title VII. 742 F.2d. at 589. There, the personnel board exercised traditional employer functions, such as establishing a pay plan and evaluating/reinstating employees, and was therefore liable as an agent under Title VII when it refused to reinstate a Black firefighter. *Id*.

But *Williams* did not hold that hiring and firing are the only types of traditional employer functions that can be delegated to establish an agency relationship, nor does it require that the employer relinquish all control to an agent. *See Williams*, 742 F.2d at 589 ("'Where the employer has delegated control of *some of* the employer's traditional rights, *such as* hiring or firing, to a third party, the third party has been found to be an 'employer' by virtue of the agency relationship.'") (quoting Schlei & Grossman, Employment Discrimination Law 1002 (2d ed. 1983)) (emphasis added).[16] Such a holding would have no basis in Title VII's plain text.

---

[16] This treatise also rejects the argument put forth by Defendants. The treatise considered *Hannahs v. New York State Teachers' Ret. Sys.*, Civil Action No. 78-Civ. 2541-CSH, 1981 WL 226 (S.D.N.Y. July 10, 1981), in which a retired teacher sued her employer and the New York State Teachers' Retirement System ("NYSTRS") for violating Title VII by reducing her retirement benefits because she is a woman. *Id*. at *1–2. Like the County here, NYSTRS argued it was not plaintiff's employer but merely provided an employee benefit on her employer's behalf. *Id*. at *3. The court rejected this, stating "NYSTRS is not justified in characterizing its "only relationship to plaintiff [as] that of insurer to insured;" it exercises sufficient control

Defendants make various other arguments regarding the facts in *Williams*, including that (1) the personnel board was given a wide range of responsibilities under Alabama law;[17] (2) those responsibilities were stripped from the employer in *Williams* while the Sheriff maintains the ability to choose another health plan (or provide none at all);[18] and (3) the Sheriff directs the County to add new hires to the Health Plan. Brief at 65–66. But the first is irrelevant to whether an agency relationship exists as to the Health Plan, and the second two actually support the district court's holding by underscoring that the Sheriff is the principal, retaining ultimate authority, and the County is its agent, acting under its direction. As the district court correctly found, the County acted as an agent of the Sheriff because it provided a health insurance plan to the Sheriff's employees—a right traditionally exercised by an employer. Doc. 205, p. 11 (citing *Williams*, 742 F.2d at 589). The fact that the Sheriff chose "how a health insurance plan is provided to his employees

---

over plaintiff's retirement benefits to satisfy the requirements of Title VII." *Id*. at *7 (quoting *Spirt*, 475 F. Supp. at 1308; *Peters*, 476 F. Supp. at 1350.).

[17] Defendants note that Georgia law would not permit a County to exercise personnel functions. Brief at 63–64. This is a red herring. The County maintained control over the terms of the Health Plan, the provision of which is the only employer right at issue in this case.

[18] Notably, once the Sheriff elected to have the County provide health benefits, "the only thing the Sheriff retained was the right to take it back—the administration and operation of the plan remained in exclusive control of the County." Docs. 220, p. 5; 221, p. 38 (The Court: "He can give it and he can take it back. Other than that, what authority did the Sheriff retain with regard to the management and administration of the healthcare plan?" Counsel for Defendants: "None.").

does not mean the County does not act as an agent when it provides health coverage at the express delegation of the Sheriff." *Id*. at 12.[19]

Defendants also cannot distinguish *Spirt*. In both *Spirt* (and *Manhart*, upon which *Spirt* relies), an employer selected a third party to provide and manage an employee benefit plan; the third party created a provision that discriminated on the basis of sex; and the court held the third party liable as an "employer" under Title VII by virtue of the fact that it controlled the aspect of employment that gave rise to the discrimination. Defendants argue that the County and Sheriff's Office are not as "closely intertwined" as the defendants in *Spirt*. Brief at 66–68. But while it is true that the County does not exist solely to provide benefits, that is not a material distinction—*Spirt* was applying the common-law agency test, as required by the law, and not creating a novel "intertwining" requirement of its own devising.[20] The fact that employee participation in the benefit plan was mandatory is also irrelevant. *See Norris*, 463 U.S. at 1082 n.10 (imposing liability on third-party administrator of

