No. 22-13626

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

ANNA LANGE,

Plaintiff-Appellee

v.

HOUSTON COUNTY, GEORGIA, *et al.*,

Defendants-Appellants

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA

_____

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING PLAINTIFF-APPELLEE AND URGING
AFFIRMANCE ON THE ISSUES ADDRESSED HEREIN

_____

KRISTEN CLARKE
 Assistant Attorney General

TOVAH R. CALDERON
JASON LEE
 Attorneys
 U.S. Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, D.C.  20044-4403
 (202) 598-1317

*Anna Lange* v. *Houston County, Georgia*, No. 22-13626

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In accordance with Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, the United States as amicus curiae certifies that, in addition to those identified in the briefs filed by defendants-appellants and plaintiff-appellee, the following persons may have an interest in the outcome of this case:

1. Calderon, Tovah R., U.S. Department of Justice, Civil Rights Division, counsel for the United States;

2. Clarke, Kristen, U.S. Department of Justice, Civil Rights Division, counsel for the United States;

3. Lee, Jason, U.S. Department of Justice, Civil Rights Division, counsel for the United States.

The United States certifies that no publicly traded company or corporation has an interest in the outcome of this appeal.

s/ Jason Lee
JASON LEE
Attorney

Date:  March 17, 2023

**TABLE OF CONTENTS**

**PAGE**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT .............................................................. C-1

INTEREST OF THE UNITED STATES ................................................. 1

STATEMENT OF THE ISSUE .............................................................. 2

STATEMENT OF THE CASE ............................................................... 3

    *1.*   *Statutory Background* ............................................................3

    *2.*   *Factual Background* .............................................................4

    *3.*   *Procedural History* ..............................................................6

SUMMARY OF ARGUMENT ................................................................9

ARGUMENT

    I    AN EMPLOYER-SPONSORED HEALTH INSURANCE
         PLAN VIOLATES TITLE VII IF IT EXCLUDES
         COVERAGE FOR MEDICAL TREATMENTS ONLY
         WHEN THEY ARE NEEDED TO PROVIDE GENDER-
         AFFIRMING CARE ......................................................10

         *A.*   *Such An Exclusion Facially Discriminates Based On Sex
            By Making Coverage Contingent On Whether The Care
            Seeks To Align An Individual's Sex Characteristics With
            Their Gender Identity* ...............................................10

         *B.*   *Neither Defendants' Arguments, Nor This Court's
            Decision In* Adams, *Warrant A Contrary Conclusion* ..............14

**TABLE OF CONTENTS (continued):**                                    **PAGE**

II    A GOVERNMENTAL ENTITY ACTS AS
      A PUBLIC EMPLOYER'S "AGENT" UNDER
      TITLE VII WHERE THE ENTITY PROVIDES AND
      ADMINISTERS HEALTH INSURANCE BENEFITS
      TO THE EMPLOYER'S EMPLOYEES ...........................................21

      A.    *Providing And Administering Health Insurance Benefits
            Are Functions Traditionally Exercised By An Employer* ........21

      B.    *Defendants' Policy-Based Argument Is Unpersuasive*.............24

CONCLUSION ..................................................................................... 25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

**CASES:**                                                                 **PAGE**

*Adams* v. *School Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) (en banc)...............................................9, 18-20

*Aerospace & Agr. Implement Workers of Am.* v. *Johnson Controls, Inc.*,
  499 U.S. 187 (1991)...................................................................................12

\**Bostock* v. *Clayton Cnty.*, 140 S. Ct. 1731 (2020).........................................*passim*

\**Boyden* v. *Conlin*, 341 F. Supp. 3d 979 (W.D. Wash. 2018).....................13-15, 22

*Bray* v. *Alexandria Women's Health Clinic*, 506 U.S. 263 (1993).........................12

*C.P.* v. *Blue Cross Blue Shield of Ill.*, No. 20-cv-6145,
  2022 WL 17788148 (W.D. Wash. Dec. 19, 2022).........................................13

*Carparts Distrib. Ctr., Inc.* v. *Automotive Wholesaler's Ass'n*
  *of New Eng., Inc.*, 37 F.3d 12 (1st Cir. 1994).........................................22-24

*City of L.A., Dep't of Water & Power* v. *Manhart*, 435 U.S. 702 (1978)...............11

*Davis* v. *Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390 (11th Cir. 1997),
  rev'd on other grounds, 526 U.S. 629 (1999)...............................................20

*Dothard* v. *Rawlinson*, 433 U.S. 321 (1977)...........................................................23

*Edmo* v. *Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019),
  cert. denied, 141 S. Ct. 610 (2020)..............................................................17

*Fain* v. *Crouch*, No. 20-cv-740,
  2022 WL 3051015 (S.D. W. Va. Aug. 2, 2022)............................................13

*Fitzpatrick* v. *Bitzer*, 427 U.S. 445 (1976)..............................................................20

*Flack* v. *Wisconsin Dep't of Health Servs.*,
  328 F. Supp. 3d 931 (W.D. Wis. 2018).........................................................13

*Fletcher* v. *Alaska*, 443 F. Supp. 3d 1024 (D. Alaska 2020)...........................13, 15

**CASES (continued):**                                                                    **PAGE**

*Geduldig* v. *Aiello*, 417 U.S. 484 (1974) ...................................................................16

