# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

## HOUSTON COUNTY, GEORGIA, AND HOUSTON COUNTY SHERIFF CULLEN TALTON, IN HIS OFFICIAL CAPACITY
### Defendants-Appellants,

v.

## ANNA LANGE
### Plaintiff-Appellee.

## ON APPEAL FROM
## THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA, MACON DIVISION
## CASE NO.: 5:19-CV-00392-MTT

## REPLY BRIEF OF DEFENDANTS-APPELLANTS

Sharon P. Morgan, Georgia Bar No. 522955
R. Read Gignilliat, Georgia Bar No. 293390
William D. Deveney, Georgia Bar No. 219744
Patrick L. Lail, Georgia Bar No. 431101
**ELARBEE, THOMPSON, SAPP & WILSON LLP**
800 International Tower
229 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 659-6700

**Attorneys for Defendants-Appellants**

# APPELLANTS' CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellants hereby certify that the following is a full and complete list of all interested persons as defined under the above-referenced rules that may have an interest in the outcome of this case:

a) Allen & Overy LLP (Counsel for Amicus Curiae Lawyers' Committee for Civil Rights Under Law)

b) Anti-Defamation League (Amicus Curiae)

c) Arkles, Z. Gabriel (Counsel for Appellee)

d) Barry, Kevin M. (Counsel for Appellee)

e) Barton, III, Kenneth E. (Counsel for Appellee)

f) Bone, Michelle (Counsel for Amicus Curiae Lawyers' Committee for Civil Rights Under Law)

g) Brown, David (Counsel for Appellee)

h) Calderon, Tovah R. (Counsel for Amicus Curiae Department of Justice)

i) Clarke, Kristen (Counsel for Amicus Curiae Department of Justice)

j) Cooper, Barton & Cooper (Counsel for Appellee)

k)      Cooper, M. Devlin (Counsel for Appellee)

l)      Deveney, William D.  (Counsel for Appellants)

m)      Elarbee, Thompson, Sapp & Wilson, LLP (Counsel for Appellants)

n)      Equal Rights Advocates (Amicus Curiae)

o)      Fata, Catherine Elizabeth (Counsel for Appellee)

p)      Gignilliat, R. Read (Counsel for Appellants)

q)      Grant, Jill K. (Counsel for Appellee)

r)      Greenbaum, Jon (Counsel for Amicus Curiae Lawyers' Committee for Civil Rights Under Law)

s)      Houston County, Georgia (Defendant-Appellant)

t)      Kieckhafer, Katherine (Counsel for Amicus Curiae Lawyers' Committee for Civil Rights Under Law)

u)      Lail, Patrick L. (Counsel for Appellants)

v)      Lee, Jason (Counsel for Amicus Curiae Department of Justice)

w)      Lange, Anna (Plaintiff-Appellee)

x)      LatinoJustice PRLDEF (Amicus Curiae)

y)      Lawyers' Committee for Civil Rights Under Law (Amicus Curiae)

z)  Mitrokostas, Nicholas K. (Counsel for Amicus Curiae Lawyers' Committee for Civil Rights Under Law)

aa)  Morgan, Sharon P.  (Counsel for Appellants)

bb)  National Employment Law Project (Amicus Curiae)

cc)  National Health Law Program (Amicus Curiae)

dd)  National Women's Law Center (Amicus Curiae)

ee)  Payne, Amanda M. (Counsel for Appellee)

ff)  Powell, Wesley (Counsel for Appellee)

gg)  Quinnipiac University School of Law Legal Clinic (Counsel for Appellee)

hh)  Talton, Cullen (in his official capacity as Sheriff) (Defendant-Appellant)

ii)  Transgender Legal Defense Education Fund, Inc. (Counsel for Appellee)

jj)  Treadwell, Hon. Marc T. (District Court Judge)

kk)  U.S. Department of Justice (Amicus Curiae)

ll)  Wilkie Farr & Gallagher LLP (Counsel for Appellee)

mm)  Youker, Kathryn J. (Counsel for Amicus Curiae Lawyers' Committee for Civil Rights Under Law)

# TABLE OF CONTENTS

APPELLANTS' CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ....................................... C-1

TABLE OF CONTENTS ............................................................. i

TABLE OF CITATIONS .......................................................... iv

ARGUMENT AND CITATION OF AUTHORITY .................................... 1

    I.   The Injunction, which relies on the district court's
        summary judgment Order, should be dissolved. ........................ 1

   II.   Lange cannot meet the summary judgment
        standard applicable to her as the party bearing
        the burden of proof ....................................................... 3

        A.   The Supreme Court precedent upon which
            Lange relies neither mandates nor authorizes
            Summary judgment in her favor ..................................... 5

            1.   Neither *Bostock* nor *Johnson Controls* mandates
                Summary judgment in Lange's favor ......................... 5

            2.   Neither *Manhart* nor *Newport News* mandate
                 summary judgment in Lange's favor .......................... 7

3. *Young* does not mandate summary judgment in Lange's favor.............................................................9

B. Lange does not contest that there exists a genuine issue of fact as to whether the Health Plan covers non-surgical treatment for gender dysphoria........................................................10

C. The question of intent is material to Lange's disparate treatment claim under Title VII...................11

D. The context of the Health Plan shows the Exclusion is not facially discriminatory .........................13

E. The Exclusion does not "necessarily" discriminate on the basis of gender stereotypes or "penalize" a person "based on the sheer fact of the[ir] transition." ...............................................22

F. The non-binding, extracircuit authority cited by Lange does not support the district court's grant of summary judgment. .........................................25

III. The District Court erred in holding that the County is the Sheriff's Agent ...........................................................30

CONCLUSION ........................................................................................ 31

# TABLE OF CITATIONS

## Cases

\* *Adams v. Sch. Bd. of St. Johns County, Florida*,
57 F.4th 791 (11th Cir. 2022) (en banc) ........................................ *passim*

*Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308
(11th Cir. 1994)................................................................................ 18

*Avirgan v. Hull*, 932 F.2d 1572 (11th Cir. 1991) ...................................... 4

*Bostock v. Clayton County, Georgia*,
140 S. Ct. 1731 (2020) ................................................. *passim*

