Case No. 22-13626-U

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**HOUSTON COUNTY, GEORGIA, AND HOUSTON COUNTY**
**SHERIFF CULLEN TALTON, IN HIS OFFICIAL CAPACITY**
**Defendants-Appellants,**

**v.**

**ANNA LANGE**
**Plaintiff-Appellee.**

---

**ON APPEAL FROM**
**THE UNITED STATES DISTRICT COURT FOR THE MIDDLE**
**DISTRICT OF GEORGIA, MACON DIVISION**
**CASE NO.:  5:19-CV-00392-MTT**

---

**EN BANC SUPPLEMENTAL BRIEF OF DEFENDANTS-**
**APPELLANTS**

---

**Sharon P. Morgan, Georgia Bar No. 522955**
**R. Read Gignilliat, Georgia Bar No. 293390**
**William D. Deveney, Georgia Bar No. 219744**
**Patrick L. Lail, Georgia Bar No. 431101**
**ELARBEE, THOMPSON, SAPP & WILSON LLP**
**800 International Tower**
**229 Peachtree Street, NE**
**Atlanta, Georgia 30303**
**(404) 659-6700**

**Attorneys for Defendants-Appellants**

Case No. 22-13626-U

Houston County, Georgia, et al. v. Lange

## <u>DEFENDANTS-APPELLANTS' CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellants hereby certify that the following is a full and complete list of all interested persons as defined under the above-referenced rules that may have an interest in the outcome of this case:

1) ACLU Foundation of Florida (Amicus Curiae for Plaintiff-Appellee);

2) Alabama, State of (Amicus Curiae for Defendants-Appellants);

3) Alaska, State of (Amicus Curiae for Defendants-Appellants);

4) Allen & Overy LLP (Counsel for Amicus Curiae Lawyers' Committee for Civil Rights Under Law);

5) American Civil Liberties Union Foundation (Amicus Curiae for Plaintiff-Appellee);

6) Anti-Defamation League (Amicus Curiae for Plaintiff-Appellee);

7) Arkansas, State of (Amicus Curiae for Defendants-Appellants);

8) Arkles, Z. Gabriel (Counsel for Plaintiff-Appellee);

9) Association of American Physicians and Surgeons (Amicus Curiae for Defendants-Appellants);

10) Bailey, Andrew (Counsel for Amicus Curiae State of Missouri);

Case No. 22-13626-U
Houston County, Georgia, et al. v. Lange

11)    Barceleau, Dominic (Counsel for Amicus Curiae State of
       Missouri);

12)    Barry, Kevin M. (Counsel for Plaintiff-Appellee);

13)    Barton, III, Kenneth E. (Counsel for Plaintiff-Appellee);

14)    Bingham, Joseph A. (Counsel for Amicus Curiae The Equal Voting
       Rights Institute d/b/a The American Civil Rights Project);

15)    Bird, Brenna (Counsel for Amicus Curiae State of Iowa);

16)    Block, Joshua A. (Counsel for Amicus Curiae American Civil
       Liberties Union Foundation);

17)    Bone, Michelle (Counsel for Amicus Curiae Lawyers' Committee
       for Civil Rights Under Law);

18)    Bowdre, Alexander Barrett (Counsel for Amicus Curiae State of
       Alabama);

19)    Brown, David (Former Counsel for Plaintiff-Appellee);

20)    Burleigh, Billy (Amicus Curiae for Defendants-Appellants);

21)    Burroughs, Gaylynn (Counsel for Amicus Curiae National
       Women's Law Center ("NWLC")

22)    Calderon, Tvah R. (Counsel for Amicus Curiae United States
       Department of Justice);

23)    Campbell, Jordan (Counsel for Amici Curiae Billy Burleigh,
       KathyGrace Duncan, and Jane Smith);

24)    Campbell Miller Payne, PLLC (Counsel for Amici Curiae Billy
       Burleigh, KathyGrace Duncan, and Jane Smith);

Case No. 22-13626-U
Houston County, Georgia, et al. v. Lange

25)    Carr, Christopher M. (Counsel for Amicus Curiae State of Georgia);

26)    Christian Employers Alliance (Amicus Curiae for Defendants-Appellants);

27)    Cincinnati, City of (Amicus Curiae for Plaintiff-Appellee);

28)    Clarke, Kristen (Counsel for Amicus Curiae United States Department of Justice);

29)    Cleveland, City of (Amicus Curiae for Plaintiff-Appellee);

30)    Coglianese, Rich (Counsel for Amicus Curiae City of Columbus, Ohio);

31)    Columbus, City of (Amicus Curiae for Plaintiff-Appellee);

32)    Cooper, Barton & Cooper (Counsel for Plaintiff-Appellee);

