No. 22-13626

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ANNA LANGE,
*Plaintiff-Appellee*

v.

HOUSTON COUNTY, GEORGIA AND
HOUSTON COUNTY SHERIFF CULLEN TALTON,
*Defendants-Appellants*

On Appeal from the United States District Court
for the Middle District of Georgia
No. 5:19-cv-00392-MTT

## SUPPLEMENTAL BRIEF OF PLAINTIFF-APPELLEE

Kenneth E. Barton III
Ga. State Bar No. 301171
M. Devlin Cooper
Ga. State Bar No. 142447
COOPER, BARTON & COOPER, LLP
170 College Street
Macon, GA 31201
(478) 841-9007 tel.
(478) 841-9002 fax
keb@cooperbarton.com
mdc@cooperbarton.com

Wesley R. Powell
Jill K. Grant*
Catherine Fata*
Amanda M. Payne*
WILLKIE FARR & GALLAGHER, LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000 tel.
(212) 728-8111 fax
wpowell@willkie.com
jgrant@willkie.com
cfata@willkie.com
apayne@willkie.com

Z Gabriel Arkles
Shayna Medley
Ezra Cukor
Seran Gee
ADVOCATES FOR TRANS EQUALITY EDUCATION FUND
520 8th Ave. Suite 2204
New York, NY 10018
(646) 862-9396 tel.
(646) 993-1686 fax
garkles@transequality.org
smedley@transequality.org
ecukor@transequality.org
sgee@transequality.org

*Counsel for Plaintiff-Appellee*
**admitted *pro hac vice*

### CERTIFICATE OF INTERESTED PERSONS
### AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 28(a)(1) of the Federal Rules of Appellate Procedure and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, the Appellee, Sgt. Anna Lange submits this list, which includes the district court trial judge, and all attorneys, persons, associations of persons, firms, or partnerships that have an interest in the outcome of this review:

1. Arkles, Gabriel, Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

2. Barton, Kenneth E., Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

3. Cooper, Barton & Cooper, LLP, *Attorneys for Plaintiff-Appellee, Sgt. Anna Lange*

4. Cooper, M. Devlin, Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

5. Cukor, Ezra U., Esq. *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

6. Deveney, William D., Esq., *Attorney for Defendants-Appellants, Houston County, Georgia and Houston County Sheriff, Cullen Talton*

7. Elarbee, Thompson, Sapp & Wilson, LLP, *Attorneys for Defendants-Appellants, Houston County, Georgia and Houston County Sheriff, Cullen Talton*

8.    Fata, Catherine E., Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

9.    Gee, Seran, Esq. *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

10.    Gignilliat, R. Read, Esq., *Attorney for Defendants-Appellants, Houston County, Georgia and Houston County Sheriff, Cullen Talton*

11.    Grant, Jill K., Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

12.    Houston County, Georgia, *Defendant-Appellant*

13.    Houston County Sheriff, Cullen Talton, *Defendant-Appellant* (deceased)[1]

14.    Lail, Patrick L., Esq., *Attorney for Defendant-Appellants, Houston County, Georgia and Houston County Sheriff, Cullen Talton*

15.    Lange, Anna, *Plaintiff-Appellee*

16.    Medley, Shayna, Esq. *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

17.    Morgan, Sharon P., Esq., *Attorney for Defendants-Appellants, Houston County, Georgia and Houston County Sheriff, Cullen Talton*

18.    Payne, Amanda M., Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

19.    Powell, Wesley R., Esq., *Attorney for Plaintiff-Appellee, Sgt. Anna Lange*

---

[1] Sheriff Cullen Talton passed away during the course of these proceedings.

20. Advocates for Trans Equality Education Fund (formerly Transgender Legal Defense and Education Fund, Inc.), *Attorneys for Plaintiff-Appellee, Sgt. Anna Lange*

21. Treadwell, Hon. Marc T., *U.S. District Judge, Middle District of Georgia*

22. Willkie, Farr & Gallagher, LLP, *Attorneys for Plaintiff-Appellee, Sgt. Anna Lange*

Pursuant to Eleventh Circuit Rule 26.1-3(b), Plaintiff-Appellee, Sgt. Anna Lange, certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ *Jill K. Grant*
*Counsel for Plaintiff-Appellee*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

I.    INTRODUCTION ........................................................................1

II.   TITLE VII'S *BOSTOCK* AND *NEWPORT NEWS*, NOT
      *SKRMETTI*, CONTROL...............................................................2