---

[19] For this reason, Defendants also fail to persuade in their attempt to distinguish *Williams* on the basis that the Sheriff is not "bound to use the County's Plan." Brief at 63, n.29, 65–66, 68. *Williams* does not turn on whether the city's delegation was voluntary or compulsory, and Defendants brief does not explain how that distinction makes a difference under the common-law definition of "agent." If anything, involuntary delegation would seem to be an argument *against* the existence of an agency relationship, as it suggests a lack of consent by the principal—but this clearly did not preclude one in *Williams*.

[20] *Williams* did not employ a "higher standard" for "agent" than *Spirt*, as Defendants allege (Brief at 66–67) but applied the common law definition of agency.

voluntary-participation employee benefit plan because "Title VII forbids all discrimination concerning 'compensation, terms, conditions, or privileges of employment,' not just discrimination concerning those aspects of the employment relationship as to which the employee has no choice.").

Moreover, the district court's decision to hold the County liable as an "employer" under Title VII by virtue of an agency relationship serves to achieve Title VII's purpose. *See Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 364 (1977) (explaining that the primary purposes of Title VII are to achieve equal employment opportunity, remove discriminatory barriers, and make whole the victims of past discrimination). Defendants have consistently stated that the Sheriff had no control over the County's Health Plan and that the County made all decisions with respect to the Plan. Docs. 221, p. 28; 220, p. 5. Defendants admit that health benefits are compensation under Title VII (Doc. 221, pp. 28–29) and that compensation is another factor, like hiring and firing, that determines whether an agency relationship exists. Doc. 221, p. 26 (Counsel for Defendants: "Well, I think that these are all factors that go into whether or not the agency relationship exists. And the compensation is one of those."). Doc 221, p. 29. The County should not be able to escape liability for their decision to discriminate in the terms of the Health Plan because Sgt. Lange is formally employed by the Sheriff.

Other case law cited by Defendants can be dealt with briefly. First, Defendants' citation to *E.E.O.C. v. Wooster Brush Co.,* 727 F.2d 566, 571–73 (6th Cir. 1984), which found that an agency relationship did not exist in that case is irrelevant because the Sixth Circuit did not apply an agency test and was reviewing only the district court's holding that the two defendants were "a single or joint employer." 727 F.2d 566, 571–73.[21] Second, Defendants' reliance on *Peters v. Wayne State*, 691 F.2d 235 (6th Cir. 1982), is of no persuasive value because *Peters* was vacated "in light of … *Norris*," *Peters v. Wayne State U.*, 463 U.S. 1223, 1223 (1983), which *did* impose liability on a third-party employee benefit plan. Third, Defendants cite to *Grech v. Clayton County*, 335 F.3d 1326 (11th Cir. 2005) (en banc) and *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) (en banc) in footnotes, but these cases are irrelevant because they only considered whether a sheriff is an arm of the state for purposes of sovereign immunity and neither case applies common law agency principles nor considers any other question relevant to this Title VII appeal. *See* Brief at 64, n.30. Fourth, Defendants cite to *Lyes v. City of Riviera Beach, Fla.,* 166 F.3d 1332 (11th Cir. 1999) (en banc), and *Clark v. St. Joseph's/Candler Health Sys., Inc.*, No. 4:05-CV-119, 2006 WL 2228929 (S.D. Ga. Aug. 3, 2006), in footnotes, but these cases are not relevant because they do not

---

[21] Sgt. Lange argued below that the County is liable both as an agent and under the joint employer test. Docs. 140-1, pp. 25–26; 178, pp. 5–10. However, the district court's opinion does not address the latter.

concern the issue of whether an agency relationship exists such that an agent is an "employer" under Title VII. *See Lyes,*166 F.3d at 1341, n.4, ("[W]e do not decide any agency issues."); *Clark*, 2006 WL 2228929 at *3, n.2 ("Plaintiff does not contend that this agency theory applies to the instant case").