*General Elec. Co.* v. *Gilbert*, 429 U.S. 125 (1976),
    superseded by statute as stated in
    *Shaw* v. *Delta Airlines*, 463 U.S. 85 (1983) ........................................... 15-16

*Glenn* v. *Brumby*, 663 F.3d 1312 (11th Cir. 2011)...............................................3, 19

*Grimm* v. *Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir.),
    as amended (Aug. 28, 2020),
    cert. denied, 141 S. Ct. 2878 (2021) .............................................................17

*Hammons* v. *University of Md. Med. Sys. Corp.*, No. 20-cv-2088,
    2023 WL 121741 (D. Md. Jan. 6, 2023) ......................................................13

*Hishon* v. *King & Spalding*, 467 U.S. 69 (1984) ......................................................14

*Jimenez* v. *Laborer's Welfare Fund of the Health & Welfare Dep't
    of the Constr. & Gen. Laborers' Dist. Council of Chi. & Vicinity*,
    493 F. Supp. 3d 671 (N.D. Ill. 2020)..............................................................22

*Kadel* v. *Folwell*, No. 19-cv-272,
    2022 WL 3226731 (M.D.N.C. Aug. 10, 2022) ....................................... 13-15

*Lyes* v. *City of Riviera Beach*, 166 F.3d 1332 (11th Cir. 1999) (en banc) ........ 21-22

*Moore* v. *City of San Jose*, 615 F.2d 1265 (9th Cir. 1980)......................................23

*Newport News Shipbuilding & Dry Dock Co.* v. *EEOC*,
    462 U.S. 669 (1983)........................................................................ 11, 16, 19

*Owens* v. *Rush*, 636 F.2d 283 (10th Cir. 1980) ......................................................23

*Peppers* v. *Cobb Cnty.*, 835 F.3d 1289 (11th Cir. 2016)........................................21

*Shaw* v. *Delta Airlines*, 463 U.S. 85 (1983) ...........................................................15

- iv -

**CASES (continued):** **PAGE**

*Williams* v. *City of Montgomery*, 742 F.2d 586 (11th Cir. 1984) (per curiam),
cert. denied, 470 U.S. 1053, and 471 U.S. 1005 (1985)........................ 22, 24

**STATUTES:**

Civil Rights Act of 1964, Title VII
42 U.S.C. 2000e(a) ............................................................................3, 23
42 U.S.C. 2000e(b) ............................................................................ *passim*
42 U.S.C. 2000e(k) ............................................................................16
42 U.S.C. 2000e-2(a)..................................................................... 1, 19, 21
42 U.S.C. 2000e-2(a)(1) ............................................................... 3, 11, 15
42 U.S.C. 2000e-2(e).........................................................................19
42 U.S.C. 2000e-5(a).........................................................................2
42 U.S.C. 2000e-5(f)(1)......................................................................2

Equal Education Amendments of 1972, Title IX
20 U.S.C. 1681(a) ........................................................................ 18-19

Patient Protection and Affordable Care Act
42 U.S.C. 18116(a)........................................................................4, 13
Pub. L. No. 111-148, 124 Stat. 119 (2010) ....................................4

**RULE:**

Fed. R. App. P. 29(a) ...............................................................................2

**MISCELLANEOUS:**

EEOC Compliance Manual
§ 2-III(B)(1)(a)(i).................................................................... 23-24
§ 2-III(B)(2)(a)..............................................................................23
§ 2-III(B)(2)(b) .............................................................................23

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 22-13626

ANNA LANGE,

Plaintiff-Appellee

v.

HOUSTON COUNTY, GEORGIA, *et al.*,

Defendants-Appellants

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA

_____

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING PLAINTIFF-APPELLEE AND URGING
AFFIRMANCE ON THE ISSUES ADDRESSED HEREIN

_____

**INTEREST OF THE UNITED STATES**

The United States has a substantial interest in this appeal, which concerns

the proper application of the prohibition on sex discrimination in Title VII of the

Civil Rights Act of 1964, 42 U.S.C. 2000e-2(a), to an employer's denial of health

insurance benefits to a transgender worker, and also the statute's definition of

"employer," 42 U.S.C. 2000e(b), as applied to third parties that provide and

administer employment benefits.  The Attorney General and the Equal

Employment Opportunity Commission (EEOC) share enforcement authority under

Title VII.  See 42 U.S.C. 2000e-5(a) and (f)(1).  The United States has filed other amicus briefs addressing the rights of transgender workers, see, *e.g.*, U.S. Brief as Amicus Curiae, *Copeland* v. *Georgia Dep't of Corr.*, No. 22-13073 (11th Cir. Dec. 8, 2022), and Title VII's definition of "employer," see U.S. Brief as Amicus Curiae, *Davis* v. *Parish of Caddo*, No. 21-30694, 2022 WL 2955156 (5th Cir. July 26, 2022).