*Boyden v. Conlin*, 341 F. Supp. 3d 979
(W.D. Wis. Sept. 18, 2018)........................................................27

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)............................................ 4

*City of Los Angeles v. Manhart*,
435 U.S. 702, 710 (1978) ............................................................... 7

*C.P. v. Blue Cross Blue Shield*, 2022 WL 17788148
(W.D. Wash. Dec. 19, 2022)...................................................... 26

*Earley v. Champion Int'l Corp.*, 907 F.2d 1077 (11th Cir. 1990)............. 13

*Eknes-Tucker v. Marshall*, 603 F. Supp. 3d 1131
(M.D. Ala. 2022) ...................................................................... 24

*Fain v. Crouch*, 342 F.R.D. 109 (S.D. W. Va. Aug. 2, 2022) .................. 25

*Fain v. Crouch*, 2023 WL 2908815 (4th Cir. April 12, 2023) .................. 25

*Flack v. Wisconsin Department of Health Services*,
328 F. Supp. 3d 931 (W.D. Wis. 2018) ..................................... 26

*Flack v. Wisconsin Department of Health Services,*
395 F. Supp. 3d 1001 (W.D. Wis. 2019) .................................................. 26

*Fletcher v.* Alaska, 443 F. Supp. 3d 1024
(D. Alaska 2020) .............................................................................. 28, 29

*Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) ............ *passim*

*International Union, United Auto, Aerospace & Agriculture. Implement
Workers of Am., UAW v. Johnson Controls, Inc.,*
499 U.S. 187 (1991) ............................................................................ 6, 7

*Kadel v. Folwell*, 2022 WL 3226731 (M.D.N.C. Aug. 10, 2022).............. 25

*Kadel v. Folwell*, 2023 WL 2908816 (4th Cir. Apr. 12, 2023) .................. 25

*Kirby v. Anthem, Inc.*, Civil Action No. 1-19-CV-00597-ELR, 2019 U.S.
Dist. LEXIS 78840 (N.D. Ga. Mar. 21, 2019) ........................................ 14

*Lewis v. City of Union City, Ga.*, 918 F.3d 1213
(11th Cir. 2019) *(en banc)* ........................................................................ 13

*Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.,*
462 U.S. 669 (1983) ........................................................................ 7, 8, 9

*Nguyen v. INS*, 533 U.S. 53 (2001) ........................................... 6, 28

*Phillips v. Martin Marietta Corporation*, 400 U.S. 542 (1971) ............12

*United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa
Ctys. in Ala.*, 941 F.2d 1428 (11th Cir. 1991) *(en banc)* ...................... 3, 4

*Whitaker v. Kenosha Unified School District No. 1 Board of Education,*
858 F.3d 1034 (7th Cir. 2017) ........................................................ 16, 27

*Whiteside v. Metropolitan Life Ins. Co.*, 798 F. Supp. 1380
(D. Minn. 1992) ................................................................................. 18

\* *Williams v. City of Montgomery*, 742 F.2d 586
(11th Cir. 1984) (per curiam) ............................................................ 30, 31

\* *Young v. United Parcel Service*, 575 U.S. 206 (2015) ...................... 9, 10

## Statutes, Rules, and Regulations

42 U.S.C. § 2000e-2(a)(1) ...................................................................... 12

92 Stat. 2076 ("PDA") ............................................................................ 9

10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
Federal Practice and Procedure, § 2727.1 ......................................... 4

Equal Protection Clause of the Fourteenth Amendment to the U.S.
Constitution ("Equal Protection Clause") ...................................... *passim*

Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 10(b)(i), 42 C.F.R. §§
440.230(b), 440.240(a) (the "Medicaid Act") ................................... 25, 26

# ARGUMENT AND CITATION OF AUTHORITES

## I. The Injunction, which relies on the district court's summary judgment Order, should be dissolved.

This is not the typical appeal of a claim under Title VII. The district court granted summary judgment in favor of Plaintiff, Anna Lange, who bore the burden of proof on her disparate treatment claim. The basis for that grant was the district court's determination that Defendant Houston County's health insurance plan ("Health Plan") is facially discriminatory and, thus, no evidence of actual discriminatory intent, a hallmark of the burden of proof under Title VII, was necessary. [Doc. 205, p. 22.[1/]]

The district court reached this assessment despite the fact that the Health Plan exclusions at issue are *not* categorically applied to all forms of transgender care. Lange herself testified that her endocrinologist visits and her hormone treatments have been routinely covered by the Health Plan both before and after the filing of this action. [Doc. 137-3, pp. 49:1-50:8; Lange Dep. II (filed under seal), Ex. 36; p. 129:18-124-17; 147; 10-23.] Lange filed this action only after and because her 2018 pre-

---

[1/] Defendants cite to the district court filings based on their docket number as "Doc. __" and to the appellate court filings by their docket number as "App. Doc. __." Specific page citations refer to the court legend pagination at the top of each page.

authorization request for gender-confirming surgery was denied pursuant to the "sex change" exclusions.[2] [Doc. 1, p. 18, ¶ 81.]

The Exclusion, however, applies to both "sex change and/or *the reversal of a sex change*," showing that the Exclusion focuses on a surgical procedure—not a value judgment on being transgender. [Doc. 1, p. 15, 68.] Otherwise, the Exclusion would not apply to—and the Health Plan *would* cover—a sex change *reversal*. Furthermore, the way the Health Plan treats transgender care is similar to how it treats other conditions such as obesity and hearing—covering initial treatments but excluding the most expensive forms of treatments: bariatric surgery and hearing aids, respectively. [Doc. 150-4, pp. 49-51; 150-5, p. 67; 155-1, pp. 70-72.]

Accordingly, the specific issue presented is whether the Health Plan's limitation of covered medical care for gender dysphoria to non-surgical treatment constitutes a *per se* violation of Title VII. As Defendants demonstrated in their opening brief, the Supreme Court precedent upon which Lange relies does not entitle her to summary

---

[2] In the proceedings below, the district court referred to the two exclusions at issue—medical exclusion number 54 and pharmacy exclusion number 25—collectively as the "Exclusion," and consistent with their opening brief, Defendants do the same here.

judgment on that question.  The district court therefore erred in granting summary judgment to Lange under Title VII, including its finding that the Exclusion is facially discriminatory.  [*See* Doc. 205, p. 22.]