33)    Cooper, M. Devlin (Counsel for Plaintiff-Appellee);

34)    Cukor, Ezra (Counsel for Plaintiff-Appellee);

35)    Cuyahoga, County of (Amicus Curiae for Plaintiff-Appellee);

36)    Deveney, William D. (Counsel for Defendants-Appellants);

37)    Divine, Joshua M. (Counsel for Amicus Curiae State of Missouri);

38)    Duncan, KathyGrace (Amicus Curiae for Defendants-Appellants);

39)    Elarbee, Thompson, Sapp & Wilson, LLP (Counsel for Defendants-Appellants);

40)    Emch, Dale R. (Counsel for Amicus Curiae City of Toledo, Ohio);

Case No. 22-13626-U
Houston County, Georgia, et al. v. Lange

41)    Equal Rights Advocates (Amicus Curiae for Plaintiff-Appellee);

42)    Ethics and Public Policy Center (Amicus Curiae for Defendants-Appellants);

43)    Fata, Catherine Elizabeth (Counsel for Plaintiff-Appellee);

44)    Fitch, Lynn (Counsel for Amicus Curiae State of Mississippi);

45)    Florida, State of (Amicus Curiae for Defendants-Appellants);

46)    Gee, Saran (Counsel for Plaintiff-Appellee);

47)    Georgia, State of (Amicus Curiae for Defendants-Appellants);

48)    Gignilliat, R. Read (Counsel for Defendants-Appellants);

49)    Goers, Eric (Counsel for Amicus Curiae Iowa City, Iowa);

50)    Grant, Jill K. (Counsel for Plaintiff-Appellee);

51)    Greenbaum, Jon (Counsel for Amicus Curiae Lawyers' Committee for Civil Rights Under Law);

52)    Griffin, Mark (Counsel for Amicus Curiae City of Cleveland, Ohio);

53)    Griffin, Tim (Counsel for Amicus Curiae State of Arkansas);

54)    Hasson, Mary Rice (Counsel for Amicus Curiae Ethics and Public Policy Center);

55)    Hecker, Elizabeth Parr (Counsel for Amicus Curiae United States Department of Justice);

Case No. 22-13626-U
Houston County, Georgia, et al. v. Lange

56) Hilgers, Michael T. (Counsel for Amicus Curiae State of Nebraska);

57) Houston County, Georgia (Defendant-Appellant);

58) Idaho, State of (Amicus Curiae for Defendants-Appellants);

59) Indiana, State of (Amicus Curiae for Defendants-Appellants);

60) Iowa City (Amicus Curiae for Plaintiff-Appellee);

61) Iowa, State of (Amicus Curiae for Defendants-Appellants);

62) Jackley, Marty (Counsel for Amicus Curiae State of South Dakota);

63) Kansas, State of (Amicus Curiae for Defendants-Appellants);

64) Kieckhafer, Katherine (Counsel for Amicus Curiae Lawyers' Committee for Civil Rights Under Law);

65) Kniffen, Eric Nieuwenhuis (Counsel for Amicus Curiae Ethics and Public Policy Center);

66) Knudsen, Austin (Counsel for Amicus Curiae State of Montana);

67) Kobach, Kris W. (Counsel for Amicus Curiae State of Kansas);

68) Labrador, Raúl (Counsel for Amicus Curiae State of Idaho);

69) LaCour, Edmund G. Jr. (Counsel for Amicus Curiae State of Alabama);

70) Lail, Patrick L. (Counsel for Defendants-Appellants);

71) Lange, Anna (Plaintiff-Appellee);

Case No. 22-13626-U
Houston County, Georgia, et al. v. Lange

72)    Latino Justice PRLDEF (Amicus Curiae for Plaintiff-Appellee);

73)    Lawyers' Committee for Civil Rights Under Law (Amicus Curiae for Plaintiff-Appellee);

74)    Lee, Jason (Counsel for Amicus Curiae United States Department of Justice);

75)    Louisiana, State of (Amicus Curiae for Defendants-Appellants)

76)    Manoloff, Richard (Counsel for Amicus Curiae Cuyahoga County, Ohio);

77)    Marino, Anya (Counsel for Amicus Curiae NWLC);

78)    Marshall, Steve (Counsel for Amicus Curiae State of Alabama);

79)    McNamara, Caroline A. (Counsel for Amicus Curiae ACLU Foundation of Florida);

80)    Medley, Shayna (Counsel for Plaintiff-Appellee);

81)    Miller, Ronald (Counsel for Amici Curiae Billy Burleigh, KathyGrace Duncan, and Jane Smith);

82)    Mills, Christopher (Counsel for Amicus Curiae Christian Employers Alliance);

83)    Mississippi, State of (Amicus Curiae for Defendants-Appellants);