III.  EVEN IF *SKRMETTI'S* REASONING APPLIED TO TITLE VII,
      THE EXCLUSION WOULD STILL BE BASED ON SEX .........................6

      A.    The Exclusion Is Based on Sex ............................................6

      B.    None of the Factors That Led to the Court's Conclusion That
            the Classification in *Skrmetti* Was Based on Age and Medical
            Use Are Present Here ........................................................8

IV.   CONCLUSION...........................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ames v. Ohio Dep't of Youth Servs.*,
　145 S. Ct. 1540 (2025) ....................................................................................4, 6

*Bostock v. Clayton Cnty., Ga.*,
　590 U.S. 644 (2020) .............................................................2, 3, 4, 5, 6, 7, 8, 12

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
　473 U.S. 432 (1985) ........................................................................................5

*City of Los Angeles Dep't of Water and Power v. Manhart*,
　435 U.S. 702 (1978) ........................................................................................7

*Cohens v. State of Virginia*,
　19 U.S. 264 (1821) ..........................................................................................5

*Geduldig v. Aiello*,
　417 U.S. 484 (1974) ........................................................................................3

*General Electric v. Gilbert*,
　429 U.S. 125 (1976) ....................................................................................3, 4

*Glenn v. Brumby*,
　663 F.3d 1312 (11th Cir. 2011) ........................................................................7

*Gonzales v. Carhart*,
　550 U.S. 124 (2007) ........................................................................................5

*Int'l Union v. Johnson Controls, Inc.*,
　499 U.S. 187 (1991) ....................................................................................6, 9

*Newport News Shipbuilding and Dry Dock Co. v. E.E.O.C.*,
　462 U.S. 669 (1983) ..........................................................................2, 3, 4, 9-10

*Phillips v. Martin Marietta Corp.*,
　400 U.S. 542 (1971) ........................................................................................4

*Price Waterhouse v. Hopkins*,
　490 U.S. 228 (1989) ........................................................................................5

*Schroer v. Billington*,
　577 F. Supp. 2d 293 (D.D.C. 2008) ..................................................................7

*Shalala v. Ill. Council on Long Term Care, Inc.*,
   529 U.S. 1 (2000) ................................................................................6

*United States v. Skrmetti*,
   145 S. Ct. 1816 (2025) ...............................1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12

**Statutes & Other Authorities:**

42 U.S.C. § 2000e-2(a)(1) ...........................................................................2

Tenn. Code Ann. § 68-33-102(3) ..................................................................9

Tenn. Code Ann. § 68-33-102(5) ..................................................................9

Tenn. Code Ann. § 68-33-102(8) ..................................................................9

Tenn. Code Ann. § 68-33-103(b) ..................................................................9

Tenn. Code Ann. § 68-33-104 .......................................................................9

## I.    INTRODUCTION.

Appellee Sgt. Anna Lange is a veteran public servant whom Appellants have denied a privilege of employment because of her sex.  Before this Court is her Title VII claim concerning coverage for surgical care that all parties agree was medically necessary for her and would be covered if medically necessary for a cisgender woman.  *United States v. Skrmetti*, 145 S. Ct. 1816, 1835-36 (2025), on the other hand, considered an Equal Protection challenge to Tennessee legislation regulating puberty blockers and hormones the legislature deemed experimental and risky for patients under eighteen as a treatment for gender dysphoria.

*Skrmetti* has no bearing on Appellee's claim because binding precedent and the text of Title VII prohibit any reliance on sex in employment decisions, including offering different benefits based on medical conditions bound up with sex. Contrary Equal Protection decisions do not control.  Additionally, the facts here differ materially from *Skrmetti*.  There, the Supreme Court concluded the distinction was based on age and medical use, rather than sex, where a legislature prohibited treatments for minors based on an assessment of possible medical risk related to particular diagnoses.  Here, employers, relying on no medical information—and conceding the necessity of care—withheld coverage for "sex change" surgery it saw as synonymous with being transgender.  Appellant's Exclusion facially discriminates based on sex and violates Title VII.