## B.    Whether Defendants "Admit" to an Agency Relationship is Irrelevant.

Defendants also attempt to create a material issue of fact by arguing that they have not "admitted" that the Sheriff "delegated" administration of the Health Plan to the County, but rather have "consistently maintained" that he has not done so. Brief at 69–74. But, as with their argument that they haven't "admitted" to sex discrimination, whether they concede this point is irrelevant. Although a "party responding to summary judgment may not rest on her pleadings to demonstrate the presence of an issue of fact," *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992), that is precisely Defendants' strategy here. *See* Brief at 71, n.36 ("[F]rom its earliest appearance in this action—its Answers and Motions for Judgment on the Pleadings—the County has denied these points which the district judge deemed 'undisputed.'"). Defendants cannot manufacture a material issue of fact by merely denying the district court's conclusion based on the undisputed facts. *See Burgest,* 177 F. App'x at 854; *Archer v. Trans/Am. Servs.* 834 F.2d 1570, 1573 (11th Cir. 1988) (agency cannot be disputed by "claims that [party]

is merely an independent contractor").[22]  And to the extent their argument takes issue with the word "delegate," that too is irrelevant.  Title VII uses the word "agent" and not "delegate," and, for the reasons already discussed, the undisputed facts in the record establish an agency relationship.

## III.    THE DISTRICT COURT PROPERLY ENTERED A PERMANENT INJUNCTION.

The district court did not abuse its discretion in issuing the Injunction in this case, which is the appropriate remedy for Sgt. Lange's Title VII injury.[23]   A permanent injunction is properly issued when the moving party shows (1) actual success on the merits; (2) irreparable harm will result from failure to provide

---

[22] Defendants' argument that the district court shifted the burden of proof by stating that Defendants did not cite any law prohibiting the agency relationship likewise fails.  *See* Brief at 71–72.  This argument misconstrues the district court's opinion, which simply and correctly stated that Defendants did not cite anything in support of their argument that the County could not be the Sheriff's "agent" as to the Health Plan because such a relationship would violate Georgia law.

[23] Under Title VII, a court may enjoin a defendant from engaging in an unlawful employment practice where the court has found that the defendant intentionally engaged in that practice.  *See, e.g., Boyden v. Conlin*, No. 17-CV-264-WMC, 2018 WL 6488594 (W.D. Wis. Sept. 24, 2018), ECF No. 213 (final judgment awarding compensatory damages as determined by jury and permanently enjoining defendants from enforcing an exclusion that violates Title VII by excluding coverage for gender reassignment-related care); *Flack v. Wis. Dep't of Health Servs.*, Case No. 18-cv-309-wmc (W.D. Wis. Oct. 31, 2019), ECF No. 248 (final judgment permanently enjoining defendants from enforcing an exclusion that violated federal laws by excluding coverage for transgender surgery and related hormones).  Indeed, "district courts have not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future."  *Int'l Brotherhood of Teamsters*, 431 U.S. at 364–65 (citation omitted).

injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006). Here, the elements for a permanent injunction are satisfied, and Defendants have made no arguments to the contrary. Defendants instead argue that the underlying grant of summary judgment to Sgt. Lange on her Title VII claim was in error. Because the district court properly granted summary judgment to Sgt. Lange, and because all elements for a permanent injunction are satisfied here, the district court did not abuse its discretion in issuing the Injunction as a remedy for Sgt. Lange's Title VII claim.

First, the district court's grant of summary judgment to Sgt. Lange on her Title VII claim establishes success on the merits. Doc. 205, p. 28.