The United States files this brief under Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUE

Plaintiff-appellee Anna Lange, a transgender woman and former deputy in the Houston County Sheriff's Office, was denied health insurance coverage for medically necessary care for the treatment of gender dysphoria, based on an exclusion in her health insurance plan for "[s]ervices and supplies for a sex change."  Doc. 155-1, at 71.[1]  The plan would have covered such care, however, if it were provided for some other medically necessary purpose.  Defendant-appellant Houston County provided and administered the plan for Sheriff's Office employees, on behalf of the Sheriff's Office.  The United States will address the following questions:

---

[1] "Doc. __, at __" refers to the docket entry and page number of documents filed on the district court's docket.  "Br. __" refers to appellants' opening brief and page number.

1.  Whether an employer-sponsored health insurance plan that denies coverage for medically necessary gender-affirming care, but covers that same care when provided for other medically necessary purposes, facially discriminates on the basis of sex in violation of Title VII.

2.  Whether a governmental entity that, on behalf of a public employer, provides and administers health insurance benefits to the employer's employees constitutes an "agent" of the employer under Title VII.[2]

## STATEMENT OF THE CASE

*1.    Statutory Background*

Title VII bars a covered employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex." 42 U.S.C. 2000e-2(a)(1). This prohibition on sex discrimination includes discrimination on the basis of gender identity. See *Bostock* v. *Clayton Cnty.*, 140 S. Ct. 1731, 1737 (2020); cf. *Glenn* v. *Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011) (same principle under the Equal Protection Clause). Title VII defines the term "employer" to include not only state governments, governmental agencies, and political subdivisions, but also "any agent" of such an entity. 42 U.S.C. 2000e(a) and (b).

---

[2]  The United States takes no position on any other issue in this appeal.

- 4 -

2.    *Factual Background*

a.  Pursuant to a "long-standing informal intergovernmental arrangement," the Houston County Sheriff's Office offers its employees healthcare coverage by permitting them to enroll in Houston County's health insurance plan.  Doc. 137-5, at 2; Doc. 150-23, at 2-3.  The plan is "self-funded" (Doc. 205, at 3), meaning that the County's third-party administrator of the plan, Anthem Blue Cross Blue Shield, pays employees' and dependents' medical claims using funds provided by the County and obtained through employee contributions (Doc. 150-1, at 8-9, 16).  The plan contains a number of benefit exclusions.  As relevant here, it excludes coverage for "[s]ervices and supplies for a sex change and/or the reversal of a sex change" and "[d]rugs for sex change surgery."  Doc. 155-1, at 71, 73.  Following enactment of the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, 124 Stat. 119 (2010), which, among other things, bars sex discrimination in health programs and activities receiving federal financial assistance, 42 U.S.C. 18116(a), Anthem recommended that the County remove these exclusions from the plan.  Doc. 205, at 4.  The County rejected Anthem's recommendation and chose to retain the exclusions.  Doc. 205, at 4.

b.  Lange began working for the Houston County Sheriff's Office in 2006 and was promoted to Sergeant in 2012.  Doc. 147, at 2.  At that time, Lange presented as male.  Doc. 147, at 3.  A few years later, Lange was diagnosed with

gender dysphoria and, in 2017, she began presenting as female and changed her legal name to align with her gender identity.  Doc. 147, at 3-4.

That same year, Lange met with defendant-appellant Sheriff Talton and the County's personnel director to tell them that she was transgender and inform them of her "transition plans."  Doc. 147, at 4.  She also requested permission to wear a female uniform at work and present herself as female in the office.  Doc. 205, at 5.  Sheriff Talton granted Lange's requests but commented that he did not "believe in sex changes."  Doc. 205, at 5 (citation omitted).  The next day, during a meeting chaired by Sheriff Talton, Lange "came out to her coworkers."  Doc. 205, at 5.  Sheriff Talton acknowledged that Lange's transition was a "sensitive" and "serious subject" but reiterated that he "didn't believe in all this."  Doc. 205, at 5-6 (citation omitted).

As part of her transition, Lange took steps to make her "appearance more female over time."  Doc. 147, at 3-4.  She began hormone replacement therapy under the care of an endocrinologist.  Doc. 147, at 3.  And she underwent surgery "to feminize her chest."  Doc. 205, at 2.  Lange personally paid for the costs of the surgery because she "knew that the County's Health Plan would not cover it."  Doc. 147, at 5.

As one of the "next step[s]" in Lange's treatment for gender dysphoria, and on the recommendation of her endocrinologist, two psychologists, and a surgeon,

- 6 -

Lange sought "genital surgery." Doc. 147, at 6. The procedure qualified as "medically necessary" under Anthem's guidelines (Doc. 205, at 4), and thus, Anthem initially told Lange that it would be covered under her health insurance plan (Doc. 147, at 8; see also Doc. 205, at 6). However, the County official responsible for administration of the plan later consulted with the County's insurance broker and "worked with Anthem to ensure" that the exclusion of coverage for gender-affirming care would apply under the plan. Doc. 205, at 4, 6. Consequently, Lange's preauthorization request for her procedure was denied based on the plan's "benefit exclusion" for "[s]ex [r]eassignment [s]urgery." Doc. 150-5, at 85.