This is especially true in light of the district court's determination that genuine issues of material fact precluded summary judgment in favor of either party on Lange's claim of sex discrimination under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  [Doc. 205, pp. 19-21 & n. 11.]  And because the district court erred in granting summary judgment to Lange on her Title VII claim, the foundation for the District Court's Injunction (its findings on summary judgment) crumbles, and (a) the Injunction should be lifted and (b) Lange's Title VII claim should be remanded for trial.

## II.  <u>Lange cannot meet the summary judgment standard applicable to her as the party bearing the burden of proof.</u>

Because Lange bears the burden of proof on her Title VII claim, she is required to "show *affirmatively* the absence of a genuine issue of material fact: [she] [was required to] support [her] motion with credible evidence … that would [have] entitle[d] [her] to a directed verdict if not controverted at trial."  *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991)

("*Four Parcels*") (*en banc*) (internal quotation marks and citation omitted) (emphasis in original); *see also* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2727.1 ("if the movant bears the burden of proof on a claim at trial, then its burden of production is greater").

Nevertheless, in her Response Brief, Lange repeatedly argues her claim under the summary judgment standard applicable to a party who does *not* bear the burden of proof at trial.  [App. Doc. 34, p. 30 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Celotex Corp.*, 477 U.S. at 324 ("In cases like the instant one, where the *nonmoving* party will bear the burden of proof at trial on a dispositive issue, ….") (emphasis added).][3]  Applying the correct summary judgment standard to Lange's Title VII claim, she failed to "show affirmatively" her entitlement to judgment as a matter of law in light of the factual and legal issues addressed below.  Accordingly, the district court erred in

---

[3]  The plaintiffs in *Avirgan v. Hull*, 932 F.2d 1572 (11th Cir. 1991), cited by Lange at App. Doc. 34, p. 30, also were the *non*movants on summary judgment and likewise would have borne the burden of proof on liability at any trial.  *See id.* at 1579.

granting summary judgment to Lange and the Injunction should be vacated and the case remanded for trial.

**A.    The Supreme Court precedent upon which Lange relies neither mandates nor authorizes summary judgment in her favor.**

Contrary to Lange's continued suggestions, Defendants have never disputed that fringe benefits—including health insurance benefits—constitute "compensation, terms, conditions or privileges of employment" under Title VII or that Title VII prohibits discrimination in the provision of such benefits based on statutorily-protected traits, including sex. However, Lange's arguments fail to properly contextualize her claim as arising from a health insurance plan.

**1.    Neither *Bostock* nor *Johnson Controls* mandates summary judgment in Lange's favor.**

As this Court correctly observed in *Adams v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (*en banc*), the specific holding in *Bostock v. Clayton County, Georgia*, ___ U.S. ___, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020), addressed "various employers' decisions to fire employees based solely on their sexual orientations or gender identities," and did *not* resolve the issue then before the *en banc* Court: "whether discrimination based on biological sex *necessarily* entails discrimination

based on transgender status," at least with respect to primary and secondary school bathrooms. *See Adams*, 57 F.4th at 808-809 (emphasis added). This Court answered that question in the negative, holding that such "a policy can lawfully classify on the basis of biological sex without unlawfully discriminating on the basis of transgender status." *Id.* at 808-809 (citing *Nguyen v. INS*, 533 U.S. 53, 60 (2001)).

*Bostock* does not address the specific issue presented in this action or otherwise mandate summary judgment in Lange's favor. Indeed, as set forth in Defendants' opening brief, the plaintiff in *Bostock* was denied summary judgment on the facts *of his own case* on remand. [*See* App. Doc. 28, p. 60 & n. 22.] It is not enough, as Lange argues, merely that she is transgender and has been "injure[d]" by the Exclusion. [App. Doc. 34, p. 39.] As such, *Bostock* does not authorize summary judgment for Lange.

Nor does *International Union, United Auto Aerospace & Agriculture Implement Workers v. Johnson Controls, Inc.*, 499 U.S. 187 (1991) ("*Johnson Controls*"). Lange barely engages Defendants' arguments that *Johnson Controls* does not authorize summary judgment except to say that "there are no special rules applicable to employee benefits cases."

[App. Doc. 34, p. 45.]  Again, Defendants do not contest that general statement of Title VII law, but Lange fails to properly contextualize that principle.

In *Johnson Controls*, the employer adopted a so-called "fetal-protection policy" under which "[f]ertile men, but not fertile women, [were] given a choice as to whether they wish to risk their reproductive health for" jobs exposing them to lead, "despite evidence in the record about the debilitating effect of lead exposure on the male reproductive system." *Id.* at 197, 198.  The employment action in *Johnson Controls* is not similar to the Exclusion here and, when properly considered in conjunction with other exclusions in the Health Plan, the Exclusion is not sexually discriminatory.

### 2.  Neither *Manhart* nor *Newport News* mandate summary judgment in Lange's favor.

The Supreme Court's opinions in *City of Los Angeles v. Manhart*, 435 U.S. 702 (1978), and *Newport News Shipbuilding & Dry Dock Company v. Equal Employment Opportunity Commission*, 462 U.S. 669 (1983), do address employment fringe benefits.  Nevertheless, both cases are factually distinct from this action.

Lange contends that "it is not the law that an employer violates Title VII in the context of insurance coverage only if it offers different coverage packages or charges different rates to participants." [App. Doc. 34, p. 46.] But those *were* the holdings in *Newport News* and *Manhart*, respectively [*see* App. Doc. 28, pp. 64-68], and Lange does not contest that she has the same health coverage as other employees or that the Exclusion itself "applies equally to a male seeking to become a woman or a woman seeking to become a man," [Doc. 205, at p. 17].