84)    Missouri, State of (Amicus Curiae for Defendants-Appellants);

85)    Mitrokostas, Nicholas K. (Counsel for Amicus Curiae Lawyers' Committee for Civil Rights Under Law);

Case No. 22-13626-U
Houston County, Georgia, et al. v. Lange

86)  Miyares, Jason S. (Counsel for Amicus Curiae Commonwealth of Virginia);

87)  Montana, State of (Amicus Curiae for Defendants-Appellants);

88)  Moody, Ashley (Counsel for Amicus Curiae State of Florida);

89)  Morenoff, Daniel I. (Counsel for Amicus Curiae The Equal Voting Rights Institute d/b/a The American Civil Rights Project);

90)  Morgan, Sharon P. (Counsel for Defendants-Appellants);

91)  Morrisey, Patrick (Counsel for Amicus Curiae State of West Virginia);

92)  Murrill, Liz (Counsel for Amicus Curiae State of Louisiana);

93)  National Employment Law Project (Amicus Curiae for Plaintiff-Appellee);

94)  National Health Law Program (Amicus Curiae for Plaintiff-Appellee);

95)  National Women's Law Center (Amicus Curiae for Plaintiff-Appellee);

96)  Nebraska, State of (Amicus Curiae for Defendants-Appellants);

97)  North Dakota, State of (Amicus Curiae for Defendants-Appellants);

98)  Ohio, State of (Amicus Curiae for Defendants-Appellants);

99)  Paxton, Ken (Counsel for Amicus Curiae State of Texas);

100)  Payne, Amanda M. (Counsel for Plaintiff-Appellee);

Case No. 22-13626-U
Houston County, Georgia, et al. v. Lange

101) Payne, Joshua K. (Counsel for Amici Curiae Billy Burleigh, KathyGrace Duncan, and Jane Smith);

102) Petrany, Stephen J. (Counsel for Amicus Curiae State of Georgia);

103) Powell, Wesley (Counsel for Plaintiff-Appellee);

104) Pride At Work, AFL-CIO (Amicus Curiae for Plaintiff-Appellee);

105) Public Rights Project (Amicus Curiae for Plaintiff-Appellee);

106) Quinnipiac Univ. School of Law Legal Clinic (Counsel for Plaintiff-Appellee);

107) Reyes, Sean D. (Counsel for Amicus Curiae State of Utah);

108) Rodriguez, Dariely (Counsel for Amicus Curiae Lawyers' Committee for Civil Rights Under Law);

109) Rokita, Theodore E. (Counsel for Amicus Curiae State of Indiana);

110) Rosenthal, Joshua A. (Counsel for Amicus Curiae Public Rights Project);

111) Schlafly, Andrew L. (Counsel for Amicus Curiae Association of American Physicians and Surgeons);

112) Sepulveda, Daniel (Counsel for Amici Curiae Billy Burleigh, KathyGrace Duncan, and Jane Smith);

113) Skrmetti, Jonathan (Counsel for Amicus Curiae State of Tennessee);

114) Smart Woerner, Emily (Counsel for Amicus Curiae State of Tennessee);

Case No. 22-13626-U
Houston County, Georgia, et al. v. Lange

115) Smith, Jane (Amicus Curiae for Defendants-Appellants);

116) Smith, Rachel (Counsel for Amicus Curiae NWLC);

117) Spero Law LLC (Counsel for Amicus Curiae Christian Employers Alliance);

118) South Carolina, State of (Amicus Curiae for Defendants-Appellants);

119) South Dakota, State of (Amicus Curiae for Defendants-Appellants);

120) Talton, Cullen (deceased) in his official capacity as Sheriff (Defendant-Appellant);

121) Taylor, Treg (Counsel for Amicus Curiae State of Alaska);

122) Tennessee, State of (Amicus Curiae for Defendants-Appellants);

123) Texas, State of (Amicus Curiae for Defendants-Appellants);

124) The American Civil Rights Project (Amicus Curiae for Defendants-Appellants);

125) The Equal Voting Rights Institute d/b/a The American Civil Rights Project (Amicus Curiae for Defendants-Appellants

126) Theran, Elizabeth E. (Counsel for Amicus Curiae NWLC);

127) Tilley, Daniel B. (Counsel for Amicus Curiae ACLU Foundation of Florida);

128) Toledo, City of (Amicus Curiae for Plaintiff-Appellee);

Case No. 22-13626-U
Houston County, Georgia, et al. v. Lange

129) Transgender Legal Defense Education Fund, Inc. (Counsel for
Plaintiff-Appellee);

130) Treadwell, Hon. Marc T. (United States District Court Judge);

131) United States Department of Justice (Amicus Curiae for Plaintiff-
Appellee);