## II.    TITLE VII'S *BOSTOCK* AND *NEWPORT NEWS*, NOT *SKRMETTI*, CONTROL.

The Supreme Court only considered an Equal Protection claim in *Skrmetti*. Here, this Court has only a Title VII claim before it.  In the context of insurance and sex-related healthcare needs, Equal Protection and Title VII jurisprudence diverge. *See* En Banc Brief of Plaintiff-Appellee, App. Doc. 128 at 40-42.  For Title VII, but not Equal Protection, Congress and the Supreme Court have already concluded that discrimination based on a trait or condition "bound up in sex" is "because of . . . sex." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 660-61 (2020); *see also Newport News Shipbuilding and Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 684 (1983).  The separation of powers principles the Court relied on in *Skrmetti* further support this conclusion.  *See* 145 S. Ct. at 1836 (noting "need for legislative flexibility").

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex. . . ." 42 U.S.C. § 2000e-2(a)(1). In *Skrmetti*, the Court concluded Tennessee drew lines based on medical condition and age, reasoning that while "some medical treatments and procedures are uniquely *bound up* in sex," classification based on those treatments does not necessarily constitute a sex-based classification triggering heightened scrutiny. 145 S. Ct. at 1829 (emphasis added)*.*  But *Bostock* held that an employer who discriminates against an employee necessarily discriminates based on sex because "transgender

status [is] inextricably *bound up* with sex." *Bostock*, 590 U.S. at 660-61 (emphasis added). "As enacted, Title VII prohibits all forms of discrimination because of sex, however they may manifest themselves or whatever other labels might attach to them." *Id.* at 669-70.

*Skrmetti* relied on *Geduldig*, which held that, absent evidence of invidious discrimination, classifications based on the condition of pregnancy do not automatically trigger heightened scrutiny. 145 S. Ct. at 1833. In *Geduldig*, the Court found a "lack of identity" between pregnancy and sex, because the legislative line-drawing left women on both sides of the line–pregnant persons on one and nonpregnant persons on the other. 417 U.S. 484, 498 n.20 (1974). Likewise, in *Skrmetti*, the Court found a "lack of identity" between those who are transgender and those barred from receiving treatment based on diagnosis under the law. 145 S. Ct. at 1833.

But *Geduldig*'s reasoning does not govern under Title VII. In *Newport News*, the Court acknowledged Congress's abrogation and rejection of *Geduldig* as applied to Title VII. 462 U.S. at 684. Previously, the Court had applied *Geduldig's* equal protection analysis to Title VII in *General Electric v. Gilbert*, 429 U.S. 125, 136 (1976), to hold that an exclusion of pregnancy from a disability-benefits plan is not sex-based discrimination. In response, Congress enacted the Pregnancy Discrimination Act ("PDA"), repudiating *Gilbert's* holding and reasoning: "the

- 3 -

Supreme Court had erroneously interpreted Congressional intent and . . . amending legislation was necessary to reestablish the principles of Title VII law as they had been understood prior to the *Gilbert* decision." *Newport News*, 462 U.S. at 678-79. The Supreme Court determined the PDA had rejected the "test of discrimination employed" in *Gilbert* not only as to pregnant employees, but as to "all individuals [subject to] sex discrimination in employment," including the male plaintiffs. *Id*. at 681.

*Bostock* reaffirms the rejection of *Gilbert's* reasoning. In *Bostock*, the Court emphasized that anti-LGBT discrimination relies on sex even though the discrimination could: (1) affect people of any sex and (2) would not affect everyone within the same sex—in other words, people of the same sex fell on both sides of the line. *Bostock*, 590 U.S. at 645–48, 66; *accord Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1546 (2025), citing *Bostock*, 590 U.S. at 659 ("The law's focus on individuals rather than groups [is] anything but academic.").  In so doing, the Court returned to the original meaning of Title VII.  *See Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 543 (1971) (company that hired mostly women but would not hire mothers with young children discriminated based on sex).

Although the Court observed in *Skrmetti* that, even under the reasoning of *Bostock*, Tennessee's statute would still not merit heightened scrutiny under the Equal Protection Clause, that observation only applies to Equal Protection.  *See* 145

S. Ct. at 1834-35.  If the Court had opined on Title VII analysis, it would be dicta. *See Cohens v. State of Virginia*, 19 U.S. 264, 399 (1821).   The difference in Equal Protection and Title VII is the product of not only different text but different separation of powers considerations.