Second, monetary damages cannot fully compensate Sgt. Lange, who still cannot access medical care because of the Exclusion. The jury awarded Sgt. Lange damages for pain and suffering, but absent an injunction, she cannot access medically-necessary care under the Health Plan, and continues to suffer distress and mental anguish stemming from her untreated gender dysphoria. As the district court found in its ruling on the motion to stay the injunction pending appeal, "[a]ny further delay would only increase this suffering." Doc. 289, p. 6. Monetary damages cannot remove the Exclusion from the Health Plan or provide Sgt. Lange with access to the care that she still needs and has been unable to obtain. *See Barrett*, 872 F.3d at 1229

("An injury is 'irreparable' only if it cannot be undone through monetary remedies.") (citing *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981)).

Third, the balance of hardships weighs in favor of granting an equitable remedy to Sgt. Lange. Defendants essentially conceded as much in their Motion to Stay the Permanent Injunction. *See* Doc. 260. Sgt. Lange has suffered significant emotional distress as a result of being denied medical care; Defendants would not suffer harm from bringing the Health Plan into compliance with federal law.

Fourth, the public interest would be served by a permanent injunction because "the public interest is 'substantially benefitted' when people 'receive essential medical care that could not otherwise be provided.'" Doc. 289, p. 5 (citing *Mitson by & through Jones v. Coler*, 670 F. Supp. 1568, 1577 (S.D. Fla. 1987)). In analyzing a nearly identical factor in denying Defendants' motion to stay the Injunction pending appeal, the district court correctly noted that the "'public interest lies in ensuring that members of the Health Plan have access to the medical care that they require,' and for that to happen, the defendants 'must cease to discriminate in the provision of healthcare coverage on the basis of transgender status.'" Doc. 289, p. 7 (citing Doc. 280, p. 10).

Because all elements for a permanent injunction are satisfied, the district court did not abuse its discretion in entering the Injunction to remedy the injury to Sgt. Lange caused by Defendants' violation of Title VII.

## **CONCLUSION**

Because the district court properly granted summary judgment to Sgt. Lange on her Title VII claim, and did not abuse its discretion in enjoining enforcement of the Exclusion, this Court should affirm.

Respectfully submitted this 15th day of March, 2023.

*/s/ Wesley R. Powell*
Wesley R. Powell
Jill K. Grant
Catherine E. Fata
Amanda M. Payne
WILLKIE, FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 tel.
(212) 728-8111 (fax)
wpowell@willkie.com
jgrant@willkie.com
cfata@willkie.com
apayne@willkie.com

David Brown
Gabriel Arkles
TRANSGENDER LEGAL DEFENSE
EDUCATION FUND, INC.
520 8th Ave. Ste. 2204
New York, NY 10018
(646) 862-9396 tel.
(646) 993-1686 fax
dbrown@transgenderlegal.org
garkles@transgenderlegal.org

Kenneth E. Barton III
Ga. Bar No. 301171
M. Devlin Cooper
Ga. Bar No. 142447
COOPER, BARTON & COOPER
170 College Street
Macon, GA 31201
478-841-9007
478-841-9002 (fax)
keb@cooperbarton.com
mdc@cooperbarton.com

*Counsel for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE

On behalf of Plaintiff-Appellee Sgt. Anna Lange, I hereby certify pursuant to Federal Rule of Appellate Procedure 32(g)(1) that the Brief of Plaintiff-Appellee is proportionally spaced, has a typeface of 14 points or more, and contains 12,872 words.

/s/ *Wesley R. Powell*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this day served the foregoing **BRIEF OF PLAINTIFF-APPELLEE** to the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to the following counsel of record, who are CM/ECF. participants:

R. Read Gignilliat, Esq.
Sharon P. Morgan, Esq.
William D. Deveney, Esq.
Patrick L. Lail, Esq.
Elarbee, Thompson, Sapp & Wilson, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
gignilliat@elarbeethompson.com
morgan@elarbeethompson.com
lail@elarbeethompson.com
*Attorneys for Defendants*

This 15th day of March, 2023.

/s/ *Wesley R. Powell*
Wesley R. Powell
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 tel.
(212) 728-8111 fax
wpowell@willkie.com