3.    *Procedural History*

a.  Lange filed suit in the Middle District of Georgia against the County and Sheriff Talton. Doc. 1. As relevant here, she alleged that the exclusion of coverage in the County's health insurance plan for gender-affirming surgery and related medication violates Title VII "by intentionally providing lesser terms of compensation to employees  *  *  *  who are seeking a gender transition." Doc. 56, at 28.

b.  The parties cross-moved for summary judgment on Lange's Title VII claim, and the district court held that the plan's exclusion of coverage "facially discriminat[es]" on the basis of sex. Doc. 205, at 22. The court found that the

challenged exclusion denies coverage for certain procedures and drugs only when they are related to gender-affirming surgery." Doc. 205, at 23. For example, the plan "pays for mastectomies when medically necessary for cancer treatment," but it denies coverage "when mastectomies are medically necessary for [gender-affirming] surgery." Doc. 205, at 23. Similarly, "the plan pays for hormone replacement therapy medically necessary for the treatment of menopause, but not hormone replacement therapy medically necessary for" an employee's gender-affirming care. Doc. 205, at 23. Thus, given the "undisputed" fact that the challenged provisions of the plan deny coverage "only [for] transgender members," the court held that the plan facially discriminates based on sex. Doc. 205, at 23.

Defendants' arguments to the contrary, the district court held, lacked merit. Doc. 205, at 24-28. For example, the court rejected defendants' contention that the health insurance plan does not discriminate based on transgender status, but rather, based on whether a "transgender individual[] * * * want[s] [gender] transition surgery." Doc. 205, at 24 (emphasis and citation omitted). As the court pointed out, this argument simply confirmed that "[t]ransgender employees cannot get medically necessary treatment" for gender-affirming medical care "because they are transgender." Doc. 205, at 24. The court also found unpersuasive defendants' argument that a plan only facially discriminates "if it completely excludes coverage for transgender care." Doc. 205, at 26 (emphasis and citation omitted).

As the court stated pointedly, "Title VII does not exempt 'partial' violations." Doc. 205, at 28.

The district court also held that Lange had properly named the County as a defendant because it had "acted as the Sheriff's agent" for purposes of Lange's Title VII challenge. Doc. 205, at 10-12. Specifically, the County had performed "function[s] traditionally exercised by an employer"—namely, providing a health insurance plan to employees of the Sheriff's Office, administering the plan, and denying claims based on exclusions in the plan—and it had done so "on behalf of the Sheriff." Doc. 205, at 12.

Accordingly, as defendants had not argued that the exclusion of coverage was otherwise justified under Title VII, the district court entered summary judgment in Lange's favor on the issue of whether defendants' plan violated Title VII. Doc. 205, at 22 n.12, 28. The court later held a two-day jury trial on the question of relief, including damages. The jury awarded Lange $60,000 in compensatory damages for emotional distress, and the court issued a permanent injunction requiring defendants to direct Anthem to process Lange's medical claim

without application of the challenged exclusion.  Doc. 258, at 1; Doc. 259, at 236-237.

c.  Defendants timely appealed.  Doc. 262.

## SUMMARY OF ARGUMENT

This Court should affirm two key aspects of the district court's summary-judgment ruling.  First, the Court should hold that an employer violates Title VII if it provides a health insurance plan that denies transgender employees coverage for medically necessary gender-affirming care, when the care would otherwise be covered if provided for some other medically necessary reason.  Such a plan facially discriminates based on sex because it denies medical care only when the care is provided to align an individual's sex characteristics to match their gender identity, instead of their sex assigned at birth.  Indeed, many courts have agreed that materially identical exclusions of coverage for gender-affirming care constitute unlawful sex discrimination, using logic analogous to the district court's in this case.  Defendants challenge the court's ruling on a number of grounds, but their arguments misunderstand the Title VII analysis and should be rejected.  Similarly, nothing in this Court's recent en banc decision in *Adams* v. *School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022), warrants a contrary conclusion.

Second, the Court should affirm that where a third-party entity, on behalf of an employer, provides and administers health insurance benefits to the employer's employees, the third party may be liable under Title VII as an agent of the employer.  Title VII's text, applicable case law, and guidance from EEOC all support this proposition and further confirm that it applies equally to private and public employers.  Defendants contest the district court's ruling on policy grounds, arguing that it would represent an "expansive application" of the statute to find that, in providing and administering health insurance benefits for Sheriff's Office employees, the County acted as an agent of the Sheriff's Office.  Br. 65 n.31.  But such a finding is hardly remarkable and follows from a straightforward application of Title VII's text and ordinary agency principles.

## ARGUMENT

## I

## AN EMPLOYER-SPONSORED HEALTH INSURANCE PLAN VIOLATES TITLE VII IF IT EXCLUDES COVERAGE FOR MEDICAL TREATMENTS ONLY WHEN THEY ARE NEEDED TO PROVIDE GENDER-AFFIRMING CARE

A.    *Such An Exclusion Facially Discriminates Based On Sex By Making Coverage Contingent On Whether The Care Seeks To Align An Individual's Sex Characteristics With Their Gender Identity*

The district court correctly held that where an employer denies healthcare coverage for medical treatment solely when the treatment is needed to align an employee's sex characteristics with their gender identity—even though the same

treatment would be covered if provided for a different medically necessary purpose—that constitutes facial sex discrimination and violates Title VII.  Title VII bars an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's  *  *  *  sex."  42 U.S.C. 2000e-2(a)(1).  As the Supreme Court explained in *Bostock* v. *Clayton County*, 140 S. Ct. 1731 (2020), the term "discriminate" refers to a "difference in treatment or favor" for an employee.  *Id.* at 1740 (citation omitted).  And the phrase "because of" requires that the employee's sex be a but-for cause of that difference in treatment.  *Id.* at 1739.