Lange acknowledges that, "*[l]ike all insurance plans*, the Health Plan contains a number of exclusions, *i.e.*, certain types of medical care that are not covered." [Doc. 174, ¶ 74 (emphasis added).] Even accepting Lange's characterization of the challenged Exclusion as "sex based," health insurance plans logically must address sexual health. Here, the Health Plan contains other exclusions that also may be characterized as "sex based" and limit the coverage of the sexual health of individual plan participants who are *not* transgender. [Doc. 28, pp. 40-41.] Thus, as with Lange's Equal Protection claim, there is at the very least "a genuine dispute of material fact as to whether the adoption and maintenance of

the Exclusion was done with [sexually] discriminatory intent." [Doc. 205, at 21, n. 11; *see also id.* at 16-21.]

### 3. *Young* does not mandate summary judgment in Lange's favor.

Lange's attempt to distinguish her arguments from those made by the plaintiff in *Young v. United Parcel Service*, 575 U.S. 206 (2015), similarly fails. [App. Doc. 34, pp. 48-50.] In moving for summary judgment, Lange contended that the Exclusion violates Title VII because it "impacts only [her], as she is the only openly transgender health plan member." [Doc. 140-1, p. 27; *compare Young*, 575 U.S. at 221 (in which the pregnant plaintiff argued that "because the record [] contains 'evidence that pregnant and nonpregnant workers were not treated the same,' that is the end of the matter, she must win").[4]]

In her Response Brief, Lange now contends she "simply wants the same coverage for medically-necessary procedures that would otherwise

---

[4] Defendants do not cite to *Young* as a binding determination on the issue in this case. *See* 575 U.S. at 230 (limiting the prima facie test set forth therein to the Pregnancy Discrimination Act, Pub. L. 95-555, 92 Stat. 2076 ("PDA")). Nevertheless, to the extent the Supreme Court's application of the PDA in *Newport News* is considered instructive, subsequent opinions addressing the PDA should also be considered.

be covered under the Health Plan." [App. Doc. 34, p. 49.] But, as discussed further below, a reasonable juror could conclude that the procedures associated with a cisgender vaginoplasty and a transgender vaginoplasty are *not* in fact the same, and that other exclusions contained in the Health Plan have a commensurate "impact[]" (*i.e.*, limit) on the coverage provided for the sexual health treatment of cisgender participants.

"[D]isparate-treatment law normally permits an employer to implement policies that are not intended to harm members of a protected class, even though their implementation sometimes harms those members, as long as the employer has [] legitimate, nondiscriminatory, nonpretextual reasons for doing so." *Young*, 575 U.S. at 222. Health insurance benefits serve as a prime example: some participants may make no use of those benefits for years while other participants may do so constantly—even though all participants pay the same premium.

**B.** **Lange does not contest that there exists a genuine issue of fact as to whether the Health Plan covers non-surgical treatment for gender dysphoria.**

Contrary to her arguments on summary judgment, Lange does not controvert on appeal that at least *some* of her gender-confirming care has

been covered under the Health Plan. [App. Doc. 34, p. 42 ("If Sgt. Lange is denied coverage for a medically-necessary vaginoplasty because she is transgender, it is irrelevant that Defendants do not discriminate against her on other occasions, such as when she needs coverage for hormones.")][5/] That fact had been admitted by Lange in her own deposition testimony, as well as confirmed by her other filings with the district court. [*See* Appellants' Brief at 38-53.] Even the district court recognized the scope of the Exclusion, finding it only "excludes coverage for sex change surgery and drugs related to sex change surgery." [Doc. 205, p. 23.] However, the district court went on to say the qualification that non-surgical treatment is covered was immaterial to its finding of facial discrimination. [Id.] Lange and the district court are wrong.

## C. The question of intent is material to Lange's disparate treatment claim under Title VII.

The Health Plan's coverage of non-surgical treatment for gender transition is *particularly* material to the question of unlawful discriminatory intent under Title VII. It *belies* Lange's claim that the

---

[5/] *Compare* Doc. 174, p. 14, ¶ 75 ("Since at least 1998, the Health Plan has excluded coverage for the treatment of gender dysphoria."); Doc. 187, pp. 12-13, n.2 ("Defendants claim that the Exclusion applies only to surgery, but this is contradicted by the plain text.").

exclusions from coverage of gender-confirming surgery and related drugs are "facially discriminatory"—or, at the very least, creates a genuine issue of material fact as to discriminatory intent on which reasonable jurors might differ.

Lange relies upon the district court's statement that "Title VII does not exempt 'partial' violations." [*See* Doc. 205, p. 28 (citing 42 U.S.C. § 2000e-2(a)(1)).] But that legal terminology is not found in either the cited code section or in *Phillips v. Martin Marietta Corporation*, 400 U.S. 542 (1971), to which Lange's Response Brief also cites in purported support of that argument. [App. Doc. 34, p. 42.]

*Phillips* addressed whether Title VII's core anti-discrimination provision, 42 U.S.C. § 2000e-2, "permit[ed] one hiring policy for women and another for men—each having pre-school-age children." 400 U.S. at 544. However, that was not a supposed "partial violation" but rather a standalone criterion used by the employer to refuse applications from such women while applying no such criterion to men. *Id.* at 543. As such, *Phillips* does not support the grant of summary judgment in Lange's favor here.

**D.  The context of the Health Plan shows the Exclusion is
    not facially discriminatory.**

Lange effectively argues that the Exclusion must be analyzed *in
vacuo*.  But context matters in employment discrimination cases.  For
example, "[t]he essence of a [reduction in force] is that competent
employees who in more prosperous times would continue and flourish at
a company may nevertheless have to be fired." *Earley v. Champion Int'l
Corp.*, 907 F.2d 1077, 1083 (11th Cir. 1990).  On the other hand, even a
plaintiff who indisputably violated an employer's work rule may still be
able to challenge her firing as discriminatory if another employee
"outside her class" and "similarly situated in all material respects" was
retained after violating the same rule.  *Lewis v. City of Union City, Ga.*,
918 F.3d 1213, 1226-29 (11th Cir. 2019) (*en banc*).