132) Utah, State of (Amicus Curiae for Defendants-Appellants);

133) Virginia, Commonwealth of (Amicus Curiae for Defendants-
Appellants);

134) West Virginia, State of (Amicus Curiae for Defendants-
Appellants);

135) Whitaker, Henry C. (Counsel for Amicus Curiae State of Florida);

136) Wilkie Farr & Gallagher LLP (Counsel for Plaintiff-Appellee);

137) Wilson, Alan (Counsel for Amicus Curiae State of South Carolina);

138) Wrigley, Drew H. (Counsel for Amicus Curiae State of North
Dakota);

139) Youker, Kathryn J. (Counsel for Amicus Curiae Lawyers'
Committee for Civil Rights Under Law); and

140) Yost, Dave (Counsel for Amicus Curiae State of Ohio).


s/ Sharon P. Morgan
Ga. Bar No. 522955
morgan@elarbeethompson.com
R. Read Gignilliat
Ga. Bar No. 293390
gignilliat@elarbeethompson.com

C-10

Case No. 22-13626-U
Houston County, Georgia, et al. v. Lange

William D. Deveney
Ga. Bar No. 219744
deveney@elarbeethompson.com
Patrick L. Lail
Ga. Bar No. 431101
lail@elarbeethompson.com

# <u>TABLE OF CONTENTS</u>

APPELLANTS' CERTIFICATE OF INTERESTED PERSONS AND

CORPORATE DISCLOSURE STATEMENT ..................................... C-1

TABLE OF CONTENTS ................................................................. i

TABLE OF CITATIONS ................................................................ ii

ARGUMENT AND CITATION OF AUTHORITY ................................. 1

    I.     DISCUSSION ............................................................ 1

          A. The *Skrmetti* Opinion ..................................... 2

          B. The Exclusion's mere reference to sex does
             not make it "facially discriminatory"
             under Title VII ................................................. 4

          C. The Exclusion does not "turn on" sex ............................. 6

          D. The Exclusion does not reflect a sex-based
             classification or turn on inconsistency with a
             protected characteristic ..................................... 9

          E. The Exclusion does not operate to force conformity
             with Lange's biological sex or rest on impermissible
             stereotypes ..................................................... 10

    II.    CONCLUSION ..................................................... 15

## <u>TABLE OF CITATIONS</u>

**<u>Federal Cases</u>**                                                        **Page(s)**

*Bostock v. Clayton County,*
   590 U.S. 644 (2020) ................................................................... Passim

*Corbitt v. Sec'y of the Ala. Law Enf't Agency,*
   115 F.4th 1335 (11th Cir. 2024) ......................................... 2

*Eknes-Tucker v. Gov. of Ala.,*
   80 F.4th 1205 (11th Cir. 2023) ........................................... 1

*L.W. v. Skrmetti,*
   83 F.4th 460 (6th Cir. 2023) ................................................ 3

*Lange v. Houston Cty., Ga.,*
   101 F.4th 793, vacated 110 F.4th 1254 (11th Cir. 2024) .......... Passim

*United States v. Skrmetti,*
   605 U.S. __, 145 S. Ct. 1816 (2025) ...........................................Passim

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.,*
   858 F.3d 1034 (7th Cir. 2017) ............................................. 4

*Young v. United Parcel Service,*
   575 U.S. 206 (2015) ............................................................. 15

**<u>Statutes</u>**

Title VII of the Civil Rights Act of 1964,
   42 U.S.C. § 2000e ……………………………………………..Passim

**<u>Rules</u>**

Eleventh Circuit Rules 26.1-1, 26.1-2, 26.1-3 ...................................... C-1

## ARGUMENT AND CITATION OF AUTHORITES

COME NOW, Defendants-Appellants Houston County, Georgia (the "County"), and Houston County Sheriff Cullen Talton, in his Official Capacity[1] (collectively, "Defendants"), and pursuant to this Court's Order dated June 20, 2025, respectfully submit this Supplemental Brief.

## I. <u>DISCUSSION</u>

In *United States v. Skrmetti*, 605 U.S. __, 145 S. Ct. 1816 (2025), the Supreme Court held a Tennessee law prohibiting the administration of puberty blockers and cross-sex hormones to minors for the purpose of gender transition does not constitute a sex-based classification under the Equal Protection Clause. While this appeal concerns Title VII, the reasoning—and the result—is the same: limited access to care for gender transition *that applies to everyone* is not based on sex. 145 S. Ct. at 1829-31. That determination is consistent with existing Eleventh Circuit decisions reaching a similar conclusion. *Eknes-Tucker v. Gov. of Ala.*, 80 F.4th 1205, 1227-28 (11th Cir. 2023) (finding a similar state law did not

---

[1] Sheriff Talton died on October 19, 2024, and his successor-in-office, Sheriff Matthew L. Moulton, should be automatically substituted for him. *See* Fed. R. App. P. 43(c)(2).

classify based on sex); *Corbitt v. Sec'y of the Ala. Law Enf't Agency*, 115 F.4th 1335, 1346-47 (11th Cir. 2024) (concluding that law requiring proof of sex reassignment surgery to change sex on driver's license did not classify based on sex). Accordingly, the *Skrmetti* opinion provides persuasive support for Defendants in this appeal.