Equal Protection jurisprudence is driven by reconciling tensions between "the principle of equal protection with the reality of legislative classification." *Skrmetti*, 145 S. Ct. at 1828; *see also City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985) ("[C]ourts have been very reluctant, as they should be in our federal system and with our respect for the separation of powers, to closely scrutinize legislative choices").  To balance tensions between separation of powers principles and Equal Protection's mandate, the Court has devised tests of legislative classifications that still defer to legislative authority.  *See id.* at 441-42.  *Skrmetti* aligned with this principle of judicial restraint, permitting legislatures wide discretion to "pass legislation in areas where there is medical and scientific uncertainty."  145 S. Ct. at 1836, *citing Gonzales v. Carhart*, 550 U.S. 124, 163 (2007).

In contrast, deference to the legislature in the Title VII context requires enforcement of Congress's duly enacted statute—a statute that insists, "Gender must be irrelevant to employment decisions." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240 (1989).  Courts may not add exceptions to statutory text.  *See Bostock*, 590 U.S.

at 674 ("[W]hen Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule."); *Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1546 (2025) ("Congress left no room for courts to impose special requirements . . . .").

Nothing in *Skrmetti* reinterpreted Title VII or cast doubt on any Title VII law. *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn . . . earlier authority *sub silentio*.").  Indeed, *Skrmetti* reinforced *Bostock* as the standard for Title VII. 145 S. Ct. at 1834.

## III.   EVEN IF *SKRMETTI'S* REASONING APPLIED TO TITLE VII, THE EXCLUSION WOULD STILL BE BASED ON SEX.

Even if *Skrmetti's* analysis did apply here, the Exclusion would still violate Title VII.  The Exclusion does not target age or medical use; it withdraws coverage based on "sex." Doc. 205 at 3-4.

### A.   The Exclusion Is Based on Sex.

*Skrmetti* does not alter the conclusion that a prohibition for healthcare coverage for a "sex change" discriminates based on "sex."  In a case about facial discrimination, the "explicit terms" of the challenged policy or action control. *Int'l Union v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991).  The terms of the Exclusion dictate that, even when medically necessary and otherwise within the plan terms, coverage will be withheld for "[d]rugs for sex change surgery," and "[s]ervices and supplies for a sex change. . ." Doc. 205 at 3-4.  Appellants or their

agents must know whether an employee was identified as male or female at birth to know whether the care they seek counts as a "sex change." Doc. 179-3, ¶¶ 75-76. Whether other factors also contribute to the outcome makes no difference. *Bostock*, 590 U.S. at 661.

To determine whether an employer facially discriminates because of sex in violation of Title VII, one need only apply the "simple test" of "whether the evidence shows treatment of a person in a manner which but for that person's sex would be different." *City of Los Angeles Dep't of Water and Power v. Manhart*, 435 U.S. 702, 711 (1978). Far from a "mere reference" to sex, *Skrmetti*, 145 S. Ct. at 1829, the Exclusion for "sex change" is meaningless without relying upon an individual employee's sex. Doc. 205 at 3-4. "[T]ry writing out instructions for" implementing the Exclusion "without using the words man, woman, or sex []. It can't be done." *Bostock*, 590 U.S. at 668–69. A person cannot be penalized for seeking to change or having changed their physical sex characteristics in a way that is not typically associated with their sex assigned at birth without relying on the sex they were assigned at birth. *See Glenn v. Brumby,* 663 F.3d 1312, 1321 (11th Cir. 2011) (employer acting "based on 'the sheer fact of the transition'" sufficient to establish liability); *Schroer v. Billington*, 577 F. Supp. 2d 293, 306–08 (D.D.C. 2008) ("[R]efusal to hire Schroer after being advised that she planned to change her

anatomical sex by undergoing sex reassignment surgery was *literally* discrimination 'because of . . . sex.'").

Thus, vaginoplasty for someone assigned female at birth would not be "sex change" surgery, but it would be for a person assigned male at birth, like Appellee. *See* Doc 159, 27:5-20 (Exclusion applies to care "to help someone transition"); Doc. 148-2, ¶¶ 39–40 (genital reconstruction surgery also performed on people who are not transgender). The Exclusion fails the simple test, depriving Appellee of coverage she would have received were she assigned female at birth. *See* App. Doc. 128 at 9, 19–20, 22; Doc. 179-3, ¶¶ 77–78; Doc. 289, p. 9 n.3. Sex plays an "unmistakable and impermissible role" in the employment decision, where Title VII requires sex to be "irrelevant." *Bostock*, 590 U.S. at 660.