This prohibition on sex discrimination extends to employer-sponsored health insurance plans.  "Health insurance and other fringe benefits are 'compensation, terms, conditions, or privileges of employment'" under Title VII.  *Newport News Shipbuilding & Dry Dock Co.* v. *EEOC*, 462 U.S. 669, 682 (1983); see also Br. 16 (agreeing with this proposition).  And there is "no reason to believe that Congress intended a special definition of discrimination in the context of employee group insurance coverage."  *City of L.A., Dep't of Water & Power* v. *Manhart*, 435 U.S. 702, 710 (1978).

Under these principles, where an employer's health insurance plan covers certain medically necessary procedures and medications *except* when they constitute gender-affirming care—for example, medical care that treats a diagnosis

- 12 -

of gender dysphoria—the plan facially discriminates based on sex and violates Title VII. In such a situation, the plan conditions coverage based on whether a procedure or drug is provided to alter an individual's sex characteristics to match their gender identity and not their sex assigned at birth. In doing so, the plan "unavoidably discriminates against persons with one sex identified at birth and another today." *Bostock*, 140 S. Ct. at 1746.

This amounts to unlawful discriminatory treatment based on sex and transgender status. See Br. 17 (agreeing that "discriminat[ion] against an individual for being transgender" constitutes "discriminat[ion] against that individual because of his or her sex in violation of Title VII"). Otherwise eligible medical treatments are excluded from coverage, simply because they are provided to treat a medical diagnosis that is unique to transgender individuals. Cf. *Bray* v. *Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993) ("A tax on wearing yarmulkes is a tax on Jews."). The "explicit terms" of such a health insurance plan, therefore, are "not neutral," *Aerospace & Agr. Implement Workers of Am.* v. *Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991), as they expressly restrict, on the basis of sex, the benefits afforded to transgender employees for medically necessary care.

Many courts agree. Multiple district courts have concluded that exclusions of coverage for gender-affirming care, where such care would otherwise be

- 13 -

covered if provided for other medically necessary reasons, violate Title VII's

prohibition on sex discrimination. See *Kadel* v. *Folwell*, No. 19-cv-272, 2022 WL

3226731, at \*19-22 (M.D.N.C. Aug. 10, 2022); *Fletcher* v. *Alaska*, 443 F. Supp.

3d 1024, 1030 (D. Alaska 2020); *Boyden* v. *Conlin*, 341 F. Supp. 3d 979, 995-997

(W.D. Wash. 2018). Other courts have reached similar conclusions under Section

1557 of the ACA, which bars sex discrimination in health programs and activities

receiving federal financial assistance, 42 U.S.C. 18116(a), and under the Equal

Protection Clause of the Fourteenth Amendment. See *Hammons* v. *University of*

*Md. Med. Sys. Corp.*, No. 20-cv-2088, 2023 WL 121741, at \*10 (D. Md. Jan. 6,

2023) (ACA claim); *C.P.* v. *Blue Cross Blue Shield of Ill.*, No. 20-cv-6145, 2022

WL 17788148, at \*6 (W.D. Wash. Dec. 19, 2022) (same); *Fain* v. *Crouch*, No. 20-

cv-740, 2022 WL 3051015, at \*2, \*8 (S.D. W. Va. Aug. 2, 2022) (equal protection

claim), appeal pending, No. 22-1927 (4th Cir. filed Sept. 6, 2022); *Flack* v.

*Wisconsin Dep't of Health Servs.*, 328 F. Supp. 3d 931, 951-953 (W.D. Wis. 2018)

(ACA and equal protection claims).

Under the reasoning of these cases, which mirrors the logic on which the

district court relied here (Doc. 205, at 22-28), excluding coverage for a medical

treatment only when it is provided to treat gender dysphoria represents "textbook

sex discrimination," *Kadel*, 2022 WL 3226731, at \*19; see also *Boyden*, 341 F.

Supp. 3d at 995 (concluding that an analogous exclusion of coverage presented a

- 14 -

"straightforward case of discrimination" (citation omitted)).  While an employer

has discretion to decide which healthcare benefits it offers to enrollees, once it

decides to provide certain benefits, it may not dole them out in a discriminatory

way.  See *Hishon* v. *King & Spalding*, 467 U.S. 69, 75 (1984) ("A benefit that is

part and parcel of the employment relationship may not be doled out in a

discriminatory fashion, even if the employer would be free  *  *  *  simply not to

provide the benefit at all.").[3]

B.    *Neither Defendants' Arguments, Nor This Court's Decision In* Adams,
      *Warrant A Contrary Conclusion*

1.  Defendants offer a number of arguments for why an exclusion of

coverage for gender-affirming care allegedly comports with Title VII, but none has

merit.  First, defendants suggest that where a plan covers some treatments of

gender dysphoria, an exclusion of other gender-affirming treatments does not

facially discriminate based on sex.  Br. 38-40.  But the mere fact that *some* benefits

may be provided in a nondiscriminatory manner does not mean that discrimination

---

[3]  Exclusions of health insurance coverage for medically necessary gender-affirming care also discriminate based on sex under a sex-stereotyping theory of liability.  As the Supreme Court noted in *Bostock*, an employer violates Title VII if it fires an employee for "failing to fulfill traditional sex stereotypes."  *Bostock*, 140 S. Ct. at 1742-1743.  The type of exclusion at issue here discriminates on this basis:  it denies health insurance benefits because, as a result of the medical care sought by the employee, their sex characteristics will not match those that are traditionally associated with their sex assigned at birth.  See *Kadel*, 2022 WL 3226731, at *19; *Boyden*, 341 F. Supp. 3d at 997.