Lange's claim here arises in the context of a health insurance plan.
Since the date of her hire, Lange has been offered the same Health Plan
as all other plan participants—male and female, transgender or not.
Lange herself acknowledged on summary judgment, "*[l]ike all insurance
plans*, the Health Plan contains a number of exclusions, *i.e.*, certain types
of medical care that are not covered."  [Doc. 174, p. 14, ¶ 74 (emphasis

added).] Indeed, the Health Plan contains 68 such medical exclusions and 29 such pharmacy exclusions. [Doc. 155-1, pp. 67-74.][6/]

The Exclusion simply *limits* the coverage provided for gender-confirming medical care to non-surgical treatment. Lange contends that that limitation—on its face—violates Title VII's prohibition on sex discrimination because the Exclusion is a "sex-based exclusion." [App. Doc. 34, pp. 13, 47, 48.] But Lange cites no legal authority holding that Title VII prohibits a health insurance plan from placing coverage limits on medical care related to a plan participant's sexual health generally.

Moreover, the Health Plan contains other medical and pharmacy exclusions that can also be reasonably characterized as "sex-based." [App. Doc. 28, pp. 27-28.] Those other exclusions include limitations on coverage for fertility treatment. Id. Still others exclude services and supplies for "male or female sexual problems," including related "[d]rugs to treat sexual or erectile problems." *Id.* A reasonable jury could find

_____
[6/] Federal and Georgia state courts construe health plans as contracts and view them "as a whole" in arriving at the construction of any part. *Kirby v. Anthem, Inc.*, Civil Action No. 1-19-CV-00597-ELR, 2019 U.S. Dist. LEXIS 78840, at *14-15 (N.D. Ga. Mar. 21, 2019) (citing Georgia cases). Following that same approach here provides the proper and necessary context to evaluate Lange's claim of discrimination.

those other "sex-based" exclusions have an impact on cisgender participants of the Health Plan commensurate with the impact the Exclusion has on Lange.

Lange similarly contends that the challenged Exclusion "is expressly discriminatory because it cannot be applied without considering the employee's sex," but the cited legal authority does not support such a legal conclusion. [App. Doc. 34, p. 35 (citing, *inter alia*, *Bostock*, 140 S. Ct. at 1746).] The hypothetical discussed in *Bostock* in connection with the quote above involved an employer who asked all applicants to indicate whether they were homosexual or transgender—and disqualified them from any consideration for an affirmative answer—but claimed it did not violate Title VII because it was unaware of the applicant's natal sex. *See* 140 S. Ct. at 1745-46.

The Exclusion challenged here involves a particular medical condition—*gender* dysphoria—the treatment for which, even when covered, necessarily requires that the particular participant's sex be taken into consideration. As discussed above, other exclusions in the Health Plan likewise address medical conditions that must necessarily take into consideration the participant's sex: medical exclusion 39

("Infertility Treatment"); medical exclusion 58 ("Sexual Dysfunction"); pharmacy exclusion 15 ("Infertility Drugs"); and pharmacy exclusion 27 ("Sexual Dysfunction Drugs"). [*See* App. Doc. 28, pp. 40-41.] Furthermore, those other "sex-based" exclusions apply regardless of a plan participants' natal sex and whether the treatment is considered medically necessary or not.[7/]

Lange nevertheless contends that the district court was compelled by law to enter summary judgment in her favor because the Exclusion "'applies only to transgender members, and it applies to Lange because she is transgender.'" [App. Doc. 34, p. 35 (quoting Doc. 205, p. 23).] But

---

[7/] Lange also relies upon *Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034, 1051 (7th Cir. 2017), in which the Seventh Circuit held that school policies requiring transgender students to use bathrooms corresponding with their biological sex "inherently" violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"). [*See* App. Doc. 34, p. 35; *see also* App. Doc. 38 (DOJ Amicus Brief), p. 24 (citing *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 594 (4th Cir. 2020) (holding the same)).] But whatever persuasive value those non-binding decisions might once have had regarding Lange's Title VII claims has been greatly diminished (if not rendered wholly irrelevant) by the rejection of their underlying reasoning in the Eleventh Circuit's *en banc* decision in *Adams*, 57 F.4th at 800 ("We disagree with [the plaintiff] Adams's theory that separation of bathrooms on the basis of biological sex *necessarily* discriminates against transgender students.") (emphasis added); *see also* at 800-811 (Equal Protection), 811-817 (Title IX).

by that reasoning, no Health Plan limitation of any kind on transgender-related treatment could ever be recognized as non-discriminatory under Title VII.

By comparison, Health Plan participants who experience hearing difficulty have certain covered testing and treatment options, but they do not have coverage for hearing aids. [Doc. 155-1, pp. 70-72.] Health Plan participants who struggle with their weight likewise have several covered treatment options, but they do not have coverage for lap-band *surgery*. [Doc. 150-4, pp. 49-51, 160; Doc. 150-5, p. 67.] Similarly, as discussed above, Lange's hormones and endocrinologist visits as part of her transition are covered, but the Health Plan excludes transgender *surgery*.

Lange, however, argues that, because she is transgender, she cannot be treated like other participants who struggle with their weight or hearing loss—instead, *all* treatments for her transition must be covered. [App. Doc. 34, p. 41.] This would amount to "most favored nation" status for transgender plan participants—a status the Supreme Court has rejected for pregnancy as beyond the scope of Title VII. [*See* App. Doc. 28, pp. 70-73.] Title VII calls for *equal* treatment—not *better*

treatment. *See Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1316 (11th Cir. 1994) ("The language of the [PDA] simply does not address the right of a pregnant employee, fully able to work, to receive benefits that are different from, *and arguably superior to*, the benefits available to other employees.") (emphasis added).