## A.    The *Skrmetti* Opinion

In *Skrmetti*, the Supreme Court addressed the issue of "whether a Tennessee law banning certain medical [treatment and procedures] for transgender minors" violated the Equal Protection Clause. *See* 145 S. Ct. at 1824. The district court had held that provisions of the law prohibiting certain forms of sex-transition medical treatment were facially unconstitutional under the Equal Protection Clause, and, so, entered a partial injunction against enforcement of those provisions. *Id.* at 1827. However, a divided panel of the Sixth Circuit Court of Appeals reversed, holding that the plaintiffs (transgender minors, their parents, and a doctor) were unlikely to succeed on the merits of their equal protection claim because, *inter alia*, the law "[did] not classify on the basis of sex because the law 'regulate[d] sex-transition treatments for all minors,

-2-

regardless of sex,' ...." *Id.* at 1827-28 (quoting *L.W. v. Skrmetti*, 83 F.4th 460, 480 (6th Cir. 2023)).

Affirming the appellate panel's decision, the Supreme Court acknowledged "that sex generally provides no sensible ground for differential treatment, and that sex-based lines too often reflect stereotypes or overbroad generalizations about the differences between men and women." *Skrmetti*, 145 S. Ct. at 1828 (internal quotation marks and citation omitted). The Court ultimately held, however, that these considerations were not implicated by the Tennessee law because it did not classify on the basis of sex, *id.* at 1829-31, and neither did it "classify on the basis of transgender status," *id.* at 1832-33, and, as such, was *not* subject to the heightened scrutiny standard of constitutional review generally applicable to "sex-based" legislative classifications, *id.* at 1829-32. Instead, the Court held that the law was subject to—and satisfied— the rational basis standard of review applicable to classifications based on, *inter alia*, "medical use." *Id.* at 1829-31.[2]  As explained next, the

---

[2]  The other classification the Court found to be implicated by the legislation was age, *see id.* at 1829, which is irrelevant for purposes of this appeal.

Court's reasoning in this regard confirms that the County's Health Plan similarly does not classify "because of" sex in violation of Title VII.

**B.    The Exclusion's mere reference to sex does not make it "facially discriminatory" under Title VII.**

The *Skrmetti* plaintiffs "suggest[ed] that [the Tennessee law] classifie[d] on the basis of sex because its prohibitions reference[d] sex," *see id.* at 1829; and Lange predicates her Title VII claim on the same (or similar) argument here.  [App. Doc. 128 at 36 ("a 'policy [that] cannot be stated without referencing sex' is 'inherently based upon a sex-classification'" (quoting *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017)))]. But the Court in *Skrmetti* rejected this argument, making clear that it had "never suggested that mere reference to sex is sufficient to trigger heightened scrutiny" under the Equal Protection Clause. 145 S. Ct. at 1829.

With particular relevance to this appeal, the Court further held that such an argument is "especially inappropriate in the medical context," given the simple fact that "[s]ome medical treatments and procedures are uniquely bound up in sex." *Id.*; *see also Lange v. Houston Cty., Ga.*, 101 F.4th 793, 802 (11th Cir. 2024) (Brasher, J., dissenting) (similarly observing that "some procedures are specific to biology"),

-4-

vacated 110 F.4th 1254 (11th Cir. 2024). To further illustrate this point, the Court in *Skrmetti* observed that the Federal Drug Administration ("FDA") recognizes that "biological differences between men and women … may contribute to variations seen in the safety and efficacy of drugs, biologics, and medical devices." 145 S. Ct. at 1829-30; *see also id.* at 1830 (noting that FDA "frequently approves drugs for use by only one sex"). Therefore, notwithstanding Lange's arguments to the contrary, "the mere use of sex-based language" does not support a finding of an unlawful sex-based classification—*particularly* where, as here, such language is used "[i]n the medical context." *Id.* at 1830.