### B. None of the Factors That Led to the Court's Conclusion That the Classification in *Skrmetti* Was Based on Age and Medical Use Are Present Here.

In *Skrmetti*, the Court observed that the statute did not merit heightened scrutiny because it regulates medications based on findings of relative medical risk and allows a minor of any sex with a "qualifying diagnosis" to receive the medications. 145 S. Ct. at 1829, 1834. Thus, a "law prohibiting the administration of specific drugs for particular medical uses" for minors does not necessarily trigger heightened scrutiny even if it does rely on gender dysphoria, absent argument such distinctions are "mere pretexts designed to effect an invidious discrimination against

transgender individuals." *Id.* at 1829-30, 1833. Here, aside from relating to healthcare for transgender people, the facts diverge dramatically.

*First*, the terms of the Exclusion itself refer only to sex, and not to gender dysphoria, any other diagnosis, or age. *See Johnson Controls*, 499 U.S. at 199. Unlike the statute in *Skrmetti*, the Exclusion does not list specific treatments. *Contrast* Tenn. Code Ann. §§ 68-33-102 (3), (5), (8) (defining "hormone," "medical procedure," and "puberty blocker") *with* Doc. 205 at 3-4 ("sex change"). Nor does it list "qualifying diagnoses" for which those specific treatments are permitted. *Contrast* Tenn. Code Ann. § 68-33-103(b) (listing various conditions) *with* Doc. 205 at 3–4 ("sex change"). Nor does it restrict its operation to minors. *Contrast* Tenn. Code Ann. § 68-33-104 (prohibiting providing hormones and puberty blockers to a "minor") *with* Doc. 205 at 3-4 ("sex change"). The only question an administrator must ask to determine if the Exclusion applies is whether the care is "sex change"— to answer that question, they must rely on the assigned sex of the employee.

*Second*, even if "sex change" in the Exclusion did incorporate gender dysphoria, both "sex change" and "gender dysphoria" should be understood as stand-ins for "transgender status" in the context of the Exclusion. "Gender dysphoria" is "bound up with sex"—that alone suffices under Title VII. *See supra* Section II. In fact, the Exclusion treats all transgender people, who alone bear the risk of needing treatment for gender dysphoria, differently from all cisgender people. *Newport*

- 9 -

*News*, 462 U.S. at 678 ("It was inaccurate to describe the program as dividing potential recipients into two groups, pregnant women and non-pregnant persons, because insurance programs 'deal with future risks rather than historic facts. Rather, the appropriate classification was 'between persons who face a risk of pregnancy and those who do not.'").

According to Defendants, having gender dysphoria and seeking a "sex change" is synonymous with being transgender. *See* 179-3 at 260 (admitting it is "undisputed" that "Mr. Carter views the terms 'transgender' and 'gender dysphoria' to mean the same thing"); En Banc Br. Of Defendants-Appellants, App. Doc. 118 at 9 ("Lange is the only openly transgender person employed by the Sheriff's Office or the County government, and, thus, the only known transgender member of the Health Plan. For this reason, Defendants do not dispute that the only Health Plan participants impacted by the Exclusion are those transgender persons seeking to undergo 'sex change' surgery."). From Kenneth Carter, the County's Director of Personnel:

> Q.: In your own words, can you please explain what a sex change is.
> A.: In my words, it would be where someone may have a male or female genitalia
> and decides that they want to change that male or female appearance, not just the
> genitalia, but their whole appearance to be the opposite.
> Q.: What is your understanding for why an individual might seek a sex change?
> A.: They want to be the opposite sex of what they currently are.
> Q.: What is your understanding of the term transgender?

- 10 -

> A.: It's a person who want to be or believes or however, it's a person that identifies as the opposite sex of what they assign for at birth.
> Q.: What is your understanding of the term gender dysphoria?
> A.: My understanding is. . . . my answer to that would be it's the same sort of thing; they're identifying themselves as the opposite sex of what's assigned for at birth.

Doc. 150-1 at p.10, 30:17-31:24.

> From Sheriff Talton:

> Q.: [O]ther than hearing the concept of a sex change, did you have any understanding then about what it meant to be transgender, what a gender transition was?
> A.: I knew what a transgender was, yes.
> Q.: . . . Just explain to me what you understood it meant and what it is.
> A.: I understand it to be a sex change.