- 15 -

with regard to *other* "compensation, terms, conditions, or privileges of employment" has not occurred.  42 U.S.C. 2000e-2(a)(1).  Indeed, defendants' interpretation of Title VII would leave an employer free to discriminate on prohibited grounds in the provision of health insurance benefits, so long as it makes other benefits equally available to all employees.  This is simply not the law—as the district court correctly noted, "Title VII does not exempt 'partial' violations."  Doc. 205, at 28.  Accordingly, other courts have found exclusions of medically necessary gender-affirming surgery, for example, to be facially discriminatory even where the health insurance plans at issue covered some non-surgical treatments of gender dysphoria.  See *Kadel*, 2022 WL 3226731, at *3, *19; *Fletcher*, 443 F. Supp. 3d at 1027, 1030; *Boyden*, 341 F. Supp. 3d at 988, 997.

Second, defendants contend that such an exclusion is not facially discriminatory because not all transgender employees will want to undergo gender-affirming surgery.  Br. 59-60 & n.27.  This argument fails for multiple reasons—most notably, it echoes logic that Congress specifically rejected when it amended Title VII.  In *General Electric Co.* v. *Gilbert*, 429 U.S. 125 (1976), superseded by statute as stated in *Shaw* v. *Delta Airlines*, 463 U.S. 85 (1983), the Court considered an employer compensation plan that provided disability benefits to employees who could not work due to nonoccupational sickness or an accident, but denied such benefits for an employee's inability to work due to pregnancy.  *Id.* at

128-129.  Applying the logic of *Geduldig* v. *Aiello*, 417 U.S. 484 (1974), which considered an Equal Protection Clause challenge to a "strikingly similar disability [benefits] plan," the Court held that the exclusion "[was] not a gender-based discrimination" because while "pregnant women" are "exclusively female," "nonpregnant persons  *  *  *  include[] members of both sexes."  *Gilbert*, 429 U.S. at 133, 135-136 (citation omitted).

Two years later, Congress amended the definition of "because of sex" in Title VII to include pregnancy and related medical conditions.  See 42 U.S.C. 2000e(k).  Congress's aim in doing so was not merely to "overturn[] the specific holding" of *Gilbert*, but also to categorically "reject[] th[e] reasoning" used in that case.  *Newport News*, 462 U.S. at 676, 684.  Consequently, following Congress's amendment, "treat[ing] pregnancy-related conditions less favorably than other medical conditions" constitutes sex discrimination under Title VII, even though not all women will want to become pregnant.  *Id.* at 684.  And by extension, denying health insurance coverage to transgender employees for gender-affirming surgery constitutes sex discrimination under the statute, even though not all transgender individuals will seek out such treatment.

Defendants' argument also fails for two additional reasons.  It mistakes a potential lack of *injury* to some members of the protected class (*i.e.*, transgender employees who may be uninterested in pursuing gender-affirming surgery) for a

lack of facial discrimination under the plan.  And it ignores the fact that where a transgender employee *does* want to undergo such treatment, the plan impermissibly denies coverage based on the employee's sex.  See *Bostock*, 140 S. Ct. at 1742 (explaining that Title VII "makes each instance of discriminating against an individual employee because of that individual's sex an independent violation").

Third, defendants argue that a health insurance plan does not facially discriminate based on sex if it also denies cisgender employees coverage for gender-affirming surgery "when medically necessary to treat gender dysphoria." Br. 56.  As an initial matter, cisgender individuals—those whose gender identity aligns with their sex assigned at birth, see *Grimm* v. *Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594 (4th Cir.), as amended (Aug. 28, 2020), cert. denied, 141 S. Ct. 2878 (2021)—do not suffer gender dysphoria, which involves distress caused by a *discrepancy* between a person's gender identity and their sex assigned at birth, see *Edmo* v. *Corizon, Inc.*, 935 F.3d 757, 768 (9th Cir. 2019), cert. denied, 141 S. Ct. 610 (2020).  But regardless, defendants' argument fails because by making coverage contingent on whether a procedure seeks to change a person's sex characteristics to align with their gender identity, "the individual employee's sex plays an unmistakable and impermissible role in the [coverage] decision," thus violating Title VII.  *Bostock*, 140 S. Ct. at 1741-1742.