Lange—like the district court—errantly criticizes this argument as permitting a "partial" violation of Title VII. [*See* Doc. 205, p. 28.] But this is not a case where an employer attempts to exculpate discrimination in hiring by claiming it does not discriminate when firing. This case addresses a health insurance plan, where exclusions and other limits on coverage are commonplace, as Lange herself has acknowledged. [Doc. 174, ¶ 74; *see also Whiteside v. Metropolitan Life Ins. Co.*, 798 F. Supp. 1380, 1390 (D. Minn. 1992) ("Any time that the coverage of an employee benefit plan is not universal, line-drawing becomes a necessary evil.") Thus, *Bostock*'s direction that "the law makes each instance of discriminating against an individual employee because of that individual's sex an independent violation of Title VII" is not applicable, much less dispositive. *See* 140 S. Ct. at 1742. *Bostock* expressly declined to address the complexities of health insurance raised in Justice Alito's

dissenting opinion. [*See* Doc. 28, pp. 59-60.] Those complexities include the issue presented here: does partial coverage of transgender care, subject to insurance exclusions like those for other conditions, amount to discrimination (and, especially, *facial* discrimination) under Title VII? The answer must be "No."

The DOJ amicus brief posits that the PDA voided prior case law under Title VII that approved distinctions in health coverage based on pregnancy and argues that the same principle should apply here to Defendants' argument that not all transgender individuals want surgery. [App. Doc. 38, p. 23.] But the PDA was a *legislative* change to Title VII, while *Bostock* was a *judicial* interpretation of Title VII as applied to typical employment decisions. Here, the district court extended *Bostock* still further by treating it as the basis for its facial discrimination finding as to health insurance coverage [Doc. 205, p. 21]—a topic *Bostock* declared to be outside its holding [*see* App. Doc. 28, pp. 59-60].

The DOJ's amicus brief also seeks to evade the logic of this Court's decision in *Adams*. [App. Doc. 38, pp. 25-27.] The DOJ argues that Defendants acknowledge *Adams* is not "dispositive" of Lange's claim. [App. Doc. 38, p. 26, citing Doc. 288, p. 2.] Defendants acknowledged the

unremarkable proposition that a Title IX case is not dispositive of a Title VII challenge.  [Doc. 288, p. 2.]  However, the DOJ omits that Defendants continued their discussion of *Adams* immediately thereafter as follows: "Nevertheless, the reasoning of the *en banc* court—in particular, its analysis of the Supreme Court's opinion in *Bostock*—*does* inform certain aspects of the pending Motion to Stay, as a number of Defendants' arguments find resonance in its opinion."  [*Id.* (emphasis added).]

One of those arguments is the list of issues the *Bostock* court declined to rule on: "The *en banc* opinion in *Adams* observed, "'[a]s a preliminary matter,'" that the Supreme Court in *Bostock* had "expressly declined to address the issue of sex-separated bathrooms and locker rooms."  [*See id.* at p. 7.]  Of course, healthcare was likewise identified by Justice Alito as a "potential consequence" of the *Bostock* decision that the majority expressly declined to address.  [*See* App. Doc. 28, pp. 59-60.]

Lange also contends that the Exclusion "den[ies] coverage for procedures that would otherwise be covered because of an employee's transgender status," [Doc. 34, p. 34], and appears befuddled by how "vaginoplasties needed by transgender and cisgender women might differ in some way," [*see id.*, p. 51].  But Lange needed to look no further than

the report of one of her own medical experts, Dr. Loren Schechter, who identified the surgical steps preceding a vaginoplasty as part of gender transitions:

> Gender reconstruction surgeries: *penectomy (removal of the penis), orchiectomy (removal of the testes)*, vaginoplasty, clitoroplasty, and/or vulvoplasty (creation of female genitalia including the labia minor and majora).

[Doc. 132-3, ¶ 25 (emphasis added).]

As Dr. Schechter's report effectively confirms, a cisgender female would not undergo the very same procedures as a transgender female in connection with a vaginoplasty. Therefore, a reasonable jury could find the undeniable fundamental differences between a cisgender vaginoplasty and a transgender vaginoplasty provide still further evidence upon which to reject Lange's sex discrimination claim.[8]

_____

[8] In addressing the plaintiff's claims under the Equal Protection Clause in *Adams*, the *en banc* majority expressly rejected the argument that biological realities can be denied. *See* 57 F.4th at 807-808 ("we are unpersuaded by the dissent's argument that the district court could make any factual findings (that would not constitute clear error) to change an individual's immutable characteristic of biological sex, just as the district court could not make a factual finding to change someone's immutable characteristic of race, national origin, or even age for that matter").

**E.** **The Exclusion does not "necessarily" discriminate on the basis of gender stereotypes or "penalize" a person based on "the sheer fact of the[ir] transition."**

Lange next contends that the Exclusion "necessarily discriminates on the basis of gender stereotypes," arguing that an "employee's choice to live openly in a gender other than the one assigned at birth 'transgresses gender stereotypes,' 'which presume that men and women's appearance and behavior will also be determined by their [assigned] sex.'" [*See* App. Doc. 34, p. 36 (quoting *Glenn v. Brumby*, 663 F.3d 1312, 1316, 1320 (11th Cir. 2011) (brackets in App. Doc. 34).] Lange also quotes *Glenn* in contending that "the Exclusion discriminates on its face because it penalizes a person 'based on the sheer fact of the[ir] transition.'" [*Id.*, p. 37 (quoting *Glenn v. Brumby*, 663 F.3d 1321) (brackets in App. Doc. 34).] But Lange simply lifts witness testimony given in *Glenn* without discussing the facts of that action or how they might apply in this action.

In *Glenn*, the defendant manager himself "testified at his deposition that he fired Glenn, a transgender female, because [the manager] considered it 'inappropriate' for [Glenn] to appear at work dressed as a woman and that he found it 'unsettling' and 'unnatural' that Glenn would appear wearing women's clothing." 663 F.3d at 1320.

Furthermore, the defendant manager expressly "testified that his decision to dismiss Glenn was based on his perception of Glenn as 'a man dressed as a woman made up as a woman" and, indeed, "admitted that his decision to fire Glenn was based on 'the sheer fact of the transition.'" *Id.* at 1320-21.