Notably, the Supreme Court in *Bostock* v. *Clayton County, Georgia*, proceeded on a similar "assumption that 'sex' [under Title VII] refers only to biological distinctions between male and female." 590 U.S. 644, 655 (2020). Accordingly, *Skrmetti* supports a finding under Title VII that because sex transition surgery is, as a biological matter, "uniquely bound up in sex," the County had "sensible"—and nondiscriminatory (facially or otherwise)— grounds for addressing that procedure through the use of "sex-based language" in its Health Plan. *See* 145 S. Ct. at 1829-30.

C.    **The Exclusion does not "turn on" sex.**

"Alternatively," the *Skrmetti* plaintiffs argued that the Tennessee law "work[ed] a sex-based classification because application of the law turns on sex." *Id.* at 1829. More specifically, the *Skrmetti* plaintiffs argued that under the challenged statute,

> an adolescent whose biological sex is male cannot receive puberty blockers or estrogen to live and present as a female, but an adolescent whose biological sex is female can.

*Id.* at 1830. Again, Lange's Title VII claim is predicated on a similar argument: "If [Lange] were identified as female at birth, a medically necessary vaginoplasty would be covered under the [County's] Plan; however, because she was not, it is not." App. Doc. 128, p. 36; *see also id.* at pp. 38-39 ("the Exclusion functions always to withdraw coverage for vaginoplasty from transgender women regardless of diagnosis, while it never withdraws coverage of vaginoplasty for cisgender women regardless of diagnosis").[3]

---

[3] As noted, *supra*, Lange's argument in this regard is implicitly predicated on the purely fictional proposition that the Court should regard a vaginoplasty that a natal woman might undergo as indistinguishable from a "vaginoplasty" associated with male-to-female sex change surgery.  Lange's own expert refuted that.  [Doc. 144-1, ¶ 25.]

But as the Supreme Court held in *Skrmetti*, "[n]otably absent from [both the plaintiffs' and the dissent's framing of the issue in that case was] a key aspect of any medical treatment: the underlying medical concern the treatment is intended to address." 145 S. Ct. at 1830. But a proper analysis—of either the Tennessee law under the Equal Protection Clause or the County's Health Plan under Title VII—necessitates consideration of this key element. "For the term 'medical treatment' to make sense of these various combinations, it must necessarily encompass both a given drug [or procedure] and the specific indication for which it is being administered." *Id.*

As the *Skrmetti* Court observed, "[w]hen, for example, a transgender boy (whose biological sex is female) takes puberty blockers to treat his gender incongruence, he receives a different medical treatment than a boy whose biological sex is male who takes puberty blockers to treat his precocious puberty." *Id.* But, under the Tennessee law, "*no* minor may be administered puberty blockers or hormones to treat gender dysphoria, gender identity disorder, or gender incongruence; minors of *any* sex may be administered puberty blockers or hormones for other purposes." *Id.* at 1831 (emphasis in original). The Court therefore

held that "[w]hen properly understood from the perspective of the indications that puberty blockers and hormones treat, [the Tennessee law] clearly [did] not classify on the basis of sex." *Id.* at 1830.

The same is true for the Exclusion at issue in this appeal. In this regard, Lange asserts that a vaginoplasty a natal woman might have to undergo and a "vaginoplasty" associated with male-to-female sex change surgery should be viewed as factually and/or legally indistinguishable for purposes of Title VII. [App. Doc. 128 at 48-50.] But irrespective of labels, this Court need not—and should not—embrace such a fiction. Indeed, as Judge Brasher observed in his panel dissent, the "procedures that are needed for a male-to-female sex change are unique and not medical procedures that a natal woman *could* ever undergo." *Lange*, 101 F.4th at 806 (Brasher, J., dissenting) (emphasis added). Accordingly, as in *Skrmetti*, "the application of [the Exclusion here] does not turn on sex." *See* 145 S. Ct. at 1831.[4]

_____

[4] Lange seeks to justify ignoring the undeniable medical differences between the two procedures by asserting that both are "medically necessary." [*See, e.g.*, App. Doc. 128 at 36.] But this is just a further misdirect; the County's Health Plan excludes from coverage a number of treatments and procedures that a natal male or female participant might undergo regardless of whether they are medically necessary. [Vol. 3, Doc. 155-1 at 67-74.]

-8-

**D.** **The Exclusion does not reflect a sex-based classification or turn on inconsistency with a protected characteristic.**

The Supreme Court in *Skrmetti* was likewise unpersuaded by the argument that the Tennessee law "reflect[ed] a sex-based classification" "because it turn[ed] on inconsistency with a protected characteristic." *Id.* The *Skrmetti* plaintiffs and the dissenting justices likened the challenged legislative classification to religious discrimination, *see id.* at 1831; *id.* at 1873, 1876-77 (Sotomayor, J., dissenting); just as Lange does in this appeal. [App. Doc. 128 at 37-38.] But the Court in *Skrmetti* rejected such a comparison, observing that the Tennessee statute was "simply a prohibition on the prescription of puberty blockers and hormones to treat gender dysphoria, gender identity disorder, or gender incongruence," and holding that while "[a] law prohibiting attendance at a religious service 'inconsistent with' the attendee's religion may trigger heightened scrutiny[,] [a] law prohibiting the administration of specific drugs for particular medical uses does not." *Id.* at 1831. The same is true for the Exclusion at issue in this appeal.