Doc. 157 at 19:9-22. Appellants offered no evidence that they saw any difference between "sex change" or "gender dysphoria" and being transgender.

On these facts, to call "sex change" or "gender dysphoria" a proxy or pretext for "transgender" understates the case. In maintaining the Exclusion, Appellants not only intended to withdraw coverage for healthcare for transgender people, they intended to withdraw coverage for healthcare that they saw as *intrinsic to what it means to be* transgender.

*Third*, Appellants never purported to base the Exclusion on medical risk or efficacy as in *Skrmetti*. Appellants have never contended they considered any medical information in adopting, maintaining, or applying the Exclusion. *See* Doc.159 at 57:13-24; Doc. 159-1 at 40:11-41:6. In fact, the Plan already had neutral

criteria for assuring medical necessity, and Appellants have repeatedly conceded that the surgical treatment at issue here is medically necessary for many transgender people and was necessary for Sgt. Lange.  Doc. 179-3 at 14-16, 37-38, 121.  This Court need not consider how to address a case where an insurer may have weighed the relative risks and benefits of treatments for different purposes, because it is undisputed that Appellants did not do so here.

## IV.    CONCLUSION.

Nothing in *Skrmetti* requires courts to abandon logic in cases involving transgender healthcare.  The only logical conclusion here remains that Appellants' discrimination was "because of sex."  The benefit plan's Exclusion contains text that says it is based on sex.  The employer admits it understands the Exclusion's operative text to mean transgender people—and to withdraw coverage exclusively from transgender people.   The employer disclaims any consideration of medical information in its decisions.  And the exclusion in fact did withdraw coverage from a transgender employee because she is transgender and was assigned a particular sex at birth.  The conclusion is clear.  Appellants fail *Bostock's* simple test.  This Court should hold that summary judgment was properly granted to Sgt. Lange.

Respectfully submitted this 11th day of July, 2025.

*/s/ Jill K. Grant*
Wesley R. Powell
Jill K. Grant
Catherine E. Fata
Amanda M. Payne
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 tel.
(212) 728-8111 (fax)
wpowell@willkie.com
jgrant@willkie.com
cfata@willkie.com
apayne@willkie.com

Z Gabriel Arkles
Ezra Cukor
Shayna Medley
Seran Gee
ADVOCATES FOR TRANS EQUALITY
EDUCATION FUND, INC.
520 8th Ave. Ste. 2204
New York, NY 10018
(646) 862-9396 tel.
(646) 993-1686 fax
garkles@transequality.org
smedley@transequality.org
ecukor@transequality.org
sgee@transequality.org

Kenneth E. Barton III
Ga. Bar No. 301171
M. Devlin Cooper
Ga. Bar No. 142447
COOPER, BARTON & COOPER
170 College Street
Macon, GA 31201
478-841-9007
478-841-9002 (fax)
keb@cooperbarton.com
mdc@cooperbarton.com

*Counsel for Plaintiff-Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

On behalf of Plaintiff-Appellee Sgt. Anna Lange, I hereby certify pursuant to Federal Rule of Appellate Procedure 32(g)(1) that the Supplemental Brief of Plaintiff-Appellee is proportionally spaced, has a typeface of 14 points or more, and contains 2,895 words.

This 11th day of July, 2025.

*/s/ Jill K. Grant*

Wesley R. Powell
Jill K. Grant
Catherine E. Fata
Amanda M. Payne
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 tel.
(212) 728-8111 (fax)
wpowell@willkie.com
jgrant@willkie.com
cfata@willkie.com
apayne@willkie.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served the foregoing **SUPPLEMENTAL BRIEF OF PLAINTIFF-APPELLEE** to the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to the following counsel of record, who are CM/ECF participants:

R. Read Gignilliat, Esq.
Sharon P. Morgan, Esq.
William D. Deveney, Esq.
Patrick L. Lail, Esq.
Elarbee, Thompson, Sapp & Wilson, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
gignilliat@elarbeethompson.com
morgan@elarbeethompson.com
lail@elarbeethompson.com
*Attorneys for Defendants-Appellants*

This 11th day of July, 2025.

*/s/ Jill K. Grant*
Wesley R. Powell
Jill K. Grant
Catherine E. Fata
Amanda M. Payne
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 tel.
(212) 728-8111 (fax)
wpowell@willkie.com
jgrant@willkie.com
cfata@willkie.com
apayne@willkie.com