- 18 -

Fourth, defendants suggest that the district court's ruling affords transgender employees "more favorabl[e]" treatment under the plan than cisgender employees receive.  Br. 60.  Defendants contend that the plan excludes coverage for "[s]ervices or supplies for male or female sexual problems" and "[d]rugs to treat sexual or erectile problems," like infertility.  Br. 60 (alterations in original; citation omitted).  And they argue that because the vaginoplasty sought by Lange is "comparable" to a "procedure[] to treat a sexual dysfunction," requiring coverage for the former while excluding coverage for the latter discriminates in favor of transgender employees.  Br. 60.  But even assuming that defendants could show that the two types of care are indeed comparable, the district court's ruling would not treat transgender employees more favorably than cisgender employees.  The court simply held that Title VII requires defendants to cover medically necessary gender-affirming care where they *already* cover the same care when provided for other medically necessary purposes.  The court's ruling does not extend to medical care that defendants currently exclude for all employees.

2.  Nor does this Court's recent en banc decision in *Adams* v. *School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022), undermine the district court's Title VII analysis.  *Adams* held that a school policy barring a transgender student from using restrooms consistent with his gender identity did not violate the Equal Protection Clause or Title IX of the Education Amendments of 1972, 20 U.S.C.

- 19 -

1681(a).  *Id.* at 800-801.  Defendants only passingly refer to *Adams* in their

opening brief (Br. 44, 47), and they recently acknowledged in briefing before the

district court that *Adams* does not resolve Lange's Title VII claim (see Doc. 288, at

2 (admitting that *Adams* is neither "binding precedent" nor "dispositive" on

Lange's claim)).  Defendants aptly concede this point because *Adams* is inapposite.

In holding that the school's policy did not discriminate based on transgender

status in violation of the Equal Protection Clause, *Adams* distinguished *Bostock*

and relied on *Geduldig*.  See *Adams*, 57 F.4th at 808-809.  The opposite approach

is warranted here.  *Bostock* is governing Title VII precedent regarding the disparate

treatment of transgender employees, and *Geduldig*'s constitutional analysis does

not apply under Title VII.  See pp. 15-16, *supra* (discussing Congress's

amendment of Title VII following *Gilbert*).

*Adams* further concluded that the school's policy did not violate the Equal

Protection Clause because although the policy represented "a sex-based

classification," it satisfied intermediate scrutiny.  *Adams*, 57 F.4th at 801, 803.

However, unlike under the Equal Protection Clause, sex discrimination cannot be

justified under Title VII by showing that the challenged action serves an important

governmental interest.  See 42 U.S.C. 2000e-2(a) and (e); see also *Newport News*,

462 U.S. at 685 n.26; *Glenn* v. *Brumby*, 663 F.3d 1312, 1321 (11th Cir. 2011).

- 20 -

Finally, *Adams*' resolution of the student's Title IX claim does not conflict with the district court's holding under Title VII.  In concluding that the school's policy did not violate Title IX, the Court relied on the "express statutory and regulatory carve-outs [under the statute] for differentiating between the sexes when it comes to separate living and bathroom facilities."  *Adams*, 57 F.4th at 811.  By contrast, Title VII contains no statutory or regulatory carve outs permitting employers to deny health insurance benefits for otherwise-covered medical care simply because the care is provided to treat an employee's gender dysphoria.  The Court also rejected the student's reading of Title IX because, in its view, recipients of federal funding would have lacked sufficient notice under the Spending Clause that Title IX restricts a school's ability to deny transgender students access to certain restrooms based on their sex assigned at birth.  *Id.* at 815-817.  But unlike Title IX, Title VII is not Spending Clause legislation.  See *Fitzpatrick* v. *Bitzer*, 427 U.S. 445, 453 & n.9 (1976); *Davis* v. *Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1399 n.13 (11th Cir. 1997), rev'd on other grounds, 526 U.S. 629 (1999).

**II**

**A GOVERNMENTAL ENTITY ACTS AS A PUBLIC EMPLOYER'S
"AGENT" UNDER TITLE VII WHERE THE ENTITY PROVIDES AND
ADMINISTERS HEALTH INSURANCE BENEFITS TO THE
EMPLOYER'S EMPLOYEES**

A.     *Providing And Administering Health Insurance Benefits Are Functions
Traditionally Exercised By An Employer*

The district court's conclusion that the County was an "employer" for

purposes of Lange's Title VII claim (Doc. 205, at 10-12) correctly recognized that

(1) a third party may be subject to suit under Title VII where it acts as an "agent"

of a covered employer, 42 U.S.C. 2000e(b); (2) an agency relationship may be

found where the third party provides and administers health insurance benefits on

behalf of the employer to the employer's employees; and (3) this theory of liability

applies in the context of a public employer, just as it does in the context of private

employers.

1.  Title VII's prohibition on sex discrimination applies to covered

"employer[s]," 42 U.S.C. 2000e-2(a), which the statute defines to include

"agent[s]," 42 U.S.C. 2000e(b).  The term "employer" is "accord[ed] a liberal

construction."  *Lyes* v. *City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999)

(en banc).  Determining whether an entity constitutes an employer "requires

consideration of the totality of the employment relationship."  *Peppers* v. *Cobb

Cnty.*, 835 F.3d 1289, 1297 (11th Cir. 2016).