Of course, there is no such testimony in this case. Lange herself testified that, at *her* request, the County's Director of Personnel, Kenneth Carter, agreed to accompany her to an April 2017 meeting with the Sheriff, at which she notified the Sheriff of her transgender status, and requested his permission to follow the Sheriff's Office's female dress code policy, *which the Sheriff granted.* [Doc. 136-1, p. 3, ¶ 8; 179-3, p. 21, ¶ 55.] Although the Sheriff told Lange at that time that he did not believe in transgenderism, he also told Lange, "that's your belief. So I will respect it." [Doc. 157 at 19:23-20:5.] Indeed, Lange pled in her original Complaint that "*[w]ith Sheriff Talton's unspoken support*, she told her other work colleagues [of her transition plans] at a meeting the following

day." [Doc. 1, ¶ 29 (emphasis added); *see also* Doc. 56, Amended Complaint, ¶ 39 (same).[9/]]

Properly construing the facts and inferences in Defendants' favor, a reasonable jury could conclude that the Health Plan's coverage of Lange's hormone therapies—the specific purpose of which was to feminize her body in a manner consistent with her transgender female identification, *cf. Eknes-Tucker v. Marshall*, 603 F. Supp. 3d 1131, 1138 (M.D. Ala. 2022), and which provide the most publicly conspicuous evidence of her gender transition—is contrary to her allegation that the Health Plan required its participants to have their appearance "'determined by [their] assigned sex.'" [App. Doc. 34, p. 36 (quoting *Glenn*, 663 F.3d at 1320).] Moreover, the Exclusion would likewise have denied coverage to Lange had she sought coverage to *reverse* her top surgery to reidentify with the sex she was assigned at birth. Therefore, a reasonable jury could find that the Exclusion does not discriminate

---

[9/] Defendants further note that Lange did not assert any claims against the Sheriff in her original Complaint, in which the only reference to the Sheriff personally was the above allegation. Moreover, although Sheriff Talton permitted his employees to receive medical benefits under the Health Plan beginning with his election to office in 1973, he has not participated in any decision-making regarding either the adoption or the maintenance of the Exclusion since. [Doc. 178-1, ¶ 5; 178-2, ¶ 22.]

based on either gender stereotypes—"necessarily" or otherwise—or "based on the sheer fact of the[ir] transition."

### F. The non-binding, extracircuit authority cited by Lange does not support the district court's grant of summary judgment.

Lange cites to six other federal district court decisions that are not binding even in their own respective circuits, much less here. [App. Doc. 34, p. 38 (citing cases).] Indeed, the Fourth Circuit has ordered rehearing *en banc* on the district courts' opinions in both *Fain v. Crouch*, 342 F.R.D. 109 (S.D. W. Va. 2022), addressing claims under the Equal Protection Clause, Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116 ("ACA"), and the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 10(b)(i), 42 C.F.R. §§ 440.230(b), 440.240(a); and *Kadel v. Folwell*, Case No. 1:19CV272, 2022 WL 3226731 (M.D.N.C. Aug. 10, 2022), addressing claims under the Equal Protection Clause, Title VII, and ACA. *See Kadel v. Folwell*, Case No. 22-1721, 2023 WL 2908816 (4th Cir. Apr. 12, 2023); *Fain v. Crouch*, Case No. 22-1927, 2023 WL 2908815 (4th Cir. April 12, 2023). Accordingly, contrary to Lange's arguments, the "final merits" of those cases have not yet been reached. [App. Doc. 34, p. 38.]

Moreover, to the extent Lange contends that those district court decisions constitute persuasive authority here, her response does not indicate how: Lange does not undertake or set forth any analysis of those decisions or otherwise attempt to liken the law, the defendants, the health plans, or other relevant facts at issue in those cases to the law, the Defendants, the Health Plans, and other relevant facts at issue here. But there are material differences between those cases and the action here.

The plaintiffs in *Flack v. Wisconsin Department of Health Services* brought their action under the Equal Protection Clause and ACA, and later under the Medicaid Act, but not under Title VII. *See Flack*, 328 F. Supp. 3d 931, 934 (W.D. Wis. 2018) (granting preliminary injunction to the plaintiffs); *Flack*, 395 F. Supp. 3d 1001, 1014, 1015, 1019 (W.D. Wis. 2019) (granting summary judgment to the plaintiffs). The plaintiff in *C.P. v. Blue Cross Blue Shield* similarly brought his claim under ACA only. *See* Case No. 3:20-cv-06145-RJB, 2022 WL 17788148, *1 (W.D. Wash. Dec. 19, 2022). But Lange does not assert a claim under either ACA or the Medicaid Act, and the district court found issues of fact

precluding summary judgment under the Equal Protection Clause. [Doc. 205, p. 21, n. 11; *see also id.*, pp. 16-21.[10/]]

A Title VII challenge to a transgender surgery exclusion was subsequently addressed by the same district judge who decided *Flack* in the case of *Boyden v. Conlin*, 341 F. Supp. 3d 979, 982 (W.D. Wis. Sept. 18, 2018). However, that district court—in substantial reliance upon the Seventh Circuit's holding in *Whitaker*—accepted the plaintiff's argument that a policy that "'cannot be stated without referencing sex'" constitutes sex discrimination. *Id.* at 995 (quoting *Whitaker*, 858 F.3d at 1051). But even in light of *Bostock*, the *en banc* court in *Adams* expressly held that "a policy can lawfully classify on the basis of biological sex without

---

[10/] Lange and her amicus the DOJ both contend that the County acted "against Anthem's recommendation" in maintaining the Exclusion. [App. Doc. 34, p. 15, 20; App. Doc. 38, p. 11.] In fact, Anthem's letter stated: "We're writing because Houston County [Board of Commissioners] has elected to decline the 2017 Mandate [under Section 1557 of the ACA]. While your chosen plan design differs from our interpretation of [the ACA], we understand that many aspects of the law are unclear and may be subject to varying interpretations." [Doc. 150-5, p. 69.] Not only does this language not amount to a "recommendation," but, before this point in time, the County had determined that Section 1557 did not apply to its self-funded plan. [Doc. 150-1, p. 17 (Carter Dep. 59:29-61:19).] Lange has never challenged that determination—much less refuted it—and, of course, she never asserted an ACA claim in this case.

unlawfully discriminating on the basis of transgender status." *See* 57 F.4ᵗʰ at 809 (citing *Nguyen*, 533 U.S. at 60).