**E.** **The Exclusion does not operate to force conformity with Lange's biological sex or rest on impermissible stereotypes.**

The Supreme Court in *Skrmetti* also rejected as "misplaced" the plaintiffs' argument there that the Tennessee law "operate[d] to force conformity with [their biological] sex" and "rest[ed] on impermissible stereotypes." *Id.* at 1832. The Court found that the Tennessee legislature's statement of the "statutory findings" underlying the law were "neither covertly nor overtly based on sex," as required to establish a sex-based classification subject to heightened scrutiny under the Equal Protection Clause. *Id.*

Regarding Lange's equal protection claim (which is not at issue in this appeal), the district court found "a genuine dispute of material fact as to whether the adoption and maintenance of the Exclusion was done with discriminatory intent." [Vol. 4, Doc. 205 at 21, n.11; 20-21, 33.] Defendants deny *any* such intent irrespective of the applicable law— equal protection, Title VII, or otherwise. And as Judge Brasher noted, *inter alia*, in his panel dissent,

> the exclusion applies equally to sex change *reversals*. If the plan discriminated against participants because of gender stereotypes, it would cover procedures to align a participant's physical characteristics with those of his or her natal sex.

-10-

Instead, the plan refuses to pay for a suite of medical procedures *whether the goal is to align with natal sex or differ from natal sex.*

101 F.4th at 804 (Brasher, J., dissenting) (emphasis in original).

In granting summary judgment to Lange under Title VII, the district court acknowledged that, "[a]t first look, it may seem odd that the question of whether the Exclusion violated the Equal Protection Clause is one of fact while the question of whether the Exclusion violates Title VII can be decided as a matter of law." [Vol. 4, Doc. 205, p. 21.] According to the district court, however, "[w]hether odd or not, the reason is clear—*Bostock*." [*Id.*]

With all due respect to the district court, *Bostock* does not compel such a conclusion. In that case, the Court addressed only the threshold statutory question of whether a plaintiff who was discharged from his or her employment "allegedly for no reason other than" because he or she was homosexual or transgender stated a claim for sex discrimination under Title VII.  590 U.S. at 653, 665. The *Bostock* Court answered that question in the affirmative, holding that employment discrimination

because of homosexuality or transgender status *is* discrimination because of sex. *Id.* at 651-52, 683.[5]

In *Skrmetti*, the plaintiffs "urge[d]" the Supreme Court "to apply *Bostock*'s reasoning" to their claims, arguing that the Tennessee law "discriminate[d] on the basis of sex because it intentionally penalize[d] members of one sex for traits and actions that it tolerate[d] in another," *see* 145 S. Ct. at 1834, and Lange makes the same argument here in support of her Title VII claim.  [App. Doc. 128 at 37-38.] The Court in *Skrmetti* "decline[d] to address whether *Bostock*'s reasoning reaches beyond the Title VII context," but nevertheless observed as to the plaintiffs' equal protection claim that "[u]nder the reasoning of *Bostock*, neither [a transgender boy's] sex *nor his transgender status* is the but-for

---

[5] It bears noting that Justice Alito, in a dissent joined by Justice Thomas, delineated certain "concerns" with the majority opinion in *Bostock*, including as to its extension to "healthcare" generally and "challenge[s] [to] employer-provided health insurance plans that do not cover costly sex reassignment surgery" in particular. *See* 590 U.S. at 730 (Alito, J., dissent). In contrast to the district court's ruling herein, Justice Gorsuch, in writing for the majority and addressing the dissent's concerns, indicated that there was nothing "clear" about such an extension of the majority's holding: "Whether other policies and practices might or might not qualify as unlawful discrimination or find justifications under other provisions of Title VII are questions for future cases." *Id.* at 681.

cause of his inability to obtain testosterone" under the Tennessee law. *Skrmetti*, 145 S. Ct. at 1834 (emphasis added). Indeed, the Court in *Skrmetti* rejected the plaintiffs' and the dissents' arguments that sex was even "at least one but-for cause." *Id.*

The same result attains here in Lange's sex discrimination case under Title VII. It cannot be disputed that Lange lacked a qualifying diagnosis for a vaginoplasty that a natal woman might undergo. *See id.* In addition, because the Health Plan excludes from coverage sex-transition surgery for male and female plan participants alike, it would not cover that surgery even if Lange's sex were changed for purposes of *Bostock*'s analysis. *See also Lange*, 101 F.4th at 804 (Brasher, J., dissenting) ("The insurer didn't refuse to cover any procedure for Lange as a natal man that it would have covered if Lange were a natal woman."). Accordingly, as in *Skrmetti*, "under the logic of *Bostock*, … sex is simply not a but-for cause of [the Exclusion's] operation." *See Skrmetti*, 145 S. Ct. at 1835.