Given the statute's clear instruction that agents of covered employers can themselves constitute an "employer" under Title VII, this Court has identified certain circumstances when a qualifying agency relationship will be found. As relevant here, an agency relationship exists where a third party performs functions "traditionally exercised by an employer" on behalf of the employer. *Williams* v. *City of Montgomery*, 742 F.2d 586, 589 (11th Cir. 1984) (per curiam), cert. denied, 470 U.S. 1053, and 471 U.S. 1005 (1985); see also *Lyes*, 166 F.3d at 1341 (instructing that an agency relationship exists "where an employer delegates sufficient control of some traditional rights over employees to a third party"). These include "establishing a pay plan, formulating minimum standards for jobs, evaluating employees, and transferring, promoting, or demoting employees." *Williams*, 742 F.2d at 589.

2. As multiple courts recognize, such functions also include providing and administering health insurance benefits for the employees of a covered employer. See, *e.g.*, *Jimenez* v. *Laborer's Welfare Fund of the Health & Welfare Dep't of the Constr. & Gen. Laborers' Dist. Council of Chi. & Vicinity*, 493 F. Supp. 3d 671, 679 (N.D. Ill. 2020); *Boyden* v. *Conlin*, 341 F. Supp. 3d 979, 997-998 (W.D. Wash. 2018); see also *Carparts Distrib. Ctr., Inc.* v. *Automotive Wholesaler's Ass'n of New Eng., Inc.*, 37 F.3d 12, 14 (1st Cir. 1994) (relying on Title VII principles to hold that a third-party entity may be an "employer" under Title I of

- 23 -

the Americans with Disabilities Act (ADA) where it "act[s] on behalf of [a covered employer] in the matter of providing and administering employee health benefits"). Consistent with these holdings, EEOC's Compliance Manual advises that "[i]nsurance providers" and "benefits administrators" may constitute agents of a covered employer under Title VII.  EEOC Compliance Manual § 2-III(B)(2)(a); see also *id.* § 2-III(B)(2)(b).  This approach makes practical sense, as it prevents an employer from "insulat[ing] a discriminatory [benefits] plan from attack under Title VII," simply by "delegati[ng]  *  *  *  responsibility for [the] employee benefits" to a third party.  *Carparts Distrib. Ctr.*, 37 F.3d at 17 (citation omitted).

3.  An agent that provides and administers health insurance benefits may be held liable as an "employer" under Title VII, even if that agent is a governmental entity.  Title VII's text plainly supports such a reading.  Congress intended that "Title VII principles be applied to governmental and private employers alike." *Dothard* v. *Rawlinson*, 433 U.S. 321, 332 n.14 (1977); see also *Moore* v. *City of San Jose*, 615 F.2d 1265, 1273 (9th Cir. 1980); *Owens* v. *Rush*, 636 F.2d 283, 287 (10th Cir. 1980).  Accordingly, Title VII's definition of "employer," with its reference to a covered employer's "agent," does not distinguish between public and private entities.  Rather, it applies equally to, among other things, private "corporations" and "governments, governmental agencies, [and] political subdivisions."  42 U.S.C. 2000e(a) and (b); accord EEOC Compliance Manual § 2-

- 24 -

III(B)(1)(a)(i) ("'Employers' include private sector and state and local government entities.").[4]

This Court also has applied agency principles to public employers. In *Williams*, for example, the Court held that the Personnel Board of Montgomery City-County was an agent of the City for purposes of Title VII. *Williams*, 742 F.2d at 589. In reaching that conclusion, the Court did not question the applicability of Title VII's agency theory of liability to public entities. See *id.* at 588-589.

B.   *Defendants' Policy-Based Argument Is Unpersuasive*

Defendants do not contest on any legal grounds the district court's analysis of agency under Title VII. Rather, they proffer a policy argument, contending that the court's reasoning will result in an "expansive application" of Title VII, under which courts will find an agency relationship any time "a sheriff arranges to provide health insurance coverage for his or her employees" through a health insurance plan offered and administered by a county. Br. 65 n.31. However, under those circumstances, such an unremarkable finding would simply reflect— consistent with Title VII's text and ordinary agency principles—that where a county provides such coverage and administers the plan at the behest and on behalf of a sheriff, the county does so in the capacity of an agent. Cf. *Carparts Distrib.*

---

[4] Title VII's definition of "employer" excludes the United States and corporations wholly owned by the United States government. 42 U.S.C. 2000e(b).

*Ctr.*, 37 F.3d at 17-18 (explaining that a health insurance provider and its administering trust may constitute "employers" or "agents" of a covered entity under Title I of the ADA).

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's summary-judgment ruling on the issues addressed herein.

Respectfully submitted,

KRISTEN CLARKE
  Assistant Attorney General

s/ Jason Lee
TOVAH R. CALDERON
JASON LEE
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 598-1317

## CERTIFICATE OF COMPLIANCE

I certify that the attached BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING PLAINTIFF-APPELLEE AND URGING AFFIRMANCE ON THE ISSUES ADDRESSED HEREIN:

(1)  complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 5,315 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and

(2)  complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2019, in 14-point Times New Roman font.

s/ Jason Lee
JASON LEE
 Attorney

Date:  March 17, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2023, I electronically filed the foregoing BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING PLAINTIFF-APPELLEE AND URGING AFFIRMANCE ON THE ISSUES ADDRESSED HEREIN with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.  I further certify that four paper copies identical to the electronically filed brief will be mailed to the Clerk of the Court by Federal Express.

s/ Jason Lee
JASON LEE
  Attorney