Furthermore, the policy at issue in *Boyden* differs from the policy at issue here; in particular, the policy in *Boyden* specifically excluded even "hormone therapy or mental health counseling when used to treat gender dysphoria" if that non-surgical care was part of "a course of treatment *leading to or involving gender confirming surgery*." 341 F. Supp. 3d at 988 (emphasis in original). The plan at issue in *Fletcher v. Alaska* likewise excluded not just surgery—but hormones, hormone therapy, and counseling, too—as of June 2017, when the plaintiff there underwent surgery at her own expense for which she sought to recover in that action. *See* 443 F. Supp. 3d 1024, 1026-1027 (D. Alaska 2020).[11/]

---

[11/] And, thus, the district court in *Fletcher* adopted the plaintiff and the U.S. Equal Employment Opportunity Commission's description of the 2017 plan exclusion at issue as "categorical" or "blanket." *See* 443 F. Supp. 3d at 1028 ("'categorical'"); *id.* ("blanket"); *id.* at 1029 ("blanket"). Only after having undergone the gender-confirming surgery that the plaintiff had been denied coverage for under the 2017 plan was that plan then amended to provide coverage for "hormones, hormone therapy and counseling related to changing sex or sexual characteristics." *See id.* at 1027.

In contrast, the Exclusion at issue here contains no proviso like that in *Boyden* or otherwise constitutes a categorical or blanket exclusion like the one at issue in *Fletcher*. Rather, the Health Plan covers non-surgical treatment of gender dysphoria regardless of whether a participant might ultimately be intending to undergo gender-confirming surgery—and, indeed, has provided coverage of such treatment for Lange. Moreover, and again unlike the Health Plan at issue here, there is no indication that the plans at issue in *Boyden* and *Fletcher* contained similar exclusions for services and supplies for "male or female sexual problems" generally. [*See also* App. Doc. 28, pp. 40-41.[12]/]

In summary, in addition to being non-binding and at variance with this Circuit's *en banc* holding in *Adams*, the extracircuit authority upon which Lange relies is either legally distinct, factually distinct, or both. In considering the Exclusion (including its application to both "sex change and/or *the reversal of a sex change*") in conjunction with other

---

[12]/ The district court in *Boyden* noted that the plan at issue there excluded coverage for medically-necessary "infertility services" but stated, without supporting authority, that procedure "[did] *not* touch on any protected status" under the Equal Protection Clause. *See id.* at 999 n.15. As discussed above, however, the district court in this case held that there existed a genuine issue of material fact on the issue of discriminatory intent as to her Equal Protection claim.

exclusions in the Health Plan that might also be reasonably characterized as "sex-based," a reasonable jury could conclude, as did the district court in denying summary judgment to Lange on her Equal Protection claim, that at the very least there exist genuine issues of material fact as to whether Defendants acted with sexually discriminatory intent in adopting and maintaining the Exclusion. Accordingly, summary judgment for Lange on her Title VII claim was not authorized, the injunction should be lifted, and Lange's Title VII claim should be remanded for trial.

## III.  The District Court erred in holding that the County is the Sheriff's Agent.

In determining that the County was the Sheriff's agent with respect to his providing health insurance to his employees, the district court relied heavily—indeed, all but exclusively—on *Williams v. City of Montgomery*, 742 F.2d 586 (11th Cir. 1984), *cert. denied*, 470 U.S. 1053 (1985).  [Doc. 205, pp. 11-12.]  In that case, an Alabama personnel board was held to be the agent of the defendant city due to the city's formal delegation of what the Court called "the employer's traditional rights, such as hiring or firing" to the board.  *Williams*, 742 F.2d at 589.

In contrast, here, the Sheriff did not delegate hiring or firing or any other traditional *right* as an employer.  Rather, he simply took advantage of the opportunity presented by the availability of the County's plan to provide an employee benefit to his employees.  Such an act falls far outside the parameters of *Williams*—even without consideration of the distinctions under Georgia law between counties and sheriffs as more fully addressed in Defendants' opening brief.  [*See* App. Doc. 28, pp. 75-87.]  Accordingly, the district court erred in holding the County to be the Sheriff's agent.

## CONCLUSION

For each of the reasons set forth above, Defendants respectfully request that this Court dissolve the Injunction and reverse the district court's Order granting summary judgment to Lange on her Title VII claim.

Respectfully submitted this 5th day of May 2023.

*s/ Sharon P. Morgan*
Sharon P. Morgan
Georgia Bar No. 522955
R. Read Gignilliat
Georgia Bar No. 293390
William D. Deveney
Georgia Bar No. 219744
Patrick L. Lail

Georgia Bar No. 431101

ELARBEE, THOMPSON, SAPP & WILSON, LLP
229 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30303
(404) 659-6700 (telephone)
(404) 222-9718 (facsimile)
morgan@elarbeethompson.com
gignilliat@elarbeethompson.com
deveney@elarbeethompson.com
lail@elarbeethompson.com

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

Counsel for the Appellants hereby certifies that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 6,465 words.

_s/ Sharon P. Morgan_
Georgia Bar No. 522955

ELARBEE, THOMPSON, SAPP & WILSON, LLP
229 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30303
(404) 659-6700 (telephone)
(404) 222-9718 (facsimile)
morgan@elarbeethompson.com

_Attorneys for Defendants-Appellants_

## CERTIFICATE OF SERVICE

I hereby certify pursuant to Rule 25(d)(2) of the Federal Rules of Appellate Procedure that a true and correct copy of this **REPLY BRIEF OF DEFENDANTS-APPELLANTS** has been filed via the Court's ECF filing system, which will automatically serve Plaintiff-Appellee's attorneys as follows:

Kenneth E. Barton, III
M. Devlin Cooper
Wesley R. Powell
Jill K. Grant
Catherine E. Fata
Amanda M. Payne
David Brown
Gabriel Arkles
Kevin M. Barry

This the 5th day of May 2023.

*s/ Sharon P. Morgan*
Georgia Bar No. 522955

ELARBEE, THOMPSON, SAPP & WILSON, LLP
229 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30303
(404) 659-6700 (telephone)
(404) 222-9718 (facsimile)
morgan@elarbeethompson.com

*Attorneys for Defendants-Appellants*