Indeed, there exists compelling evidence to the contrary. As Lange herself acknowledges, "*all* insurance plans … contain a number of exclusions." [Vol. 4, Doc. 179-3, ¶ 74 (emphasis added).] The Exclusion

of sex-change surgery under the Health Plan here is just one of 68 such medical use exclusions and 29 pharmacy use exclusions that "include dental and vision care, elective abortions, contraceptives, hearing aids, fertility treatment, and oral surgeries." *Lange*, 101 F.4th at 802 (Brasher, J., dissenting).

Moreover, the Health Plan "covers transgender people and provides treatment for gender dysphoria." *Id.* at 803. To be sure, the Health Plan does not cover *surgery* to treat gender dysphoria, but it does "cover[] basic treatments like hormone replacements from an endocrinologist and sessions with a psychotherapist" for that same condition. *Id.* Furthermore, as Judge Brasher correctly observed in his panel dissent, "[i]t's the comparison" between Lange and the other plan participants that "tells us whether a health insurance policy is facially discriminatory," and, under the Health Plan here, "[t]he exclusion for sex change surgery is consistent with other exclusions for treatments for sexual dysfunction, cosmetic surgery, bariatric surgery, and the like." *Id.* at 804. So, while the Health Plan "excludes one treatment for gender dysphoria, it also excludes coverage for all sorts of similar things such as expensive surgeries, cosmetic procedures, and all treatments for sexual

-14-

dysfunction," the "upshot" being "that the plan doesn't seem to provide the equivalent of a sex change surgery to anyone." *Id.* at 805. In short, the Health Plan "covers medically necessary treatments but excludes particularly expensive, top-of-the-line procedures." *See id.* at 802.[6]

## II. <u>CONCLUSION</u>

For the reasons set for the above, the Supreme Court's opinion in *Skrmetti* provides persuasive support for Defendants' appeal.

Respectfully submitted, this 11th day of July 2025.

*s/ Sharon P. Morgan*
Sharon P. Morgan
Georgia Bar No. 522955
R. Read Gignilliat
Georgia Bar No. 293390
William D. Deveney
Georgia Bar No. 219744
Patrick L. Lail
Georgia Bar No. 431101

---

[6] To hold, as Lange has argued, that Title VII prohibits a covered employer from providing anything less than complete and unconditional coverage of treatment for gender dysphoria—irrespective of the limitations imposed on coverage of the medical conditions offered to other plan participants—would improperly elevate transgender participants to a "most-favored-nation status" that the Supreme Court has refused to accord even those participants for whom Congress specifically amended the statute. *Young v. United Parcel Servs.*, 575 U.S. 206, 222 (2015).

ELARBEE, THOMPSON, SAPP & WILSON, LLP
229 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30303
(404) 659-6700 (telephone)
(404) 222-9718 (facsimile)
morgan@elarbeethompson.com
gignilliat@elarbeethompson.com
deveney@elarbeethompson.com
lail@elarbeethompson.com

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

Counsel for the Appellants hereby certifies that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 2,957 words.

*s/ Sharon P. Morgan*
Georgia Bar No. 522955

ELARBEE, THOMPSON, SAPP & WILSON, LLP
229 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30303
(404) 659-6700 (telephone)
(404) 222-9718 (facsimile)
morgan@elarbeethompson.com

*Attorneys for Defendants-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify pursuant to Rule 25(d)(2) of the Federal Rules of Appellate Procedure that a true and correct copy of this **EN BANC SUPPLEMENTAL BRIEF OF DEFENDANTS-APPELLANTS** has been filed via the Court's ECF filing system, which will automatically serve Plaintiff-Appellee's attorneys as follows:

Kenneth E. Barton, III
M. Devlin Cooper
Wesley R. Powell
Jill K. Grant
Catherine E. Fata
Amanda M. Payne
Gabriel Arkles
Kevin M. Barry

This the 11th day of July 2025.

<u>*s/ Sharon P. Morgan*</u>
Georgia Bar No. 522955

ELARBEE, THOMPSON, SAPP & WILSON, LLP
229 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30303
(404) 659-6700 (telephone)
(404) 222-9718 (facsimile)
<u>morgan@elarbeethompson.com</u>

*Attorneys for Defendants-Appellants*